**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | : Civil Action |
| | : |
| | : No. 2:20-CV-966 |
| Plaintiffs, | : |
| | : |
| v. | : Judge J. Nicholas Ranjan |
| | : |
| KATHY BOOCKVAR, *et al.*, | : |
| | : |
| Defendants. | : |

**RESPONSE OF THE BUCKS, CHESTER, AND
MONTGOMERY COUNTY BOARDS OF ELECTIONS
TO PLAINTIFFS' MOTION FOR A SPEEDY DECLARATORY
JUDGMENT HEARING AND EXPEDITED DISCOVERY**

The Boards of Elections of Bucks, Chester, and Montgomery Counties believe that Plaintiffs' claims should not survive Rule 12 motion practice. Pennsylvania state courts are currently considering the very state law issues that Plaintiffs ask this Court to decide; therefore, this Court may determine that it should abstain from hearing this case. Moreover, the Complaint has fatal procedural and substantive flaws that require its dismissal. Because prompt resolution of the case will minimize disruption to the November 2020 election, the Bucks, Chester, and Montgomery Boards do not oppose a reasonable acceleration of the briefing schedule for Rule 12 motions.

Expedited discovery, on the other hand, will do nothing to speed resolution of this case, and will place unreasonable burdens upon public servants who are already stretched thin. First, given the likelihood that the case will not survive motion practice, discovery will likely be unnecessary. Second, Plaintiffs' proposed wide-ranging inquiry into every precinct-level hiccup and every management decision in the administration of the 2020 primary election is irrelevant to this case, which centers on statutory interpretation. Third, the discovery Plaintiffs seek duplicates information that will soon be provided in an ongoing Pennsylvania legislative inquiry; it is neither necessary nor appropriate for the Plaintiffs to repeat an investigation that the legislature is already carrying out. Finally, the discovery is overbroad and will impose huge burdens on the Court, which will need to wade into complex issues of relevance, proportionality, and privilege, and on the Bucks, Chester, and Montgomery Boards, who are consumed with planning and preparing for the next election. Plaintiffs cannot show good cause for the expedited discovery they seek.

## I.   Motion Practice Is Likely to End or Significantly Narrow Plaintiffs' Claims

Because the Bucks, Chester, and Montgomery County Boards received Plaintiffs' Complaint and retained counsel only a short time ago, they have not yet identified or fleshed out all the arguments they may make in their Rule 12 Motion. However, it does not require extensive analysis to see many serious potential flaws

in Plaintiffs' Complaint. The Bucks, Chester, and Montgomery Boards are

assessing these flaws; they may raise some, or all, of the following issues, as well

as others, in their Rule 12 Motion.

First, for example, there are at least three cases pending in Pennsylvania

state court that directly address the state law issues that Plaintiffs raise in this case.

These are:

- *Pennsylvania Democratic Party v. Boockvar*, Pa. Commonwealth Court, No. 407 MD 2020. Like the instant case, *Pennsylvania Democratic Party* seeks relief related to drop boxes for absentee and mail-in ballots, canvassing procedures for those ballots, and poll watcher residency requirements. It also seeks relief related to ballot return deadlines. The Petition is attached to this Response as Exhibit A.

- *NAACP Pennsylvania State Conference v. Boockvar*, Pa. Commonwealth Court, No. 364 MD 2020. *NAACP*, like the instant case, seeks relief related to drop boxes for absentee and mail-in ballots and canvassing procedures for those ballots. It also seeks relief related to early voting procedures, ballot applications, selection and notification of polling places, and voting technology. The Petition is attached to this Response as Exhibit B.

- *Crossey v. Boockvar*, Pa. Supreme Court, No. 108 MM 2020 (originally filed in Commonwealth Court). Like the instant case, *Crossey* seeks relief related to return procedures and canvassing procedures for absentee and mail-in ballots. It also seeks relief related to ballot return deadlines, and postage for absentee and mail-in ballots. The Petition is attached to this Response as Exhibit C.

Given this pending litigation, the Court could conclude that it should invoke the

*Pullman* and/or *Burford* doctrines and abstain from adjudicating this case. *Pullman*

abstention is appropriate where, as here, a claim turns upon a contested interpretation of state law. *See, e.g.*, *De La Fuente v. Cortes*, 207 F. Supp. 3d 441, 453 (M.D. Pa. 2016) (invoking *Pullman* jurisdiction where, as here, a plaintiff asked for a holding that state election officials had wrongly interpreted state law, and "an alternative appropriately exists with the Pennsylvania state courts"); *Chiropractic America v. LaVecchia*, 180 F.3d 99, 104 (3d Cir. 1999) (holding that federal court must decline under *Burford* to involve itself in complex state regulatory regimes "[w]here timely and adequate state-court review is available") (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989)).

Second, the Court may determine that even if it need not formally abstain, it should not exercise jurisdiction over Plaintiffs' requests for declaratory judgment. In *State Auto Ins. Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2001), the Third Circuit held that a district court should have declined to exercise jurisdiction over a declaratory judgment action when the same issues were before a state court. The Court noted that district courts should consider staying their hands when the "state law involved is close or unsettled" and when simultaneous state and federal proceedings could create "duplicative and piecemeal litigation." *Id.* at 135. Here, because the state courts are considering legal issues that could dispose of

Plaintiffs' claims, the Court should similarly exercise its discretion and decline to consider Plaintiffs' claims for declaratory relief.

Third, the Bucks, Chester, and Montgomery Boards may argue that claims of state constitutional violations are not properly before this Court. Fourth, they may contend that some or all of the Plaintiffs lack standing. Fifth, Plaintiffs' Complaint appears to allege not that certain kinds of drop boxes, for example, are themselves unconstitutional, but that unconstitutionality arises from the possibility that different counties may have different kinds of boxes. The Boards may argue that without an allegation that particular county practices are themselves unconstitutional, Plaintiffs cannot state a claim against the Boards.

Finally, the Boards may also argue that Plaintiffs' allegations of harm are too speculative to state a constitutional claim. For example, Plaintiffs conjecture that some kind of voter fraud might occur somewhere in the Commonwealth, that poll watchers might be uniquely able to prevent this undescribed fraud, and that the current statutory scheme is preventing these hypothetical poll watchers from coming to the rescue. Another Court in this Circuit has already held that this very argument is overly speculative, stating that "[the plaintiffs'] theory is based on speculation that fraudulent voters may be casting ballots elsewhere in the Commonwealth and the unproven assumption that these alleged instances of voter fraud would be prevented by the affected poll watchers were they not precluded

from serving at those locations." *Republican Party of Pa. v. Cortes*, 218 F.Supp.3d 396, 407 & n.4 (E.D. Pa. 2016). For all these reasons and others, the Bucks, Chester, and Montgomery Boards believe, some or all of Plaintiffs' claims are likely to be dismissed without the need for discovery.

## II. Because Plaintiffs' Requested Discovery Is Irrelevant, Duplicative, and Unreasonably Burdensome, Plaintiffs Cannot Show Good Cause to Expedite It

Plaintiffs represent that their requested discovery is "limited and targeted to recent and likely easily accessible information," Plfs.' Mot. ¶ 20, but it is not. Running an election is a massive operation, and Plaintiffs seek extensive, broad-ranging discovery that could cover most aspects of this operation. For example, Plaintiffs apparently intend to seek disclosure of information "including, but not limited to,"

- "[A]ny problems or other issues that Defendants experienced" with the hundreds of thousands of ballot applications and ballots they handled, *id.* ¶ 8b-c;

- Defendants' internal communications and "reasons and decisions for using or not using" several different types of ballot collection methods, *id.* ¶ 8d-e;

- All of Defendants' internal and external communications about ballot collection methods, *id.* ¶ 8f; and

- Defendants' investigation of and response to all "reported voter or voting fraud" of any nature and at any time, *id.* ¶ 8j.

Plaintiffs have not provided Defendants or the Court with drafts of the discovery they seek to serve, and have not disclosed which counties or third parties it will target for written discovery or depositions.

Courts in this Circuit have found "good cause" for expedited discovery when "the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant." *Samuel, Son & Co. v. Beach*, 2013 WL 4855325,*3 (W.D.P.A. Sept. 11, 2013). Here, because Plaintiffs have no reasonable need for the discovery they seek and the hardship to the Bucks, Chester, and Montgomery Boards is immense, the Court should deny Plaintiffs' request.

### A. Because This Case Involves Questions of Statutory Interpretation, the Discovery Plaintiffs Seek Is Largely Irrelevant

"[C]ourts generally deny motions for expedited discovery when the movant's discovery requests are overly broad." *Philadelphia Newspapers, Inc., v. Gannett Satellite Info. Network, Inc.*, 1998 WL 404820 (E.D. Pa. 1998). Here, Plaintiffs do not, and apparently cannot, explain how their expansive discovery relates to their actual claims. Most of Plaintiffs' allegations involve questions of interpretation of the Pennsylvania Election Code. *See, e.g.*, Complaint ¶¶ 95 (Election Code provisions as to where voters may return ballots), 107 (meaning of "polling place" in Election Code), 106 (notice requirements), 113 (ballot envelope requirements). The minutiae of past elections and individual counties' decision

processes are irrelevant to these allegations; the question is what the statute means, not the day to day details of the counties' administration of the statute or their thoughts about that administration. Accordingly, the information Plaintiffs purport to seek is not relevant, because it does not make any fact that is "of consequence" "more or less probable than it would be without the evidence." Fed. R. Civ. P. 401. This information is not discoverable at all, let alone discoverable on an expedited basis.

**B.     An Ongoing Legislative Inquiry Will Render the Discovery Plaintiffs Seek Superfluous**

The Defendants are in the midst of providing information to the Pennsylvania legislature that overlaps with many of Plaintiffs' proposed discovery requests. Plaintiffs' fellow Republicans in the state legislature[1] have described this process in the Proposed Preliminary Objections Brief that they attached to a Petition to Intervene filed on July 8, 2020, in the Commonwealth Court. *See* Petition to Intervene in *NAACP v. Boockvar*, attached as Exhibit D, at attachment Aat 1:

> The political branches of government are now in the process of analyzing the conduct of the Primary Election.

---

[1] Plaintiffs' fellow Republicans apparently disagree with Plaintiffs about the adequacy of Pennsylvania's election management efforts. *See* Ex. Dat 1 (stating that the 2020 primary election "operated within a well-considered framework that performed admirably given the exigent circumstances" of the COVID-19 pandemic).

> They recently enacted Act 35 of 2020, which will require
> the Secretary of the Commonwealth to publish a report
> on the 2020 Primary Election, to include a data analysis
> of the recent reforms of [legislation creating and
> amending election procedures]. From this, the political
> branches will be able to analyze the conduct of the 2020
> Primary Election so that they are in a position to enact
> such additional measures as may be required for the 2020
> General Election.

The legislation referred to, 71 P.S. § 279.6, requires the Department of State to collect information from the Counties and furnish a report to the legislature by August 1, 2020. This report, which the Department must also publish on its website, is to provide detailed information on 25 different primary-related topics, including numbers of absentee and mail-in ballot applications and approvals, misdelivered or wrongly voted ballots, canvassing procedures, ballot challenges, and polling place consolidation. The fact that this detailed information will shortly be available to Plaintiffs further lessens any need for expedited discovery.

### C.    Granting Expedited Discovery Would Put an Unreasonable Burden on the Bucks, Chester, and Montgomery Boards, the Voters They Serve, and the Courts

Under any circumstances, providing the massive amounts of discovery Plaintiffs seek would be a burdensome undertaking. To provide that discovery in two weeks, while also absorbing Plaintiffs' Complaint, preparing Rule 12 Motions, and, most importantly, preparing for the 2020 general election, would severely prejudice the Bucks, Chester, and Montgomery Boards. As the Court is no doubt

aware, the COVID-19 pandemic has put a strain on government functions across the Commonwealth and the country; social distancing requirements mean that many offices are operating with limited personnel, making physical and electronic files more difficult to access and copy.  Accordingly, responding to expedited discovery would cause a hardship to the Bucks, Chester, and Montgomery Boards and could divert them from their critical election-related responsibilities. Moreover, because Plaintiffs' discovery requests will apparently call for information protected by various privileges and will raise issues of relevance and burdensomeness, permitting expedited discovery will also generate discovery disputes that could burden the Court and its staff.

## III.   CONCLUSION

As stated above, and as set forth in the attached proposed Order, the Boards of Elections of Bucks, Chester, and Montgomery Counties respectfully request that the Court order expedited briefing of Rule 12 Motions, allowing at least two weeks from the date of the Order for the Boards to file their Motions. The Boards respectfully request that the Court otherwise DENY Plaintiffs' Motion.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Date: July 13, 2020

By:   */s/ Mark A. Aronchick*
      Mark A. Aronchick (PA 20261)
      Michele D. Hangley*
      Robert A. Wiygul*
      John B. Hill*
      One Logan Square, 27th Floor
      Philadelphia, PA  19103
      Telephone: (215) 496-7050
      Email: maronchick@hangley.com

*Counsel for Bucks, Chester, and Montgomery
Counties' Boards of Elections*

\*  *Pro hac vice motions to be filed*

## <u>CERTIFICATE OF SERVICE</u>

I, Mark A. Aronchick, certify that on July 13, 2020, I caused a true and correct copy of the foregoing Response to be electronically filed and served with the Court using the Electronic Case Filing System.

<u>/s/ Mark A. Aronchick</u>

Mark A. Aronchick