# EXHIBIT D

Received 7/8/2020 6:11:54 PM Commonwealth Court of Pennsylvania

Filed 7/8/2020 6:11:54 PM Commonwealth Court of Pennsylvania
364 MD 2020

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

## No. 364 MD 2020

**NAACP PENNSYLVANIA STATE CONFERENCE,**

**Petitioner,**

**v.**

**KATHY BOOCKVAR, IN HER CAPACITY AS SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; AND JESSICA MATHIS, IN HER CAPACITY AS DIRECTOR OF THE BUREAU OF ELECTION SERVICES AND NOTARIES OF THE PENNSYLVANIA DEPARTMENT OF STATE,**

**Respondents,**

**BRYAN CUTLER, SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES, KERRY BENNINGHOFF, MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES,**

**Proposed-Intervenor Respondents.**

## PETITION TO INTERVENE BY SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES BRYAN CUTLER AND MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES KERRY BENNINGHOFF

**CHALMERS & ADAMS LLC**
Zachary M. Wallen
Pa. ID No. 309176
301 South Hills Village Drive,
No. LL200-420
Pittsburgh, PA 15241

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the House of the Pennsylvania House of Representatives Kerry Benninghoff*

Proposed Intervenor Respondents, Bryan Cutler, Speaker of the Pennsylvania House of Representatives, and Kerry Benninghoff, Majority Leader of the Pennsylvania House of Representatives (collectively, "House Leaders"), by and through their undersigned counsel, hereby move to intervene as respondents in the above-captioned proceeding under Rule 2328 of the Pennsylvania Rules of Civil Procedure.  In support of this Petition, the House Leaders submit a:

(1)     Memorandum of Law in Support of Petition to Intervene by Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the Pennsylvania House of Representatives Kerry Benninghoff, which is filed contemporaneously herewith;

(2)     proposed Preliminary Objections and supporting Memorandum of Law, which the House Leaders will file in this action if permitted to intervene, are attached as **Exhibit "A"**;

(3)     proposed Order, granting this Petition, is attached as **Exhibit "B";**

(4)     verifications, affirming the truth of the factual statements set forth in this Petition, are attached as **Exhibit "C"**.

**WHEREFORE**, the House Leaders respectfully request that the Court **GRANT** this Petition to Intervene and allow the House Leaders to intervene as respondents in this action.

3

Dated:  July 8, 2020

Respectfully submitted,

*/s/ Zachary M. Wallen*
Zachary M. Wallen
Pa. ID No. 309176
**CHALMERS & ADAMS LLC**
301 South Hills Village Drive,
No. LL200-420
Pittsburgh, PA 15241

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Mike Turzai and Majority Leader of the House of the Pennsylvania House of Representatives Bryan Cutler*

# EXHIBIT "A"

**NOTICE TO PLEAD**
**Petitioner: You are hereby notified to file**
**a written response to the enclosed**
**Preliminary Objections within thirty (30)**
**days from service hereof, or a judgment**
**may be entered against you.**

**/s/ Zachary M. Wallen**
**Zachary M. Wallen**
**Counsel for Proposed-Intervenor**
**Respondents**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

## No. 364 MD 2020

**NAACP PENNSYLVANIA STATE CONFERENCE,**

**Petitioner,**

**v.**

**KATHY BOOCKVAR, IN HER CAPACITY AS SECRETARY OF THE**
**COMMONWEALTH OF PENNSYLVANIA; AND JESSICA MATHIS, IN**
**HER CAPACITY AS DIRECTOR OF THE BUREAU OF ELECTION**
**SERVICES AND NOTARIES OF THE PENNSYLVANIA**
**DEPARTMENT OF STATE,**

**Respondents,**

**BRYAN CUTLER, SPEAKER OF THE PENNSYLVANIA HOUSE OF**
**REPRESENTATIVES, KERRY BENNINGHOFF, MAJORITY LEADER**
**OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES,**

**Proposed-Intervenor Respondents.**

**PROPOSED-INTERVENOR RESPONDENTS SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES BRYAN CUTLER AND MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES KERRY BENNINGHOFF'S PRELIMINARY OBJECTIONS**

**CHALMERS & ADAMS LLC**
Zachary M. Wallen
Pa. ID No. 309176
301 South Hills Village Drive,
No. LL200-420
Pittsburgh, PA 15241

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the House of the Pennsylvania House of Representatives Kerry Benninghoff*

ii

Proposed-Intervenor Respondents, Speaker of the Pennsylvania House of Representatives, Bryan Cutler, and Majority Leader of the Pennsylvania House of Representatives, Kerry Benninghoff (collectively, "the House Leaders"), file these Preliminary Objections to explain that this Court should refrain from involving itself in an unripe political question and dismiss the Petition.

## PRELIMINARY STATEMENT

The COVID-19 pandemic has impacted all facets of American life, including the administration of elections. While the recent June 2, 2020 Primary Election did not occur without some problems, it operated within a well-considered framework that performed admirably given the exigent circumstances.

The political branches of government are now in the process of analyzing the conduct of the Primary Election. They recently enacted Act 35 of 2020, which will require the Secretary of the Commonwealth to publish a report on the 2020 Primary Election, to include a data analysis of the recent reforms of Act 77 of 2019 and Act 12 of 2020. From this, the political branches will be able to analyze the conduct of the 2020 Primary Election so that they are in a position to enact such additional measures as may be required for the 2020 General Election.

Instead of allowing the Secretary of the Commonwealth to draft the report required by Act 35, and permitting the political branches to analyze those findings and data and to continue to craft legislation addressing any needed changes,

1

Petitioner desires this Court to redesign an election code of Petitioner's own choosing, notwithstanding the damage to our constitutional norms.

This would an extremely inappropriate insertion of this Court into the political process four months before the Election in question, and without its knowing whether *any* of the COVID-19-related difficulties forecast by Petitioner will come to pass. As such, the appropriate constitutional course of action is to allow the political process to appropriately address any continued changes needed to the Election Code, and therefore, to dismiss the Petition.

In evaluating the Petition, Petitioner lacks the standing necessary to bring this action. Petitioner is an association, in contravention of well-established case law that only individuals have standing to bring election-related claims in Pennsylvania.

Secondly, Petitioner has failed to join the indispensable parties, the county election boards, as they would be the parties tasked with implementing much of Petitioner's requested relief. As such, Petitioner's claims should be dismissed on jurisdictional grounds for failure to join a necessary party.

Should it be necessary to look at the merits of the Petition, Petitioner does not properly support its allegations. Petitioner makes a series of suppositions of future calamitous harms—many extremely far-fetched or based on laws and procedures that are no longer in effect—that would allegedly necessitate this Court taking the extreme step of replacing numerous provisions of the Election Code with a variety

of measures of Petitioner's own choosing. Moreover, this relief allegedly needs to occur *now*, rather than to allow the continued bipartisan triaging of COVID-19-related issues.

The Legislative and Executive Branches took the proactive step, in Act 77 of 2019, of modernizing Pennsylvania's voting process to allow for no-excuse voting by mail. When the unforeseen COVID-19 pandemic swept the world, the Commonwealth was ready with carefully considered voting procedures that allowed for free and fair elections. Furthermore, the Legislative and Executive Branches took further bipartisan steps to move the Primary Election date and to enact election procedures compatible with social distancing, and they have shown through the enactment of Act 35 that they continue to actively monitor the situation.

Petitioner, which is not a voter with standing to even challenge the provisions in question, looks to undo these bipartisan reforms and to have this Court set election policy of Petitioner's own choosing. This request for relief is inapposite to federal and state constitutional principles and this Court's well-reasoned policy of judicial restraint in election cases.

As Petitioner lacks standing to bring this claim, failed to join necessary parties, alleges no constitutional violation, and requests a nonjusticiable remedy, this action should be dismissed with prejudice.

## I.    FACTUAL BACKGROUND

1.      Petitioner, a Pennsylvania-based association, filed its Petition for Review with this Court on June 18, 2020, seeking for this Court to impose five election regulations of its choosing, namely a) that this Court "[d]irect Respondents to require each county board of election to maintain a sufficient a number of polling places such that each resident can exercise his or her right to vote"; b) that this Court "[d]irect Respondents to provide that each county board of election give adequate notice to voters of any change in polling place by mailing notice to voters sufficiently in advance of the General Election, as well as posting at old polling places"; c) that this Court "[p]ermit early voting for the General Election in advance of election day"; d) that this Court "[r]equire increased access to vote by mail across the Commonwealth, by among other things, automatically sending mail-in ballot applications to all registered voters in accordance with their language preferences; ensuring that absentee and mail-in ballots are available in formats that are accessible to voters with disabilities without requiring assistance from another person; requiring each county to provide ballot dropboxes, and accepting ballots returned to a drop-box by close of polls on Election Day; and providing adequate guidance to election officials when verifying mail ballots through signature matching and require notice and an opportunity to cure a mail ballot flagged for signature mismatch"; and e) that this Court "[r]equire that all polling places in the Commonwealth use hand-

marked paper ballots for the 2020 General Election, while retaining at least one accessible voting machine per polling place for those who request one and as required by federal law." Pet. pp. 66-67.

2.      This lawsuit impacts a variety of bipartisan election reform laws that the Legislative and Executive branches have worked to create over the past year, starting with Act 77 of 2019.

3.      Pennsylvania has traditionally only allowed absentee voting by those with a statutorily defined excuse to do so, such as physical disability or absence from their municipality on Election Day. *See* 25 P.S. § 3146.1.

4.      For someone to vote absentee, the voter would have had to provide a permissible reason to do so, and the voter would have been provided with an absentee ballot that would have had to be returned by the voter no later than 5:00 p.m. *on the Friday before the election*. *Id*.

5.      In addition to allocating $90 million to ensuring that Pennsylvanians could vote safely and securely on modern voting machines, Act 77 of 2019 created a new category of "no excuse" mail-in voting. 2019 Pa. Legis. Serv. Act 2019-77 (S.B. 421) (West).

6.      These no excuse mail-in voters now do not have to provide the traditional reason to vote by mail, can request those ballots later in the process than was previously possible, and are able to return their ballots several days later than

had been traditionally been allowed—8:00 p.m. on Election Day. *Id*. The traditional voting options remain available—voters may still choose to request an absentee ballot if they have a statutorily permitted reason for doing so, or vote in-person on Election Day. *See* 25 P.S. § 3146.1; 25 P.S. § 3031.12.

7.      The Legislative and Executive Branches have continued to work diligently to fine-tune these election reforms. Act 94 of 2019 was enacted in November 2019 to streamline operations to ensure that the ballot materials were suitable to allow the ballots to be properly scanned. 2019 Pa. Legis. Serv. Act 2019-94 (H.B. 227) (West).

8.      As COVID-19 upended seemingly every facet of American life, once again, the Legislative and Executive Branches worked together to fashion bipartisan legislation to address the problem. Act 12 of 2020 introduced numerous accommodations to ensure that the 2020 Primary Election could be conducted even amidst the COVID-19 pandemic. 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West).

9.      The date of the Primary Election was moved until June to allow more time to "flatten the curve" and protect the health of Pennsylvania's voters. *Id*. In that same spirit, polling places were consolidated so that voters could vote in readily accessible locations that were large enough to maintain social distancing. *Id.* Act 12 also gave more flexibility to the counties, to establish polling places without court

approval and even, for the first time, to hold voting in locations that serve alcohol, should those be the venues that best support the community's needs and promote social distancing. *Id*.

10.     Following the June 2, 2020 Primary Election, the political branches again worked in bipartisan fashion to enact Act 35 of 2020, which will require the Secretary of the Commonwealth to publish a report on the 2020 Primary Election, to include a data analysis of the recent reforms of Act 77 of 2019 and Act 12 of 2020. 2020 Pa. Legis. Serv. Act 2020-35 (H.B. 2502) (West).

11.     From the Act 35 report, the Legislative and Executive Branches will be able to analyze the 2020 Primary Election and use those findings to enact all further measures as may be required to ensure that the Commonwealth continues to have free and fair elections.

## II.    PRELIMINARY OBJECTIONS

### A.    FIRST PRELIMINARY OBJECTION: Petitioners Lack Standing to Bring This Action (Pa. R. Civ. P. 1028(a)(4))

12.     House Leaders hereby incorporate all foregoing paragraphs as if they were fully set forth herein.

13.     Petitioner lacks standing to sue in this case because the right to vote and the right to have one's vote counted is at issue, and Petitioner is not an entity authorized to vote in the Commonwealth.

7

14.    To have standing, a party in an action must establish "a substantial, direct and immediate interest in the outcome of the litigation." *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013) (quoting *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009)).

15.    In certain contexts, it is true that an association "has standing as representative of its members to bring a cause of action even in the absence of injury to itself, if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the action challenged." *Id.* at 922 (citing *Phila. Med. Soc'y v. Dep't of Pub. Welfare*, 39 A.3d 267, 278 (Pa. 2012)).

16.    But Pennsylvania courts have repeatedly held that an association does not have standing, even on behalf of its members, when the right to vote and the right to have one's vote counted are the subject of the challenge. Order ¶ 4, *League of Women Voters of Pa. v. Commonwealth*, No. 261 M.D. 2017 (Pa. Commw. Ct. filed Nov. 13, 2017) (dismissing the League of Women Voters of Pennsylvania because it was not authorized by law to exercise the right to vote in the Commonwealth); *Erfer v. Commonwealth*, 794 A.2d 325, 330 (Pa. 2002); *Albert v. 2001 Legis. Reapportionment Comm'n*, 790 A.2d 989, 994–95 (Pa. 2002).

17.    "[T]he right to vote is personal" and the rights sought to be vindicated in a challenge are "personal and individual." *Albert*, 790 A.2d at 995 (quoting *Reynolds v. Sims*, 377 U.S. 533, 554–55 (1964)). When "the right to vote and the

8

right to have one's vote counted is the subject matter of a . . . challenge," then "any entity not authorized by law to exercise the right to vote in this Commonwealth lacks standing." *Id.* at 994–95; *see also Erfer*, 794 A.2d at 330 (dismissing Democratic Committee). "The factor that elevates the general interest of each registered voter to one that is sufficiently substantial to confer standing to challenge a candidate's nomination petition is that voter's eligibility to participate in the election." *In re Pasquay*, 525 A.2d 13, 14 (Pa. Commw. Ct. 1987), *aff'd* 529 A.2d 1076 (Pa. 1987).

18.    Accordingly, an entity that does not possess the right to vote in the Commonwealth does not have a direct, substantial, and immediate interest in litigation over the right to vote and the right to have one's vote counted. The operative factor in these standing decisions was that the challenges sought to vindicate "the right to vote and the right to have one's vote counted." *Erfer*, 794 A.2d at 330; *Albert*, 790 A.2d at 994–95.

19.    By contrast, Petitioner brings suit based on factors better attributed to changed programming resulting from new election procedures—something that would be true even if their own sought-after election procedures were imposed by judicial fiat ("NAACP-PSC itself will have to divert substantial resources away from traditional voter registration and get-out-the-vote efforts in order to educate and

assist voters in applying for mail-in voting, submitting mail-in ballots, locating polling places, and travelling to polling places.") Pet. ¶ 23.[1]

20.   Petitioner attempts to claim standing via the diversion of its resources through the changing of the law. This is wholly insufficient, and inconsistent with the standing requirements this Court has imposed in past voting rights cases.

21.   There is no allegation that Petitioner is an entity authorized by law to vote in the Commonwealth. *See Erfer*, 794 A.2d at 330; *Albert*, 790 A.2d at 994–95. Entities such as a state political party (the Pennsylvania State Democratic Committee), governmental entities (the Board of Commissioners of Radnor Township, the Board of Commissioners of the Township of Lower Merion, the Township of Lower Merion, the Township of Ross, and the North Hills School District), civic groups (the Lehigh Valley Coalition for Fair Reapportionment, the Neighborhood Club of Bala Cynwyd, and the League of Women Voters of Pennsylvania), and political party committee chairs (Dennis J. Sharkey and Nora Winkelman in their representative capacities as chairs of Republican and Democratic committees)—notwithstanding their own organizational interests in voting rights, as Petitioner alleges in this case—have each been held not to have standing in voting rights cases. *See Erfer*, 794 A.2d at 330; *Albert*, 790 A.2d at 994–95; *League of*

---

[1] Petitioner also makes vague references to its members "fac[ing] unreasonable burdens on their right to suffrage." Pet ¶ 23.

*Women Voters of Pa. v. Commonwealth*, No. 261 M.D. 2017 (Pa. Commw. Ct. filed Nov. 13, 2017).

22.     Accordingly, Petitioner lacks capacity to sue—either individually or on behalf of its members—due to the nature of the claims in this case and therefore this action must be dismissed due to lack of standing.

WHEREFORE, for the reasons above, the House Leaders respectfully request that this Court sustain their Preliminary Objection for Petitioners lack of standing and dismiss with prejudice the petition for review.

## B.    SECOND PRELIMINARY OBJECTION: Petitioners Failed to Include All Necessary Parties (Pa. R. Civ. P. 1028(a)(5))

23.     House Leaders hereby incorporate all foregoing paragraphs as if they were fully set forth herein.

24.     Pennsylvania law establishes that a court must join indispensable parties to an action, or, if not possible, dismiss the action "[w]henever it appears by suggestion of the parties or otherwise . . . that there has been a failure to join an indispensable party." Pa. R. Civ. P. 1032(b).

25.     Indispensable parties are those "whose rights are so directly connected with and affected by litigation that [the entity] must be a party of record to protect such rights[.]" *Columbia Gas Transmission Corp. v. Diamond Fuel Co.*, 346 A.2d 788, 789 (Pa. 1975).

26.     Significantly, "[t]he absence of indispensable parties *goes absolutely to the jurisdiction*, and without their presence the court can grant no relief." *Powell v. Shepard*, 113 A.2d 261, 264-65 (Pa. 1955) (emphasis added); *see also Sprague v. Casey*, 550 A.2d 184, 189 (Pa. 1988) ("unless all indispensable parties are made parties to an action, a court is powerless to grant relief. Thus, the absence of such a party goes absolutely to the court's jurisdiction.") (citations omitted); *Fiore v. Oakwood Plaza Shopping Center, Inc.*, 585 A.2d 1012, 1020 (Pa. Super. Ct. 1991) ("In this Commonwealth, the issue of failure to join an indispensable party cannot be waived; if such a party is not joined, a court is without jurisdiction to decide the matter").

27.     A party is indispensable "when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience . . ." *Hartley v. Langkamp & Elder*, 90 A. 402, 403-404 (Pa. 1914).

28.     The Pennsylvania Supreme Court has laid out a series of factors to consider as to whether a party is indispensable, namely: "1. Do absent parties have a right or interest related to the claim? 2. If so, what is the nature of that right or interest? 3. Is that right or interest essential to the merits of the issue? 4. Can justice be afforded without violating the due process rights of absent parties?" *DeCoatsworth v. Jones*, 639 A.2d 792, 797 (Pa. 1994).

29.    Here, the Commonwealth's county boards of elections are indispensable parties to this case because the Petition seeks to alter their conduct, requiring them to be parties in the case. It is the *county boards of elections*, not the Secretary of the Commonwealth, who would have to have to provide much of the requested relief through the boards being required to take affirmative actions. *See* Pet. pp. 66-67.

30.    For example, Petitioner requests that this court to "[d]irect Respondents *to require each county board of election* to maintain a sufficient number of polling places . . . and to [d]irect Respondents to provide that *each county board of election* give adequate notice to voters of any change in polling place. . ., and to "[r]equire that all polling places in the Commonwealth use hand-marked paper ballots for the 2020 General Election, while retaining at least one accessible voting machine per polling place. . ." *Id.* (emphasis added).

31.    Petitioner mis-applies the Election Code and mistakenly treats the county election boards as though they are the agents of the Secretary of the Commonwealth, but the county boards of elections play a separate and pivotal role in the governance of Pennsylvania elections.

32.    To the extent that Petitioner seeks for this Court to direct their administration of elections, they must be joined as a party to this action. Therefore, their interests are essential to the merits of this case and deciding the case without

their involvement would violate their due process rights. *See DeCoatsworth*, 639 A.2d at 797.

33.     In *Banfield v. Cortes*, petitioners brought a challenge to the use of certain Direct Recording Electronic voting systems (DREs) being used in various counties in the Commonwealth. 922 A.2d 36 (Pa. Commw. Ct. 2007). In response, the Secretary of the Commonwealth submitted preliminary objections, including the objection that the Court lacked jurisdiction due to the petitioners' failure to join the county elections boards who had purchased and were using the voting systems in question. *Id*.

34.     In a divided, 4-3 decision, the Court rejected the Secretary of the Commonwealth's preliminary objection that the county elections boards were indispensable parties to that action, but that denial was based on the fact that the petitioners did "not seek redress from the . . . counties, and, because the November 2006 election has passed, the fifty-six counties will not be prejudiced by a judgment in favor of Electors." *Id*. at 44.

35.     The dissent argued, however, that "the County Boards of Elections are indispensable parties. They made the decision to purchase one of the seven DRE voting systems approved by the Secretary. They will be affected by the decision of this Court, should it decide to order the Secretary to decertify the seven DRE voting systems. Their absence leaves this Court without jurisdiction." *Id*. at 56 (Leavitt, J.

14

dissenting). "Because Petitioners have failed to name indispensable parties, *i.e.,* the County Boards of Elections, as respondents, I would sustain the Secretary's demurrer . . . for lack of jurisdiction." *Id*.

36.    The fact pattern of the present case would more than satisfy the standards set forth in both the majority and dissenting opinions in *Banfield*. Here, Petitioner is directly seeking relief from the county boards of elections, including relief dealing with the voting machines being used in individual counties, and doing so shortly before the 2020 elections, but has failed to join those boards of elections in these proceedings.

37.    Both factors weigh heavily that the county elections boards are indispensable parties, and therefore to grant the requested relief would be incompatible with Pennsylvania law, as the county boards of elections "ha[ve] such an interest that a final decree cannot be made without affecting [them]." *Hartley,* 90 A. at 403-404.

38.    This also differs from a recent federal case in the District Court for the Western District of Pennsylvania, where the plaintiffs challenging the conduct of the Commonwealth's elections did join the 56 county boards of elections from which they were seeking relief. *See Donald J. Trump for President, Inc. v. Boockvar*, Civil Action No. 2:20-cv-00966, Verified Complaint for Declaratory and Injunctive Relief (W.D.Pa. filed June 29, 2020).

39.     Finally, in looking at the very issue as to whether the county elections boards are indispensable parties in a challenge seeking to alter the received-by deadline for absentee and mail-in ballots, Judge Leavitt recently deemed it "a compelling case that the county boards of elections have a direct interest in the Petition and as such are indispensable parties." Memorandum Opinion, *Crossey v. Boockvar*, 266 M.D. 2020 (Pa. Commw. Ct. filed May 28, 2020).

WHEREFORE, for the reasons above, the House Leaders respectfully request that this Court sustain their Preliminary Objection for legal insufficiency of the pleading due to the failure to join necessary parties and dismiss with prejudice the petition for review.

### C.    THIRD PRELIMINARY OBJECTION: Petitioners Do Not Allege an Actual Constitutional Violation (Pa. R. Civ. P. 1028(a)(4))

40.     House Leaders hereby incorporate all foregoing paragraphs as if they were fully set forth herein.

41.     Petitioner's allegations are devoid of a concrete, cognizable legal injury, and are instead improperly premised on a series of suppositions about harms that may befall the Commonwealth in the future, should their scenarios come to pass. Petitioner premises its claim for relief on its prognostications as to future unknown conditions that *may* result in unknown future legislation that *may* be unconstitutional. These claims are simply too speculative to sustain the Petition.

42.     The primary focus of Petitioner's concerns are the procedures previously put into place for the Primary Election pursuant to Act 12. To be sure, the COVID-19 pandemic necessitated unprecedented measures, such as the consolidation of polling places, which were enacted to allow for a safe and workable election even in the pandemic's wake. *See* Pet. ¶ 61.

43.     Act 12 of 2020 introduced numerous accommodations to ensure the 2020 Primary Election could be conducted safely. 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West). The date of the Primary Election was moved until June to allow more time to "flatten the curve" and protect the health of Pennsylvania's voters. *Id*.

44.     In that same spirit, polling places were consolidated so that voters could vote in readily accessible locations that were large enough to maintain social distancing. *Id.* Act 12 also gave more flexibility to the counties, to establish polling places without court approval. *Id*.

45.     These extraordinary measures certainly had limitations—which is why they were enacted on a temporary basis to deal with *one particular election* being conducted in the middle of a pandemic.

46.     As Petitioner acknowledges, "the emergency election procedures in Act 12 by its terms applied only to the Primary Election. . ." Pet. ¶ 73. Despite that acknowledgment, Petitioner seeks for this Court to preempt the hypothetical "threat

that substantially similar legislation will be passed that will be applied to the November 2020 election. . ." *Id.*

47.    "In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action." *Stilp v. Commonwealth,* 940 A.2d 1227, 1233 (Pa. 2007). "An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009). "The interest is direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003).

48.    Here Petitioner's alleged injury could not be more speculative. It relies on a string of conjectures and theories about future scenarios and laws that *may* be enacted in the future, and thus falls substantially short of "rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision." *Yocum v. Commonwealth of Pennsylvania Gaming Control Bd.*, 161 A.3d 228, 238 (Pa. 2017). Petitioner simply cannot sustain an as-applied challenge without demonstrating an actual, demonstrated injury.

49.    "[R]ipeness overlaps substantially with standing." *Rendell v. Pa. State Ethics Comm'n*, 983 A.2d 708, 718 (Pa. 2009). This Court "do[es] not have the

ability to grant any relief that is merely advisory, one that does not involve any case or controversy. Any action . . . may not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic." *Brown v. Liquor Control Bd.*, 673 A.2d 21, 23 (Pa. Commw. Ct. 1996).

50.     Ripeness "arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. . . . It has been defined as the presence of an actual controversy. . . . It insists on a concrete context, where there is a final . . . action so that the court can properly exercise their function." *Tex. Keystone Inc. v. Pa. Dept. of Conservation & Nat. Res.*, 851 A.2d 228, 239 (Pa. Commw. Ct. 2004).

51.     Here, Petitioner can speculate as to how the COVID-19 pandemic will develop throughout the next four months and how the political branches may respond to those developments, but as it acknowledges in its Petition, "[n]obody has a crystal ball." Pet. ¶ 39.

52.     The political branches only recently enacted Act 35, through which a thorough analysis of the Primary Election will be conducted. The political branches will then use those findings to deliberately consider what policies may be necessary for the conduct of future elections.

19

53.     Moreover, for this Court to grant the Petition, this Court would need to wade into the political question of election policy choices, which are the product of bipartisan and bicameral compromise.

54.     The Separation of Powers Doctrine holds "that the executive, legislative, and judicial branches of government are equal and none should exercise powers exclusively committed to another branch." *Jefferson Cty. Court Appointed Emp. Ass'n v. Pa. Labor Relations Bd.,* 985 A.2d 697, 703 (Pa. 2009

55.     The U.S. and Pennsylvania Constitutions place great emphasis on the role of the Legislative branch in the setting of election policy. One of the very first provisions of the U.S. Constitution is the Elections Clause, providing that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. Constitution Art. I, Section 4, Clause 1.

56.     Legislative Branch power as to election procedure is further codified in the Pennsylvania Constitution. *See, e.g.*, Pa. Constitution Art. VII, Section 1 ("Every citizen 21 years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact."; Pa. Constitution Art. VII, Section 16 ("The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of

any election, be absent from the municipality of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.").

57.    "The presumption that legislative enactments are constitutional is strong." *Working Families Party v. Commonwealth*, 209 A.3d 270, 279 (Pa. 2019) (*citing Commonwealth v. McMullen*, 961 A.2d 842, 846 (Pa. 2008)); *see also* 1 Pa.C.S. § 1922(3) (in ascertaining intent of General Assembly in enactment of statute, presumption exists that General Assembly did not intend to violate federal and state constitutions).

58.    "[A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute 'clearly, palpably, and plainly' violates the Constitution." *Konidaris v. Portnoff Law Associates, Ltd.*, 953 A.2d 1231, 1239 (Pa. 2008) (citation omitted).

59.    "All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Working Families Party*, 209 A.3d at 279

(citations omitted). Moreover, "statutes are to be construed whenever possible to uphold their constitutionality." *In re William L.*, 383 A.2d 1228, 1231 (Pa. 1978).

60.    This is especially true in the election context, where Pennsylvania courts have long recognized that "[t]he power to regulate elections is a legislative one, and has been exercised by the general assembly since the foundation of the government." *Winston v. Moore*, 91 A. 520, 522 (Pa. 1914) (citing *Patterson v. Barlow*, 60 Pa. 54 (Pa. 1869)).

61.    In addressing election policy, "the judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania." *In re Guzzardi*, 99 A.3d 381 (Pa. 2014).

62.    This judicial restraint was also the Supreme Court of Pennsylvania's holding in a recent challenge to Act 77's received-by deadline, where the Court sustained Respondents' demurrer and dismissed the case with prejudice. *Disability Rights Pa. v. Boockvar*, 2020 WL 2820467 (Pa. 2020).

WHEREFORE, for the reasons above, the House Leaders respectfully request that this Court sustain their Preliminary Objection for legal insufficiency of the pleading and dismiss with prejudice the petition for review.

**D.      FOURTH PRELIMINARY OBJECTION: Petitioners Have Not Pleaded a Justiciable Remedy (Pa. R. Civ. P. 1028(a)(2))**

63.     House Leaders hereby incorporate all foregoing paragraphs as if they were fully set forth herein.

64.     Should this Court need to consider the relief sought by Petitioner, its requested relief is itself unconstitutional, as violative of the Separation of Powers, and must be struck for its failure to conform to the law.

65.     The Pennsylvania Constitution provides that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Pa. Constitution Art. II, Section 1.

66.     While this Court may declare a statute unconstitutional upon review, the judiciary's power is strictly limited. This is because the Pennsylvania General Assembly—not the judiciary—holds the sole power to write the laws for the Commonwealth. *Id*.

67.     As the Pennsylvania Supreme Court has noted, the judiciary "may not usurp the province of the legislature by rewriting [statutes]…as that is not [the court's] proper role under our constitutionally established tripartite form of governance." *In re: Fortieth Statewide Investigating Grand Jury*, 197 A.3d 712, 721 (Pa. 2018).

68.     Accordingly, where the court determines that a law is unconstitutional, "it is not the role of this Court to design an alternative scheme which may pass

constitutional muster." *Heller v. Frankston*, 475 A.2d 1291, 1296 (Pa. 1984). The Courts "will not judicially usurp the legislative function and rewrite [the statute]. . . Rather, we leave it to our sister branch for an appropriate statutory response. . ." *Commonwealth v. Hopkins*, 117 A.3d 247, 262 (Pa. 2015).

69.     As such, when a court invalidates a law, the court must grant the Legislature sufficient time to consider and enact remedial legislation. *See, e.g.*, *League of Women Voters v. Commonwealth*, 178 A.3d 737, 821 (Pa. 2018) (providing timeframe for General Assembly and Governor to enact remedial redistricting plan); *Robinson Twp. v. Commonwealth*, 147 A.3d 536, 582–83 (Pa. 2016) (staying decision for 180 days "in order to allow the General Assembly sufficient time to devise a legislative solution"); *Cali v. Philadelphia*, 177 A.2d 824, 835 (Pa. 1962). The Court cannot take unilateral action to rewrite the law, as that would overstep the bounds of its authority. *Robinson Twp.*, 147 A.3d at 583; *Cali*, 177 A.2d at 835.

70.     Should this Court determine that any of the provisions at issue are unconstitutional, the Court does not have the authority to issue the orders or take any actions requested by Petitioner, as the requested relief would require legislative action.

71.     Such action by the Court would be a clear "excession of the scope of [the Court's] power and authority," *Glancey v. Casey*, 288 A.2d 812, 817 (Pa. 1972),

and would amount to prohibited "judicial legislation," s*ee State Bd. of Chiropractic Exam'rs v. Life Fellowship of Pa.*, 272 A.2d 478, 482 (Pa. 1971) ("Conceivably, the statute could be rewritten so as to avoid constitutional infirmities. However, such a task lies properly with the Legislature, for additional editing of [the statute] on our part would amount to judicial legislation.").

72.    While the Court has the power to review the Election Code, it cannot direct the Legislature *how* to fix any alleged constitutional defect. If any provision is held to be unconstitutional, it is the sole province of the Legislature to determine how to address it. Accordingly, because the Court cannot grant the requested relief contained in the Petitioners' Prayer for Relief as a matter of law, the offending requests must be struck pursuant to Pa. R. Civ. P. 1028(a)(2).

WHEREFORE, for the reasons above, the House Leaders respectfully request that this Court sustain their Preliminary Objection for failure to conform their pleading as a matter of law and dismiss with prejudice the petition for review.

Respectfully submitted,

/s/ Zachary M. Wallen
Zachary M. Wallen
Pa. ID No. 309176
**CHALMERS & ADAMS LLC**
301 South Hills Village Drive
No. LL200-420
Pittsburgh, PA 15241

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the House of the Pennsylvania House of Representatives Kerry Benninghoff*

26

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

No. 364 MD 2020

NAACP PENNSYLVANIA STATE CONFERENCE,

Petitioner,

v.

KATHY BOOCKVAR, IN HER CAPACITY AS SECRETARY OF THE
COMMONWEALTH OF PENNSYLVANIA; AND JESSICA MATHIS, IN
HER CAPACITY AS DIRECTOR OF THE BUREAU OF ELECTION
SERVICES AND NOTARIES OF THE PENNSYLVANIA
DEPARTMENT OF STATE,

Respondents,

BRYAN CUTLER, SPEAKER OF THE PENNSYLVANIA HOUSE OF
REPRESENTATIVES, KERRY BENNINGHOFF, MAJORITY LEADER
OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES,

Proposed-Intervenor Respondents.

## [PROPOSED] ORDER

Now, this _____ day of _____, 2020, upon consideration of the Preliminary

Objections filed by Speaker of the Pennsylvania House of Representatives Bryan

Cutler and Majority Leader of the Pennsylvania House of Representatives Kerry

Benninghoff, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the

Preliminary Objections are **SUSTAINED**.  The petition for review in the above action is hereby dismissed with prejudice.

**SO ORDERED BY THE COURT**:

_____

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

## No. 364 MD 2020

### NAACP PENNSYLVANIA STATE CONFERENCE,

Petitioner,

v.

### KATHY BOOCKVAR, IN HER CAPACITY AS SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; AND JESSICA MATHIS, IN HER CAPACITY AS DIRECTOR OF THE BUREAU OF ELECTION SERVICES AND NOTARIES OF THE PENNSYLVANIA DEPARTMENT OF STATE,

Respondents,

### BRYAN CUTLER, SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES, KERRY BENNINGHOFF, MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES,

Proposed-Intervenor Respondents.

### MEMORANDUM OF LAW IN SUPPORT OF PROPOSED-INTERVENOR RESPONDENTS SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES BRYAN CUTLER AND MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES KERRY BENNINGHOFF'S PRELIMINARY OBJECTIONS

**CHALMERS & ADAMS LLC**
Zachary M. Wallen
Pa. ID No. 309176
301 South Hills Village Drive,
No. LL200-420
Pittsburgh, PA 15241

i

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the House of the Pennsylvania House of Representatives Kerry Benninghoff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... I

PRELIMINARY STATEMENT ...................................................................... 1

I.    FACTUAL BACKGROUND .................................................................. 4

II.   ARGUMENTS IN SUPPORT OF PRELIMINARY OBJECTIONS ............. 9

    A.    First Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(4):
        Petitioners Lack Standing to Bring This Action ................................... 9

    B.    Second Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(5):
        Petitioners Have Failed to Include Necessary Parties .......................... 9

    C.    Third Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(4):
        Petitioners Do Not Allege a Constitutional Violation ........................ 18

    D.    Fourth Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(2):
        Petitioners Have Not Plead a Justiciable Remedy .............................. 24

III.  CONCLUSION ................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Shapp*, 400 A.2d 1249 (Pa. 1979) ......................................................23

*Albert v. 2001 Legis. Reapportionment Comm'n*,
   790 A.2d 989 (Pa. 2002)........................................................................ 10, 11, 12

*Banfield v. Cortes*, 922 A.2d 36 (Pa. Commw. Ct. 2007) ......................... 16, 17, 18

*Boord v. Maurer*, 22 A.2d 902 (Pa. 1941)............................................................15

*Brown v. Liquor Control Bd.*, 673 A.2d 21 (Pa. Commw. Ct. 1996).....................20

*Cali v. Philadelphia*, 177 A.2d 824 (Pa. 1962).....................................................26

*City of Philadelphia v. Commonwealth*, 838 A.2d 566 (Pa. 2003) .......................20

*Columbia Gas Transmission Corp. v. Diamond Fuel Co.*,
   346 A.2d 788 (Pa. 1975)..................................................................................12

*Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015)...........................................25

*Commonwealth v. McMullen*, 961 A.2d 842 (Pa. 2008) ........................................23

*Crossey v. Boockvar*,
   266 M.D. 2020 (Pa. Commw. Ct. filed May 28, 2020)................................ 17, 18

*DeCoatsworth v. Jones*, 639 A.2d 792 (Pa. 1994)........................................... 13, 15

*Deer Creek Drainage Basin Auth. v. Cty. Bd. of Elections of Allegheny Cty.*,
   381 A.2d 103 (Pa. 1977)................................................................................ 14, 15

*Disability Rights Pa. v. Boockvar*, 2020 WL 2820467 (Pa. 2020).........................24

*Donald J. Trump for President, Inc. v. Boockvar*,
   Civil Action No. 2:20-cv-00966, (W.D. Pa. filed June 29, 2020)......................17

*Erfer v. Commonwealth*, 794 A.2d 325 (Pa. 2002) .................................... 10, 11, 12

*Fiore v. Oakwood Plaza Shopping Center, Inc.*,
   585 A.2d 1012 (Pa. Super. Ct. 1991)................................................................13

*Fumo v. City of Philadelphia*, 972 A.2d 487 (Pa. 2009) ...................................9, 19

*Glancey v. Casey*, 288 A.2d 812 (Pa. 1972).........................................................26

*Hartley v. Langkamp & Elder*, 90 A. 402 (Pa. 1914)...................................... 13, 17

*Heller v. Frankston*, 475 A.2d 1291 (Pa. 1984) ....................................................25

*In re Guzzardi*, 99 A.3d 381 (Pa. 2014)................................................................24

*In re Pasquay*, 525 A.2d 13 (Pa. Commw. 1987),
   *aff'd* 529 A.2d 1076 (Pa. 1987) .......................................................................10

*In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978) ...........................................23

*In re: Fortieth Statewide Investigating Grand Jury*,
   197 A.3d 712 (Pa. 2018).....................................................................................25

*Jefferson Cty. Court Appointed Emp. Ass'n v. Pa. Labor Relations Bd.*,
   985 A.2d 697 (Pa. 2009)......................................................................................21
*Konidaris v. Portnoff Law Associates, Ltd.*, 953 A.2d 1231 (Pa. 2008) ................23
*League of Women Voters of Pa. v. Commonwealth*,
   No. 261 M.D. 2017 (Pa. Commw. Ct. filed Nov. 13, 2017) ........................ 10, 12
*League of Women Voters v. Commonwealth*, 178 A.3d 737 (Pa. 2018) ................25
*Nutter v. Dougherty*, 921 A.2d 44 (Pa. Commw. Ct. 2007),
   *aff'd* 938 A.2d 401 (Pa. 2007).............................................................................15
*O'Donoghue v. United States*, 289 U.S. 516, 53 S.Ct. 740,
   77 L.Ed. 1356 (1933)...........................................................................................21
*Patterson v. Barlow*, 60 Pa. 54 (Pa. 1869)................................................................23
*Phila. Med. Soc'y v. Dep't of Pub. Welfare*, 39 A.3d 267 (Pa. 2012).......................9
*Powell v. Shepard*, 113 A.2d 261 (Pa. 1955)............................................................13
*Rendell v. Pa State Ethics Comm'n*, 983 A.2d 708 (Pa. 2009)................................20
*Reynolds v. Sims*, 377 U.S. 533 (1964).....................................................................10
*Robinson Twp. v. Commonwealth*, 147 A.3d 536 (Pa. 2016)...................................25
*Robinson Twp. v. Commonwealth*, 83 A.3d 901 (Pa. 2013).......................................9
*Sprague v. Casey*, 550 A.2d 184 (Pa. 1988).............................................................13
*State Bd. of Chiropractic Exam'rs v. Life Fellowship of Pa.*,
   272 A.2d 478 (Pa. 1971)......................................................................................26
*Stilp v. Commonwealth*, 940 A.2d 1227 (Pa. 2007)..................................................19
*Tex. Keystone, Inc., v. Pa. Dept. of Conservation & Nat. Res.,*
   851 A.2d 228 (Pa. Commw. Ct. 2004) ........................................................ 20, 21
*Winston v. Moore*, 91 A. 520 (Pa. 1914) .................................................................23
*Working Families Party v. Commonwealth*, 209 A.3d 270 (Pa. 2019) ...................23
*Yocum v. Commonwealth of Pennsylvania Gaming Control Bd.*,
   161 A.3d 228 (Pa. 2017)......................................................................................20

## Constitutional and Statutory Authorities

1 Pa.C.S. § 1922(3) ....................................................................................................23
25 P.S. § 3031.12 ........................................................................................................6
25 P.S. § 3146.1 .......................................................................................................5, 6
Pa. Constitution Art. II, Section 1 ..............................................................................25
Pa. Constitution Art. VII, Section 1 ...........................................................................22
Pa. Constitution Art. VII, Section 16 .........................................................................22
U.S. Constitution Art. I, Section 4, Clause 1 .............................................................22

## Other Authorities

2019 Pa. Legis. Journal-House 1740-41 (Oct. 29, 2019) .....................................5, 8

2019 Pa. Legis. Serv. Act 2019-77 (S.B. 421) (West)..................................... passim

2019 Pa. Legis. Serv. Act 2019-94 (H.B. 227) (West)..............................................6

2020 Pa. Legis. Journal-House (June 10, 2020) (Unofficial) ...................................8

2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West)............................. 1, 7, 18, 19

2020 Pa. Legis. Serv. Act 2020-35 (H.B. 2502) (West)............................. 1, 3, 8, 21

David Templeton, Wolf: Schools to Remain Closed 'Until Further Notice,'
    4 More Counties Must Stay Home, Pittsburgh Post-Gazette, Mar. 30, 2020,
    available at https://www.post-gazette.com/news/state/2020/03/30/Pennsylvania-
    Wolf-Schools-closed-until-further-notice-business-stay-at-home-order-covid-
    19/stories/202003300101..............................................................................7

Pa. R. Civ. P. 1028(a)(2)...................................................................... 24, 27

Pa. R. Civ. P. 1028(a)(4).........................................................................9, 18

Pa. R. Civ. P. 1028(a)(5)............................................................................12

Pa. R. Civ. P. 1032(b) ..............................................................................12

Pennsylvania House of Representatives, Members of the House,
    https://www.legis.state.pa.us/cfdocs/legis/home/member_information/mbrList.cf
    m?body=H&sort=alpha ..............................................................................5

Reid J. Epstein et al., How the Iowa Caucuses Became a Fiasco for Democrats,
    N.Y. Times, Feb. 9, 2020, available at
    https://www.nytimes.com/2020/02/09/us/politics/iowa-democratic-
    caucuses.html. ........................................................................................6

Ryan J. Foley, How the Iowa Caucuses Broke Down 'In Every Way Possible',
    Associated Press, Feb. 11, 2020, available at
    https://apnews.com/ee095683c85f6c97e51b6589b412f674. ...............................7

Proposed Intervenors Speaker of the House of Representatives, Bryan Cutler, and Majority Leader of the House of Representatives, Kerry Benninghoff ("House Leaders"), hereby file this Memorandum of Law in Support of their Preliminary Objections.

## PRELIMINARY STATEMENT

The COVID-19 pandemic has impacted all facets of American life, including the administration of elections. While the recent June 2, 2020 Primary Election did not occur without some problems, it operated within a well-considered framework that performed admirably given the exigent circumstances.

The political branches of government are now in the process of analyzing the conduct of the Primary Election. They recently enacted Act 35 of 2020, which will require the Secretary of the Commonwealth to publish a report on the 2020 Primary Election, to include a data analysis of the recent reforms of Act 77 of 2019 and Act 12 of 2020.  From this, the political branches will be able to analyze the conduct of the 2020 Primary Election so that they are in a position to enact such additional measures as may be required for the 2020 General Election.

Instead of allowing the Secretary of the Commonwealth to draft the report required by Act 35, and permitting the political branches to analyze those findings and data and to continue to craft legislation addressing any needed changes, the

1

Petitioner desires this Court to redesign an election code of its own choosing, notwithstanding the damage to our constitutional norms.

This would an extremely inappropriate insertion of this Court into the political process four months before the Election in question, and without its knowing whether *any* of the COVID-19-related difficulties forecast by Petitioner will come to pass. As such, the appropriate constitutional course of action is to allow the political process to appropriately address any continued changes needed to the Election Code, and therefore, to dismiss the Petition.

In evaluating the Petition, Petitioner lacks the standing necessary to bring this action. Petitioner is an association, in contravention of well-established case law that only individuals have standing to bring election-related claims in Pennsylvania.

Secondly, Petitioner has failed to join the indispensable parties, the county election boards, as they would be the parties tasked with implementing much of Petitioner's requested relief. As such, Petitioner's claims should be dismissed on jurisdictional grounds for failure to join a necessary party.

Should it be necessary to look at the merits of the Petition, Petitioner does not properly support its allegations. Petitioner makes a series of suppositions of future calamitous harms—many extremely far-fetched or based on laws and procedures that are no longer in effect—that would allegedly necessitate this Court taking the extreme step of replacing numerous provisions of the Election Code with a variety

of measures of Petitioner's own choosing. Moreover, this relief allegedly needs to occur *now*, rather than to allow the continued bipartisan triaging of COVID-19-related issues.

The Legislative and Executive Branches took the proactive step, in Act 77 of 2019, of modernizing Pennsylvania's voting process to allow for no-excuse voting by mail. When the unforeseen COVID-19 pandemic swept the world, the Commonwealth was ready with carefully considered voting procedures that allowed for free and fair elections. Furthermore, the Legislative and Executive Branches took further bipartisan steps to move the Primary Election date and to enact election procedures compatible with social distancing, and they have shown through the enactment of Act 35 that they continue to actively monitor the situation.

Petitioner, which is not a voter with standing to even challenge the provisions in question, looks to undo these bipartisan reforms and to have this Court set election policy of Petitioner's own choosing. This request for relief is inapposite to federal and state constitutional principles and this Court's well-reasoned policy of judicial restraint in election cases.

As Petitioner lacks standing to bring this claim, failed to join necessary parties, alleges no constitutional violation, and requests a nonjusticiable remedy, this action should be dismissed with prejudice.

## I.   <u>**FACTUAL BACKGROUND**</u>

Petitioner, a Pennsylvania-based association, filed its Petition for Review with this Court on June 18, 2020, seeking for this Court to impose five election regulations of its choosing, namely a) that this Court "[d]irect Respondents to require each county board of election to maintain a sufficient a number of polling places such that each resident can exercise his or her right to vote"; b) that this Court "[d]irect Respondents to provide that each county board of election give adequate notice to voters of any change in polling place by mailing notice to voters sufficiently in advance of the General Election, as well as posting at old polling places"; c) that this Court "[p]ermit early voting for the General Election in advance of election day"; d) that this Court "[r]equire increased access to vote by mail across the Commonwealth, by among other things, automatically sending mail-in ballot applications to all registered voters in accordance with their language preferences; ensuring that absentee and mail-in ballots are available in formats that are accessible to voters with disabilities without requiring assistance from another person; requiring each county to provide ballot dropboxes, and accepting ballots returned to a drop-box by close of polls on Election Day; and providing adequate guidance to election officials when verifying mail ballots through signature matching and require notice and an opportunity to cure a mail ballot flagged for signature mismatch"; and e) that this Court "[r]equire that all polling places in the Commonwealth use hand-

4

marked paper ballots for the 2020 General Election, while retaining at least one accessible voting machine per polling place for those who request one and as required by federal law." Pet. pp. 66-67.

This lawsuit impacts a variety of bipartisan election reform laws that the Legislative and Executive branches have worked to create over the past year, starting with Act 77 of 2019. *See* 2019 Pa. Legis. Journal-House 1741 (Oct. 29, 2019) (documenting the 138-61 vote on SB 421 (Act 77)); *see also* Pennsylvania House of Representatives, Members of the House, https://www.legis.state.pa.us/cfdocs/legis/home/member_information/mbrList.cfm ?body=H&sort=alpha (the composition of the Pennsylvania House of Representatives at the time of enactment was 110 Republicans and 93 Democrats).

Pennsylvania has traditionally only allowed absentee voting by those with a statutorily defined excuse to do so, such as physical disability or absence from their municipality on Election Day. *See* 25 P.S. § 3146.1. For someone to vote absentee, the voter would have had to provide a permissible reason to do so, and the voter would have been provided with an absentee ballot that would have had to be returned by the voter no later than 5:00 p.m. *on the Friday before the election*. *Id*.

In addition to allocating $90 million to ensuring that Pennsylvanians could vote safely and securely on modern voting machines, Act 77 of 2019 created a new category of "no excuse" mail-in voting. 2019 Pa. Legis. Serv. Act 2019-77 (S.B.

421) (West). These no excuse mail-in voters now do not have to provide the traditional reason to vote by mail, can request those ballots later in the process than was previously possible, and are able to return their ballots several days later than had been traditionally been allowed—8:00 p.m. on Election Day. *Id*. The traditional voting options remain available—voters may still choose to request an absentee ballot if they have a statutorily permitted reason for doing so, or vote in-person on Election Day. *See* 25 P.S. § 3146.1; 25 P.S. § 3031.12.

The Legislative and Executive Branches have continued to work diligently to fine-tune these election reforms. Act 94 of 2019 was enacted in November 2019 to streamline operations to ensure that the ballot materials were suitable to allow the ballots to be properly scanned. 2019 Pa. Legis. Serv. Act 2019-94 (H.B. 227) (West).

In early 2020, two major events occurred that prompted additional action from the Legislative and Executive Branches to ensure that Pennsylvania elections would be conducted freely and fairly. First, in February 2020, the Iowa Presidential Caucuses disintegrated into chaos. *See* Reid J. Epstein et al., How the Iowa Caucuses Became a Fiasco for Democrats, N.Y. Times, Feb. 9, 2020, *available at* https://www.nytimes.com/2020/02/09/us/politics/iowa-democratic-caucuses.html. When new voting procedures that had not been properly tested and vetted were applied in the Caucuses, the whole system collapsed. *Id*. Workers at Caucus sites were unable to properly tabulate results or to convey them to central tabulators. *Id*.

6

The end result was the breakdown of the entire process. *Id.* No results were released on Caucus night, and no results were able to be released for a significant time following. *Id*. The event was a clear "cautionary tale" of how voter confidence and the process as a whole can disintegrate absent clear deadlines and procedures. Ryan J. Foley, How the Iowa Caucuses Broke Down 'In Every Way Possible', Associated Press, Feb. 11, 2020, *available at* https://apnews.com/ee095683c85f6c97e51b6589b412f674.

Second, COVID-19 upended seemingly every facet of American life. Schools and businesses were closed, and families sheltered in place in order to reduce the harms of the global pandemic. David Templeton, Wolf: Schools to Remain Closed 'Until Further Notice,' 4 More Counties Must Stay Home, Pittsburgh Post-Gazette, Mar. 30, 2020, *available at* https://www.post-gazette.com/news/state/2020/03/30/Pennsylvania-Wolf-Schools-closed-until-further-notice-business-stay-at-home-order-covid-19/stories/202003300101.

Once again, the Legislative and Executive Branches worked together to fashion bipartisan legislation to address the problem. Act 12 of 2020 introduced numerous accommodations to ensure that the 2020 Primary Election could be conducted even amidst the COVID-19 pandemic. 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West). The date of the Primary Election was moved until June to allow more time to "flatten the curve" and protect the health of Pennsylvania's

7

voters. *Id*. In that same spirit, polling places were consolidated so that voters could vote in readily accessible locations that were large enough to maintain social distancing. *Id.* Act 12 also gave more flexibility to the counties, to establish polling places without court approval and even, for the first time, to hold voting in locations that serve alcohol, should those be the venues that best support the community's needs and promote social distancing. *Id*.

Following the June 2, 2020 Primary Election, the political branches again worked in bipartisan fashion to enact Act 35 of 2020, which will require the Secretary of the Commonwealth to publish a report on the 2020 Primary Election, to include a data analysis of the recent reforms of Act 77 of 2019 and Act 12 of 2020. 2020 Pa. Legis. Serv. Act 2020-35 (H.B. 2502) (West). As the Sponsor of Act 35, Representative Natalie Mihalek, reasoned on the House Floor, Act 35 will allow the Commonwealth to "gather data quickly after the election so we are able to ensure a smooth implementation of Act 77. A free and fair election is a basic tenet of our nation and we must ensure the integrity of our election here in the Commonwealth of Pennsylvania." 2020 Pa. Legis. Journal-House (June 10, 2020) (Unofficial) (attached hereto as <u>Exhibit 1</u>). Speaker Cutler also noted the importance "that we continue to monitor [Pennsylvania's election reforms] as we go forward. That is why we have had several subsequent bills and changes to the original bill that we passed. This is simply the next step in that process." *Id.*

The Legislative and Executive Branches continue to monitor the COVID-19 situation and stand ready to enact all further measures as may be required to ensure that the Commonwealth continues to have free and fair elections.

## II.   ARGUMENTS IN SUPPORT OF PRELIMINARY OBJECTIONS

### A.   First Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(4): Petitioner Lacks Standing to Bring This Action

Petitioner lacks standing to sue in this case because the right to vote and the right to have one's vote counted is at issue, and Petitioner is not an entity authorized to vote in the Commonwealth.

To have standing, a party in an action must establish "a substantial, direct and immediate interest in the outcome of the litigation." *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013) (quoting *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009)).

In certain contexts, it is true that an association "has standing as representative of its members to bring a cause of action even in the absence of injury to itself, if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the action challenged." *Id.* at 922 (citing *Phila. Med. Soc'y v. Dep't of Pub. Welfare*, 39 A.3d 267, 278 (Pa. 2012)).

But Pennsylvania courts have repeatedly held that an association does not have standing, even on behalf of its members, when the right to vote and the right to

have one's vote counted are the subject of the challenge. Order ¶ 4, *League of Women Voters of Pa. v. Commonwealth*, No. 261 M.D. 2017 (Pa. Commw. Ct. filed Nov. 13, 2017) (dismissing the League of Women Voters of Pennsylvania because it was not authorized by law to exercise the right to vote in the Commonwealth); *Erfer v. Commonwealth*, 794 A.2d 325, 330 (Pa. 2002); *Albert v. 2001 Legis. Reapportionment Comm'n*, 790 A.2d 989, 994–95 (Pa. 2002).

"[T]he right to vote is personal" and the rights sought to be vindicated in a challenge are "personal and individual." *Albert*, 790 A.2d at 995 (quoting *Reynolds v. Sims*, 377 U.S. 533, 554–55 (1964)). When "the right to vote and the right to have one's vote counted is the subject matter of a . . . challenge," then "any entity not authorized by law to exercise the right to vote in this Commonwealth lacks standing." *Id.* at 994–95; *see also Erfer*, 794 A.2d at 330 (dismissing Democratic Committee). "The factor that elevates the general interest of each registered voter to one that is sufficiently substantial to confer standing to challenge a candidate's nomination petition is that voter's eligibility to participate in the election." *In re Pasquay*, 525 A.2d 13, 14 (Pa. Commw. Ct. 1987), *aff'd* 529 A.2d 1076 (Pa. 1987).

Accordingly, an entity that does not possess the right to vote in the Commonwealth does not have a direct, substantial, and immediate interest in litigation over the right to vote and the right to have one's vote counted. The operative factor in these standing decisions was that the challenges sought to

vindicate "the right to vote and the right to have one's vote counted." *Erfer*, 794 A.2d at 330; *Albert*, 790 A.2d at 994–95.

By contrast, Petitioner brings suit based on factors better attributed to changed programming resulting from new election procedures—something that would be true even if their own sought-after election procedures were imposed by judicial fiat ("NAACP-PSC itself will have to divert substantial resources away from traditional voter registration and get-out-the-vote efforts in order to educate and assist voters in applying for mail-in voting, submitting mail-in ballots, locating polling places, and travelling to polling places.") Pet. ¶ 23.[1]

Petitioner attempts to claim standing via the diversion of their resources through the changing of the law. This is wholly insufficient, and inconsistent with the standing requirements this Court has imposed in past voting rights cases.

There is no allegation that Petitioner is an entity authorized by law to vote in the Commonwealth. *See Erfer*, 794 A.2d at 330; *Albert*, 790 A.2d at 994–95. Entities such as a state political party (the Pennsylvania State Democratic Committee), governmental entities (the Board of Commissioners of Radnor Township, the Board of Commissioners of the Township of Lower Merion, the Township of Lower Merion, the Township of Ross, and the North Hills School District), civic groups

---

[1] Petitioner also makes vague references to its members "fac[ing] unreasonable burdens on their right to suffrage." Pet ¶ 23.

(the Lehigh Valley Coalition for Fair Reapportionment, the Neighborhood Club of Bala Cynwyd, and the League of Women Voters of Pennsylvania), and political party committee chairs (Dennis J. Sharkey and Nora Winkelman in their representative capacities as chairs of Republican and Democratic committees)—notwithstanding their own organizational interests in voting rights, as Petitioner alleges in this case—have each been held not to have standing in voting rights cases. *See Erfer*, 794 A.2d at 330; *Albert*, 790 A.2d at 994–95; *League of Women Voters of Pa. v. Commonwealth*, No. 261 M.D. 2017 (Pa. Commw. Ct. filed Nov. 13, 2017).

Accordingly, Petitioner lacks capacity to sue—either individually or on behalf of its members—due to the nature of the claims in this case and therefore this action must be dismissed due to lack of standing.

### B. Second Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(5): Petitioners Have Failed to Include Necessary Parties

Pennsylvania law establishes that a court must join indispensable parties to an action, or, if not possible, dismiss the action "[w]henever it appears by suggestion of the parties or otherwise . . . that there has been a failure to join an indispensable party." Pa. R. Civ. P. 1032(b). Indispensable parties are those "whose rights are so directly connected with and affected by litigation that [the entity] must be a party of record to protect such rights[.]" *Columbia Gas Transmission Corp. v. Diamond Fuel Co.*, 346 A.2d 788, 789 (Pa. 1975).

Significantly, "[t]he absence of indispensable parties *goes absolutely to the jurisdiction*, and without their presence the court can grant no relief." *Powell v. Shepard*, 113 A.2d 261, 264-65 (Pa. 1955) (emphasis added); *see also Sprague v. Casey*, 550 A.2d 184, 189 (Pa. 1988) ("unless all indispensable parties are made parties to an action, a court is powerless to grant relief. Thus, the absence of such a party goes absolutely to the court's jurisdiction.") (citations omitted); *Fiore v. Oakwood Plaza Shopping Center, Inc.*, 585 A.2d 1012, 1020 (Pa. Super. Ct. 1991) ("In this Commonwealth, the issue of failure to join an indispensable party cannot be waived; if such a party is not joined, a court is without jurisdiction to decide the matter").

A party is indispensable "when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience . . ." *Hartley v. Langkamp & Elder*, 90 A. 402, 403-404 (Pa. 1914).

The Pennsylvania Supreme Court has laid out a series of factors to consider as to whether a party is indispensable, namely: "1. Do absent parties have a right or interest related to the claim? 2. If so, what is the nature of that right or interest? 3. Is that right or interest essential to the merits of the issue? 4. Can justice be afforded without violating the due process rights of absent parties?" *DeCoatsworth v. Jones*, 639 A.2d 792, 797 (Pa. 1994).

13

Here, the Commonwealth's county boards of elections are indispensable parties to this case because the Petition seeks to alter their conduct, requiring them to be parties in the case. It is the *county boards of elections*, not the Secretary of the Commonwealth, who would have to have to provide much of the requested relief through the boards being required to take affirmative actions. *See* Pet. pp. 66-67. For example, the Petitioner requests that this court to "[d]irect Respondents *to require each county board of election* to maintain a sufficient number of polling places . . . and to [d]irect Respondents to provide that *each county board of election* give adequate notice to voters of any change in polling place. . ., and to "[r]equire that all polling places in the Commonwealth use hand-marked paper ballots for the 2020 General Election, while retaining at least one accessible voting machine per polling place. . ." *Id.* (emphasis added).

The Petitioner mis-applies the Election Code and mistakenly treats the county election boards as though they are the agents of the Secretary of the Commonwealth. The county boards of elections are a longstanding institution, as they were established by 25 P.S. § 2625, enacted on June 3, 1937.

> The Election Code mandates the existence of such boards in and for each county of the Commonwealth, with jurisdiction over the conduct and form of primary and general elections in each county. Section 302 of the Election Code delineates the 'powers and duties of county boards' seriatim, in paragraphs (a) through (o). With the exception of paragraph (o), these deal with the mechanics of specific election procedures; paragraph (o) is a catch-all authorization

to county boards to 'perform such other duties as may be prescribed by law.' 25 P.S. s 2642(o) (1963).

*Deer Creek Drainage Basin Auth. v. Cty. Bd. of Elections of Allegheny Cty.*, 381 A.2d 103, 109 (Pa. 1977).

"[T]he Election Code delegates extensive powers and authority to county election boards, including rulemaking authority to guide voting machine custodians, elections officers and electors and power to investigate election frauds, irregularities and violations of the law. . ." *Nutter v. Dougherty*, 921 A.2d 44, 60 (Pa. Commw. Ct. 2007), *aff'd*, 938 A.2d 401 (Pa. 2007).

> The Election Code makes the County Board of Election more than a mere ministerial body. It clothes it with quasi-judicial functions, for Section 304 of the Code provides that: 'Each county board of elections may make regulations, not inconsistent with this act or the laws of this Commonwealth, to govern its public sessions, and may issue subpoenas, summon witnesses, compel production of books, papers, records and other evidence, and fix the time and place for hearing any matters relating to the administration and conduct of primaries and elections in the county under the provisions of this act.

*Boord v. Maurer*, 22 A.2d 902, 904 (Pa. 1941). In sum, the county boards of elections play a separate and pivotal role in the governance of Pennsylvania elections. To the extent that Petitioner seeks for this Court to direct their administration of elections, they must be joined as a party to this action. Therefore, their interests are essential to the merits of this case and deciding the case without their involvement would violate their due process rights. *See DeCoatsworth*, 639 A.2d at 797.

In *Banfield v. Cortes*, petitioners brought a challenge to the use of certain Direct Recording Electronic voting systems (DREs) being used in various counties in the Commonwealth. 922 A.2d 36 (Pa. Commw. Ct. 2007). In response, the Secretary of the Commonwealth submitted preliminary objections, including the objection that the Court lacked jurisdiction due to the petitioners' failure to join the county elections boards who had purchased and were using the voting systems in question. *Id*. In a divided, 4-3 decision, the Court rejected the Secretary of the Commonwealth's preliminary objection that the county elections boards were indispensable parties to that action, but that denial was based on the fact that the petitioners did "not seek redress from the . . . counties, and, because the November 2006 election has passed, the fifty-six counties will not be prejudiced by a judgment in favor of Electors." *Id*. at 44.

The dissent argued, however, that "the County Boards of Elections are indispensable parties. They made the decision to purchase one of the seven DRE voting systems approved by the Secretary. They will be affected by the decision of this Court, should it decide to order the Secretary to decertify the seven DRE voting systems. Their absence leaves this Court without jurisdiction." *Id*. at 56 (Leavitt, J. dissenting). "Because Petitioners have failed to name indispensable parties, *i.e.,* the County Boards of Elections, as respondents, I would sustain the Secretary's demurrer . . . for lack of jurisdiction." *Id*.

16

The fact pattern of the present case would more than satisfy the standards set forth in both the majority and dissenting opinions in *Banfield*. Here, Petitioner is directly seeking relief from the county boards of elections, including relief dealing with the voting machines being used in individual counties, and doing so shortly before the 2020 elections, but has failed to join those boards of elections in these proceedings.

Both factors weigh heavily that the county elections boards are indispensable parties, and therefore to grant the requested relief would be incompatible with Pennsylvania law, as the county boards of elections "ha[ve] such an interest that a final decree cannot be made without affecting [them]." *Hartley,* 90 A. at 403-404.

This also differs from a recent federal case in the District Court for the Western District of Pennsylvania, where the plaintiffs challenging the conduct of the Commonwealth's elections did join the 56 county boards of elections from which they were seeking relief. *See Donald J. Trump for President, Inc. v. Boockvar*, Civil Action No. 2:20-cv-00966, Verified Complaint for Declaratory and Injunctive Relief (W.D.Pa. filed June 29, 2020).

Finally, in looking at the very issue as to whether the county elections boards are indispensable parties in a challenge seeking to alter the received-by deadline for absentee and mail-in ballots, Judge Leavitt recently deemed it "a compelling case that the county boards of elections have a direct interest in the Petition and as such

17

are indispensable parties." Memorandum Opinion, *Crossey v. Boockvar*, 266 M.D. 2020 (Pa. Commw. Ct. filed May 28, 2020).

Therefore, as the "Petitioners have failed to name indispensable parties, *i.e.,* the County Boards of Elections, as respondents," this case should be dismissed "for lack of jurisdiction." *Banfield*, 922 A.2d at 56 (Leavitt, J. dissenting).

## C.    Third Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(4): Petitioners Do Not Allege a Constitutional Violation

Petitioner's allegations are devoid of a concrete, cognizable legal injury, and are instead improperly premised on a series of suppositions about harms that may befall the Commonwealth in the future, should their scenarios come to pass. Petitioner premises its claim for relief on its prognostications as to future unknown conditions that *may* result in unknown future legislation that *may* be unconstitutional. These claims are simply too speculative to sustain the Petition.

The primary focus of Petitioner's concerns are the procedures previously put into place for the Primary Election pursuant to Act 12. To be sure, the COVID-19 pandemic necessitated unprecedented measures, such as the consolidation of polling places, which were enacted to allow for a safe and workable election even in the pandemic's wake. *See* Pet. ¶ 61.

Act 12 of 2020 introduced numerous accommodations to ensure the 2020 Primary Election could be conducted safely. 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) (West). The date of the Primary Election was moved until June to allow more

time to "flatten the curve" and protect the health of Pennsylvania's voters. *Id*. In that same spirit, polling places were consolidated so that voters could vote in readily accessible locations that were large enough to maintain social distancing. *Id.* Act 12 also gave more flexibility to the counties to establish polling places without court approval. *Id*.

These extraordinary measures certainly had limitations—which is why they were enacted on a temporary basis to deal with *one particular election* being conducted in the middle of a pandemic. As Petitioner acknowledges, "the emergency election procedures in Act 12 by its terms applied only to the Primary Election. . ." Pet. ¶ 73. Despite that acknowledgment, Petitioner seeks for this Court to preempt the hypothetical "threat that substantially similar legislation will be passed that will be applied to the November 2020 election. . ." *Id*.

"In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action." *Stilp v. Commonwealth,* 940 A.2d 1227, 1233 (Pa. 2007). "An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation." *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009). "The interest is direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not

remote or speculative." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003).

Here Petitioner's alleged injury could not be more speculative. It relies on a string of conjectures and theories about future scenarios and laws that *may* be enacted in the future, and thus falls substantially short of "rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision." *Yocum v. Commonwealth of Pennsylvania Gaming Control Bd.*, 161 A.3d 228, 238 (Pa. 2017). Petitioner simply cannot sustain an as-applied challenge without demonstrating an actual, demonstrated injury.

"[R]ipeness overlaps substantially with standing." *Rendell v. Pa. State Ethics Comm'n*, 983 A.2d 708, 718 (Pa. 2009). This Court "do[es] not have the ability to grant any relief that is merely advisory, one that does not involve any case or controversy. Any action . . . may not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic." *Brown v. Liquor Control Bd.*, 673 A.2d 21, 23 (Pa. Commw. Ct. 1996). Ripeness "arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. . . . It has been defined as the presence of an actual controversy. . . . It insists on a concrete context, where there is a final . . . action so

that the court can properly exercise their function." *Tex. Keystone Inc. v. Pa. Dept. of Conservation & Nat. Res.*, 851 A.2d 228, 239 (Pa. Commw. Ct. 2004).

Here, Petitioner can speculate as to how the COVID-19 pandemic will develop throughout the next four months and how the political branches may respond to those developments, but as it acknowledges in its Petition, "[n]obody has a crystal ball." Pet. ¶ 39.

The political branches only recently enacted Act 35, through which a thorough analysis of the Primary Election will be conducted. The political branches will then use those findings to deliberately consider what policies may be necessary for the conduct of future elections.

Moreover, for this Court to grant the Petition, this Court would need to wade into the political question of election policy choices, which are the product of bipartisan and bicameral compromise. The Separation of Powers Doctrine holds "that the executive, legislative, and judicial branches of government are equal and none should exercise powers exclusively committed to another branch." *Jefferson Cty. Court Appointed Emp. Ass'n v. Pa. Labor Relations Bd.,* 985 A.2d 697, 703 (Pa. 2009). It "is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital . . . namely, to preclude a commingling of these essentially different powers of government in the same hands." *O'Donoghue v. United States,* 289 U.S. 516, 530, 53 S.Ct. 740, 77 L.Ed. 1356 (1933).

The U.S. and Pennsylvania Constitutions place great emphasis on the role of the Legislative branch in the setting of election policy. One of the very first provisions of the U.S. Constitution is the Elections Clause, providing that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. Constitution Art. I, Section 4, Clause 1. Legislative Branch power as to election procedure is further codified in the Pennsylvania Constitution. *See, e.g.*, Pa. Constitution Art. VII, Section 1 ("Every citizen 21 years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact."; Pa. Constitution Art. VII, Section 16 ("The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the municipality of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.").

"The presumption that legislative enactments are constitutional is strong." *Working Families Party v. Commonwealth*, 209 A.3d 270, 279 (Pa. 2019) (*citing Commonwealth v. McMullen*, 961 A.2d 842, 846 (Pa. 2008)); *see also* 1 Pa.C.S. § 1922(3) (in ascertaining intent of General Assembly in enactment of statute, presumption exists that General Assembly did not intend to violate federal and state constitutions). "[A]ny party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration that the statute 'clearly, palpably, and plainly' violates the Constitution." *Konidaris v. Portnoff Law Associates, Ltd.*, 953 A.2d 1231, 1239 (Pa. 2008) (citation omitted).

"All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Working Families Party*, 209 A.3d at 279 (citations omitted). Moreover, "statutes are to be construed whenever possible to uphold their constitutionality." *In re William L.*, 383 A.2d 1228, 1231 (Pa. 1978).

This is especially true in the election context, where Pennsylvania courts have long recognized that "[t]he power to regulate elections is a legislative one, and has been exercised by the general assembly since the foundation of the government." *Winston v. Moore*, 91 A. 520, 522 (Pa. 1914) (citing *Patterson v. Barlow*, 60 Pa. 54 (Pa. 1869); *see also Abraham v. Shapp*, 400 A.2d 1249 (Pa. 1979) ("It is the

23

responsibility of the legislature by appropriate legislation to provide the procedures for elections to public office.").

In addressing election policy, "the judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania." *In re Guzzardi*, 99 A.3d 381 (Pa. 2014).

This judicial restraint was also the Supreme Court of Pennsylvania's holding in a recent challenge to Act 77's received-by deadline, where the Court sustained Respondents' demurrer and dismissed the case with prejudice. *Disability Rights Pa. v. Boockvar*, 2020 WL 2820467 (Pa. 2020).

As Petitioner asks this Court to insert itself into the murky waters of the political process and draft new provisions of the Election Code, this Court should instead steer clear and dismiss the Petition.

### D. Fourth Preliminary Objection Pursuant to Pa. R. Civ. P. 1028(a)(2): Petitioners Have Not Plead a Justiciable Remedy

Should this Court need to consider the relief sought by Petitioner, its requested relief is itself unconstitutional, as violative of the Separation of Powers, and must be struck for its failure to conform to the law.

The Pennsylvania Constitution provides that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Pa. Constitution Art. II, Section 1.

While this Court may declare a statute unconstitutional upon review, the judiciary's power is strictly limited. This is because the Pennsylvania General Assembly—not the judiciary—holds the sole power to write the laws for the Commonwealth. *Id*. As the Pennsylvania Supreme Court has noted, the judiciary "may not usurp the province of the legislature by rewriting [statutes]…as that is not [the court's] proper role under our constitutionally established tripartite form of governance." *In re: Fortieth Statewide Investigating Grand Jury*, 197 A.3d 712, 721 (Pa. 2018).

Accordingly, where the court determines that a law is unconstitutional, "it is not the role of this Court to design an alternative scheme which may pass constitutional muster." *Heller v. Frankston*, 475 A.2d 1291, 1296 (Pa. 1984). The Courts "will not judicially usurp the legislative function and rewrite [the statute]. . . Rather, we leave it to our sister branch for an appropriate statutory response. . ." *Commonwealth v. Hopkins*, 117 A.3d 247, 262 (Pa. 2015).

As such, when a court invalidates a law, the court must grant the Legislature sufficient time to consider and enact remedial legislation. *See, e.g.*, *League of Women Voters v. Commonwealth*, 178 A.3d 737, 821 (Pa. 2018) (providing

timeframe for General Assembly and Governor to enact remedial redistricting plan); *Robinson Twp. v. Commonwealth*, 147 A.3d 536, 582–83 (Pa. 2016) (staying decision for 180 days "in order to allow the General Assembly sufficient time to devise a legislative solution"); *Cali v. Philadelphia*, 177 A.2d 824, 835 (Pa. 1962). The Court cannot take unilateral action to rewrite the law, as that would overstep the bounds of its authority. *Robinson Twp.*, 147 A.3d at 583; *Cali*, 177 A.2d at 835.

Should this Court determine that any of the provisions at issue are unconstitutional, the Court does not have the authority to issue the orders or take any actions requested by Petitioner, as the requested relief would require legislative action. Such action by the Court would be a clear "excession of the scope of [the Court's] power and authority," *Glancey v. Casey*, 288 A.2d 812, 817 (Pa. 1972), and would amount to prohibited "judicial legislation," s*ee State Bd. of Chiropractic Exam'rs v. Life Fellowship of Pa.*, 272 A.2d 478, 482 (Pa. 1971) ("Conceivably, the statute could be rewritten so as to avoid constitutional infirmities. However, such a task lies properly with the Legislature, for additional editing of [the statute] on our part would amount to judicial legislation.").

While the Court has the power to review the Election Code, it cannot direct the Legislature *how* to fix any alleged constitutional defect. If any provision is held to be unconstitutional, it is the sole province of the Legislature to determine how to address it. Accordingly, because the Court cannot grant the requested relief

contained in the Petitioners' Prayer for Relief as a matter of law, the offending requests must be struck pursuant to Pa. R. Civ. P. 1028(a)(2).

## III.    CONCLUSION

For the foregoing reasons, Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the Pennsylvania House of Representatives Kerry Benninghoff respectfully request that this Court sustain the Preliminary Objections to the Petition for Review and dismiss the Petition for Review with prejudice.

Respectfully submitted,

*/s/ Zachary M. Wallen*
Zachary M. Wallen
Pa. ID No. 309176
**CHALMERS & ADAMS LLC**
301 South Hills Village Drive
No. LL200-420
Pittsburgh, PA 15241

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the House of the Pennsylvania House of Representatives Kerry Benninghoff*

## CERTIFICATION OF WORD COUNT

Pursuant to Rule 2135 of the Pennsylvania Rules of Appellate Procedure, I certify that this Memorandum of Law contains 6,300 words, exclusive of the supplementary matter as defined by Pa.R.A.P. 2135(b).

*/s/ Zachary M. Wallen*

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the House of the Pennsylvania House of Representatives Kerry Benninghoff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*/s/ Zachary M. Wallen*

*Counsel for Proposed-Intervenor Respondents Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the House of the Pennsylvania House of Representatives Kerry Benninghoff*

# EXHIBIT "1"

![ASUPPLEMENTAL CALENDAR A

BILLS ON THIRD CONSIDERATION!]A

The House proceeded to third consideration of **HB 2502, PN 3774,** entitled:

On the question,
Will the House agree to the bill on third consideration?
Bill was agreed to.

(Bill analysis was read.)

The SPEAKER. This bill has been considered on three different days and agreed to and is now on final passage.
The question is, shall the bill pass finally?

Representative Mihalek, on the bill? Come right up front. You can right up front, Representative Mihalek.
Ms. MIHALEK. Thank you, Mr. Speaker.
In 2019 this chamber passed historic and sweeping changes to Pennsylvania's elections laws. On the heels of the June 2 primary I offer HB 2502 in order to gather data quickly after the election so we are able to ensure a smooth implementation of Act 77. A free and fair election is a basic tenant of our nation and we must ensure the integrity of our election here in the Commonwealth of Pennsylvania. This bill helps us to do so and I urge my colleagues for an affirmative vote today. Thank you.
The SPEAKER. All those in favor will be voting "aye"; those opposed, "nay." Oh, I sorry. Leader, I apologize. My apologies.
The majority leader on HB 2502, PN 3774.
Mr. CUTLER. Thank you, Mr. Speaker.
I too want to urge an affirmative vote on this bill. After nearly 80 years we had significant updates to our voter laws. And I think it is equally important that we continue to monitor them as we go forward. That is why we have had several subsequent bills and changes to the original bill that we passed. This is simply the next step in that process and I urge support.
Thank you, Mr. Speaker.

On the question recurring,
Shall the bill pass finally?
The SPEAKER. Agreeable to the provisions of the Constitution, the yeas and nays will now be taken.

(Members proceeded to vote.)

The SPEAKER. Majority Whip.
Mr. BENNINGHOFF. Thank you, Mr. Speaker.
The electronic voting board is accurate for the majority party.
The SPEAKER. And the minority whip.
Mr. HARRIS. Thank you, Mr. Speaker.
The electronic board is accurate.

The following roll call was recorded:
RC: 201-1

# EXHIBIT "B"

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

## No. 364 MD 2020

### NAACP PENNSYLVANIA STATE CONFERENCE,

#### Petitioner,

#### v.

### KATHY BOOCKVAR, IN HER CAPACITY AS SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; AND JESSICA MATHIS, IN HER CAPACITY AS DIRECTOR OF THE BUREAU OF ELECTION SERVICES AND NOTARIES OF THE PENNSYLVANIA DEPARTMENT OF STATE,

#### Respondents,

### BRYAN CUTLER, SPEAKER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES, KERRY BENNINGHOFF, MAJORITY LEADER OF THE PENNSYLVANIA HOUSE OF REPRESENTATIVES,

#### Proposed-Intervenor Respondents.

## [PROPOSED] ORDER

Now, this _____ day of _____, 2020, upon consideration of the Petition to Intervene filed by Speaker of the Pennsylvania House of Representatives Bryan Cutler and Majority Leader of the Pennsylvania House of Representatives Kerry

Benninghoff, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the Petition is **GRANTED**.

**SO ORDERED BY THE COURT**:

_____

# EXHIBIT "C"

## <u>VERIFICATION</u>

I, Bryan Cutler, Speaker of the Pennsylvania House of Representatives, depose and say, subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, that the allegations set forth in the foregoing *Petition to Intervene* are true and correct to the best of my knowledge, information, and belief.

BRYAN CUTLER
Speaker
PA House of Representatives

Date: July 8, 2020

## VERIFICATION

I, Kerry Benninghoff, Majority Leader, Pennsylvania House of Representatives, depose and say, subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, that the allegations set forth in the foregoing *Petition to Intervene* are true and correct to the best of my knowledge, information, and belief.

KERRY BENNINGHOFF
Majority Leader
PA House of Representatives

Date: July 8, 2020