## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; GLENN THOMPSON; MIKE KELLY; JOHN JOYCE; GUY RESCHENTHALER; REPUBLICAN NATIONAL COMMITTEE; MELANIE STRINGHILL PATTERSON; and CLAYTON DAVID SHOW, | ) ) ) ) ) ) ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2-20-cv-966 |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania; ADAMS COUNTY BOARD OF ELECTIONS; ALLEGHENY COUNTY BOARD OF ELECTIONS; ARMSTRONG COUNTY BOARD OF ELECTIONS; BEAVER COUNTY BOARD OF ELECTIONS; BEDFORD COUNTY BOARD OF ELECTIONS; BERKS COUNTY BOARD OF ELECTIONS; BLAIR COUNTY BOARD OF ELECTIONS; BRADFORD COUNTY BOARD OF ELECTIONS; BUCKS COUNTY BOARD OF ELECTIONS; BUTLER COUNTY BOARD OF ELECTIONS; CAMBRIA COUNTY BOARD OF ELECTIONS; CAMERON COUNTY BOARD OF ELECTIONS; CARBON COUNTY BOARD OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER COUNTY BOARD OF ELECTIONS; CLARION COUNTY BOARD OF ELECTIONS; CLEARFIELD COUNTY BOARD OF ELECTIONS; CLINTON COUNTY BOARD OF ELECTIONS; COLUMBIA COUNTY BOARD OF ELECTIONS; CRAWFORD COUNTY BOARD OF ELECTIONS; CUMBERLAND COUNTY BOARD OF ELECTIONS; DAUPHIN COUNTY BOARD OF ELECTIONS; DELAWARE COUNTY BOARD OF ELECTIONS; ELK COUNTY BOARD OF ELECTIONS; ERIE COUNTY BOARD OF ELECTIONS; FAYETTE COUNTY BOARD OF ELECTIONS; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

FOREST COUNTY BOARD OF                    )
ELECTIONS; FRANKLIN COUNTY                )
BOARD OF ELECTIONS; FULTON                )
COUNTY BOARD OF ELECTIONS;                )
GREENE COUNTY BOARD OF                    )
ELECTIONS; HUNTINGDON COUNTY              )
BOARD OF ELECTIONS; INDIANA               )
COUNTY BOARD OF ELECTIONS;                )
JEFFERSON COUNTY BOARD OF                 )
ELECTIONS; JUNIATA COUNTY BOARD           )
OF ELECTIONS; LACKAWANNA                  )
COUNTY BOARD OF ELECTIONS;                )
LANCASTER COUNTY BOARD OF                 )
ELECTIONS; LAWRENCE COUNTY                )
BOARD OF ELECTIONS; LEBANON               )
COUNTY BOARD OF ELECTIONS;                )
LEHIGH COUNTY BOARD OF                    )
ELECTIONS; LUZERNE COUNTY BOARD           )
OF ELECTIONS; LYCOMING COUNTY             )
BOARD OF ELECTIONS; MCKEAN                )
COUNTY BOARD OF ELECTIONS;                )
MERCER COUNTY BOARD OF                    )
ELECTIONS; MIFFLIN COUNTY BOARD           )
OF ELECTIONS; MONROE COUNTY               )
BOARD OF ELECTIONS; MONTGOMERY            )
COUNTY BOARD OF ELECTIONS;                )
MONTOUR COUNTY BOARD OF                   )
ELECTIONS; NORTHAMPTON COUNTY             )
BOARD OF ELECTIONS;                       )
NORTHUMBERLAND COUNTY BOARD               )
OF ELECTIONS; PERRY COUNTY BOARD          )
OF ELECTIONS; PHILADELPHIA                )
COUNTY BOARD OF ELECTIONS; PIKE           )
COUNTY BOARD OF ELECTIONS;                )
POTTER COUNTY BOARD OF                    )
ELECTIONS; SCHUYLKILL COUNTY              )
BOARD OF ELECTIONS; SNYDER                )
COUNTY BOARD OF ELECTIONS;                )
SOMERSET COUNTY BOARD OF                  )
ELECTIONS; SULLIVAN COUNTY                )
BOARD OF ELECTIONS; SUSQUEHANNA           )
COUNTY BOARD OF ELECTIONS; TIOGA          )
COUNTY BOARD OF ELECTIONS; UNION          )
COUNTY BOARD OF ELECTIONS;                )
VENANGO COUNTY BOARD OF                   )
ELECTIONS; WARREN COUNTY BOARD            )

OF ELECTIONS; WASHINGTON COUNTY      )
BOARD OF ELECTIONS; WAYNE            )
COUNTY BOARD OF ELECTIONS;           )
WESTMORELAND COUNTY BOARD OF         )
ELECTIONS; WYOMING COUNTY            )
BOARD OF ELECTIONS; and YORK         )
COUNTY BOARD OF ELECTIONS,           )
                                     )
Defendants.                          )

## BRIEF IN SUPPORT OF MOTION TO INTERVENE

**Table of Contents**

I.      INTRODUCTION ......................................................................................... 1

II.     FACTUAL BACKGROUND ....................................................................... 3

        A.      The Pennsylvania Democratic Party, Its Members, Its Candidates and Its
                Interests Here. ............................................................................................ 3
        B.      The Candidates. .......................................................................................... 3
        C.      The Legislators. .......................................................................................... 4
        D.      Act 77 Modernizes Pennsylvania's Election Law. ................................... 4
        E.      The 2020 Primary Election is Affected by COVID-19. ........................... 4
        F.      The 2020 General Election. ........................................................................ 7

III.    ARGUMENT ............................................................................................... 7

        A.      Standard for Intervention. .......................................................................... 7
        B.      The Pennsylvania Democratic Party and the Candidates Meet the Standard
                for Intervention As of Right. ...................................................................... 8

                1.      Courts have consistently held that political parties have interests in
                        cases challenging general election procedure. ............................... 8
                2.      The Intervenors have an interest in protecting their right to
                        compete in free and fair elections. ................................................ 9
                3.      The Intervenors have an interest in protecting their voters,
                        constituents and members. ........................................................... 11
                4.      The Pennsylvania Democratic Party and the Candidates' interests
                        are impaired by the requested relief. ........................................... 13
                5.      The Intervenors interests are not adequately represented by the
                        existing Defendants. ..................................................................... 14
                6.      Intervention is timely. .................................................................. 15

        C.      Alternatively, Permissive Joinder Is Appropriate To Protect The
                Intervenors' Interests. .............................................................................. 15

IV.     CONCLUSION .......................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*,
    674 F.2d 970 (3d Cir. 1982)...................................................................................15

*Democratic Exec. Comm. of Florida v. Detzner*,
    347 F. Supp. 3d 1017 (N.D. Fla. 2018)....................................................................9

*Democratic Party of Georgia, Inc. v. Crittenden*,
    18-cv-05181 (N.D. Ga. 2018)...................................................................................9

*Democratic Party of the United States v. Nat'l Conservative Political Action
    Comm.*,
    578 F.Supp. 797 (E.D. Pa. 1983), *aff'd in part and rev'd in part on other
    grounds sub nom* 470 U.S. 480 (1985) ...................................................................11

*Kitzmiller v. Dover Area School Dist.*,
    388 F.Supp.2d 484 (M.D. Pa. 2005) .......................................................................15

*League of Women Voters of Virginia v. Virginia State Bd. of Elec.*,
    No. 6:20-00024, 2020 WL 2090678 .......................................................................16

*Orloski v. Davis*,
    564 F. Supp. 526 (M.D. Pa. 1983).......................................................8, 10, 11, 12, 13, 14

*Pennsylvania Democratic Party v. Republican Party of Pennsylvania*,
    No. 16-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) .....................8, 11, 12, 14

*In re Pennsylvania Gen. Elec. for Snyder County Comm'r*,
    841 A.2d 593 (Pa. Commw. Ct. 2003) ...................................................................12

*Pennsylvania v. President United States of America*,
    888 F.3d 52 (3d Cir. 2018).............................................................................8, 13, 14

*Pierce v. Allegheny County Bd. of Elections*,
    324 F.Supp.2d 684 (W.D. Pa. 2003).........................................................................8

*Shambach v. Bickhart*,
    845 A.2d 793 (Pa. 2004) ........................................................................................12

*Stein v. Cortes*,
    223 F.Supp.3d 423 (E.D. Pa. 2016) .........................................................................9

*Texas Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ..................................................................................11

**Statutes**

25 P.S. § 2601 ..................................................................................................................3

25 P.S. § 3050(a.4)(5)(ii)(C)...........................................................................................13

25 P.S. § 3146.8 ........................................................................................12, 13

25 Pa. C.S. § 102 ...............................................................................................14

42 P.S.C.A. § 3133............................................................................................10

Act 77 of 2019 .....................................................................................................4

**Other Authorities**

6 Moore's Fed. Practice, § 24.03(3)(a) ...........................................................13

Fed. R. Civ. P. 24 .......................................................................................1, 7, 8

Fed. R. Civ. P. 24(a) ............................................................................................2

Fed. R. Civ. P. 24(b) .........................................................................................15

Fed. R. Civ. P. 24(b)(1)(b).................................................................................15

Fed. R. Civ. P. 24(c) ............................................................................................1

Governor Tom Wolf, Proclamation of Disaster Emergency, March 6, 2020
    (available at: https://www.scribd.com/document/450457202/2020-3-6-
    COVID19-Digital-Proclamation-pdf#from_embed) (last visited July 5, 2020).......................4

Lancaster Online Editorial Board, *Great News for Voters: Pennsylvania Finally
    Makes its Election Law More Voter-Friendly*, Lancaster Online (November 3,
    2019), https://lancasteronline.com/opinion/editorials/great-news-for-voters-
    pennsylvania-finally-makes-its-election-law-more-voter-
    friendly/article_a6bdc646-fcec-11e9-8d90-7f241f3b6460.html .................................4

Pa. Exec. Order 2020-02 ......................................................................................6

Pa. Exec. Order 2020-02 § 1 ...............................................................................6

Pennsylvania Senate Republicans, *Senate Passed Legislation 2019*,
    https://www.pasenategop.com/senate-passed-legislation/.....................................4

Press Release, Office of Governor Tom Wolf, Gov. Wolf Signs COVID-19
    Response Bills to Bolster Health Care System, Workers, and Education and
    Reschedule the Primary Election, March 27, 2020 (available at:
    https://www.governor.pa.gov/newsroom/gov-wolf-signs-covid-19-response-
    bills-to-bolster-health-care-system-workers-and-education-and-reschedule-
    the-primary-election/) (last visited: July 5, 2020).........................................5

Rules of the Pennsylvania Democratic Party...................................................10

Senate Bill 422 .....................................................................................................5

Voting & Election Statistics, PA. DEPT. OF STATE WEBSITE (available at:
    https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElection
    Statistics/Pages/VotingElectionStatistics.aspx) (last visited July 5, 2020) ...............3

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Pennsylvania State Democratic Party, Congressman Dwight Evans, State Senators Sharif Street and Vincent Hughes, State Representatives Danillo Burgos, Morgan Cephas, Austin Davis, Isabella Fitzgerald, Edward Gainey, Jordan Harris, Mary Isaacson, Malcolm Kenyatta, Patty Kim, Stephen Kinsey, Peter Schweyer, and candidates for office Nina Ahmad, Anton Andrew, Janet Diaz, Manuel M. Guzman, Jr., Rick Krajewski ("Candidates") and State Senators Art Haywood and Anthony Williams ("Non-Candidate Legislators") (collectively "Intervenors"), by and through counsel, hereby move for leave to intervene in this action, and state as follows:[1]

## I.      INTRODUCTION

Plaintiffs in this lawsuit are the campaign of the current President of the United States and presumptive Republican nominee for President in 2020, four of nine Republicans in Pennsylvania's congressional delegation, two voters in Fayette County, Pennsylvania, and the Republican National Committee (collectively "Plaintiffs"). They seek an order, declaration, and/or injunction that prohibits Defendants, the Secretary of the Commonwealth and all 67 Pennsylvania county Boards of Elections ("Boards") (collectively "Defendants") from (1) "permitting the return of absentee and mail-in ballots to locations other than the respective offices of the county boards of elections, specifically with respect to mobile ballot collection centers"; and (2) counting absentee and mail-in ballots that lack a secrecy envelope or contain that envelope any text, mark, symbol which reveals the elector's identity, political affiliation, or candidate preference." Complaint, ¶5, Dkt. 1. Plaintiffs also seek an order, declaration, or injunction that permits poll

---

[1] Pursuant to Fed. R. Civ. P. 24(c), the Intervenors attach as **Exhibit B** a proposed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as their responsive pleading to be filed if the Court grants this motion to dismiss. *See* Proposed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

watchers, regardless of their county of residence, to be present in all locations where votes are cast, including locations where absentee or mail-in ballots are returned. *Id.*

The proposed intervenors, the Pennsylvania Democratic Party, certain Democratic candidates for the House of Representatives, and certain members of the Pennsylvania General Assembly (collectively "Intervenors"), are entitled to intervention as a matter of right in this action under Fed. R. Civ. P. 24(a). The Intervenors have a vital interest, on behalf of themselves, their voters, and their candidates–including those referenced above–that warrant intervention and participation in this matter.

- *First*, courts across the country, including in Pennsylvania, have recognized the right of political parties and candidates to intervene where significant changes to general election procedures are sought.

- *Second*, Intervenors' cognizable interests are impeded by the relief Plaintiff's request. The relief Plaintiffs demand here would directly and substantially impair the rights and interests of Intervenors and potentially disenfranchise thousands of voters who fail to follow procedural instructions. Indeed, Plaintiffs' requested relief–which, if granted, will significantly narrow the locations where voters may deliver their mail-in or absentee ballots and discard or not count certain mail-in and absentee ballots that fail to follow procedural rules–is particularly odious given that the General Election will occur against the backdrop of a global pandemic.

- *Third,* Intervenors' cognizable interests are not adequately represented by the existing Defendants.

- *Fourth*, Intervenors' interests in this action mirror the interests, as applicable, of the political party, campaign, and candidate-electors who are Plaintiffs in this action.

For these reasons, this Court should grant Intervenors' Motion to Intervene.

II.     **FACTUAL BACKGROUND**

    A.     **The Pennsylvania Democratic Party, Its Members, Its Candidates and Its Interests Here.**

The Pennsylvania Democratic Party is the largest political party by registration in Pennsylvania. As of June 29, 2020, the Pennsylvania Democratic Party has nearly 4,100,000 registered voters. *See* Voting & Election Statistics, PA. DEPT. OF STATE WEBSITE, (available at: https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Pages/VotingElectionStatistics.aspx) (last visited July 5, 2020). The Pennsylvania Democratic Party is a "major political party" as defined in the Pennsylvania Election Code (the "Code"). 25 P.S. §§ 2601. The Pennsylvania Democratic Party's members include elected officials in the highest offices in Pennsylvania government, including the Governor, Attorney General, Auditor General, Lieutenant Governor, and Treasurer. In the 2020 General Election, the Pennsylvania Democratic Party will field a candidate for all statewide elected positions and virtually all legislative seats on the 2020 General Election ballot. The Pennsylvania Democratic Party will also support the presumptive Democratic nominee for President, Joseph R. Biden. The goal of the Pennsylvania Democratic Party is to promote its candidates and the interests of its registered voters.

    B.     **The Candidates.**

The Candidates are registered voters in the Commonwealth and are the Pennsylvania Democratic Party's nominees for the 2020 General Election. Each has won the 2020 primary election, conducted on June 2, 2020, for the respective offices they seek.  Each candidate, in their own respects, has spent significant resources getting on the ballot and running for election or reelection.

C.      **The Legislators.**

Congressman Dwight Evans, Senators Street, Hughes, Haywood, and Williams, and State Representatives Burgos, Davis, Cephas, Isabella, Edward, Harris, Isaacson, Kenyatta, Kim, Kinsey, and Schweyer currently serve as elected members of the General Assembly. Each legislator supports the no-excuse vote-by-mail provision of Act 77 of 2019 ("Act 77").

D.      **Act 77 Modernizes Pennsylvania's Election Law.**

Signed into law on October 31, 2019, Act 77 was a bipartisan piece of legislation which brought "the most comprehensive changes to Pennsylvania's election laws in more than eight decades." Pennsylvania Senate Republicans, *Senate Passed Legislation 2019*, https://www.pasenategop.com/senate-passed-legislation/; *see also* Lancaster Online Editorial Board, *Great News for Voters: Pennsylvania Finally Makes its Election Law More Voter-Friendly*, Lancaster Online (November 3, 2019), https://lancasteronline.com/opinion/editorials/great-news-for-voters-pennsylvania-finally-makes-its-election-law-more-voter-friendly/article_a6bdc646-fcec-11e9-8d90-7f241f3b6460.html) ("[Act 77's] reforms are necessary and important.").

Act 77 represented a compromise which the General Assembly passed on a bipartisan basis by the margin of 138-61 in the House and 35-14 in the Senate. Act 77 contained provisions to modernize and facilitate voting in the Commonwealth including, most relevant here, the structure for no-excuse mail-in voting in the Commonwealth.

E.      **The 2020 Primary Election is Affected by COVID-19.**

On March 5, 2020, Governor Wolf declared a disaster emergency due to the COVID-19 pandemic on March 6. *See* Governor Tom Wolf, Proclamation of Disaster Emergency, March 6, 2020 (available at:  https://www.scribd.com/document/450457202/2020-3-6-COVID19-Digital-Proclamation-pdf#from_embed) (last visited July 5, 2020).

4

On March 25, 2020, the General Assembly passed Senate Bill 422 ("S.B. 422" or "Act 12"), which delayed the date of the primary election from April 28 to June 2. In response to concerns from counties that COVID-19 threatened their ability to safely staff polling locations, Act 12 permitted, *inter alia*, counties to temporarily consolidate polling places without court approval and to ease other rules related to location and staffing of polling places. *See* Press Release, Office of Governor Tom Wolf, Gov. Wolf Signs COVID-19 Response Bills to Bolster Health Care System, Workers, and Education and Reschedule the Primary Election, March 27, 2020, (available at:    https://www.governor.pa.gov/newsroom/gov-wolf-signs-covid-19-response-bills-to-bolster-health-care-system-workers-and-education-and-reschedule-the-primary-election/)  (last visited: July 5, 2020).

Following the crisis from the global pandemic, and after a very well publicized and traumatic Election Day in Wisconsin, interest in mail-in balloting spiked for the Primary Election to a threshold beyond whatever could have been previously anticipated in the light of Act 77.

The avalanche of applications had a second impact–in many counties the ballots were delayed in being mailed out. This delay compounded problems with the mail–from a vast increase in mailed packages to public confusion about how to properly disinfect mail received.  As a result, voters had less time to complete and return ballots, even when the ballots were properly received.

Following the Department of State's guidance, and the anticipated increase in interest and the closure of County offices due to COVID-19, the Boards of approximately 20 counties across the Commonwealth, including the most populous attempted to develop alternate ways for ballots to be received, with many creating and publicizing locations where voters could drop off completed mail-in ballots.

Additionally, as individuals new to vote-by-mail (and unable to get in-person assistance) began to vote, some Boards began hearing from voters and advocates of issues in the completion of absentee and mail-in ballots, specifically that at least some voters did not enclose their completed ballots in the official election ballot envelope (the "Privacy Envelope"). *See* May 28, 2020 Guidance from Deputy Secretary for Elections and Commissions Jonathan M. Marks to County Election Officials, attached hereto as **Exhibit A**. The Department of State, under its statutory discretion to do so, instructed that there is no "statutory requirement, nor is there any statutory authority for setting aside an absentee or mail-in ballot solely because the voter forgot to properly insert it into the official election envelope." *Id.* In addition, the Department of State directed Boards to preserve the secrecy of these ballots by developing a process that allows members of the pre-canvass and canvass boards to insert these ballots into empty election ballot envelopes until they are ready to be counted. *Id.* On information and belief, a majority of counties followed the guidance of the Department of State and counted the so-called "Naked ballots."

Over the week before Election Day, and in response to the killing of George Floyd, civil disturbances occurred, and curfews and travel restrictions were implemented in six large counties. In those counties, the protests impeded county election activities and opportunities for voters to submit their absentee and mail-in ballots. In response, Governor Wolf signed Executive Order 2020-02 which extended the deadline for the receipt of absentee and mail-in ballots to require that ballots returned by mail to be postmarked by June 2 and received by June 9. *See* Executive Order 2020-02 at § 1.

Despite the social distancing and in-person limitations presented by the COVID-19 pandemic, wide-scale civil unrest, and the first implementation of vote-by mail, the Commonwealth administered the 2020 Primary Election, canvassed the votes and declared

winners. There have been no credible allegations of voter fraud in connection with the over 2,000,000 vote-by-mail ballots applications that were received and completed in the Primary Election.

     **F.**    **The 2020 General Election.**

     The free and fair administration of the 2020 General Election is imperative to the future of the Commonwealth of Pennsylvania and the country. Clear guidance on mail-in ballot procedures and protocols will prevent unsubstantiated allegations seeking to undermine the results of the election.

     The Intervenors have a significant interest in deterring efforts to undermine the administration and outcome of the 2020 General Election, including efforts to cause valid votes to be discarded or to interfere with efforts of counties to administer an election in a manner that allows all voters to exercise their franchise as easily as is feasible in this era of a pandemic.

## III.    <u>ARGUMENT</u>

     **A.**    **Standard for Intervention.**

     Rule 24 of the Federal Rules of Civil Procedure governs intervention by non-parties. The Rule provides, in pertinent part, as follows:

> a.    <u>Intervention of Right</u>.  On a timely motion, the court must permit anyone to intervene who: . . .
>
> 2.    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> b.    <u>Permissive Intervention</u>
>
> 1.    In General.  On timely motion, the court may permit anyone to intervene who:. . . .

(b)    has a claim or defense that shares with the main action a
common question of law or fact . . . . .

3.    <u>Delay or Prejudice</u>.  In exercising its discretion, the court
must consider whether the intervention will unduly delay or
prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.

The Third Circuit, applying Rule 24, has held that a party may intervene as of right if it can

demonstrate: "(1) a sufficient interest in the litigation; (2) a threat that the interest will be impaired

or affected, as a practical matter, by the disposition of the action; and (3) that its interest is not

adequately represented by the existing parties to the litigation." *Pennsylvania v. President United*

*States of America*, 888 F.3d 52, 57 (3d Cir. 2018).

**B.    The Pennsylvania Democratic Party and the Candidates Meet the Standard
for Intervention As of Right.**

The Intervenors satisfy all three requirements for intervention as of right in this matter.

*1.    Courts have consistently held that political parties have interests in cases
challenging general election procedure.*

The Pennsylvania Democratic Party, like other political organizations, has distinct interests

in litigation that challenges general election procedure, namely protecting Democratic candidates

in competing in a free and fair election and further protecting registered Democratic voters' rights

to an effective vote. *See Orloski v. Davis*, 564 F. Supp. 526 (M.D. Pa. 1983); *Pennsylvania*

*Democratic Party v. Republican Party of Pennsylvania*, No. 16-5664, 2016 WL 6582659 (E.D.

Pa. Nov. 7, 2016).

Both the Pennsylvania Democratic Party and the Pennsylvania Republican Party have been

permitted to intervene in cases addressing the conduct of the general election. *See, e.g., Pierce v.*

*Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684 (W.D. Pa. 2003) (addressing Republican

challenge to third-party delivery of absentee ballots and noting the intervention of the Pennsylvania

Democratic Party); *Stein v. Cortes*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) (addressing recount demand for 2016 general election ballots and noting the intervention of the Pennsylvania Republican Party).

This right of political parties to intervene is recognized by federal courts across the country. In *Democratic Party of Georgia, Inc. v. Crittenden*, 18-cv-05181 (N.D. Ga. 2018), the state Democratic Party sued state election officials over the procedure for canvasing and curing provisional ballots. The court held that the Democratic Party of Georgia had organizational standing to bring such a challenge. *Id*. The federal court further permitted the Republican Party of Georgia to intervene in the proceedings and thereafter oppose the relief requested by the Democratic Party in a pro forma slip opinion order. *Id*. at [ECF 40] (N.D. Ga. Nov. 14, 2018). Similarly, in *Democratic Exec. Comm. of Florida v. Detzner*, 347 F. Supp. 3d 1017 (N.D. Fla. 2018), the Democratic Party sued state election officials over rejected provisional ballots. Again, the federal court expressly found that the state Democratic party had standing to bring such claims on behalf of its voters. *Id*. Further, the federal court again permitted an opposing political party, the National Republican Senatorial Committee, to intervene in the matter in a pro forma slip opinion order. *Id*. at [ECF 20] (N.D. Fla. Nov. 8, 2018).

State parties have a cognizable interest in intervening in lawsuits regarding general election procedure. This case is no exception.

2.   *The Intervenors have an interest in protecting their right to compete in free and fair elections.*

The Pennsylvania Democratic Party represents and is accountable to the interest of its registered voters in the Commonwealth. It promotes and protects its members and nominees for public office. It works to increase voter turnout to elect Democratic candidates at the federal, state and local levels and monitors the election process to ensure that all eligible voters have their votes

protected. The Candidates hope to be elected to the seats for which they are nominees. Each candidate spent significant resources and invested their time to win the Democratic Primary and will do so once again in an effort to compete, and hopefully, prevail in the General Election.

Federal courts in this Commonwealth have held that political associations have standing to protect the interests of their candidates, including challenges to general election balloting procedures. *See Orloski*, 564 F. Supp. at 531. For example, in *Orloski*, the Court granted the Democratic Party's motion to intervene in challenging the Pennsylvania statute (42 P.S.C.A. § 3133) governing the election of Commonwealth Court judges. *Id.* at 529.[2] Apparently to encourage the election of bipartisan bench, that statute provided that, in that particular situation, where there were three vacancies on the court, a political party could only nominate two candidates. The Pennsylvania Democratic Party asserted that the statute unconstitutionally diluted the voting power of voters and argued that its members' voting strength was "worth less in electing their preferred choices than the fewer minority party votes are worth in electing their single candidate." *Id.* The court held that the Pennsylvania Democratic Party had sufficient interest in the matter to raise their claim, and held that because it "endorse[d] and support[ed] candidates for each statewide judicial office in the Commonwealth," it had a right to participate in the litigation. *Id.* at 530-531.

Similar to the challenge in *Orloski*, where the election process itself was at issue, the Pennsylvania Democratic Party has an interest in protecting its candidates in the general election in November. The Pennsylvania Democratic Party endorses and supports its candidates for each General and Municipal Pennsylvania Election. The relief that the Plaintiffs demand here would

---

[2] In *Orloski*, the named party was the Pennsylvania Democratic State Committee, the executive body of the Pennsylvania Democratic Party. The Pennsylvania Democratic Party uses both names in varying contexts. *See generally* Rules of the Pennsylvania Democratic Party.

undermine the fairness of the election and harm the Democratic candidates. The Pennsylvania Democratic Party is entitled to protect and defend the interests of its candidates. *See id.; see also Democratic Party of the United States v. Nat'l Conservative Political Action Comm.*, 578 F.Supp. 797, 810 (E.D. Pa. 1983) (holding the Democratic Party had Article III standing to challenge presidential election campaign funding statute because "speech that reduces the likelihood of its nominee's victory injures the Democratic Party in more than an ideological way."), *aff'd in part and rev'd in part on other grounds sub nom* 470 U.S. 480 (1985); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (noting that "a political party's interest in a candidate's success is not merely an ideological interest. Political victory accedes power to the winning party, enabling it to better direct the machinery of government toward the party's interests.") (citation omitted).

In *Pa. Democratic Party*, this Court expressly found organizational standing for the Pennsylvania Democratic Party. *Pa. Democratic Party*, 2016 WL 6582659, at *3. In a lawsuit alleging voter intimidation in the 2016 presidential election, the court found that the Pennsylvania Democratic Party rightfully could bring the claim to protect "the interests of both Democratic candidates running for office and Democratic voters." *Id.* Early this month, a court in the Eastern District made a similar ruling. *See Libertarian Party of Pennsylvania, et al., v. Wolf*, No. 20-2299 (E.D. Pa. 2020) (Smith, J.). The Pennsylvania Democratic Party has an identical interest in protecting its candidates in this election.

        3.      *The Intervenors have an interest in protecting their voters, constituents and members.*

The Intervenors have a cognizable interest to protect their voters, constituents and members in the general election. As noted, in *Pa. Democratic Party*, the Court found standing for the Pennsylvania Democratic Party in its effort to protect its voters. *Pa. Democratic Party*, 2016 WL

6582659 at *3.  The court found that the Pennsylvania Democratic Party "works to elect Democrats from the top of the ticket on down in local, county, state, and federal elections." *Id*.  In representing their own voters, the party had standing to bring suit and protect its interests. *Id*.  The court in *Orloski* also found that, beyond the interests of its candidates, the Pennsylvania Democratic Party had standing to protect its voters.  *Orloski*, 564 F.Supp. at 531 (holding "[t]he right of a party...to a place on the ballot is entitled to protection and is intertwined with the rights of voters."). The Pennsylvania Democratic Party in *Orloski* challenged the constitutionality of the statute under voter dilution concerns because it limited the number of major party votes.  *Id*. at 529.

Here, Plaintiffs seek to invalidate procedures of the Commonwealth's vote-by-mail program for an alleged fear of voter fraud in the absence of any evidence of such wide-spread fraud. Were the Court to grant Plaintiffs' relief, it would be harder for citizens to vote in the Commonwealth and potentially disenfranchise thousands of voters who fail to follow immaterial procedural instructions. While voters are instructed to use a privacy envelope in submitting their ballot, the Commonwealth's Department of State, accurately noted that there is nothing in the Election Code permitting or authorizing a County Board of Election to discard a ballot cast without a privacy envelope. *See* 25 P.S. § 3146.8. The Commonwealth Court of Pennsylvania has addressed the issue of voter intent in a case where a form of ballot was argued to override the will of the voter and stated that the intent of the voter should control in the absence of a clear indication of fraud. *See In re Pennsylvania Gen. Elec. for Snyder County Comm'r*, 841 A.2d 593, 597 (Pa. Commw. Ct. 2003).  In interpreting the write-in provisions of the Election Code, the applicable laws "must be liberally construed in favor of a voter's right to vote." *Shambach v. Bickhart*, 845 A.2d 793, 802 (Pa. 2004).  The clear legislative intent to allow these votes to be counted can be seen by comparison to the statute applicable to provisional ballots, which expressly includes

language authorizing/requiring the Board to not count *provisional* ballots that are not in a privacy envelope.  *See* 25 P.S. § 3050(a.4)(5)(ii)(C).  Importantly, no such language is located in the statute applicable to the mail-in or absentee ballots.  *See* 25 P.S. § 3146.8.

The Intervenors seek to protect the electoral franchises of their voters and ensure free and fair elections in the Commonwealth.  Because federal and state courts in have explicitly held that political candidates and political parties have standing to challenge general election procedures on behalf of their party, candidates, and voters, this Court can and should find that Intervenors have an interest in this litigation. *See Orloski*, 564 F. Supp. at 530 (permitting Democratic State Committee and Chair of that committee to intervene to protect interests of, among others, political candidates).

For these reasons, the Intervenors have a legally recognized interest in protecting their voters, members, and themselves.

> 4.    *The Pennsylvania Democratic Party and the Candidates' interests are impaired by the requested relief.*

The relief that the Plaintiffs demand here would directly and substantially impair the rights and interests of the Intervenors. *See President*, 888 F.3d at 59 (An intervenor "must demonstrate that [its] legal interests may be affected or impaired[ ] as a practical matter by the disposition of the action."). Impairment is a "diminution, however small, in strength, value, quality, or quantity." 6 Moore's Fed. Practice, § 24.03(3)(a). Pennsylvania courts "'may consider any significant legal effect on the applicant's interest,' including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention." *President*, 888 F.3d at 59.  Pennsylvania also follows a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Id*.

Plaintiffs' requested relief would threaten many of the modernizations to Pennsylvania's elections provided by Act 77. Plaintiffs' requested relief undermines the ability of voters to conveniently cast their ballots for candidates of the Pennsylvania Democratic Party and seeks to invalidate mail-in ballots that suffer small procedural defects. The effect would be to disenfranchise thousands of voters during a Presidential election. The Candidates who have expended large amounts of time, money, and other resources, will be directly harmed if the votes of their supporters are not cast and not counted. Accordingly, Plaintiffs' requested relief would directly and substantially impair the Pennsylvania Democratic Party's cognizable interests.

     5.    *The Intervenors interests are not adequately represented by the existing Defendants.*

The named Defendants are the State's primary election officer and all county boards of election in the Commonwealth. All of the defendants are statutorily required to remain impartial in elections. *See e.g.*, 25 Pa. C.S. § 102 (department of state administers the Election Code); 201 (outlining the duties of the Secretary of the Commonwealth); 301 (outlining the duties of Boards).

These election officials cannot adequately represent the Intervenors' cognizable interests. Interests "are not adequately represented if they diverge sufficiently from the interests of the existing party, such that 'the existing party cannot devote proper attention to the applicant's interests.'" *President*, 888 F.3d at 60 (citations omitted). The burden is minimal, and in the case of a governmental entity whose views are colored by public welfare rather than more personal interests of the intervenor, "the burden is comparatively light." *Id.* at 60-61. The Intervenors' interests diverge from the Defendants' because their purpose is to protect their own party, candidates, and voters, which political parties and candidates have a distinct right to protect. *See Orloski*, 564 F.Supp. at 531; Pa. Democratic Party, 2016 WL 6582659 at *3. These interests are directly opposed to the Plaintiffs' interests here.

14

6.      *Intervention is timely.*

The instant motion is timely under all the circumstances.  *See Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970 (3d Cir. 1982) (presenting three factors for determining timeliness: how far proceedings have progressed; prejudice caused by a delay and the reason for the delay).  Plaintiffs filed the instant lawsuit on June 29, 2020 and, only served Defendants on July 6, 2020. *See* July 2, 2020 Order, Dkt. 7. On July 1, 2020, Plaintiffs filed a motion to expedite a speedy declaratory judgment hearing and for expedited discovery and on July 2, 2020, the Court issued an order requiring plaintiffs to achieve service of the Complaint and the motion and gave defendants until July 13, 2020 to file a response.  Dkt. 7. Thus, the Court has yet to enter any been no substantive orders in this case, nor have entries of appearance been filed on behalf of all 68 Defendants.

**C.      Alternatively, Permissive Joinder Is Appropriate To Protect The Intervenors' Interests.**

In the alternative, this Court should exercise its discretion to permit the Intervenors to intervene permissively under Fed. R. Civ. P. 24(b).  Rule 24(b) allows for intervention where "a claim or defense that shares with the main action a common question of law or fact" exists and a timely application is made.  Fed. R. Civ. P. 24(b)(1)(b).  It is within the trial court's discretion to determine whether intervention would "unduly delay or prejudice the adjudication of the rights of the parties."  *Kitzmiller v. Dover Area School Dist.*, 388 F.Supp.2d 484, 486 (M.D. Pa. 2005) (holding that in granting permissive intervention, "courts consider whether the proposed intervenors will add anything to the litigation.").  For the same reasons that support intervention as of right, the instant motion meets all the requirements for permissive intervention, and it would not cause any prejudice to the original parties.  Specifically, the Intervenors' claims and defenses directly relate to the same Code sections and procedures under which Plaintiffs seek relief.

Further, permitting the Intervenors to intervene would aid the Court with its expertise in the political election process and in the "adversarial testing" to the parties' dispute. *See League of Women Voters of Virginia v. Virginia State Bd. of Elec.*, No. 6:20-00024, 2020 WL 2090678, at *5 (granting permissive intervention to the Republican Party of Virginia where the existing parties had continued to reach consent orders).

For these reasons, this Court should permit the Intervenors to intervene in this case.

## IV.   **CONCLUSION**

For the foregoing reasons, the Intervenors respectfully request that this Court enter an order granting Intervenors' Motion to Intervene, by right, or in the alternative, enter an order granting Intervenors the permission to intervene.

Respectfully submitted,

*/s/ A. Michael Pratt*
A. Michael Pratt
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
(t) 215.972.5916
(f) 215.988.7801
prattam@gtlaw.com

Kevin M. Greenberg (*pro hac vice* forthcoming)
Adam R. Roseman (*pro hac vice* forthcoming)
George Farrell (*pro hac vice* forthcoming)
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
(t) 215.988.7818
(f) 215.988.7801
greenbergk@gtlaw.com

Clifford B. Levine
Alex Lacey
**DENTONS COHEN & GRIGSBY P.C.**
625 Liberty Avenue

16

Pittsburgh, PA  15222-3152
(t) 412.297.4998/4642
clifford.levine@dentons.com
alex.lacey@dentons.com

Lazar M. Palnick
1216 Heberton St.
Pittsburgh, PA 15206
(t) 412.661.3633
lazarpalnick@gmail.com


Dated: July 13, 2020

**TABLE OF CONTENTS OF EXHIBITS TO BRIEF IN SUPPORT OF MOTION TO INTERVENE**

| Exhibit | Description of Exhibit |
|---|---|
| Exhibit A | May 28, 2020 Email from Jonathan Marks to County Election Officials. |
| Exhibit B | Proposed Intervenors' Motion to Dismiss, Brief in Support, Exhibit, and Proposed Order. |
| Exhibit C | *Libertarian Party of Pennsylvania, et al v. Wolf, et al*, No. 20-2299, Order regarding Motion to Intervene (E.D. Pa. July 8, 2020). |