**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) ) | |
| | ) | Civil Action |
| Plaintiffs, | ) ) | No.: 2-20-CV-966 |
| v. | ) ) | |
| KATHY BOOCKVAR; *et al.*, | ) ) | |
| | ) | Judge J. Nicholas Ranjan |
| Defendants. | ) | |

**MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF MOTION FOR
A SPEEDY DECLARATORY JUDGMENT HEARING AND EXPEDITED DISCOVERY**

Plaintiffs[1] hereby seek leave to file a Reply Brief in support of their Motion for a Speedy Declaratory Judgment Hearing and Expedited Discovery ("Motion"). As the Court did not address a Reply Brief in its Order (ECF #7) and the Court's Preferences do not provide for a Reply Brief as of right (*see, e.g., Practices and Procedures (rev. 1/6/20), Section II(f)&(h)*), Plaintiffs are seeking leave to file a short Reply Brief in support of their Motion to address several arguments or contentions that were raised for the first time in the various Responses that were filed.[2] Some of those new arguments are highlighted in this Motion to demonstrate the need for a Reply Brief. In support of this Motion, Plaintiffs aver as follows:

---

[1] Plaintiffs are: (1) the principal committee for the reelection campaign of President Donald J. Trump, (2) four members of the United States House of Representatives, representing the 13th, 14th, 15th, and 16th Congressional Districts of Pennsylvania and seeking reelection to another term in office; (3) a national political committee that leads the Republican Party of the United States; and (4) two qualified registered electors residing in Pennsylvania who would like to poll watch in counties outside their residential counties.

[2] Plaintiffs understand it is the Court's preference that Reply Briefs not be attached to a motion seeking leave to file same. Accordingly, Plaintiffs have not prepared and attached a proposed Reply Brief to this motion.

1.      Nearly every Response or Joinder filed in Opposition to Plaintiffs' Motion[3] contains an argument that the requested expedited hearing should not be granted because responsive pleadings have not been filed yet.  *See, e.g.,* Secretary of the Commonwealth Kathy Boockvar's Response (ECF #48), p. 5.  The only support for such an argument comes from two cases, one of which cites the other.  *See Perry v. Correct Care Sols., LLC*, 2017 U.S. Dist. LEXIS 229393, at *7 (E.D. Va. June 2, 2017) (citing *Drinan v. Nixon*, 364 F. Supp. 853, 854 (D. Mass. 1973)).  And, the earlier of the two cases has no analysis to reach its conclusion; instead, it is based upon an implication and assumption.  *See Drinan*, 364 F. Supp. at 854 ("Implicit in such provision, however, is the assumption that prior to such order for a speedy hearing, the matter in issue will have been joined by the filing of a responsive pleading.").  If permitted to file a Reply Brief, Plaintiffs will explain why this cited authority is unavailing, including that the Honorable William S. Stickman IV of this Court, fewer than two months ago, rejected this same argument and ordered expedited discovery and an expedited hearing prior to the defendant filing a responsive pleading.  *Compare Cty of Butler v. Wolf*, Case No. 2:20-cv-00677-WSS, Doc. 13, pp.5-6 (arguing lack of responsive pleading made requested hearing premature) *with Cty. of Butler v. Wolf*, 2020 U.S. Dist. LEXIS 93484, at *15-17 (W.D. Pa. May 28, 2020) (Stickman, IV, J.) (ordering expedited discovery and hearing).[4]

---

[3] Not all Defendants filed a response or joinder in opposition to Plaintiffs' Motion.  Instead, out of the sixty-eight (68) defendants, only 38 have filed or served a response or joinder.  *See* ECF ## 43, 46, 48, 51, 59, 61, 63, 64, 65, 66, 67, 69, 70, 71, 73, 74, 76, 77, 80, 81, 82, 84, & 106; Adams County Board of Elections' Response (unfiled).  Accordingly, the remaining 30 defendants do not oppose the relief sought by Plaintiffs in their Motion.  Moreover, one of the Responding Defendants, Huntingdon County Board of Elections, filed its Answer to the Complaint without raising any affirmative defenses or other issue concerning Plaintiffs' standing.  *See* ECF #36.

[4] Giving credence to Responding Defendants' argument also would allow one party (or one side) to unilaterally read out of Rule 57 a procedural mechanism for "the just, speedy, and inexpensive determination of" an action (Fed.R.Civ.P. 1) by delaying until the last day possible to respond to a complaint and by responding with a Rule 12 motion, which then sets up a briefing schedule and

2.      Also appearing in nearly every Response filed is the assertion that Plaintiffs lack standing to bring their claims.  *See, e.g.,* Defendant Crawford County Board of Elections' Response (ECF #46), pp. 3-5.  If permitted to file a Reply Brief, Plaintiffs will explain why that assertion is wrong. *See, e.g., Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 573-74 (6th Cir. 2004) ("Appellees are political parties and labor organizations.  They claim standing to assert their own rights, and also the rights of their individual members. … Under these principles, Appellees have standing to assert, at least, the rights of their members who will vote in the November 2004 election.  Appellees have not identified specific voters who will seek to vote at a polling place that will be deemed wrong by election workers, but this is understandable; by their nature, mistakes cannot be specifically identified in advance.  Thus, a voter cannot know in advance that his or her name will be dropped from the rolls, or listed in an incorrect precinct, or listed correctly but subject to a human error by an election worker who mistakenly believes the voter is at the wrong polling place.  It is inevitable, however, that there will be such mistakes.  The issues Appellees raise are not speculative or remote; they are real and imminent."); *Pa. Democratic Party v. Republican Party of Pa.*, 2016 U.S. Dist. LEXIS 153944, at *8-9 (E.D. Pa. Nov. 7, 2016) ("I agree that Plaintiff has standing to proceed."); *Pierce v. Allegheny County Board of Elections*, 324 F. Supp. 2d 684, 692-93 (W.D. Pa. 2003) ("Here, plaintiffs, who are voters, pled a sufficient injury by alleging that, if this court does not act, there will be no mechanism by which absentee ballots could be challenged for alleged violations of the election code and the United States Constitution.  The causation and redressability prongs are also met in this case.  Based upon the evidence presented, it is clear that plaintiffs' challenges are traceable to defendant's

---

requires a reasoned decision by the Court.  And assuming the motion is denied, the party or side then has additional time to delay the hearing by waiting until the last possible moment to file an answer (assuming that party/side does not attempt to take an appeal of the decision).  It is inconceivable that a Rule designed to allow a Court to resolve a matter or portion thereof quickly would be so easily contorted by the strategic conduct of one party or side.

implementation of three different policies that appear inconsistent with a strict interpretation of the election code and are also inconsistent with the policy in at least one other county. With regard to the redressability prong, the relief that plaintiffs request in part - setting aside the hand-delivered absentee ballots so that they are not commingled with the other ballots - would alleviate plaintiffs' alleged injury and provide an opportunity to challenge the ballots. Therefore, plaintiffs have standing to request a remedy with regard to the 937 hand-delivered absentee ballots that the Board of Elections accepted under three inconsistent policies."). *See also Democratic Exec. Comm. v. Detzner,* 347 F. Supp. 3d 1017, 1025 (N.D. Fl. 2018) ("political parties 'have standing to assert, at least, the rights of its members who will vote in an upcoming election.'") (citation omitted).

4.    Moreover, many of the Responding Defendants argue that standing does not exist because "[t]here is no harm to the right to vote or violation of the Equal Protection clause when different counties implement different policies with respect to strictly local elections" and that without voters from each of the named defendant counties, standing is non-existent. *See, e.g.,* Defendant Crawford County Board of Elections' Response (ECF #46), pp. 4-5. However, what this argument ignores is that the upcoming November 4, 2020 General Election is a federal election involving both federal and statewide candidates and not a local election confined to one county. *See* Verified Complaint (ECF#4), ¶¶ 1, 8-12. Moreover, as this Court noted years ago, when different standards are employed in different counties across the Commonwealth of Pennsylvania to determine whether a ballot has been properly cast and should be counted in a federal or statewide election, such "disparate treatment implicates the [federal] equal protection clause because uniform standards will not be used statewide to discern the legality of a vote in a statewide election." *Pierce*, 324 F. Supp. 2d at 699.

5.      The Responding Defendants also assert that Plaintiffs' claims are deficient and likely to be dismissed on a Rule 12 motion.[5]  *See, e.g.,* Secretary of the Commonwealth Kathy Boockvar's Response (ECF #48), p. 5.  What is interesting, though, is that only one Responding Defendant has explained what it believes the grounds *may* be for such a dispositive motion.  ECF #76.  Assuming the grounds explicated in ECF #76 are the grounds that may be asserted by the other Responding Defendants, Plaintiffs have arguments in response, which they will make clear in a Reply Brief.

6.      For example, the Responding Defendants claim that Plaintiffs' Complaint should be dismissed because other lawsuits are pending that raise allegedly similar claims.  *See* ECF #76, pp. 3-4.  But, one of those suits (*Pennsylvania Democratic Party v. Boockvar*) was filed after this lawsuit and the other two involve claims arising only under state law, not the federal constitution.  Here, Plaintiffs' Complaint invokes federal question jurisdiction because the action arises under the United States Constitution and the laws of the United States and involves a federal election.  *See* Verified Complaint (ECF#4), ¶ 6.  The right of qualified citizens to vote in a state election involving federal candidates is recognized as a fundamental right under the Fourteenth Amendment of the United States Constitution.  *See Harper v. Virginia State Board of Elections,* 383 U.S. 663, 665 (1966); *Reynolds v. Sims,* 377 U.S. 533, 554 (1964).  Indeed, ever since the *Slaughter-House Cases,* 83 U.S. 36 (1873), the United States Supreme Court has held that the Privileges and Immunities Clause of the Fourteenth Amendment protects certain rights of federal

---

[5] To the extent any Responding Defendant chooses to proceed with a Rule 12 motion, that filing must satisfy this Court's requirement that any such motion be filed only after consultation with the opposing party "to determine whether any purported defects with the complaint can be cured."  Practices and Procedures (rev. 1/6/20), Section II(c)).  Plaintiffs' counsel raised this requirement with Defendant Boockvar's counsel during a July 8, 2020, telephone conference, but her counsel was unable or unwilling to explain the grounds at that time, and none appear in her Response.  *See* ECF #48.  Moreover, this Court expressly notes that the filing of a Motion to Dismiss normally does not stay discovery.  *See* Practices and Procedures (rev. 1/6/20), Section II(c).

citizenship from state interference, including the right of citizens to directly elect members of Congress. *See Twining v. New Jersey*, 211 U.S. 78, 97 (1908) (citing *Ex parte Yarbrough*, 110 U.S. 651, 663-64 (1884)). *See also Oregon v. Mitchell,* 400 U.S. 112, 148-49 (1970) (Douglas, J., concurring) (collecting cases). Similarly, once "the state legislature vests the right to vote for President in its people, the right to vote ... is fundamental ..." *Bush v. Gore*, 531 U.S. 98, 104 (2000), such that "[a] significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question." *Bush, 531 U.S. at 113* (Rehnquist, J., concurring). *See also Smiley v. Holm*, 285 U.S. 355, 365 (1932). Further, "[e]very voter in a federal … election, … has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974). *See also Reynolds*, 377 U.S. at 555 ("the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise"); *id. at 560* ("in statewide and in congressional elections, one person's vote must be counted equally with those of all other voters in a State").

7. Moreover, the suggested abstention doctrine is not applicable as the law Plaintiffs are seeking to enforce is not complex and there is no realistic contest to the meaning of the statutes at issue.

a. For example, the Pennsylvania Election Code expressly prohibits third-party delivery or other ballot harvesting. *See* 25 P.S. §§ 3146.6(a) & 3150.16(a). *See also .In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1231 (Pa. 2004) ("Section 3146.6(a) unequivocally provides that 'the elector **shall** send [the absentee ballot] by mail, postage, except where franked, or deliver it in person to the board of election.' 25 P.S. § 3146.6(a) (emphasis added). The word 'shall' carries an imperative or mandatory meaning. … Thus, under the statute's plain meaning, a non-disabled absentee voter has two choices: send the

ballot by mail, or deliver it in person.  Third-person hand-delivery of absentee ballots is not permitted.") (citations omitted); *id.* at 1232 ("In Section 3146.6(a), there is nothing to suggest that an absentee voter has a choice between whether he mails in his ballot or delivers his ballot in person, or has a third-party deliver it for him.  To construe Section 3146.6(a) as merely directory would render its limitation meaningless and, ultimately, absurd. … Moreover, under the principle of *expressio unius est exclusio alterius*, the General Assembly's failure to describe an alternative to mailing or in-person delivery of absentee ballots implies that third-person delivery is forbidden.") (citations omitted); *id.* at 1234 ("we hold that Section 3146.6(a)'s 'in person' delivery requirement is mandatory, and that the absentee ballots of non-disabled persons who had their ballots delivered in contravention of this mandatory provision are void.") (citation omitted).  Yet, despite the clear language of the statute, some counties allowed third-parties to deliver absentee and mail-in ballots for non-disabled voters in the June 2, 2020 Primary Election.  *See, e.g.,* Delaware County Press Release, June 1, 2020 (last accessed July 15, 2020) https://www.delcopa.gov/publicrelations/releases/2020/primaryupdate_june1.html.[6]

    b.  Also, the Election Code mandates that absentee and mail-in ballots be mailed or delivered to the "county board of election," that except for military and overseas ballots,

---

[6] At the time Plaintiffs filed their Complaint, they were unaware of the Delaware County Board of Elections' decision, announced the day before the June 2, 2020 Primary Election, to permit third-party delivery of absentee and mail-in ballots for non-disabled voters, as articulated in the June 1, 2020 press release.  Nor were Plaintiffs aware of that county board's decision to authorize the return of absentee and mail-in ballots to "ANY polling location on Election Day" via unmonitored drop boxes in which voters were "not be required to check in with the [poll] workers."  Additionally, Plaintiffs were unaware of the decision by the Delaware County Board of Elections to allow those who received and completed absentee or mail-in ballots but did not want to return them to the election board to appear at their respective polling location on Election Day and cast provisional ballots which will "likely be included in the initial results" in violation of the Election Code's mandates.  *See* 25 P.S. §§ 3146.16(b)(1)-(3), 3150.16(b)(1)-(3) & 3050(a.4).  To the extent necessary, Plaintiffs will amend their complaint, either as of right, by leave, or with consent, to supplement their claims to add these now-known transgressions.

"a completed [absentee or mail-in] ballot must be received in the office of the county board of elections no later than eight o'clock P.M. on the day of the primary or election," and that no election shall be held in a vacant lot or an office or building of an elected official.  *See* 25 P.S. §§ 3146.6(a) & (c), 3150.16(a) & (c), & 2729.1.   Nevertheless, despite the Election Code's clear and unambiguous mandate, approximately twenty (20) county election boards, with Secretary Boockvar's knowledge and consent, allowed absentee and mail-in ballots to be returned to other locations, such as in-person polling places, mobile collection sites, shopping centers, parking lots, fairgrounds, parks, retirement homes, college campuses, fire halls, municipal government buildings, and elected officials' offices, and/or used unmonitored and/or unsecured "drop-off boxes" or other similar means.  *See* Verified Complaint (ECF#4), ¶¶ 103-110 & 115-116; Delaware County Press Release, June 1, 2020 (last accessed July 15, 2020) https://www.delcopa.gov/publicrelations/releases/2020/primaryupdate_june1.html.

       c.    Further, the Election Code mandates that absentee and mail-in ballots "shall" be placed into an unmarked, securely sealed secrecy envelope which "shall then be placed in" a properly filled out, dated, signed, and securely sealed declaration envelope in order to be properly casted and counted.  *See* 25 P.S. §§ 3146.6(a), 3150.16(a), & 3146.8(g)(4)(ii). Nevertheless, despite the clear language of the state, Secretary Boockvar and her staff advised all county boards of elections on May 28, 2020, that "there is **no statutory requirement, nor is there any statutory authority**," for not counting an absentee or mail-in ballot that lacked a secrecy envelope, and suggested that "the boards of elections in its discretion may develop a process by which members of the pre-canvass or canvass boards insert these ballots into empty official election ballot envelopes or privacy sleeves until such time as they are ready to be tabulated."  *See* 05/28/2020 Email Message from J. Marks, Deputy Secretary for Elections & Commissions, attached hereto as Exhibit "1."

- 8 -

d.      Among other relief, Plaintiffs are seeking a declaration and injunction stopping Defendants from engaging in the above conduct because they contravene the clear and unambiguous legislative scheme enacted by the Pennsylvania General Assembly, and if they are allowed to continue, Plaintiffs' federal rights will be unconstitutionally infringed during the upcoming November 4, 2020 General Election.  *See* Verified Complaint (ECF#4), ¶¶ 152-155 & 162-164.[7]  Under such circumstances, abstention is inappropriate.  *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (emphasizing abstention is only appropriate in rare cases); *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995) ("Federal courts have an obligation to exercise their jurisdiction. Abstention, therefore, is the exception rather than the rule."); *EH Fusion Party v. Suffolk Cty. Bd. of Elections*, 401 F. Supp. 3d 376, 388-89 (E.D. N.Y. 2019) (denying abstention because "there is not an unsettled matter of state law regarding the meaning or requirements of the election law"); *ABC v. Blackwell*, 479 F. Supp. 2d 719, 731-732 (S.D. Oh. 2006) (abstention not warranted when state law is not challenged for facial vagueness and plaintiffs are entitled to a final decision before the upcoming mid-term election); *Cano v. Davis*, 191 F. Supp. 2d 1140, 1145 (C.D. Cal. 2002) (abstention should be denied where it "would foreclose any possibility that the fundamental voting rights violation that plaintiffs allege could be remedied prior to the next statewide election.").

8.      Most of the Responding Defendants also contend—out of one side of their mouth—that the discovery Plaintiffs seek is overly-burdensome and it is too time-consuming for them to compile it, while also arguing—out of the other side of their mouth—that they already are in the process of compiling the discovery Plaintiffs seek to provide to the Secretary of the

---

[7] Despite these blatant violations of the law (and the others outlined in the Complaint), Secretary Boockvar baldly proclaims in her Response that "[t]he Commonwealth properly administered the Primary Election."  ECF #48, p.6.

Commonwealth as required by state law.  *See, e.g.,* Defendant Crawford County Board of Elections' Response (ECF #46), pp. 6-9.  Plaintiffs would use a Reply Brief to address the burdensomeness objections raised by the various Responding Defendants.  *See, e.g., Western Acceptance, LLC v. Gen. Agric. Inc.,* No. 20-cv-00052, 2020 U.S. Dist. LEXIS 119529, at *16-17 (D. Colo., Jul. 8, 2020) (even significant discovery burdens are "well within the normal range" because parties always are burdened by discovery under our judicial system).  Only when the burden becomes "undue" is a party entitled to protection.

9.      Finally, to the extent Responding Defendants have an issue with the scope of the proposed discovery, Plaintiffs are amenable to a requirement that the parties meet-and-confer on the discovery topics and report the results of the same to the Court on an expedited basis.  *See, e.g., Cty. of Butler,* 2020 U.S. Dist. LEXIS 93484, at *16 ("[T]he Court hereby ORDERS the parties to meet and confer on the following topics:  1) The type and extent of discovery sought by each party.  To the extent that discovery is necessary, the Court will issue a case management order with condensed discovery deadlines; … .").

For all of the foregoing reasons, Plaintiffs request leave to file a Reply Brief, limited to 10 pages, within three (3) days of the Order granting this relief.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

Date:  July 16, 2020                    By:   */s/ Ronald L. Hicks, Jr.*
                                              Ronald L. Hicks, Jr. (PA #49520)
                                              Jeremy  A. Mercer (PA #86480)
                                              Russell D. Giancola (PA #200058)
                                              Six PPG Place, Third Floor
                                              Pittsburgh, PA 15222
                                              (412) 235-4500 (Telephone)
                                              (412) 235-4510 (Fax)
                                              rhicks@porterwright.com
                                              jmercer@porterwright.com
                                              rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(pro hac vice motion pending – ECF #27)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR | ) | |
| PRESIDENT, INC.; *et al.*, | ) | |
| | ) | Civil Action |
| Plaintiffs, | ) | |
| | ) | No.: 2-20-CV-966 |
| v. | ) | |
| | ) | |
| KATHY BOOCKVAR; *et al.*, | ) | |
| | ) | Judge J. Nicholas Ranjan |
| Defendants. | ) | |

**{ ORDER GRANTING }**
**MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF MOTION FOR**
**A SPEEDY DECLARATORY JUDGMENT HEARING AND EXPEDITED DISCOVERY**

AND NOW THIS _____ day of July, 2020, upon consideration of Plaintiffs' Motion for Leave to File a Reply Brief in Support of their Motion for a Speedy Declaratory Judgment Hearing and Expedited Discovery at ECF #_____ ("Motion"), and any and all responses or filings related thereto, that Motion is GRANTED. Plaintiffs are granted leave to file a Reply Brief in support of their motion at ECF #6. That Reply Brief is limited to 10 pages and must be filed no later than _____ days from the date of this Order.

IT IS SO ORDERED.

_____, J.
J. Nicholas Ranjan, District Judge

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Motion to be filed this 16th day of July, 2020, via ECF, which system will serve notice of same on all parties registered to receive same via the ECF system.  For any party who has yet to enter an appearance, the undersigned certifies that a copy of the foregoing filing will be served on that party via U.S. Mail and a copy sent to the County Solicitor, if known, via email or fax.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

By:  */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy  A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(pro hac vice motion pending – ECF #27)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*

13482744v1