**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 2:20-cv-00966-NR ) |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) Judge J. Nicholas Ranjan ) ) ) |
| Defendants. | ) ) ) |

## SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiffs' Complaint suffers from a host of procedural and substantive flaws, which require dismissal, or at least warrant abstention.

At the outset, Plaintiffs bring this case on behalf of uninjured parties in relation to speculative, or otherwise non-cognizable, harm, and they improperly do so in this federal forum:

- *First*, Plaintiffs lack standing to pursue declaratory and injunctive relief because their claims are based on conjecture about whether state officials will implement the Pennsylvania Election Code consistent with the federal and state constitutions. Plaintiffs fail to allege a concrete, imminent injury, but instead ask this Court to advise on the legality of how Pennsylvania election officials *might* enforce the Election Code, and to enjoin those officials from taking actions under state law that Plaintiffs speculate *might* cause them harm. They also plead injury stemming from the acts of hypothetical third-party fraudsters

undertaking criminal activity that may never occur. This is plainly improper and alone merits dismissal.

- *Second*, the Complaint presents a textbook example of a ripeness defect because it is premised on Defendants failing to take actions (such as publicizing polling locations) that even Plaintiffs concede Defendants are not required to have taken at this point in the election schedule. Those actions, when taken, will likely obviate the need for this Court's involvement.

- *Third*, Plaintiffs' claims against Commonwealth officials, whether premised on federal or state law, are barred by the Eleventh Amendment, which prohibits federal courts from ordering state officials to conform their conduct to state law. While Plaintiffs try to evade this clear limitation by also couching their claims as falling under the U.S. Constitution, Plaintiffs fail to allege any ongoing violation of federal law that would permit this Court to compel the activities of state officials.

- *Fourth*, litigation is currently ongoing in Commonwealth Court involving the proper interpretation of the same exact state statutory provisions Plaintiffs rely on in this lawsuit. That development counsels this Court to abstain from exercising jurisdiction and resolving those state law questions in the first instance, even assuming the U.S. Constitution permitted it and the Complaint stated viable claims.

In addition to the foregoing jurisdictional flaws, Plaintiffs' claims also fail to state plausible claims on the merits. Plaintiffs' claim that Pennsylvania citizens must be permitted to watch polls in any county regardless of residence lest there be rampant voting fraud is plainly incorrect and has already been considered and rejected by another federal district court. Plaintiffs' frustration with the Commonwealth's policies regarding poll watchers is best raised with the General

Assembly, and does not amount to a federal constitutional violation.  As for the Commonwealth's implementation of mail-in voting, the risk of hypothetical voter fraud does not support a plausible claim.  In any event, even taking Plaintiffs' speculative doomsday allegations as true, the Commonwealth's administration of Act 77[1] will not severely burden Plaintiffs' right to vote, and, in any event, is justified by weighty state interests in the health and safety of its citizens.  Nor does any voting procedure arbitrarily or unfairly discriminate among voters or votes.  Thus, while the Court need not even reach the point of determining whether Plaintiffs' allegations state a viable claim, if it does, it should conclude that they do not and dismiss the Complaint in its entirety.

## BACKGROUND

### Act 77 and the June 2020 Primary Elections

The Commonwealth has a long and proud history of conducting fair and free elections. Consistent with that history, in late 2019, the Pennsylvania General Assembly passed and Governor Wolf signed legislation—Act 77—reforming the Commonwealth's Election Code. Compl. (ECF No. 4) ¶¶ 88–89.  Act 77 made several changes to the Election Code, but the most consequential was the extension of no-excuse mail-in voting to all qualified electors.  *Id*. (citation omitted).  Procedural rules govern mail-in voting, including how and where votes must be cast. *See* 25 Pa. Cons. Stat. §§ 3146.6(a), 3150.16(a).

In early June 2020, Pennsylvania conducted its primary elections for the 2020 federal elections, which were the first elections with Act 77 in effect.  More than 1.8 million voters applied for a mail-in or absentee ballot, and nearly 1.5 million voters cast their vote by mail-in or absentee ballots.  Compl. ¶¶ 99-100.  At present, consistent with the requirements imposed by Act 77, the Pennsylvania Department of State, under the direction of Secretary Boockvar, is preparing a report

---

[1] 2019 Pa. Legis. Serv. Act 2019-77 (S.B. 421) ("Act 77").

regarding the Primary Election. 71 Pa. Cons. Stat. § 279.6. Pennsylvania's Act 35[2] requires that report to be filed within 60 days of the June 2, 2020 primary election, or approximately August 1, 2020. 71 Pa. Cons. Stat. § 279.6(a). The Secretary, along with Pennsylvania's 67 county boards of elections, is also preparing for the November 2020 General Election.

On June 29, 2020, Plaintiffs filed a Complaint alleging that the Commonwealth's implementation of mail-in voting during the General Election will result in a host of federal and state constitutional violations. While Plaintiffs cite to various practices and occurrences in relation to the now-past Primary Election, they do not assert claims based on (or challenge the results of) that election. Rather, Plaintiffs attempt to articulate four theories of harm under the federal and state constitutions for the upcoming General Election: (1) the Commonwealth's allowance of mail-in ballot collection at locations other than the offices of the county boards of elections during the General Election will allegedly lead to voter fraud and dilute votes (Counts I and III); (2) the Commonwealth's methods for collecting and counting votes during the General Election will arbitrarily dilute or disqualify certain votes (Counts II and III); (3) the Election Code's requirement that poll watchers reside in the county where they poll watch will allegedly depress the number of watchers and allow fraudulent voting (Counts IV and V); and (4) the Commonwealth will fail to timely and adequately notice the location of polling places (Counts VI and VII). Plaintiffs seek declaratory and injunctive relief compelling Secretary Boockvar and the various county boards of elections to comply with various provisions of Pennsylvania's Election Code.

On July 10, 2020, another group of plaintiffs sued the Commonwealth (including Secretary Boockvar and the 67 county boards of elections) in Commonwealth Court, seeking an authoritative construction of certain Election Code provisions, including those at issue in this case. Ex. 1, Pet.

---

[2] 2020 Pa. Legis. Serv. Act 2020-35 (H.B. 2502).

for Declaratory & Injunctive Relief, *Pa. Democratic Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020).  Those plaintiffs also propose to intervene in this lawsuit and ask this Court to abstain.  *See* Intervenors' Br. in Supp. of Mot. to Intervene (ECF No. 85); Proposed Intervenors' to Dismiss (ECF No. 85-2) at Br. in Supp. p.1 (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).

## ARGUMENT

## I.   PLAINTIFFS CANNOT BRING THEIR CLAIMS IN FEDERAL COURT.

Plaintiffs' case rests on their predictions about how election officials *might* enforce the Election Code in the upcoming General Election.  Speculating about potential voter fraud and how state officials will collect ballots and count votes, they ask for declaratory and injunctive relief against state officials in this federal court.  But Plaintiffs cannot allege that they currently suffer any injury, nor are their claims ripe for adjudication, as election officials are still in the process of preparing for the election and will take numerous steps in the interim that will altogether obviate the need for this Court's intervention or at least sharpen the issues in dispute.  More fundamentally, even if Plaintiffs had standing and their claims were ripe, the Eleventh Amendment categorically bars many of Plaintiffs' claims, which transparently seek relief from *state* officials pursuant to *state* law, but seek to do so in *federal* court.  Finally, given the pending action in the Commonwealth Court—where the plaintiffs have petitioned the court to resolve questions of statutory interpretation that form the basis of Plaintiffs' claims here—this Court should at the very least abstain from resolving novel state law questions.

### A.   Plaintiffs Lack Article III Standing.

Federal courts do not issue advisory opinions.  Rather, a plaintiff must have standing to invoke federal jurisdiction, which requires that the plaintiff demonstrate it has suffered an injury in fact that is concrete, particularized, or imminent; fairly traceable to the defendant's challenged

conduct; and likely to be redressed by a favorable judgment. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992). Plaintiffs' failure to plead a cognizable injury deprives this Court of jurisdiction and warrants dismissal of their claims pursuant to Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983).

1.    No Plaintiff Has Alleged an Injury That Is Concrete, Particularized, and Actual or Imminent Regarding the Treatment of Mail-In Ballots.

Plaintiffs fail to plead they have suffered, or will suffer, a concrete injury that might establish Article III standing with regard to the Commonwealth's receipt and counting of mail-in or absentee ballots. According to Plaintiffs, the June 2020 Primary Election revealed certain problems with Pennsylvania's election systems, such that they predict that "[a]bsent judicial intervention, there is no reason to believe things will be different during the November 3, 2020 General Election." Compl. ¶¶ 2, 142. Specifically, Plaintiffs fear that election officials will "haphazard[ly] administ[er]" Act 77 during the General Election by failing to adequately notice polling locations, sanctioning "unmonitored mail-in" voting, and adopting "standardless" procedures for counting votes (among other things). *E.g.*, Compl. ¶¶ 1, 3, 31, 69, 72, 192-96. They also forecast roving "[b]allot harvesters" going "door-to-door" collecting and turning in ballots for voters, and even "enter[ing] into voters' homes to help them retrieve and fill out their ballots." Compl. ¶ 73 (citation omitted).

To be blunt: "All [of these] theories share, at a minimum, an imminence problem." *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (per curiam), *petition for cert. filed*, No. 19-1399 (U.S. June 9, 2020). It is black-letter law that a threatened injury must be "certainly impending" to constitute injury in fact, making "[a]llegations of possible future injury" insufficient. *Clapper*, 568 U.S. at 409 (brackets in original) (emphasis & citations omitted)

(imminence requirement "ensure[s] that the alleged injury is not too speculative for Article III purposes" (citation omitted)).   Plaintiffs' subjective "apprehensions" about voter fraud and improperly tallied ballots are insufficient.  *Lyons*, 461 U.S. at 107 n.8.  Rather, "[i]t is the *reality of the threat of repeated injury* that is relevant to the standing inquiry . . . ." *Id.*  Nor do Plaintiffs' references to the Primary Election establish that a future injury is "certainly impending," as "the Supreme Court has not been sympathetic to claims that past occurrences of unlawful conduct create standing to obtain an injunction against the risk of future unlawful conduct." *Shelby Advocates*, 947 F.3d at 981–82 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–98 (1974); *Lyons*, 461 U.S. at 105–06).

Plaintiffs here plead the exact same concern as did the litigants in *Clapper*: executive officials *may* implement a new law in a manner inconsistent with the federal Constitution.  And for the exact same reasons the Supreme Court determined the *Clapper* plaintiffs lacked an Article III injury, this Court should reject Plaintiffs' claims here.  568 U.S. at 413–14 ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").  Speculative allegations about how state officials will implement the Election Code do not create an imminent injury susceptible to federal court resolution.  *Accord Lyons*, 461 U.S. 105–06; *Pa. Prison Soc'y v. Cortés*, 508 F.3d 156, 167–68 (3d Cir. 2007); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 911–12 (10th Cir. 2014); *Reddy v. Foster*, 845 F.3d 493, 500, 502–03 (1st Cir. 2017).  Other courts have similarly rejected conjectural challenges to upcoming elections.  *See, e.g.*, *Shelby Advocates*, 947 F.3d at 981–82 (citing *Clapper*); *Heindel v. Andino*, 359 F. Supp. 3d 341, 351–54 (D.S.C. 2019) (same), *judgment vacated & appeal dismissed*, 2019 WL 7781470 (4th Cir. Nov. 5, 2019); *Paher v. Cegavske*, --- F. Supp. 3d ----, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2089813, at *5 (D. Nev. Apr. 30, 2020)

("This is not a pioneering finding.  Other courts have similarly found the absence of an injury-in-fact based on claimed vote dilution.").[3]

      2.     <u>Plaintiffs Lack Standing to Assert Their Poll Watcher Claims</u>.

Plaintiffs also fail to plead a concrete or imminent injury related to their challenge to the poll watcher residency requirement.  Plaintiffs baldly assert that they will be "unjustifiably burdened in their attempts to locate available, qualified registered electors who can serve as poll watchers" due to the residency requirement, Compl. ¶ 132, but there is no suggestion whatsoever that Plaintiffs have even attempted to recruit poll watchers at all, let alone that they have been unable to locate enough poll watchers to satisfy whatever constitutional poll watcher threshold they claim exists.  Bare predictions that the residency requirement will "make[] it extremely difficult or functionally impracticable for candidates and parties" to secure enough poll watchers at all ballot-casting locations, Compl. ¶ 180, are insufficient and too speculative to support Article III standing.  *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions . . . do not support a finding of the 'actual or imminent' injury that our cases require.").  Until Plaintiffs can show that they have been unable to recruit poll watchers, their facial attack to the Commonwealth's long-

---

[3] Plaintiffs' challenge to the administration of mail-in voting suffers from three additional flaws: First, Plaintiffs allege that mail-in voting "provides fraudsters an easy opportunity to engage in ballot harvesting, manipulate or destroy ballots, manufacture duplicitous votes, and sow chaos." Compl. ¶ 1.  But to the extent Plaintiffs' alleged injuries will be caused by these "fraudsters," those injuries will not be caused by Defendants.  *See Heindel*, 359 F. Supp. 3d at 359.  Second, and relatedly, because Plaintiffs' alleged injuries flow from the criminal activities of third parties, the relief Plaintiffs' seek would not, even if granted, redress their alleged injury.  *See Lujan*, 504 U.S. at 570–71 ("The short of the matter is that redress of the only injury in fact respondents complain of requires action . . . by [third parties]; and any relief the District Court could have provided in this suit against the Secretary was not likely to produce that action.").  Third, in Count I of the Complaint, Plaintiffs gesture at an argument that the Pennsylvania Executive cannot "exercise legislative power" and "unilaterally" establish procedures for casting mail-in votes.  Compl. ¶¶ 150, 155; *see also id.* ¶ 36.  But if that claim belongs to anyone, it is the General Assembly, not Plaintiffs.  *Cf. Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663–65 (2015).

standing residency requirement is based entirely on "a 'contingent future event[] that may not occur as anticipated, or indeed may not occur at all.'" *Reddy*, 845 F.3d at 502–05 (brackets in original) (citation omitted); *see Pa. Prison Soc'y*, 508 F.3d at 166–67; *cf. Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51, 458–59 (2008). Because Plaintiffs' claims are based on a contingent future event that may never occur, they lack standing and dismissal is warranted.

### B. Plaintiffs' Claims Are Not Ripe.

Plaintiffs' speculative injuries also mean that their claims are not ripe. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) ("The doctrines of standing and ripeness 'originate' from the same Article III limitation." (citation omitted)). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003); Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and The Federal System* 213 (7th ed. 2015) ("The classic example of a ripeness concern involves the plaintiff who wishes to challenge the validity of a governmental policy that has not yet been enforced against him or her and may never be."). In performing a ripeness inquiry, courts consider, among other things, whether "the facts of the case [are] sufficiently developed to provide the court with enough information on which to decide the matter conclusively" and whether "a party [is] genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one." *Peachlum*, 333 F.3d at 433–34; *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967) (ripeness turns on "fitness" for "judicial decision").

The present dispute is not "fit" for resolution at this time because facts are still developing that will affect Plaintiffs' claims. For example, while Plaintiffs allege election officials will not properly notice voting locations, they readily acknowledge that the Election Code does not require that the county boards of elections provide more than 20 days' public notice of the location of all

polling places, Compl. ¶ 192; *see also* 25 Pa. Cons. Stat. § 2726(c).  That date is still months away. Likewise, Plaintiffs predict that the protocols used during the Primary Election will, "[o]n information and belief," be implemented during the General Election.  Compl. ¶ 196.  But the Commonwealth has not finalized or publicized its General Election policies, and the Complaint only speculates about what might happen.  Accordingly, Plaintiffs have not alleged facts necessary to determine whether a constitutional violation will ever occur.  *See, e.g.*, *Foster*, 845 F.3d at 505.

This is not a case like, for example, *Pierce v. Allegheny County Board of Elections* (cited in the Complaint), where the Court was able to review what had actually happened during the election to determine whether relief was warranted with respect to the specific election practices that had been enacted.  324 F. Supp. 2d 684, 692–93 (W.D. Pa. 2003).  Nor is this a case like *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004), where a state policy is alleged to be on its face a violation of a federal statute, making the federal statutory violation inevitable and the dispute an entirely legal one.  Here, the very policies that are the subject of Plaintiffs' challenges have yet to be established (in accordance with the schedule imposed by Commonwealth law).  Article III does not permit such a pre-emptive challenge.  *See Constitution Party of Pa. v. Cortes*, 712 F. Supp. 2d 387, 398–400 (E.D. Pa. 2010), *aff'd*, 433 F. App'x 89 (3d Cir. 2011).  Plaintiffs' imaginings about the future are simply insufficient at this stage.

### C.    The Eleventh Amendment Bars Plaintiffs' Claims.

Plaintiffs' claims are also barred by the Eleventh Amendment, which forbids actions in federal court against the Commonwealth absent its consent.  Put simply, federal courts lack jurisdiction to hear claims for injunctive and declaratory relief based on a "claim that state officials violated state law in carrying out their official responsibilities."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *see generally* 13 Charles Alan Wright et al., *Federal Practice & Procedure* § 3524.3 (3d ed.).  Plaintiffs' state-law claims are thus barred outright; their federal

constitutional claims are barred for failure to allege an ongoing violation of federal law; and their federal failure-to-notice claim is barred for the additional reason that it seeks only an order compelling state officials to comply with state law.

*First*, Plaintiffs' claimed violations of the Pennsylvania Constitution's Equal Protection and Free and Equal Elections Clauses (Counts III, V, and VII) are plainly barred. Because "it is state law that provides the cause of action" for those claims, and "it is state law that provides . . . the attendant relief they seek," Plaintiffs plainly "cannot invoke federal jurisdiction over their state law challenge." *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183–84 (3d Cir. 2015); *see also Chavarria v. State*, Civ. No. 2:18-14971, 2019 WL 3798394, at *4 (D.N.J. Aug. 13, 2019). Plaintiffs' attempts to "tie their state law claims into their federal claims" fare no better, as the Third Circuit has repeatedly rejected that approach. *E.g.*, *Balsam*, 607 F. App'x at 183–84; *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 626 (E.D. Pa. 2018). These claims should be dismissed outright.

*Second*, even with respect to their claims premised on the U.S. Constitution (Counts I, II, IV, and VI), Plaintiffs fail to identify any ongoing violation of federal law that might justify this federal court exercising judicial power against the Secretary under the narrow exception where a litigant seeks prospective injunctive relief premised on a violation of the U.S. Constitution. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (summarizing the rule of *Ex parte Young*, 209 U.S. 123 (1908)). Given the important sovereignty and federalism interests at stake, the Third Circuit has recognized that the *Ex parte Young* exception to sovereign immunity "applies only to the 'precise situation' of 'a federal court command[ing] a state official to do nothing more than refrain from violating *federal* law.'" *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020) (brackets in original) (emphasis added) (quoting *Va. Office for*

*Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)).  Here, Plaintiffs have failed to allege that

"defendants' actions are *currently* violating federal law."  *Williams ex rel. J.E. v. Reeves*, 954 F.3d

729, 737 (5th Cir. 2020); *see also Green v. Mansour*, 474 U.S. 64, 68, 73 (1985) ("There is no

claimed continuing violation of federal law, and therefore no occasion to issue an injunction.").

Thus, these claims are barred by the Eleventh Amendment too.

   *Third*, Plaintiffs' federal failure-to-notice claim (Count VI) is further barred because it

derives entirely from state law and is thus an improper attempt to smuggle a state-law claim into

the *Ex Parte Young* framework.  The only relief Plaintiffs seek is an order compelling state officials

to comply with the Commonwealth's Election Code.  Compl. at Prayer for Relief ¶ B.  Even where

Plaintiffs plead federal constitutional claims, "the determinative question [under *Pennhurst*] is not

the relief ordered, but whether the relief was ordered pursuant to state or federal law."  *Brown v.*

*Ga. Dep't of Revenue*, 881 F.2d 1018, 1023 (11th Cir. 1989); *Williams*, 954 F.3d at 741.  Creative

pleading—alleging that a violation of the state-law notice requirement is a federal claim—cannot

allow an end-run around *Pennhurst*.  *See Williams*, 954 F.3d at 741; *S&M Brands, Inc. v. Georgia*

*ex rel. Carr*, 925 F.3d 1198, 1205 (11th Cir. 2019).  This provides another reason to dismiss this

claim.

   **D.**  **This Court Should Abstain from Deciding State Law Questions.**

   Even if the Court overlooked the Article III and Eleventh Amendment issues plaguing the

Complaint, this case presents the rare situation where the Court should abstain in favor of the

ongoing action in the Commonwealth Court so as to "avoid deciding a federal constitutional

question when the case may be disposed on questions of state law," "avoid needless conflict with

the administration by a state of its own affairs," "leave to the states the resolution of unsettled

questions of state law," and "avoid duplicative litigation."  *Chiropractic Am. v. Lavecchia*, 180

F.3d 99, 103 (3d Cir. 1999) (citing *Pullman*, *Burford*, *Louisiana Power & Light Co*., and *Colorado*

*River* abstention doctrines, respectively); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83, 289–90 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).  Abstention is appropriate here because the issues "are of state concern to the point where federal courts should hesitate to intrude" and this Court "should avoid making duplicate efforts or unnecessarily deciding difficult questions." *Chiropractic Am.*, 180 F.3d at 103 (quoting *Bath Mem'l Hosp. v. Me. Health Care Fin. Comm'n*, 853 F.2d 1007, 1012 (1st Cir. 1988)).

Federalism principles underlying many different abstention doctrines cut to the core of this case, but *Pullman* abstention squarely applies here given that this federal court "is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question." *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)).  Plaintiffs' Complaint is primarily based on a particular interpretation of the Pennsylvania Election Code that has not yet been addressed by Pennsylvania courts.  *See Fuente v. Cortes*, 207 F. Supp. 3d 441, 448 (M.D. Pa. 2016) (*Pullman* abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for a federal constitutional adjudication, or at least materially change the nature of the problem" (citation omitted)).  Abstaining therefore avoids (1) a premature federal adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) needless friction with state policies.  *See id.* (citation omitted); *see also Pierce*, 324 F. Supp. 2d at 703–04.

Abstention is particularly appropriate here because the pending case in the Commonwealth Court placed the interpretation of several key state law provisions squarely at issue, including:

- Whether Sections 3146.6(a) and 3150.16(a) of the Pennsylvania Election Code allow county boards of elections to count "Naked Ballots" received in the outer "Mailing Envelope" but lacking the inner "Privacy Envelope";

- Whether Act 77 permits county boards of elections to establish ballot drop boxes or other mobile collection locations for mail-in ballots, and whether these could be counted as "polling places" pursuant to the Election Code; and

- Whether Act 77 modified or affected the requirement that poll watchers serve only in counties where they reside and are registered as electors.

*See* Ex. 1, Pet. for Declaratory & Injunctive Relief ¶¶ 36–39, 80–81, 113–18, 126–27, 131–34, 155, 165, 198, *Pa. Democratic Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020).  Plaintiffs' entire theory of constitutional harm in this case is premised on how state officials will enforce these same provisions of the Election Code.  Act 77 was passed in 2019 and has yet to be interpreted by any of the Commonwealth's courts.  Plaintiffs nonetheless ask this Court to render a novel advisory opinion regarding this state statute.  Such an outcome would certainly be disruptive to the Commonwealth's efforts to conduct the General Election consistent with the requirements of Pennsylvania law.  *See, e.g.*, *NAACP Phila. Branch v. Ridge*, No. CIV. A. 00-2855, 2000 WL 1146619, at *5–6, *8 (E.D. Pa. Aug. 14, 2000) (abstaining from constitutional challenge to the Pennsylvania Voter Registration Act because it had "never been interpreted by the Pennsylvania courts" and "an erroneous construction of state law by the federal court would disrupt important state policies").  Indeed, all of the "exceptional circumstances" the Third Circuit has said warrant *Pullman* abstention are present here.  *Fuente*, 207 F. Supp. 3d at 448 (citation omitted).  Accordingly, while this Court lacks authority to resolve Plaintiffs' various claims given the Article III and Eleventh Amendment limitations on federal judicial power set forth above, even if the Court had such authority, it should not exercise it under the circumstances here.[4]

---

[4] Similarly, this Court should abstain under *Burford* because Plaintiffs' claims present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" and the "exercise of federal review" would be

## II.     PLAINTIFFS FAIL TO STATE COGNIZABLE CLAIMS.

Plaintiffs' claims also merit dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs' allegations, even if true, fail to state cognizable claims.  While it is difficult to evaluate the injury that Plaintiffs claim they will suffer—because certain of the procedures for the upcoming General Election are not yet finalized—even if Plaintiffs' predictions regarding the upcoming election come true, they would fail to constitute a due process or equal protection violation.

### A.     There Is No Constitutional Requirement That Polls Be Watched.

Plaintiffs' claims based on the residency and polling location requirements for poll watchers (Counts IV and V) fail because they are based on speculative and implausible allegations that, even if true, would fail to implicate a fundamental right.

At the outset, Plaintiffs' claim that the Election Code's requirement that poll watchers reside in the county where they poll watch is unconstitutional because it will lead to voter fraud and vote dilution assumes too much.  Plaintiffs theorize that the residency requirement "makes it extremely difficult or functionally impracticable for candidates and parties to ensure that they have poll watchers at all locations that ballots are being cast," thus "fostering an environment that encourages ballot fraud or tampering . . . ."  Compl. ¶ 180.  This is a bridge too far.  For one,

---

"disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (citation omitted) (referring to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)).  And, given the discretionary nature of federal declaratory judgment jurisdiction, the Third Circuit has held that it is not an abuse of discretion for a district court to decline to exercise such jurisdiction where, as here, "state law is uncertain or undetermined" because in such cases, "the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction."  *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 148 (3d Cir. 2014) (observing "[t]he state's interest in resolving its own law must not be given short shrift simply because one party . . . perceive[s] some advantage in the federal forum" (citation omitted)).

Plaintiffs' unsubstantiated assertion that they cannot find poll watchers nearly four months before the election are specious at best. But even if true, their conclusory allegations that the absence of poll watchers will lead to rampant voter fraud are the stuff of conspiracy theory, which this Court need not accept, even at this stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

More fundamentally, Plaintiffs' poll watcher claims are premised on a supposed constitutional right—the right to poll watch—that courts (including in Pennsylvania itself) have repeatedly found does not exist. *See, e.g.*, *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 408, 413–14 (E.D. Pa. 2016); *Dailey v. Hands*, Civil Action No. 14-00423-KD-M, 2015 WL 1293188, at *5 (S.D. Ala. Mar. 23, 2015) ("[P]oll watching is not a fundamental right protected by the First Amendment."); *Turner v. Cooper*, 583 F. Supp. 1160, 1162 (N.D. Ill. 1983) ("Plaintiffs have cited no authority . . . , nor have we found any, that supports the proposition that [the plaintiff] had a first amendment right to act as a pollwatcher."); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 364 (S.D.N.Y. 2007). Indeed, on the eve of the last presidential general election, another court in this circuit squarely rejected a challenge to this same residency requirement brought by similarly situated plaintiffs. *Cortés*, 218 F. Supp. 3d at 413–14. In doing so, Judge Pappert found that the residency requirement did not infringe the right to vote at all and declined to enjoin it, explaining that the Pennsylvania General Assembly's "decision to allow county election officials to credential only poll watchers from their own county is rationally related to the state's interest in maintaining its county-run election system." *Id.* at 409, 413–14; *see also* U.S. Const. art. I, § 4, cl. 1 (vesting states with authority to prescribe the "Times, Places and Manner of holding Elections . . . .").

Though this Court is not bound by the decision in *Cortés*, it should adopt its persuasive reasoning here. Just as there is no constitutional right to poll watch, there is no constitutional requirement that polls be watched. Indeed, the Pennsylvania Election Code did not provide for

any poll watchers until 1937, *see* 25 Pa. Cons. Stat. § 2687, and other states still soldier on without them, *see, e.g.*, W. Va. Code § 3-1-37.  Moreover, Pennsylvania provides for "overseers" who "carry greater authority than poll watchers" in ensuring the integrity of the vote.  *See Cortés*, 218 F. Supp. 3d at 403; *see* 25 Pa. Cons. Stat. § 2685.  There is no authority for the proposition that a state violates the U.S. Constitution under a theory of vote-dilution if it does not affirmatively provide for poll watching.  Rather, "[b]ecause the Pennsylvania Election Code, not the United States Constitution, grants parties the ability to appoint poll watchers, the state is free to regulate their use and its decision to do so does not implicate or impair any protected associational rights." *Cortés*, 218 F. Supp. 3d at 414.  If Plaintiffs wish for a further change in the places where the Commonwealth permits poll watchers, their path is through the General Assembly, not this Court.[5]

**B.      The Commonwealth's Mail-In Voting Procedures Neither Infringe on Any Fundamental Right, Nor Are They Discriminatory.**

1.      <u>The Commonwealth's Mail-In Voting Procedures Do Not Infringe the Right to Vote.</u>

Plaintiffs allege that voter fraud as a result of mail-in voting procedures will dilute their vote, thereby unconstitutionally infringing their right to vote.  Compl. ¶ 154; *see id.* ¶¶ 145–57 (Count I); *id.* ¶¶ 158–67 (Count II); *id.* ¶¶ 189–200 (Count VI).  Because such a challenge concerns the "voting process," this Court must employ the *Anderson-Burdick* framework, whereby courts first evaluate the "character and magnitude" of the asserted constitutional injury, and only then— if a cognizable constitutional injury is identified—measure it against the "precise interests put forward by the State as justifications for the burden imposed." *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also Crawford v. Marion*

---

[5] The General Assembly has been attentive to this issue, amending and broadening the poll watchers' authority from originally only permitting poll watchers from the Election District where the poll watcher resides to its current county requirement.  *Cortés*, 218 F. Supp. 3d at 402.

*Cty. Election Bd.*, 553 U.S. 181, 190 (2008).  Other courts have used the sliding scale in similar so-called election integrity cases.  *E.g.*, *Paher*, 2020 WL 2089813, at *1, *6 (all-mail election due to COVID-19); *Weber v. Shelley*, 347 F.3d 1101, 1105–07 (9th Cir. 2003) (touchscreen voting).

Plaintiffs have not alleged that the Commonwealth's procedures for mail-in voting infringe their right to vote.  Rather, they rely generally—and, again, speculatively—on the "overarching theory that having widespread mail-in votes" will make the election "more susceptible to voter fraud."  *See Paher*, 2020 WL 2089813, at *7.  As in *Paher*, the Court should reject such a spurious charge.[6]  There is no evidence that mail-in voting increases the incidence of voter fraud when compared to in-person voting.  But even if the Commonwealth's mail-in voting procedures minimally increased the prospect of vote dilution—and they do not—the Commonwealth has weighty interests in the implementation of its chosen procedures.  Act 77 was a bipartisan effort aimed at modernizing the Election Code and expanding the ability to vote.  That justification alone is sufficient because the Commonwealth has adopted a "nondiscriminatory law . . . supported by valid neutral justifications."  *Crawford*, 553 U.S. at 204.  But on top of that, the unprecedented circumstance of COVID-19 further justifies the Commonwealth's "sufficiently weighty" interest in additional measures to facilitate mail-in voting for all citizens regardless of party so that individuals who might fear for their health and safety will have the opportunity to exercise their constitutional right to vote.  *Crawford*, 553 U.S. at 191; *cf. Thomas v. Andino*, --- F. Supp. 3d ----, Nos. 3:20-cv-01552-JMC & 3:20-cv-01730-JMC, 2020 WL 2617329, at *19–21 (D.S.C. May 25, 2020).  "[I]t is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems.  So long as their choice is reasonable and neutral, it is free from judicial

---

[6] The *Paher* court also recognized that limiting mail-in voting during a pandemic might infringe the votes of non-parties who might require the use of mail-in voting or else be disenfranchised. 2020 WL 2089813, at *2, *7.  The Court could properly assume the same here.

second-guessing." *Weber*, 347 F.3d at 1107 (footnote omitted).  Plaintiffs fail to state a plausible

claim based on potential vote dilution.

>    2.      The Commonwealth's Mail-In Voting Procedures Are Not Discriminatory.

Plaintiffs have also failed to allege an equal protection violation (to the extent their claims

might be based on such a theory).   Plaintiffs have not identified a single intentionally

discriminatory policy the Commonwealth is allegedly adopting for the upcoming General Election.

Plaintiffs simply predict that officials *might* adopt "arbitrary and disparate policies and procedures

regarding poll watcher access and ballot return and counting."  Compl. ¶ 3.  "[N]ot every election

irregularity will give rise to an equal protection . . . claim."  *Donohue v. Bd. of Elections of N.Y.*,

435 F. Supp. 957, 965–66 (E.D.N.Y. 1976); *see also Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir.

1995) (per curiam) (requiring "fundamental unfairness" rather than "garden variety" election

disputes before federal court will intervene).  Indeed, "[i]f every election irregularity or contested

vote involved a federal violation, the court would 'be thrust into the details of virtually every

election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote

tallies, and certificates of election for all manner of error and insufficiency under state and federal

law.'"  *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978) (citations omitted).  Thus, absent

"'willful or knowing' dilution of ballots," courts have refused to find a constitutional violation.

*Donohue*, 435 F. Supp. at 965–66; *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970) ("Uneven or

erroneous application of an otherwise valid statute constitutes a denial of equal protection only if

it represents 'intentional or purposeful discrimination.'" (citations omitted)); *Partido Nuevo*

*Progresista v. Perez*, 639 F.2d 825, 828 (1st Cir. 1980) (per curiam) (citing *Powell* in vote-dilution

case); *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (finding "irregularities caused by

mechanical or human error and lacking in invidious or fraudulent intent" insufficient); *Acosta*, 288

F. Supp. 3d at 646 (requiring "willful conduct that 'undermine[d] the organic process by which

candidates [were] elected'" (brackets in original) (citation omitted)); *accord Crawford*, 553 U.S. at 207 (Scalia, J., concurring in the judgment).  Plaintiffs have simply failed to allege the requisite intent to state an equal protection claim.

Moreover, even if Plaintiffs had adequately alleged that the Commonwealth intends to treat similarly situated voters differently—and, again, it does not—that still would not violate the equal protection clause under the *Anderson-Burdick* framework.[7]  That is, *even if* there are incidental differences in how votes are treated due to the Commonwealth's implementation of mail-in voting, and *even if* those incidental differences implicated Plaintiffs' right to vote, there remain sufficiently weighty interests in its use.  Relief under the equal protection clause is warranted only where "rudimentary requirements of equal treatment and fundamental fairness" are unsatisfied.  *Bush v. Gore*, 531 U.S. 98, 109 (2000); *cf. Acosta*, 288 F. Supp. 3d at 645–46 ("Relief is warranted" under the due process clause only where "an officially-sponsored election procedure . . . in its basic aspect, [is] flawed." (alterations in original) (citation omitted)).  Plaintiffs fail to allege that the election will be so flawed—likely because Commonwealth officials have yet to finalize procedures for the General Election.  Thus, Plaintiffs fail to state an equal protection claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

---

[7] The *Anderson-Burdick* framework applies where "a state regulation is found to treat voters differently in a way that burdens the fundamental right to vote."  *Obama for Am. v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012); *Mich. State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 662–63 (6th Cir. 2016).  Otherwise, rational basis review applies.  *Obama for Am.*, 697 F.3d at 429.

Dated: July 24, 2020

Respectfully submitted,

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL

PENNSYLVANIA DEPARTMENT OF STATE
OFFICE OF CHIEF COUNSEL

By:    */s/ Karen M. Romano*
       Karen M. Romano
       Keli M. Neary
       Howard G. Hopkirk
       Nicole Boland
       Stephen Moniak
       15th Floor, Strawberry Square
       Harrisburg, PA 17120
       (717) 787-2727 (telephone)
       (717) 772-4526 (facsimile)
       kromano@attorneygeneral.gov
       kneary@attorneygeneral.gov
       hhopkirk@attorneygeneral.gov
       nboland@attorneygeneral.gov
       smoniak@attorneygeneral.gov

By:    */s/ Timothy E. Gates*
       Timothy E. Gates
       Kathleen M. Kotula
       306 North Office Building
       Harrisburg, PA 1712-
       (717) 783-0736 (telephone)
       (717) 214-9899 (facsimile)
       tgates@pa.gov
       kkotula@pa.gov

       */s/ Kenneth L. Joel*
       Kenneth L. Joel
       M. Abbegael Giunta
       Governor's Office of General Counsel
       333 Market Street, 17th Floor
       Harrisburg, PA 17101
       (717) 787-9348 (telephone)
       (717) 787-1788 (facsimile)
       kennjoel@pa.gov
       magiunta@pa.gov

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of Pennsylvania*

## CERTIFICATE OF SERVICE

I, Kenneth L. Joel, certify that I served the foregoing SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF:

**All Counsel of Record**

*/s/ Kenneth L. Joel*

*Attorney for Secretary of the Commonwealth Kathy Boockvar*