IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | : | Civil Action |
| | : | |
| Plaintiffs, | : | |
| | : | No.: 2:20-cv-966 |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge J. Nicholas Ranjan |

## CERTAIN DEFENDANT COUNTIES' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants Armstrong County Board of Elections, Bedford County Board of Elections, Blair County Board of Elections, Centre County Board of Elections, Columbia County Board of Elections, Dauphin County Board of Elections, Fayette County Board of Elections, Indiana County Board of Elections, Lackawanna County Board of Elections, Lawrence County Board of Elections, Mercer County Board of Elections, Montour County Board of Elections, Northumberland County Board of Elections, Venango County Board of Elections, and York County Board of Elections (collectively the "Counties") file this Brief in Support of their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I.  INTRODUCTION

Plaintiffs' Complaint is a suit in search of a harm.  Plaintiffs allege that some elements of some Defendants' election administration *may* permit ballot fraud or election tampering, which *may* go undetected, and *may* dilute legal votes in an election that has not yet occurred.  Plaintiffs' alleged harm is speculative and hypothetical and does not sufficiently establish constitutional standing, which requires a "concrete and particularized" invasion of a legally protected interest.  Even the hypothetical harm alleged by Plaintiffs is neither traceable to Defendants nor

redressable by the Court. Without concrete harm, causation, or redressability, Plaintiffs' claims must be dismissed for lack of standing.

Plaintiffs also fail to plead facts to establish prudential standing which, among other things, requires Plaintiffs' Complaint to present claims that are not abstract questions of wide public significance amounting to generalized grievances more appropriately addressed by the representative branches. Plaintiffs' claims could be raised by any Pennsylvania voter and are indisputably of wide public significance. Such a large-scale claim of standing is improper.

Plaintiffs, which include Donald J. Trump For President, Inc. ("Trump Campaign") and the Republican National Committee ("RNC"), have asserted they have special access to standing as political organizations in an apparent attempt to overcome their standing hurdles. However, status as a representative organization alone is insufficient, as political parties and campaigns still must satisfy both constitutional and prudential standing requirements. Because Plaintiffs cannot satisfy these requirements for standing, as is their burden, Plaintiffs' Complaint must be dismissed in its entirety.

Should this Court hold that Plaintiffs have standing, the Counties request the Court abstain from adjudicating this matter. In light of the Court's request that the parties avoid restating arguments in their motions to dismiss (ECF No. 124, ¶ II), the Counties hereby join, incorporate, and adopt in full the abstention arguments contained in the Memorandum of Law in Support of Motion to Dismiss the Complaint or, In the Alternative, to Abstain Pending State-Court Resolution of State-Law Questions filed by Defendants Bucks County Board of Elections, Chester County Board of Elections, Montgomery County Board of Elections, and Philadelphia County Board of Elections ("Bucks County Memorandum").

The Counties also join, incorporate, and adopt in full the argument contained in the Bucks County Memorandum that Plaintiffs' claims are barred by the doctrine of sovereign

immunity. Lastly, the Counties join, incorporate, and adopt in full the argument contained in the Bucks County Memorandum that Plaintiffs' poll watcher claims should be dismissed under Federal Rule 12(b)(6).

For these reasons, the Counties respectfully request that the Court dismiss the Complaint in its entirety.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim. Gould Elecs. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000). Subject-matter jurisdiction "refers to the courts' statutory or constitutional power to adjudicate the case." N.L.R.B. v. New Vista Nursing & Rehab., 719 F.3d 203, 211 (3d Cir. 2013). The party asserting jurisdiction "bea[rs] the burden of proving that jurisdiction exists." Castro v. United States Dep't of Homeland Sec., 835 F.3d 422, 429 (3d Cir. 2016). If the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elec. Inc., 220 F.3d at 176.

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the court must accept all the allegations in the complaint as true and view reasonable inferences in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the determination as to whether a complaint contains a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether [she] is entitled to offer evidence" in support of her claims. United States ex rel. Wilkins v. United Health Grp., 659 F.3d 295, 302 (3d Cir. 2011).

## III.   ARGUMENT - PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS

### A. *Plaintiffs Bear the Burden of Alleging Sufficient Facts to Satisfy the Constitutional and Prudential Standing Requirements*

The party invoking federal jurisdiction bears the burden to establish standing. Stein v. Cortes, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016). That party must allege sufficient facts to establish standing. See Constitution Party v. Aichele, 757 F.3d 347, 368 (3d Cir. 2014).

A litigant must satisfy both constitutional and prudential requirements to have standing and have the court decide the merits of his dispute. Landes v. Tartaglione, No. 04-CV-3164, 2004 U.S. Dist. LEXIS 21694, at *4 (E.D. Pa. Oct. 25, 2004) aff'd, 153 F. App'x 131, 132 (3d Cir. 2005). To establish constitutional standing, Plaintiffs must adequately establish "(1) an injury in fact (i.e., a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (i.e., a 'fairly traceable' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)". Common Cause v. Pa., 558 F.3d 249, 258 (3d Cir. 2009) (citations omitted).

Prudential standing requires Plaintiffs' Complaint to (1) assert Plaintiffs' own rights and not the rights of third parties; (2) present claims that are not "abstract questions of wide public significance which amount to generalized grievances shared and most appropriately addressed in the representative branches"; and (3) fall within the zone of interests protected by statute or constitutional provision. Landes, 2004 U.S. Dist. LEXIS 21694, at *5-6 (citations omitted).

### B.  *The Harm Alleged in Plaintiffs' Complaint*

Plaintiffs' alleged harm stems from purported issues with the Defendants' application of the Commonwealth's Election Code during the June 2, 2020 Primary Election.  Plaintiffs primarily claim three issues: (1) some counties accepted mail-in and absentee ballots at locations other than their offices; (2) some counties counted mail-in and absentee ballots without official election ballot secrecy envelopes or with texts, marks, or symbols indicating elector information; and (3) poll watchers from outside counties were not permitted.

Specifically, Plaintiffs claim 20 counties allowed absentee and mail-in ballots to be returned to shopping centers, parking lots, fairgrounds, parks, retirement homes, college campuses, fire halls, municipal government buildings, and elected officials' offices. (Complaint, ¶ 103).  Philadelphia County allegedly participated in a mail-in ballot drop-off initiative with collection occurring at certain schools and shopping centers and other "24/7 mail-ballot drop-off locations." (Complaint, ¶ 104).  Plaintiffs allege most of the "other locations" used to collect mail-in or absentee ballots for the Primary Election involved unmonitored and/or unsecured drop boxes, in violation of the Election Code. (Complaint, ¶¶ 105, 107-08).  Plaintiffs also claim the notice given for the use of these other locations failed to comply with the Election Code's notice publication requirements. (Complaint, ¶ 106).

Plaintiffs speculate that certain counties' collection of absentee and mail-in ballots at locations other than their offices allows "illegal" voting, ballot harvesting, and other fraud to

5

occur and/or go undetected and may in the future result in dilution of validly cast ballots. (Complaint, ¶¶ 154, 164). Plaintiffs claim that Defendants' use of drop-boxes has increased the *potential* for ballot fraud or tampering, and has increased the *likelihood* of confusion and fostered an environment that encourages ballot fraud. (Complaint, ¶¶ 155, 195). Plaintiffs further speculate Defendants will repeat all of these practices in the upcoming General Election. (Complaint, ¶ 196). Yet Plaintiffs do not allege any instances of actual fraud, illegal voting, or tampering having occurred due to mail-in and absentee ballots being returned to locations other than the counties' offices.

Plaintiffs also allege some counties, in violation of the Election Code, counted absentee and mail-in ballots that either lacked an official election ballot secrecy envelope or contained text, marks or symbols that revealed the identity of the elector, the elector's political affiliation, or the elector's candidate preference. (Complaint, ¶¶ 113-14). Plaintiffs allege, upon information and belief, that Philadelphia County counted such absentee and mail-in ballots. (Complaint, ¶ 113). Yet again, Plaintiffs do not allege any ballots without secrecy envelopes or with elector information on them were fraudulent.

Lastly, Plaintiffs generally allege that the Commonwealth's rule against voters serving as poll watchers in counties other than their county of residence has real, demonstrable impacts on Plaintiffs. (Complaint, ¶ 127). Plaintiffs further make unsubstantiated claims that there is a burden in attempting to locate available, qualified registered electors who can serve as poll watchers. (Complaint, ¶ 132). Yet Plaintiffs do not allege that they were unable to locate qualified poll watchers residing in each county in either the June 2, 2020 Primary Election or in any past election.

Plaintiffs allege these phantom issues supposedly occurred during the Primary Election, and "there is no reason to believe things will be different during the November 3, 2020 General

Election." (Complaint, ¶ 142). Plaintiffs then ask the Court to prevent Defendants from "making the same mistake twice." (Complaint, ¶ 144). Yet there is nothing in Plaintiffs' Complaint indicating these alleged "mistakes" will be repeated or caused any cognizable harm in the first instance.

Importantly, instead of bringing an action for violations of the Election Code under state statutory law, Plaintiffs took the alleged violations of the Election Code and crafted them out of whole cloth into constitutional claims. However, to do so, Plaintiffs are subject to the standing requirements of constitutional claims – requirements they cannot meet.

### C.    *Plaintiffs' Complaint Fails to Plead the Constitutional Standing Requirements*

Plaintiffs' Complaint fails to satisfy the constitutional standing requirements because the injuries asserted are not "concrete and particularized," but instead are conjectural and hypothetical. Plaintiffs challenge Defendants' implementation of the recently enacted mail-in voting provisions contained in the Election Code. Yet Plaintiffs focus their allegations on the mere *possibility* of future harm that may never occur.

Plaintiffs litter their allegations with events and consequences that may not ever come to be. Specifically, Plaintiffs claim certain Defendants' collection of absentee and mail-in ballots in drop-boxes in Pennsylvania's June 2, 2020 Primary Election increased the *potential* for voter fraud. (Complaint, ¶¶ 155, 163, 172). They also claim the decision by certain Defendants to count ballots cast in the Primary Election without an official election ballot secrecy envelope or with prohibited text, marks or symbols increased the *potential* for voter fraud. (Complaint, ¶¶ 155, 163, 172). Finally, Plaintiffs claim Defendants' implementation of the Election Code's poll watcher residency requirements in the primary election fostered "an environment that encourages ballot fraud or tampering, and preventing the Commonwealth, candidates and political parties from ensuring that the General Election is free, fair, and transparent." (Complaint, ¶¶ 180, 186,

195, 202).  Plaintiffs assert a parade of horribles based solely on conjecture.

Plaintiffs do not identify any act of fraud, or any "concrete and particularized' harm, resulting from Defendants' administration of the June 2, 2020 Primary Election. Instead, Plaintiffs speculate some elements of some Defendants' election administration *may* permit ballot fraud or election tampering, which *may* go undetected, and *may* dilute legal votes.

Plaintiffs' request for the Court to address these alleged issues in advance of the November 3, 2020 General Election introduces another level to the hypothetical chain of events it alleges may have occurred in the Primary.  To reach Plaintiffs' ultimate concern, the potential for vote dilution in the General Election, one must assume Defendants will exactly replicate administrative practices from the Primary Election in the General Election, and again these practices *may* permit ballot fraud or election tampering, which *may* go undetected, and *may* dilute legal votes.  Having failed to identify any injury in fact resulting from the June 2, 2020 Primary Election, Plaintiffs fail to establish any "concrete or particularized" harm that may occur in the General Election.[1]

Plaintiffs have also not sufficiently plead the constitutional standing requirements of causation or redressability.  Without alleging an injury in fact, Plaintiffs cannot establish causation or redressability.  Even if Plaintiffs' concern about vote dilution were a sufficient injury in fact, the injury is not traceable to Defendants.  Rather, the feared dilution would require

---

[1] Ironically, Plaintiffs assert the exact same standing arguments against Proposed Intervenors in their Response in Opposition to Non-Parties Motion to Intervene. (ECF No. 177).  Plaintiffs' arguments as to Proposed Intervenors lack of standing apply equally to Plaintiffs themselves:

> A party's "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself' to establish standing. [***] Instead, to support standing, a proposed intervenor must "claim 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'"

(ECF No. 177, pp. 6-7) (citations omitted). Plaintiffs lack standing for this exact same reason because they fail to identify any harms other than those that are conjectural or hypothetical.

some form of tampering, ballot stuffing, or other election fraud by third party illegal actors. Per Constitution Party v. Cortez, a political party lacks standing to challenge the Election Code where "no injury could be caused without the involvement of a third party." 433 F. App'x 89, 91 (3d Cir. 2011).  Regarding redressability, Plaintiffs seek relief based upon events that may not have occurred in the Primary Election, to prevent events that may not occur in the General Election. Therefore, any decision on this case would be an advisory opinion, "based on a hypothetical set of facts, without sufficient information to support findings." Constitution Party v. Cortes, 712 F. Supp. 2d 387, 397 (E.D. Pa. March 31, 2010) (citations omitted).

Because Plaintiffs fail to satisfy the constitutional requirements for standing to assert their claims, Defendants respectfully request dismissal of the Complaint in its entirety.

### D. *Plaintiffs' Complaint Also Fails to Plead the Prudential Standing Requirements*

In addition, Plaintiffs' Complaint fails to satisfy the prudential standing requirements because their claims present abstract questions of wide public significance. In fact, the Complaint repeatedly states that "all qualified Pennsylvania voters" share Plaintiffs' concerns about election integrity. (Complaint, ¶¶ 165, 172, 182, 186, 198, 202). Such a large-scale claim of standing is improper. See Stein v. Cortes, 223 F. Supp. 3d 423, 433 (E.D. Pa. 2016) ("It also appears that Plaintiffs seek to protect the rights of all Pennsylvania voters. . . there is no authority to support such an invocation of standing.").

The Plaintiffs' alleged harm is so widespread that it amounts to a general grievance rather than a particularized harm.  In Landes, a registered voter generally attacked Pennsylvania's absentee voting law, but did not allege her right to vote had been adversely affected by absentee voting. Id. at *7. As do Plaintiffs here, the challenger in Landes generally claimed absentee ballots could result in fraud or other election problems. Id. As the Landes court noted, this is "the sort of hypothetical harm that federal courts consistently refuse to address." Id. Concerns for the

integrity of mail-in voting, like concerns for the integrity of absentee voting, "involve questions of wide public significance that are most appropriately addressed by the legislative branch." Id.; see also Paher v. Cegavske, No. 3:20-cv-00243-MMD-WGC, 2020 U.S. Dist. LEXIS 76597, at *14 (D. Nev. Apr. 30, 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter. Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury.").

Because Plaintiffs fail to satisfy the prudential requirements for standing to assert their claims, Defendants respectfully request dismissal of the Complaint in its entirety.

### E. *Organizational Standing Does Not Excuse the Need for Plaintiffs to Satisfy the Constitutional and Prudential Requirements for Standing*

The classification of the RNC and the Trump Campaign as political organizations does not save them from the standing deficiencies described above. Plaintiffs correctly note the Pennsylvania Middle District found political parties can have standing as representatives of party electors and endorsed candidates in Orloski v. Davis, 564 F. Supp. 526 (M.D. Pa. 1983). (See ECF No. 120, pp. 3-4). However, candidates and political organizations, like any other plaintiff, must satisfy both constitutional and prudential requirements for standing. See Stein v. Cortes, 223 F. Supp. 3d 423 (E.D. Pa. 2016); Constitution Party v. Cortes, 712 F. Supp. 2d 387 (E.D. Pa. 2010) aff'd, 433 F. App'x 89 (3d Cir. 2011). This, as noted, they cannot do.

Plaintiffs in Orloski challenged the application of "limited voting" to a statewide Commonwealth Court election because it limited each elector to two votes to fill three vacancies. The Court found the law's limit on plaintiff voters' ability to vote for a full slate of candidates to fill all vacancies on the Commonwealth Court, while not so restricting any other state judicial election, sufficient injury to establish standing. Id. at 530. The Court went on to find that the

plaintiff political party had standing as a representative of individual members who had standing to file suit. Id. at 531. The Court also found the interest the organization sought to protect, "unlimited voting for Democratic candidates to the Commonwealth Court, was germane to the organizational purpose." Id. at 531.  In sum, the individuals and organizations in that case were able to demonstrate sufficient injury, causation and redressability to satisfy constitutional and prudential standing.

Plaintiffs in the present case do not allege that any of their candidates are unable to run in the election or that their voters lack access to a full array of candidates, but rather only that their vote *may* be diluted due to voting procedures, which is not sufficient to confer standing.  These claims are akin to those presented by a presidential candidate in Stein v. Cortes, 223 F. Supp. 3d 423 (E.D. Pa. 2016) and political parties in Constitution Party of Pa. v. Cortes, 712 F. Supp. 2d 387 (E.D. Pa. 2010) aff'd, 433 F. App'x 89 (3d Cir. 2011).

In Stein, unsuccessful presidential candidate Dr. Jill Stein filed an action seeking a recount of the 2016 general election results. 223 F. Supp. 3d at 426. Dr. Stein questioned whether voting machines might have been hacked during the 2016 general election. Id. She did not, however, allege any votes were incorrectly counted. Id. at 432. The Court noted Dr. Stein is not a Pennsylvania voter and did not allege the re-count would change the outcome of the election, concluding Dr. Stein's "allegation that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute injury-in-fact." Id. at 432. The Court proceeded to address the generalized nature of Dr. Stein's concerns, noting "'candidates for public office may be able to assert the rights of voters,' but only where the plaintiff herself suffers an injury and voters are 'hindered from asserting [their] own rights and share[] an identity of interests with the plaintiff'." Id. at 433 (citing Pa. Psychiatric Soc'y v. Green Spring Health Svcs., Inc., 280 F.3d 278, 288 & n.10 (3d

Cir. 2002). The plaintiffs likewise failed to establish redressability, as the extraordinary relief sought (i.e. a hand recount of sample ballots and forensic examination of certain voting systems) would redress alleged injuries. Thus, the Court concluded "because Plaintiffs have alleged speculative injuries that are not personal to them and could not be redressed by the relief they seek (or any relief I could order), they are without standing to bring their claims." Id. at 434.

Similarly, in Constitution Party v. Cortes, plaintiffs challenged the constitutionality of several Election Code provisions that, combined, permitted courts to tax non-majority candidates with litigation costs and attorney fees in the context of a ballot challenge. 712 F. Supp. 2d 387, 392-93 (E.D. Pa. 2010). Plaintiffs alleged the possibility of being assessed costs had the potential to chill ballot access. The Pennsylvania Eastern District court found the threat to be "conjectural or hypothetical" and traceable to the actions of third parties rather than the defendants. Constitution Party v. Cortes, 712 F. Supp. 2d 387, 396 - 397 (E.D. Pa. 2010). The Court also found a lack of redressability, noting any opinion in the case would be "based on a hypothetical set of facts, without sufficient information to support findings" requiring it to "assume a nomination paper would be challenged, the nomination paper would be held invalid, the challenger would seek costs, and the costs would be assessed." Constitution Party v. Cortes, 712 F. Supp. 2d, 397 – 398.

Stein and Cortes demonstrate that candidates, their campaigns and political parties cannot sidestep the requirements of constitutional and prudential standing. Therefore, the hypothetical nature of Plaintiff's claims, and resulting lack of causation and redressability, are as fatal in the instant case as they were in Stein and Cortes.

Because Plaintiffs fail to satisfy both constitutional and prudential requirements for standing to assert their claims, Defendants respectfully request dismissal of the Complaint in its entirety.

## IV. JOINDER

As detailed in the Introduction of this Brief, the Counties join, incorporate, and adopt the arguments pertaining to abstention, sovereign immunity, and failure to state a claim contained in the Bucks County Memorandum.

## V. CONCLUSION

For the reasons set forth above, the Counties request that the Court grant its Motion to Dismiss in full and dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

BABST, CALLAND, CLEMENTS
and ZOMNIR, P.C.

*/s/ Steven B. Silverman*
Steven B. Silverman
PA I.D. No. 56829
ssilverman@babstcalland.com
Elizabeth A. Dupuis
PA I.D. No. 80149
bdupuis@babstcalland.com
Sean R. Keegan
PA I.D. No 316707
skeegan@babstcalland.com
Two Gateway Center, 6th Floor
Pittsburgh, PA  15222
412.394.5400

*Counsel for Defendants, Armstrong County Board of Elections, Bedford County Board of Elections, Blair County Board of Elections, Centre County Board of Elections, Columbia County Board of Elections, Dauphin County Board of Elections, Fayette County Board of Elections, Indiana County Board of Elections, Lackawanna County Board of Elections, Lawrence County Board of Elections, Mercer County Board of Elections, Montour County Board of Elections, Northumberland County Board of Elections, Venango County Board of Elections, and York County Board of Elections*

*/s/ Nathan W. Karn*
Nathan W. Karn
PA I.D. No. 86068
PACER: nkarn@eveyblack.com
Communication: Nkarn@blairco.org
401 Allegheny Street, PO Box 415
Hollidaysburg, PA 16648
814-695-7581

*Co-Counsel for Defendant, Blair County Board of Elections*

*/s/ Joseph A. Curcillo, III*
Joseph A. Curcillo, III
PA I.D. No. 44060
JCurcillo@dauphinc.org
2 South Second Street
Harrisburg, PA 17101
717-645-4930

*Co-Counsel for Defendant, Dauphin County Board of Elections*

*/s/ Michélle Pokrifka*
Michélle Pokrifka
PA I.D. No. 66654
mpokrifka@yorkcountypa.gov
28 East Market Street, 2nd Floor
York, PA 17401
717-771-4777

*Co-Counsel for Defendant, York County Board of Elections*

*/s/ Thomas W. Leslie*
Thomas W. Leslie
PA I.D. No. 43238
tleslie@co.lawrence.pa.us
116 N Mercer St
New Castle, PA 16101
(724) 654-8101

*Co-Counsel for Defendant, Lawrence County Board of Elections*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | : | Civil Action |
| | : | |
| Plaintiffs, | : | |
| | : | No.: 2:20-cv-966 |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge J. Nicholas Ranjan |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support was filed electronically and served via the Court's CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

/s/  Steven B. Silverman