## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al*., | Civil Action |
| Plaintiffs, | |
| v. | No.: 2:20-CV-966 |
| KATHY BOOCKVAR; *et al*., | |
| Defendants. | Judge J. Nicholas Ranjan |

**JOINDER AND MEMORANDUM IN SUPPORT OF [PROVISIONAL] MOTION TO DISMISS BY PROPOSED INTERVENORS NAACP—PENNSYLVANIA STATE CONFERENCE, COMMON CAUSE PENNSYLVANIA, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, PATRICIA M. DEMARCO, DANIELLE GRAHAM ROBINSON, AND KATHLEEN WISE**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT ..........................................................................................................3

      A.      The Court Should Dismiss This Case Under *Pullman* Abstention ..........................3

      B.      The Court Also Should Dismiss or Stay All of Plaintiffs' Claims Under *Colorado River* Abstention ...............................................................................7

III.    PLAINTIFFS FAIL TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY .......9

      A.      Legal Standard ...........................................................................................10

      B.      Plaintiffs Do Not Sufficiently Plead Voter Fraud and Injury ................................10

CONCLUSION.............................................................................................................12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*California Democratic Party v. Jones*,
    530 U.S. 567 (2000)...........................................................................................................9

*Chez Sez III Corp. v. Township of Union*,
    945 F.2d 628 (3d Cir. 1991)........................................................................................4, 6

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976)...................................................................................................7, 8, 9

*DiGenova v. Baker*,
    2002 WL 32356401 (E.D. Pa. Apr. 11, 2002) ....................................................10

*Fuente v. Cortes*,
    207 F. Supp. 3d 441 (M.D. Pa. 2016) .......................................................3, 5, 6, 7

*Golden Gate National Senior Care, LLC v. Minich ex rel. Estate of Shaffer*,
    629 F. App'x 348 (3d Cir. 2015) ..............................................................................8

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*,
    438 F.3d 298 (3d Cir. 2006).....................................................................................8, 9

*In re Shop-Vac Marketing & Sales Practice Litigation*,
    964 F. Supp. 2d 355 (M.D. Pa. 2013) ...................................................................10

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009).................................................................................10, 11

*Landes v. Tartaglione*,
    2004 WL 2397292 (E.D. Pa. Oct. 26, 2004), *aff'd*, 153 F. App'x 131 (3d Cir. 2005)............11

*Landes v. Tartaglione*,
    2004 WL 2415074 (E.D. Pa. Oct. 28, 2004), *aff'd*, 153 F. App'x 131 (3d Cir. 2005)............11

*Landes v. Tartaglione*,
    153 F. App'x 131 (3d Cir. 2005) ..........................................................................11

*NAACP Philadelphia Branch v. Ridge*,
    2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ........................................................3

*National Casualty Co. v. Davis*,
    1991 WL 101648 (N.D. Ill. June 3, 1991) ...............................................................1

*OpenPittsburgh.org v. Wolosik*,
  2016 WL 7985286 (W.D. Pa. Aug. 9, 2016) ...........................................................................9

*Pennhurst State School & Hospital v. Halderman*,
  465 U.S. 89 (1984) ...........................................................................................................3

*Planned Parenthood of Central New Jersey v. Farmer*,
  220 F.3d 127 (3d Cir. 2000)............................................................................................3, 7

*Railroad Commission of Texas v. Pullman*,
  312 U.S. 496 (1941)................................................................................................... *passim*

*Ryan v. Johnson*,
  115 F.3d 193 (3d Cir. 1997)...............................................................................................9

*Shambach v. Bickhart*,
  845 A.2d 793 (Pa. 2004) ....................................................................................................5

*Shevlin v. Schewe*,
  809 F.2d 447 (7th Cir. 1987) ...........................................................................................1

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .........................................................................................10

**Docketed Cases**

*Pennsylvania Democratic Party v. Boockvar*, No. 407 M.D. 2020 (Pa. Commw. Ct.)...................3

**Statutes**

25 P.S.
  § 2606......................................................................................................................6
  § 2641(a) .................................................................................................................4
  § 2641(b) .................................................................................................................4
  § 2645(b) .................................................................................................................4
  § 2726(a) .................................................................................................................6
  § 2726(c) .................................................................................................................6
  § 3146.6(a) ..............................................................................................................4
  § 3146.8(g)(4) .......................................................................................................4, 5
  § 3150.16.................................................................................................................4

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................10

Pursuant to Rule 12(b)(1), Rule 12(b)(6), and Rule 9(b) of the Federal Rules of Civil Procedure, and the Court's July 17, 2020 Scheduling Order, proposed Intervenors NAACP— Pennsylvania State Conference, Common Cause Pennsylvania, League of Women Voters of Pennsylvania, and Pennsylvania voters Patricia M. DeMarco, Danielle Graham Robinson, and Kathleen Wise ("Intervenors") herby file this memorandum of law in support of their Motion to Dismiss the Plaintiffs' Complaint.[1]

## I.      INTRODUCTION

In October 2019, Pennsylvania's legislature and governor struck a bipartisan compromise and passed an overhaul of the Election Code designed to make voting more accessible.  That compromise was momentous then and took on even greater significance when the coronavirus pandemic upended ordinary life.  Plaintiffs now ask this Court to unwind that compromise and to make it harder—and less safe—to vote during a global public health crisis.  Plaintiffs' requested relief is particularly troubling because it would primarily impact seniors, people of color, and medically vulnerable individuals, who are already disproportionally affected by the pandemic. Plaintiffs' claims, however, do not belong in federal court.  Although Plaintiffs couch some of their claims as arising under the U.S. Constitution, at bottom their arguments are all about state law: whether the Secretary of the Commonwealth and county boards of elections have correctly

---

[1] Intervenors' motion to intervene requested "leave to file a responsive pleading on the same schedule as the current Defendants, or within 3 business days of the Court's order granting [the motion to intervene]."  Dkt. 103 at 2; Scheduling Order, Dkt. 124 at 3 ¶ 3 (authorizing Defendants to file Rule 12 motions by July 24, 2020). Intervenors submit this motion to further satisfy Federal Rule of Civil Procedure 24(c).  To the extent Plaintiffs' opposition to Intervenors' motion to intervene is based on a strict textual interpretation of Rule 24(c), Plaintiffs' complaints are now moot.  *See* Resp. in Opp. to Non-Parties' Mot. to Intervene at 2–5, Dkt. 177.  "Where the necessary pleading is filed soon after the motion, and there is no prejudice to the other parties, a strictly textual interpretation of [Rule 24(c)] is unwarranted."  *Nat'l Cas. Co. v. Davis*, 1991 WL 101648, at *1 (N.D. Ill. June 3, 1991) (citing *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987)).

interpreted the Pennsylvania Election Code, and whether the Election Code violates the Pennsylvania Constitution.  Nor can Plaintiffs manufacture a federal claim by invoking the boogeyman of mail-in voter fraud, especially when they do not even allege with particularity in their Complaint that any illegal voting occurred in the June primary or will occur in the November general election.  Plaintiffs' claims should be dismissed.

In support of their motion to dismiss, and pursuant to the Court's July 17, 2020 Scheduling Order, Intervenors hereby join the relief requested in the Motion to Dismiss filed by the Pennsylvania State Democratic Party.  Pa. State Democratic Party Mot. to Dismiss, Dkt. 85-2; Scheduling Order at 3 ¶ 7, Dkt. 124.  Although Intervenors are non-partisan organizations that do not work with or support any particular political party, Intervenors have sought to intervene in this case to protect the rights of all voters.  In this circumstance, Intervenors agree with the Pennsylvania State Democratic Party that the Court should refrain from reviewing Plaintiffs' claims under the *Pullman* abstention doctrine given the exceptional circumstances of this particular case, which depend on uncertain—and novel—questions of state law.  *See R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 501 (1941).  In this motion, and consistent with the Court's Scheduling Order, Intervenors do not repeat the arguments of the Pennsylvania State Democratic Party, but instead identify additional reasons why this Court should abstain from reviewing Plaintiffs' claims.

In addition, the Court should dismiss Plaintiffs' claims for injunctive and declaratory relief under Fed. R. Civ. P. 12(b)(6) and 9(b) because Plaintiffs do not and cannot plead fraud with sufficient particularity due to the entirely speculative nature of Plaintiffs' alleged injuries. The alleged cause of those hypothetical injuries—that validly cast ballots will be diluted by "illegal absent and mail-in voting, ballot harvesting, and other fraud"—is purely conjectural.

2

*See, e.g.*, Dkt. 1 ("Complaint") ¶ 154.  Finally, the Supreme Court long ago settled that a federal court may not award injunctive relief against state officials on the basis of state law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

## II.   ARGUMENT

### A.   The Court Should Dismiss This Case Under *Pullman* Abstention

All three *Pullman* "exceptional circumstances" are present in this case and the equitable considerations weigh in favor of granting abstention.  Intervenors direct the Court to the Pennsylvania Democratic Party's recitation of the *Pullman* legal standard applied by the Third Circuit.  *See* Dkt. 85-2 at 8–10.

#### i.   *Plaintiffs' Claims Depend on Uncertain Issues of State Law*

The first exceptional circumstance under *Pullman* is present because Plaintiffs' claims depend on "uncertain issues of state law" with respect to establishing ballot drop-boxes and counting ballots lacking secrecy envelopes.  *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000).  Intervenors join the Pennsylvania State Democratic Party on this particular point and do not repeat the arguments contained in those papers. Dkt. 85-2 at 10–11. Intervenors write to address the uncertainty in state law regarding drop-boxes and secrecy ballots in further detail.

Plaintiffs' claims regarding drop-boxes are state law issues subject to multiple "potential interpretations."  *Fuente v. Cortes*, 207 F. Supp. 3d 441, 449 (M.D. Pa. 2016) (abstaining under *Pullman* because "the Pennsylvania election law in question is reasonably susceptible to two possible interpretations").  Abstention is appropriate on these issues because the state statute has not been "authoritatively construed" and is concurrently being considered by the Commonwealth Court in *Pennsylvania Democratic Party v. Boockvar*, No. 407 M.D. 2020 (Pa. Commw. Ct.).

3

*NAACP Phila. Branch v. Ridge*, 2000 WL 1146619, at *5 & n.4 (E.D. Pa. Aug. 14, 2000) (citing *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 632 (3d Cir. 1991)).

 ***First***, contrary to Plaintiffs' arguments in its Complaint, Pennsylvania law does not unambiguously prohibit the use of drop-boxes to collect mail-in or absentee ballots.  Plaintiffs assert that Pennsylvania law requires that mail-in or absentee ballots be mailed or personally delivered to "said county board of election."  *See, e.g.*, Dkt. 1 at ¶¶ 90, 95, 109 (citing 25 P.S. § 3146.6(a); 25 P.S. § 3150.16).  But state law does not define "said county board of election" as the main office of each county board of elections.  Instead, Pennsylvania Election Code defines a county board of elections as a ***body*** "consist[ing] of the county commissioners of such county ex officio, or any officials or board who are performing or may perform the duties of the county commissioners" that "shall have jurisdiction over the conduct of primaries and elections in [each] county."  25 P.S. § 2641(a) & (b).  Indeed, the Pennsylvania Election code specifically authorizes counties to operate multiple "offices at the county seat" and "branch offices … in cities other than the county seat."  *Id.* § 2645(b).  Based on this express statutory language, the state court should reasonably, and correctly, find that the state law does not prohibit county boards of elections from designating the locations, beyond one main office, at which the board may receive mail-in or absentee ballots.  The uncertainty of this issue is not surprising; Act 77 was enacted in October 2019, so Pennsylvania counties are using mail-in and absentee ballot drop-boxes for the first time during the 2020 election cycle.

 ***Second***, Plaintiffs argue that Pennsylvania state law requires the county boards of elections to discard mail-in or absentee ballots that lack a secrecy envelope.  *See, e.g.*, Compl. at ¶ 91 (citing 25 P.S. § 3146.8(g)(4)(i)–(iv)).  Plaintiffs' reading of the statute is wrong.  The statute states:

> The county board shall open the envelope of every unchallenged absentee elector in such manner as not to destroy the declaration executed thereon.  ***If any of the envelopes*** on which are printed, stamped or endorsed the words "Official Absentee Ballot" contain any extraneous marks or identifying symbols, the envelopes and the ballots contained therein shall be set aside and declared void.   The county board shall then break the seals of such envelopes, remove the ballots and record the votes.

25 P.S. § 3146.8(g)(4).  This statutory language requires the county board only to set aside envelopes that contain "extraneous marks or identifying symbols."  *Id*.  The statute provides no authorization, much less a requirement, for setting aside ballots when the secrecy envelope is simply missing.[2]  Plaintiffs' cramped statutory interpretation is also inconsistent with Pennsylvania state courts' guiding principle that the Election Code "ordinarily will be construed liberally in favor of the right to vote," and thus that "ballots containing mere minor irregularities should only be stricken for compelling reasons."  *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004) (internal quotation marks and citations omitted).

The use of ballot drop-boxes and the discretion to process ballots lacking secrecy envelopes are reasonable and correct readings of state election laws and have not been authoritatively addressed by the Pennsylvania state courts.  *See Fuente*, 207 F. Supp. 3d at 449.  Uncertain state law issues militate against considering Plaintiffs' claims and for this Court's abstention.

> ii.     *A State Court Adjudication Will Obviate or Narrow the Federal Constitutional Claims*

The second *Pullman* exceptional circumstance is whether the state statute in question is "amenable to an interpretation by the state courts that would obviate the need for or substantially

---

[2] Pennsylvania State Democratic Party intervenors agree with the Pennsylvania Department of State's instruction that there is no statutory requirement to discard ballots lacking a secrecy envelope.  *See* Pa. State Democratic Party, Pet. for Declaratory and Injunctive Relief at ¶ 127, Dkt. 85-2

narrow the scope of the constitutional issues." *Chez Sez*, 945 F.2d at 632–33.  Intervenors agree

that state court resolution of the drop-box and secrecy ballot issues will obviate any need for this

Court to rule on any constitutional question raised by Plaintiffs.  *See* Dkt. 85-2 at 11–13.

Intervenors provide alternative support for finding the second *Pullman* exceptional circumstance

below.

A state court determination of whether ballot drop-boxes are allowed under the

Pennsylvania Election Code would obviate or narrow Plaintiffs' claims.  Counts I and II of

Plaintiffs' Complaint allege federal constitutional violations related to drop-boxes.  State court

rulings, such as those requested by the Pennsylvania State Democratic Party, would resolve these

constitutional claims.[3]

It is reasonable to assume that the Pennsylvania courts may interpret Act 77 as giving the

county boards of elections authority to establish adequate and secure drop-box locations.

Likewise, the state courts may determine that drop-boxes are not "polling places" under

Pennsylvania law, 25 P.S. § 2726(a) & (c), *see also* 25 P.S. § 2606.  Such a statutory

interpretation will narrow and likely resolve Plaintiffs' claims.  *Cf. Fuente*, 207 F. Supp. 3d at

450 ("If the state court … finds that a presidential primary is not within the purview of [the

---

[3] First, Plaintiffs argue that Article I and Article II of the U.S. Constitution, entrusting the
state legislatures with setting the "Times, Place, and Manner" of federal elections, were violated
because the county boards of elections exceeded their authority in establishing drop-boxes.  *See*
Complaint at Count I.  A state court ruling, like the one the Pennsylvania State Democratic Party
has requested, that drop-boxes are permissible under Pennsylvania election law, resolves
Plaintiffs' Article I and Article II claims.

Plaintiffs also allege two Equal Protection violations: (1) that the establishment of drop-
boxes dilutes votes through allegedly increased voter fraud, Complaint at Count II; and (2) that
drop-boxes are "polling places" under Pennsylvania law and thus the county boards of elections
were required to provide notice of their location, also in violation of the First Amendment.
Complaint at Count VI.  These claims may be narrowed or eliminated by a state court ruling as
discussed above.

Pennsylvania law], then … the basis for [the] constitutional claim would be eliminated.")
(internal quotation marks & citation omitted).

    iii.    *An Erroneous Federal Court Interpretation Will Disrupt Important State Policies*

The third *Pullman* exceptional circumstance arises from the concern that an "erroneous construction of state law by the federal court would disrupt important state [law] policies." *Farmer*, 220 F.3d at 149–50.  Intervenors join the Pennsylvania State Democratic Party's motion with respect to their view on an erroneous interpretation's disruptive effect on important state policies.  Dkt. 85-2 at 13.  However, Intervenors stress that the importance of Pennsylvania's state policies are not limited to voting in a pandemic.  *See Fuente*, 207 F. Supp. 3d at 450.  Even without the challenges to voting created by the novel coronavirus, Act 77's expansion of mail-in and absentee ballot voting is critical to the promotion of democracy.  *Cf.* Intervenors Mot. to Intervene, Declaration of Terrie E. Griffin, Ex. B ¶¶ 9–11, Dkt. 104-2 (discussing how expanded mail-in voting helps at-risk Pennsylvanians vote); Declaration of Suzanne Almeida, Ex. C ¶¶ 13–16, Dkt. 104-3 (same); Declaration of Kenneth L. Huston, Ex. D ¶¶ 8–11 (same), Dkt. 104-4.

**B.    The Court Also Should Dismiss or Stay All of Plaintiffs' Claims Under *Colorado River* Abstention**

Although *Pullman* does not require a court to abstain from adjudicating the entirety of a proceeding, this Court should also stay or dismiss the proceedings under the principles of judicial efficiency espoused in *Colorado River*, including Plaintiffs' poll watcher claims.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  This Court should abstain from resolving the state law questions under *Colorado River* for three reasons: (1) it allows the state courts with concurrent jurisdiction to resolve all of the important state policy issues; (2) it conserves both party and judicial resources; and (3) it helps achieve decisionmaking consistency with respect to a complex state law scheme.

Federal courts abstain under *Colorado River* out of respect for "considerations of [wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks omitted). The Third Circuit adopts the two-part test set forth in *Colorado River*. *See Golden Gate Nat'l Sr. Care, LLC v. Minich ex rel. Estate of Shaffer*, 629 F. App'x 348, 349 (3d Cir. 2015).

At the first step, a court must consider whether the federal and state court proceedings are "parallel" in that they raise "substantially identical claims" and have nearly identical parties. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) ("We have never required complete identity of parties for abstention.").

At the second step, a court engages in a six-part balancing test probing the following: (1) whether there is a *res* or other property at stake; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties. *See Golden Gate*, 629 F. App'x at 350.

***First***, the proceedings in this Court and those filed by Pennsylvania State Democratic Party in state court are parallel. All 67 counties and Secretary Boockvar are named defendants in both cases, both sets of plaintiffs represent national political parties, their constituents, and elected representatives, and the pending claims and issues are substantially the same. *See IFC Interconsult, AG*, 438 F.3d at 306 ("[W]hen there is a substantial identity of parties and claims, abstention is still appropriate only when there are ongoing, not completed parallel state proceedings." (internal quotation marks omitted)).

***Second***, avoiding piecemeal litigation—the predominant *Colorado River* factor—with an upcoming election is desirable to avoid "disrupt[ing] state efforts to establish a coherent policy

with respect to a matter of substantial public concern." *Colo. River*, 424 U.S. at 814.  Here, concurrent state court litigation has jurisdiction to resolve the uncertain state law questions.  Dkt. 85-2 at ¶¶ 142–161.  Pennsylvania's scheme for administering full and fair elections is a matter of substantial public concern even without considering the ongoing global pandemic.  *See Cal. Dem. Party v. Jones*, 530 U.S. 567, 572 (2000).

Further, the Pennsylvania state courts are able to adequately protect all parties' interests here because they are best suited to resolve the issues presented, which, at bottom, are questions of pure state law.  *Compare Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) (requiring a "skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate"), *with OpenPittsburgh.org v. Wolosik*, 2016 WL 7985286, at *5 (W.D. Pa. Aug. 9, 2016) ("Th[is] Court recognizes … the Pennsylvania Election Code provisions at issue are a complex and intricate statutory scheme over which state courts likely possess special expertise and proficiency.").  These issues present "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case then at bar." *IFC Interconsult*, 438 F.3d at 305 (citation omitted).  Although some other factors weigh against abstaining, none do heavily enough to change the result.  This Court should stay or dismiss the entirety of the proceedings.

## III.    PLAINTIFFS FAIL TO PLEAD FRAUD WITH SUFFICIENT PARTICULARITY

Plaintiffs' challenges to the Pennsylvania county boards of elections' establishment and use of drop-boxes and their counting of ballots lacking secrecy envelopes should be dismissed for the additional and independent reason that they fail to plead their speculative fraud—the basis of their injury—with sufficient particularity.

### A.      Legal Standard

The gravamen of the Complaint is that Defendants allegedly allowed and will allow vote fraud to occur, thus diluting the vote.  Because Plaintiffs' claims (which are hypothetical at best) sound in fraud they are subject to heightened pleading.  *See* Fed. R. Civ. P. 9(b); *see also In re Shop-Vac Mktg. & Sales Prac. Litig.*, 964 F. Supp. 2d 355, 360 (M.D. Pa. 2013) ("[I]n a case where fraud is not an essential element of a claim, only allegations … of fraudulent conduct must satisfy the heightened pleading requirements." (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003))); *cf. DiGenova v. Baker*, 2002 WL 32356401, at *2 (E.D. Pa. Apr. 11, 2002) (requiring Rule 9(b) heightened pleading for allegations of union election fraud).  To survive a motion to dismiss, Plaintiffs must plead when the illegal voting activity occurred, how it occurred, where it occurred, and who was involved.  *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (requiring plaintiffs to plead "the who, what, when, where, and how" of a fraud under Federal Rule of Civil Procedure 9(b)).  Plaintiffs cannot meet this standard as their allegations are entirely conjectural.  Plaintiffs fail to sufficiently plead any details of the alleged fraud necessary to survive the motion to dismiss.

### B.      Plaintiffs Do Not Sufficiently Plead Voter Fraud and Injury

Plaintiffs have failed to plead that the establishment and use of drop-boxes and the counting of ballots lacking secrecy envelopes has or will lead to increased violations of election law related to absentee ballot voting.  Plaintiffs' asserted injury is that allowing non-disabled electors to deliver ballots, potentially without secrecy envelopes, to drop-boxes unmonitored by poll watchers results in an array of alleged but unsubstantiated voter fraud that dilutes the power of validly cast ballots.  Compl. ¶¶ 154–55, 163–64, 178–80.  Plaintiffs do not allege (nor can they) that any improper activity of this nature has occurred.  Plaintiffs do not include any evidence supporting their conjectural theory of mail-in vote fraud: they do not cite it occurring in

any county in Pennsylvania during the June primary nor do they cite any expert declarations as to the prevalence of this type of speculative voter fraud in Pennsylvania.  Plaintiffs make only the speculative assertion of an "increased potential for ballot fraud or tampering" in the future and cite only five total instances of impropriety occurring in Pennsylvania over the course of 26 years.  *Id.* ¶¶ 68, 155; *but see* Proposed Intervenors Mem. in Support of Mot. to Intervene at 4 n.6, Dkt. 104 (citing scientific studies indicating 1/10,000 of 1% of votes cast between 2000 and 2012 were fraudulent).  Plaintiffs fail to allege when in Pennsylvania any voting violation occurred, how it occurred, where it occurred, and who was involved as required under Rule 9(b).  *See Institutional Inv'rs Grp.*, 564 F.3d at 253.  Their speculative allegation of future injury cannot survive a motion to dismiss.

The Third Circuit has dismissed similar allegations of unsubstantiated voter fraud on a 12(b)(6) motion to dismiss related to absentee ballot and voting procedures.  In *Landes v. Tartaglione* the Third Circuit affirmed the District Court's dismissal of plaintiff's complaint as her alleged injury was based on a purely conjectural voter fraud theory, much like the one presented here.  153 F. App'x 131, 132 (3d Cir. 2005).  The District Court dismissed "[p]laintiff's claim that she is injured by the use of absentee voting" because it was pleaded as "only a generalized, theoretical concern that absentee ballots *may* result in fraud and other problems."  *Landes v. Tartaglione*, 2004 WL 2397292, at *2–3 (E.D. Pa. Oct. 26, 2004), *aff'd*, 153 F. App'x 131 (3d Cir. 2005); *see also Landes v. Tartaglione*, 2004 WL 2415074, at *3 (E.D. Pa. Oct. 28, 2004) (dismissing the complaint for failure to sufficiently plead that voting machines actually suffered from manipulation or technical failure in the past or will suffer from it in the future), *aff'd*, 153 F. App'x 131 (3d Cir. 2005).  Plaintiffs' allegations here are no different and

lack sufficient particularity to plead the hypothetical fraud they assert.  Therefore, Plaintiffs do not state a claim upon which relief can be granted.

### CONCLUSION

For the reasons stated above, the Intervenors respectfully request that this Court enter an order granting the Intervenors' Motion to Dismiss.

Dated:  July 24, 2020

Respectfully submitted,

/s/ Lori A. Martin

Witold J. Walczak (PA No. 62976)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel.: (412) 681-7736
vwalczak@aclupa.org

Adriel I. Cepeda Derieux[†]
Sophia Lin Lakin[†]
Dale Ho[†]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org
slakin@aclu.org
dho@aclu.org

Sarah Brannon[†++]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Tel: (202) 210-7287
sbrannon@aclu.org

Ezra Rosenberg*
John Powers*
Voting Rights Project
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900

Lori A. Martin[‡] (PA No. 55786)
Christopher R. Noyes[†]
Eleanor Davis*
Jared Grubow[†]
WILMER CUTLER PICKERING HALE
  AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Lori.Martin@wilmerhale.com
Christopher.Noyes@wilmerhale.com
Eleanor.Davis@wilmerhale.com
Jared.Grubow@wilmerhale.com

Jason H. Liss[†]
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6699
Jason.Liss@wilmerhale.com

Samantha K. Picans[†]
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
(720) 598-3477
Sam.Picans@wilmerhale.com

David P. Yin[†]
WILMER CUTLER PICKERING HALE
  AND DORR LLP

Washington, DC 20005
Tel: (202) 662-8300
erosenberg@lawyerscommittee.org
jpowers@lawyerscommittee.org

Mary M. McKenzie* (PA No. 47434)
Benjamin D. Geffen* (PA No. 310134)
PUBLIC INTEREST LAW CENTER
1500 JFK Blvd., Suite 802
Philadelphia PA 19102
Telephone: 215-627-7100
Fax: 215-627-3183
mmckenzie@pubintlaw.org
bgeffen@pubintlaw.org

[†] Admitted *pro hac vice*.
* *Pro hac vice* forthcoming.
‡ Admission Pending
[++] Not admitted in DC; DC practice limited to
federal court only.

1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6677
David.Yin@wilmerhale.com

*Counsel for NAACP Pennsylvania State Conference,
Common Cause Pennsylvania, League of Women
Voters of Pennsylvania, Patricia M. DeMarco,
Danielle Graham Robinson, and Kathleen Wise*