**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.,* | ) | Civil Action |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.: 2-20-CV-966 |
| v. | ) | |
| | ) | |
| KATHY BOOCKVAR in her capacity as Secretary of the Commonwealth of Pennsylvania; *et al.,* | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | Judge J. Nicholas Ranjan |

**<u>PROPOSED DEMOCRATIC INTERVENORS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1)
AND 12(B)(6)</u>**

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT FACTS ................................................................................................ 2

    A. Act 77 and Mail-In Ballot Requirements. ................................................... 2

    B. Act 77 Did Not Change The Election Code's Poll Watcher Residency
       Requirement. ................................................................................................. 3

    C. Act 12 Response to the Pandemic. ............................................................... 4

    D. County Boards Utilize Ballot Drop-Boxes to Collect Mail-In and Absentee
       Ballots for the 2020 Primary Election. ........................................................ 4

    E. Most County Boards Count Naked Ballots and Some Do Not. .................... 5

III. RELEVANT PROCEDURAL HISTORY ............................................................... 6

    A. Plaintiffs File this Action Against the Secretary of the Commonwealth and
       all Pennsylvania County Boards of Elections. ............................................. 6

    B. Democratic Intervenors File Action Against Same Defendants in State
       Court. ............................................................................................................ 7

IV. STANDARD OF REVIEW ...................................................................................... 7

V. ARGUMENT ............................................................................................................ 8

    A. Pullman Abstention Requires This Court to Abstain in This Case in Its
       Entirety Until the State Court Resolves Democratic Intervenors' Petition. .......... 8

         1. Uncertainty of State Law ................................................................. 11

         2. Effect of State Law on the Constitutional Claim. ........................... 13

         3. Effect of an Erroneous Federal Court Decision of State Law. ........ 14

         4. Equitable Considerations Require Abstention. ................................ 15

         5. Plaintiffs' Position on Abstention in Their Reply Brief in Support
           of Their Motion to Expedite is Wrong. ........................................... 16

    B. Counts IV and V of Plaintiffs' Complaint Regarding the Pennsylvania
       Election Code's Poll Watcher Residency Requirement Fail. ...................... 18

VI. CONCLUSION ....................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**

*In re Absentee Ballots of Nov. 4,*
    577 Pa. 231 (Pa. 2004) ..................................................................................................17

*Allen v. McCurry,*
    449 U.S. 90 (1980) ........................................................................................................9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................................8

*Baggett v. Bullitt,*
    377 U.S. 360 (1964) ....................................................................................................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................................................8

*Chez Sez III Corp. v. Township of Union,*
    945 F.2d 628 (3d Cir. 1991) ..........................................................................9, 10, 13, 14

*Children First Foundation v. Legreide,*
    No. 04-2137, 2005 WL 3088334 (D.N.J. Nov. 17, 2005) .......................................9

*Chiropractic Am. v. Lavecchia,*
    180 F.3d 99 (3d Cir. 1999) ............................................................................................9

*Colorado River Water Conservation Dist. v. U.S.,*
    424 U.S. 800 (1976) ......................................................................................................1

*D'Iorio v. County of Delaware,*
    592 F.2d 681 (3d Cir. 1978) ........................................................................................10

*De La Fuente v. Cortes,*
    207 F. Supp. 3d 441 (M.D. Pa. 2016) ....................................................12, 13, 14, 15, 17, 18

*Fender v. Wash. Cnty.,*
    No. 14-0142, 2014 WL 1491138 (W.D. Pa. Apr. 15, 2014) ...................................12

*Gordon v. East Goshen Township,*
    592 F. Supp. 2d 828 (E.D. Pa. 2009) ...........................................................................7

*Gould Elecs. Inc. v. United States,*
    220 F.3d 169 (3d Cir. 2000) ..........................................................................................8

*Harris County Comm'rs v. Moore,*
    420 U.S. 77 (1975) ........................................................................................................8

*League of Women Voters of Pa. v. Commonwealth,*
    178 A.3d 737 (Pa. 2018) ........................................................................................12, 14

*Libertarian Party of Pennsylvania, et al v. Wolf,*
    No. 20-cv-02299, Dkt. 57 (Memorandum Opinion) (E.D. Pa. July 14, 2020) ....................1, 9

*NAACP Pennsylvania State Conference v Boockvar*,
346 MD 2020 (Commw. Ct.) (filed July 20, 2020) ............................17

*NAACP Phila. Branch v. Ridge*,
No. 00–2855, 2000 WL 1146619 (E.D. Pa., Aug. 14, 2000)................15

*Pennsylvania Democratic Party, et al v. Boockvar, et al*,
No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020) ......................2, 5, 7

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008)................................................................8

*Pierce v. Allegheny County Bd. of Elections*,
324 F. Supp. 2d 684 (W.D. Pa. 2003).............................9, 10, 13, 14, 17

*Pinker v. Roche Holdings, Ltd.*,
292 F.3d 361 (3d Cir. 2002)................................................................8

*Planned Parenthood of Central N.J. v. Farmer*,
220 F.3d 127 (3d Cir. 2000)................................................................9

*R.R. Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496 (1941) ...................................................................1, 18

*Republican Party of Pa. v. Cortés*,
218 F. Supp. 3d 396 (E.D. Pa. 2016) (Pappert, J.)..............11, 13, 14, 19

*Rouse v. II-IV Inc.*,
No. 06-566, 2008 WL 398788 (W.D. Pa. Feb. 11, 2008) ...................5

*Schwartz v. Judicial Retirement Sys. of N.J.*,
584 F. Supp. 711 (D.N.J. 1984) .......................................................17

*Silverberg v. City of Phila.*,
No. 19-2691, 2020 WL 108609 (E.D. Pa. Jan. 8, 2020).......................8

*Stretton v. Disciplinary Bd. of Supreme Court of Pa.*,
944 F.2d 137 (3d Cir. 1990)..............................................................15

**Statutes**

25 P.S. § 3050(a.4)(5)(ii)(C) ...............................................................3

25 P.S. § 3146.6(a)..........................................................3, 10, 11, 13

25 P.S. § 3150.16(a)........................................................3, 10, 11, 13

25 Pa. C.S. § 2687............................................................................3

25 Pa. C.S. § 2687(b) (2004) .............................................................3

25 Pa. C.S. § 3146.8(g)(4)(i)-(iv) .......................................................3

25 Pa. C.S. §§ 3150.11-3150.17 ........................................................2

Act 12 of 2020 § 1308(g)(1.1) .......................................................4, 19

Act 12 of 2020 § 1802-D .................................................................4

**Other Authorities**

5B Charles Alan Write R. Miller, Federal Practice and Procedure: Civil 3d §
    1350, at 147-54 (3d ed. 2004)..............................................................................7

Fed. R. Civ. P. 12(b)(6)...............................................................................................7, 18

Federal Rule of Civil Procedure 12(b)(1) ......................................................................7

Pa. Const. art. I, § 5....................................................................................................14

I.   **INTRODUCTION**

The Pennsylvania Constitution and Pennsylvania Election Code set forth the definitive framework for the administration of Commonwealth of Pennsylvania elections. Pennsylvania state courts have a long history of interpreting Pennsylvania laws to protect, to the broadest extent possible, Pennsylvania voters' rights to fair and equal participation in the electoral process. The issues presented by Plaintiffs in this case belong before a Pennsylvania state court and not the federal court.

Masquerading as alleged constitutional violations, at the core, Plaintiffs' claims rest and turn on pure questions of state law involving the interpretation and application of a state statute, questions that should be considered and resolved by a state court. The fact that the state statute at issue is Pennsylvania's Election Code does not change that most basic jurisdictional prerequisite. *See Libertarian Party of Pennsylvania, et al v. Wolf*, No. 20-cv-02299, Dkt. 57 (Memorandum Opinion) (E.D. Pa. July 14, 2020) (explaining "federal courts must act with great constraint when considering the prospect of intervening to change state election rules, issues normally best left to the people and their representatives"). Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction (*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)), certain circumstances mandate abstention and judicial restraint. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). This is one such circumstance requiring this Court to abstain from exercising jurisdiction over Plaintiffs' extraordinary claims for relief.

Here, Plaintiffs allege both state and federal constitutional violations regarding the Secretary of the Commonwealth and Pennsylvania counties' Boards of Elections' ("Boards") (collectively "Defendants") administration of the June 2, 2020 Primary Election and the upcoming November 3, 2020 General Election. These alleged violations, however, are entangled with certain dispositive state law issues, namely the interpretation of portions of Act 77 of 2019 and Act 12 of

1

2020. These newly enacted statutes–**passed by the Pennsylvania General Assembly with overwhelmingly bipartisan support**–made significant changes to the administration of Pennsylvania's elections, most significantly, permitting no excuse mail-in voting for all qualified electors in Pennsylvania.

The very state law issues undergirding Plaintiffs' federal court claims are now pending before the Pennsylvania Commonwealth Court. On July 10, 2020, the Democratic Intervenors filed a Petition for Declaratory and Injunctive Relief against the same defendants in this federal action seeking, among other things, declaratory judgments and a reasonable interpretation of the provisions regarding mail-in and absentee ballots as set forth in Act 77 and Act 12, and the poll watcher residency requirement as set forth in the Election Code. *Pennsylvania Democratic Party, et al v. Boockvar, et al*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020) ("Petition"). Applying the United States Supreme Court's abstention factors in *Pullman* to Plaintiffs' claims here, the result is clear. This Court should grant Democratic Intervenors' Motion to Dismiss and abstain from considering Plaintiffs' constitutional claims until a state court resolves the statutory interpretation questions under Pennsylvania law.

## II.   RELEVANT FACTS

### A.  Act 77 and Mail-In Ballot Requirements.

On October 31, 2019, the Governor of Pennsylvania, Tom Wolf, signed Act 77 into law. Complaint, ¶ 88. Act 77 is a sweeping bipartisan election reform bill that aimed to improve Pennsylvania's elections and make voting easier and more accessible for the Commonwealth's citizens. *Id.* at ¶ 89. As one of its most consequential reforms, Act 77 permits no cause mail-in voting for all qualified electors. *Id.*; *see also* 25 Pa. C.S. §§ 3150.11-3150.17. The mechanics of voting by mail are set forth in the Act. A voter who chooses to vote by mail-in or absentee ballot must "mark the ballot . . . enclose and securely seal the same in the envelope on which is printed,

2

stamped or endorsed 'Official Election Ballot.'" 25 P.S. §§ 3146.6(a), 3150.16(a). The voter must then place the Official Election Ballot into a second envelope, which contains, among other things, the declaration of the elector and the address of the elector's county board. *Id.* The elector must complete, sign and date the declaration printed on the envelope. *Id.* Finally, "[s]uch envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said **county board of election**." *Id.* (emphasis added); *see also* Complaint, ¶ 91. Nothing in the Election Code prohibits Boards from collecting election ballots via Board authorized ballot drop-boxes.

Act 77 bars counting an absentee or mail-in ballot that has "any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference" on the inner Official Election Ballot envelope ("Privacy Envelope"). *See* 25 Pa. C.S. § 3146.8(g)(4)(i)-(iv); *see also* Complaint, ¶ 91. However, unlike the express statutory language applicable to provisional ballots, Act 77 does not empower or authorize Boards to reject ballots solely because the voter forgot to utilize the Privacy Envelope. *See* 25 P.S. § 3050(a.4)(5)(ii)(C).

### B. Act 77 Did Not Change The Election Code's Poll Watcher Residency Requirement.

Under the Commonwealth's 1947 Election Code, "a poll watcher's geographical territory" was restricted to the election district where the elector lived. *See* 25 Pa. C.S. § 2687. The 2004 amendments to the Election Code "expanded the poll watcher's geographical territory from a single election district to all election districts in the county in which the watcher is a qualified registered elector." *See* Complaint at ¶ 118; *see also* 25 Pa. C.S. § 2687(b) (2004). Act 77 made no changes to the poll watcher residency requirement and thus, as currently written, the Election Code does not permit electors to be a poll watcher outside of their home county. *Id.* at ¶¶ 119-120.

3

### C.  Act 12 Response to the Pandemic.

On March 25, 2020, in response to the pandemic, the Pennsylvania General Assembly passed Act 12, which, among other things, delayed the date of the Primary Election to June 2, permitted counties to temporarily consolidate polling places for the Primary without court approval, and eased other rules related to location and staffing of polling places. Act 12 of 2020 § 1802-D. Act 12 also created a canvass process prior to the end of Election Day and, as part of that effort, created the position of authorized canvass representatives, persons who are not required to be a registered voter in the county or the Commonwealth, to observe canvass activities. *See* Act 12 of 2020 § 1308(g)(1.1).

### D.  County Boards Utilize Ballot Drop-Boxes to Collect Mail-In and Absentee Ballots for the 2020 Primary Election.

On June 2, 2020, Pennsylvania held its Primary Election, the first election following the enactment of Act 77. Complaint, ¶ 98. In response to the pandemic, which rendered standing in line at polling places medically unsafe and the availability of a no-excuse vote-by-mail option, more than 1.8 million Pennsylvania voters applied for mail-in or absentee ballots. *Id.* at ¶ 99. In order to handle this unprecedented and massive influx of mail-in ballots, more than 20 Boards set up ballot drop-boxes in locations other than the Boards' central office addresses and permitted voters to return absentee and mail-in ballots to such locations. *Id.* at ¶ 103. Plaintiffs allege that these ballot drop-box locations were "unmonitored and/or unsecured" and the amount of notice and fashion in which notice was provided regarding the use and location of ballot drop-box locations varied by county and did not comply with the Election Code's notice publication requirements." *Id.* at ¶¶ 105-106. Plaintiffs allege that the use of these drop-boxes violated the Election Code under their peculiar definition of a "rigged election." *Id.* at ¶¶ 107-109.

### E.  Most County Boards Count Naked Ballots and Some Do Not.

Given the unprecedented and massive influx of mail-in and absentee ballots during the Primary Election, certain Boards questioned whether it should count so-called "Naked Ballots," ballots that lacked the Privacy Envelope and instead were only contained within the Mailing Envelope. *See id.* at ¶ 113. On May 28, 2020, a few days before the Primary Election, the Deputy Secretary of the Commonwealth, Jonathan Marks, sent a regulatory (or administrative) interpretation of the Election Code to county election directors explaining that "**there is no statutory authority, nor is there statutory authority, for setting aside an absentee or mail-in ballot solely because the voter forgot to properly insert it in the official election ballot envelope.**" ("Marks Guidance").[1] **Ex. B to Ex. 1**, *Pennsylvania Democratic Party, et al v. Kathy Boockvar, et al*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020). The interpretive Marks Guidance also directed Boards to preserve the secrecy of ballots by developing a process "by which members of the pre-canvass or canvass boards insert these ballots into empty official election envelopes or privacy sleeves" until they are counted. *Id.* Notwithstanding this interpretive guidance, according to Plaintiffs, some Boards counted Naked Ballots and some did not. *Id.* This, according to Plaintiffs, creates disparate treatment of Naked Ballots on a county-by-county basis and their preferred solution is to now disenfranchise a very large mass of voters by simply not counting them at all. *See id.* at ¶ 116; WHEREFORE Clause, Part C.

---

[1] Democratic Intervenors respectfully request that this Court take judicial notice of the Marks Guidance and **Ex. 2**, Jan. 10, 2020 Pennsylvania Applications and Balloting Guidance. On a motion to dismiss, courts may take judicial notice of documents which are matters of public record, including, but not limited to court-filed documents. *Rouse v. II-IV Inc.*, No. 06-566, 2008 WL 398788, at *1 (W.D. Pa. Feb. 11, 2008).

III.    **RELEVANT PROCEDURAL HISTORY**

      A.    **Plaintiffs File this Action Against the Secretary of the Commonwealth and all Pennsylvania County Boards of Elections.**

On June 29, Plaintiffs initiated this action against the Secretary of the Commonwealth and all 67 Pennsylvania Boards (collectively "Defendants"). Plaintiffs allege that Defendants' interpretation and implementation of Act 77 and the Election Code's poll watcher residency requirement violated and will continue to violate their rights under the First and Fourteenth Amendments of the United States Constitution and the Equal Protection and Free and Equal Elections Clauses of the Pennsylvania Constitution. *Id.* Plaintiffs also filed a Motion to Expedite Speedy Declaratory Judgment Hearing and Expedited Discovery ("Motion to Expedite"). Dkt. 6.

On July 2, 2020, this Court issued an order holding in abeyance the Motion to Expedite and providing Defendants until July 13, 2020 to file responses. Dkt. 7. Most Defendants filed a response to Plaintiffs' motion. Defendants Bucks, Chester, and Montgomery County Boards of Election argued the Court should deny the motion because, among other reasons, *Pullman* abstention requires this Court to cede to the Pennsylvania Commonwealth Court and Democratic Intervenors' July 10, 2020 Petition for Declaratory and Injunctive Relief ("Petition") filed against Defendants. Dkt. 76. On July 17, 2020, Plaintiffs filed a Reply Brief in Support of their motion and argued that abstention did not apply and should have no bearing on the Court's consideration of their motion. Dkt. 120 at pg. 6-8.

On July 17, 2020, this Court granted in part, and denied in part, Plaintiffs' Motion to Expedite and encouraged parties to file any Rule 12 motions on or before Friday, July 24, 2020, while permitting discovery to move forward. Dkt. 124.

**B.   Democratic Intervenors File Action Against Same Defendants in State Court.**

On Friday, July 10, 2020, Democratic Intervenors filed a Petition for Declaratory and Injunctive Relief ("Petition") in the Commonwealth Court of Pennsylvania against all of the Defendants named herein. *Pennsylvania Democratic Party, et al v. Kathy Boockvar, et al*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020), attached as **Ex. 1**. The Petition seeks, among other things, declaratory judgments and a reasonable interpretation that Act 77 permits the state Respondents (1) "to provide secure, easily accessible locations as the Board deems appropriate, including, where appropriate mobile or temporary collection sites, and/or drop-boxes for the collection of mail-in ballots"; and (2) to clothe and count Naked Ballots and that doing so does not violate the United States or Pennsylvania Constitution. *Id.* at Counts I and IV. The Petition also seeks a declaratory judgment that the poll watcher residency requirement in the Election Code does not violate the United States or Pennsylvania Constitution. *Id.* at Count V. In addition to the Petition, Democratic Intervenors filed an Application for an Expedited Discovery Schedule and Evidentiary Hearing and Application for Special Relief in the Nature of an Expedited Motion for Alternative Service to expedite the resolution of its Petition and a judicial interpretation of the relevant provisions of Act 77.

**IV.   <u>STANDARD OF REVIEW</u>**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter . . . .", Motions pursuant to Fed. R. Civ. P. 12(b)(1) can be either facial or factual challenges. *Gordon v. East Goshen Township*, 592 F. Supp. 2d 828, 836 (E.D. Pa. 2009). "A facial challenge under Rule 12(b)(1) argues that "the complaint fails to allege subject matter jurisdiction or contains defects in the jurisdictional allegations." *Id.* (citing 5B Charles Alan Write R. Miller, Federal Practice and Procedure: Civil 3d § 1350, at 147-54 (3d ed. 2004). By contrast, with a factual attack, "the court may consider evidence outside of the

7

pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citation omitted). Abstention is generally considered a facial attack under Rule 12(b)(1). *Silverberg v. City of Phila.*, No. 19-2691, 2020 WL 108609, at *3 (E.D. Pa. Jan. 8, 2020) (treating Rule 12(b)(1) motion invoking, among other things, *Younger* abstention as a facial attack).

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). Although a complaint does not need to contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege facts that "raise a right to relief above a speculative level . . ." *Twombly*, 550 U.S. at 555.

## V.   ARGUMENT

### A. *Pullman* Abstention Requires This Court to Abstain in This Case in Its Entirety Until the State Court Resolves Democratic Intervenors' Petition.

Stripped to its fundamental essence, Plaintiffs are asking this Court to resolve pure state law questions concerning the Defendants' interpretation and application of Pennsylvania's Election Code. At best, the ancillary federal constitutional questions raised by Plaintiffs are "entangled in a skein of state law that must be untangled before the federal case can proceed." *Harris County Comm'rs v. Moore*, 420 U.S. 77, 83 (1975). A preliminary resolution of the state law issues by a state court to narrow or eliminate the federal constitutional questions could not be clearer. Abstention recognizes that "certain matters are of a state concern to the point where federal courts should hesitate to intrude; and . . . may also concern judicial 'economy,' the notion that

courts should avoid making duplicative efforts or unnecessarily deciding difficult questions." *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999).

Under the *Pullman* abstention doctrine, "when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question, abstention may be justified under principles of comity in order to avoid needless friction with state policies." *Chez Sez III*, 945 F.2d at 631 (internal quotations and citations omitted). "Abstention under *Pullman* merely postpones the exercise of federal jurisdiction." *Allen v. McCurry*, 449 U.S. 90, 101 n. 17 (1980). Importantly, *Pullman* abstention avoids (1) unnecessary constitutional pronouncements that could ultimately be displaced by a state court adjudication of state law; and (2) undue influence with state programs and policies. *Children First Foundation v. Legreide*, No. 04-2137, 2005 WL 3088334, at *3 (D.N.J. Nov. 17, 2005) (citing *Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (citation omitted).

*Pullman* abstention requires courts to engage in a two-step analysis. *Chez Sez III*, 945 F.2d at 631. *First*, courts must determine whether the following special circumstances exist:

- "(1) uncertain issues of state law underlying the federal constitutional claims brought in federal court;

- (2) state law issues amenable to state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and

- (3) the possibility that a federal court's erroneous construction of state law would be disruptive of important state policies."

*Pierce v. Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684, 703 (W.D. Pa. 2003) (internal quotations and citations omitted).

9

*Second*, if all three "special circumstances" are present, the court moves to the second step: making a discretionary determination whether abstention is in fact appropriate under the circumstances of the particular case, based on the weight of these criteria and other relevant factors. *Id.* (citing *Chez Sez III*, 945 F.2d at 631). "Absent significant reasons to the contrary, abstention is generally proper once it [has been] ascertained that the threshold 'special circumstances' have been fulfilled. *D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3d Cir. 1978).

*Pierce* is particularly instructive. In a case involving the absentee ballot provision of Pennsylvania's Election Code and with constitutional claims remarkably similar to the challenges made by Plaintiffs here, Judge Conti determined that the federal court should abstain from exercising jurisdiction over the Pierce plaintiffs' alleged equal protection claims. Rather, Judge Conti ruled that the Pennsylvania state courts should be allowed to consider and interpret the Election Code provision at issue. *Pierce*, 324 F. Supp. 2d at 703-04. As demonstrated below, Judge Conti's reasoning is equally applicable here.

1.      *Uncertainty of State Law*

The interpretation and application of Pennsylvania's Election Code clearly underlies the Plaintiffs' federal constitutional claims. In the time since Act 77 was enacted, less than a year ago, no court has had occasion to address the provisions at issue and, thus the state law issues present in this case are not yet conclusively settled.

Plaintiffs contend that Section 3146.6(a) and 3150.16(a) of the Election Code mandate that a Board must discard or void Naked Ballots. The Secretary of the Commonwealth interprets the Election Code otherwise. *See* **Ex. B** to **Ex. 1**, Marks Guidance, and the Democratic Intervenors agree with the Secretary's interpretation. The question is now before the Commonwealth Court of Pennsylvania.

10

Plaintiffs also allege the phrase "to said county board of election" in Section 3146.6(a) and 3150.16(a) of the Election Code refers only to a Board's central office address and thus voters must mail or deliver mail-in and absentee ballots ***only*** to that address rather than deliver them to Board authorized ballot drop-boxes. To the contrary, nothing in the Election Code can be read to restrict this language so narrowly and constrain Boards from adopting other ballot drop-off methods as an extension of their election ballot collection statutory obligations, particularly in a time of a global health crisis, as occurred and continues to persist here.

Plaintiffs further allege that the ballot drop-boxes were not proper "polling places" under the Election Code and that the 20 Boards utilizing ballot drop-off boxes did not comply with the Election Code's mandatory notice publication requirements related to "polling places." However, ballot drop-boxes are **not** considered "polling places" under the Election Code. Notably, the Department of State's guidance regarding the implementation of Act 77 provides counties with the option of establishing multiple county election offices to collect mail-in and absentee ballots. *See* **Ex. 2**, January 10, 2020 *Pennsylvania Applications and Balloting* Guidance, at pg. 4-5. This question advanced by Plaintiffs is purely one of state law and again is correctly and properly before the Commonwealth Court of Pennsylvania.

Finally, Plaintiffs rehash claims, rejected by a federal court in Pennsylvania just four years ago, that despite the Election Code's requirement limiting poll watchers' services to polling places in the county where they reside, any poll watcher should be permitted to oversee and monitor polling places in any of the Commonwealth's counties as well as any ballot drop-box in the Commonwealth. *See Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 402 (E.D. Pa. 2016) (Pappert, J.) (finding Election Code's poll watcher residency requirement constitutional because it is rationally related to the Commonwealth's interest in maintaining its county-run election

system). Because Act 77 did not change the poll watcher residency requirement, Judge Pappert's reasoning remains sound.

Less than a year ago, Pennsylvania's General Assembly made a deliberative and bipartisan decision to expand early voting and remove the requirement that a voter provide an excuse to avoid voting in person. The sweeping changes to the Commonwealth's election laws was employed, for the first time, in the June 2, 2020 Primary Election. The sheer number of mail-in ballots reflected the popularity of the law, especially given the pandemic which rendered voting in-person unsafe. Plaintiffs efforts to substantially limit the ability of individuals to vote during a pandemic or to not count their ballot under the guise of a constitutional challenge is anathematic to democratic principles and Pennsylvania's Constitution which provides, to the greatest extent possible, a voter's right to equal participation in the electoral process. *See League of Women Voters of Pa. v. Commonwealth*, 178 A.3d 737, 804 (Pa. 2018).

For these reasons, questions related to Act 77 and other provisions of the Election Code, and the interpretation applications of these provisions is "best addressed at the state, and not federal, level." *Fender v. Wash. Cnty.*, No. 14-0142, 2014 WL 1491138, at *3 (W.D. Pa. Apr. 15, 2014) (concluding state court should address uncertain issues of state law concerning state criminal statute before a federal court analyzes underlying federal constitutional claims). To be sure, federal courts have invoked *Pullman* abstention when faced with an unclear or unsettled interpretation of Pennsylvania's Election Code. *See, e.g.*, *De La Fuente v. Cortes*, 207 F. Supp. 3d 441, 450 (M.D. Pa. 2016) (invoking *Pullman* abstention, in part because interpretation of so-called "sore loser provision" was ambiguous). Thus, the interpretation of these provisions present clear issues of state law that a state court must address before a federal court exercises jurisdiction to determine whether Plaintiffs' federal constitutional rights have been violated.

2.      *Effect of State Law on the Constitutional Claim.*

The Commonwealth Court's interpretation of Sections 3146.6(a) and 3150.16(a) would obviate the need for or substantially narrow the scope of the Plaintiffs' federal constitutional claims. When considering the second *Pullman* factor, a court is "not concerned with whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary, but rather whether the [statute] is obviously susceptible of a limiting construction." *Chez Sez III*, 945 F.2d at 633 (emphasis in original).

The relevant Election Code issues are whether (1) Act 77 permits a Board to clothe and count a Naked Ballot; (2) the phrase "to said county election board" means a Board's central office address or permits Boards to establish ballot drop-boxes and mobile collection sites; (3) Act 77 permits each county Board to decide whether, if at all, to use ballot drop-box locations in their county; (4) ballot drop-boxes are "polling places" under the Election Code; and (5) the deference a court must give to a Commonwealth agency's regulatory or administrative interpretation or guidance under Pennsylvania law.

As demonstrated above, a Pennsylvania state court's interpretation of Act 77 would narrow the scope of the constitutional issues. For example, a Pennsylvania court's declaratory judgment that Boards have no statutory or legal authority to discard or void a Naked Ballot, would create uniformity among all county Boards and thus narrow or likely moot Plaintiffs' federal constitutional claims arising therefrom. Likewise, the Commonwealth Court's consideration of a declaratory judgment whether Act 77 permits voters to deliver mail-in or absentee ballots to ballot drop-boxes would narrow further, if not eliminate, Plaintiffs' federal constitutional claims. *See e.g.*, *Pierce*, 324 F. Supp. 2d at 704 (explaining that "the construction of [the Election Code provision] at issue by Pennsylvania courts . . . . could obviate the need to determine whether there has been a violation of equal protection under the Fourteenth Amendment"); *Cortes*, 207 F. Supp.

13

3d at 450 (finding that if state court interpreted Election Code sore loser provision in Plaintiffs' favor then his "constitutional claim would be eliminated.").

Indeed, a Pennsylvania state court's resolution of Democratic Intervenors' Petition will resolve any uncertain state law issues regarding Act 77. Thus, "[t]his case presents exactly the type of state law question that usually triggers *Pullman* abstention, where 'the unsettled issue of state law principally concern[s] the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular matter would eliminate the constitutional issue and terminate the litigation." *Chez Sez III*, 945 F.2d at 633 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 376-77 (1964)). Democratic Intervenors have satisfied the second *Pullman* factor.

3.    *Effect of an Erroneous Federal Court Decision of State Law.*

An erroneous decision by this Court would be disruptive of important state policies, namely voting rights and the election process. A bedrock principle of the Commonwealth has been guaranteeing, to the greatest extent possible, citizens' right to vote. *League of Women Voters of Pa.*, 178 A.3d at 804. Section I, article 5 of the Pennsylvania Constitution reflects this principle: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right to suffrage." Pa. Const. art. I, § 5. In 2018, the Pennsylvania Supreme Court explained that "free and equal" "reflects the framers' intent that all aspects of the electoral process, to the greatest degree possible, be kept open and unrestricted to the voters . . . . and, also, conducted in a manner which guarantees . . . . a voter's right to equal participation in the electoral process for the selection of his or her representatives in government." *Id.*

Given this history, courts have routinely explained that the Elections clause of the Pennsylvania Constitution has a "broad and wide sweep" (*Id.* at 809) and that voting rights, the election process, and election integrity are all important state policies. *Pierce*, 324 F. Supp. 2d at 703-04 (explaining voting rights are "extremely important state policies"); *Cortes*, 207 F. Supp.

14

3d at 450 (finding "erroneous interpretation of the [Election Code] would be gravely detrimental to important Pennsylvania interests concerning state election procedures"); *NAACP Phila. Branch v. Ridge*, No. 00–2855, 2000 WL 1146619 at *6–7 (E.D. Pa., Aug. 14, 2000) (abstaining in case regarding constitutionality of Pennsylvania Voter Registration Act as it pertains to ex-felons and concluding "voting regulations implicate important state policies").

It is therefore clear that an erroneous interpretation of Act 77, which implicates important state electoral policies, could potentially disenfranchise thousands, if not hundreds of thousands, of Pennsylvania voters. Accordingly, Democratic Intervenors have established the third *Pullman* factor.

4.      *Equitable Considerations Require Abstention.*

Equitable considerations further support this Court abstaining in this case. In this second step of the Pullman analysis, federal courts weigh a variety of factors, including "the availability of an adequate state remedy, the length of time the litigation has been pending, and the potential impact on the parties caused by delay in obtaining a state ruling." *Stretton v. Disciplinary Bd. of Supreme Court of Pa.*, 944 F.2d 137, 140 (3d Cir. 1990).

Here, there are adequate state law remedies available – namely declaratory judgment and injunctive relief regarding a reasonable interpretation of Act 77. *See e.g.*, *NAACP Phila. Branch*, 2000 WL 1146619, at *8 (explaining that state court remedy includes an action for declaratory judgment or petition for extraordinary relief and that because election was more than two months away, state court could provide prompt resolution). Second, this litigation is in its infancy as Plaintiffs filed the Complaint less than a month ago. The Court has encouraged the filing of Rule 12 motions today, and no discovery has occurred. Third, none of the parties will suffer any prejudice caused by delay in obtaining a state court ruling. Along with the Petition, Democratic Intervenors filed an Application for Expedited Discovery and Evidentiary Hearing to push for an

expeditious resolution of the state court action well in advance of the General Election. Finally, a state court ruling regarding the interpretation of relevant provisions of Act 77 will provide clarity to all parties, including Democratic Intervenors. Accordingly, equitable considerations require this Court to abstain and dismiss the Complaint.[2]

        5.     *Plaintiffs' Position on Abstention in Their Reply Brief in Support of Their Motion to Expedite is Wrong.*

In their Reply Brief in Support of its Motion to Expedite, Plaintiffs argue that abstention is not warranted in this case. They are wrong.

*First*, Plaintiffs inexplicably do not cite *Pullman*, but attempt to circle around the doctrine by arguing that abstention is improper because the state law at issue–Act 77–is "relatively clear." Paradoxically, Plaintiffs simultaneously push an interpretation that is counter-textual in that they reject the interpretation of the Secretary of the Commonwealth and the vast majority of county Boards. *See* Dkt. 120 at pg. 7. Only after a small minority of Boards raised questions during the Primary Election about the processing of Naked Ballots did Pennsylvania's Department of State issue interpretive guidance.  **Ex. B** to **Ex. 1**. Plaintiffs cannot have it both ways in arguing that there is both uncertainty and clarity regarding the meaning of Act 77. Regardless, a Pennsylvania state court should be the first to interpret the statute, particularly when, as here, the statute at issue is newly enacted.

*Second*, Plaintiffs argue abstention is inappropriate because Plaintiffs filed the federal lawsuit before Democratic Intervenors filed their Petition in the Commonwealth Court. The

---

[2] The state court action will proceed in any event as these are issues of state law before the Pennsylvania state court of original jurisdiction with jurisdiction over disputes impacting statewide electoral matters.

the order of filing is simply not a relevant factor in the *Pullman* abstention analysis. This Court's decision in *Pierce,* in fact, completely undermines Plaintiffs' argument. In *Pierce*, a case involving some of the same plaintiffs, and the same counsel here, certain plaintiffs sued the Allegheny County Board of Elections in federal court, raising federal constitutional claims similar to those asserted here. *See Pierce*, 324 F. Supp. 2d at 689-90 (challenge to third-party hand delivery of absentee ballots). Notwithstanding the absence of a pending state court case when the federal court action was filed, the Court applied the *Pullman* abstention doctrine and abstained, allowing the Pennsylvania Supreme Court to decide the issue involving the interpretation and application of Pennsylvania's Election Code.[3] *Id.* at 690.

 *Third,* Plaintiffs' contention that Democratic Intervenors' Commonwealth Court Petition does not name the same parties or seek the same relief requested in this action, is also not relevant. The more compelling points here are that the defendants in both actions are identical and the dispositive state law issues are squarely before the Commonwealth Court. Any plaintiff here is free to seek intervention in the state court action.[4]

---

[3] The federal court plaintiffs prevailed in the Pennsylvania Supreme Court. *In re Absentee Ballots of Nov. 4*, 577 Pa. 231, 250 (Pa. 2004).

[4] In fact, on July 20, 2020, the two lead Plaintiffs (and organizations asserting an interest on behalf of other Plaintiffs), through common counsel, have recently sought to intervene in other Commonwealth Court matters related to this election. *See* Application for Leave to Intervene of Donald J. Trump for President, Inc., the Republican Party of Pennsylvania, the Republican National Committee, and National Republican Campaign Committee. *NAACP Pennsylvania State Conference v Boockvar*, 346 MD 2020 (Commw. Ct.) (filed July 20, 2020).  After the Commonwealth Court resolves Democratic Intervenors' Petition, this Court may then revive Plaintiffs' federal Equal Protection claims if, in fact, a federal constitutional Equal Protection issue remains. *See Schwartz v. Judicial Retirement Sys. of N.J.*, 584 F. Supp. 711, 717 n. 2 (D.N.J. 1984).

Accordingly, the existence of special circumstances and equitable considerations warrant abstention from this Court's exercise of federal jurisdiction. "Principles of comity" and the need to avoid "needless friction with state policies" mandates this Court to defer to the Pennsylvania Commonwealth Court, which will hear Democratic Intervenors' Petition that seeks, among other things, declaratory judgments and a reasonable interpretation of the very provisions of Act 77 challenged by Plaintiffs in this proceeding. *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 500 (1941)).

### B. Counts IV and V of Plaintiffs' Complaint Regarding the Pennsylvania Election Code's Poll Watcher Residency Requirement Fail.

Alternatively, should this Court decline to invoke *Pullman* abstention, Counts IV and V should be dismissed for failure to state a claim under Rule 12(b)(6). Plaintiffs allege that the poll watcher residency requirement violates their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution as well as the Equal Protection and Free and Equal Elections clause of the Pennsylvania Constitution. *See* Complaint, Counts IV and V. Plaintiffs argue that the residency requirement dilutes their votes because–absent roving poll watchers–there will be voter fraud, thus negating legitimate votes. Complaint, ¶ 177. Plaintiffs also argue that the residency requirement arbitrarily and unreasonably distinguishes between qualified voters within the Commonwealth of Pennsylvania by limiting their services as a poll watcher to only the county of their residence and by limiting their service as a poll watcher to monitoring only in-person voting at the polling place on Election Day." *Id.* at ¶ 178.

Plaintiffs' allegations are largely retreads of allegations rejected four years ago by a federal district court in Pennsylvania. In that case, in connection with the 2016 presidential election, the Republican Party of Pennsylvania, among others, sued the then Secretary of the Commonwealth, Pedro Cortés, seeking to enjoin the enforcement of these very poll watcher residency requirements.

*Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 402 (E.D. Pa. 2016) (Pappert, J.). The *Cortés* plaintiffs advanced nearly identical arguments asserted by the Plaintiffs in this action. *Compare Id.* at 407 *with* Complaint, Counts IV and V.

The *Cortés* Court declined to enjoin the enforcement of the requirement. *Id.* at 407-10. In so doing, the court found that the plaintiffs' dilution of the vote theory was based on pure speculation that fraudulent voters may be "casting ballots elsewhere in the Commonwealth and the unproven assumption that these alleged instances of voter fraud would be prevented by the affected poll watchers were they not precluded from serving at those locations." *Id.* Applying the rational basis test, the court ruled that Pennsylvania's poll watcher residency requirement did not burden the plaintiffs' fundamental right to vote. *Id.* More to the point, the Court found that the General Assembly's decision to limit poll watchers to county residents was rationally related to the Commonwealth's interest in "maintaining its county-run election system [under which] each county election official is tasked with managing credentials for a discrete part of the state's population." *Id.* at 409.

The Court's reasoning and analysis in *Cortés* applies equally to the claims asserted by Plaintiffs' here. Nothing has changed to buttress Plaintiffs' claim and they have not alleged as much. The poll watcher residency requirement does not dilute any elector's vote and continues to serve the "state's interests in maintaining its county-run election system." *Id.*

In enacting Act 77, the General Assembly could easily have altered or amended the poll watcher residency requirement, and chose not to. Instead, it specifically created "canvass authorized representatives" to observe canvass activities and such representatives need not be registered voters of the county or the Commonwealth. *See* Act 12 of 2020 § 1308(g)(1.1). This is a legislative choice reflecting the distinction between activity in a polling place and activity taking

19

place under the watch of sworn, countywide-elected officials. The fact that Boards must utilize more ballot drop-boxes for mail-in and absentee ballots due to a global pandemic does not lessen, but in fact strengthens, the Commonwealth's interest in maintaining its county administered election system.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, the Democratic Intervenors respectfully request that this Court enter an order granting Democratic Intervenors' Motion to Dismiss for the reasons set forth above.

Respectfully submitted,

*/s/ A. Michael Pratt*
A.  Michael Pratt
Kevin M. Greenberg (admitted *pro hac vice*)
Adam R. Roseman (admitted *pro hac vice*)
George Farrell (admitted *pro hac vice*)
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
(t) 215.988.7800
(f) 215.988.7801
prattam@gtlaw.com
greenbergk@gtlaw.com
rosemana@gtlaw.com
farrellg@gtlaw.com

Clifford B. Levine
Alex Lacey
Dentons
625 Liberty Avenue 5th Floor
Pittsburgh, Pennsylvania 15222
(t) 412.297.4998
clifford.levine@dentons.com
alex.lacey@dentons.com

Lazar M. Palnick
1216 Heberton St.
Pittsburgh, PA 15206
(t) 412.661.3633
lazarpalnick@gmail.com

*Attorneys for Democratic Intervenors*

Dated: July 24, 2020

**<u>CERTIFICATE OF SERVICE</u>**

I, A. Michael Pratt, hereby certify that on July 24th, 2020, I caused a true and correct copy of the foregoing Proposed Democratic Intervenors' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and corresponding exhibits to be served on the following counsel of record for Plaintiffs, Defendants and other proposed Intervenors listed on the docket via the Court's ECF system.

_/s/ A. Michael Pratt_____
A. Michael Pratt

22