**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | : : : | |
| Plaintiffs, | : : : | NO. 2:20-cv-00966-NR |
| v. | : : : | |
| KATHY BOOCKVAR, et al., | : : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF THE BUCKS, CHESTER, MONTGOMERY, AND PHILADELPHIA**
**COUNTY BOARDS OF ELECTIONS TO DISMISS THE COMPLAINT**
**OR, IN THE ALTERNATIVE, TO ABSTAIN PENDING STATE-COURT RESOLUTION**
**OF STATE-LAW QUESTIONS**

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     PLAINTIFFS' ALLEGATIONS ........................................................................... 4

        A.     Allegations That Require Interpretation of the Pennsylvania Election Code ......... 4

               1.     What It Means to Deliver a Ballot to the "County Board of Election" ...... 4

               2.     Whether Election Administrators Must Reject Ballots Submitted
                      Without Secrecy Envelopes ......................................................................... 5

        B.     Allegations That Pennsylvania Statutory Limitations on Poll Watchers'
               Official Activities Are Unconstitutional ................................................................. 6

III.    ARGUMENT ........................................................................................................... 7

        A.     Plaintiffs' Claims Are Barred by the Doctrine of Sovereign Immunity ................. 7

        B.     The Court Should Abstain from Deciding the Federal Constitutional Claims
               Concerning Ballot-Delivery Locations and "Naked" Ballots Pending
               State-Court Determination of State Law ................................................................. 9

               1.     The Court Should Abstain Under *Pullman* ............................................... 10

               2.     The Court Should Abstain Under *Burford* ................................................. 12

               3.     The Court Should Decline to Exercise Jurisdiction Under
                      *Brillhart-Wilton* ........................................................................................ 13

        C.     Plaintiffs' Claims Fail for Lack of Article III Standing ......................................... 15

               1.     Plaintiffs' Allegations Fail to Establish Injury in Fact ............................. 15

               2.     Plaintiffs' Allegations Fail to Establish Causation .................................... 17

               3.     Plaintiffs' Allegations Fail to Establish Redressability ............................. 18

        D.     Plaintiffs' Poll Watcher Claims Should Be Dismissed for Failure to State a
               Claim ....................................................................................................................... 19

IV.     CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Democratic City Comm.*,
　288 F. Supp. 3d 597 (E.D. Pa. 2018) ...................................................................8, 9

*Alston v. Advanced Brands & Importing Co.*,
　494 F.3d 562 (6th Cir. 2007) .................................................................................17

*Ashwander v. Tenn. Valley Auth.*,
　297 U.S. 288 (1936)..................................................................................................9

*Baer v. Meyer*,
　728 F.2d 471 (10th Cir. 1984) ...............................................................................19

*Brethren Mut. Ins. Co. v. Hoffman*,
　No. 07-1817, 2008 WL 8958284 (M.D. Pa. Aug. 20, 2008) ..................................14

*Brillhart v. Excess Ins. Co. of Am.*,
　316 U.S. 491 (1942)................................................................................................13

*Burford v. Sun Oil Co.*,
　319 U.S. 315 (1943)...............................................................................3, 12, 13, 14

*Casey v. Clayton Cnty.*,
　No. 04-871, 2007 WL 788943, 2007 WL 788943 (N.D. Ga. Mar. 14, 2007) ...........7

*Chez Sez III Corp. v. Township of Union*,
　945 F.2d 628 (3d Cir. 1991).............................................................................10, 11

*Citizens for John W. Moore Party v. Bd. of Election Comm'rs of City of Chicago*,
　781 F.2d 581 (7th Cir. 1986) ...................................................................................8

*Cotz v. Mastroeni*,
　476 F. Supp. 2d 332 (S.D.N.Y. 2007)....................................................................19

*D.R. v. Middle Bucks Area Vocational Technical Sch.*,
　972 F.2d 1364 (3d Cir. 1992)..................................................................................15

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
　671 F. Supp. 2d 575 (D.N.J. 2009), *aff'd*, 673 F.3d 192 (3d Cir. 2012)................20

*Doe v. Quinones*,
　No. 17-719, 2018 WL 1955133 (W.D. Pa. Apr. 5, 2018)........................................7

*England v. La. State Bd. of Med. Exam'rs*,
    375 U.S. 411 (1964) ................................................................................9

*Harris v. Conradi*,
    675 F.2d 1212 (11th Cir. 1982) ...........................................................19

*Hunter v. Hamilton Cnty. Bd. of Elections*,
    850 F. Supp. 2d 795 (S.D. Ohio 2012) .................................................8

*Kelly v. Maxum Specialty Ins. Grp.*,
    868 F.3d 274 (3d Cir. 2017) ..................................................................9

*Lance v. Coffman*,
    549 U.S. 437 (2007) ..............................................................................15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .........................................................15, 17, 18, 19

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977) ...............................................................................7

*NAACP Phila. Branch v. Ridge*,
    No. 00-2855, 2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ..................9, 10, 12, 16

*NAACP v. Boockvar*,
    No. 364 MD 2020 (Pa. Commw. Ct.) ...................................................12

*Pennhust State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .................................................................................9

*Pennsylvania Democratic Party v. Boockvar*,
    No. 407 MD 2020 (Pa. Commw. Ct.) ...................................................12

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987) .................................................................................10

*Pierce v. Allegheny Cnty. Bd. of Elections*,
    324 F. Supp. 2d 684 (W.D. Pa. 2003) .............................................11, 13

*R.R. Comm. of Tex. v. Pullman Co.*,
    312 U.S. 496 (1941) ...................................................................... *passim*

*Reifer v. Westport Ins. Corp.*,
    751 F.3d 129 (3d Cir. 2014) ................................................................13

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) .............................................................15, 17

*Republican Party of Pa. v. Cortés*,
   218 F. Supp. 3d 396 (E.D. Pa. 2016) ............................................................... *passim*

*Riley v. Simmons*,
   45 F.3d 764 (3d Cir. 1995)...................................................................................13

*Shambach v. Bickhart*,
   845 A.2d 793 (Pa. 2004) .......................................................................................6

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..............................................................................................10

*State Auto Ins. Cos. v. Summy*,
   234 F.3d 131 (3d Cir. 2000)...........................................................................13, 14

*Trinsey v. Montgomery Cnty. Bd. of Elections*,
   No. 87-6975, 1988 WL 82877 (E.D. Pa. Aug. 4, 1988) ................................7, 21

*Welborn v. Internal Revenue Serv.*,
   218 F. Supp. 3d 64 (D.D.C. 2016) .......................................................................17

*Woodard v. Andrus*,
   419 F.3d 348 (5th Cir. 2005) ...............................................................................15

*Wozniak v. Adesida*,
   932 F.3d 1008 (7th Cir. 2019) ...............................................................................9

**Statutes**

25 Pa. Stat. § 2602(c), (q) .............................................................................................5

25 Pa. Stat. § 2602(q)....................................................................................................5

25 Pa. Stat. § 2606 ........................................................................................................5

25 Pa. Stat. § 2687 ......................................................................................................19

25 Pa. Stat. § 2726(c) ....................................................................................................5

25 Pa. Stat. §§ 2727-2729.1 ..........................................................................................5

25 Pa. Stat. § 3050(a.4)(5)(ii)(C) ..................................................................................6

25 Pa. Stat. § 3146.6(a) .............................................................................................4, 5

25 Pa. Stat. § 3146.8 ......................................................................................................6

25 Pa. Stat. § 3146.8(g)(2) ..........................................................................................20

25 Pa. Stat. § 3150.16 ...............................................................................................4, 5

42 U.S.C. § 1983 .......................................................................................................15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................19

Federal Rule of Civil Procedure 57 .........................................................................14

U.S. Const. amend. XI ........................................................................................3, 7, 8, 9

## I.    INTRODUCTION

The 2020 primary election presented Pennsylvania election officials with an unprecedented series of challenges. State and local election officials, in the midst of implementing an overhaul of Pennsylvania's election code, were also required to respond to the challenges posed by the COVID-19 pandemic and, in some parts of the Commonwealth, civil unrest that closed some election offices and impeded travel. Pennsylvania's state and local governments met these historic challenges with historic efforts. The Pennsylvania General Assembly and Governor Tom Wolf worked together, for example, to pass and sign Act 12 of 2020 (Act of Mar. 27, 2020 (P.L. 41, No. 12)), which put special procedures in place for the primary election. The boards of elections of many Pennsylvania counties, including those of Bucks, Chester, Montgomery and Philadelphia Counties ("Movants"), made herculean efforts to handle an unprecedented surge of mail-in and absentee ballot applications. (Compl. ¶ 99.)

These efforts paid off, and the primary election went relatively smoothly in Movants' counties and elsewhere. (Compl. ¶ 100.) In their Complaint, Plaintiffs do not deny this, and do not allege a single instance of fraud in the primary election. Plaintiffs take issue, however, with three election administration practices—innocuous on their face—that some counties allegedly followed in the election. Plaintiffs allege that some or all Defendants:

- set up locations outside board of elections offices for return of mail-in and absentee ballots;

- put ballots that were returned without secrecy envelopes into secrecy envelopes, and counted them, rather than throwing them away; and

- complied with the Pennsylvania statute that restricts poll watchers' official activities to polling places in the poll watchers' counties of residence.

To turn these three practices—on their face, unremarkable and reasonable tools to administer an orderly election and protect the franchise—into allegations of constitutional harm, Plaintiffs ask the Court to draw a series of increasingly speculative conclusions.

First, Plaintiffs allege that the Department of State and boards of elections will follow the same practices in the general election that they did in the primary. Second, Plaintiffs allege that the first two practices—setting up ballot return locations and providing secrecy envelopes—violate Pennsylvania election law, and that the third practice, limiting the scope of poll watchers' authority, is unconstitutional. Third, Plaintiffs leap to allegations of "fraud"—yet do not identify a single instance of fraud stemming from the use of satellite delivery locations or counting of ballots received without secrecy envelopes. They also do not allege that fraud will result from these practices in the 2020 general election, or even that fraud is likely to occur. Rather, Plaintiffs contend that "fraud" is lurking in the wings, because—they allege—the challenged practices increase the "opportunity" for a range of potential bad acts by unidentified third-party "fraudsters," who might try to duplicate, eliminate, or alter votes, or simply "sow chaos." (Compl. ¶ 1.) Fourth, Plaintiffs argue, this "opportunity" means that some unspecified voters' votes are at risk of being "diluted" in some way. (*Id.* ¶ 4.) Finally, Plaintiffs ask the Court to conclude that the alleged potential that an unidentified fraudster could take unspecified actions that could dilute an unknown voter's vote violates these Plaintiffs' constitutional rights.

According to Plaintiffs, this speculative and fragile chain of conclusions requires the Court to assume the grave responsibility of prospectively altering state and local election administration. Plaintiffs bootstrap alleged Pennsylvania statutory violations into federal constitutional claims, requiring interpretation of novel issues of Pennsylvania law. Despite the fact that these issues are already pending before a Pennsylvania state court, Plaintiffs ask the

Court to issue a declaratory judgment as to the meaning of Pennsylvania Election Code provisions. Plaintiffs then go further: they ask the Court to overrule the decisions of the Pennsylvania officials who are charged with preventing election fraud while running a safe, secure, and fair election in the age of COVID-19. Were the Court to accept Plaintiffs' recommendations, it would need to tinker with a complex regulatory system, upend Movants' election planning process weeks before an important election, and take steps that will likely make it difficult (or even impossible) for at least some Pennsylvania voters to cast their ballots, all while taking into account the status of the pandemic, the Post Office's mail delivery times, and all other factors that might determine what measures are necessary to protect the franchise.

The Court should reject Plaintiffs' invitation to insert itself into the administration of Pennsylvania election laws. First, this Court *cannot* decide the state-law claims because the Eleventh Amendment immunizes both the Secretary of the Commonwealth (the primary defendant) and each of the defendant boards of elections from state-law claims brought in federal courts. Indeed, the county boards are immune from *all* of Plaintiffs' claims (state or federal). Second, even if the Court had jurisdiction to decide the state-law claims, abstention would be warranted because (a) the claims present unsettled state-law questions that could obviate the federal claims (*Pullman* abstention) and (b) federal-court resolution of those claims would disrupt Pennsylvania's effort to establish a coherent policy on a matter of important state concern (*Burford* abstention). Third, and independent of the first two considerations, it is well settled that federal courts should decline to exercise jurisdiction over claims seeking a declaratory judgment as to unsettled state law, particularly where, as here, the state-law questions are pending in a parallel state-court proceeding. Each of these doctrines is sufficient, by itself, to warrant abstention; taken together, they present an overwhelming case for the Court to stay its hand.

If and when the case proceeds, all of Plaintiffs' claims must also be dismissed because they fail every prong of the test for standing. First, the purported injury Plaintiffs seek to remedy—vote dilution through fraud—is hypothetical rather than actual and concrete. Second, even if the alleged harm existed, it would not fairly be traceable to any alleged conduct by Defendants. And third, the relief sought would not redress it. Finally, even apart from these standing defects, Plaintiffs' complaints about Pennsylvania's restrictions on poll watchers fail to state a claim as a matter of law. Indeed, these claims are nothing new. They largely duplicate those previously brought in and rejected by the Eastern District of Pennsylvania. *See Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396 (E.D. Pa. 2016). As Judge Pappert held in that case, the restrictions at issue are subject only to rational-basis review, and easily pass that test.

## II.     PLAINTIFFS' ALLEGATIONS

### A.     <u>Allegations That Require Interpretation of the Pennsylvania Election Code</u>

#### 1.     What It Means to Deliver a Ballot to the "County Board of Election"

The Election Code provides that absentee and mail-in ballots must be mailed "or deliver[ed] … in person to [the elector's] *county board of election*." 25 Pa. Stat. §§ 3146.6(a), 3150.16 (emphasis supplied). Plaintiffs interpret these provisions to mean that ballots must be delivered to the "office of [each] county board[] of elections." (Compl. ¶ 144.) Accordingly, Plaintiffs allege, certain county boards of elections violated the Election Code by permitting voters to hand-deliver their absentee and mail-in ballots to designated locations other than the "offices" of the county boards. But the statute nowhere expressly limits delivery to any particular location, and Plaintiffs point to no legal authority supporting their construction. It is far from clear why in-person delivery of ballots to the county board at satellite locations established by the county board—including to alleged "drop boxes" set up and controlled by the board to receive ballots, or to board employees who travel around the county to collect ballots on behalf

of the board—would not constitute "deliver[y] … in person to [the] county board of election." Put simply, Plaintiffs' proposed statutory interpretation is novel and untested.

The same is true with respect to the statutory notice requirements and site criteria Plaintiffs invoke "[i]n the alternative" to their argument that the Election Code bars delivery of ballots to satellite board locations. (*See* Compl. p. 55 ¶ B.) The requirements Plaintiffs cite apply to "polling places." *See* 25 Pa. Stat. §§ 2606, 2726(c), 2727-2729.1, *cited by* Compl. ¶¶ 106, 108, 193-194. But 25 Pa. Stat. §§ 3146.6(a) and 3150.16 do not require that voted ballots be returned to a "polling place," but rather to the "county board." Those terms are separately defined in the Election Code. 25 Pa. Stat. § 2602(c), (q). Further, it is not at all clear why the location to which an already voted absentee or mail-in ballot is delivered should be deemed a "polling place," which is defined as "the room provided in each election district for voting at a primary or election." 25 Pa. Stat. § 2602(q). Once again, no court has yet addressed this question.

In Plaintiffs' view, Defendants' use of certain ballot-delivery locations not only contradicts the Election Code; it also somehow "increase[s] the potential for ballot fraud or tampering," thereby violating, Plaintiffs say, the Pennsylvania and U.S. Constitutions. (Compl. ¶ 155; *accord id.* ¶¶ 164, 171-72, 198, 202.)

## 2.    Whether Election Administrators Must Reject Ballots Submitted Without Secrecy Envelopes

Pennsylvania law provides that absentee and mail-in voters should place their completed ballot inside an envelope that does not disclose the voter's identity, and then place that envelope inside another envelope that bears the voter's identifying information and signature. According to Plaintiffs, if a voter inadvertently mails or delivers a ballot with the exterior envelope but not the secrecy envelope, Pennsylvania law requires election administrators to discard the ballot, disenfranchising the voter. (*See id.* ¶ 91.) Plaintiffs allege that one county board, Philadelphia's,

nonetheless counted such ballots in the primary election, and that some unspecified county boards may count them in the future. (*Id.* ¶ 113.) Plaintiffs seek an order barring all county boards from counting such ballots.

Once again, no court has considered Plaintiffs' proposed statutory interpretation. Notably, although the Election Code contains express language directing boards of election not to count *provisional* ballots that are not in a secrecy envelope, *see* 25 Pa. Stat. § 3050(a.4)(5)(ii)(C), no such express language is found in the portions of the statute applicable to mail-in or absentee ballots, *see* 25 Pa. Stat. § 3146.8. And, significantly, the Pennsylvania Supreme Court has "refuse[d] to read an all-out prohibition into [an Election Code provision] where one is not explicitly required, particularly given th[e] Commonwealth's longstanding policy to protect the elective franchise." *Shambach v. Bickhart*, 845 A.2d 793, 802 (Pa. 2004).

Just as with their claims regarding ballot-delivery locations, Plaintiffs attempt to stack speculative constitutional claims on top of their statutory ones. Their theory is the same: they allege that counting ballots returned without a secrecy envelope "increase[s] the potential for ballot fraud or tampering." (Compl. ¶ 155; *accord* ¶¶ 164, 171, 172.)

**B.**     **<u>Allegations That Pennsylvania Statutory Limitations on Poll Watchers' Official Activities Are Unconstitutional</u>**

As the Complaint acknowledges, Pennsylvania law "creates the position of poll-watcher" and allows political candidates and parties to appoint them. (*Id.* ¶ 50.) Under the Election Code, (a) "poll watchers may only serve in their county of residence" (*id.* ¶ 3) and, (b) although they are allowed to appear at polling places, at any public session of the county board of elections, and at any computation and canvassing of election returns (*id.* ¶ 58), Pennsylvania law does not authorize them to be "present at locations that are used to collect mail-in and absentee ballots … or the pre-canvass meeting of such voted absentee and mail-in ballots" (*id.* ¶ 138). Here, too,

Plaintiffs' constitutional claims are predicated on speculation: Plaintiffs contend the restrictions on poll workers "foster[] an environment that encourages ballot fraud or tampering" (*id.* ¶ 180), thereby supposedly infringing Plaintiffs' right to vote under the U.S. and Pennsylvania Constitutions (*id.* ¶¶ 181-82, 186).[1]

## III.   ARGUMENT

### A.   Plaintiffs' Claims Are Barred by the Doctrine of Sovereign Immunity

As an initial matter, this Court lacks jurisdiction to adjudicate the claims against the county boards of election by virtue of Eleventh Amendment sovereign immunity. The test for whether such entities are entitled to sovereign immunity is whether they are acting as "an arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Courts have repeatedly found that county boards of election—including, specifically, Pennsylvania county boards—are entitled to Eleventh Amendment immunity, at least where, as here, the claims against them challenge their alleged conduct in administering federal and state-wide elections. *Trinsey v. Montgomery Cnty. Bd. of Elections*, No. 87-6975, 1988 WL 82877, at *1 (E.D. Pa. Aug. 4, 1988) (claims against Pennsylvania county boards of election are "barred by the Eleventh Amendment"); *accord Casey v. Clayton Cnty.*, No. 04-871, 2007 WL 788943, 2007

---

[1] Puzzlingly, the Complaint also contains multiple allegations that have no connection to the practices at issue. (*See, e.g.*, Compl. ¶ 102 (alleging that "an issue with the State's SURE system … caus[ed] the printing and mailing of duplicate mail-in and absentee ballots to [an unspecified number of] voters" in Allegheny County during the June primary election, and that "of the more than 280,000 mail-in ballots requested" in that county, "only 75% of the ballots were received back"), *id.* ¶¶ 69, 70.) The inclusion of these allegations is only one of several ways in which the Complaint exemplifies "the 'shotgun pleading' approach that has been criticized by the … Third Circuit." *Doe v. Quinones*, No. 17-719, 2018 WL 1955133, at *9-10 (W.D. Pa. Apr. 5, 2018) (noting that one kind of "shotgun pleading" includes "immaterial facts not obviously connected to any particular cause of action"), *adopted by* 2018 WL 1951094 (W.D. Pa. Apr. 25, 2018). The Complaint also "assert[s] multiple claims against multiple defendants without specifying … which of the defendants the claim is brought against." 2018 WL 1955133, at *10 (internal quotation marks omitted). (*See, e.g.*, Compl. ¶ 153 (alleging that "some, but not all" county boards of elections count ballots returned without secrecy envelopes).)

WL 788943, at *8 (N.D. Ga. Mar. 14, 2007) ("there can be little doubt" that a Georgia county board of election "acts as an arm of the state for purposes of conducting elections in general" and is thus entitled to "Eleventh Amendment immunity" in that role); *Hunter v. Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 801 (S.D. Ohio 2012) (Ohio county board of election, which "is created by statute" and "vested with broad powers to manage the conduct of elections on behalf of the State and does so under the guidance of the Secretary of State," "functions as an arm of the State with respect to its review and counting of provisional ballots"); *see also Citizens for John W. Moore Party v. Bd. of Election Comm'rs of City of Chicago*, 781 F.2d 581, 584 (7th Cir. 1986) (Easterbrook, J., dissenting from decision to certify state-law question to Illinois Supreme Court) (explaining that city board of election, which "is constituted under state rather than municipal law and enforces state statutes," was an arm of the state for immunity purposes).

In accordance with this decisional authority, Movants—who are constituted under state law, enforce state statutes, and exercise jurisdiction to conduct elections on behalf of the Commonwealth (the elections at issue in this case are federal presidential and congressional elections) under the guidance of the Secretary of the Commonwealth—are arms of the state under the Eleventh Amendment. Furthermore, because Plaintiffs have named only the boards themselves and not individual officials, the boards are immune from *all* of Plaintiffs' claims, whether based on state or federal law. *See Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 625-26 (E.D. Pa. 2018) (explaining that the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), which creates a narrow exception to Eleventh Amendment sovereign immunity for "suits against state officials in their official capacity seeking injunctive relief to end ongoing violations

of federal law," does not apply where plaintiffs have sued only agencies and not individual

officials).[2]

> **B.**     **The Court Should Abstain From Deciding the Federal Constitutional Claims Concerning Ballot-Delivery Locations and "Naked" Ballots Pending State-Court Determination of State Law**

Although Plaintiffs' claims regarding ballot-delivery locations and "naked" ballots

depend entirely on their interpretation of provisions of the Election Code, they have not asked

the Pennsylvania courts to construe these provisions. Instead, they seek federal-court resolution

of state-law issues (*see* Complaint pp. 54-55 ¶¶ A-C), tacking on purported federal constitutional

claims in an attempt to create federal jurisdiction. But "a constitutional suit is not a way to

enforce state law through the back door." *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir.

2019). In addition, it is well settled that federal courts will not "decide questions of a

constitutional nature unless absolutely necessary to a decision of the case." *Ashwander v. Tenn.*

*Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). By the same token, state

"statutes 'should be exposed to state construction or limiting interpretation before the federal

courts are asked to decide upon their constitutionality.'" *NAACP Phila. Branch v. Ridge*, No. 00-

2855, 2000 WL 1146619, at *6 (E.D. Pa. Aug. 14, 2000) (quoting *England v. La. State Bd. of*

*Med. Exam'rs*, 375 U.S. 411, 416 n.7 (1964)). For several related reasons, that is plainly the

proper course here.[3]

---

[2] As Secretary Boockvar argues in her Motion to Dismiss (*see* ECF 185, at 10-12), notwithstanding *Ex parte Young*, sovereign immunity bars the Complaint's claims against her as well. *See Acosta*, 288 F. Supp. 3d at 626-27 (citing *Pennhust State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, 122 (1984)).

[3] As discussed above, under the Eleventh Amendment, this Court lacks jurisdiction to adjudicate *any* of the Complaint's claims against Movants, and lacks jurisdiction to adjudicate any of the state-law claims against Secretary Boockvar. Nonetheless, this Court may decide to abstain before resolving the sovereign-immunity question. *See Kelly v. Maxum Specialty Ins. Grp.*, 868

### 1. The Court Should Abstain Under *Pullman*

Even if this Court had jurisdiction over Plaintiffs' claims, abstention would be warranted under the *Pullman* doctrine. *See R.R. Comm. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

> The *Pullman* concern is that when federal courts interpret state statutes in a way that raises federal constitutional questions, without the benefit of state-court consideration, "a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless."

*NAACP Phila. Branch*, 2000 WL 1146619, at *4 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)). "This concern has special significance in this case, where the federal constitutional question might be eliminated by securing a Pennsylvania court's determination of an unresolved question of its local law." *Id.*

A court's *Pullman* analysis first considers "whether three special circumstances exist:" (1) "[u]ncertain issues of state law underlying the federal constitutional claims brought in federal court"; (2) "[s]tate law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims"; and (3) "[a] federal court's erroneous construction of state law would be disruptive of important state policies." *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991).

First, as discussed in Section II above, none of the statutory-interpretation questions presented by Plaintiffs has been decided by any court, and there is a substantial basis to contest the interpretations Plaintiffs proffer. The second requirement under *Pullman* is also met: "If [a] state court concurs with Plaintiff's interpretation of the [Election Code]" regarding ballot-delivery locations and naked ballots, "the basis for [Plaintiffs'] constitutional claim[s]" on these

---

F.3d 274, 281 n.3 (3d Cir. 2017) (discussing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)).

issues "would be eliminated." *Fuentes*, 207 F. Supp. 3d at 450 (internal quotation marks omitted). This is, if anything, even more true to the extent that Plaintiffs assert equal protection claims based on alleged variations in county practices. (*See* Compl. ¶¶ 32, 116.) The premise of such claims is that, although the federal Constitution might not be offended by any *particular* resolution of the statutory-interpretation questions, it could still require that there *be* a clear resolution so that practices are consistent across counties. But in that case, principles of federalism and comity would plainly require that a state court—not a federal court—decide what that state-law resolution should be. *See Pierce v. Allegheny Cnty. Bd. of Elections*, 324 F. Supp. 2d 684, 704 (W.D. Pa. 2003) (abstaining where state-court construction of absentee-ballot provision at issue could obviate need to decide equal protection claim).

The third prong of the *Pullman* test is also satisfied. Abundant precedent stands for the proposition that "an erroneous interpretation of [the Election Code] would be gravely detrimental to important Pennsylvania interests concerning state election procedures." *Fuentes*, 207 F. Supp. 3d at 450 (collecting cases); *accord, e.g.*, *Pierce*, 324 F. Supp. 2d at 703-04 (noting that "an erroneous construction of the absentee ballot provision of the election code could disrupt extremely important state policies concerning voting rights"). "An erroneous decision so temporally close to the election"—when election officials are working, in the face of an ongoing pandemic, to finalize electoral procedures and preparations—would only exacerbate the disruptive effect. *See Fuentes*, 207 F. Supp. 3d at 450.

"[A]bsent significant reasons to the contrary, abstention is generally proper once it [has been] ascertained that the [three] threshold 'special circumstances' have been fulfilled." *Chez Sez*, 945 F.2d at 633. No such countervailing reasons exist here. An adequate state-court remedy is available to Plaintiffs. Notably, although "[t]here need not be a pending state court action in

order for a federal court to invoke *Pullman*," *Fuentes*, 207 F. Supp. 3d at 448, an action raising the same statutory questions presented here is already pending in the Pennsylvania Commonwealth Court. *See* ECF 76, Ex. A to Response of the Bucks, Chester, and Montgomery County Boards of Elections to Plaintiffs' Mot. for a Speedy Declaratory Judgment Hearing and Expedited Discovery (Petition in *Pennsylvania Dem. Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct.)) (raising same statutory issues raised here); *see also id.*, Ex. B (Petition in *NAACP v. Boockvar*, No. 364 MD 2020 (Pa. Commw. Ct.)) (seeking, *inter alia*, order requiring county boards to provide satellite ballot return locations).

Two of the Plaintiffs here have already intervened in the *NAACP* case. *See* Exhibit 1 (Motion to Intervene and proposed Preliminary Objections filed on July 20, 2020). Nothing prevents Plaintiffs from moving to intervene in *Pennsylvania Democratic Party* as well. Indeed, there is "no doubt that Plaintiff[s] [were] well aware of [their] ability to address the above-described state law arguments in Commonwealth Court, and inexplicably chose not to do so." *Fuentes*, 207 F. Supp. 3d at 449; *see also id.* at 451 (holding Plaintiff had "meaningful recourse in state court" where "the election remain[ed] over two months away"). In fact, for reasons recognized by the *Fuentes* court, the relevant "equitable considerations" only underscore the appropriateness of abstention here: "Plaintiff[s] [are] asking this federal District Court to find that state officials have wrongly interpreted state law, and to replace their interpretations with Plaintiff's own. This role is not [a federal court's] to assume where, as here, an alternative appropriately exists with the Pennsylvania state courts." *Id.* at 452.

### 2.    The Court Should Abstain Under *Burford*

The *Burford* doctrine provides an independent basis for abstention. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "The two-step analysis in *Burford* … requires the district court: (1) to determine whether 'timely and adequate state-court review' is available"; and "(2) if it is,

to decide whether 'the case before it involves difficult questions of state law impacting on the state's public policy or whether the distinct court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern.'" *Pierce*, 324 F. Supp. 2d at 703 (quoting *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)). Both prongs of the test are satisfied here. As noted above, timely and adequate review of the Election Code questions is available in the Pennsylvania Commonwealth Court. And federal-court decision of those unsettled questions would threaten to disrupt the important state public policy embodied in Pennsylvania's complex election administrative regime. *See Republican Party*, 218 F. Supp. 3d at 402 (noting that "[t]he United States Constitution reserves to the states the power to regulate elections" and that Pennsylvania has exercised this power by enacting a "comprehensive" and "complex" election code); *Fuentes*, 207 F. Supp. 3d at 450 (federal-court decision of election code questions "would disrupt important state policies"). Abstention is thus warranted under *Burford* as well. *See Pierce*, 324 F. Supp. 2d at 703 (abstaining based on *Pullman* but finding "the *Burford* doctrine" was also "instructive").

### 3.   The Court Should Decline to Exercise Jurisdiction Under *Brillhart-Wilton*

Where, as here, plaintiffs ask a federal court for a declaratory judgment as to state-law questions, and there is a parallel state-court proceeding presenting the same questions, the federal court should generally decline to exercise jurisdiction. *See State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133-36 (3d Cir. 2000) (discussing *Wilton*, 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144-45 (3d Cir. 2014) ("The existence of pending parallel state proceedings," while not a prerequisite, "militates significantly in favor of declining jurisdiction."). As the Third Circuit has explained: "In order to maintain the proper relationship between federal and state courts, it is important that

district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters." *Summy*, 234 F.3d at 136. This *Brillhart-Wilton* doctrine derives from the fact that the "Declaratory Judgment Act confers a discretion on the courts rather than an absolute right on litigants." *Id.* (citing *Wilton*, 515 U.S. at 287). Accordingly, federal-court refusal to entertain declaratory judgment claims can be appropriate even in circumstances that would not warrant *Pullman* or *Burford* abstention. *Wilton*, 515 U.S. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). The *Brillhart-Wilton* doctrine is broader than abstention doctrines in another way: there is no requirement that the state-law question at issue be uncertain. *Brethren Mut. Ins. Co. v. Hoffman*, No. 07-1817, 2008 WL 8958284, at *2 (M.D. Pa. Aug. 20, 2008) (citing *Summy*, 234 F.3d at 136).

The *Brillhart-Wilton* doctrine is particularly relevant now that Plaintiffs, seeking to avoid the demanding standard applicable to preliminary injunction proceedings (*see* ECF 6 ¶ 13), have successfully moved to convert this matter into an expedited declaratory judgment proceeding under Federal Rule of Civil Procedure 57. (*See* ECF 164 (Order).) And under that doctrine, it is clear that Plaintiffs' state-law declaratory judgment claims—the resolution of which may moot the related federal constitutional claims—should be decided by the Pennsylvania courts. A parallel proceeding is pending in the Commonwealth Court, raising the same Election Code questions and involving all of the same Defendants. *See supra* page 12. Plaintiffs can easily move to intervene and participate. For this reason, too, this case should be stayed to allow the Pennsylvania courts to resolve the Complaint's core claims about the proper interpretation of Pennsylvania statutes.

14

C.    **Plaintiffs' Claims Fail for Lack of Article III Standing**

If and when this Court reaches Plaintiffs' constitutional claims, it should dismiss them. It is hornbook law that "a violation of a state statute alone is not cognizable under [42 U.S.C.] § 1983" (which provides the purported cause of action for Plaintiffs' federal constitutional claims) "because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *accord D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1375 (3d Cir. 1992). Plaintiffs' constitutional theory here is that the alleged practices they challenge will allow fraud and vote dilution. Indeed, the bogeyman of fraud stalks the entire Complaint; the vague specter of fraud and vote dilution is the alleged injury on which all of the Complaint's counts are based. (*See, e.g.*, ¶¶ 155, 163, 172, 180, 186, 195, 203.) Plaintiffs' allegations, however, fail to establish the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), "which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability," *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

1.    **Plaintiffs' Allegations Fail to Establish Injury in Fact**

Plaintiffs' allegations satisfy none of these elements. A cognizable "injury in fact" requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). "Allegations of 'possible future injury' are not sufficient …." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). "*A plaintiff therefore lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties.*" *Id.* (citing *Lujan*, 504 U.S. at 564) (emphasis added). But that is precisely the type of "injury" Plaintiffs allege here: the indefinite risk that unknown fraudsters may, in the future, commit voting fraud by somehow exploiting (a) the ability to deliver ballots to the county boards

at locations other than their offices, (b) the fact that "naked" ballots received by county boards are "clothed" in secrecy envelopes and later removed and counted during the canvassing process, and (c) the enforcement of Pennsylvania statute limiting poll watchers to polling places in their county of residence.[4]

Notably, despite Plaintiffs' alarmist rhetoric, the Complaint does not identify a single instance of voter fraud from the June 2020 primary election (the only election in which the county boards allegedly used satellite delivery locations or allegedly counted ballots received outside of secrecy envelopes). In fact, the lone irregularity that Plaintiffs could find, 40 instances of "double voting," is expressly acknowledged to be "not fraud" and is not tied to the use of particular ballot-delivery locations in any way. (Compl. ¶ 111.) These allegations are manifestly insufficient to show an imminent, concrete injury in fact.

With respect to their poll-watcher allegations, Plaintiffs rely on the conclusory assertion that simply because there is a registration gap between the number of Democrats and Republicans in some counties (*id.* ¶¶ 129-130), the restriction of poll watchers to their counties of residence will make it "difficult or functionally impracticable for candidates and parties to have poll watchers at all locations" ballots are cast in the November 2020 election (*id.* ¶ 180). The conclusion does not follow from the premise. And insofar as Plaintiffs complain about the prohibition on staffing poll watchers at certain ballot-delivery locations, the Complaint fails, as noted above, to allege any actual voter fraud, or indication of imminent voter fraud, in

---

[4] In their proposed Preliminary Objections in the *NAACP* case, two of this case's Plaintiffs assert that the Commonwealth Court should dismiss that case on ripeness grounds because "Petitioner's requested relief seeks to address alleged injuries that might—but might not—occur. Petitioner does not allege any facts to show that Petitioner or its members are likely to suffer a constitutional deprivation. That Petitioner can speculate … does not give rise to a cause of action." (Exhibit 1, Ex. A ¶¶ 23-24.) Speculative claims are no more actionable in this Court than they are in Pennsylvania state court.

connection with the use of such locations. Further, and once again, Plaintiffs' alleged injury depends on the hypothetical future acts of unidentified third parties. In sum, Plaintiffs' allegations present a textbook example of a conjectural and hypothetical—and thus jurisdictionally inadequate—injury.

The Third Circuit's *Reilly* decision is particularly instructive because it, too, involved a purported injury of possible future fraud by third parties allegedly caused by a defendant's insufficient security measures. There, a hacker obtained the plaintiffs' confidential personal information in the custody of the defendant. The Third Circuit held that plaintiffs' "allegations of hypothetical, future injury are insufficient" because they "rely on speculation that the hacker … intends to commit future criminal acts … and … is able to use [plaintiffs'] information by making unauthorized transactions." *Reilly*, 664 F.3d at 42; *accord Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 77 (D.D.C. 2016) ("the theory that [Plaintiffs] suffer an increased threat of future identity theft and fraud as a result of the IRS security breach" fails to establish injury in fact because it is "entirely speculative and depends on the decisions and actions of one or more independent, and unidentified, actor(s)"). What the *Reilly* Court said is also true here: "Unless and until these conjectures come true, [the plaintiffs] have not suffered any injury." *Reilly*, 664 F.3d at 42.

### 2.    Plaintiffs' Allegations Fail to Establish Causation

For similar reasons, Plaintiffs also fail to establish the causation element of standing, which requires that "the injury be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S at 560 (internal quotation marks and alterations omitted). Here, any hypothetical voting fraud would be caused by third parties' illegal conduct, not any of the alleged county-board practices challenged in the Complaint. *See, e.g.*, *Alston v. Advanced Brands & Importing Co.*, 494 F.3d

562, 565 (6th Cir. 2007) (plaintiffs lacked standing to challenge advertising inducing minors to drink alcohol illegally because "the causal connection between the defendants' advertising and the plaintiffs' alleged injuries is broken by the intervening criminal acts of the third-party sellers and the third-party, underage purchasers").

Even putting that aside, the Complaint offers no basis to conclude that the existence, or not, of any of the challenged practices would ever be the difference as to whether fraud occurred. The Complaint contains no allegation that any ballot-delivery location is any more susceptible than mailboxes to ballot harvesting, ballot destruction, or any other form of voter fraud. Given the ubiquity of mailboxes as compared to ballot-delivery locations, the Complaint provides no reason to conclude that Plaintiffs' hypothetical, conjectural injury would be prevented by elimination of satellite locations for in-person delivery of ballots. In the same vein, the Complaint says nothing whatsoever to explain how discarding ballots returned by citizens duly registered and eligible to vote—simply because they were not enclosed in a nested security envelope—will do anything to prevent fraud. And the Complaint presents no reason to conclude there is any concrete, imminent threat of fraud that would (a) be thwarted by eliminating the challenged poll-watching restrictions but (b) occur if they remain in place. *See Republican Party*, 218 F. Supp. 3d at 406 ("Plaintiffs' preoccupation with the role of poll watchers to deter purported voter fraud disregards other aspects of the regulatory framework the Commonwealth designed to ensure ballot integrity and thus prevent vote dilution."). Plaintiffs' alleged injury is not "fairly traceable" to the practices they challenge.

### 3.    Plaintiffs' Allegations Fail to Establish Redressability

For essentially the same reasons, Plaintiffs cannot satisfy the redressability requirement, which requires that it "be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561. Put simply, the Complaint provides

no reason to conclude that the fraud they imagine would likely (as opposed to conjecturally) be redressed by any of the relief they seek. *See id.* at 571 (redressability element was lacking where "it is entirely conjectural whether the nonagency activity that [allegedly] affects respondents will be altered … by the agency activity they seek to achieve"). There is no standing.

### D.    Plaintiffs' Poll Watcher Allegations Fail to State a Claim for Relief

Even apart from the lack of standing, Plaintiffs' poll-watcher allegations fail to state a claim for relief under Federal Rule 12(b)(6). As numerous courts have held, poll watching is not constitutionally protected by the right to vote or otherwise. *See, e.g.*, *Harris v. Conradi*, 675 F.2d 1212, 1216 n.10 (11th Cir. 1982); *Baer v. Meyer*, 728 F.2d 471, 476 (10th Cir. 1984); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 364 (S.D.N.Y. 2007); *Republican Party*, 218 F. Supp. 3d at 414 (observing, in rejecting a constitutional challenge to 25 Pa. Stat. § 2687 nearly identical to the one Plaintiffs bring here, that "[b]ecause the Pennsylvania Election Code, not the United States Constitution, grants parts the ability to appoint poll watchers, the state is free to regulate their use"). This effectively ends the inquiry. Because the challenged statutory restrictions on poll watching "place[] no burden on Plaintiffs' constitutional rights, [they] need only withstand rational-basis review." *Republican Party*, 218 F. Supp. 3d at 409. As the *Republican Party* court recognized, there is plainly "a rational basis for Section 2687(b)'s requirement that poll watchers be qualified electors in the county in which they work": "The legislature's decision to allow county election officials to credential only poll watchers from their own county is rationally related to the state's interest in maintaining its county-run election system; each county election official is tasked with managing credentials for a discrete part of the state's population." *Id.*

There is also a rational basis for restricting poll watchers to "polling places" and not allowing them to "watch" all ballot-delivery locations. This limitation ensures that poll watchers can be supervised by election officials and diminishes the risk that poll watchers will

inappropriately challenge or intimidate voters. As Plaintiffs well know, that threat is far from abstract: From 1982 until 2017, the Republican National Committee was subject to a consent decree settling allegations that, *inter alia*, it "intimidated voters on Election Day by posting off-duty sheriffs and policemen … at polling places in minority precincts." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 671 F. Supp. 2d 575, 579 (D.N.J. 2009), *aff'd*, 673 F.3d 192 (3d Cir. 2012).[5]

Plaintiffs' poll-watcher allegations thus fail to state a claim under the federal or Pennsylvania Constitutions. *See* 218 F. Supp. 3d at 417 (noting that the analysis of Plaintiffs' claims for relief "under the United States Constitution applies to their state constitutional arguments as well"[6]).

## IV.   CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court dismiss all claims in the Complaint with prejudice or, in the alternative, dismiss Counts IV and V of the Complaint with prejudice and stay the claims asserted in Counts I-III and VI-VII pending a final ruling by the Pennsylvania judiciary on the proper construction of the Election Code provisions at issue. *See Fuentes*, 207 F. Supp. 3d at 453 (abstaining under *Pullman* and therefore staying the case "pending an adjudication from the state court on the pertinent matters of Pennsylvania law").

---

[5] Plaintiffs also seem to complain that poll watchers are not permitted to attend board of election meetings "pre-canvassing" absentee and mail-in ballots. (Compl. ¶¶ 134, 138-139.) As the Complaint admits, however, the Election Code authorizes each candidate and political party to designate a "representative" who can be present during pre-canvassing meetings. (*Id.* ¶ 93 (citing 25 Pa. Stat. § 3146.8(g)(2).) The Complaint makes no attempt to explain how this procedure is in any way inadequate.

[6] The *Republican Party* plaintiff brought claims based on the same Pennsylvania Constitution provisions as those at issue here, including the guarantee of free speech, equal protection, and free and equal elections. *See* Complaint ¶¶ 8–9, *Republican Party of Pa. v. Cortes*, No. 16-5524 (E.D. Pa. Oct. 21 2016) (ECF 1).

Respectfully submitted,

Dated: July 24, 2020

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By:    */s/ Mark A. Aronchick*
        Mark A. Aronchick
        Michele D. Hangley
        John B. Hill*
        One Logan Square, 27th Floor
        Philadelphia, PA 19103
        Telephone: (215) 496-7050
        Email: maronchick@hangley.com

*Counsel for Bucks, Chester, Montgomery, and
Philadelphia County Boards of Elections*

*\* Pro hac vice motion to be filed*

21