**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:20-cv-00966-NR |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) ) ) ) ) | Judge J. Nicholas Ranjan |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
PROPOSED DEFENDANT-INTERVENORS CITIZENS FOR
PENNSYLVANIA'S FUTURE AND SIERRA CLUB**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1
BACKGROUND ...................................................................................................................1
LEGAL STANDARD.............................................................................................................1
ARGUMENT .........................................................................................................................2
I.  PLAINTIFFS FAIL TO ALLEGE ANY CONNECTION BETWEEN THEIR
    ALLEGED INJURY AND THE REQUESTED RELIEF.................................................2
    A.  The Complaint Does Not Allege That Additional Ballot Drop-Off
        Locations Increase Voting Fraud ............................................................................2
    B.  The Complaint Does Not Allege That County Election Boards' Standards
        On The Marks On The Outside Of Absentee Or Mail-In Ballots Increase
        Voting Fraud ...........................................................................................................4
    C.  The Complaint Does Not Allege That Pennsylvania's Long-Standing
        Requirement That Electors Watch Polls In Their Own County Increases
        Voting Fraud ...........................................................................................................5
II. PLAINTIFFS HAVE NOT ESTABLISHED ANY CONSTITUTIONAL RIGHT
    THAT COULD HAVE BEEN INFRINGED ....................................................................6
III. PLAINTIFFS HAVE NOT ESTABLISHED ANY VIOLATION OF STATE
    LAW OR THE ELECTIONS CLAUSE............................................................................9
CONCLUSION.....................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Anderson v. United States*,
 417 U.S. 211 (1974) .......................................................................................................... 7

*Ariz. St. Legislature v. Ariz. Indep. Redistricting Comm'n*,
 135 S. Ct. 2652 (2015) .................................................................................................... 13

*Baldwin v. Cortés*,
 378 F. App'x 135 (3d Cir. 2010) ....................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .......................................................................................................... 1

*Ex parte Siebold*,
 100 U.S. 371 (1879) .......................................................................................................... 7

*Gray v. Sanders*,
 372 U.S. 368 (1963) .......................................................................................................... 7

*Harris v. Bennett*,
 746 F. App'x 91 (3d Cir. 2018) ......................................................................................... 2

*N.J. Peace Action v. Obama*,
 379 F. App'x 217 (3d Cir. 2010) ....................................................................................... 3

*Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*,
 913 F.2d 64 (3d Cir. 1990) ............................................................................................ 2, 4

*Rep. Party of Penn. v. Cortés*,
 218 F. Supp. 2d 396 (E.D. Pa. 2016) ....................................................................... 5, 6, 8

*United States v. Saylor*,
 322 U.S. 385 (1944) .......................................................................................................... 7

*Smiley v. Holm*,
 285 U.S. 355 (1932) .................................................................................................. 12, 13

*W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*,
 712 F.3d 165 (3d Cir. 2013) .............................................................................................. 1

**Constitutional Provisions**

U.S. Const. art. I, sec ............................................................................................................. 8

**Additional Authorities**

Governor Steve Bullock, Office of the Governor of Montana, to Montanans, all officers and agencies of the State of Montana (Mar. 25, 2020).............................................................. 12

Idaho Secretary of State, "Secretary Lawrence Denney Announces May Primary Changes" (Apr. 1, 2020) ........................................................................................................... 11

Iowa Secretary of State, "Secretary Pate to Mail Absentee Ballot Request Form to Every Registered Voter" (Mar. 31, 2020) ....................................................................................... 11

Jennifer Learn-Andes, *With in-person voting still lkely, Luzerne County looking at fewer, regional polling places,* Times Leader (Apr. 22, 2020) ............................................................. 10

Jonathan Lai, *Pennsylvania held an election. We won't know the results for days. Here's what that means for November*, Phil. Inquirer (June 2, 2020) .................................................. 10

Julian Routh, *Allegheny County will send mail-in ballot applications to all registered voters,* Pittsburgh Post-Gazette (Apr. 17, 2020) ........................................................................... 10

Maryland Governor Proclamation (May 6, 2020) ........................................................................ 12

Max Martin*, Philly: Vote now by dropping your ballot into a special box at City Hall,* Billy Penn (May 26, 2020) ............................................................................................................ 4

Michigan Secretary of State's Office, "Benson: All Voters Receiving Applications to Vote by Mail," (May 19, 2020) ................................................................................................ 11

Nat'l Conf. of State Legislatures*, Voting Outside the Polling Place, Tbl. 9,* (Apr. 27, 2020) .................................................................................................................................................... 4

Nevada Secretary of State's Office, "Secretary Cegavske Announces Plan to Conduct the June 9, 2020 Primary Election by All Mail" (Mar. 24, 2020) ........................................... 12

New Jersey Governor Exec. Order No. 114, (May 15, 2020) ....................................................... 12

North Dakota Governor Exec. Order No. 2020-13 (Mar. 26, 2020) ........................................... 11

Pennsylvania Governor Exec. Order No. 2020-02 (June 1, 2020) .............................................. 10

Rhode Island Secretary of State, "*Secretary Gorbea Announces New Deadlines for Rhode Island Presidential Preference Primary*," (Mar. 30, 2020) ........................................... 11

## INTRODUCTION

As detailed in the motions to dismiss filed by Secretary of the Commonwealth Boockvar and the Proposed Democratic Intervenors (ECF Nos. 185 and 209) (the "Motions to Dismiss"), Plaintiffs' Complaint (ECF No. 4) ("Compl.") is fatally flawed. Even putting aside the serious jurisdictional issues canvassed in the Motions to Dismiss, the Complaint is littered with unsupported and conclusory allegations, fails to draw any plausible connection between the injunctive relief it asks this Court to issue and the injury it purports to address, and asserts claims which (to the extent they are even discernible) are not cognizable and legally deficient. While Proposed Defendant-Intervenors Citizens for Pennsylvania's Future and Sierra Club refer the Court to the numerous deficiencies catalogued in the Motions to Dismiss, they focus this proposed motion to dismiss on three specific defects in Plaintiffs' Complaint: its failure to adequately connect its conclusory allegations of increased risk of fraud to any injury or the remedy it seeks; its failure to identify any cognizable claim for a violation of the U.S. Constitution; and its failure to identify any violation of Commonwealth law or the Elections Clause.

## BACKGROUND

Proposed Defendant-Intervenors respectfully refer the Court to the factual background of this dispute set forth in the Motions to Dismiss. ECF No. 185 at 3-5; ECF No. 209 at 2-7.

## LEGAL STANDARD

"To survive a motion to dismiss, the factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level' and the complaining party must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, in considering a motion to

dismiss, "[t]he assumption of truth does not apply … to legal conclusions couched as factual allegations." *Harris v. Bennett*, 746 F. App'x 91, 93 (3d Cir. 2018).

## ARGUMENT

## I. PLAINTIFFS FAIL TO ALLEGE ANY CONNECTION BETWEEN THEIR ALLEGED INJURY AND THE REQUESTED RELIEF

Plaintiffs fail to state a claim because the Complaint does not connect any of the harm Plaintiffs predict they will suffer to the conduct they allege is unlawful or any of the relief they request. In particular, the only injury Plaintiffs allege is that supposed voter fraud will dilute votes and make the election unfair. But that harm presupposes that the conduct they challenge will increase voter fraud and that the remedies they seek will reduce voter fraud. There are, however, *no allegations* linking supposed voter fraud to the particular election processes at issue and *no allegations* that the remedies sought will reduce the supposed voter fraud. In particular, the Complaint fails to allege that where County Election Boards allow voters to return their ballots, what marks on the outside of a mailed ballot County Election Boards choose to accept, or where Pennsylvania poll watchers are permitted to serve has any effect whatsoever on the rate of fraudulent voting.[1] Where, as here, Plaintiffs fail to allege any "connection between [their alleged] injury and the judicial relief sought," their claims should be dismissed. *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 73 (3d Cir. 1990).

### A. The Complaint Does Not Allege That Additional Ballot Drop-Off Locations Increase Voting Fraud

Plaintiffs' first request is that the Court judicially limit the locations from which Pennsylvania voters may return their absentee or mail-in ballots to the Commonwealth to be

---

[1] Notably, while Plaintiffs criticize Defendants' administration of the 2020 Primary Election, they do not allege that *any* of the implemented voting processes caused or even contributed to a single case of voting fraud. *See* Compl. ¶¶ 98-116.

counted. Compl. at 54-55, §§ A, B, E. Plaintiffs do not dispute that Pennsylvania citizens who vote absentee or by mail may properly return their ballots using any of the thousands of publicly accessible, unmonitored mailboxes in the Commonwealth. *See id.* ¶ 90 (quoting Act 77); *id.* ¶ 103 (acknowledging that absentee and mail-in ballots may "be mailed"). The Complaint's pages of unfounded and hyperbolic attacks on the legitimacy and security of voting by mail itself, *see id.* ¶¶ 63-79, are thus irrelevant to Plaintiffs' ability to state a claim here, as they do not ask the Court to prohibit that practice. *See, e.g.*, *N.J. Peace Action v. Obama*, 379 F. App'x 217, 222 (3d Cir. 2010) (Table) (affirming dismissal of claim because the requested relief "would not redress their alleged injuries"). Instead, what Plaintiffs must (but cannot and do not) allege is that Defendants' choices to permit citizens to vote not just at any mailbox anywhere in Pennsylvania but also at less than fifty additional drop-off locations somehow increases the likelihood of voting fraud.[2] The Complaint contains no such allegations, and without them there is no connection between Plaintiffs' alleged injury and their requested relief, which is fatal to Plaintiffs' claims.

The Complaint's inability to allege that making additional drop-off locations available to voters casting absentee or mail-in votes increases the rate of fraud is not surprising. Ballot drop boxes are widely utilized in states with no-excuse absentee voting. Indeed, Colorado, Oregon, and Washington *require* drop boxes be established for mail ballot return, and several other states (including Arizona, California, Kansas, Montana, Nebraska, New Mexico, and Utah) have long permitted drop boxes in some or all of their counties.[3] In Pennsylvania, the majority of the

---

[2] As set forth in Part II, *infra*, credibly alleging an increased likelihood of voting fraud would not suffice to state a constitutional claim against the Defendants; the point, for present purposes, is that Plaintiffs fail to do even that.

[3] Nat'l Conf. of State Legislatures, *Voting Outside the Polling Place*, Tbl. 9 (Apr. 27, 2020), *available at* https://www.ncsl.org/research/elections-and-campaigns/vopp-table-9-ballot-drop-box-definitions-design-features-location-and-number.aspx.

approximately 58 ballot drop-off locations Commonwealth-wide are located in government buildings,[4] and counties implement appropriate measures to ensure the safety of Pennsylvania voters' absentee and mail-in ballots.[5] But the Court need not evaluate the improbability of any claim that adding a few dozen drop-off boxes on top of the indisputably permitted public mailboxes and County Election Board facilities could increase the incidence of voting fraud because Plaintiffs' Complaint contains no such allegations. As such, all of Plaintiffs' claims for injunctive relief related to drop-off boxes should be dismissed. *See Pub. Interest Research Grp.*, 913 F.2d at 73.

> **B.** **The Complaint Does Not Allege That County Election Boards' Standards On The Marks On The Outside Of Absentee Or Mail-In Ballots Increase Voting Fraud**

Plaintiffs' Complaint is equally devoid of *any* allegations, much less allegations making Plaintiffs' claims to relief plausible, that connect their purported concerns about voting fraud to County Election Boards' decisions on what type of marks on the outside of an absentee or mail-in ballot will cause the Board to discard the ballot. Although Plaintiffs ask the Court to order every County Election Board in Pennsylvania to discard ballots that lack a secrecy envelope or arrive in a secrecy envelope with markings that reveal facts about the sender, *see* Compl. at 55 §§ C, F, their Complaint alleges effectively no facts about such envelopes, markings, or the absence of either. The *sole* allegation that Plaintiffs make regarding the envelopes in which voters place their absentee or mail-in ballots is that "some, but not all, of the County Election Boards count absentee

---

[4] Penn. Dep't of State, *Votes PA – 2020 Primary County Drop Locations* (last accessed July 24, 2020), *available at* https://www.votespa.com/Voting-in-PA/Documents/2020Primary-County-DropLocations.pdf.

[5] *See, e.g.*, Max Martin, *Philly: Vote now by dropping your ballot into a special box at City Hall*, Billy Penn (May 26, 2020), *available at* https://billypenn.com/2020/05/26/philly-vote-now-by-dropping-your-ballot-into-a-special-box-at-city-hall/ (noting that City Commissioners hold the only keys to the "red-white-and-blue emblazoned postal box" that serves as a ballot drop-off box and is "bolted to the sidewalk" outside City Hall).

and mail-in ballots that lack the 'Official Election Ballot' secrecy envelope or contain a text, mark, or symbol thereon." Compl. ¶ 153; *see also id.* ¶¶ 113, 163. Plaintiffs do not explain how such policies (which Plaintiffs only allege "on information and belief" and do not claim are consistently applied or publicly known) could even potentially increase the rate of voting fraud. Further dooming its claims, the Complaint, glaringly, does not even venture to speculate how the conduct it attacks could even lead to the injury it alleges. It thus facially fails to state a claim for the requested injunctive relief prohibiting such conduct.

      **C.    The Complaint Does Not Allege That Pennsylvania's Long-Standing Requirement That Electors Watch Polls In Their Own County Increases Voting Fraud**

The remainder of Plaintiffs' requested relief asks the Court to enjoin enforcement of the Pennsylvania statute that "creates the position of poll-watcher" to the extent that the same statute allows a poll watcher to observe in "all election districts in the county in which the watcher is a qualified registered elector," but not districts outside the watcher's own county. Compl. ¶¶ 50, 118; *see id.* at 55-56 §§ D, G. The lack of any merit in Plaintiffs' claims with respect to poll watchers has already been judicially established, as set forth ably in the Motions to Dismiss. *See* ECF. No. 185 at 8-9, 15-17; ECF No. 209 at 18-20; *see also, e.g.*, *Rep. Party of Penn. v. Cortés*, 218 F. Supp. 3d 396, 406-09 (E.D. Pa. 2016). However, Plaintiffs also fail to state a claim for their requested injunction with respect to poll watchers because, as with their attempts to enjoin drop-off locations and secrecy envelopes, they have failed to allege any connection between the residency requirement they ask the Court to abolish and the purported voting fraud injury they claim to fear.

Although certain Plaintiffs purport to desire to serve as poll watchers, the only "injury" the Complaint identifies with respect to its attack on Pennsylvania's residency requirements for poll watches is connected to an alleged "vested interest in ensuring that the electoral process is properly

5

administered in every election district." Compl. ¶ 176. Yet, while Plaintiffs offer extensive allegations regarding the role of poll watchers generally, they offer no substantive allegations of facts suggesting that requiring poll watchers to serve in their own county of residence will make poll watching impossible or even more difficult. *See id.* ¶¶ 46-61, 117-41. The closest the Complaint comes is to note that in some Pennsylvania counties registered Democrats outnumber registered Republicans, while in other counties the reverse is true. *See id.* ¶¶ 129-31. This observation does not, however, imply that any party will be unable to provide poll watchers to any polling place. To the contrary, it in fact establishes that each party *will* have access to sufficient electors in every county to be able to provide resident poll watchers to every polling place. *See Cortés*, 218 F. Supp. 3d at 410 (observing that, in 2016, the Republican Party "could staff the entirety of the poll watcher allotment in Philadelphia county with just 4.1% of the registered Republicans in the county"). There is thus no allegation in the Complaint that Pennsylvania's long-standing and long-upheld residency requirements for poll watchers in any way interfere with the "proper administration" of the electoral process, and thus again no connection between Plaintiffs' theory of their injury and their request for the Court to enjoin Pennsylvania's government officials. All of Plaintiffs' requests for injunctive relief, and thus all of their claims, should be dismissed.

## II. PLAINTIFFS HAVE NOT ESTABLISHED ANY CONSTITUTIONAL RIGHT THAT COULD HAVE BEEN INFRINGED

The Complaint also fails on the merits of its legal theories in multiple ways. Plaintiffs' claims rest in large part on the assertion that they have a right under the U.S. Constitution to enjoin state action in order to avoid an (alleged, speculative) increase in "the potential for ballot fraud or tampering," Compl. ¶ 155, or the "dilution of validly cast ballots," *id.* ¶ 164. Even assuming the

allegations were sufficient to show this alleged harm or connect it to the relief requested (and they are not, for the reasons stated above), they fail to establish a claim under the U.S. Constitution.

Plaintiffs' discussion of precedent confuses what states are *permitted* to do under the U.S. Constitution with what they are *required* to do. For example, Plaintiffs cite *Anderson v. United States*, 417 U.S. 211, 226-27 (1974), for the proposition that voters have the "right under the Constitution to have [their] vote fairly counted, without its being distorted by fraudulently cast votes." Compl. ¶ 23. But *Anderson* simply upheld the conviction of state and county officials—who had convinced three election officials to cast fake ballots, in an effort to rig both local and federal elections—against the argument that a federal statute could not reach the election officials' efforts to rig a local election. 47 U.S. at 214-15, 226-27. Likewise, Plaintiffs' misleading citation to *Gray v. Sanders*, 372 U.S. 368 (1963), is telling: They claim that *Gray* held that "every vote *must be* 'protected from the diluting effect of illegal ballots.'" Compl. ¶ 4 (quoting *Gray*, 372 U.S. at 380) (emphasis added). But all the Court said in that case is that the right to have one's vote counted "*can be* protected from the diluting effect of illegal ballots." 372 U.S. at 380 (citing *Ex parte Siebold*, 100 U.S. 371 (1879), and *United States v. Saylor*, 322 U.S. 385 (1944)) (emphasis added).

As this misleading quotation demonstrates, Plaintiffs are asking the Court to convert permission into mandate. The fact that ballot fraud or tampering is illegal, or that vote dilution may be legislated against, does not mean that there is a broad, free-standing constitutional right that any voter, or Plaintiffs, can assert in order to mandate state action against a speculative, unproven threat that the risk of these occurring may be heightened. In short, upholding Plaintiffs' claims would necessitate the creation of a constitutional cause of action from whole cloth.

To understand why Plaintiffs' effort is so illogical, consider the analogy of the tax system: some taxpayers cheat on their taxes, and without such fraud, tax rates would surely be lower for honest taxpayers. In this way, individuals who cheat on their taxes harm honest taxpayers who do not. This is in part why the U.S. government audits, investigates, and prosecutes individuals who engage in tax fraud. But it is absurd to think that an honest taxpayer could sue to invalidate the entire tax system on the basis that another taxpayer is cheating—there is no constitutional right to a tax system free of fraud. And if—similar to this case—the IRS took some action to make filing taxes more convenient (such as simplifying tax forms), it is equally absurd to think that an individual taxpayer would have a legal claim to challenge that change as facilitating further tax fraud.

Moreover, Plaintiffs' novel constitutional cause of action would embroil courts in a political debate over virtually every election rule. Assuming there were a constitutional obligation to protect against the specter of purported voter fraud that candidates and private citizens could assert in federal court against state government officials, the question would remain what measures a state must take to provide sufficient protection. Plaintiffs' position seems to be that the U.S. Constitution dictates the particular rules regarding drop boxes and poll watchers that Plaintiffs think best. But there is no plausible support, under the U.S. Constitution or any precedent, for the extraordinary position that the federal courts should become the arbiters of the efficacy of every state election rule to determine whether it sufficiently addresses the supposed risk of voter fraud. Indeed, such a reading of the Constitution ignores the roles that states play in setting elections practices. *See* U.S. Const. art. I, sec. 4.

Finally, Plaintiffs do not even attempt to cite case law supporting their assertion that inability to act as a poll watcher in a foreign county is a constitutionally protected right. *See* Compl.

8

¶¶ 179-80.  Nor could they, because the Eastern District of Pennsylvania has already ruled that no such right exists.  *Cortés*, 218 F. Supp. 3d at 408, 413-16.  For these and all of the additional reasons set forth more fully in the Motions to Dismiss, Plaintiffs have not stated any cognizable claim that Plaintiffs or anyone else have a right under the U.S. Constitution to limit ballot drop-off boxes, dictate how Pennsylvania reviews and accepts or discards its ballots, or poll watch outside of their own counties.

## III. PLAINTIFFS HAVE NOT ESTABLISHED ANY VIOLATION OF STATE LAW OR THE ELECTIONS CLAUSE

All of the conduct that Plaintiffs complain of are lawful exercises of the authority granted by the Pennsylvania legislature under Commonwealth law.  Accordingly, there is no viable claim for a violation of state law or the requirement that "the Legislature" determine election rules.

In 2019, the Pennsylvania General Assembly reformed the Commonwealth's Election Code to, among other things, authorize no-excuse mail-in ballot voting for all qualified Pennsylvania electors.  *See* 2019 Pa. Legis. Serv. Act 2019-77 (S.B. 421) ("Act 77").  Act 77 established the statutory framework governing how elections officials process ballot applications and track mail-in ballots, how voters obtain and securely return mail-in ballots, and how elections officials verify and tabulate those ballots.  *See* 25 Pa. Stat. §§ 3146.8, 3150.12, 3150.12b, 3150.13, 3150.16).  Act 77 permits voters to deliver their mail ballots "in person to said county board of election."  Act 77; 25 Pa. Stat. § 3150.16(a).

Pennsylvania's General Assembly has "delegate[ed] authority to the Secretary of the Commonwealth to administer the state election scheme."  *Baldwin v. Cortés*, 378 F. App'x 135, 138-39 (3d Cir. 2010).  The legislature has also given each county election board "jurisdiction over the conduct of primaries and elections in such county."  25 Pa. Stat. § 2641(a).  Defendants exercised their authority to administer the June Primary election by establishing drop boxes as an

9

avenue through which voters could deliver their mail ballots to the boards of elections. This conduct in no way "flout[ed] existing legislation." *See* Compl. ¶ 36. Rather, this policy enabled voters to safely cast their votes during the pandemic, while addressing the related surge in mail voting,[6] and postal service delays.[7] These actions were consistent with Defendants' duties to enable eligible voters to cast their ballots, and well within Defendants' discretion based on their delegated authority under Commonwealth law.

Other officials in Pennsylvania likewise implemented policies to ensure that voters could safely cast ballots that counted in the June primary election. For example, Pennsylvania Governor Tom Wolf extended the mail ballot receipt deadline in six counties by executive order.[8] Luzerne County and Allegheny County sent mail ballot applications to all registered voters.[9]

These actions are in accord with similar decisions made by state and local election officials throughout the country this year, as election administrator sought to ensure safe primary elections.

---

[6] Jonathan Lai, *Pennsylvania held an election. We won't know the results for days. Here's what that means for November*, Phil. Inquirer (June 2, 2020), *available at* https://www.inquirer.com/politics/election/pa-2020-primary-election-results-mail-ballots-20200602.html ("More than 1.8 million voters requested mail ballots — almost 17 times the 107,000 requests in the 2016 primary.").

[7] Press Release, Montgomery County Announces Five Secure Ballot Drop-Off Box Locations for June 2 Primary Election (May 22, 2020), *available at* https://www.montcopa.org/ArchiveCenter/ViewFile/Item/5174 ("Concerns over the spread of COVID-19 have created a high demand for mail-in voting and mail delivery times have been slower than normal").

[8] Pennsylvania Governor Exec. Order No. 2020-02, (June 1, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/06/20200601-EO-Deadline-Extention.pdf.

[9] Jennifer Learn-Andes, *With in-person voting still likely, Luzerne County looking at fewer, regional polling places*, Times Leader (Apr. 22, 2020), *available at* https://www.timesleader.com/news/781157/with-in-person-voting-still-likely-luzerne-county-looking-at-fewer-regional-polling-places; Julian Routh, *Allegheny County will send mail-in ballot applications to all registered voters*, Pittsburgh Post-Gazette (Apr. 17, 2020), *available at* https://www.post-gazette.com/news/politics-local/2020/04/17/Allegheny-County-will-send-mail-in-ballot-applications-to-all-registered-voters/stories/202004170118.

10

For example, for the primaries held from March 10 (one day before the World Health Organization declared Covid-19 to be a pandemic) to date, at least eight states (Georgia, Iowa, Idaho, Michigan, North Dakota, Rhode Island, South Dakota, and West Virginia) took the step of affirmatively sending mail ballot request forms to all registered voters.[10]  Three states (Connecticut, Michigan, and Vermont) holding primaries in August and September plan to send mail ballot request forms to all voters.[11] Four states (Maryland, Montana, Nevada, New Jersey) sent mail ballots to all active

---

[10] Office of the Georgia Secretary of State, "Raffensperger Takes Unprecedented Steps to Protect Safety and Voter Integrity in Georgia," *available at* https://sos.ga.gov/index.php/elections/raffensperger_takes_unprecedented_steps_to_protect_safety_and_voter_integrity_in_georgia; Office of the Iowa Secretary of State, "Secretary Pate to Mail Absentee Ballot Request Form to Every Registered Voter," (Mar. 31, 2020), *available at* https://sos.iowa.gov/news/2020_03_31.html; Office of the Idaho Secretary of State, "Secretary Lawrence Denney Announces May Primary Changes," (Apr. 1, 2020), *available at* https://sos.idaho.gov/PressRelease/2020/20200401_AbsenteeElection.pdf; Michigan Secretary of State's Office, "Benson: All Voters Receiving Applications to Vote By Mail," (May 19, 2020), *available* at https://content.govdelivery.com/accounts/MISOS/bulletins/28c53d3; North Dakota Governor Exec. Order No. 2020-13, (Mar. 26, 2020), *available at* https://www.governor.nd.gov/sites/www/files/documents/executive-orders/Executive%20Order%202020-13%20Elections.pdf; Office of the Rhode Island Secretary of State, "Secretary Gorbea Announces New Deadlines for Rhode Island Presidential Preference Primary," (Mar. 30, 2020), *available at* https://www.ri.gov/press/view/38042; Office of the South Dakota Secretary of State, "Secretary of State to Distribute Absentee Ballot Applications to all South Dakota Registered Voters," (Apr. 10, 2020), *available at* https://sdsos.gov/elections-voting/assets/AbsenteeBallotRequestApplicationsPressRelease.pdf; Office of the West Virginia Secretary of State, "Mail-In Absentee Ballot Application to be Sent to Every Registered Voter In WV," (Mar. 26, 2020), *available at* https://sos.wv.gov/news/Pages/03-26-2020-A.aspx.

[11] Office of the Connecticut Secretary of State, "A Letter From Secretary of State Denise Miller: Our Plan for the 2020 Elections," *available at* https://portal.ct.gov/-/media/SOTS/ElectionServices/2020-Voting-Plan-FINAL-DRAFT-May-2-715-PM.pdf; Michigan Secretary of State's Office, "Benson: All Voters Receiving Applications to Vote by Mail," (May 19, 2020), *available at* https://content.govdelivery.com/accounts/MISOS/bulletins/28c53d3; Vermont Secretary of State's Office (@VermontSOS), "Postcards with return postage paid early ballot request forms have been sent to all registered #VT voter, but you don't need the card to request your ballot! Visit mvp.vermont.gov to make sure your voter info is up to date and to request your ballot early," Twitter, (July 7, 2020, 4:30 p.m.), *available at* https://twitter.com/VermontSOS/status/1280600031465275394?ref_src=twsrc%5Etfw%7Ctwcamp%5Eembeddedtimeline%7Ctwterm%5Eprofile%3AVermontSOS&ref_url=https%3A%2F%2Fsos.vermont.gov%2Fsecretary-s-desk%2Fcommentary%2F.

registered voters.[12] Six states that typically require an excuse to vote absentee (Alabama, Delaware, Indiana, Kentucky, New York, and West Virginia) changed their rules to let all voters cast mail ballots during the primaries.[13] Three states did so by gubernatorial order and three through action by state election officials. None of these polices was enacted by a two chambered legislative body and signed by the governor.

Plaintiffs' claim that this kind of executive or administrative action violates the Elections Clause has no legal basis. To begin with, Plaintiffs' theory is based on a cramped definition of "the Legislature" in the Elections Clause. *See* Compl. ¶ 35 ("The Legislature is 'the representative body which ma[kes] the laws of the people.'") (quoting *Smiley v. Holm*, 285 U.S. 355, 365 (1932)); *see also id.* ¶¶ 36, 149-50. However, the Supreme Court has already rejected the argument that,

---

12 Maryland Governor Proclamation, (May 6, 2020), *available at* https://governor.maryland.gov/wp-content/uploads/2020/05/3rd-Renewal-of-State-of-Emergency-5.6.20.pdf; Governor Steve Bullock, Montana Office of the Governor, to Montanans, all officers and agencies of the State of Montana, (Mar. 25, 2020), Montana Office of the Governor, Directive Implementing Executive Orders 2-2020 and 3-2020 and Providing for Measures to Implement the 2020 June Primary Election Safely, *available at* http://governor.mt.gov/Portals/16/Directive%20on%20Elections.pdf?ver=2020-03-26-102626-610; Nevada Secretary of State's Office, "Secretary Cegavske Announces Plan to Conduct the June 9, 2020 Primary Election by All Mail," (Mar. 24, 2020), *available at* https://www.nvsos.gov/sos/Home/Components/News/News/2823/23; and New Jersey Governor Exec. Order No. 144, (May 15, 2020), *available at* http://d31hzlhk6di2h5.cloudfront.net/20200515/c9/8c/ee/a3/8343f25b8115fa4521b8e20b/EO-144.pdf.

13 Press Release, Secretary Merrill Issues Update on March 31 Runoff Election (Mar. 31, 2020), *available at* https://www.sos.alabama.gov/newsroom/secretary-merrill-issues-update-march-31-runoff-election; Sixth Modification of The Declaration of a State of Emergency for the State of Delaware Due to a Public Health Threat (Mar. 24, 2020), *available at* https://governor.delaware.gov/wp-content/uploads/sites/24/2020/03/Sixth-Modification-to-State-of-Emergency-03242020.pdf; Indiana Election Commission Order 2020-37 (Mar. 25, 2020), *available at* https://www.in.gov/sos/elections/files/Indiana%20Election%20Commission%20Order%202020-37.pdf; Kentucky Executive Order 2020-296 (Apr. 24, 2020), *available at* https://governor.ky.gov/attachments/20200424_Executive-Order_2020-296_SOE-Relating-to-Elections.pdf; New York Executive Order 202.2, (Mar. 14, 2020), *available at* https://www.governor.ny.gov/news/no-2022-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency; Press Release, Secretary Warner Encourages West Virginians to Vote Early and Absentee in the May 12 Primary Election, (Mar. 19, 2020), *available at* https://sos.wv.gov/news/Pages/03-19-2020-A.aspx.

"by specifying 'the Legislature thereof,' the Elections Clause renders the State's representative body the sole 'component of state government authorized to prescribe ... regulations ... for congressional redistricting.'" *Ariz. St. Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652 (2015). Indeed, as the Court has long held, what matters is not the name of the body exercising lawmaking authority, but whether the entity is engaged in "the function contemplated by article 1, s 4 . . . that of making laws." *Smiley*, 285 U.S. at 366. With that in mind, the Court concluded that state governors could make election law through the exercise of their veto power. *Id.* at 372-73. Accordingly, Plaintiffs' narrow and stingy reading of the Election Clause is contrary to settled understanding of who may enact election regulations.

In any event, even assuming the Legislature must enact election laws, there is no plausible argument that executive and administrative officials cannot issue rules and regulations to enforce and implement those laws. And that is precisely what Defendants are doing here, as all of their conduct is pursuant to and based on the power granted by the Commonwealth legislature. Even the dissenters in *Arizona State Legislature* recognized that the constitutional concern was "permanently and totally displac[ing] the legislature" with an independent commission. *Ariz. St. Legislature*, 135 S. Ct. at 2691 (Roberts, C.J., dissenting). There is no such concern here, and no basis to conclude that Defendants are undermining rather than enforcing Commonwealth law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: July 24, 2020          Respectfully submitted,

<u>*/s/ Myrna Pérez*</u>

Myrna Pérez
Eliza Sweren-Becker
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
myrna.perez@nyu.edu
eliza.sweren-becker@nyu.edu

*Counsel for Proposed Defendant-Intervenors Citizens for Pennsylvania's Future and Sierra Club*

**CERTIFICATE OF SERVICE**

I, Eliza Sweren-Becker, certify that I served the foregoing Memorandum of Law in Support of Motion to Dismiss of Proposed Defendant-Intervenors Citizens for Pennsylvania's Future and Sierra Club on the following counsel who are registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF:

*All counsel of record*

Dated: July 24, 2020                                  Respectfully submitted,
                                                      */s/ Eliza Sweren-Becker*

                                                      *Counsel for Proposed Defendant-Intervenors Citizens for Pennsylvania's Future and Sierra Club*