**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) | *Electronically Filed* |
| | ) | |
| Plaintiffs, | ) | Civil Action |
| | ) | |
| v. | ) | No.: 2-20-CV-966 |
| | ) | |
| KATHY BOOCKVAR; *et al.*, | ) | |
| | ) | Judge J. Nicholas Ranjan |
| Defendants. | ) | |

**RESPONSE IN OPPOSITION TO
PENNFUTURE AND SIERRA CLUB'S MOTION TO INTERVENE (ECF #137)**

For the same reasons that Plaintiffs oppose the intervention of the National Association for the Advancement of Colored People Pennsylvania State Conference, Common Cause of Pennsylvania, League of Women Voters of Pennsylvania, Patricia DeMarco, Danielle Graham Robinson, and Kathleen Wise (collectively, the "NAACP Proposed Intervenors"), *see* Response in Opposition to Motion to Intervene (ECF # 177), Plaintiffs oppose the request by Citizens for Pennsylvania's Future ("PennFuture") and Sierra Club to intervene as defendants in this action. *See* Motion to Intervene (ECF #137), p. 1. Much like the NAACP Proposed Intervenors, PennFuture and Sierra Club fail to identify the claims and defenses to which they are a proper party as required by Federal Rule of Civil Procedure 24(c). Indeed, although they tout their activities in both conducting "voter education, outreach, and registration programs" targeted at "traditionally underrepresented communities" in order to "get-out-the-vote" and endorsing candidates that "support [their] environmental and climate policy reforms," PennFuture and Sierra Club fail to identify any interest in the actual conduct of elections or any authority under the Pennsylvania Election Code giving them the right to handle third-party ballots or otherwise play any role in the administration and monitoring of elections. The reason for such failure is because no such right or

authority exists, and thus, like the NAACP Proposed Intervenors, PennFuture and Sierra Club lack a substantial interest to be a defendant in this litigation.

PennFuture and Sierra Club fail to meet Rule 24's requirements for intervention as a matter of right or by permission. Not only have they failed to set forth the claims or defenses for which intervention is sought, PennFuture and Sierra Club lack a discrete, substantial, legally protectable interest in the outcome of this suit, and they cannot overcome the presumption that Defendants and/or other intervening parties are adequately representing their interests. Moreover, their involvement will bog down an otherwise straightforward challenge by political parties, candidates, and voters who have been and will be injured by Defendants' misadministration of the Pennsylvania Election Code and its new no-excuse mail-in voting provisions. Accordingly, for many of the same reasons the NAACP Proposed Intervenors' intervention request is inappropriate, this Court should deny the Motion to Intervene filed by PennFuture and Sierra Club (ECF #137).

## **ARGUMENT**

### I.   **PENNFUTURE AND SIERRA CLUB'S INTERVENTION MOTION IS PROCEDURALLY DEFICIENT BECAUSE IT DOES NOT IDENTIFY THE CLAIMS OR DEFENSES FOR WHICH INTERVENTION IS SOUGHT.**

Rule 24(c) is mandatory and requires a party to identify the claims or defenses to be asserted by the party seeking intervention. The command of Rule 24(c) is clear and unambiguous: "A motion to intervene *must* ... set out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c) (emphasis added); *see also Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 783-84 (1st Cir. 1988) ("The language of [Rule 24(c)] is mandatory, not permissive, and the rule sets forth reasonable procedural requirements to insure that claims for intervention are handled in an orderly fashion."). Rule 24(c)'s procedural requirements serve to "enable the court to properly frame the issues, and to inform the parties against whom some right is asserted or relief sought." *Abbent v. Eastman Kodak Co. (In re Pantopaque Prods. Liab. Litig.),* 938 F. Supp. 266, 274

(D.N.J. 1996).  Accordingly, an intervenor who fails to identify the claims or defenses upon which intervention is sought cannot intervene even if that party claims to have an "interest" in the outcome of the litigation.  *See, e.g., Pin v. Texaco, Inc.,* 793 F.2d 1448, 1450 (5th Cir. 1986) ("[I]ntervention under Rule 24 is conditioned by the Rule 24(c) requirement that the intervenor state a *well pleaded claim or defense to the action*.") (citation omitted; emphasis added)).

Here, PennFuture and Sierra Club's Motion does not identify the claims or defenses they intend to assert.  Without such identification, their Motion is procedurally deficient and should be denied.  *See, e.g., Township of South Fayette v. Allegheny County Housing Authority,* 183 F.R.D. 451, 453 (W.D. Pa. 1998), *aff'd sub nom.,* 185 F.3d 863 (3d Cir. 1999) ("Because movants have not submitted pleadings 'setting forth the claim or defense for which intervention is sought,' their motions to intervene are subject to dismissal for failure to comply with the mandate of Rule 24(c)."); *School District of Philadelphia v. Pennsylvania Milk Marketing Board,* 160 F.R.D. 66, 67 (E.D. Pa. 1995) ("PAMD has not, however, attached a 'pleading setting forth the claim or defense for which intervention is sought' as required by Rule 24(c).  Accordingly, PAMD has not properly moved this Court for intervention, and so PAMD's motion to intervene either as of right or by permission must be DENIED."); *Waudby v. Verizon Wireless Services, LLC,* 248 F.R.D. 173, 175 (D.N.J. 2008) ("A proposed intervenor must comply with the requirements of Rule 24(c).").  *See also Shevlin v. Schewe,* 809 F.2d 447, 450 (7th Cir. 1987) (when one simply files a motion to intervene and a supporting brief without filing or "at any time offer[ing]" the requisite pleading, intervention is properly denied).

PennFuture and Sierra Club's attempt to overcome their failure is unavailing.  In their Motion, they assert that the July 24, 2020 deadline in the Court's July 17, 2020 Scheduling Order,

which they mischaracterize as the deadline to file a "responsive pleading,"[1] absolves them of the obligation to comply with Rule 24(c).[2]  *See* Motion to Intervene (ECF #137), p. 2; Brief in Support of Motion to Intervene (ECF #138), p. 19.  PennFuture and Sierra Club then compound the error by filing a Rule 12 motion without leave of court to intervene.[3]  (ECF ## 218 & 219).

Setting aside the question of whether a Rule 12 motion constitutes a "pleading" for purposes of Rule 24(c),[4] the fallacy in PennFuture and Sierra Club's position is that their Rule 12 Motion fails to identify all the claims and defenses they intend to assert and for which intervention is sought.  Rule 24(c)'s identification requirement serves to ensure that an intervening party does not interject claims or defenses that constitute a new or different lawsuit.  *See, e.g., United States v. City of New York,* 179 F.R.D. 373, 377 (E.D. N.Y. 1998) (denying intervention because it "may not be used to initiate what is essentially a new lawsuit.  Rather, '(i)ntervenors must take the pleadings in a case as they find them.'") (citations omitted); *Federal Deposit Ins. Corp. v. Jennings*, 107 F.R.D. 50, 54-55 (W.D. Okla. 1985) (denying intervention "because the interests asserted therein are substantively different from those asserted by the present parties.").  That concern is of particular importance here because PennFuture and Sierra Club imply in their intervention papers that they

---

[1] As the July 17, 2020 Scheduling Order states, July 24, 2020 represents the date this Court set for "Defendants who wish to expedite the process to file *Rule 12 motions*."  (ECF # 124) (emphasis added).

[2] The NAACP Proposed Intervenors make this same argument as part of their own Rule 12 motion that they filed in non-compliance with this Court's Rule 12 motion meet-and-confer and certification requirements.  *See* Joinder and Memorandum in Support of [Provisional] Motion to Dismiss (ECF #205), p. 1, n.1; Practices and Procedures of Judge Ranjan (rev. 1/6/20), Section II(c).

[3] Like the NAACP Proposed Intervenors, PennFuture and Sierra Club did not meet and confer with Plaintiffs' counsel as required by this Court's practices and procedures.  Instead, they sent the email message attached hereto as Exhibit "1" at 5:41 p.m. on the day they filed their Rule 12 motion and never met and conferred with Plaintiffs.

[4] *See* Fed.R.Civ.P. 7(a) & (b) and 12(a) & (b).

seek to raise issues that concern "their efforts to protect the environment and reform climate policy by empowering traditionally underrepresented groups," including, for example, that "Pennsylvania should adopt a universal vote-by-mail system (similar to that used in a number of states like Colorado, Utah, and Washington) in which all registered voters in the state would receive a mail ballot, a policy which has not been adopted by Defendants in this action."  *See* Brief in Support of Motion to Intervene (ECF #138), pp. 16-17.  These issues go well beyond the issues raised by Plaintiffs in this case.

Given these circumstances, this Court lacks discretion to ignore Rule 24(c)'s clear and unambiguous mandate.  *See, e.g., Dickerson v. U.S. Steel Corp., 582 F.2d 827, 832 (3d Cir. 1978)* ("Furthermore, the class-member witnesses have not complied with Rule 24(c) which sets forth the procedure for intervention: service of a motion on the parties which shall state the grounds therefor and a pleading setting forth the claim.  We conclude, then, that there is no authority in Rule 24 for the 'equitable intervention' attempted in this case."); *SEC v. Investors' Security Leasing Corp., 610 F.2d 175, 178 (3d Cir. 1979)* ("Because the requirements of rule 24(c) were not complied with, the owners were not proper parties in the district court.").

Because PennFuture and Sierra Club's Motion fails to comply with Rule 24(c)'s identification requirement, it is procedurally improper and should be denied.

## II.   TO THE EXTENT THEY SEEK ANY AFFIRMATIVE OR DIFFERENT RELIEF, PENNFUTURE AND SIERRA CLUB LACK ARTICLE III STANDING TO INTERVENE.

To the extent they intend to seek any affirmative or different relief, PennFuture and Sierra Club must prove they have standing to be a party in this litigation.  One essential aspect of an Article III court's jurisdiction is that "any person invoking the power of a federal court must demonstrate standing to do so."  *Hollingsworth v. Perry, 570 U.S. 693, 704 (2013)*.  In 2017, the

United States Supreme Court resolved a split of authority between the circuits "by adopting the minority view and requiring a litigant to possess Article III standing in order to intervene as of right," if they seek to introduce any new claims or seek affirmative or different relief.[5]  *Seneca Res. Corp. v. Highland Twp.,* No. 17-4540, 2017 WL 4168472, 2017 U.S. Dist. LEXIS 152737, at *7 (W.D. Pa., Sept. 20, 2017) (citing *Town of Chester, N.Y. v. Laroe Estates, Inc.,* ____ U.S. ____, 137 S. Ct. 1645, 1651 (2017)).  Accordingly, "[b]ecause standing is a question of subject matter jurisdiction, if the proposed intervenors do not have standing, the Court does not have jurisdiction and accordingly a motion to intervene fails."  *Seneca Res. Corp.*, 2017 U.S. Dist. LEXIS 152737, at *7 (citing *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("standing is a jurisdictional matter."); *Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir.1997) (Article III standing is a "threshold jurisdictional requirement" for any case in federal court)).  *See also Flying J, Inc. v. Van Hollen,* 578 F.3d 569, 571, 573 (7th Cir. 2011) (discussing, specifically, that standing is required for both mandatory and permissive intervention).

If they intend to pursue new claims or seek affirmative or different relief, PennFuture and Sierra Club bear the burden of establishing the elements of standing.  *Spokeo, Inc. v. Robins,* ____ U.S. ____, 136 S.Ct. 1540, 1547 (2016).  To demonstrate Article III standing, a prospective intervenor must show that it has:

1) suffered an "injury in fact;"
2) that is fairly traceable to the challenged action of the [opposing party] ...; and

---

[5] As the Third Circuit recently explained, proof of Article III standing is necessary only when a proposed defendant intervenor is seeking relief beyond that requested by the originally named defendants.  *Commonwealth v. Trump*, 888 F.3d 52, 57 n. 2 (3d Cir. 2018) ("Because the Little Sisters moved to intervene as defendants and seek the same relief as the federal government, they need not demonstrate Article III standing.") (citations omitted).

3)  that is likely to be redressed by a favorable judicial decision."

*Spokeo*, 136 S.Ct. at 1547.  *See also Pennsylvania Psych. Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278, 283, 287-289 (3d Cir. 2002) (Associational or third-party standing "requires the satisfaction of three preconditions: 1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a 'close relationship'; and 3) the third party must face some obstacles that prevent it from pursuing its own claims.") (citations omitted).

The injury requirement of standing is not met just because PennFuture and Sierra Club have an interest in the subject matter of the litigation.  A party's "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself" to establish standing.  *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).  *See also Hollingsworth*, 133 S.Ct. at 2662 (a "generalized grievance, no matter how sincere, is insufficient to confer standing."); *Diamond v. Charles*, 476 U.S. 54, 66 (1986) ("Article III requires more than a desire to vindicate value interests."); *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1333 (11th Cir. 2007) ("[G]eneralized grievances asserted by [individual] Intervenors ... do not assert a concrete and personalized injury").  Instead, to support standing, a proposed intervenor must "claim 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" *Seneca Res. Corp.*, 2017 U.S. Dist. LEXIS 152737, at *10 (citing *Prince v. United States Gov't*, 697 F.App'x 134 (3d Cir. 2017) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)).

For an "injury" to be sufficient to establish standing, PennFuture and Sierra Club must show both a specific *and* actual injury.  "Concreteness and particularity are separate requirements" in that "[f]or an injury to be particular, 'it must affect the [litigant] in a personal and individual way[;]' ... [m]eanwhile, a concrete injury 'must be "de facto"; that is it must actually exist.'"

*Seneca Res. Corp.,* 2017 U.S. Dist. LEXIS 152737, at \*10 (citations and quotations omitted). Moreover, "[w]here, as here, the alleged injury is heightened risk of future harm, the allegations must 'entail a degree of risk sufficient to meet the concreteness requirement.'" *Id.* at \*11 (quoting *Kamal v. J. Crew Grp., Inc.,* 2016 U.S. Dist. LEXIS 145392, 2016 WL 6133827, at \*2 (D.N.J. Oct. 20, 2016)) (quotations and citations omitted). *See also Alfa Int'l Seafood v. Ross,* 321 F.R.D. 5, 8 (D.C. D.C. 2017) ("[W]here standing is premised on future injury, the party must demonstrate a realistic danger of sustaining a direct injury."). Finally, "[n]ot every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact." *N.A.A.C.P. v. City of Kyle, Texas,* 626 F.3d 233, 238 (5th Cir. 2010).

To the extent they seek any relief beyond that requested by the originally named Defendants, PennFuture and Sierra Club have failed to allege or identify any concrete and particularized injury that they have or will suffer and are seeking to redress as part of their intervention. *See* Motion to Intervene (ECF #137), pp. 1-2. Indeed, in their supporting brief, PennFuture and Sierra Club never address their Article III standing (or lack thereof), focusing entirely on their allegedly "significant interest" in the litigation rather than on any concrete and particularized injury-in-fact. *See* Brief in Support of Motion to Intervene (ECF #138), pp. 10-14. "The 'sufficient interest' contemplated in Rule 24 is not equivalent to the injury-in-fact element of standing." *Seneca Res. Corp.,* 2017 U.S. Dist. LEXIS 152737, at \*11-12. Moreover, although they claim an interest in "ensuring that all eligible persons have equal opportunity to register to vote, can safely and accessibly vote for the candidate of their choice, and ensure that their vote has been counted," and ensuring "that voters in poor and minority communities—which have the highest pollution burdens and face the greatest risk from Covid-19—can vote by mail or can take the necessary precautions if they must cast their ballots in person," PennFuture and Sierra Club have no responsibilities under the Pennsylvania Election Code in the conduct or administration of

elections, which is the focus of Plaintiffs' complaint. And although the non-profit organizations tout their voter registration and voter education activities, Plaintiffs' claims in this case do not impact those interests.

At best, PennFuture and Sierra Club have alleged nothing more than a generalized interest in Pennsylvania's election laws which does not suffice to create Article III standing. *See, e.g., Ind. Democratic Party v. Rokita,* 458 F. Supp. 2d 775, 810 (S.D. Ind. 2006) (general interest in one state's election laws does not create standing; "[o]therwise there would be universal standing: anyone could contest any public policy or action he disliked. There must be a concrete injury.") (citations and quotations omitted). Instead, this is precisely the type of abstract, generalized interest that the United States Supreme Court has repeatedly held does not confer standing. *See, e.g., Hollingsworth,* 133 S. Ct. at 2662 (intervenor's interest in "vindicat[ing] the validity of a generally applicable California law … insufficient to confer Article III standing"); *Diamond,* 476 U.S. at 66 (although individual physician's standing allegation "may be cloaked in the nomenclature of a special professional interest, it is simply the expression of a desire that the Illinois Abortion Law as written be obeyed. Article III requires more than a desire to vindicate value interests."); *Common Cause Ind. v. Lawson,* No. 1:17-cv-03936-TWP-MPB, 2018 WL 1070472, 2018 U.S. Dist. LEXIS 30917, at *9-*10 (S.D. Ind., Feb. 27, 2018) (public interest foundation's "mission to ensure that states and counties properly maintain voter-registration lists as required under federal law and its actions, including list-maintenance activities of states and counties" and its purpose of "protect[ing] the integrity of each citizen's right to vote from impingement by inadequate election administration" are too generalized to support Article III standing).

Accordingly, this Court should deny PennFuture and Sierra Club's Motion for lack of standing.

### III.   PENNFUTURE AND SIERRA CLUB HAVE FAILED TO PROVE THEY ARE ENTITLED TO INTERVENTION AS A MATTER OF RIGHT.

PennFuture and Sierra Club have failed to meet either of Rule 24's requirements for intervention as a matter of right.   Under the first subsection of that Rule, a party may move to intervene in ongoing litigation as a matter of right if it possesses "an unconditional right to intervene by a federal statute," or the prospective intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   Fed. R. Civ. P. 24(a)(1) & (2).   In neither their Motion nor their supporting brief do they cite any unconditional, federal statutory right to intervene.   Thus, PennFuture and Sierra Club have no right to intervene under Rule 24(a)(1).

PennFuture and Sierra Club also fail to establish intervention as of right under Rule 24(c)(2).   To intervene by right under Rule 24(a)(2), an applicant must satisfy the following four requirements: (1) timely application, (2) the applicant has a significantly protectable interest in the pending lawsuit, (3) disposition of the lawsuit may impair or impede his ability to protect applicant's interest absent intervention, and (4) the existing parties do not adequately represent applicant's interest.   *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005). Each of these requirements must be met for a non-party to intervene as of right.   *Liberty Mut. Ins.*, 419 F.2d at 220; *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).   If an applicant cannot meet one of the four criteria, then intervention as of right must be denied.   *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002).

For the second through fourth requirements, the "interest" must be a direct interest. Regarding Rule 24 intervention motions, the Third Circuit has stated:

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). The Third Circuit has also stated: "In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top Condo.*, 72 F.3d at 366.

Here, PennFuture and Sierra Club fail to satisfy the second through fourth requirements of Rule 24(a)(2). More specifically, PennFuture and Sierra Club lack a direct and substantial interest relating to the subject matter of this litigation; their purported interest will not be impaired without their involvement; and their interests are adequately represented by the named Defendants. Therefore, their request for intervention as matter of right should be denied.

## A.    PennFuture and Sierra Club Lack a Direct and Substantial Interest in the Subject Matter of the Litigation to Justify Intervention under Rule 24(a)(2).

Without a direct interest in the competitive structure of Pennsylvania's elections or a role in the administration of elections under the Elections Code, PennFuture and Sierra Club cannot meet the second requirement for intervention as of right. The United States Supreme Court has ruled that under Rule 24(a)(2), a prospective intervenor's interest must be one that is "significantly protectable" in the pending litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1970). Under this requirement, an intervenor must have more than a general interest in the issues raised in the litigation. *See Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987) ("… to have an interest sufficient to intervene as of right, the interest must be a legal interest as distinguished from interests of a general and indefinite character."), *cert. denied sub nom.*, *Castille v. Harris*, 484 U.S. 947 (1987) (quotations and citations omitted). Rather, the

- 11 -

intervenor's interest must be of such a sufficient nature that "the action will have a *stare decisis* effect on the intervenor's rights." *Harris,* 820 F.2d at 601.  Consequently, where a prospective intervenor (like PennFuture and Sierra Club here) has no authority or involvement in the administrative function which is the subject of the action, intervention as of right must be denied. *Id.* at 601-02.

The decision in *Harris* is illustrative of this point.  In that case, the then Philadelphia district attorney argued he had an absolute right to intervene as a defendant to litigate the constitutionality of the conditions of the Philadelphia prison system and the relief, if any, to which the plaintiffs may be entitled.  *Id.* at 596.  As for his particularized interest to justify intervention, the district attorney asserted that the suit's attempt to impose a ceiling on the prison population would limit his ability to carry out his duties as a law enforcement officer.  *Id.* at 601. In affirming the district court's denial of his intervention petition, the Third Circuit held that because the district attorney did not administer the prison, and the consent decree placing a ceiling on the prison population would only tangentially affect his ability to prosecute, he "[did] not have a sufficient interest to intervene of right as a party in [the] action[.]"  *Id.* at 602-603.

Here, none of PennFuture and Sierra Club's claimed interests[6] constitute a "direct, significant legally protectable interest" in this lawsuit sufficient to justify intervention as of right under Rule 24(a)(2).  At issue in this action is whether the named Defendants' inconsistent administration of Pennsylvania's newly-enacted no-excuse mail-in voting law not only violates the General Assembly's legislative mandates that were put in place to prevent the casting and counting

---

[6] Those interests are, among others, "ensuring that all eligible persons have equal opportunity to register to vote, can safely and accessibly vote for the candidate of their choice, and ensure that their vote has been counted," and ensuring "that voters in poor and minority communities—which have the highest pollution burdens and face the greatest risk from Covid-19—can vote by mail or can take the necessary precautions if they must cast their ballots in person."  *See* Brief in Support of Motion to Intervene (ECF #138), pp. 10-14.

of ineligible or fraudulent ballots that dilute the votes of legitimately cast ballots but also infringes Plaintiffs' federal and state constitutional rights to vote and to free, fair, transparent, and verifiable elections. Also, this lawsuit raises the issue of whether the poll watching statute is constitutional in light of the expansion of mail-in voting and the inability to monitor such voting through traditional poll watching.

Moreover, PennFuture and Sierra Club do not have any involvement in the administration or monitoring of elections because they are not the county boards of elections, political parties, or candidates. *See, e.g., Tiryak v. Jordan*, 472 F. Supp. 822, 823-24 (E.D. Pa. 1979) ("Although the [Commonwealth] is ultimately responsible for the conduct and organization of elections, the statutory scheme [promulgated by the Election Code] delegates aspects of that responsibility to the political parties. This delegation is a legislative recognition of the 'critical role played by political parties in the process of selecting and electing candidates for state and national office.'") (quoting *Marchioro v. Chancy*, 442 U.S. 191, 195 (1979)). *See also* 25 P.S. § 2642(f)-(i) and (k). Nor do they have any authority under the Pennsylvania Election Code to appoint poll watchers or otherwise monitor elections. *See* 25 P.S. § 2687(a). Instead, the Pennsylvania Election Code limits the appointment of poll watchers and the monitoring of the Defendants' administration of elections, including the casting and counting of ballots, to political parties and their candidates. *Id.* at §§ 2687(a)-(b), 3060(a) & (d), 3050(d), & 3146.8(e).

Much like the district attorney in *Harris*, PennFuture and Sierra Club possess only a generalized interest in having the Pennsylvania Election Code interpreted, contrary to its terms, to permit ballot harvesting and/or to allow for the use of drop-boxes, mobile collection sites, and other unmonitored means to return absentee and mail-in ballots outside the presence of poll watchers. PennFuture and Sierra Club lack a direct, substantial interest in this lawsuit. Therefore, intervention as of right should be denied.

**B.      PennFuture and Sierra Club Have Not Shown Any Impairment of Their "Interests" By Disposition of this Action Without Their Involvement.**

Even if an applicant proves that he or she possesses a sufficient legal interest in the underlying dispute, intervention as of right remains improper if the applicant fails to demonstrate that its interest is in jeopardy in the lawsuit in its absence. *Mountain Top Condo.*, 72 F.3d at 368; *Brody v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992). To meet this element, a party seeking to intervene must demonstrate that its legal interests "may be affected or impaired, as a practical matter by the disposition of the action." *Brody*, 957 F.2d at 1122 (quoting *Harris*, 820 F.2d at 596). In making this determination, a court must assess "the practical consequences of the litigation," and "'may consider any significant legal effect on the applicant's interest.'" *Harris*, 820 F.2d at 601 (quoting *National Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). But, "[i]t is not sufficient that the claim be incidentally affected; rather, there must be 'a tangible threat' to the applicant's legal interest." *Brody*, 957 F.2d at 1123 (quoting *Harris*, 820 F.2d at 601).

Here, PennFuture and Sierra Club have not proven any impairment of their particular legal interests. Where a party seeking to intervene as a defendant lacks a sufficient interest in the subject matter of the litigation, it necessarily fails to prove the requisite impairment for mandatory intervention. *Alexander v. Rendell*, 246 F.R.D. 220, 236 (W.D. Pa. 2007). Moreover, PennFuture and Sierra Club have asserted only an alleged impairment of what they believe the General Assembly should have permitted in terms of mail-in voting, which Plaintiffs contend the General Assembly has not enacted. *See* (ECF #137), pp. 14-15. But impairment does not exist when the relief sought is merely the enforcement of the laws as written. Consequently, PennFuture and Sierra Club have failed to prove the third element of intervention as of right.

**C.**     **PennFuture and Sierra Club's Interests Are Adequately Represented by Others.**

The final requirement under Rule 24(c)(2) is whether the interests of PennFuture and Sierra Club are inadequately represented by the existing parties.  *United States v. Territory of Virgin Islands,* 748 F.3d 514, 519-20 (3d Cir. 2014)*.*  Like the other elements, proving inadequate representation rests on the party seeking intervention as a matter of right.  *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 970, 974 (3d Cir. 1982) ("The burden is on the proposed intervenor to show that his interests are not adequately represented.").

The Third Circuit has set out a three-part test for determining if representation is inadequate to support mandatory intervention.

> Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit.

*Brody,* 957 F.2d at 1123 (citing *Hoots v. Pennsylvania,* 672 F.2d 1133, 1135 (3d Cir.1982)).

"Representation is generally considered adequate if no collusion is shown between the representative and an opposing party, if the representative does not represent an interest adverse to the proposed intervenor and if the representative has been diligent in prosecuting the litigation."  *Delaware Valley,* 674 F.2d at 973.  *See also Martin v. Kal-var Corp.,* 411 F.2d 552, 553 (5th Cir. 1969) ("The rule is that representation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty."); *Solid Waste Agency v. U.S. Army Corps of Eng'rs,* 101 F.3d 503,

508 (7th Cir. 1996) ("Where the interests of the original party and of the intervenor are identical—where in other words there is no conflict of interest—adequacy of representation is presumed.").

Also, a presumption of adequate representation exists when the representative is a governmental body or officer charged by law with representing the interests of the absentee. *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976) (citations omitted). *See also Benjamin ex rel. Yock v. Dep't of Public Welfare of Pennsylvania,* 701 F.3d 938, 958 (3d Cir. 2012) ("There is a general presumption that a government entity is an adequate representative."). As the Third Circuit noted years ago: "Where official policies and practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers." *Rizzo,* 530 F.2d at 505. Accordingly, a proposed intervenor can only overcome the presumption against inadequacy by "mak[ing] a 'compelling showing' as to why [its] interests are not so represented." *Territory of Virgin Islands,* 748 F.3d at 520 (citing *Mountain Top Condo.*, 72 F.3d at 369).

Here, PennFuture and Sierra Club make no argument of any collusion, lack of diligence, or that the named Defendants represent an interest adverse to them. Instead, PennFuture and Sierra Club argue that their interests differ from that of Defendant Secretary Boockvar and the Defendant county boards of elections vis-à-vis their environmental and climate change agenda. *See* (ECF #138), pp. 15-19. But, consistent with the interests of both PennFuture and Sierra Club, both Defendant Secretary Boockvar and twenty of Defendant county boards of elections advocated for the use in the June 2, 2020 Primary Election of drop-boxes and other collection sites and the other casting and counting procedures sought by PennFuture and Sierra Club and the NAACP Proposed Intervenors. PennFuture and Sierra Club have offered no evidence that these Defendants intend to change their position on these procedures and practices for the upcoming General Election. Thus, without such evidence, PennFuture and Sierra Club have failed to prove that the interests of

PennFuture and Sierra Club are inadequately represented by the other defendants.  *See, e.g.,* *Common Cause Ind.*, 2018 U.S. Dist. LEXIS 30917, at \*15-\*17 (absent evidence that the State will not zealously defend the lawsuit, any "differences" between the State's interest and those of a public interest foundation are "so small that the Foundation's interests do not require separate representation[,]" especially where "the central objective of the lawsuit is to determine whether Senate Enrolled Act 442 complies with the requirements of the NVRA and, in that respect, the litigation does not call into question the Foundation's entire mission.").

PennFuture and Sierra Club have failed to satisfy the second through fourth requirements of Rule 24(a)(2).  Therefore, their request for intervention as a matter of right should be denied.

## IV.   PENNFUTURE AND SIERRA CLUB HAVE FAILED TO PROVE THAT PERMISSIVE INTERVENTION IS WARRANTED.

Alternatively, PennFuture and Sierra Club argue erroneously that permissive intervention is warranted under Rule 24(b).  *See* (ECF #138), pp. 19-20.  In making this argument, PennFuture and Sierra Club do not assert that intervention is proper based on a "conditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(b)(1).  Instead, they claim only that they have "a claim or defense that shares with the main action a common question of law or fact," such that this Court should exercise its discretion to allow them to intervene as party defendants.  *See* (ECF #138), pp. 19-20.  This assertion by PennFuture and Sierra Club is not well-taken for two reasons.

First, "if intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well."  *Brody*, 957 F.2d at 1124 (quoted with approval in *Territory of Virgin Islands,* 748 F.3d at 525).

Second, PennFuture and Sierra Club seek to expand the scope of the claims asserted in this lawsuit.  Plaintiffs' claims are not premised on what effect the COVID-19 pandemic will have on

the upcoming 2020 General Election.  Instead, Plaintiffs' claims seek only to require Defendant Secretary Boockvar and the Defendants county boards of elections to uniformly administer all elections in the manner proscribed by the General Assembly and to bar them from re-writing the Election Code and engaging in other exercises of legislative power.  By relying on their alleged "perspectives and expertise" and focusing on COVID-19, PennFuture and Sierra Club seek to expand the scope of the lawsuit to provide relief and raise issues that go beyond that which is at issue in this litigation.  Faced with similar assertions as those raised by PennFuture and Sierra Club, this Court has found that permissive intervention is "inappropriate."  *See, e.g., Alexander, 246 F.R.D. at 238-39*.

## V.      CONCLUSION.

PennFuture and Sierra Club's Motion to Intervene fail to comply with Rule 24 or otherwise establish that mandatory or permissive intervention is appropriate.  Not only have they failed to identify the claims or defenses for which intervention is sought, PennFuture and Sierra Club lack Article III standing to join this suit.  Also, PennFuture and Sierra Club lack a direct, substantial interest in this lawsuit, and they cannot overcome the presumption that Defendants and/or other intervened parties are adequately representing their interests.  Moreover, their involvement will bog down an otherwise straightforward challenge by political parties, candidates, and voters who have been injured by Defendants' inconsistent administration of the Pennsylvania Election Code and its new no-excuse mail-in voting.  Accordingly, Plaintiffs request that this Court deny PennFuture and Sierra Club's Motion to Intervene.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

Date:  July 27, 2020            By:  */s/ Ronald L. Hicks, Jr.*
                                     Ronald L. Hicks, Jr. (PA #49520)
                                     Jeremy  A. Mercer (PA #86480)
                                     Russell D. Giancola (PA #200058)
                                     Six PPG Place, Third Floor
                                     Pittsburgh, PA 15222
                                     (412) 235-4500 (Telephone)
                                     (412) 235-4510 (Fax)
                                     rhicks@porterwright.com
                                     jmercer@porterwright.com
                                     rgiancola@porterwright.com

                                     and

                                     Matthew E. Morgan (DC #989591)
                                     (admitted pro hac vice – ECF #10)
                                     Justin Clark (DC #499621)
                                     (pro hac vice motion pending – ECF #27)
                                     Elections, LLC
                                     1000 Maine Ave., SW, 4th Floor
                                     Washington, DC 20224
                                     (202) 844-3812 (Telephone)
                                     matthew.morgan@electionlawllc.com
                                     justin.clark@electionlawllc.com

                                     *Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I caused a true and correct copy of the foregoing Response to be filed this 27th day of July, 2020, via ECF, which system will serve notice of same on all parties registered to receive same via the ECF system. For any party who has yet to enter an appearance, the undersigned certifies that a copy of the foregoing filing will be served on that party via U.S. Mail and a copy sent to the County Solicitor, if known, via email or fax.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

By: */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(pro hac vice motion pending – ECF #27)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*

13511819v3