**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:20-cv-00966-NR |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) ) ) ) | Judge J. Nicholas Ranjan |
| Defendants. | ) ) ) | |

<u>SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT</u>

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
Karen M. Romano
Kelli M. Neary
Howard G. Hopkirk
Nicole Boland
Stephen Moniak
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2727

PENNSYLVANIA GOVERNOR'S
OFFICE OF GENERAL COUNSEL
Kenneth L. Joel
M. Abbegael Giunta
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 787-9348

PENNSYLVANIA DEPARTMENT OF STATE
OFFICE OF CHIEF COUNSEL
Timothy E. Gates
Kathleen M. Kotula
306 North Office Building
Harrisburg, PA 1712-
(717) 783-0736

July 31, 2020

## <u>INTRODUCTION</u>

After Secretary of State Kathy Boockvar and the other Defendants identified a series of substantial procedural and substantive defects in moving to dismiss Plaintiffs' original Complaint, Plaintiffs abruptly filed an Amended Complaint, adding a handful of cosmetic allegations as well as two new counts related to alleged irregularities related to in-person voting.  But the Amended Complaint continues to suffer from the same defects as Plaintiffs' initial effort, which again requires dismissal of Plaintiffs' claims, or at least warrants abstention by this Court:

- *First*, Plaintiffs lack standing because their claims are based solely on conjecture about whether state officials will implement the Pennsylvania Election Code consistent with the federal and state constitutions.  Plaintiffs still fail to allege a concrete, imminent injury, but instead ask this Court to advise on the legality of how officials *might* enforce the Election Code, and to enjoin those officials from taking actions that Plaintiffs speculate *might* cause them harm.  They also plead injury stemming from the hypothetical criminal acts of unidentified third-party fraudsters that may never occur.  This alone merits dismissal.

- *Second*, the Amended Complaint continues to present a textbook ripeness defect, as it is still premised on Defendants failing to take actions (such as publicizing polling locations) that even Plaintiffs concede are not required at this point in the election schedule.

- *Third*, Plaintiffs' claims against Commonwealth officials, whether premised on federal or state law, are barred by the Eleventh Amendment, which prohibits federal courts from ordering state officials to conform their conduct to state law.  While Plaintiffs try to evade this clear limitation by couching their claims as falling under the U.S. Constitution, Plaintiffs fail to allege any ongoing violation of federal law that would permit this Court to compel the activities of state officials under longstanding Supreme Court precedent.

- *Fourth*, litigation is currently ongoing in Commonwealth Court involving the proper interpretation of many of the state statutory provisions Plaintiffs rely on in this lawsuit. Plaintiffs know this, and in fact have moved to intervene in that litigation.  If anything, the Amended Complaint's new allegations further underscore that Plaintiffs' true grievance is with the interpretation and implementation of the Election Code, an issue at the heart of the state-court proceeding.  Those allegations focus entirely on issues involving the proper interpretation of state law and only confirm that this Court should abstain from exercising jurisdiction and resolving those state law questions in the first instance (even assuming the U.S. Constitution permitted it and the Amended Complaint stated viable claims).

Plaintiffs' allegations also fail to state plausible claims on the merits.  Plaintiffs' claim that Pennsylvania citizens must be permitted to watch polls in any county regardless of residence—lest there be rampant voting fraud—is plainly incorrect and has already been rejected by another federal district court.  As for the Commonwealth's implementation of mail-in voting, the risk of hypothetical voter fraud does not support a plausible claim.  And Plaintiffs' new fear as to the treatment of in-person voters who previously requested mail-in ballots plainly mischaracterizes the law that was in effect during the June Primary Election in making unfounded predictions about what might transpire when the new law takes effect for the November General Election.  Even taking Plaintiffs' speculative doomsday allegations as true, the Commonwealth's administration of Act 77 will not severely burden Plaintiffs' right to vote and does not arbitrarily discriminate among voters.  And, regardless, the administration of Act 77 is justified by weighty state interests in the health and safety of its citizens.  Thus, while the Court need not even reach the point of determining whether Plaintiffs' allegations state a viable claim, if it does, it should conclude that they do not and dismiss the Amended Complaint.

## BACKGROUND

### Act 77 and the June 2020 Primary Elections

The Commonwealth has a long and proud history of conducting fair and free elections. Consistent with that history, in late 2019, the Pennsylvania General Assembly passed and Governor Wolf signed bipartisan legislation—Act 77[1]—reforming the Commonwealth's Election Code. Am. Compl. (ECF No. 234) ¶¶ 90–91. Act 77 made several changes to the Election Code, but one of the most consequential was the extension of no-excuse mail-in voting to all qualified electors. *Id*. Then, in March 2020, the Commonwealth enacted Act 12,[2] which made certain other changes to the Code, including regarding procedures for voters who initially request an absentee ballot, but later decide to vote in person at the polls. By Act 12's terms, however, those changes were not to take effect until "elections occurring on or after November 2, 2020." Act 12 § 17(2).

In early June 2020, Pennsylvania conducted its primary elections for the 2020 federal elections, which were the first elections with Act 77 in effect. More than 1.8 million voters applied for a mail-in or absentee ballot, and nearly 1.5 million voters cast their vote by mail-in or absentee ballots. Am. Compl. ¶¶ 113–14. At present, consistent with the requirements imposed by Act 77, the Pennsylvania Department of State, under the direction of Secretary Boockvar, is preparing a report regarding the Primary Election, which is to be released tomorrow (August 1). 71 Pa. Cons. Stat. § 279.6. The Secretary, along with Pennsylvania's 67 county boards of elections, is also preparing for the November 2020 General Election.

On June 29, 2020, Plaintiffs filed their original Complaint in this matter alleging that the Commonwealth's implementation of mail-in voting during the General Election will result in a host of federal and state constitutional violations. After Secretary Boockvar and the other

---

[1] 2019 Pa. Legis. Serv. Act 2019-77 (S.B. 421) ("Act 77").
[2] 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422) ("Act 12").

Defendants promptly moved to dismiss, Plaintiffs filed this Amended Complaint rather than oppose the motions.  Like the original Complaint, Plaintiffs' Amended Complaint alleges that various practices occurred in the now-past Primary Election, but does not assert claims based on (or challenge the results of) that election.  Rather, Plaintiffs again attempt to articulate various hypothetical theories of harm under the federal and state constitutions for the upcoming General Election: (1) the Commonwealth's allowance of mail-in ballot collection at locations other than the offices of the county boards of elections during the General Election will allegedly lead to voter fraud and dilute votes (Counts I and III); (2) the Commonwealth's methods for collecting and counting votes during the General Election will arbitrarily dilute or disqualify certain votes (Counts II and III); (3) the Election Code's requirement that poll watchers reside in the county where they poll watch will allegedly depress the number of watchers and allow fraudulent voting (Counts IV and V); (4) the Commonwealth will fail to timely and adequately notice the location of polling places (Counts VI and VII); and (5) the Commonwealth will fail to administer in-person voting consistent with the Election Code's requirements (Counts VIII and VIX).  Plaintiffs seek declaratory and injunctive relief compelling Secretary Boockvar and the various county boards of elections to comply with various provisions of Pennsylvania's Election Code.

On July 10, 2020, another group of plaintiffs sued the same Defendants named in this case in Commonwealth Court, seeking an authoritative construction of certain Election Code provisions, including those at issue in this case. Ex. 1, Pet. for Declaratory & Injunctive Relief, *Pa. Democratic Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020).  The parties in the two cases are mirror images: Plaintiffs in the Commonwealth Court action propose to intervene in this lawsuit and ask this Court to abstain, *see* Intervenors' Br. in Supp. of Mot. to Intervene (ECF No. 85); Proposed Intervenors' to Dismiss (ECF No. 85-2) at Br. in Supp. p.1

(citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)), while Plaintiffs in this case moved to intervene in the Commonwealth Court earlier this week, *see* Ex. 2, Appl. for Leave to Intervene, *Pa. Democratic Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct. July 27, 2020); Ex. 3, Order, *Pa. Democratic Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct. July 30, 2020) (deferring ruling on Application for leave to intervene).

## **ARGUMENT**

### I.    **PLAINTIFFS CANNOT BRING THEIR CLAIMS IN FEDERAL COURT.**

Plaintiffs' case rests on their predictions about how election officials *might* enforce the Election Code in the upcoming General Election.  Speculating about potential voter fraud and how state officials will collect ballots, administer in-person voting, and count votes, they ask for declaratory and injunctive relief against state officials in this federal court.  But Plaintiffs cannot allege that they currently suffer any injury, nor are their claims ripe for adjudication, as election officials are still in the process of preparing for the election and will take numerous steps in the interim that will altogether obviate the need for this Court's intervention or at least sharpen the issues in dispute.  More fundamentally, even if Plaintiffs had standing and their claims were ripe, the Eleventh Amendment categorically bars many of Plaintiffs' claims, which transparently seek relief from *state* officials pursuant to *state* law, but seek to do so in *federal* court.  Finally, given the pending action in the Commonwealth Court involving nearly identical questions of state statutory interpretation—a case in which Plaintiffs here have sought to intervene—this Court should at the very least abstain from resolving novel state law questions.  Indeed, the new allegations added to the Amended Complaint only confirm Plaintiffs should pursue relief in the Commonwealth Court, and that abstention is proper if the Court does not dismiss the Amended Complaint outright.

A.       **Plaintiffs Lack Article III Standing.**

Federal courts do not issue advisory opinions.  Rather, a plaintiff must have standing to invoke federal jurisdiction, which requires that the plaintiff demonstrate it has suffered an injury in fact that is concrete, particularized, or imminent; fairly traceable to the defendant's challenged conduct; and likely to be redressed by a favorable judgment.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992).  Plaintiffs' failure to plead a cognizable injury deprives this Court of jurisdiction and warrants dismissal of their claims pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983).

1.       No Plaintiff Has Alleged an Injury That Is Concrete, Particularized, and
Actual or Imminent Regarding the Treatment of Ballots.

Plaintiffs fail to plead they have suffered, or will suffer, a concrete injury that might establish Article III standing with regard to the Commonwealth's receipt and counting of ballots. According to Plaintiffs, the June 2020 Primary Election revealed certain problems with Pennsylvania's election systems, such that they predict that "[a]bsent judicial intervention, there is no reason to believe things will be different during the November 3, 2020 General Election." Am. Compl. ¶¶ 2, 190.  Specifically, Plaintiffs speculate that election officials will "haphazard[ly] administ[er]" the Election Code by failing to adequately notice polling locations, sanctioning "unmonitored mail-in" voting, and adopting "standardless" procedures for counting votes (among other things).  *E.g.*, Am. Compl. ¶¶ 1, 3, 31, 70, 73, 240–44.  They also forecast roving "[b]allot harvesters" going "door-to-door" collecting and turning in ballots, and even "enter[ing] into voters' homes to help them retrieve and fill out their ballots."  Am. Compl. ¶ 74 (citation omitted).

Aside from lacking in any grounds whatsoever, "[a]ll [of these] theories share, at a minimum, an imminence problem."  *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d

977, 981 (6th Cir. 2020) (per curiam), *petition for cert. filed*, No. 19-1399 (U.S. June 9, 2020).  A threatened injury must be "certainly impending" to constitute injury in fact, making "[a]llegations of possible future injury" insufficient.  *Clapper*, 568 U.S. at 409 (brackets in original) (emphasis & citations omitted) (imminence requirement "ensure[s] that the alleged injury is not too speculative for Article III purposes" (citation omitted)).  Plaintiffs' subjective "apprehensions" about voter fraud and improperly tallied ballots are insufficient.  *Lyons*, 461 U.S. at 107 n.8.  Rather, "[i]t is the *reality* of the threat of repeated injury that is relevant to the standing inquiry . . . ."  *Id*.  Nor do Plaintiffs' allegations regarding the Primary Election establish that a future injury is "certainly impending," as "the Supreme Court has not been sympathetic to claims that past occurrences of unlawful conduct create standing to obtain an injunction against the risk of future unlawful conduct."  *Shelby Advocates*, 947 F.3d at 981–82 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–98 (1974); *Lyons*, 461 U.S. at 105–06).

Plaintiffs here plead the exact same concern claimed in *Clapper*: executive officials *may* implement a new law in a manner inconsistent with the federal Constitution.  And for the exact same reasons the Supreme Court determined the *Clapper* plaintiffs lacked an Article III injury, this Court should find so here.  568 U.S. at 413–14 ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").  Speculative allegations about how state officials will implement the Election Code do not create an imminent injury susceptible to federal court resolution.  *Accord Lyons*, 461 U.S. 105–06; *Pa. Prison Soc'y v. Cortés*, 508 F.3d 156, 167–68 (3d Cir. 2007); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 911–12 (10th Cir. 2014); *Reddy v. Foster*, 845 F.3d 493, 500, 502–03 (1st Cir. 2017).  Other courts have similarly rejected conjectural challenges to upcoming elections.  *See, e.g.*, *Shelby Advocates*, 947 F.3d at 981–82 (citing *Clapper*); *Heindel v. Andino*, 359 F. Supp. 3d

341, 351–54 (D.S.C. 2019) (same), *judgment vacated & appeal dismissed*, 2019 WL 7781470 (4th Cir. Nov. 5, 2019); *Paher v. Cegavske*, --- F. Supp. 3d ----, 2020 WL 2089813, at *5 (D. Nev. Apr. 30, 2020) ("This is not a pioneering finding.  Other courts have similarly found the absence of an injury-in-fact based on claimed vote dilution.").[3]

2.  Plaintiffs Lack Standing to Assert Their Poll Watcher Claims.

Plaintiffs also fail to plead a concrete or imminent injury related to their challenge to the poll watcher residency requirement.  Plaintiffs baldly assert that they will be "unjustifiably burdened in their attempts to locate available, qualified registered electors who can serve as poll watchers" due to the residency requirement, Am. Compl. ¶ 180, but do not allege that they have even attempted to recruit poll watchers at all, let alone that they have been unable to locate enough poll watchers to satisfy the supposed constitutional threshold they claim exists.  Bare predictions that the residency requirement will "make[] it extremely difficult or functionally impracticable for candidates and parties" to secure enough poll watchers at all ballot-casting locations, *id.* ¶ 228, are insufficient and too speculative to support standing.  *See Lujan*, 504 U.S. at 564.  Until Plaintiffs can show that they have been unable to recruit poll watchers, their facial attack to the Commonwealth's long-standing residency requirement is based entirely on "a 'contingent future event[] that may not occur as anticipated, or indeed may not occur at all.'"  *Reddy*, 845 F.3d at

---

[3] Plaintiffs' challenge to the administration of mail-in voting suffers from three additional flaws: First, Plaintiffs allege mail-in voting "provides fraudsters an easy opportunity to engage in ballot harvesting, manipulate or destroy ballots, manufacture duplicitous votes, and sow chaos."  Am. Compl. ¶ 1.  But to the extent Plaintiffs' alleged injuries will be caused by these "fraudsters" Which in and of itself lacks basis), those injuries will not be caused by Defendants.  *See Heindel*, 359 F. Supp. 3d at 359.  Second, because Plaintiffs' alleged injuries flow from the alleged future criminal activities of third parties, the relief Plaintiffs' seek would not, even if granted, redress their alleged injury.  *See Lujan*, 504 U.S. at 570–71.  Third, in Count I of the Amended Complaint, Plaintiffs gesture at an argument that the Pennsylvania Executive cannot "exercise legislative power" and "unilaterally" establish procedures for casting mail-in votes.  Am. Compl. ¶¶ 198, 203; *see also id.* ¶ 37.  But if that claim belongs to anyone, it is the General Assembly, not Plaintiffs.  *Cf. Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663–65 (2015).

502–05 (brackets in original) (citation omitted); *see Pa. Prison Soc'y*, 508 F.3d at 166–67; *cf. Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51, 458–59 (2008).

### B.      Plaintiffs' Claims Are Not Ripe.

Plaintiffs' speculative injuries also mean that their claims are not ripe.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) ("The doctrines of standing and ripeness 'originate' from the same Article III limitation." (citation omitted)).  "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely." *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003); Richard H. Fallon, Jr. et al., *Hart and Wechsler's The Federal Courts and The Federal System* 213 (7th ed. 2015) ("The classic example of a ripeness concern involves the plaintiff who wishes to challenge the validity of a governmental policy that has not yet been enforced against him or her and may never be.").  In performing a ripeness inquiry, courts consider, among other things, whether "the facts of the case [are] sufficiently developed to provide the court with enough information on which to decide the matter conclusively" and whether "a party [is] genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one." *Peachlum*, 333 F.3d at 433–34; *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967) (ripeness turns on "fitness" for "judicial decision").

The present dispute is not "fit" for resolution at this time because facts are still developing that will affect Plaintiffs' claims.  For example, while Plaintiffs allege election officials will not properly notice voting locations, they readily acknowledge that the Election Code does not require that the county boards of elections provide more than 20 days' public notice of the location of all polling places, Am. Compl. ¶ 240; *see also* 25 Pa. Cons. Stat. § 2726(c).  Likewise, Plaintiffs predict that the protocols used during the Primary Election to implement mail-in voting and administer in-person voting will, "[o]n information and belief," be reprised during the General Election. *E.g.*, Am. Compl. ¶¶ 244, 259.  But the Commonwealth has not finalized or publicized

its General Election policies, and the Amended Complaint only speculates about what might happen. Indeed, Plaintiffs' new challenge to in-person procedures for when a voter who initially requested an absentee ballot later wishes to vote in person ignores that the provisions of the Election Code permitting voters in that circumstance to "spoil[]" their ballots, execute a declaration, and cast a regular (as opposed to a provisional) ballot *were not even in effect during the June Primary Election*. *See id.* ¶ 254 (citing 25 Pa. Cons. Stat. §§ 3146.6(b)(3) & 3150.16(b)(3)); Act 12 §§ 11, 14, 17(2)(iv), (vii) (providing that the portions of Act 12 codified at 25 Pa. Cons. Stat. §§ 3146.6(b) & 3150.16(b) "shall apply to elections occurring on or after November 2, 2020"). Thus, far from "misinformation" as Plaintiffs accuse, Am. Compl. ¶ 255, the Secretary's January and March 2020 guidance related to this topic was entirely accurate based on the law as it existed at the time. As the Commonwealth and counties are in the process of implementing the changes for the upcoming General Election, Plaintiffs have not (and cannot) allege facts necessary to determine whether a constitutional violation will ever occur.[4]

## C.     The Eleventh Amendment Bars Plaintiffs' Claims.

Plaintiffs' claims are also barred by the Eleventh Amendment, which forbids actions in federal court against the Commonwealth absent its consent. Put simply, federal courts lack jurisdiction to hear claims for injunctive and declaratory relief based on a "claim that state officials violated state law in carrying out their official responsibilities." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *see generally* 13 Charles Alan Wright et al., *Federal Practice*

---

[4] This is not a case like, for example, *Pierce v. Allegheny County Board of Elections* (cited in the Amended Complaint), where the Court was able to review what had actually happened during the election to determine whether relief was warranted with respect to the specific election practices that had been enacted. 324 F. Supp. 2d 684, 692–93 (W.D. Pa. 2003). Nor is this a case like *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004), where a state policy is alleged to be on its face a violation of a federal statute, making the federal statutory violation inevitable and the dispute an entirely legal one.

*& Procedure* § 3524.3 (3d ed.).  Plaintiffs' state-law claims are thus barred outright; their federal

constitutional claims are barred for failure to allege an ongoing violation of federal law; and their

federal failure-to-notice and in-person voting claims are barred for the additional reason those

claims seek only an order compelling state officials to comply with state law.

*First*, Plaintiffs' claimed violations of the Pennsylvania Constitution's Equal Protection

and Free and Equal Elections Clauses (Counts III, V, VII, and VIX) are plainly barred.  Because

"it is state law that provides the cause of action" for those claims, and "it is state law that provides

. . . the attendant relief they seek," Plaintiffs plainly "cannot invoke federal jurisdiction over their

state law challenge."  *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183–84 (3d Cir. 2015); *see also*

*Chavarria v. State*, 2019 WL 3798394, at *4 (D.N.J. Aug. 13, 2019).  Plaintiffs' attempts to "tie

their state law claims into their federal claims" fare no better, as the Third Circuit has repeatedly

rejected that approach.  *E.g.*, *Balsam*, 607 F. App'x at 183–84; *Acosta v. Democratic City Comm.*,

288 F. Supp. 3d 597, 626 (E.D. Pa. 2018).  These claims should be dismissed outright.

*Second*, even with respect to their claims premised on the U.S. Constitution (Counts I, II,

IV, VI, and VIII), Plaintiffs fail to identify any ongoing violation of federal law that might justify

this federal court exercising judicial power against the Secretary under the narrow exception where

a litigant seeks prospective injunctive relief premised on a violation of the U.S. Constitution.  *See*

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (summarizing the rule of *Ex parte*

*Young*, 209 U.S. 123 (1908)).  Given the important sovereignty and federalism interests at stake,

the Third Circuit has recognized that the *Ex parte Young* exception to sovereign immunity "applies

only to the 'precise situation' of 'a federal court command[ing] a state official to do nothing more

than refrain from violating *federal* law.'"  *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*,

961 F.3d 234, 238 (3d Cir. 2020) (brackets in original) (emphasis added) (quoting *Va. Office for*

*Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)).  Here, Plaintiffs have failed to allege that "defendants' actions are *currently* violating federal law."  *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020); *see also Green v. Mansour*, 474 U.S. 64, 68, 73 (1985) ("There is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction.").

*Third*, Plaintiffs' federal failure-to-notice and in-person voting claims (Counts VI and VIII) are further barred because they derive entirely from state law and are thus improper attempts to smuggle state-law claims into the *Ex Parte Young* framework.  The only relief Plaintiffs seek is an order compelling state officials to comply with the Commonwealth's Election Code.  Am. Compl. at Prayer for Relief ¶¶ B, E, F.  "[T]he determinative question [under *Pennhurst*] is not the relief ordered, but whether the relief was ordered pursuant to state or federal law."  *Brown v. Ga. Dep't of Revenue*, 881 F.2d 1018, 1023 (11th Cir. 1989); *Williams*, 954 F.3d at 741.  Creative pleading— alleging that a violation of the state-law notice requirement or in-person voting procedures is a federal claim—cannot allow an end-run around *Pennhurst*.  *See Williams*, 954 F.3d at 741; *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1205 (11th Cir. 2019).

### D.    This Court Should Abstain from Deciding State Law Questions.

Even if the Court overlooked the Article III and Eleventh Amendment issues plaguing the Amended Complaint, this case presents the rare situation where the Court should abstain in favor of the ongoing action in the Commonwealth Court so as to "avoid deciding a federal constitutional question when the case may be disposed on questions of state law," "avoid needless conflict with the administration by a state of its own affairs," "leave to the states the resolution of unsettled questions of state law," and "avoid duplicative litigation."  *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999) (citing *Pullman*, *Burford*, *Louisiana Power & Light Co*., and *Colorado River* abstention doctrines, respectively); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282– 83, 289–90 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).  Far from

helping their case, Plaintiffs' Amended Complaint reinforces that state-law issues predominate and confirms abstention is appropriate here because the issues "are of state concern to the point where federal courts should hesitate to intrude" and this Court "should avoid making duplicate efforts or unnecessarily deciding difficult questions." *Chiropractic Am.*, 180 F.3d at 103 (quoting *Bath Mem'l Hosp. v. Me. Health Care Fin. Comm'n*, 853 F.2d 1007, 1012 (1st Cir. 1988)).

Federalism principles underlying many different abstention doctrines cut to the core of this case, but *Pullman* abstention squarely applies here given that this federal court "is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question." *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). Even more than the original Complaint, Plaintiffs' Amended Complaint is primarily based on a particular interpretation of the Pennsylvania Election Code that has not yet been addressed by Pennsylvania courts. *See Fuente v. Cortes*, 207 F. Supp. 3d 441, 448 (M.D. Pa. 2016) (*Pullman* abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for a federal constitutional adjudication, or at least materially change the nature of the problem" (citation omitted)). Abstaining therefore avoids (1) a premature federal adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) needless friction with state policies. *See id.* (citation omitted); *see also Pierce*, 324 F. Supp. 2d at 703–04.

Abstention is particularly appropriate here because the pending case in the Commonwealth Court places the interpretation of several key state law provisions squarely at issue, including:

- Whether Sections 3146.6(a) and 3150.16(a) of the Pennsylvania Election Code allow county boards of elections to count "Naked Ballots" received in the outer "Mailing Envelope" but lacking the inner "Privacy Envelope";

- Whether Act 77 permits county boards of elections to establish ballot drop boxes or other mobile collection locations for mail-in ballots, and whether these could be counted as "polling places" pursuant to the Election Code; and

- Whether Act 77 modified or affected the requirement that poll watchers serve only in counties where they reside and are registered as electors.

*See* Ex. 1, Pet. for Declaratory & Injunctive Relief ¶¶ 36–39, 80–81, 113–18, 126–27, 131–34, 155, 165, 198, *Pa. Democratic Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020). Plaintiffs' theory of constitutional harm in this case is premised on how state officials will enforce these same provisions of the Election Code. Act 77 was passed in 2019 and has yet to be interpreted by any of the Commonwealth's courts. Plaintiffs nonetheless ask this Court to render a novel advisory opinion regarding this state statute. Such an outcome would certainly be disruptive to the Commonwealth's efforts to conduct the General Election consistent with the requirements of Pennsylvania law. *See, e.g.*, *NAACP Phila. Branch v. Ridge*, 2000 WL 1146619, at *5–6, *8 (E.D. Pa. Aug. 14, 2000) (abstaining from constitutional challenge to the Pennsylvania Voter Registration Act because it had "never been interpreted by the Pennsylvania courts" and "an erroneous construction of state law by the federal court would disrupt important state policies"). Indeed, all of the "exceptional circumstances" the Third Circuit has said warrant *Pullman* abstention are present here. *Fuente*, 207 F. Supp. 3d at 448 (citation omitted). Moreover, Plaintiffs' recent request to intervene in the Commonwealth case makes clear this Court's involvement is not necessary for Plaintiffs to have the interpretation of the relevant statutory resolved in an appropriate forum. Accordingly, while this Court lacks authority to resolve Plaintiffs' claims given the Article III and Eleventh Amendment limits on federal judicial power set forth above, even if the Court had such authority, it should not exercise it here.[5]

---

[5] Similarly, this Court should abstain under *Burford* because Plaintiffs' claims present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" and the "exercise of federal review" would be

## II.     PLAINTIFFS FAIL TO STATE COGNIZABLE CLAIMS.

Plaintiffs' claims also merit dismissal under Rule 12(b)(6) because Plaintiffs' allegations underlying those claims, even if true, fail to state cognizable claims.  While it is difficult to evaluate the injury Plaintiffs claim they will suffer—because certain of the procedures for the upcoming General Election are not yet finalized—even if Plaintiffs' predictions regarding the upcoming election come true, they would fail to constitute a due process or equal protection violation.

### A.     The Poll Watcher Residency Requirement Is Not Unconstitutional.

Plaintiffs' claims based on the residency and polling location requirements for poll watchers (Counts IV and V) fail because they are based on speculative and implausible allegations that, even if true, would fail to implicate a fundamental right.

At the outset, Plaintiffs' claim that the Election Code's requirement that poll watchers reside in the county where they poll watch is unconstitutional because it will lead to voter fraud and vote dilution assumes too much.  Plaintiffs theorize that the residency requirement "makes it extremely difficult or functionally impracticable for candidates and parties to ensure that they have poll watchers at all locations that ballots are being cast," thus "fostering an environment that encourages ballot fraud or tampering . . . ."  Am. Compl. ¶ 228.  This is a bridge too far.  For one, Plaintiffs' unsubstantiated assertion that they cannot find poll watchers nearly four months before the election are specious at best.  But even if true, their conclusory allegations that the absence of

---

"disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (citation omitted) (referring to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)).  And, given the discretionary nature of federal declaratory judgment jurisdiction, it is not an abuse of discretion to decline to exercise such jurisdiction where, as here, "state law is uncertain or undetermined" because in such cases, "the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction."  *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 148 (3d Cir. 2014).

poll watchers will lead to rampant voter fraud are the stuff of conspiracy theory, which this Court need not accept, even at this stage.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

More fundamentally, Plaintiffs' poll watcher claims are premised on a supposed constitutional right—the right to poll watch—that courts (including in Pennsylvania itself) have repeatedly found does not exist.  *See, e.g.*, *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 408, 413–14 (E.D. Pa. 2016); *Dailey v. Hands*, 2015 WL 1293188, at *5 (S.D. Ala. Mar. 23, 2015) ("[P]oll watching is not a fundamental right protected by the First Amendment."); *Turner v. Cooper*, 583 F. Supp. 1160, 1162 (N.D. Ill. 1983) ("Plaintiffs have cited no authority . . . , nor have we found any, that supports the proposition that [the plaintiff] had a first amendment right to act as a pollwatcher."); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 364 (S.D.N.Y. 2007).  Indeed, on the eve of the last presidential general election, another court in this circuit squarely rejected a challenge to this same residency requirement brought by similarly situated plaintiffs.  *Cortés*, 218 F. Supp. 3d at 413–14.  In doing so, Judge Pappert found that the residency requirement did not infringe the right to vote at all and declined to enjoin it, explaining that the Pennsylvania General Assembly's "decision to allow county election officials to credential only poll watchers from their own county is rationally related to the state's interest in maintaining its county-run election system."  *Id.* at 409, 413–14; *see also* U.S. Const. art. I, § 4, cl. 1.

Though this Court is not bound by the decision in *Cortés*, it should adopt its persuasive reasoning here.  Just as there is no constitutional right to poll watch, there is no constitutional requirement that polls be watched.  Indeed, the Pennsylvania Election Code did not provide for any poll watchers until 1937, *see* 25 Pa. Cons. Stat. § 2687, and other states still soldier on without them, *see, e.g.*, W. Va. Code § 3-1-37.  Moreover, Pennsylvania provides for "overseers" who "carry greater authority than poll watchers" in ensuring the integrity of the vote.  *See Cortés*, 218

F. Supp. 3d at 403; *see* 25 Pa. Cons. Stat. § 2685.  There is no authority for the proposition that a state violates the U.S. Constitution under a theory of vote-dilution if it does not affirmatively provide for poll watching.  Rather, "[b]ecause the Pennsylvania Election Code, not the United States Constitution, grants parties the ability to appoint poll watchers, the state is free to regulate their use and its decision to do so does not implicate or impair any protected associational rights." *Cortés*, 218 F. Supp. 3d at 414.  If Plaintiffs wish for a further change in the places where the Commonwealth permits poll watchers, their path is through the General Assembly, not this Court.[6]

## B. The Commonwealth's Voting Procedures Neither Infringe on Any Fundamental Right, Nor Are They Discriminatory.

### 1. The Commonwealth's Voting Procedures Do Not Infringe the Right to Vote.

Plaintiffs groundlessly allege that voter fraud as a result of mail-in and in-person voting procedures will dilute their vote, thereby unconstitutionally infringing their right to vote.  Am. Compl. ¶ 202; *see id.* ¶¶ 193–205 (Count I); *id.* ¶¶ 206–15 (Count II); *id.* ¶¶ 237–48 (Count VI); *id.* ¶¶ 253–63 (Count VIII).  Because such a challenge concerns the "voting process," this Court must employ the *Anderson-Burdick* framework, whereby courts first evaluate the "character and magnitude" of the asserted constitutional injury, and only then—if a cognizable constitutional injury is identified—measure it against the "precise interests put forward by the State as justifications for the burden imposed." *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  Other courts have used the sliding scale in similar so-called election integrity cases. *E.g.*, *Paher*, 2020 WL 2089813, at *1, *6 (all-mail election due to COVID-19); *Weber v. Shelley*, 347 F.3d 1101, 1105–07 (9th Cir. 2003) (touchscreen voting).

---

[6] The General Assembly has been attentive to this issue, amending and broadening the poll watchers' authority from originally only permitting poll watchers from the Election District where the poll watcher resides to its current county requirement. *Cortés*, 218 F. Supp. 3d at 402.

Plaintiffs have not alleged that the Commonwealth's procedures for mail-in voting infringe their right to vote.  Rather, they baselessly and speculatively rely on the "overarching theory that having widespread mail-in votes" will make the election "more susceptible to voter fraud."  *See Paher*, 2020 WL 2089813, at *7.  As in *Paher*, the Court should reject such a spurious charge.[7] There is no evidence that mail-in voting increases the incidence of voter fraud when compared to in-person voting.  But even if they cited any such evidence (which they do not), the Commonwealth has weighty interests in the implementation of its chosen procedures—procedures that have been used in dozens of states for decades with no evidence of the problems alleged here.  Act 77 was a bipartisan effort aimed at modernizing the Election Code and expanding the ability to vote.  That justification alone is sufficient because the Commonwealth has adopted a "nondiscriminatory law . . . supported by valid neutral justifications."  *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 204 (2008).  And on top of that, the unprecedented circumstance of COVID-19 further justifies the Commonwealth's "sufficiently weighty" interest in facilitating mail-in voting for all citizens regardless of party so that individuals who might fear for their health will have the opportunity to vote.  *Id.* at 191; *cf. Thomas v. Andino*, --- F. Supp. 3d ----, 2020 WL 2617329, at *19–21 (D.S.C. May 25, 2020).  "[I]t is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems.  So long as their choice is reasonable and neutral, it is free from judicial second-guessing."  *Weber*, 347 F.3d at 1107 (footnote omitted).

Plaintiffs' new allegations regarding in-person voting irregularities, as set forth above, are based entirely on Plaintiffs' misreading of the statutory effective dates and the alleged denial of a right that did not exist—the right of "electors who had applied for but not voted their absentee or

---

[7] The *Paher* court also recognized that limiting mail-in voting during a pandemic might infringe the votes of non-parties who might require the use of mail-in voting or else be disenfranchised. 2020 WL 2089813, at *2, *7.  The Court could properly assume the same here.

mail-in ballots . . . to vote a regular ballot in person at the polling locations," Am. Compl. ¶ 255—during the June Primary Election. *See* Act 12 §§ 11, 14, 17(2)(iv), (vii) (providing that the portions of Act 12 codified at 25 Pa. Cons. Stat. §§ 3146.6(b) & 3150.16(b) "shall apply to elections occurring on or after November 2, 2020"). Plaintiffs simply offer no basis to suggest that the Secretary nor the county boards of elections will fail to follow the new law when it takes effect for the General Election. That should be the end of the matter. In any event, Plaintiffs' allegations fall far short of the level of fundamental unfairness and are insufficient to state a vote-infringement claim. *See Broyles v. Texas*, 618 F. Supp. 2d 661, 695 (S.D. Tex. 2009) (Rosenthal, J.) (irregularities surrounding provisional ballots do not rise to level of constitutional violation), *aff'd*, 381 F. App'x 370 (5th Cir. 2010) (per curiam); *see id*. at 693–95 (cataloguing scenarios courts have identified as "garden variety" versus those that are fundamentally unfair).

2.    The Commonwealth's Voting Procedures Are Not Discriminatory.

Plaintiffs have also failed to allege an equal protection violation (to the extent their claims might be based on such a theory). Plaintiffs have not identified a single intentionally discriminatory policy the Commonwealth is allegedly adopting for the upcoming General Election. Plaintiffs simply hypothesize that officials *might* adopt "arbitrary and disparate policies and procedures regarding poll watcher access and ballot return and counting." Am. Compl. ¶ 3. "[N]ot every election irregularity will give rise to an equal protection . . . claim." *Donohue v. Bd. of Elections of N.Y.*, 435 F. Supp. 957, 965–66 (E.D.N.Y. 1976). Indeed, "[i]f every election irregularity or contested vote involved a federal violation, the court would 'be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law.'" *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978) (citations omitted). Thus, absent "'willful or knowing' dilution of ballots," courts have refused to find a

constitutional violation.  *Donohue*, 435 F. Supp. at 965–66; *see Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970); *Partido Nuevo Progresista v. Perez*, 639 F.2d 825, 828 (1st Cir. 1980) (per curiam); *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975); *Acosta*, 288 F. Supp. 3d at 646; *accord Crawford*, 553 U.S. at 207 (Scalia, J., concurring in the judgment).

Moreover, even if Plaintiffs had adequately alleged that the Commonwealth intends to treat similarly situated voters differently—and, again, it does not—that still would not violate the equal protection clause under the *Anderson-Burdick* framework.[8]  That is, *even if* there are incidental differences in how votes are treated due to the Commonwealth's voting procedures, and *even if* those incidental differences implicated Plaintiffs' right to vote, there remain sufficiently weighty interests in their use.  Federal intervention under the equal protection clause is warranted only where "rudimentary requirements of equal treatment and fundamental fairness" are unsatisfied. *Bush v. Gore*, 531 U.S. 98, 109 (2000); *cf. Acosta*, 288 F. Supp. 3d at 645–46.  While courts have found "infringements of voting rights" when chosen procedures lead to "the dilution of votes by reason of malapportioned voting districts or weighted voting systems," or "the purposeful or systematic discrimination against voters of a certain class, or of a certain political affiliation," *Broyles*, 618 F. Supp. 2d at 694 (citations omitted).  Plaintiffs fail to allege anything of the sort here.  Thus, Plaintiffs fail to state an equal protection claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint.

---

[8] The *Anderson-Burdick* framework applies where "a state regulation is found to treat voters differently in a way that burdens the fundamental right to vote."  *Obama for Am. v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012).  Otherwise, rational basis review applies.  *Id.* at 429.

Dated: July 31, 2020

Respectfully submitted,

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL

PENNSYLVANIA DEPARTMENT OF STATE
OFFICE OF CHIEF COUNSEL

By:     */s/ Karen M. Romano*
      Karen M. Romano
      Kelli M. Neary
      Howard G. Hopkirk
      Nicole Boland
      Stephen Moniak
      15th Floor, Strawberry Square
      Harrisburg, PA 17120
      (717) 787-2727 (telephone)
      (717) 772-4526 (facsimile)
      kromano@attorneygeneral.gov
      kneary@attorneygeneral.gov
      hhopkirk@attorneygeneral.gov
      nboland@attorneygeneral.gov
      smoniak@attorneygeneral.gov

By:     */s/ Timothy E. Gates*
      Timothy E. Gates
      Kathleen M. Kotula
      306 North Office Building
      Harrisburg, PA 1712-
      (717) 783-0736 (telephone)
      (717) 214-9899 (facsimile)
      tgates@pa.gov
      kkotula@pa.gov

      */s/ Kenneth L. Joel*
      Kenneth L. Joel
      M. Abbegael Giunta
      Governor's Office of General Counsel
      333 Market Street, 17th Floor
      Harrisburg, PA 17101
      (717) 787-9348 (telephone)
      (717) 787-1788 (facsimile)
      kennjoel@pa.gov
      magiunta@pa.gov

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of Pennsylvania*

**<u>CERTIFICATE OF SERVICE</u>**

I, Kenneth L. Joel, certify that on this 31st day of July 2020, I served the foregoing SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF:

***All Counsel of Record***

*/s/ Kenneth L. Joel*

*Attorney for Secretary of the Commonwealth Kathy Boockvar*