# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.,* Plaintiffs | No. 2:20-CV-00966-NR |
| v. | Judge J. Nicholas Ranjan |
| KATHY BOOCKVAR, *et al.,* Defendants | Electronically Filed Document |

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## ON BEHALF OF DEFENDANT,
## <u>NORTHAMPTON COUNTY BOARD OF ELECTIONS</u>

With respect to Moving Defendant's arguments on Lack of Standing and Jurisdiction, Venue, Failure to State Claim against Moving County, Pullman Abstention, and Colorado River Abstention, Moving Defendant Northampton County Board of Elections joins in and adopts in their entirety the legal arguments set forth in the Brief in Support filed on behalf of Defendants Carbon, Monroe, Pike, Snyder, and Wayne County Boards of Election (ECF#247); Brief in Support filed on behalf of Armstrong, Bedford, Blair, Centre, Columbia, Dauphin, Indiana, Mercer, Montour, Northumberland, Lackawanna, Lawrence, Venango, and York County Boards of Election; the Brief in Support filed on behalf of Defendants Bucks, Chester, Montgomery and Philadelphia County Boards of Elections; and the Brief in Support filed on behalf of Defendant Kathy Boockvar, Secretary of the Commonwealth of Pennsylvania.

1

## I.      No Properly Pleaded Claim of Vote Devaluation

Plaintiffs' Complaint implies an allegation that policy determinations of the Pennsylvania General Assembly violated their right to an equally weighted vote because of the potential for fraud or improper action.   Moving Defendant's citation to redistricting cases in *Kirkpatrick*, 394 U.S. at 530 (1969); *White v. Weiser*, 412 U.S. 783, 790 (1973); *Karcher v. Daggett*, 462 U.S. 725, 731 (1983), provide guidance for evaluating Plaintiffs' claims that alleged and inadequately specified deviations in how Pennsylvania's sixty-seven counties conducted the June 2 Primary Election violated the U.S. Constitution or Pennsylvania Constitution.

The one person one vote principle stated that "as nearly as practicable" districts must be drawn to produce population equality, thus leading to as close as possible an equally weighted vote. *Wesberry v. Sanders*, 376 U.S. at 7-8; *Gray v. Sanders*, 372 U.S. 368 (1963) (standard first annunciated).  This standard applies to both state legislative districts and Congressional districts; however, it is derived from two different origins and two slightly different standards have emerged.

State legislative districts have been reviewed under the Equal Protection Clause of the Fourteenth Amendment and an overall range of ten percent is permitted between the most and least populated districts, to accommodate state policies. DAVID BUTLER & BRUCE CAIN, CONGRESSIONAL REDISTRICTING

COMPARITIVE AND THEORETICAL PERSPECTIVES, 31 (Macmillan Publishing Company 1992).  Congressional districts are regulated under Article I, § 2 of the United States Constitution, which generally requires absolute equality. *Kirkpatrick*, 394 U.S. at 530 (1969); *White v. Weiser*, 412 U.S. 783, 790 (1973); *Karcher v. Daggett*, 462 U.S. 725, 731 (1983)

As to Congressional districts, even de minimis deviations, such as an overall range under one percent, have been sufficient to invalidate Congressional redistricting plans. *Karcher*, 462 U.S. at 731.  However, even in the case of Congressional districts, some deviations are permitted if they are unavoidable or occur despite a good faith effort to reach equality. *Kirkpatrick*, 394 U.S. at 530-31 (citations omitted)( the 'as nearly as practicable standard' requires that the State make a good-faith effort to achieve precise mathematical equality . . . . [and] [u]nless population variances among congressional district are shown to have resulted despite such effort, the State must justify each variance).  *Kirkpatrick* stated essentially the standard "permits only the limited variances which are unavoidable despite a good faith effort to achieve absolute equality, or for which justification is shown." Id. at 531.

In regard to burdens of proof, the *Karcher* Court held that, first, the plaintiff has the burden of proving that deviations could have been reduced by a good faith effort; second, if the plaintiff's burden is met the State must prove each deviation is necessary to achieve a legitimate goal. *Karcher*, 462 U.S. at 730-31.

The Court noted that "[a]ny number of consistently applied legislative policies might justify some variance, including . . . making districts compact, respecting municipal boundaries, preserving the cores of prior districts, and avoiding contests between incumbent Representatives." *Id.* at 740. Further, the showing required to establish that a particular policy "is flexible, depending on the size of the deviations, the importance of the State's interests, and the consistency with which the plan as a whole reflects those interests, and the availability of alternatives that might substantially vindicate those interests yet approximate population equality more closely."

The *Weiser* Court also made clear there must deference to legislative policies. In *Weiser*, the Court noted that when "fashioning a reapportionment plan or . . . choosing among plans" courts should "follow the policies and preferences of the State . . . whenever adherence to state policy does not detract from the requirements of the Federal Constitution." *Weiser*, 412 U.S. at 795 n. 15.

Notably, the entirety of the precedent regarding Congressional districts was founded on Article I, Sec. 2. of the US Constitution. *Kirkpatrick v. Preisler*, 394 U.S. 526, 531, 89 S. Ct. 1225, 1229 (1969) (the command of Art. I, § 2, that States create congressional districts which provide equal representation for equal numbers of people permits only the limited population variances which are unavoidable despite a good-faith effort to achieve absolute equality, or for which justification is shown); *Wesberry*, 376 U.S. at 7-8 ("[r]epresentatives be chosen

'by the People of the several States' means that as nearly as practicable one man's vote in a congressional election is to be worth as much as another's"); *Id.* at 8-9 (Justice Black stating the unequal weighting of votes undermined "fundamental ideas of [our] democratic government" and "cast aside the principle of a House of Representatives elected 'by the people"). The manner of electing a Presidential candidate is an entirely different provision of the Constitution which is set forth at USCS Const. Art. II, § 1, Cl 2, stating that:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress . . .

Plaintiffs' Amended Complaint fails to sufficiently plead a deviation among the counties that was avoidable or in violation of the U.S. Constitution or Pennsylvania Constitution. Although not precedential, the 3rd Circuit issued a decision in *Baldwin v. Cortes*, 378 Fed. Appx. 135, 2010 U.S. App. LEXIS 9304 (3rd Circ. 2010) (Not precedential opinion under Third Circuit Internal Operating Procedure Rule 5.7), upholding the Secretary of the Commonwealth extension of time to file nomination papers pursuant to consent decrees which apparently conflicted with an existing provision of the Election Code. Finding that the Commonwealth of Pennsylvania was permitted to delegate the authority to administer the Commonwealth's election scheme to the Secretary of the Commonwealth, the plaintiffs in *Baldwin*, *supra* failed to show how a deviation

from the Election Code – the extension of a deadline - exceeded the Secretary's delegated authority.

The Pennsylvania Election Code delegates to the county election boards certain powers and duties relating to administering elections.  See 25 P.S. §2641-2652.  There is an expectation in the Election Code that there would be some differences in how each individual county administered its elections.  Plaintiffs' Amended Complaint fails to state how any alleged deviations violate the authority delegated to the Secretary of the Commonwealth and the county election boards, let alone the U.S. Constitution or Pennsylvania Constitution.

## II.    Conclusion

Moving Defendant respectfully requests that this Court grant its Motion to Dismiss and dismiss Plaintiffs' Amended Complaint for any of the grounds cited herein or in the Motions to Dismiss and Briefs filed by the Co-Defendants in this matter.

COUNTY OF NORTHAMPTON

By: /s/ BRIAN J. TAYLOR
Brian J. Taylor, Esq.
Attorney ID: 66601
Assistant Solicitor
County of Northampton
669 Washington Street
Easton, PA 18042
610-829-6350
btaylor@northamptoncounty.org

Date: July 31, 2020

**Certificate of Service**

I hereby certify that on this date, a copy of this document was served upon all counsel of record via the Court's CM/ECF system, which will provide electronic notice to all parties of record.

COUNTY OF NORTHAMPTON

By: /s/ BRIAN J. TAYLOR
        Brian J. Taylor, Esq.
        Attorney ID: 66601

Date: July 31, 2020