**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | : | Civil Action |
| | : | |
| Plaintiffs, | : | |
| | : | No.: 2:20-cv-966 |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge J. Nicholas Ranjan |

<u>**CERTAIN DEFENDANT COUNTIES' BRIEF IN SUPPORT**
**OF MOTION TO DISMISS AMENDED COMPLAINT**</u>

Defendants Boards of Elections of Armstrong, Bedford, Blair, Centre, Columbia, Dauphin, Fayette, Huntingdon, Indiana, Lackawanna, Lawrence, Lebanon, Mercer, Montour, Northumberland, Venango, and York Counties (collectively the "Counties") file this Brief in Support of their Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

Like its predecessor, Plaintiffs' Amended Complaint remains a suit in search of a harm. Plaintiffs continue to allege that some elements of some Defendants' election administration *may* permit ballot fraud or election tampering, which *may* go undetected, and *may* dilute legal votes in an election that has not yet occurred.  Plaintiffs' alleged harm is still speculative and hypothetical and does not sufficiently establish constitutional standing, which requires a "concrete and particularized" invasion of a legally protected interest.

The Amended Complaint attempts to overcome Plaintiffs' lack of standing by bolstering their allegations that Defendants inconsistently applied Pennsylvania's Election Code during the Primary Election.  Plaintiffs then prognosticate that those past issues with the Primary Election

will apply to the November 3, 2020 General Election yet continue to fail to meet their burden of alleging an actual and concrete injury sufficient to support constitutional standing.

Plaintiffs also lack constitutional standing because Plaintiffs' claims are not redressable. Plaintiffs ask the Court to "prevent" future problems that may or may not happen.  Standing cannot exist for injunctive and declaratory relief if the adjudication rests on contingent future events that may not occur.  In actuality, Plaintiffs are requesting the Court to advise Defendants how to apply the Election Code in the General Election without regard for any guidance or changes from the General Assembly, Department of State, Commonwealth Court, or County Boards of Elections in the upcoming months.

Plaintiffs also fail to plead sufficient facts to establish prudential standing, which, among other things, requires Plaintiffs to present claims that are not abstract questions of wide public significance amounting to generalized grievances more appropriately addressed by the representative branches.  Plaintiffs' claims could be raised by any Pennsylvania voter and are indisputably of wide public significance.  The errors and inconsistencies alleged by Plaintiffs are much better addressed by the General Assembly.  The General Assembly has already passed new legislation establishing a General Election procedure for handling electors who applied for, but did not vote, an absentee or mail-in ballot and are attempting to vote at their polling place on election day.  This legislation moots one of Plaintiffs' alleged harms.

Plaintiffs Donald J. Trump For President, Inc. ("Trump Campaign") and the Republican National Committee ("RNC") claim they have special access to standing as political organizations in an attempt to overcome their standing hurdles.  However, status as a representative organization alone is insufficient; political parties and campaigns still must satisfy both constitutional and prudential standing, neither of which they can do.

Should this Court hold that Plaintiffs have standing, the Counties again request that the Court abstain from adjudicating this matter.  In light of the Court's request that the parties avoid restating arguments in their motions to dismiss (ECF No. 124, ¶ II), the Counties join and adopt in full the abstention arguments contained in the Memorandum of Law in Support of Motion to Dismiss the Amended Complaint filed by Defendants Boards of Elections of Bucks, Chester, Montgomery, and Philadelphia Counties ("Bucks County Memorandum").  The Counties also join and adopt in full the argument contained in the Bucks County Memorandum that Plaintiffs' claims are barred by the doctrine of sovereign immunity.  In addition, the Counties join and adopt in full the argument contained in Defendant Secretary of the Commonwealth Kathy Boockvar's Memorandum of Law in Support ("Commonwealth Memorandum") that Plaintiffs' poll watcher claims (Counts IV and V) should be dismissed under Federal Rule 12(b)(6).

Lastly, the claims associated with new allegations asserted in the Amended Complaint fail to state a claim upon which relief can be granted and should be dismissed under Federal Rule 12(b)(6) since they are not pled with sufficient specificity to establish a plausible claim.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim.  Gould Elecs. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000). Subject-matter jurisdiction "refers to the courts' statutory or constitutional power to adjudicate the case."  N.L.R.B. v. New Vista Nursing & Rehab., 719 F.3d 203, 211 (3d Cir. 2013).  The party asserting jurisdiction "bea[rs] the burden of proving that jurisdiction exists." Castro v. United States Dep't of Homeland Sec., 835 F.3d 422, 429 (3d Cir. 2016).  If the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  Ballentine v. United States, 486 F.3d 806,

810 (3d Cir. 2007).

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the court must accept all the allegations in the complaint as true and view reasonable inferences in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the determination as to whether a complaint contains a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## III.   ARGUMENT

### A.   Plaintiffs Lack Standing to Pursue Their Claims

#### i.   *Plaintiffs Bear the Burden of Alleging Sufficient Facts to Satisfy the Constitutional and Prudential Standing Requirements*

A litigant must satisfy both constitutional and prudential requirements to have standing. Landes v. Tartaglione, No. 04-CV-3164, 2004 U.S. Dist. LEXIS 21694, at *4 (E.D. Pa. Oct. 25, 2004) aff'd, 153 F. App'x 131, 132 (3d Cir. 2005). To establish constitutional standing, Plaintiffs must adequately establish "(1) an injury in fact (i.e., a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (i.e., a 'fairly traceable' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." Common Cause v. Pa., 558 F.3d 249, 258 (3d Cir. 2009).

Prudential standing requires Plaintiffs' Amended Complaint to (1) assert Plaintiffs' own rights and not the rights of third parties; (2) present claims that are not "abstract questions of wide public significance which amount to generalized grievances shared and most appropriately

addressed in the representative branches"; and (3) fall within the zone of interests protected by statute or constitutional provision.  Landes, 2004 U.S. Dist. LEXIS 21694, at *5-6.

ii.    *The Harm Alleged in Plaintiffs' Amended Complaint*

Plaintiffs' alleged harm stems from purported issues with Defendants' application of the Commonwealth's Election Code during the Primary Election.  Plaintiffs claim six issues: (1) some counties approved all applications for absentee or mail-in ballots without performing the requisite verification; (2) some counties accepted mail-in and absentee ballots at locations other than their offices; (3) there were issues with the Commonwealth's SURE system that caused duplicate or unmailed absentee and mail-in ballots; (4) there was uneven treatment of electors who applied for but did not vote an absentee or mail-in ballot and sought to vote at their polling place on election day; (5) some counties counted mail-in and absentee ballots without official election ballot secrecy envelopes, with texts, marks, or symbols indicating elector information, without a completed declaration, or that were delivered by third-parties; and (6) poll watchers from outside counties were not permitted.  (See generally Amended Complaint ("AC"), ECF No. 232, ¶¶ 103-189).

Specifically, Plaintiffs claim that several counties followed guidance from the Pennsylvania Department of State and approved all applications for absentee or mail-in ballots without performing the requisite verification of the applicant's qualifications or identification by comparison with the applicant's permanent registration card. (AC ¶ 121).  Plaintiffs, however, allege no specifics in regard to this supposed practice and do not specifically allege that this practice will continue in the General Election.  Plaintiffs also do not claim that the failure to verify any applicant's qualifications was caused by fraud or resulted in specific harm.

Plaintiffs also allege 20 counties allowed absentee and mail-in ballots to be returned to unmonitored and unsecure drop boxes located in such places as shopping centers, parking lots,

fairgrounds, parks, retirement homes, college campuses, fire halls, municipal government buildings, and elected officials' offices, all supposedly in violation of the Election Code. (AC ¶¶ 126-29, 131-32). Plaintiffs also claim the notice given for the use of these other locations failed to comply with the Election Code's notice publication requirements. (AC ¶ 130).

Plaintiffs speculate that the use of drop boxes facilitated "illegal" voting and ballot harvesting, which in the future may result in the dilution of validly cast ballots. (AC ¶¶ 202, 212). Plaintiffs also claim that Defendants' use of drop-boxes increased the *potential* for ballot fraud or tampering and increased the *likelihood* of confusion. (AC ¶¶ 203, 243). Plaintiffs further speculate Defendants will repeat all of these practices in the upcoming General Election. (AC ¶ 244). Yet Plaintiffs do not allege any instances of actual fraud, illegal voting, or tampering having actually occurred due to mail-in and absentee ballots being returned to locations other than the Counties' offices.

Next, Plaintiffs claim that Allegheny County had an issue with the Commonwealth's SURE system that caused the printing and mailing of duplicate mail-in and absentee ballots. (AC ¶ 135). Several Allegheny County residents allegedly reported that they never received their mail-in or absentee ballots. (AC ¶ 136). However, Plaintiffs do not allege this will happen again nor do they seek any specific relief pertaining to this alleged issue.

Plaintiffs also claim that many County Election Boards, in violation of the Election Code, followed the guidance of the Department of State and denied electors who had applied for but not voted their absentee or mail-in ballots the right to vote a regular ballot in person at the polling places. (AC ¶¶ 149, 255). Plaintiffs allege that double voting occurred due to these practices in Philadelphia County. (AC ¶¶ 150, 258). Plaintiffs, however, can only speculate that these practices will be repeated by Defendants in the General Election. (AC ¶ 259). Moreover, Plaintiffs ignore, as further discussed below, the legislation addressing these issues that takes

effect for the General Election.  See 25 P.S. §§ 3146.6(b)(3), 3150.16(b)(3).

Plaintiffs next allege that some counties, in violation of the Election Code, counted absentee and mail-in ballots that either lacked an official election ballot secrecy envelope or contained text, marks or symbols that revealed the identity of the elector, the elector's political affiliation, or the elector's candidate preference.  (AC ¶¶ 157-59, 201).  Plaintiffs allege solely upon information and belief that Philadelphia County counted such ballots. (AC ¶ 158). Similarly, Plaintiffs generally assert that some Defendants counted absentee and mail-in ballots that were delivered in-person by third parties or did not include on the outside envelope a complete declaration dated and signed by the elector. (AC ¶¶ 201, 211).  The only specific allegation made by Plaintiffs in this regard is that Delaware County announced the day before the Primary Election that it was permitting third-party delivery of absentee and mail-in ballots for non-disabled voters that could be returned to any poll location.  (AC ¶ 128).  However, Plaintiffs do not claim that any of these supposed disqualifying events and circumstances were the result of fraud.  Plaintiffs also do not specifically allege that any ballots without declarations or that were delivered by third parties were actually counted by Defendants.

Lastly, Plaintiffs generally allege that the Commonwealth's rule against voters serving as poll watchers in counties other than their county of residence adversely impacts Plaintiffs.  (AC ¶ 175).  Plaintiffs further make unsubstantiated claims that there is a burden in attempting to locate available, qualified registered electors who can serve as poll watchers.  (AC ¶ 180).  Plaintiffs do not allege that they were unable to locate qualified poll watchers in any county in the Primary Election or in any past election.

In addition to the potential for fraud, Plaintiffs claim the counties inconsistently applied the Election Code during the Primary Election.  (See AC ¶ 164).  Plaintiffs speculate that "there is no reason to believe things will be different during the November 3, 2020 General Election."

(AC ¶ 190). They then ask the Court to "prevent" Defendants from "making the same mistake twice." (AC ¶ 192). However, there is nothing in the Amended Complaint indicating these alleged "mistakes" will be repeated or caused any cognizable harm in the first instance. Instead of bringing an action for violations of the Election Code under state statutory law or challenging the Primary Election, Plaintiffs try to transform the alleged Election violations into constitutional claims. However, to do so, Plaintiffs are subject to the standing requirements of constitutional claims – requirements they cannot meet.

     iii.    *Plaintiffs' Amended Complaint Fails to Adequately Establish an Injury in Fact*

Plaintiffs' Amended Complaint fails to satisfy the constitutional standing requirements because the injuries asserted are not "concrete and particularized," but instead are conjectural and hypothetical. Although Plaintiffs challenge Defendants' implementation of the recently enacted mail-in voting provisions, they focus their allegations on the mere *possibility* of future harm that may never occur.

Plaintiffs litter their allegations with events and consequences that may not ever come to be. For instance, Plaintiffs claim certain Defendants' collection of absentee and mail-in ballots in drop-boxes in the Primary Election increased the *potential* for voter fraud. (AC ¶¶ 203, 211, 220). They also claim the decision by certain Defendants to count ballots cast in the Primary Election without a secrecy envelope, with prohibited text, marks or symbols, without a completed declaration, or that were delivered by a third-party increased the *potential* for voter fraud. (AC ¶¶ 203, 211, 220). Finally, Plaintiffs claim Defendants' implementation of the Election Code's poll watcher residency requirements in the Primary Election fostered "an environment that encourages ballot fraud or tampering, and preventing the Commonwealth, candidates and political parties from ensuring that the General Election is free, fair, and

transparent."  (AC ¶¶ 228, 234, 243, 250).  Plaintiffs assert a parade of horribles based solely on conjecture.

Plaintiffs do not identify any act of fraud, or any "concrete and particularized' harm, resulting from Defendants' administration of the Primary Election. Instead, Plaintiffs speculate some elements of some Defendants' election administration *may* permit ballot fraud or election tampering in the General Election, which *may* go undetected, and *may* dilute legal votes.

Plaintiffs' amendments attempt to sidestep the standing deficiencies in their original Complaint by asserting voter dilution caused by the counties inconsistent application of the Election Code.  (See, e.g., AC ¶¶ 138-149, 152-164).  Plaintiffs' Amended Complaint again cites Pierce v. Allegheny Cty. Bd. of Elections, 324 F.Supp.2d 684 (W.D. Pa. 2003) in support.  (AC ¶ 164).  In Pierce, this Court held that the plaintiffs pled a sufficient injury by alleging that there was no mechanism for absentee ballots to be challenged for alleged violations of the Election Code and the United States Constitution.  Id. at *692.  The Court found inconsistencies in the Allegheny County's Board of Elections' acceptance of hand-delivered absentee ballots.  Id. at 689-90.  Importantly, Pierce was brought *after* the harm was explicitly apparent (the acceptance of 937 hand-delivered absentee ballots) and the decision was *post*-election.  The redress plaintiffs sought was specifically limited to those 937 absentee ballots.  Id. at 707-08.

In contrast to Pierce, Plaintiffs allege hypothetical harm far in advance of the General Election before any specific harm is apparent and seek redress for that hypothetical harm.  "The Supreme Court has consistently dismissed cases for lack of standing when the alleged future harm is neither imminent nor certainly impending." Reilly v. Ceridian Corp., 664 F.3d 38, 42 (3d Cir. 2011). "A threatened injury must be 'certainly impending,'" Whitmore v. Arkansas, 495 U.S. 149, 158 (1990), and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." Lujan v. Defenders

of Wildlife, 504 U.S. 555, 564 n. 2, (1992); Whitmore, 495 U.S. at 155 (Imminence requirement "ensures that courts do not entertain suits based on speculative or hypothetical harms.").

The instant case is much more akin to Paher v. Cegavske, in which the court held that registered voters and a candidate's purported injury of having their votes diluted due to ostensible election fraud in an upcoming election could conceivably be raised by any Nevada voter and therefore "did not satisfy the requirement that plaintiffs must state a concrete and particularized injury." No. 3:20-cv-00243-MMD-WGC, 2020 U.S. Dist. LEXIS 76597, at *14 (D. Nev. Apr. 30, 2020). The court held the alleged harm of voter dilution at the upcoming election was speculative at best. Id.; see also Am. Civil Rights Union v. Martinez-Rivera, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution [is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact.").

Like here, the plaintiffs in Paher attempted to amend their complaint to overcome their standing issues. Paher v. Cegavske, No. 3:20-cv-00243-MMD-WGC, 2020 U.S. Dist. LEXIS 92665, at *6 (D. Nev. May 27, 2020). However, the court again held that plaintiffs failed "to more than speculatively connect the specific conduct they challenge—that mail-in ballots are sent to Nevada voters without request for an absentee ballot—and the claimed injury—direct voter disenfranchisement or disenfranchisement through vote dilution (in sum, disenfranchisement)." Id. at * 11-12.

Plaintiffs' request for this Court to address these alleged issues in advance of the General Election introduces another link in the hypothetical chain of events they allege may have occurred in the Primary. To reach Plaintiffs' ultimate concern, the potential for vote dilution in the General Election, one must assume Defendants will exactly replicate administrative practices from the Primary Election in the General Election, and again these practices *may* permit ballot fraud or election tampering, which *may* go undetected, and *may* dilute legal votes.

Consequently, Plaintiffs' alleged injury is speculative at best.

        *iv.*    *Plaintiffs' Amended Complaint Fails to Adequately Establish Redressability*

Plaintiffs also fail to sufficiently plead the constitutional standing requirement of redressability.  Standing will not exist for injunctive relief and declaratory relief if "adjudication ... rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" Giterman v. Pocono Med. Ctr., 361 F. Supp. 3d 392, 408 (M.D. Pa. 2019) (quoting Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 561 (3d Cir. 2002)); see also Harty v. Grand-Sasso, Inc., No. 18-CV-5474, 2019 WL 2423095, at *4 (E.D. Pa. June 7, 2019).

Plaintiffs improperly ask this Court to "prevent" future problems that may or may not happen. (See AC ¶ 191).  Plaintiffs' proposed relief is a request for the Court to advise Defendants how to apply the Election Code in the General Election without regard for any guidance or changes from the General Assembly, Department of State, Commonwealth Court, or County Board of Elections in the upcoming months.  Thus, any decision on this case would be an advisory opinion, "based on a hypothetical set of facts, without sufficient information to support findings." Constitution Party v. Cortes, 712 F. Supp. 2d 387, 397 (E.D. Pa. March 31, 2010).

Accordingly, Plaintiffs fail to satisfy the constitutional requirements for standing.

        *v.*    *Plaintiffs' Amended Complaint Also Fails to Plead the Prudential Standing Requirements*

Plaintiffs' Amended Complaint also fails to satisfy the prudential standing requirements because their claims present abstract questions of wide public significance that are more appropriately addressed by the General Assembly.  See Landes, 2004 U.S. Dist. LEXIS 21694, at *5-6. The Amended Complaint unabashedly and repeatedly states that "all qualified Pennsylvania voters" share Plaintiffs' concerns about election integrity. (AC ¶¶ 213, 220, 230, 234, 246, 250).  Such a large-scale claim of standing is improper. See Stein v. Cortes, 223 F.

Supp. 3d 423, 433 (E.D. Pa. 2016) ("It also appears that Plaintiffs seek to protect the rights of all Pennsylvania voters. . . there is no authority to support such an invocation of standing.").

Plaintiffs' alleged harm is so widespread that it amounts to a general grievance rather than a particularized harm.  In Landes, a registered voter generally attacked Pennsylvania's absentee voting law, but did not allege her right to vote had been adversely affected by absentee voting. 2004 U.S. Dist. LEXIS 21694 at *7. As do Plaintiffs here, the challenger in Landes generally claimed absentee ballots could result in fraud or other election problems.  Id.  As the Landes court noted, this is "the sort of hypothetical harm that federal courts consistently refuse to address." Id.  Concerns for the integrity of mail-in voting, like concerns for the integrity of absentee voting, "involve questions of wide public significance that are most appropriately addressed by the legislative branch." Id.; see also Paher, 2020 U.S. Dist. LEXIS 76597, at *14 ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter. Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury.").

The errors and inconsistencies alleged by Plaintiffs are better addressed by the General Assembly due to their wide public significance.  The General Assembly recently passed legislation establishing a new procedure for handling electors who applied for but did not vote an absentee or mail-in ballot and are attempting to vote at their polling place on election day.  Act 12 of 2020, which applies to the General Election, amended the Election Code to provide:

> [A]n elector who requests an absentee [or mail-in] ballot and who is not shown on the district register as having voted the ballot may vote at the polling place if the elector remits the ballot and the envelope containing the declaration of the elector to the judge of elections to be spoiled and the elector signs a statement subject to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

25 P.S. §§ 3146.6(b)(3), 3150.16(b)(3). Otherwise, the elector will not be permitted to vote at the

polling place except for by provisional ballot. 25 P.S. §§ 3146.6, 3150.16.  This legislation moots one of Plaintiffs' alleged harms and demonstrates that Plaintiffs' complaints are more appropriately addressed by the General Assembly.

Because Plaintiffs fail to satisfy the prudential requirements for standing to assert their claims, Defendants respectfully request dismissal of the Amended Complaint in its entirety.

> vi.    *Organizational Standing Does Not Excuse the Need for Plaintiffs to Satisfy the Constitutional and Prudential Requirements for Standing*

The classification of the RNC and the Trump Campaign as political organizations does not excuse their standing deficiencies described above.  Plaintiffs note the Middle District found political parties can have standing as representatives of party electors and endorsed candidates in Orloski v. Davis, 564 F. Supp. 526 (M.D. Pa. 1983).  (See ECF No. 120, pp. 3-4).  However, candidates and political organizations, like any other plaintiff, must satisfy both constitutional and prudential requirements for standing. See Stein, 223 F. Supp. 3d 423; Constitution Party v. Cortes, 712 F. Supp. 2d 387 (E.D. Pa. 2010) aff'd, 433 F. App'x 89 (3d Cir. 2011).

Plaintiffs in Orloski challenged the application of "limited voting" to a statewide Commonwealth Court election because it limited each elector to two votes to fill three vacancies. The Court found the law's limit on plaintiff voters' ability to vote for a full slate of candidates to fill all vacancies on the Commonwealth Court, while not so restricting any other state judicial election, sufficient injury to establish standing. Id. at 530. The Court went on to find that the plaintiff political party had standing as a representative of individual members who had standing to file suit. Id. at 531. The Court also found the interest the organization sought to protect, "unlimited voting for Democratic candidates to the Commonwealth Court, was germane to the organizational purpose." Id. at 531.  In sum, the individuals and organizations in that case were able to demonstrate sufficient injury, causation, and redressability to satisfy constitutional and

prudential standing.

In contrast, Plaintiffs in the present case do not allege that any of their candidates are unable to run in the election or that their voters lack access to a full array of candidates, but rather only that their vote *may* be diluted due to voting procedures, which is insufficient to confer standing. These claims are akin to those presented by a presidential candidate in Stein, 223 F. Supp. 3d 423, and political parties in Constitution Party, 712 F. Supp. 2d 387.

In Stein, unsuccessful presidential candidate Dr. Jill Stein filed an action seeking a recount of the 2016 general election results. 223 F. Supp. 3d at 426. Dr. Stein questioned whether voting machines might have been hacked during the 2016 general election. Id. She did not, however, allege any votes were incorrectly counted. Id. at 432. The Court concluded that Dr. Stein's "allegation that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute injury-in-fact." Id. at 432. The Court then addressed the generalized nature of the claims, noting "'candidates for public office may be able to assert the rights of voters,' but only where the plaintiff herself suffers an injury and voters are 'hindered from asserting [their] own rights and share[] an identity of interests with the plaintiff'." Id. at 433 (citing Pa. Psychiatric Soc'y v. Green Spring Health Svcs., Inc., 280 F.3d 278, 288 & n.10 (3d Cir. 2002). The plaintiffs likewise failed to establish redressability, as the extraordinary relief sought (i.e. a hand recount of sample ballots and forensic examination of certain voting systems) would not redress the alleged injuries. Thus, the Court concluded "because Plaintiffs have alleged speculative injuries that are not personal to them and could not be redressed by the relief they seek (or any relief I could order), they are without standing to bring their claims." Id. at 434.

Similarly, in Constitution Party, plaintiffs challenged the constitutionality of several Election Code provisions that, combined, permitted courts to tax non-majority candidates with

litigation costs and attorney fees in the context of a ballot challenge. 712 F. Supp. 2d at 392-93. Plaintiffs alleged the possibility of being assessed costs had the potential to chill ballot access. The court found the threat to be "conjectural or hypothetical" and traceable to the actions of third parties rather than the defendants. Id. at 396 – 397. The Court also found a lack of redressability, noting any opinion in the case would be "based on a hypothetical set of facts, without sufficient information to support findings" requiring it to "assume a nomination paper would be challenged, the nomination paper would be held invalid, the challenger would seek costs, and the costs would be assessed." Id.

Stein and Constitution Party demonstrate that candidates, their campaigns, and political parties cannot sidestep the requirements of constitutional and prudential standing. Therefore, the hypothetical nature of Plaintiffs' claims, and resulting lack of causation and redressability, are as fatal in the instant case as they were in Stein and Constitution Party.

**B.    Plaintiffs' New Allegations Fail to State Claims Upon Which Relief Can Be Granted**

      i.    *Plaintiffs' Claims of Election Boards' Failure to Verify the Identification and Qualification for Each New Applicant for a Ballot Should Be Dismissed Pursuant to Rule 12(b)(6)*

Plaintiffs' Amended Complaint asserts new allegations that some Defendants approved applications for absentee or mail-in ballots without performing the requisite verification of the applicant's qualifications or identification by comparison with the applicant's permanent registration card. (AC ¶ 121). Plaintiffs seek a declaration or injunction mandating that County Election Boards verify the identification and qualification for each such applicant by comparing the application information to the information contained on the applicant's permanent registration. (AC, pp. 71-72, (E) and (J)).

Plaintiffs fail to state a claim for relief that is plausible on its face under Twombly and Iqbal, which require "specificity in pleading before allowing a potentially massive factual controversy to proceed."  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010) (quoting Twombly, 550 U.S. at 558).  Plaintiffs fail to make any specific allegations that any Defendants failed to perform the requisite verification for applications for absentee or mail-in ballots, let alone any allegations that this practice will continue in the General Election. Plaintiffs also do not plead that the failure to verify any applicant's qualifications has specifically caused any fraud or harm.

Plaintiffs' allegations and claims rest entirely on an incorrect interpretation of one sentence from the January 10, 2020 Guidelines from the Department of State.  (AC ¶ 118). Plaintiffs implausibly conclude that the Department's guidance that in-person applications for a mail-in or absentee ballots cannot be denied unless there is a bona fide objection "means the County Boards should just approve all submitted applications."  (AC ¶ 118, 120; January 10, 2020 Guidelines[1], pp. 3-4).  Plaintiffs have no allegations that any county interpreted the guidance this way.  Consequently, Plaintiffs fail to plead a viable claim.

Additionally, there is no basis for a declaratory judgment or § 1983 claim because Plaintiffs fail to plead an intentional practice by the counties.  See Acosta v. Democratic City Comm., 288 F. Supp. 3d 597, 644 (E.D. Pa. 2018) ("[T]he due process clause [does] not 'guarantee against errors in the administration of [an] election'"; "although the due process clause 'may outlaw purposeful tampering by state officials,' it [does] not require 'that elections be free of error.'"). There are no specific allegations establishing that Defendants' alleged failure to verify any applicant's qualifications was intentional, rather than an administrative error.

---

[1] The Guidelines are cited by Plaintiffs in the Amended Complaint as available at: https://www.dos.pa.gov/Voting Elections/OtherServicesEvents/Documents/PADOS_Act%2077_Absentee%20and%20Mail-in%20Guidance.pdf.

ii.   *Plaintiffs' Claims of Election Boards' Counting Absentee and Mail-in Ballots That are Delivered In-Person by Third-Parties for Non-Disabled Voters Should Be Dismissed Pursuant to Rule 12(b)(6)*

Plaintiffs' Amended Complaint seeks a declaration or injunctive relief barring Boards of Elections from counting absentee and mail-in ballots delivered in-person by third-parties for non-disabled voters.  (AC ¶¶ 5, 192, pp. 70-72, (C) and (H)).  Plaintiffs generally assert that some Defendants counted absentee and mail-in ballots that were delivered in-person by third parties.  (AC ¶¶ 201, 211).  Beyond generally asserting the negatives of ballot harvesting, (AC ¶¶ 73-81), the only specific allegation made by Plaintiffs is that the Delaware County Board of Elections announced the day before the Primary Election that it was permitting third-party delivery of absentee and mail-in ballots for non-disabled voters to any poll location.  (AC ¶ 128).

Plaintiffs fail to specifically allege that any third parties actually delivered any ballots for voters, or that any Defendants actually counted any such ballots.  Plaintiffs also fail to allege adequate facts that this is likely to happen in the General Election.  There is also no allegation that the "in person" delivery requirement was ever actually violated.  Accordingly, Plaintiffs fail to state a viable claim.

Again, there is also no basis for a declaratory judgment or § 1983 claim because Plaintiffs fail to plead an intentional practice (as opposed to an administrative error) by the counties regarding such ballots.  See Acosta, 288 F. Supp. 3d at 644.

iii.   *Plaintiffs' Claims of Election Boards' Counting Absentee and Mail-in Ballots That Do Not Include on The Outside Envelope A Complete Declaration That Is Dated and Signed by The Elector Should Be Dismissed Pursuant to Rule 12(b)(6)*

Plaintiffs seek a declaration that bars the counting of absentee and mail-in ballots that do not include on the outside envelope a complete declaration that is dated and signed by the elector.  (AC ¶¶ 5, 192, pp. 70-72, (C) and (H)).  Plaintiffs generally assert that some Defendants

counted absentee and mail-in ballots that that do not include on the outside envelope a complete declaration that is dated and signed by the elector.  (AC ¶¶ 201, 211).

Plaintiffs, however, fail to plead a plausible claim under Iqbal and Twombly because there are no allegations that ballots without such declarations were actually counted.  Plaintiffs are seeking relief based on conduct and harm they did not allege.  Their claim must be dismissed.

There is also no basis for a declaratory judgment because courts do not have jurisdiction to declare that Defendants should comply with undisputed legal obligations, as Plaintiffs attempt to do here.  See Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003) ("The availability of declaratory [and injunctive] relief depends on whether there is a live dispute between the parties."); Prof'l Dog Breeders Advisory Council, Inc. v. Wolff, 752 F. Supp. 2d 575, 585 (E.D. Pa. 2010) ("The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties.").  There is no dispute that absentee and mail-in ballots require signature.

Lastly, Plaintiffs claim must be dismissed because there is again no basis for declaratory judgment or § 1983 claim because the Amended Complaint fails to adequately to plead an intentional practice on behalf of the Defendants.  See Acosta, 288 F. Supp. 3d at 644.  Any allegations of intentionality are entirely conclusory and fail under Iqbal.  (See, e.g., AC ¶ 200).

> iv.   *Plaintiffs' Claims of Uneven Treatment of Electors Who Applied for But Did Not Vote an Absentee or Mail-in Ballot and Sought to Vote at their Polling Place Should Be Dismissed Pursuant to Rule 12(b)(6)*

Plaintiffs seek a declaration or injunction mandating that County Election Boards permit those electors who have applied for, but not voted, their absentee and mail-ballots to vote regular ballots upon having the electors' non-voted absentee and mail-in ballots spoiled at their polling places.  (AC, pp. 71-72, (F) and (K)).  Additionally, Plaintiffs seek to compel County Election

Boards to deny those electors who have voted their absentee and mail-in ballots from casting any ballot, regular or provisional.  (AC, pp. 71-72, (F) and (K)).

In support, Plaintiffs allege that the Department of State's Guidelines misinformed the Election Boards regarding the Election Code's requirements.  (AC ¶¶ 138-48).  Many Boards allegedly followed the misinformation provided in the Guidelines and denied electors who had applied for but not voted their absentee or mail-in ballots the right to vote a regular ballot at the polling locations, whereas other Boards followed the Election Code and allowed such electors to vote a regular ballot upon the spoliation of their ballots. (AC ¶ 149).  Plaintiffs also claim that double voting occurred in Philadelphia despite the Election Code's mandate that an elector cannot vote both by mail-in ballot and in person.  (AC ¶¶ 150-51).  Plaintiffs' entire Count VIII is premised on these allegations.  (AC ¶¶ 253-263).

As a threshold matter, Plaintiffs' claims regarding spoiled mail-in ballots must be dismissed as a matter of law because Plaintiffs misinterpret the Election Code and therefore fail to plead a plausible claim.  The relevant provisions added to the Election Code allowing voters to spoil mail-in ballots at polling places do not take effect until well *after* the Primary Election.  Act 12 was passed which amended the Election Code, and applies to elections occurring *on or after November 2, 2020*, to provide:

> [A]n elector who requests an absentee [or mail-in] ballot and who is not shown on the district register as having voted the ballot may vote at the polling place if the elector remits the ballot and the envelope containing the declaration of the elector to the judge of elections to be spoiled and the elector signs a statement subject to the penalties under 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

25 P.S. §§ 3146.6(b)(3), 3150.16(b)(3).  Plaintiffs' claims are thus based on an entirely false premise because they are trying to enforce a law that was not even enforceable at the time of the

Primary Election.   Bare allegations that "Defendants intend to repeat this practice in the upcoming November 3, 2020 General Election" are insufficient, under <u>Iqbal</u>, to state a claim.

Likewise, the allegations that some counties improperly allowed voters who returned mail-in ballots to vote at polling places should be dismissed.   Because Plaintiffs did not allege the double counting of votes was due to fraud, the only reasonable inference is the alleged allowance of double-counting of votes occurred by error.   Consequently, the Amended Complaint does not sufficiently establish that any counties intend to do this in the General Election.   Moreover, there is also no basis for a declaratory judgment because courts do not have jurisdiction to declare that Defendants should comply with undisputed legal obligations. <u>Punxsutawney Area Sch. Bd.</u>, 336 F.3d at 216.   There is no dispute that double counting is not permitted.

Lastly, Plaintiffs' claim must again be dismissed because there is no basis for declaratory judgment or § 1983 claim because the Amended Complaint fails to adequately to plead intentional practice on behalf of the Defendants.  <u>See</u> <u>Acosta</u>, 288 F. Supp. 3d at 644.

## IV.   JOINDER

As detailed in the Introduction of this Brief, the Counties join, incorporate, and adopt the arguments pertaining to abstention and sovereign immunity in the Bucks County Memorandum and the failure to state a claim argument contained in the Commonwealth Memorandum.

## V.   CONCLUSION

For the reasons set forth above, the Counties request that the Court grant its Motion to Dismiss in full and dismiss Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted,

BABST, CALLAND, CLEMENTS
and ZOMNIR, P.C.

/s/  Steven B. Silverman
Steven B. Silverman
PA I.D. No. 56829
ssilverman@babstcalland.com
Elizabeth A. Dupuis
PA I.D. No. 80149
bdupuis@babstcalland.com
Sean R. Keegan
PA I.D. No 316707
skeegan@babstcalland.com
Two Gateway Center, 6th Floor
Pittsburgh, PA  15222
412.394.5400

*Counsel for Defendants, Armstrong County Board of Elections, Bedford County Board of Elections, Blair County Board of Elections, Centre County Board of Elections, Columbia County Board of Elections, Dauphin County Board of Elections, Fayette County Board of Elections, Huntingdon County Board of Elections, Indiana County Board of Elections, Lackawanna County Board of Elections, Lawrence County Board of Elections, Lebanon County Board of Elections, Mercer County Board of Elections, Montour County Board of Elections, Northumberland County Board of Elections, Venango County Board of Elections, and York County Board of Elections*

/s/ Nathan W. Karn
Nathan W. Karn
PA I.D. No. 86068
PACER: nkarn@eveyblack.com
Communication: Nkarn@blairco.org
401 Allegheny Street, PO Box 415
Hollidaysburg, PA 16648
814-695-7581

*Co-Counsel for Defendant, Blair County Board of Elections*

_/s/ Joseph A. Curcillo, III_

Joseph A. Curcillo, III
PA I.D. No. 44060
JCurcillo@dauphinc.org
2 South Second Street
Harrisburg, PA 17101
717-645-4930

_Co-Counsel for Defendant, Dauphin County Board of Elections_


_/s/ Michélle Pokrifka_

Michélle Pokrifka
PA I.D. No. 66654
mpokrifka@yorkcountypa.gov
28 East Market Street, 2nd Floor
York, PA 17401
717-771-4777

_Co-Counsel for Defendant, York County Board of Elections_


_/s/ Thomas W. Leslie_

Thomas W. Leslie
PA I.D. No. 43238
tleslie@co.lawrence.pa.us
116 N Mercer St
New Castle, PA 16101
(724) 654-8101

_Co-Counsel for Defendant, Lawrence County Board of Elections_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR | : | Civil Action |
| PRESIDENT, INC., *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | No.: 2:20-cv-966 |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge J. Nicholas Ranjan |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in

Support was filed electronically and served via the Court's CM/ECF system, pursuant to the

Federal Rules of Civil Procedure.


*/s/  Steven B. Silverman* _____