## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | : | |
| | : | |
| | : | NO. 2:20-cv-00966-NR |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION OF THE BUCKS, CHESTER, MONTGOMERY, AND PHILADELPHIA
## COUNTY BOARDS OF ELECTIONS TO DISMISS THE COMPLAINT
## OR, IN THE ALTERNATIVE, TO ABSTAIN PENDING STATE-COURT RESOLUTION
## OF STATE-LAW QUESTIONS

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     PLAINTIFFS' ALLEGATIONS ....................................................................... 3

        A.      Allegations That Require Interpretation of the Pennsylvania Election Code ......... 3

                1.      What It Means to Deliver a Ballot to the "County Board of Election" ...... 3

                2.      Whether Election Administrators Must Reject Ballots Submitted
                        Without Secrecy Envelopes ......................................................... 5

        B.      New, Conclusory Allegations of Past and Future Election Code Violations ......... 6

        C.      Allegations That Pennsylvania Statutory Limitations on Poll Watchers'
                Official Activities Are Unconstitutional .............................................. 7

III.    ARGUMENT ...................................................................................................... 8

        A.      Plaintiffs' Claims Are Barred by the Doctrine of Sovereign Immunity ................. 8

        B.      The Court Should Abstain From Deciding the Federal Constitutional Claims
                Concerning Ballot-Delivery Locations and "Naked" Ballots Pending
                State-Court Determination of State Law ............................................... 9

                1.      The Court Should Abstain Under *Pullman* ............................... 10

                2.      The Court Should Abstain Under *Burford* ............................... 13

                3.      The Court Should Decline to Exercise Jurisdiction Under
                        *Brillhart-Wilton* ...................................................................... 14

        C.      Plaintiffs' Claims Fail for Lack of Standing ..................................... 15

                1.      Plaintiffs Fail to Allege an Actionable Injury ........................... 16

                2.      Plaintiffs Fail to Plead Causation or Redressability ................. 19

IV.     CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Democratic City Comm.*,
288 F. Supp. 3d 597 (E.D. Pa. 2018) ........................................................................9

*Alston v. Advanced Brands & Importing Co.*,
494 F.3d 562 (6th Cir. 2007) ..................................................................................19

*Ashwander v. Tenn. Valley Auth.*,
297 U.S. 288 (1936).................................................................................................9

*Banfield v. Cortés*,
110 A.3d 155 (Pa. 2015) ..........................................................................................5

*Brethren Mut. Ins. Co. v. Hoffman*,
No. 07-1817, 2008 WL 8958284 (M.D. Pa. Aug. 20, 2008) ..................................14

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942)...............................................................................................14

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)......................................................................................3, 13, 14

*Casey v. Clayton Cnty.*,
No. 04-871, 2007 WL 788943, 2007 WL 788943 (N.D. Ga. Mar. 14, 2007) ..........8

*Chez Sez III Corp. v. Township of Union*,
945 F.2d 628 (3d Cir. 1991)...............................................................................10, 12

*Citizens for John W. Moore Party v. Bd. of Election Comm'rs of City of Chicago*,
781 F.2d 581 (7th Cir. 1986) ....................................................................................8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..................................................................................................16

*D.R. v. Middle Bucks Area Vocational Technical Sch.*,
972 F.2d 1364 (3d Cir. 1992)..............................................................................15, 18

*Elkin v. Fauver*,
969 F.2d 48 (3d Cir. 1992).......................................................................................18

*England v. La. State Bd. of Med. Exam'rs*,
375 U.S. 411 (1964)................................................................................................10

*Hunter v. Hamilton Cnty. Bd. of Elections*,
    850 F. Supp. 2d 795 (S.D. Ohio 2012) ................................................................8

*Kelly v. Maxum Specialty Ins. Grp.*,
    868 F.3d 274 (3d Cir. 2017)................................................................10

*Lance v. Coffman*,
    549 U.S. 437 (2007)................................................................15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................15, 16, 19, 20

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977)................................................................8

*NAACP Phila. Branch v. Ridge*,
    No. 00-2855, 2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ......................10, 12, 16

*NAACP v. Boockvar*,
    No. 364 MD 2020 (Pa. Commw. Ct.) ................................................................12

*Nolles v. State Comm. for the Reorg. of Sch. Dists.*,
    524 F.3d 892 (8th Cir. 2008) ................................................................19

*Paher v. Cegavske*,
    No. 20-243, 2020 WL 2089813 (D. Nev. Apr. 30, 2020)................................19

*Pennhust State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)................................................................9

*Pennsylvania Dem. Party v. Boockvar*,
    No. 407 MD 2020 (Pa. Commw. Ct.) ................................................................12

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987)................................................................10

*Pierce v. Allegheny Cnty. Bd. of Elections*,
    324 F. Supp. 2d 684 (W.D. Pa. 2003)................................................11, 13

*R.R. Comm. of Tex. v. Pullman Co.*,
    312 U.S. 496 (1941)................................................................ *passim*

*Reifer v. Westport Ins. Corp.*,
    751 F.3d 129 (3d Cir. 2014)................................................................14

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)................................................................16, 17

*Riley v. Simmons*,
    45 F.3d 764 (3d Cir. 1995)...............................................................................13

*Shambach v. Bickhart*,
    845 A.2d 793 (Pa. 2004) .....................................................................................5

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007)...........................................................................................10

*Snowden v. Hughes*,
    321 U.S. 1 (1944)...............................................................................................18

*State Auto Ins. Cos. v. Summy*,
    234 F.3d 131 (3d Cir. 2000)..............................................................................14

*Trinsey v. Montgomery Cnty. Bd. of Elections*,
    No. 87-6975, 1988 WL 82877 (E.D. Pa. Aug. 4, 1988) ...............................8, 21

*Welborn v. Internal Revenue Serv.*,
    218 F. Supp. 3d 64 (D.D.C. 2016) ..........................................................13, 17, 20

*Woodard v. Andrus*,
    419 F.3d 348 (5th Cir. 2005) .............................................................................15

*Wozniak v. Adesida*,
    932 F.3d 1008 (7th Cir. 2019) .............................................................................9

**Statutes**

25 Pa. Stat. § 2602(c) ..............................................................................................4

25 Pa. Stat. § 2602(q) ..............................................................................................4

25 Pa. Stat. § 2606 ..................................................................................................4

25 Pa. Stat. § 2726(c) ..............................................................................................4

25 Pa. Stat. §§ 2727-2729.1 ....................................................................................4

25 Pa. Stat. § 3050(a.4)(5)(ii)(C) ...........................................................................5

25 Pa. Stat. § 3146.5(b)(2) ......................................................................................6

25 Pa. Stat. § 3146.6(a) .......................................................................................3, 4

25 Pa. Stat. Ann. § 3146.6 (West)...........................................................................2

25 Pa. Stat. § 3146.8 ................................................................................................5

25 Pa. Stat. § 3150.16 ..........................................................................................................3, 4

25 Pa. Stat. Ann. § 3150.16 (West)..........................................................................................2

42 U.S.C. § 1983 ..................................................................................................................15, 18

Act of Mar. 27, 2020 (P.L. 41, No. 12) § 17(2), 2020 Pa. Legis. Serv. Act 2020-12
   (S.B. 422) ...............................................................................................................................2

## Other Authorities

Federal Rule of Civil Procedure 57 .........................................................................................15

U.S. Const. amend. XI ...........................................................................................................2, 8, 9

U.S. Const. amend. XIV ............................................................................................................18

## I.     INTRODUCTION

Although Plaintiffs' initial Complaint sought—without any foundation—to stoke fears about voting-by-mail generally, it purported to limit its legal claims to three discrete alleged practices: (1) setting up locations outside board of elections offices for voters to return absentee and mail-in ballots; (2) putting ballots returned without secrecy envelopes into secrecy envelopes and later counting them, rather than rejecting them; and (3) complying with the Pennsylvania statute restricting poll watchers' official activities to polling places in the poll watchers' counties of residence. On that basis, the Court granted Plaintiffs' motion to schedule an expedited declaratory judgment hearing to address whether practices (1) and (2) violate the Pennsylvania Election Code, and whether the statutory limitations on poll watchers (3) are unconstitutional.

In their Amended Complaint ("Compl."),[1] Plaintiffs have abandoned their earlier pretense of restraint, as well as any promise of a streamlined declaratory judgment proceeding limited to answering discrete legal questions. Plaintiffs now seek to entangle the Court in superintending—during an unprecedented public health crisis—effectively every aspect of the absentee and mail-in voting process in Pennsylvania, from the ballot applications to vote tabulation. Plaintiffs have added, for example, claims for injunctive relief "requir[ing] county election boards to verify the identification and qualification for each applicant of [sic] an absentee or mail-in ballot, and to properly enforce which voters can and cannot vote on Election Day at the polling place after having applied for and either voted or not voted their absentee or mail-in ballots." (Compl. ¶ 192.) Such an injunction would turn this federal court into a forum

---

[1] Dismayingly, even though Plaintiffs filed their Amended Complaint one business day after most Defendants filed their Motions to Dismiss, Plaintiffs indicated to Defendants during the meet-and-confer process that they did not intend to amend the pleading. (*See* ECF 184, at 3.)

for litigating virtually every allegation of any irregularity or error in any future Pennsylvania election.

What is more, these new demands for relief are built on bald assertions that Defendants (or some unspecified subset of them) will fail to comply with certain undisputed requirements of Pennsylvania election law. Simply put, there are no well-pled factual allegations showing that (a) Defendants have failed to comply with the law in the past, let alone that (b) there is an imminent, non-speculative threat of a future violation. Take, for example, Plaintiffs' remarkable new allegation that, in the June 2020 primary election, Defendants improperly disregarded a Pennsylvania Election Code provision permitting voters "who have applied [for] but not voted their absentee and mail-in ballots" to spoil those ballots at polling places and "vote regular ballots" on election day, and Plaintiffs' request for an injunction requiring Defendants to comply with the provision in the future. (Compl. ¶¶ 143-149 & pp. 71-72, ¶ F.) *The statutory provision allowing the spoiling of mail-in ballots does not, by its express terms, take effect until **November 2, 2020**.*[2] In other words, Plaintiffs accuse Defendants of failing to enforce a statutory requirement that was not yet in place. This raises serious questions about whether Plaintiffs have adequately investigated the legal and factual bases of their claims—and is emblematic of the baselessness of the Amended Complaint's allegations.

The flaws specific to each of the Amended Complaint's new allegations are enumerated in other motions to dismiss that Movants join.[3] This Motion addresses several overarching reasons that the Court should reject Plaintiffs' invitation to insert itself into the administration of Pennsylvania election laws. First, this Court *cannot* decide the state-law claims because the

---

[2] Act of Mar. 27, 2020 (P.L. 41, No. 12) § 17(2), 2020 Pa. Legis. Serv. Act 2020-12 (S.B. 422); *see* 25 Pa. Stat. Ann. §§ 3146.6, 3150.16 (West).

[3] *See, e.g.*, Certain Defendant Counties' Motion to Dismiss Amended Complaint (ECF 274, 275).

Eleventh Amendment immunizes both the Secretary of the Commonwealth (the primary defendant) and each of the defendant boards of elections from state-law claims brought in federal courts. Indeed, the county boards are immune from *all* of Plaintiffs' claims (state or federal). Second, even if the Court had jurisdiction to decide the state-law claims, abstention would be warranted because (a) the claims present unsettled state-law questions that could obviate the federal claims (*Pullman* abstention) and (b) federal-court resolution of those claims would disrupt Pennsylvania's effort to establish a coherent policy on a matter of important state concern (*Burford* abstention). Third, and independent of the first two considerations, it is well settled that federal courts should decline to exercise jurisdiction over claims seeking a declaratory judgment as to state law, particularly where, as here, the state-law questions are pending in a parallel, expedited state-court proceeding. Each of these doctrines is sufficient, by itself, to warrant abstention; taken together, they present an overwhelming case for the Court to stay its hand.

If the case proceeds, all of Plaintiffs' claims must also be dismissed because they fail every prong of the test for standing. First, the purported injuries Plaintiffs seek to remedy—fraud and vote dilution—are hypothetical rather than actual, concrete, and imminent. Second, even if the alleged harm existed, it would not fairly be traceable to any alleged conduct by Defendants. And third, the relief sought would not redress it.

## II.   PLAINTIFFS' ALLEGATIONS

### A.   Allegations That Require Interpretation of the Pennsylvania Election Code

#### 1.   What It Means to Deliver a Ballot to the "County Board of Election"

The Election Code provides that absentee and mail-in ballots must be mailed "or deliver[ed] … in person to [the elector's] *county board of election*." 25 Pa. Stat. §§ 3146.6(a), 3150.16 (emphasis supplied). Plaintiffs interpret these provisions to mean that ballots must be delivered to the "office of [each] county board[] of elections." (Compl. ¶ 192.) Accordingly,

Plaintiffs allege, certain county boards of elections violated the Election Code by permitting voters to hand-deliver their absentee and mail-in ballots to designated locations other than the "offices" of the county boards. But the statute nowhere expressly limits delivery to any particular location, and Plaintiffs point to no legal authority supporting their construction. It is far from clear why in-person delivery of ballots to the county board at satellite locations established by the county board—including to alleged "drop boxes" set up and controlled by the board to receive ballots, or to board employees who travel around the county to collect ballots on behalf of the board—would not constitute "deliver[y] … in person to [the] county board of election." Put simply, Plaintiffs' proposed statutory interpretation is novel and untested.

The same is true with respect to the statutory notice requirements and site criteria Plaintiffs invoke "[i]n the alternative" to their argument that the Election Code bars delivery of ballots to satellite board locations. (*See* Compl. p. 71 ¶ B.) The requirements Plaintiffs cite apply to "polling places." *See* 25 Pa. Stat. §§ 2606, 2726(c), 2727-2729.1, *cited by* Compl. ¶¶ 130, 132, 240-241. But 25 Pa. Stat. §§ 3146.6(a) and 3150.16 do not require that voted ballots be returned to a "polling place," but rather to the "county board." Those terms are separately defined in the Election Code. 25 Pa. Stat. § 2602(c), (q). Further, it is not at all clear why the location to which an already voted absentee or mail-in ballot is delivered should be deemed a "polling place," which is defined as "the room provided in each election district for voting at a primary or election." 25 Pa. Stat. § 2602(q). Once again, no court has yet addressed this question.

In Plaintiffs' view, Defendants' use of certain ballot-delivery locations not only contradicts the Election Code; it also somehow "increase[s] the potential for ballot fraud or tampering," thereby violating, Plaintiffs say, the Pennsylvania and U.S. Constitutions. (Compl. ¶ 203; *accord id.* ¶¶ 212-13, 220, 243, 250.)

### 2.     Whether Election Administrators Must Reject Ballots Submitted Without Secrecy Envelopes

Pennsylvania law provides that absentee and mail-in voters should place their completed ballot inside an envelope with no identifying marks, and then place that envelope inside another envelope that bears the voter's identifying information and signature. According to Plaintiffs, if a voter inadvertently returns a ballot with the exterior envelope but not the secrecy envelope, Pennsylvania law requires election administrators to discard the ballot, disenfranchising the voter. (*See id.* ¶ 158.) Plaintiffs allege that the Pennsylvania Department of State nonetheless issued a "directive" taking a different interpretation of the Election Code—and suggesting that county boards insert these ballots into "empty official election ballot envelopes or privacy sleeves" until they are tabulated—and that "many counties" followed this "directive." (*Id.* ¶¶ 153-57.) Plaintiffs seek an order barring county boards from counting such ballots.

The Department's interpretation of the Election Code is entitled to "great deference." *Banfield v. Cortés*, 110 A.3d 155, 174 (Pa. 2015). No court has considered Plaintiffs' contrary interpretation. Notably, although the Election Code expressly directs boards of elections not to count *provisional* ballots that lack a secrecy envelope, *see* 25 Pa. Stat. § 3050(a.4)(5)(ii)(C), no such express language is found in the portions of the statute applicable to mail-in or absentee ballots, *see* 25 Pa. Stat. § 3146.8. And, significantly, the Pennsylvania Supreme Court has "refuse[d] to read an all-out prohibition into [an Election Code provision] where one is not explicitly required, particularly given th[e] Commonwealth's longstanding policy to protect the elective franchise." *Shambach v. Bickhart*, 845 A.2d 793, 802 (Pa. 2004).

Just as with their claims regarding ballot-delivery locations, Plaintiffs attempt to stack speculative constitutional claims on top of their statutory ones. Their theory is the same: they

allege that counting ballots returned without a secrecy envelope "increase[s] the potential for ballot fraud or tampering." (Compl. ¶ 203; *accord* ¶¶ 211-213, 220.)

**B.** **New, Conclusory Allegations of Past and Future Election Code Violations**

Plaintiffs' Amended Complaint adds conclusory assertions that certain Defendants have violated or will violate other Election Code provisions, and argues that these purported violations require declaratory and injunctive relief. First, Plaintiffs assert, "[u]pon information and belief," that "several counties … approved all applications for absentee or mail-in ballots without performing [the] verification of the applicant's qualifications or identification" required by the Election Code. (*Id.* ¶ 121.) The sole basis for this conjecture is Plaintiffs' interpretation of certain "guidance" provided by the Department of State, which Plaintiffs interpret as "suggest[ing]" that county boards disregard the verification requirement and "just approve all submitted applications unless someone raises a 'bona fide' objection." (*Id.* ¶¶ 119-121.) In fact, the portion of the guidance document at issue clearly states that it is addressing only "in-person applications" (*see id.* ¶ 116 (link)), and the "bona fide objection" language simply reproduces the exact same terminology used in the applicable Election Code provision. *See* 25 Pa. Stat. § 3146.5(b)(2).

Second, Plaintiffs claim that "some, but not all" county boards—specifically, "upon information and belief," the Philadelphia County Board of Elections—"count absentee and mail-in ballots that … do not include on the outside envelope [the] completed declaration" that the Election Code requires. (Compl. ¶¶ 158, 201). The Amended Complaint provides no basis whatsoever for that conclusion.

Third, Plaintiffs allege that "some, but not all" county boards count ballots that are "delivered in-person by third-parties for non-disabled voters, despite the Election Code's contrary mandate." (Compl. ¶ 201.) The sole basis for this assertion is an "announce[ment]" by the Delaware County Board of Elections. But Plaintiffs again misread the very documents on

which they rely.  (*See id.* ¶ 128.) The "announcement" makes clear that third-party ballot delivery is available only for "[r]esidents *who are not able to deliver their ballot in person*." (Exhibit 1.) It further specifies that, as a prerequisite for third-party delivery, the voter must complete a form certifying that she is "qualified under Pennsylvania law to vote by absentee or alternative ballot because of my physical disability." (*See* Exhibits 1, 2, 3.)

Fourth, as discussed in Section I above, Plaintiffs incorrectly assert that Defendants should have followed a statutory procedure during the primary election that was not in effect at that time. (Compl. ¶¶ 116-121.)

Fifth, Plaintiffs assert that, in the primary election, 40 people improperly cast regular ballots after turning in a ballot by mail, *though all but four of the additional votes were caught and excluded from the vote count*. (Compl. ¶¶ 150-151; Exhibit 4.) But Plaintiffs do not allege that this was anything more than an administrative glitch. They do not allege—and, of course, cannot credibly allege—that any Defendant has a practice or policy of allowing double-voting, and they provide no basis to believe any double-voting will occur in the future.

### C.   Allegations That Pennsylvania Statutory Limitations on Poll Watchers' Official Activities Are Unconstitutional

As Plaintiffs acknowledge, Pennsylvania law "creates the position of poll-watcher" and allows political candidates and parties to appoint them. (*Id.* ¶ 51.) Under the Election Code, (a) "poll watchers may only serve in their county of residence" (*id.* ¶ 3) and, (b) although they are allowed to appear at polling places, at any public session of the county board of elections, and at any computation and canvassing of election returns (*id.* ¶ 59), Pennsylvania law does not authorize them to be "present at locations that are used to collect mail-in and absentee ballots … or the pre-canvass meeting of such voted absentee and mail-in ballots" (*id.* ¶ 186). Plaintiffs contend that these restrictions "foster[] an environment that encourages ballot fraud or

tampering" (*id.* ¶ 228), thereby supposedly infringing Plaintiffs' right to vote under the U.S. and Pennsylvania Constitutions (*id.* ¶¶ 229-30, 234).

## III.   ARGUMENT

### A.   Plaintiffs' Claims Are Barred by the Doctrine of Sovereign Immunity

As an initial matter, this Court lacks jurisdiction to adjudicate the claims against the county boards of election by virtue of Eleventh Amendment sovereign immunity. The test for whether such entities are entitled to sovereign immunity is whether they are acting as "an arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Courts have repeatedly found that county boards of election—including, specifically, Pennsylvania county boards—are entitled to immunity, at least where, as here, the claims against them challenge their administration of federal and state-wide elections. *Trinsey v. Montgomery Cnty. Bd. of Elections*, No. 87-6975, 1988 WL 82877, at *1 (E.D. Pa. Aug. 4, 1988) (claims against Pennsylvania county boards of election are "barred by the Eleventh Amendment"); *accord Casey v. Clayton Cnty.*, No. 04-871, 2007 WL 788943, 2007 WL 788943, at *8 (N.D. Ga. Mar. 14, 2007) ("there can be little doubt" that a Georgia county board of election "acts as an arm of the state for purposes of conducting elections in general"); *Hunter v. Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 801 (S.D. Ohio 2012) (Ohio county board of election, which "is created by statute" and "vested with broad powers to manage the conduct of elections on behalf of the State and does so under the guidance of the Secretary of State," "functions as an arm of the State with respect to its review and counting of provisional ballots"); *see also Citizens for John W. Moore Party v. Bd. of Election Comm'rs of City of Chicago*, 781 F.2d 581, 584 (7th Cir. 1986) (Easterbrook, J., dissenting from decision to certify state-law question to Illinois Supreme Court) (explaining that city board of election, which "is constituted under state rather than municipal law and enforces state statutes," was an arm of the state for immunity purposes).

In accordance with this decisional authority, Movants—who are constituted under state law, enforce state statutes, and exercise jurisdiction to conduct elections on behalf of the Commonwealth (the elections at issue in this case are federal presidential and congressional elections) under the guidance of the Secretary—are arms of the state under the Eleventh Amendment. Furthermore, because Plaintiffs have named only the boards themselves and not individual officials, the boards are immune from *all* of Plaintiffs' claims, whether based on state or federal law. *See Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 625-26 (E.D. Pa. 2018) (explaining that the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), which creates a narrow exception to Eleventh Amendment sovereign immunity for "suits against state officials in their official capacity seeking injunctive relief to end ongoing violations of federal law," does not apply where plaintiffs have sued only agencies and not individual officials).[4]

**B.** **The Court Should Abstain From Deciding the Federal Constitutional Claims Concerning Ballot-Delivery Locations and "Naked" Ballots Pending State-Court Determination of State Law**

Although Plaintiffs' claims regarding ballot-delivery locations and "naked" ballots depend entirely on their interpretation of the Election Code, Plaintiffs seek federal-court resolution of these state-law issues, tacking on purported federal constitutional claims in an attempt to create federal jurisdiction. But "a constitutional suit is not a way to enforce state law through the back door," *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019), and it is well settled that federal courts will not "decide questions of a constitutional nature unless absolutely necessary to a decision." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). By the same token, state "statutes 'should be exposed to state construction or

---

[4] As Secretary Boockvar argued in her Motion to Dismiss (*see* ECF 185, at 10-12), notwithstanding *Ex parte Young*, sovereign immunity bars the Complaint's claims against her as well. *See Acosta*, 288 F. Supp. 3d at 626-27 (citing *Pennhust State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, 122 (1984)).

limiting interpretation before the federal courts are asked to decide upon their constitutionality.'"

*NAACP Phila. Branch v. Ridge*, No. 00-2855, 2000 WL 1146619, at \*6 (E.D. Pa. Aug. 14, 2000)

(quoting *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 416 n.7 (1964)). For several

related reasons, that is plainly the proper course here.[5]

### 1.     The Court Should Abstain Under *Pullman*

Even if this Court had jurisdiction over Plaintiffs' claims, abstention would be warranted

under the *Pullman* doctrine. *See R.R. Comm. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

> The *Pullman* concern is that when federal courts interpret state statutes in a way
> that raises federal constitutional questions, without the benefit of state-court
> consideration, "a constitutional determination is predicated on a reading of the
> statute that is not binding on state courts and may be discredited at any time—thus
> essentially rendering the federal-court decision advisory and the litigation
> underlying it meaningless."

*NAACP Phila. Branch*, 2000 WL 1146619, at \*4 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S.

1, 11 (1987)). "This concern has special significance in this case, where the federal constitutional

question might be eliminated by securing a Pennsylvania court's determination of an unresolved

question of its local law." *Id.*

A court's *Pullman* analysis first considers "whether three special circumstances exist:"

(1) "[u]ncertain issues of state law underlying the federal constitutional claims brought in federal

court"; (2) "[s]tate law issues amenable to a state court interpretation that would obviate the need

for, or substantially narrow, the scope of adjudication of the constitutional claims"; and (3) "[a]

federal court's erroneous construction of state law would be disruptive of important state

policies." *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991).

---

[5] Although the sovereign-immunity bar discussed above is jurisdictional, this Court may decide
to abstain before resolving the sovereign-immunity question. *See Kelly v. Maxum Specialty Ins.
Grp.*, 868 F.3d 274, 281 n.3 (3d Cir. 2017) (discussing *Sinochem Int'l Co. v. Malay. Int'l
Shipping Corp.*, 549 U.S. 422, 431 (2007)).

First, as discussed in Section II.A above, none of the statutory-interpretation questions presented by Plaintiffs has been decided by any court, and there is a substantial basis to contest the interpretations Plaintiffs proffer. The second requirement under *Pullman* is also met: "If [a] state court concurs with Plaintiff's interpretation of the [Election Code]" regarding ballot-delivery locations and naked ballots, "the basis for [Plaintiffs'] constitutional claim[s]" on these issues "would be eliminated." *Fuentes*, 207 F. Supp. 3d at 450 (internal quotation marks omitted). This is, if anything, even more true to the extent that Plaintiffs assert equal protection claims based on alleged variations in county practices. (*See* Compl. ¶¶ 32, 116.) The premise of such claims is that, although the federal Constitution might not be offended by any *particular* resolution of the statutory-interpretation questions, it could still require that there *be* a clear resolution so that practices are consistent across counties. But in that case, principles of federalism and comity would plainly require that a state court—not a federal court—decide what that state-law resolution should be. *See Pierce v. Allegheny Cnty. Bd. of Elections*, 324 F. Supp. 2d 684, 704 (W.D. Pa. 2003) (abstaining where state-court construction of absentee-ballot provision at issue could obviate need to decide equal protection claim).

The third prong of the *Pullman* test is also satisfied. Abundant precedent stands for the proposition that "an erroneous interpretation of [the Election Code] would be gravely detrimental to important Pennsylvania interests concerning state election procedures." *Fuentes*, 207 F. Supp. 3d at 450 (collecting cases); *accord, e.g.*, *Pierce*, 324 F. Supp. 2d at 703-04 (noting that "an erroneous construction of the absentee ballot provision of the election code could disrupt extremely important state policies concerning voting rights"). "An erroneous decision so temporally close to the election"—when election officials are working, in the face of an ongoing

11

pandemic, to finalize electoral procedures and preparations—would only exacerbate the disruptive effect. *See Fuentes*, 207 F. Supp. 3d at 450.

"[A]bsent significant reasons to the contrary, abstention is generally proper once it [has been] ascertained that the [three] threshold 'special circumstances' have been fulfilled." *Chez Sez*, 945 F.2d at 633. No such countervailing reasons exist here. An adequate state-court remedy is available to Plaintiffs. Notably, although "[t]here need not be a pending state court action in order for a federal court to invoke *Pullman*," *Fuentes*, 207 F. Supp. 3d at 448, an action raising the same statutory questions presented here is already pending in the Pennsylvania Commonwealth Court. *See* ECF 76, Ex. A (Petition in *Pennsylvania Dem. Party v. Boockvar*, No. 407 MD 2020 (Pa. Commw. Ct.)) (raising same statutory issues raised here); *see also id.*, Ex. B (Petition in *NAACP v. Boockvar*, No. 364 MD 2020 (Pa. Commw. Ct.)) (seeking, *inter alia*, order requiring county boards to provide satellite ballot return locations).

On July 30, 2020, the Commonwealth Court ordered expediting briefing of the Preliminary Objections in each of these cases, indicating that it intends to address these legal issues promptly. *See* Exhibit 5 (order in *Pa. Dem. Party*); Exhibit 6 (order in *NAACP*). Two of the Plaintiffs here have applied to intervene in each case, and have been given permission to file *amicus* briefs while their applications are pending. *See* Exhibit 7 (Application for Leave to Intervene filed on July 27, 2020, in *Pennsylvania Dem. Party*, without exhibits); Exhibit 1 to Movants' Motion to Dismiss, ECF 212-1 (Motion to Intervene and proposed Preliminary Objections filed in *NAACP v. Boockvar* on July 20, 2020); Exhibits 5, 6. Thus, as in *Fuentes*, "Plaintiff[s] [are] asking this federal District Court to find that state officials have wrongly interpreted state law, and to replace their interpretations with Plaintiff's own. This role is not [a

federal court's] to assume where, as here, an alternative appropriately exists with the Pennsylvania state courts." *Id.* at 452.

### 2.      The Court Should Abstain Under *Burford*

The *Burford* doctrine provides an independent basis for abstention. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "The two-step analysis in *Burford* … requires the district court: (1) to determine whether 'timely and adequate state-court review' is available"; and "(2) if it is, to decide whether 'the case before it involves difficult questions of state law impacting on the state's public policy or whether the distinct court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern.'" *Pierce*, 324 F. Supp. 2d at 703 (quoting *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)). Both prongs are satisfied here. As noted above, the Pennsylvania Commonwealth Court can provide timely and adequate review of the Election Code questions. And federal-court decision of those unsettled questions would threaten to disrupt Pennsylvania's complex election administration regime. *See Republican Party*, 218 F. Supp. 3d at 402 (noting that "[t]he United States Constitution reserves to the states the power to regulate elections" and that Pennsylvania has exercised this power through a "comprehensive" and "complex" election code); *Fuentes*, 207 F. Supp. 3d at 450 (federal-court decision of election code questions "would disrupt important state policies"). Indeed, the Amended Complaint's new (facially deficient) allegations only underscore that Plaintiffs are asking this Court to superintend virtually every aspect of Pennsylvania's mail-in voting system for the purported purpose of ensuring compliance with state law. Abstention is thus warranted under *Burford* as well. *See Pierce*, 324 F. Supp. 2d at 703 (abstaining based on *Pullman* but finding "the *Burford* doctrine" was also "instructive").

13

3.      **The Court Should Decline to Exercise Jurisdiction Under *Brillhart-Wilton***

Where, as here, plaintiffs ask a federal court for a declaratory judgment as to state-law questions, and there is a parallel state-court proceeding presenting the same questions, the federal court should generally decline to exercise jurisdiction. *See State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133-36 (3d Cir. 2000) (discussing *Wilton*, 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144-45 (3d Cir. 2014) ("The existence of pending parallel state proceedings," while not a prerequisite, "militates significantly in favor of declining jurisdiction."). As the Third Circuit has explained: "In order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters." *Summy*, 234 F.3d at 136. This *Brillhart-Wilton* doctrine derives from the fact that the "Declaratory Judgment Act confers a discretion on the courts rather than an absolute right on litigants." *Id.* (citing *Wilton*, 515 U.S. at 287). Accordingly, federal courts can appropriately refuse to entertain declaratory judgment claims even in circumstances that would not warrant *Pullman* or *Burford* abstention. *Wilton*, 515 U.S. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."). The *Brillhart-Wilton* doctrine is broader than abstention doctrines in another way: there is no requirement that the state-law question at issue be uncertain. *Brethren Mut. Ins. Co. v. Hoffman*, No. 07-1817, 2008 WL 8958284, at *2 (M.D. Pa. Aug. 20, 2008) (citing *Summy*, 234 F.3d at 136).

The *Brillhart-Wilton* doctrine is particularly relevant now that Plaintiffs, seeking to avoid the demanding standard applicable to preliminary injunction proceedings (*see* ECF 6 ¶ 13), have successfully moved to convert this matter into an expedited declaratory judgment proceeding

under Federal Rule of Civil Procedure 57. (*See* ECF 124 (Order).) And under that doctrine, it is clear that Plaintiffs' state-law declaratory judgment claims—the resolution of which will or may moot the related federal constitutional claims—should be decided by the Pennsylvania courts. A parallel proceeding is pending in the Commonwealth Court, raising the same Election Code questions as Plaintiffs' initial Complaint (*i.e.*, all of the Election Code questions that present an actual dispute over the proper interpretation and application of the statute) and involving all of the same Defendants. *See supra* page 12. Certain Plaintiffs have moved to intervene and participate. For this reason, too, this case should be stayed to allow the Pennsylvania courts to resolve the Complaint's core claims about the proper interpretation of Pennsylvania statutes.

### C.    Plaintiffs' Claims Fail for Lack of Standing

If and when this Court reaches Plaintiffs' constitutional claims, it should dismiss them. It is hornbook law that "a violation of a state statute alone is not cognizable under [42 U.S.C.] § 1983" (which provides the purported cause of action for Plaintiffs' federal constitutional claims) "because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005); *accord D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1375 (3d Cir. 1992). Plaintiffs' constitutional theory here is that the alleged practices they challenge will allow fraud and vote dilution. Indeed, the bogeyman of fraud stalks the entire Complaint; the vague specter of fraud and vote dilution is the alleged injury on which all of the Complaint's counts are based. (*See, e.g.*, ¶¶ 202-03, 212, 220, 228, 234, 243, 250, 260-61, 265.) Plaintiffs' allegations, however, fail to establish the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), "which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability," *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Nor do Plaintiffs satisfy the prudential standing requirements. Further, the Amended Complaint fails to

establish the additional prerequisites of standing needed to obtain prospective declaratory and injunctive relief, namely, a "threat of [future] injury … both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

### 1. Plaintiffs Fail to Allege an Actionable Injury

Plaintiffs' allegations satisfy none of these elements. A cognizable "injury in fact" requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). "Allegations of 'possible future injury' are not sufficient …." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011). "*A plaintiff therefore lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties.*" *Id.* (citing *Lujan*, 504 U.S. at 564) (emphasis added). But that is precisely the type of "injury" Plaintiffs allege here: the indefinite risk that unknown fraudsters may, in the future, commit voting fraud by somehow exploiting (a) various practices Plaintiffs allege, including (i) allowing delivery of ballots to the county boards at locations other than their offices, and (ii) the "clothing" of "naked" ballots in secrecy envelopes pending later removal and counting during the canvassing process, or (b) the enforcement of Pennsylvania's poll-watcher statute.[6]

Notably, despite Plaintiffs' alarmist rhetoric, the Amended Complaint does not identify a single instance of voter fraud from the June 2020 primary election (the only election in which the county boards allegedly employed any of the practices at issue). In fact, the lone irregularity that Plaintiffs could find, 40 instances of "double voting" (almost all of which were caught and

---

[6] In their proposed Preliminary Objections in the *NAACP* case, two of this case's Plaintiffs assert that that case is not ripe because "Petitioner's requested relief seeks to address alleged injuries that might—but might not—occur. Petitioner does not allege any facts to show that Petitioner or its members are likely to suffer a constitutional deprivation. That Petitioner can speculate … does not give rise to a cause of action." (ECF No. 212-1, Ex. A ¶¶ 23-24.) Speculative claims are no more actionable in this Court than they are in Pennsylvania state court.

excluded from tabulation) is expressly acknowledged to be "not fraud" and is not tied to the use of particular ballot-delivery locations or any other alleged county "practice" in any way. (Compl. ¶ 150.) These allegations are manifestly insufficient to show an imminent, concrete injury in fact.

With respect to their poll-watcher allegations, Plaintiffs rely on the conclusory assertion that simply because there is a registration gap between Democrats and Republicans in some counties (*id.* ¶¶ 177-78), restricting poll watchers to their counties of residence will make it "difficult or functionally impracticable for candidates and parties to have poll watchers at all locations" where ballots are cast in the general election (*id.* ¶ 228). The conclusion does not follow from the premise. And insofar as Plaintiffs complain that poll watchers are not authorized to accost voters at mailboxes, drop boxes, or other ballot return locations, the Amended Complaint fails, as noted above, to allege any actual voter fraud, or indication of imminent voter fraud, at these locations. Further, and once again, Plaintiffs' alleged injury depends on the hypothetical future acts of unidentified third parties. In sum, Plaintiffs' allegations present a textbook example of a conjectural and hypothetical—and thus jurisdictionally inadequate— injury. *See Reilly*, 664 F.3d at 42 ("allegations of hypothetical, future injury" potentially resulting from allegedly insufficient security measures "are insufficient" to confer standing); *accord Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 77 (D.D.C. 2016) ("the theory that [Plaintiffs] suffer an increased threat of future identity theft and fraud" as a result of a security breach fails to establish injury in fact because it is "entirely speculative and depends on the decisions and actions of one or more independent, and unidentified, actor(s)").

In their Amended Complaint, Plaintiffs attempt to cure this deficiency by alleging the possibility that certain additional Election Code requirements will not be complied with, and by suggesting that the mere potential of counting a vote that is "invalid" under the Election Code

suffices to establish a "vote dilution" claim cognizable under the federal Constitution. The attempt fails for several reasons. First, as shown above, *see supra* Section II.B, Plaintiffs fail to plead that *any* "invalid" votes have actually been cast as a result of the newly alleged practices. At most, the Amended Complaint alleges that a handful of "double-votes" were inadvertently counted. But Plaintiffs do not (and cannot) allege that Defendants *intend* to allow double-voting, that double-voting is likely to happen in the future, or that, even if it were, the Court could fashion any declaratory or injunctive relief that would prevent (*i.e.*, "redress") it.

Second, Plaintiffs' argument rests on the mistaken premise that the counting of any ballot that is "invalid" under any state law inflicts, *ipso facto*, a "vote dilution" injury cognizable under the U.S. Constitution. That novel, sweeping theory is simply wrong. "An alleged violation of state law … does not state a [federal] claim under [42 U.S.C. §] 1983." *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992). Thus, "illegality under [a] state statute can neither add to nor subtract from the constitutional validity of a state's actions." *D.R. v. L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1375-76 (3d Cir. 1992) (quoting *Snowden v. Hughes*, 321 U.S. 1, 11 (1944)) (brackets and internal quotation marks omitted). As a corollary, action by state officials, "even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature." *Snowden*, 321 U.S. at 11. Here, Plaintiffs do not contend, nor could they, that the U.S. Constitution prohibits states from clothing and counting "naked" ballots, setting up ballot return locations, counting ballots received without declarations, or counting ballots returned by third parties. Accordingly, even if Plaintiffs' allegations regarding the potential counting of "invalid" ballots were otherwise adequate (as they are not), they would fail to identify a cognizable constitutional injury.

Third, Plaintiffs' vote dilution theory asserts, at most, a generalized grievance insufficient to confer standing. Plaintiffs do not allege that they are a member of some particular group that is the victim of racial gerrymandering or some other form of intentional discrimination by state actors. Plaintiffs' interest in "vote dilution" is no different than that held by every other voter. Such a generalized grievance cannot confer standing. *Paher v. Cegavske*, No. 20-243, 2020 WL 2089813, at *5 (D. Nev. Apr. 30, 2020) ("purported injury of having [Plaintiffs'] votes diluted due to ostensible election fraud" fails to "state a concrete and particularized injury" (citing cases)); *Nolles v. State Comm. for the Reorg. of Sch. Dists.*, 524 F.3d 892, 900 (8th Cir. 2008) ("generalized grievance shared in common by all [Nebraska] voters" does not confer standing).

### 2.     Plaintiffs Fail to Plead Causation or Redressability

Plaintiffs also fail to establish the causation element of standing, which requires that "the injury be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," *Lujan*, 504 U.S at 560 (internal quotation marks and alterations omitted), and the redressability element, which requires that it "be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561. Here, any hypothetical voting fraud would be caused by third parties' illegal conduct, not any of the alleged county-board practices challenged in the Complaint. *See, e.g.*, *Alston v. Advanced Brands & Importing Co.*, 494 F.3d 562, 565 (6th Cir. 2007) (plaintiffs lacked standing to challenge advertising inducing minors to drink alcohol illegally because "the causal connection between the defendants' advertising and the plaintiffs' alleged injuries is broken by the intervening criminal acts of the third-party sellers and the third-party, underage purchasers").

Even putting that aside, the Complaint offers no basis to conclude that the existence, or not, of any of the challenged practices would ever be the difference as to whether fraud occurred.

The Complaint contains no allegation that any ballot-delivery location is any more susceptible than mailboxes to ballot harvesting, ballot destruction, or any other form of voter fraud. Given the ubiquity of mailboxes as compared to ballot-delivery locations, the Complaint provides no reason to conclude that Plaintiffs' hypothetical, conjectural injury would be prevented by elimination of satellite locations for in-person delivery of ballots. In the same vein, the Complaint says nothing whatsoever to explain how discarding ballots returned by citizens duly registered and eligible to vote—simply because they were not enclosed in a nested security envelope—will do anything to prevent fraud. And the Amended Complaint presents no reason to conclude there is any concrete, imminent threat of fraud that would (a) be thwarted by eliminating the challenged poll-watching restrictions but (b) occur if they remain in place. *See Republican Party*, 218 F. Supp. 3d at 406 ("Plaintiffs' preoccupation with the role of poll watchers to deter purported voter fraud disregards other aspects of the regulatory framework the Commonwealth designed to ensure ballot integrity and thus prevent vote dilution."); *see also Lujan*, 504 U.S. at 571 (redressability element was lacking where "it is entirely conjectural whether the nonagency activity that [allegedly] affects respondents will be altered … by the agency activity they seek to achieve"). There is no standing.

## IV.    CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court dismiss all claims in the Complaint with prejudice or, in the alternative, dismiss Counts IV, V, VIII, and IX of the Complaint with prejudice and stay the claims asserted in Counts I-III and VI-VII pending a final ruling by the Pennsylvania judiciary on the proper construction of the Election Code provisions at issue. *See Fuentes*, 207 F. Supp. 3d at 453 (abstaining under *Pullman* and staying the case "pending an adjudication from the state court on the pertinent matters of Pennsylvania law").

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: July 31, 2020

By:   */s/ Mark A. Aronchick*
      Mark A. Aronchick
      Michele D. Hangley
      John B. Hill*
      One Logan Square, 27th Floor
      Philadelphia, PA 19103
      Telephone: (215) 496-7050
      Email: maronchick@hangley.com

*Counsel for Bucks, Chester, Montgomery, and
Philadelphia County Boards of Elections*

*\* Pro hac vice motion to be filed*