**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR | ) | Civil Action |
| PRESIDENT, INC.; *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.: 2-20-CV-966 |
| v. | ) | |
| | ) | |
| KATHY BOOCKVAR in her capacity as | ) | |
| Secretary of the Commonwealth of | ) | |
| Pennsylvania; *et al.,* | ) | |
| | ) | |
| Defendants. | ) | Judge J. Nicholas Ranjan |

**<u>DEMOCRATIC INTERVENORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTS ........................................................................................... 2

    A.  Act 77 and Mail-In Ballot Requirements................................................... 2
    B.  Act 77 Did Not Change Poll Watcher Residency Requirement. ............... 3
    C.  Act 12 Response to the Pandemic. ............................................................. 4
    D.  County Boards Utilize Ballot Drop-Boxes to Collect Mail-In and Absentee
        Ballots for the 2020 Primary Election. ...................................................... 4
    E.  Most County Boards Count Naked Ballots.................................................. 5

III. RELEVANT PROCEDURAL HISTORY ........................................................ 6

    A.  Plaintiffs File this Action Against the Secretary of the Commonwealth and
        all Pennsylvania County Boards of Elections............................................. 6
    B.  Democratic Intervenors File Action Against Same Defendants in State
        Court. ......................................................................................................... 7

IV. ARGUMENT ...................................................................................................... 8

    A.  Pullman Abstention Requires This Court to Abstain in This Case in Its
        Entirety Until the State Court Resolves Democratic Intervenors' Petition. .......... 8

        1.  Uncertainty of State Law. ............................................................. 10
        2.  Effect of State Law on the Constitutional Claim. ....................... 13
        3.  Effect of an Erroneous Federal Court Decision of State Law. ..... 14
        4.  Equitable Considerations Require Abstention. ............................. 15

    B.  Abstention Under Burford, Younger, and Colorado River Is Also
        Warranted................................................................................................. 17
    C.  Counts IV and V of Plaintiffs' Amended Complaint Regarding the
        Pennsylvania Election Code's Poll Watcher Residency Requirement Fail. ......... 17
    D.  Counts VIII and IX of Plaintiffs' Amended Complaint Regarding Voting
        In-Person After Requesting A Mail-In Ballot Fails to State A Claim. ................ 19

V.  CONCLUSION.................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980)........................................................................................................9

*Baggett v. Bullitt*,
    377 U.S. 360 (1964)......................................................................................................14

*Chez Sez III*,
    945 F.2d at 631 ..................................................................................................9, 10, 13, 14

*Children First Foundation v. Legreide*,
    No. 04-2137, 2005 WL 3088334 (D.N.J. Nov. 17, 2005) .......................................9

*Chiropractic Am. v. Lavecchia*,
    180 F.3d 99 (3d Cir. 1999)............................................................................................8

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976)........................................................................................................2

*D'Iorio v. County of Delaware*,
    592 F.2d 681 (3d Cir. 1978).......................................................................................10

*De La Fuente v. Cortes*,
    207 F. Supp. 3d 441 (M.D. Pa. 2016), *aff'd*, No. 17-3778 (3d Cir. 2018) .................13, 14, 15

*Fender v. Wash. Cnty.*,
    No. 14-0142, 2014 WL 1491138 (W.D. Pa. Apr. 15, 2014)...................................13

*Growe v. Emison*,
    507 U.S. 25 (1993) (Scalia, J.)...............................................................................1, 8

*Harris County Comm'rs v. Moore*,
    420 U.S. 77 (1975).........................................................................................................8

*Johnson v. Phelan Hallinan & Schmieg, LLP*,
    202 A.3d 730 (Pa. Super. Ct. 2019)........................................................................20

*League of Women Voters of Pa. v. Commonwealth*,
    178 A.3d 737 (Pa. 2018) ...............................................................................12, 14, 15

*Libertarian Party of Pennsylvania, et al v. Wolf*,
    No. 20-cv-02299, Dkt. 57 (Memorandum Opinion) (E.D. Pa. July 14, 2020),
    *aff'd* No. 20-2481 (3rd Cir. July 28, 2020).............................................................1

*Little, et al v. Reclaim Idaho, et al*,
    591 U.S. ___ (2020) (Roberts, J. concurring)........................................................8

*NAACP Phila. Branch v. Ridge*,
    No. 00–2855, 2000 WL 1146619 (E.D. Pa., Aug. 14, 2000)...........................15, 16

ii

*Pennsylvania Democratic Party, et al v. Boockvar, et al,*
 No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020) ..............................................2, 6, 7

*Pierce v. Allegheny County Bd. of Elections,*
 324 F. Supp. 2d 684 (W.D. Pa. 2003)..............................................9, 10, 13, 15, 16

*Planned Parenthood of Central N.J. v. Farmer,*
 220 F.3d 127 (3d Cir. 2000)..............................................................................9

*R.R. Comm'n of Tex. v. Pullman Co.,*
 312 U.S. 496 (1941)......................................................................................2, 17

*Republican Nat. Comm. v. Democratic Nat. Comm.,*
 140 S. Ct 1205, 589 U.S. ___ (U.S. Apr. 6, 2020) (per curiam)..............................14

*Republican Party of Pa. v. Cortés,*
 218 F. Supp. 3d 396 (E.D. Pa. 2016) (Pappert, J.)..........................................11, 18

*Rouse v. II-IV Inc.,*
 No. 06-566, 2008 WL 398788 (W.D. Pa. Feb. 11, 2008).........................................6

*Stretton v. Disciplinary Bd. of Supreme Court of Pa.,*
 944 F.2d 137 (3d Cir. 1990)...........................................................................16

**Statutes**

25 P.S. § 3050(a.4)(5)(ii)(C)...........................................................................3

25 P.S. § 3146.6(a).............................................................................3, 10, 11

25 P.S. § 3146.6(b)(3).............................................................................4, 19

25 P.S. § 3150.16(a)...........................................................................3, 10, 11

25 P.S. §§ 3150.16(b)(1)-(2).........................................................................4

25 P.S. § 3150.16(b)(3)..............................................................................19

1 Pa. C.S. § 1926.........................................................................................20

1 Pa. C.S. § 1953.........................................................................................20

25 Pa. C.S. § 2687.........................................................................................3

25 Pa. C.S. § 2687(b) (2004)..........................................................................4

25 Pa. C.S. §§ 3146.8(g)(4)(i)-(iv)..................................................................3

25 Pa. C.S. §§ 3150.11-3150.17.....................................................................3

**Other Authorities**

Act 12 of 2020 § 1308(g)(1.1).....................................................................4, 19

Act 2020 § 17(2)(vii)...................................................................................4, 19

Fed. R. Civ. P. 12(b)(6)...............................................................................17

I.      **INTRODUCTION**

Masquerading as alleged federal constitutional violations, Plaintiffs' claims rest and turn on pure questions of state law involving the interpretation and application of state statutes. In the Commonwealth of Pennsylvania, the state's Constitution and Election Code set forth the definitive framework for the administration of the Commonwealth's elections, and Pennsylvania state courts have a long history of interpreting these state laws to protect, to the broadest extent possible, Pennsylvania voters' rights to fair and equal participation in the electoral process.

Principles of comity and federal court deference to state courts interpretation of their states' election laws are fundamental to our nation's system of federalism. By filing this opportunistic challenge to the administration of the Election Code in federal court instead of state court, Plaintiffs are asking this Court to ignore these sacred governing principles. The issues presented by Plaintiffs in this case belong before a state court. *See Libertarian Party of Pennsylvania, et al v. Wolf*, No. 20-cv-02299, Dkt. 57 (Memorandum Opinion) (E.D. Pa. July 14, 2020) (explaining "federal courts must act with great constraint when considering the prospect of intervening to change state election rules, issues normally best left to the people and their representatives"), *aff'd* No. 20-2481 (3rd Cir. July 28, 2020); *see also*, *Growe v. Emison*, 507 U.S. 25, 33 (1993) (Scalia, J.) (federal judges should defer consideration of electoral disputes to the State, through its legislative or judicial branch).

Here, Plaintiffs allege both state and federal Constitutional violations regarding the Secretary of the Commonwealth and Pennsylvania counties' Boards of Elections' ("Boards") (collectively "Defendants") administration of the 2020 Primary Election and the upcoming 2020 General Election. The alleged federal violations, however, are inextricably entangled with certain dispositive state law issues, namely the interpretation of portions of Act 77 of 2019 and Act 12 of 2020. These newly enacted statutes–**passed by the Pennsylvania General Assembly with**

**overwhelmingly bipartisan support**–made significant changes to the administration of Pennsylvania's elections, most significantly, permitting no excuse mail-in voting for all qualified electors in Pennsylvania.

Although federal courts have a "virtually unflagging obligation" to exercise jurisdiction (*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)), certain circumstances mandate abstention and judicial restraint. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). This case is one such circumstance and this Court should abstain from exercising jurisdiction over Plaintiffs' extraordinary claims for relief.

The interpretation of the very state law issues undergirding Plaintiffs' federal court claims are now pending before the Pennsylvania Commonwealth Court. On July 10, 2020, the Democratic Intervenors filed a Petition for Declaratory and Injunctive Relief against the same defendants seeking, among other things, declaratory judgments and a reasonable interpretation of the provisions regarding mail-in and absentee ballots as set forth in Act 77 and Act 12, and the poll watcher residency requirement as set forth in the Election Code. *Pennsylvania Democratic Party, et al v. Boockvar, et al*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020) ("Petition"). Applying the United States Supreme Court's abstention factors in *Pullman* to Plaintiffs' claims here, this Court should grant Democratic Intervenors' Motion to Dismiss and abstain from considering Plaintiffs' constitutional claims until the state courts resolve the statutory interpretation questions under Pennsylvania law.

## II.   RELEVANT FACTS

### A.   Act 77 and Mail-In Ballot Requirements.

On October 31, 2019, Governor Tom Wolf signed Act 77 into law. Am. Compl., ¶ 90. Act 77 is a sweeping bipartisan election reform bill that aimed to improve Pennsylvania's elections and make voting easier and more accessible for the Commonwealth's citizens. *Id.* at ¶ 91. As one

of its most consequential reforms, Act 77 permits no cause mail-in voting for all qualified electors. *Id.*; *see also* 25 Pa. C.S. §§ 3150.11-3150.17.

The mechanics of voting by mail are set forth in Ac 77. A voter who chooses to vote by mail-in or absentee ballot must "mark the ballot . . . enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.'" 25 P.S. §§ 3146.6(a), 3150.16(a). The voter must then place the Official Election Ballot into a second envelope, which contains, among other things, the declaration of the elector and the address of the elector's county board. *Id.* The elector must complete, sign and date the declaration printed on the envelope. *Id.* Finally, "[s]uch envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said ***county board of election***." *Id.* (emphasis added); *see also* Am. Compl., ¶ 92. Nothing in the Election Code prohibits Boards from collecting election ballots via Board authorized ballot drop-boxes.

Act 77 bars counting an absentee or mail-in ballot that has "any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference" on the outside of the inner Official Election Ballot envelope ("Privacy Envelope"). *See* 25 Pa. C.S. § 3146.8(g)(4)(i)-(iv); *see also* Complaint, ¶ 92. However, unlike the express statutory language applicable to provisional ballots, Act 77 does not empower or authorize Boards to reject ballots solely because the voter forgot to utilize a Privacy Envelope. *See* 25 P.S. § 3050(a.4)(5)(ii)(C).

**B.    Act 77 Did Not Change Poll Watcher Residency Requirement.**

Until 2004, the Commonwealth's Election Code limited "a poll watcher's geographical territory" to the election district where the elector lived. *See* 25 Pa. C.S. § 2687. The 2004 amendments to the Election Code "expand[ed] the poll watcher's geographical territory from a single election district to all election districts in the county in which the watcher is a qualified

registered elector." *See* Am. Compl., ¶ 166; *see also* 25 Pa. C.S. § 2687(b) (2004). Act 77 made no changes to the poll watcher residency requirement and thus, as currently written, the Election Code does not permit electors to be a poll watcher outside of their home county. *Id.* at ¶¶ 167-168.

C.    **Act 12 Response to the Pandemic.**

On March 25, in response to the pandemic, the Pennsylvania General Assembly passed Act 12, which, among other things, delayed the date of the Primary Election to June 2, permitted counties to temporarily consolidate polling places for the Primary without court approval, and eased other rules related to location and staffing of polling places. Act 12 of 2020. Act 12 also created a canvass process prior to the end of Election Day and, as part of that effort, created the position of authorized canvass representatives, persons who are not required to be a registered voter in the county or the Commonwealth, to observe canvass activities. *See* Act 12 of 2020 § 1308(g)(1.1); Am. Compl., ¶ 97.

Additionally, Act 12 permits any elector who requests a mail-in or absentee ballot who has not voted via their mail-in or absentee ballot to vote a regular ballot in-person at a polling place if the elector remits his or her mail-in or absentee ballot and signs a statement declaring they have not yet voted and they want their mail-in or absentee ballot destroyed and voided ("Spoliation Provisions"). 25 P.S. 3146.6(b)(3); 3150.16(b)(1)-(2). Notably, the Spoliation Provisions were adopted with an effective date of November 2, 2020, and thus were not in effect during the Primary, but will be effective for the 2020 General Election. Section 17(2)(vii) of Act 2020 (amendments or additions to Section 1306-D(b) apply to elections occurring on or after November 2, 2020).

D.    **County Boards Utilize Ballot Drop-Boxes to Collect Mail-In and Absentee Ballots for the 2020 Primary Election.**

On June 2, Pennsylvania held its Primary Election, the first election following the implementing Act 77. Am. Compl., ¶ 112. In response to the availability of a no-excuse vote-by-

4

mail option and the pandemic, more than 1.8 million Pennsylvania voters voted through mail-in or absentee ballots.[1] *Id.* at ¶ 113. In order to handle this unprecedented and massive influx of mail-in ballots, more than 20 Boards set up ballot drop-boxes in locations other than the Boards' central office addresses and permitted voters to return absentee and mail-in ballots to such locations. *Id.* at ¶ 126. Plaintiffs allege that these drop boxes violated the Election Code under their peculiar definition of a "rigged election." *Id.* at ¶¶ 129-134.

        **E.**      **Most County Boards Count Naked Ballots.**

Given the unprecedented and massive influx of mail-in and absentee ballots during the Primary Election, a pre-election concern was raised by a small number of Boards about whether they should count so-called "Naked Ballots", ballots that lacked the Privacy Envelope and instead were only contained within the Mailing Envelope.

On May 28, a few days before the Primary Election, Deputy Secretary of the Commonwealth Jonathan Marks sent out to all Boards an administrative interpretation of the Election Code to county election directors explaining that "**there is no statutory authority .... for setting aside an absentee or mail-in ballot solely because the voter forgot to properly insert it in the official election ballot envelope**." ("Marks Guidance").[2] **Ex. B to Ex. 1**, *Pennsylvania Democratic Party, et al v. Kathy Boockvar, et al*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020). The interpretive Marks Guidance also directed Boards to preserve the secrecy

---

[1] Because absentee ballots are specifically authorized and limited by the Pennsylvania Constitution, and mail-in ballots are a function of statute only, the Defendants must handle both types of ballots. However, the ballots are effectively identical otherwise, and the use of the ballots interchangeably was an express provision adopted by the General Assembly in Act 12.

[2] Democratic Intervenors respectfully request that this Court take judicial notice of the Marks Guidance. On a motion to dismiss, courts may take judicial notice of documents which are matters of public record, including, but not limited to court-filed documents. *Rouse v. II-IV Inc.*, No. 06-566, 2008 WL 398788, at *1 (W.D. Pa. Feb. 11, 2008).

of ballots by developing a process "by which members of the pre-canvass or canvass boards insert these ballots into empty official election envelopes or privacy sleeves" until they are counted. *Id.* Notwithstanding the Marks Guidance, some Boards counted Naked Ballots and a small number did not. Am. Compl., ¶ 157-158. This, according to Plaintiffs, creates disparate treatment of Naked Ballots on a county-by-county basis. *See id.* at ¶ 161; WHEREFORE Clause, Part C.  The Plaintiffs wants this Court to address this inconsistency by prospectively disenfranchising tens of thousands of electors by not counting their votes due to a judicial fiat.

## III.   RELEVANT PROCEDURAL HISTORY

### A.   Plaintiffs File this Action Against the Secretary of the Commonwealth and all Pennsylvania County Boards of Elections.

On June 29, Plaintiffs initiated this action against the Secretary of the Commonwealth and all 67 Boards (collectively "Defendants"). *See* Dkt. 1. Plaintiffs allege that Defendants' interpretation and implementation of Act 77 and the Election Code's poll watcher residency requirement violated and will continue to violate their rights under the First and Fourteenth Amendments of the United States Constitution and the Equal Protection and Free and Equal Elections Clauses of the Pennsylvania Constitution. *Id.* Plaintiffs also filed a Motion to Expedite Speedy Declaratory Judgment Hearing and Expedited Discovery ("Motion to Expedite"). Dkt. 6.

On July 2, this Court issued an order holding in abeyance the Motion to Expedite and providing Defendants until July 13, 2020 to file responses. Dkt. 7. On July 17, 2020, Plaintiffs filed a Reply Brief in Support of their procedural motion to expedite and substantively argued, in response to the draft motion attached as an exhibit to Democratic Intervenors' Motion to Intervene, that abstention did not apply and should have no bearing on the Court's consideration of their motion. Dkt. 120 at pg. 6-8. On July 17, 2020, this Court granted in part, and denied in part, Plaintiffs' Motion to Expedite.  By the deadline of July 24, most Defendants filed a response to

Plaintiffs' motion seeking dismissal including arguments for abstention under each of the *Pullman*, *Younger*, *Buford*, and *Colorado River* abstention doctrines, Eleventh Amendment immunity, change of venue, and failure to state a claim.

On July 28, Plaintiffs filed an Amended Complaint. Dkt. 232. Plaintiffs Amended Complaint did little to cure the infirmities identified in the motions to dismiss or abstain, but did add two additional causes of action asserting that Defendants violated Plaintiffs rights under the First and Fourteenth Amendments of the United States Constitution and rights under the Equal Protection and Free and Equal clauses of the Pennsylvania Constitution by failing to follow Act 12's Spoliation Provisions–*which were not yet effective*–during the Primary Election. Am. Compl., ¶¶ 138-152; Counts VIII and IX.

**B.     Democratic Intervenors File Action Against Same Defendants in State Court.**

On Friday, July 10, Democratic Intervenors filed a Petition for Declaratory and Injunctive Relief ("State Court Petition") in the Commonwealth Court of Pennsylvania against the same Defendants in this matter. *Pennsylvania Democratic Party, et al v. Kathy Boockvar, et al*, No. 407 MD 2020 (Pa. Commw. Ct. July 10, 2020), attached as **Ex. 1**. The State Court Petition seeks, among other things, declaratory judgments and a reasonable interpretation that Act 77 permits the state respondents (1) "to provide secure, easily accessible locations as the Board deems appropriate, including, where appropriate mobile or temporary collection sites, and/or drop-boxes for the collection of mail-in ballots"; and (2) to clothe and count Naked Ballots and that doing so does not violate the United States or Pennsylvania Constitution. *Id.* at Counts I and IV. The state court Petition also seeks a declaratory judgment that the poll watcher residency requirement in the Election Code does not violate the United States or Pennsylvania Constitution. *Id.* at Count V. In addition to the Petition, Democratic Intervenors filed an application to expedite a judicial interpretation of the relevant provisions of Act 77. On July 27, the lead plaintiffs in this action–the

Republican National Committee and the Trump campaign, filed for intervention in the Commonwealth Court action. Yesterday, the Commonwealth Court set an expedited process. Scheduling Order, attached as **Ex. 2**.

## IV.   **ARGUMENT**

### A.   ***Pullman*** **Abstention Requires This Court to Abstain in This Case in Its Entirety Until the State Court Resolves Democratic Intervenors' Petition.**

Plaintiffs are asking this Court to resolve essentially state law questions concerning the Defendants' interpretation and application of Pennsylvania's Election Code. At best, the ancillary federal constitutional questions raised by Plaintiffs are "entangled in a skein of state law that must be untangled before the federal case can proceed." *Harris County Comm'rs v. Moore*, 420 U.S. 77, 83 (1975). A preliminary resolution of the state law issues by a state court to narrow or eliminate the federal constitutional questions could not be clearer. Abstention recognizes that "certain matters are of a state concern to the point where federal courts should hesitate to intrude; and . . . may also concern judicial 'economy,' the notion that courts should avoid making duplicative efforts or unnecessarily deciding difficult questions." *Chiropractic Am. v. Lavecchia*, 180 F. 3d 99, 103 (3d Cir. 1999).[3]

Under the *Pullman* abstention doctrine, "when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question, abstention may be justified under principles of comity in order to avoid needless friction with state policies." *Chez Sez III*, 945 F.2d at 631 (internal quotations and citations omitted). "Abstention under *Pullman* merely postpones the exercise of

---

[3] The Supreme Court has long held that deference to state courts is especially important in matters regarding state elections and their administration. *See, e.g., Growe v. Emison*, 507 U.S. 25 (1993); *Little, et al v. Reclaim Idaho, et al*, 591 U.S. ___ (2020) (Roberts, J. concurring) (staying an order by federal district court that altered rules relating to state election).

federal jurisdiction." *Allen v. McCurry*, 449 U.S. 90, 101 n. 17 (1980). Importantly, *Pullman* abstention avoids (1) unnecessary constitutional pronouncements that could ultimately be displaced by a state court adjudication of state law; and (2) undue influence with state programs and policies. *Children First Foundation v. Legreide*, No. 04-2137, 2005 WL 3088334, at *3 (D.N.J. Nov. 17, 2005) (citing *Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000)) (citation omitted).

Pullman abstention requires courts to engage in a two-step analysis. *Chez Sez III*, 945 F.2d at 631. *First*, courts must determine whether the following special circumstances exist:

> "(1) uncertain issues of state law underlying the federal constitutional claims brought in federal court;
>
> (2) state law issues amenable to state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and
>
> (3) the possibility that a federal court's erroneous construction of state law would be disruptive of important state policies."

*Pierce v. Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684, 703 (W.D. Pa. 2003) (internal quotations and citations omitted). *Second*, if all three "special circumstances" are present, the court moves to the second step: making a discretionary determination whether abstention is in fact appropriate under the circumstances of the particular case, based on the weight of these criteria and other relevant factors. *Id.* (citing *Chez Sez III*, 945 F.2d at 631). "[A]bstention is generally proper once it [has been] ascertained that the threshold 'special circumstances' have been fulfilled. *D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3d Cir. 1978).

Pierce is particularly instructive. In a case involving the absentee ballot provision of Pennsylvania's Election Code and with constitutional claims remarkably similar to the challenges

made by Plaintiffs here, Judge Conti determined that the federal court should abstain from exercising jurisdiction over the Pierce plaintiffs' alleged equal protection claims. Rather, Judge Conti ruled that the Pennsylvania state courts should be allowed to consider and interpret the Election Code provision at issue. *Pierce*, 324 F. Supp. 2d at 703-04. As demonstrated below, Judge Conti's reasoning is equally applicable here.

      1.    *Uncertainty of State Law.*

The interpretation and application of Pennsylvania's Election Code clearly underlies the Plaintiffs' federal constitutional claims. Act 77 was enacted less than a year ago, and the provisions were placed before the Commonwealth Court just three days after the certification of the first election under Act 77.  While that case is currently pending, no court has had occasion to address the provisions at issue and, thus the state law issues present in this case are not yet conclusively settled. Yesterday, the Commonwealth Court issued an order requiring motions to dismiss to be filed by August 13, with responses (as amicus for now) from the intervenors due August 20, and responses from the Petitioners due August 27. **Ex. 2**. The questions of state law thus are likely to be presented squarely before the Commonwealth Court for resolution in late August and be resolved, and if necessary, appealed under state law, contemporaneously with the hearing scheduled by this Court.

Plaintiffs, and at least one county Board, contend that Section 3146.6(a) and 3150.16(a) of the Election Code mandate that a Board must discard or void Naked Ballots. The Secretary of the Commonwealth, and at least one county Board, interpret the Election Code otherwise. *See* **Ex. B** to **Ex. 1**, Marks Guidance. The Democratic Intervenors agree with the Secretary's interpretation.

Plaintiffs also allege the phrase "to said county board of election" in Section 3146.6(a) and 3150.16(a) of the Election Code refers only to a Board's central office address and thus voters must mail or deliver mail-in and absentee ballots ***only*** to that address and that the 20 Boards

10

utilizing ballot drop-off boxes did not comply with the Election Code's mandatory notice publication requirements related to "polling places."

To the contrary, nothing in the Election Code can be read to restrict this language so narrowly and constrain Boards from adopting other ballot drop-off methods as an extension of their election ballot collection statutory obligations, particularly in a time of a global health crisis, as occurred and continues to persist here. Nor does anything in the Election Code constitute a drop box as a polling place. Notably, the Department of State's guidance regarding the implementation of Act 77 provides counties with the option of establishing multiple county election offices to collect mail-in and absentee ballots. *See* January 10, 2020 *Pennsylvania Applications and Balloting* Guidance, at pg. 4-5, attached as **Ex. 3**. This question advanced by Plaintiffs is purely one of state statutory interpretation, and again, is correctly and properly before the Commonwealth Court.

Plaintiffs also rehash claims, rejected by a federal court in Pennsylvania right before the last Presidential election, that any poll watcher should be permitted to oversee and monitor polling places in any of the Commonwealth's counties, as well as now, any ballot drop-box in the Commonwealth. *See Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 402 (E.D. Pa. 2016) (Pappert, J.) (finding Election Code's poll watcher residency requirement constitutional because it is rationally related to the Commonwealth's interest in maintaining its county-run election system). Because Act 77 did not change the poll watcher residency requirement, Judge Pappert's reasoning remains sound.

Whether Acts 77 and 12 altered the poll watcher requirement, or whether Judge Pappert's reasoning remains sound, is now before the Commonwealth Court of Pennsylvania and the outcome will affect the administration of the 2020 General Election in all 67 counties.

The relevant Election Code issues are whether (1) Act 77 permits a Board to clothe and count a Naked Ballot; (2) the phrase "to said county election board" means a Board's central office address or permits Boards to establish ballot drop-boxes and mobile collection sites; (3) Act 77 permits each county Board to decide whether, if at all, to use ballot drop-box locations in their county; (4) ballot drop-boxes are "polling places" under the Election Code; and (5) the deference a court must give to a Commonwealth agency's regulatory or administrative interpretation or guidance under Pennsylvania law. All elements are currently before a Pennsylvania court for determination under Pennsylvania law.

Less than a year ago, Pennsylvania's General Assembly made a deliberative and bipartisan decision to expand early voting and remove the requirement that a voter provide an excuse to avoid voting in person. The sweeping changes to the Commonwealth's election laws were employed, for the first time, in the 2020 Primary Election. The sheer number of mail-in ballots reflected the popularity of the law, especially given the pandemic which rendered voting in-person unsafe. Plaintiffs efforts to substantially limit the ability of individuals to vote during a pandemic or to not count their ballot under the guise of a constitutional challenge is anathematic to democratic principles and Pennsylvania's Constitution which provides, to the greatest extent possible, a voter's right to equal participation in the electoral process. *See League of Women Voters of Pa. v. Commonwealth*, 178 A.3d 737, 804 (Pa. 2018).

Thus, questions related to Act 77 and other provisions of the Election Code, and the interpretation of these provisions is "best addressed at the state, and not federal, level." *Fender v. Wash. Cnty.*, No. 14-0142, 2014 WL 1491138, at *3 (W.D. Pa. Apr. 15, 2014) (concluding state court should address uncertain issues of state law concerning state criminal statute before a federal court analyzes underlying federal constitutional claims). To be sure, federal courts have invoked

12

*Pullman* abstention when faced with an unclear or unsettled interpretation of Pennsylvania's Election Code. *See, e.g.*, *De La Fuente v. Cortes*, 207 F. Supp. 3d 441, 450 (M.D. Pa. 2016), *aff'd*, No. 17-3778 (3d Cir. 2018) (non-precedential). The interpretation of these provisions presents clear issues of state law that a state court must address before a federal court exercises jurisdiction to determine whether Plaintiffs' federal constitutional rights have been violated.

2.    *Effect of State Law on the Constitutional Claim.*

The Commonwealth Court's interpretation of the Election Code would obviate the need for or substantially narrow the scope of the Plaintiffs' federal constitutional claims. When considering the second *Pullman* factor, a court is "not concerned with whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary, but rather whether the [statute] is obviously susceptible of a limiting construction." *Chez Sez III*, 945 F.2d at 633 (emphasis in original).

For example, a Pennsylvania court's declaratory judgment that Boards have no statutory or legal authority to discard or void a Naked Ballot, would create uniformity among all county Boards and thus narrow or likely moot Plaintiffs' federal constitutional claims arising therefrom. Likewise, the Commonwealth Court's consideration of a declaratory judgment whether Act 77 permits voters to deliver mail-in or absentee ballots to ballot drop-boxes would narrow further, if not eliminate, Plaintiffs' federal constitutional claims. *See e.g.*, *Pierce*, 324 F. Supp. 2d at 704 (explaining that "the construction of [the Election Code provision] at issue by Pennsylvania courts . . . . could obviate the need to determine whether there has been a violation of equal protection under the Fourteenth Amendment"); *Cortes*, 207 F. Supp. 3d at 450 (finding that if state court interpreted Election Code sore loser provision in Plaintiffs' favor then his "constitutional claim would be eliminated.").

13

Indeed, a Pennsylvania state court's resolution of Democratic Intervenors' Petition will resolve any uncertain state law issues regarding Act 77. Thus, "[t]his case presents exactly the type of state law question that usually triggers *Pullman* abstention, where 'the unsettled issue of state law principally concern[s] the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular matter would eliminate the constitutional issue and terminate the litigation." *Chez Sez III*, 945 F.2d at 633 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 376-77 (1964)). Democratic Intervenors have satisfied the second *Pullman* factor.

3.     *Effect of an Erroneous Federal Court Decision of State Law.*

An erroneous decision by this Court would be disruptive of important state policies, namely voting rights and the election process. Given that a state court decision is also in the offing on these very questions, a potentially erroneous federal decision would also lead to mass confusion as the interpretation would vary from week to week, potentially, if this Court were to erroneously interpret state law and the state courts were to then issue a contrary and controlling decision just days or weeks later.  All of this would occur in the run-up to an election, which would interject federal courts into election uncertainty in exactly the manner federal courts are directed to avoid. *See Republican Nat. Comm. v. Democratic Nat. Comm.*, 589 U.S. ___ at *2 (U.S. Apr. 6, 2020) (per curiam) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.").

A bedrock principle from the Pennsylvania Constitution has been guaranteeing, to the greatest extent possible, citizens' right to vote. *League of Women Voters of Pa. v. Commonwealth*, 178 A.3d 737, 804 (Pa. 2018). Section I, article 5 of the Pennsylvania Constitution reflects this principle: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right to suffrage." In 2018, the Pennsylvania Supreme Court explained that "free and equal" "reflects the framers' intent that all aspects of the electoral

14

process, to the greatest degree possible, be kept open and unrestricted to the voters . . . . and, also, conducted in a manner which guarantees . . . . a voter's right to equal participation in the electoral process for the selection of his or her representatives in government." *Id.*

Given this history, courts have routinely explained that the Elections clause of the Pennsylvania Constitution has a "broad and wide sweep" (*Id.* at 809) and that voting rights, the election process, and election integrity are all important state policies. *Pierce*, 324 F.Supp.2d at 703-04 (explaining voting rights are "extremely important state policies"); *Cortes*, 207 F. Supp. 3d at 450 (finding "erroneous interpretation of the [Election Code] would be gravely detrimental to important Pennsylvania interests concerning state election procedures"); *NAACP Phila. Branch v. Ridge*, No. 00–2855, 2000 WL 1146619 at *6–7 (E.D. Pa., Aug. 14, 2000) (abstaining in case regarding constitutionality of Pennsylvania Voter Registration Act as it pertains to ex-felons and concluding "voting regulations implicate important state policies").

It is therefore clear that an erroneous interpretation of Act 77, which implicates important state electoral policies, could potentially disenfranchise thousands, if not hundreds of thousands, of Pennsylvania voters and would, at a minimum, sow significant confusion. Accordingly, Democratic Intervenors have established the third factor.

> 4. *Equitable Considerations Require Abstention.*

Equitable considerations further support this Court abstaining in this case. In this second step of the *Pullman* analysis, federal courts weigh a variety of factors, including "the availability of an adequate state remedy, the length of time the litigation has been pending, and the potential impact on the parties caused by delay in obtaining a state ruling." *Stretton v. Disciplinary Bd. of Supreme Court of Pa.*, 944 F.2d 137, 140 (3d Cir. 1990).

Here, there are adequate state law remedies available – namely declaratory judgment and injunctive relief regarding a reasonable interpretation of Act 77. *See e.g.*, *NAACP Phila. Branch*,

2000 WL 1146619, at *8 (explaining that state court remedy includes an action for declaratory judgment or petition for extraordinary relief and that because election was more than two months away, state court could provide prompt resolution). Second, this litigation is in its infancy as Plaintiffs filed their Amended Complaint only four days ago. The Court has ordered the filing of Rule 12 motions today, and the parties exchanged narrowly focused discovery requests less than two weeks ago. Third, none of the parties will suffer any prejudice caused by delay in obtaining a state court ruling. The Commonwealth Court has already established an expedited schedule to ensure a final state court resolution before the General Election. Finally, a state court ruling regarding the interpretation of relevant provisions of Act 77 will provide clarity to all parties, including Democratic Intervenors and the Plaintiffs here, who have now moved to intervene in the state court case pending in the Commonwealth Court.[4]

Accordingly, the existence of special circumstances and equitable considerations warrant abstention from this Court's exercise of federal jurisdiction. "Principles of comity" and the need to avoid "needless friction with state policies" mandates this Court to defer to the Pennsylvania Commonwealth Court, which will hear Democratic Intervenors' state court Petition that seeks, among other things, declaratory judgments and a reasonable interpretation of the very provisions of Acts 77 and 12 challenged by Plaintiffs in this proceeding. *Pullman*, 312 U.S. at 500.

---

[4] In their Reply Brief in Support of its Motion to Expedite, Plaintiffs inexplicably do not address or cite *Pullman*, but attempt to circle around the doctrine by arguing that abstention is improper because the state law at issue–Act 77–is "relatively clear", Plaintiffs made it to the federal courthouse first and the parties are not identical. First, Plaintiffs cannot have it both ways by pushing a counter-textual interpretation and simultaneously rejecting the interpretation of the Secretary of the Commonwealth and the vast majority of county Boards. *See* Dkt. 120 at pg. 7. Second, the latter two arguments simply are not relevant factors in the *Pullman* abstention analysis. *See Pierce*, 324 F. Supp. 2d at 689 (Court abstained from challenge to in the absence of a pending state court case).

**B.    Abstention Under *Burford*, *Younger*, and *Colorado River* Is Also Warranted.**

Alternatively, this case should be dismissed under the *Burford*, *Younger*, and *Colorado River* abstention doctrines. Democratic Intervenors join and incorporate by reference the abstention arguments asserted by the other Defendants, including the Secretary of the Commonwealth and the Bucks, Chester, Philadelphia, and Montgomery County Boards, in their motions to dismiss Plaintiffs' Amended Complaint.

**C.    Counts IV and V of Plaintiffs' Amended Complaint Regarding the Pennsylvania Election Code's Poll Watcher Residency Requirement Fail.**

Alternatively, should this Court decline to invoke *Pullman* abstention, Counts IV and V should be dismissed for failure to state a claim under Rule 12(b)(6). Plaintiffs allege that the poll watcher residency requirement violates their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution as well as the Equal Protection and Free and Equal Elections clause of the Pennsylvania Constitution. *See* Complaint, Counts IV and V. Plaintiffs argue that the residency requirement dilutes their votes because–absent roving poll watchers–there will be voter fraud, thus negating legitimate votes. Plaintiffs also argue that the residency requirement arbitrarily and unreasonably distinguishes between qualified voters within the Commonwealth of Pennsylvania by limiting their services as a poll watcher to only the county of their residence and by limiting their service as a poll watcher to monitoring only in-person voting at the polling place on Election Day." *Id.* at ¶ 178.

Plaintiffs' allegations are largely retreads of allegations rejected four years ago by a federal district court in Pennsylvania. In that case, in connection with the 2016 presidential election, the Republican Party of Pennsylvania, among others, sued the then Secretary of the Commonwealth, Pedro Cortés, seeking to enjoin the enforcement of these very poll watcher residency requirements. *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 402 (E.D. Pa. 2016) (Pappert, J.). The

17

*Cortés* plaintiffs advanced nearly identical arguments asserted by the Plaintiffs in this action. *Compare Id.* at 407 *with* Amended Complaint, Counts IV and V.

The *Cortés* Court declined to enjoin the enforcement of the requirement. *Id.* at 407-10. In so doing, the court found that the plaintiffs' dilution of the vote theory was based on pure speculation that fraudulent voters may be "casting ballots elsewhere in the Commonwealth and the unproven assumption that these alleged instances of voter fraud would be prevented by the affected poll watchers were they not precluded from serving at those locations." *Id.* Applying the rational basis test, the court ruled that Pennsylvania's poll watcher residency requirement did not burden the plaintiffs' fundamental right to vote. *Id.* More to the point, the Court found that the General Assembly's decision to limit poll watchers to county residents was rationally related to the Commonwealth's interest in "maintaining its county-run election system [under which] each county election official is tasked with managing credentials for a discrete part of the state's population." *Id.* at 409.

The Court's reasoning and analysis in *Cortés* applies equally to the claims asserted by Plaintiffs here. Nothing has changed to buttress Plaintiffs' claim, and they have not alleged as much. The poll watcher residency requirement does not dilute any elector's vote and continues to serve the "state's interests in maintaining its county-run election system." *Id.*

In enacting Acts 77 and 12, the General Assembly could easily have altered or amended the poll watcher residency requirement, and chose not to. Instead, it specifically created "canvass authorized representatives" to observe canvass activities and such representatives need not be registered voters of the county or the Commonwealth. *See* Act 12 of 2020 § 1308(g)(1.1). This is a legislative choice reflecting the distinction between activity in a polling place and activity taking place under the watch of sworn, countywide-elected officials. The fact that Boards must utilize

more ballot drop-boxes for mail-in and absentee ballots due to a global pandemic, with different effects on different counties, does not lessen, but in fact strengthens, the Commonwealth's interest in maintaining its county administered election system.

**D.     Counts VIII and IX of Plaintiffs' Amended Complaint Regarding Voting In-Person After Requesting A Mail-In Ballot Fails to State A Claim.**

In the Amended Complaint, Plaintiffs newly allege that the Defendants violated the United States and Pennsylvania Constitutions by inconsistently applying the Spoliation Provisions in the Election Code and thereby denying electors who applied for but did not vote their absentee or mail-in ballots the right to vote a regular ballot in-person. *See* Am. Compl., Counts VIII and IX; ¶¶ 138-152. According to Plaintiffs, those Boards only permitted these voters to vote via provisional ballots in alleged violation of Act 77. Plaintiffs' constitutional claims fail because Plaintiffs simply ignore that Act 12 amended this provision with an express clause where the **Spoliation Provisions do not become effective until the General Election in November.**

Effective with the November General Election, an elector who returns his or her unvoted ballot to a polling place to spoil the mail-in ballot is allowed to complete an affidavit, and vote on the machine.  See 25 P.S. 3146.6(b)(3); 3150.16(b)(3) Section 17(2)(vii) of Act 2020 (stating that amendments or additions to Section 1306-D(b) apply to elections occurring on or after November 2, 2020).[5] Plaintiffs' allegations are based on a plainly incorrect reading of the current spoliation provision in the Election Code and, therefore, Counts VIII and IX of the Amended Complaint, should be dismissed.

---

[5] It is well-settled that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly" (1 Pa. C.S. § 1926) and amendments to existing statutes are only effective prospectively from their effective date. 1 Pa. C.S. § 1953; *Johnson v. Phelan Hallinan & Schmieg, LLP*, 202 A.3d 730, 737 (Pa. Super. Ct. 2019) (finding that absent express legislative intent that amendment should apply retroactively, section 1953 requires court to construe amendment as taking effect on date selected by General Assembly).

## V.     <u>**CONCLUSION**</u>

For the foregoing reasons, the Democratic Intervenors respectfully request that this Court enter an order granting Democratic Intervenors' Motion to Dismiss Plaintiffs Amended Complaint in its entirety for the reasons set forth above.

Respectfully submitted,

*/s/ A. Michael Pratt*
A.  Michael Pratt
Kevin M. Greenberg
Adam R. Roseman
George Farrell
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
(t) 215.988.7800
(f) 215.988.7801
prattam@gtlaw.com
greenbergk@gtlaw.com
rosemana@gtlaw.com
farrellg@gtlaw.com

Clifford B. Levine
Alex Lacey
Dentons
625 Liberty Avenue 5th Floor
Pittsburgh, Pennsylvania 15222
(t) 412.297.4998
clifford.levine@dentons.com
alex.lacey@dentons.com

Lazar M. Palnick
1216 Heberton St.
Pittsburgh, PA 15206
(t) 412.661.3633
lazarpalnick@gmail.com

*Attorneys for Democratic Intervenors*

Dated: July 31, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, A. Michael Pratt, hereby certify that on July 31st, 2020, I caused a true and correct copy of the foregoing Democratic Intervenors' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and corresponding exhibits on counsel of record for Plaintiffs, Defendants and other proposed Intervenors listed on the docket via the Court's ECF system.


*/s/ A. Michael Pratt*_____
A. Michael Pratt