# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al*., | Civil Action |
| Plaintiffs, | |
| v. | No.: 2:20-CV-966 |
| KATHY BOOCKVAR; *et al*., | |
| Defendants. | Judge J. Nicholas Ranjan |

**MEMORANDUM IN SUPPORT OF [PROVISIONAL] MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT BY PROPOSED INTERVENORS NAACP PENNSYLVANIA STATE CONFERENCE, COMMON CAUSE PENNSYLVANIA, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, PATRICIA M. DEMARCO, <u>DANIELLE GRAHAM ROBINSON, AND KATHLEEN WISE</u>**

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT .........................................................................................................2

    A.    The Court Should Dismiss This Case Under *Pullman* Abstention .........................2

    B.    The Court Also Should Dismiss or Stay All of Plaintiffs' Claims Under *Colorado River* Abstention ...................................................................................................11

    C.    Plaintiffs Fail to Plead Fraud with Sufficient Particularity....................................14

CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashwander v. Tennessee Valley Authority*,
   297 U.S. 288 (1936)...............................................................................................8

*California Democratic Party v. Jones*,
   530 U.S. 567 (2000).............................................................................................13

*Chez Sez III Corp. v. Township of Union*,
   945 F.2d 628 (3d Cir. 1991)............................................................................3, 4, 7

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976).................................................................................2, 11, 12, 13

*DiGenova v. Baker*,
   2002 WL 32356401 (E.D. Pa. Apr. 11, 2002) ......................................................14

*Eu v. San Francisco County Democratic Central Committee*,
   489 U.S. 214 (1989)..............................................................................................10

*Fuente v. Cortes*,
   207 F. Supp. 3d 441 (M.D. Pa. 2016) ......................................................4, 7, 8, 10

*Golden Gate National Senior Care, LLC v. Minich ex rel. Estate of Shaffer*,
   629 F. App'x 348 (3d Cir. 2015) ...........................................................................12

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*,
   438 F.3d 298 (3d Cir. 2006)..............................................................................12, 13

*In re Shop-Vac Marketing & Sales Practice Litigation*,
   964 F. Supp. 2d 355 (M.D. Pa. 2013) ...................................................................14

*Institutional Investors Group v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)..............................................................................14, 16

*Landes v. Tartaglione*,
   2004 WL 2397292 (E.D. Pa. Oct. 26, 2004), *aff'd*, 153 F. App'x 131 (3d Cir. 2005)............16

*Landes v. Tartaglione*,
   2004 WL 2415074 (E.D. Pa. Oct. 28, 2004), *aff'd*, 153 F. App'x 131 (3d Cir. 2005)............16

*Landes v. Tartaglione*,
   153 F. App'x 131 (3d Cir. 2005) ...........................................................................16

*NAACP Philadelphia Branch v. Ridge*,
2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ...................................................4, 10

*National Casualty Co. v. Davis*,
1991 WL 101648 (N.D. Ill. June 3, 1991) ..............................................................1

*OpenPittsburgh.org v. Wolosik*,
2016 WL 7985286 (W.D. Pa. Aug. 9, 2016) .......................................................13

*Pennhurst State School & Hospital v. Halderman*,
465 U.S. 89 (1984)..................................................................................................2

*Planned Parenthood of Central New Jersey v. Farmer*,
220 F.3d 127 (3d Cir. 2000)......................................................................... *passim*

*Railroad Commission of Texas v. Pullman*,
312 U.S. 496 (1941).................................................................................... *passim*

*Republican National Committee v. Democratic National Committee*,
140 S. Ct. 1205 (2020).........................................................................................10

*Ryan v. Johnson*,
115 F.3d 193 (3d Cir. 1997)..................................................................................13

*Shambach v. Bickhart*,
845 A.2d 793 (Pa. 2004) ........................................................................................6

*Shevlin v. Schewe*,
809 F.2d 447 (7th Cir. 1987) ..................................................................................1

*Texas Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) ..................................................................................8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..............................................................................14

*Ziegler v. Ziegler*,
632 F.2d 535 (5th Cir. Unit A Dec. 1980) ...........................................................11

**Docketed Cases**

*Pennsylvania Democratic Party v. Boockvar*, No. 407 M.D. 2020 (Pa. Commw. Ct.)............4, 11

## Statutes

25 P.S.

§ 2606......................................................................................................8
§ 2641(a)..............................................................................................4, 9
§ 2641(b)................................................................................................4
§ 2645(b)................................................................................................4
§ 2726(a)................................................................................................8
§ 2726(c)................................................................................................8
§ 3146(d)................................................................................................6
§ 3146.2b................................................................................................6
§ 3146.6(a)..............................................................................................4
§ 3146.6(b)(3).......................................................................................7, 9
§ 3146.8(g)(4)......................................................................................5, 6
§ 3150.12b..............................................................................................6
§ 3150.16................................................................................................4

## Rules

Fed. R. Civ. P. 9(b).................................................................................14

Pursuant to Rule 12(b)(1), Rule 12(b)(6), and Rule 9(b) of the Federal Rules of Civil

Procedure, and the Court's July 17 and 28, 2020 Scheduling Orders, proposed Intervenors

NAACP Pennsylvania State Conference, Common Cause Pennsylvania, League of Women

Voters of Pennsylvania, and Pennsylvania voters Patricia M. DeMarco, Danielle Graham

Robinson, and Kathleen Wise ("Intervenors") hereby file this memorandum of law in support of

their Motion to Dismiss the Plaintiffs' Amended Complaint.[1]

## I.      INTRODUCTION

In October 2019, Pennsylvania's legislature and governor struck a bipartisan compromise

and passed an overhaul of the Election Code designed to make voting more accessible.  That

compromise was momentous then and took on even greater significance when the coronavirus

pandemic upended ordinary life.  Plaintiffs now ask this Court to unwind that compromise and to

make it harder—and less safe—to vote during a global public health crisis.  Plaintiffs' requested

relief is particularly troubling because it would primarily impact seniors, people of color, and

medically vulnerable individuals, who are already disproportionally affected by the pandemic.

Furthermore, Plaintiffs' claims do not belong in federal court.  Although Plaintiffs couch some of

their claims as arising under the U.S. Constitution, at bottom their arguments are all about state

law: whether the Secretary of the Commonwealth and county boards of elections have correctly

interpreted the Pennsylvania Election Code, and whether the Election Code violates the

---

[1] In their Motion to Intervene, Intervenors requested "leave to file a responsive pleading
on the same schedule as the current Defendants, or within 3 business days of the Court's order
granting [the motion to intervene]."  Dkt. 103 at 2.  Accordingly, Intervenors filed a motion to
dismiss on July 24 as the Court required.  July 17 Scheduling Order, Dkt. 124 at 3 ¶ 3
(authorizing Defendants to file Rule 12 motions by July 24, 2020).  That motion cured the
alleged procedural defect identified in Plaintiffs' opposition to Intervenors' Motion to Intervene.
Dkt. 177 at 2-5; *see also Nat'l Cas. Co. v. Davis*, 1991 WL 101648, at *1 (N.D. Ill. June 3, 1991)
(citing *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987)) ("Where the necessary pleading is
filed soon after the motion, and there is no prejudice to the other parties, a strictly textual
interpretation of [Rule 24(c)] is unwarranted.").

Pennsylvania Constitution.  Plaintiffs cannot manufacture a federal claim by invoking the boogeyman of mail-in voter fraud, especially when they do not even allege with particularity in their Amended Complaint that any illegal voting occurred in the June primary or will occur in the November general election.  Plaintiffs' claims should be dismissed.

This case should be dismissed for three separate and sufficient reasons.  *First*, the Court should refrain, under the *Pullman* abstention doctrine, from reviewing Plaintiffs' claims given the exceptional circumstances of this particular case, which depend on uncertain—and novel— questions of state law.  *See R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 501 (1941).  *Second*, the Court should dismiss the entirety of the action per *Colorado River* in the interest of judicial efficiency and avoiding piecemeal litigation.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  *Third*, the Court should dismiss Plaintiffs' claims for injunctive and declaratory relief under Fed. R. Civ. P. 12(b)(6) and 9(b) because Plaintiffs do not and cannot plead fraud with sufficient particularity—despite making two separate attempts to do so.  To the contrary, the alleged cause of Plaintiffs' hypothetical injuries—that validly cast ballots will be diluted by "illegal absent and mail-in voting, ballot harvesting, and other fraud"— is purely conjectural.  *See, e.g.*, Dkt. 232 ("Am. Compl.") ¶¶ 202, 212.  Moreover, the Supreme Court long ago settled that a federal court may not award injunctive relief against state officials on the basis of state law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

## II.    ARGUMENT

### A.    The Court Should Dismiss This Case Under *Pullman* Abstention

#### i.    Legal Standard

*Pullman* abstention "applies in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law."  *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000).

Abstaining allows Federal Courts to avoid "a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law" and "needless friction with state policies." *Id.*

This case satisfies the two-part test governing the Court's decision whether to abstain under *Pullman*. First, all three "exceptional circumstances" are present: (1) there are "uncertain issues of state law underlying the federal constitutional claims"; (2) it is possible that a Pennsylvania court's interpretation will obviate or substantially narrow the scope of the federal constitutional claim; and (3) "erroneous construction of state law by the federal court would disrupt important state policies" regarding the conduct of elections. *Id.* at 149–50. Second, the Court should exercise its discretion to abstain based on "such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Id.* at 150.

### ii. *Plaintiffs' Claims Depend on Uncertain Issues of State Law*

The first exceptional circumstance under *Pullman* is present here because Plaintiffs' claims depend on "uncertain issues of state law" with respect to (1) establishing ballot drop-boxes, (2) counting ballots lacking secrecy envelopes and declarations, (3) the required acceptance of in-person mail-in applications without bona fide objections, and (4) Secretary Boockvar's provisional ballot guidance. *Farmer*, 220 F.3d at 149.

To determine whether a state law underlying a federal constitutional claim is uncertain, a court's inquiry must first focus on whether "the language of the [state law] is 'clear and unmistakable.'" *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 632 (3d Cir. 1991). The opposite is true here; Plaintiffs' claims regarding drop-boxes, secrecy envelopes and declarations, the guidance on applications for mail-in and absentee ballots, and the provisional ballot guidance are state law issues subject to multiple "potential interpretations," making them

3

ripe for abstention. *Fuente v. Cortes*, 207 F. Supp. 3d 441, 449 (M.D. Pa. 2016) (abstaining under *Pullman* because "the Pennsylvania election law in question is reasonably susceptible to two possible interpretations"). Abstention is appropriate on these issues because the state statute has not been "authoritatively construed" and is concurrently being considered by the Commonwealth Court in *Pennsylvania Democratic Party v. Boockvar*, No. 407 M.D. 2020 (Pa. Commw. Ct.). *NAACP Phila. Branch v. Ridge*, 2000 WL 1146619, at *5 & n.4 (E.D. Pa. Aug. 14, 2000) (citing *Chez Sez*, 945 F.2d at 632).

On the first uncertain state law issue, and contrary to Plaintiffs' arguments in its Amended Complaint, Pennsylvania law does not unambiguously prohibit the use of drop-boxes to collect mail-in or absentee ballots. Plaintiffs assert that Pennsylvania law requires that mail-in or absentee ballots be mailed or personally delivered to "only the county board of election." *See, e.g.*, Am. Compl. at ¶¶ 126, 133, 200, 210 (citing 25 P.S. § 3146.6(a); 25 P.S. § 3150.16). But state law does not define "said county board of election" as the main office of each county board of elections. Instead, Pennsylvania Election Code defines a county board of elections as a ***body*** "consist[ing] of the county commissioners of such county ex officio, or any officials or board who are performing or may perform the duties of the county commissioners" that "shall have jurisdiction over the conduct of primaries and elections in [each] county." 25 P.S. § 2641(a) & (b). Indeed, the Pennsylvania Election Code specifically authorizes counties to operate multiple "offices at the county seat" and "branch offices … in cities other than the county seat." *Id.* § 2645(b). Based on this express statutory language, the state court could reasonably, and correctly, find that the state law does not prohibit county boards of elections from designating locations, beyond one main office, at which the board may receive mail-in or absentee ballots. But no state court has considered this language, which is not surprising; Act 77 was enacted in

October 2019, so Pennsylvania counties are using mail-in and absentee ballot drop-boxes for the first time during the 2020 election cycle.

With respect to the second uncertain issue, Plaintiffs argue that Pennsylvania state law requires the county boards of elections to discard mail-in or absentee ballots that lack a secrecy envelope or do not include, on the outside envelope, a completed declaration. *See, e.g.*, Am. Compl. at ¶¶ 153–56 (citing 25 P.S. § 3146.8(g)(4)(i)–(iv)). Plaintiffs' reading of the statute is wrong and another interpretation is possible. The statute states:

> The county board shall open the envelope of every unchallenged absentee elector in such manner as not to destroy the declaration executed thereon. **If any of the envelopes** on which are printed, stamped or endorsed the words "Official Absentee Ballot" **contain any extraneous marks or identifying symbols**, the envelopes and the ballots contained therein shall be set aside and declared void. The county board shall then break the seals of such envelopes, remove the ballots and record the votes.

25 P.S. § 3146.8(g)(4) (emphasis added). This statutory language requires the county board only to set aside envelopes that contain "extraneous marks or identifying symbols." *Id*. The statute provides no authorization, much less a requirement, for setting aside ballots when the secrecy envelope is simply missing.[2]

Much the same, Plaintiffs' request that the county boards also must set aside ballots lacking a completed declaration is without clear statutory authority. *See, e.g.*, Am. Compl. at ¶ 158. Pennsylvania law provides discretion to the county boards: "If the county board has verified the proof of identification as required under this act *and is satisfied* that the declaration is sufficient" then the county provides a list of names to be pre-canvassed. 25 P.S. § 3146.8(g)(3). The statute's only explicit reference to setting aside ballots is under subsection

---

[2] Pennsylvania State Democratic Party intervenors agree with the Pennsylvania Department of State's instruction that there is no statutory requirement to discard ballots lacking a secrecy envelope. *See* Pa. State Democratic Party, Pet. for Declaratory and Injunctive Relief at ¶ 127, Dkt. 85-2.

(d)—relating to proof that the elector deceased prior to the polls opening. *Id.* § 3146(d). A court may reasonably and correctly interpret the statute as allowing the county board of elections to count ballots lacking declarations if they are otherwise satisfied that the ballot is sufficient. *Id.* § 3146.8(g)(3). The scope of that discretion, which is uncertain, is best answered in the first instance by the state courts.

Plaintiffs' cramped statutory interpretation is also inconsistent with Pennsylvania state courts' guiding principle that the Election Code "ordinarily will be construed liberally in favor of the right to vote," and thus that "ballots containing mere minor irregularities should only be stricken for compelling reasons." *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004) (internal quotation marks and citations omitted).

On the third uncertain issue, Plaintiffs argue that Secretary Boockvar's January 10, 2020 Guidance, requiring acceptance of mail-in and absentee ballot applications unless there is a "bona fide objection," does not comport with Pennsylvania Election law requiring a county board of elections to "determine the qualifications of the applicant by verifying the proof of identification" "upon receipt of any application." Am. Compl. ¶¶ 116–21 (citing 25 P.S. § 3150.12b(a)(1)–(2); *Id.* § 3146.2b(a)–(c)). The state courts have not construed what "any application" means. The Secretary's specific guidance on accepting applications without "bona fide objections," however, is applicable *only* to "in-person applications."[3] A state court may reasonably and correctly find that Act 77's requirement to ascertain the identity of the qualified elector "upon receipt of any application" does not include "in-person applications."

_____

[3] *See Pennsylvania Applications and Balloting Guidance*, Pa. Dep't of State at 3–4 (Jan. 10, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS_Act%2077_Absentee%20and%20Mail-in%20Guidance.pdf.

For the fourth uncertain issue, Plaintiffs assert that Secretary Boockvar's January 10th, 30th, and March 5th, 2020 Guidance regarding provisional balloting contravenes Act 77, which allows for a regular ballot to be cast when an absentee ballot is remitted for spoliation at the polls. Am. Compl. ¶¶ 138–52. This guidance indicates, for example, that "provisional balloting is the only option for voters to cast their vote in the event their absentee or mail-in ballot is *not returned to the county*."[4] This guidance suggests, however, that if the ballot is returned unvoted, that person may be eligible to cast a regular ballot. No state court has authoritatively spoken on whether this guidance fits squarely within Act 77's requirement to "remit[] the [absentee] ballot" "at the polling place." 25 P.S. § 3146.6(b)(3). A state court may reasonably and correctly find that it does and is therefore not a violation of Pennsylvania Election law.

The use of ballot drop-boxes, the discretion to process ballots lacking secrecy envelopes and declarations, the guidance requiring acceptance of in-person applications, and the provisional balloting guidance are reasonable and correct readings of state election laws, which have not been authoritatively addressed by the Pennsylvania state courts, and contradict Plaintiffs' interpretation. *See Fuente*, 207 F. Supp. 3d at 449. Uncertain state law issues militate against considering Plaintiffs' claims and for this Court's abstention.

### iii. A State Court Adjudication Will Obviate or Narrow the Federal Constitutional Claims

The second *Pullman* exceptional circumstance is whether the state statute in question is "amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the constitutional issues." *Chez Sez*, 945 F.2d at 632–33. A state court's determination of the drop-box, secrecy ballot, and provisional voting guidance will make it

---

[4] *See, e.g.*, *Pennsylvania Balloting and Envelope Guidance*, Pa. Dep't of State at 7 (Jan. 30, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/ PADOS_BallotingandEnvelope_CountyGuidance_v1.0.pdf (emphasis added).

unnecessary for the Court to reach any constitutional determinations and avoid friction with state policies. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 419 (5th Cir. 2020) (Gregg Costa, J., concurring) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 345–56 (1936)) ("*Pullman* is an example of the broader principle that a federal court should address constitutional questions only when necessary.").

A state court determination of whether ballot drop-boxes are allowed under the Pennsylvania Election Code would obviate or narrow Plaintiffs' claims. Counts I and II of Plaintiffs' Amended Complaint allege federal constitutional violations related to drop-boxes. State court rulings, such as those requested by the Pennsylvania State Democratic Party, would resolve these constitutional claims.[5]

It is reasonable to assume that the Pennsylvania courts may interpret Act 77 as giving the county boards of elections authority to establish adequate and secure drop-box locations. Likewise, the state courts may determine that drop-boxes are not "polling places" under Pennsylvania law, 25 P.S. § 2726(a) & (c), *see also* 25 P.S. § 2606. Such a statutory interpretation will narrow and likely resolve Plaintiffs' claims. *Cf. Fuente*, 207 F. Supp. 3d at 450 ("If the state court … finds that a presidential primary is not within the purview of [the

---

[5] Plaintiffs argue that Article I and Article II of the U.S. Constitution, entrusting the state legislatures with setting the "Times, Place, and Manner" of federal elections, were violated because the county boards of elections exceeded their authority in establishing drop-boxes. *See* Am. Compl. at Count I. A state court ruling, like the one the Pennsylvania State Democratic Party has requested—that drop-boxes are permissible under Pennsylvania election law—resolves Plaintiffs' Article I and Article II claims.

Plaintiffs also allege two Equal Protection violations related to drop-boxes: (1) that the establishment of drop-boxes dilutes votes through allegedly increased voter fraud, Am. Compl. at Count II; and (2) that drop-boxes are "polling places" under Pennsylvania law and thus the county boards of elections were required to provide notice of their location, also in violation of the First Amendment. Am. Compl. at Count VI. These claims may be narrowed or eliminated by a state court ruling as discussed above.

Pennsylvania law], then … the basis for [the] constitutional claim would be eliminated.")
(internal quotation marks & citation omitted).

A state court finding that Pennsylvania law does not require county boards of elections to
discard ballots lacking secrecy envelopes or declarations would extinguish Plaintiffs'
constitutional claim.[6]  A court may reasonably and correctly find that the authority to count such
ballots is supported by Pennsylvania law and falls within the county boards' "jurisdiction over
the conduct of primaries and elections."  25 P.S. § 2641(a).

Finally, state court determination that Secretary Boockvar's guidance on provisional
voting complied with Act 77 would narrow or eliminate any constitutional claims made by
Plaintiffs.[7]  A court may reasonably and correctly find that the guidance to allow voters to vote
on only a provisional ballot if their mail-in or absentee ballot was not returned to the county falls
within Act 77's dictate that a regular ballot may be cast if the absentee ballot is remitted for
spoliation.  *Compare Pennsylvania Balloting and Envelope Guidance*, *supra* note 4, at 7, *with* 25
P.S. § 3146.6(b)(3).  Because Plaintiffs' constitutional claim turns on the guidance from the
state, if the guidance was compliant with Act 77's regular ballot provision, then the
constitutional claims would be narrowed.

---

[6] Plaintiffs argue that Article I and Article II were violated, and that their Fourteenth
Amendment rights to equal protection were infringed when an unspecified number of county
boards of elections counted ballots lacking secrecy envelopes and declarations.  These
constitutional claims are narrowed—if not obviated—if Pennsylvania law grants county boards
of elections the authority to count ballots lacking secrecy envelopes and declarations.  Am.
Compl. at Counts I & II.

[7] Plaintiffs argue that their First and Fourteenth Amendment rights have been violated by
Secretary Boockvar's guidance allowing for electors who had applied for but not voted their
absentee ballots to vote only via provisional ballot.  Am. Compl. at Count VIII.

       *iv.*    *An Erroneous Federal Court Interpretation Will Disrupt Important State Policies*

The third *Pullman* exceptional circumstance arises from the concern that an "erroneous construction of state law by the federal court would disrupt important state [law] policies." *Farmer*, 220 F.3d at 149–50. The right to vote and participate in a fair electoral process are important state policies and are not limited to voting in a pandemic. *See Fuente*, 207 F. Supp. 3d at 450 ("An erroneous decision so temporally close to the election could seriously disrupt Pennsylvania's election process."); *see NAACP Phila. Branch*, 2000 WL 1146619, at *6–7 ("[V]oting regulations implicate important state policies[.]"). The coronavirus's impact on the issues raised here is that the volume of vote by mail has increased due to the dangers of in-person voting; but even without the challenges to voting created by the novel coronavirus, Act 77's expansion of mail-in and absentee ballot voting reduces burdens on voting, and thus is critical to the promotion of democracy and compelling state interests. *See Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *cf.* Intervenors Mot. to Intervene, Decl. of Terrie E. Griffin, ¶¶ 9–11, Dkt. 104-2 (discussing how expanded mail-in voting helps at-risk Pennsylvanians vote); Decl. of Suzanne Almeida, ¶¶ 13–16, Dkt. 104-3 (same); Decl. of Kenneth L. Huston, ¶¶ 8–11, Dkt. 104-4 (same). An erroneous federal court decision will upend state policies by substantial disenfranchisement; abstention is appropriate. *Cf. Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1208 (2020) (admonishing the lower court for "interven[ing] and alter[ing] the election rules so close to the election date").

       *v.*    *The Equitable Considerations Weigh in Favor of Abstention*

In the second *Pullman* step, a court must consider whether "the availability of an adequate state remedy, the length of time the litigation has been pending," and the potential impact on the parties cause by delay in obtaining a state ruling weigh in favor of abstention.

10

*Farmer*, 220 F.3d at 150.  Here, a state court action has commenced and is able to adequately provide either declaratory or injunctive relief on all of the issues.  *Cf. Ziegler v. Ziegler*, 632 F.2d 535, 539 (5th Cir. Unit A Dec. 1980) ("The classic *Pullman*-type abstention order require[d] the parties to commence an action in state court for a declaratory judgment on the state law issues.").  Moreover, this federal court action, although underway, is still in its early stages.  Discovery is not complete and motions to dismiss are pending.  Further, Plaintiffs' purported interest in expeditious proceedings is undermined by their decision to amend their complaint—delaying resolution of the prior motions to dismiss—and further by their decision to ***expand*** the case in doing so.  *See, e.g.*, Am. Compl. ¶¶ 192 (adding completed declaration issue), 161–21 (adding ballot application issue) & Counts VIII, VIX.  As the state court could provide relief regarding identical issues on the same or faster timeline, the impact of abstention on the litigants will be minimal.  *See* July 30, 2020 Per Curiam Scheduling Order, *Pennsylvania Democratic Party v. Boockvar*, No. 407 M.D. 2020 (Pa. Commw. Ct.) (ordering final responsive briefs to be filed by August 27, 2020).  All factors weigh in favor of the Court's abstention.

### B. The Court Also Should Dismiss or Stay All of Plaintiffs' Claims Under *Colorado River* Abstention

Although *Pullman* does not require a court to abstain from adjudicating the entirety of a proceeding, this Court should also stay or dismiss the proceedings under the principles of judicial efficiency espoused in *Colorado River*, including Plaintiffs' poll watcher claims.  *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  This Court should abstain from resolving the state law questions under *Colorado River* for three reasons: (1) it allows the state courts with concurrent jurisdiction to resolve all of the important state policy issues; (2) it conserves both party and judicial resources; and (3) it helps achieve decisionmaking consistency

with respect to a complex state law. Plaintiffs' Amended Complaint does nothing to change this analysis.

Federal courts abstain under *Colorado River* out of respect for "considerations of [wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks omitted). The Third Circuit adopts the two-part test set forth in *Colorado River*. *See Golden Gate Nat'l Sr. Care, LLC v. Minich ex rel. Estate of Shaffer*, 629 F. App'x 348, 349 (3d Cir. 2015).

At the first step, a court must consider whether the federal and state court proceedings are "parallel" in that they raise "substantially identical claims" and have nearly identical parties. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) ("We have never required complete identity of parties for abstention.").

At the second step, a court engages in a six-part balancing test probing the following: (1) whether there is a *res* or other property at stake; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties. *See Golden Gate*, 629 F. App'x at 350.

*First*, the proceedings in this Court and those filed by Pennsylvania State Democratic Party in state court are parallel. All 67 counties and Secretary Boockvar are named defendants in both cases, both sets of plaintiffs represent national political parties, their constituents, and elected representatives, and the pending claims and issues are substantially the same. *See IFC Interconsult, AG*, 438 F.3d at 306 ("[W]hen there is a substantial identity of parties and claims, abstention is still appropriate only when there are ongoing, not completed parallel state proceedings.") (internal quotation marks omitted).

**Second**, avoiding piecemeal litigation—the predominant *Colorado River* factor—with an upcoming election is desirable to avoid "disrupt[ing] state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colo. River*, 424 U.S. at 814. Here, concurrent state court litigation will resolve the uncertain state law questions and interpret whether the guidance documents proffered by Secretary Boockvar complied with state law. Dkt. 85-2 at ¶¶ 142–161 (case before the Commonwealth Court). Pennsylvania's complex system for administering full and fair elections, including the guidance from the Secretary of State, is a matter of substantial public concern even without considering the ongoing global pandemic. *See Cal. Dem. Party v. Jones*, 530 U.S. 567, 572 (2000).

Further, the fifth and sixth factors weigh in favor of abstention. The Pennsylvania state courts are able to adequately protect all parties' interests here because they are best suited to resolve the issues presented, which, at bottom, are questions of pure state law. *Compare Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) (requiring a "skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate"), *with OpenPittsburgh.org v. Wolosik*, 2016 WL 7985286, at *5 (W.D. Pa. Aug. 9, 2016) ("Th[is] Court recognizes … the Pennsylvania Election Code provisions at issue are a complex and intricate statutory scheme over which state courts likely possess special expertise and proficiency."). These issues present "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case then at bar." *IFC Interconsult*, 438 F.3d at 305 (citation omitted). Although some other factors weigh against abstention, none weigh heavily enough to change the result. This Court should stay or dismiss the entirety of Plaintiffs' case.

C.      **Plaintiffs Fail to Plead Fraud with Sufficient Particularity**

Plaintiffs' challenges to the Pennsylvania county boards of elections' establishment and use of drop-boxes, their counting of ballots lacking secrecy envelopes and declarations, and their adherence to Secretary Boockvar's provisional ballot guidance should be dismissed for the additional and independent reason that they fail to plead their speculative fraud—the basis of their alleged injury—with sufficient particularity.

               *i.      Legal Standard*

The gravamen of the Amended Complaint is that Defendants allegedly allowed and will allow vote fraud to occur, thus diluting the vote.  *See* Am. Compl. ¶¶ 202, 212, 246, 265. Because Plaintiffs' claims (which are hypothetical at best) sound in fraud, they are subject to a heightened pleading requirement, which they have not met.  *See* Fed. R. Civ. P. 9(b); *see also In re Shop-Vac Mktg. & Sales Prac. Litig.*, 964 F. Supp. 2d 355, 360 (M.D. Pa. 2013) ("[I]n a case where fraud is not an essential element of a claim, only allegations … of fraudulent conduct must satisfy the heightened pleading requirements." (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003))); *cf. DiGenova v. Baker*, 2002 WL 32356401, at *2 (E.D. Pa. Apr. 11, 2002) (requiring Rule 9(b) heightened pleading for allegations of union election fraud).  To survive a motion to dismiss, Plaintiffs must plead when the illegal voting activity occurred, how it occurred, where it occurred, and who was involved.  *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (requiring plaintiffs to plead "the who, what, when, where, and how" of a fraud under Federal Rule of Civil Procedure 9(b)).  Plaintiffs cannot meet this standard as their allegations are entirely conjectural and their Amended Complaint does nothing to make them a reality.  Despite making two attempts at a proper pleading under Rule 9(b), Plaintiffs fail to sufficiently plead any details of the alleged fraud necessary to survive the motion to dismiss.

ii.    *Plaintiffs Do Not Sufficiently Plead Voter Fraud and Injury*

Plaintiffs have failed to plead that the establishment and use of drop-boxes and the counting of ballots lacking secrecy envelopes or declaration has or will lead to increased violations of election law related to absentee ballot voting.  The same is true for Plaintiffs' assertions that Secretary Boockvar's provisional ballot guidance increased "the possibility that illegally cast and/or fraudulent ballots would be counted."  Am. Compl. ¶ 102.  Plaintiffs' asserted injury is that apparently allowing non-disabled electors to deliver ballots, potentially without secrecy envelopes, to drop-boxes unmonitored by poll watchers, or by refusing to bar voters who had requested absentee ballots from voting, results in an array of alleged but unsubstantiated voter fraud that dilutes the power of validly cast ballots.  Am. Compl. ¶¶ 202–03, 212, 243–46, 256–60.  Plaintiffs do not allege (nor can they) that any improper activity of this nature has occurred.  Plaintiffs do not include any evidence supporting their conjectural theory of mail-in vote fraud: they do not cite it occurring in any county in Pennsylvania during the June primary—including the counties in which two of the individual plaintiffs voted by mail in that primary—nor do they cite any expert declarations as to the prevalence of this type of speculative voter fraud in Pennsylvania.  Plaintiffs make only the speculative assertion of an "increased potential for ballot fraud or tampering" in the future and cite only five total instances of impropriety occurring in Pennsylvania over the course of 26 years.  *Id.* ¶¶ 69, 155; *but see* Proposed Intervenors Mem. in Support of Mot. to Intervene at 4 n.6, Dkt. 104 (citing scientific studies indicating 1/10,000 of 1% of votes cast between 2000 and 2012 were fraudulent).  Plaintiffs cite a recent *Philadelphia Inquirer* article reporting forty instances of double voting in the June primary to support their proposition that the provisional ballot guidance would lead to increased misconduct.  Am. Compl. ¶¶ 150, 260.  But the same article highlights that Philadelphia County's "process largely worked," the "problem wasn't widespread," and the

ballots "were excluded to prevent double voting."[8]  Plaintiffs fail to otherwise allege when in Pennsylvania any voting fraud occurred, how it occurred, where it occurred, and who was involved as required under Rule 9(b).  *See Institutional Inv'rs Grp.*, 564 F.3d at 253.  Plaintiffs' speculative allegation of future injury cannot survive a motion to dismiss and, as evidenced by Plaintiffs' repeated failure to plead adequate facts in its Amended Complaint, further amendment is futile.

The Third Circuit has dismissed similar allegations of unsubstantiated voter fraud on a 12(b)(6) motion to dismiss related to absentee ballot and voting procedures.  In *Landes v. Tartaglione*, the Third Circuit affirmed the district court's dismissal of plaintiff's complaint as her alleged injury was based on a purely conjectural voter fraud theory, much like the one presented here.  153 F. App'x 131, 132 (3d Cir. 2005).  The District Court dismissed "[p]laintiff's claim that she is injured by the use of absentee voting" because it was pleaded as "only a generalized, theoretical concern that absentee ballots *may* result in fraud and other problems."  *Landes v. Tartaglione*, 2004 WL 2397292, at *2–3 (E.D. Pa. Oct. 26, 2004), *aff'd*, 153 F. App'x 131 (3d Cir. 2005); *see also Landes v. Tartaglione*, 2004 WL 2415074, at *3 (E.D. Pa. Oct. 28, 2004) (dismissing the complaint for failure to sufficiently plead that voting machines actually suffered from manipulation or technical failure in the past or will suffer from it in the future), *aff'd*, 153 F. App'x 131 (3d Cir. 2005).  Plaintiffs' allegations here are no different and lack sufficient particularity to plead the hypothetical fraud they assert.  Therefore, Plaintiffs have failed to state a claim upon which relief can be granted.

---

[8] Jonathan Lai, *Philly Elections Officials Caught 40 Cases of Double Voting.  It's Not Fraud, but It's Still a Problem*, Phila. Inquirer (June 16, 2020), https://www.inquirer.com/politics/election/pa-primary-election-mail-ballots-double-voting-20200616.html.

**CONCLUSION**

For the reasons stated above, the Intervenors respectfully request that this Court enter an order granting the Intervenors' Motion to Dismiss Plaintiffs' Amended Complaint.

Dated: July 31, 2020

Respectfully submitted,

/s/ Lori A. Martin

Witold J. Walczak (PA No. 62976)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel.: (412) 681-7736
vwalczak@aclupa.org

Adriel I. Cepeda Derieux[†]
Sophia Lin Lakin[†]
Dale Ho[†]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org
slakin@aclu.org
dho@aclu.org

Sarah Brannon[†++]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Tel: (202) 210-7287
sbrannon@aclu.org

Ezra Rosenberg*
John Powers*
Voting Rights Project
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Tel: (202) 662-8300

Lori A. Martin[‡] (PA No. 55786)
Christopher R. Noyes[†]
Eleanor Davis*
Jared Grubow[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Lori.Martin@wilmerhale.com
Christopher.Noyes@wilmerhale.com
Eleanor.Davis@wilmerhale.com
Jared.Grubow@wilmerhale.com

Jason H. Liss[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6699
Jason.Liss@wilmerhale.com

Samantha K. Picans[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
(720) 598-3477
Sam.Picans@wilmerhale.com

David P. Yin[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6677
David.Yin@wilmerhale.com

erosenberg@lawyerscommittee.org
jpowers@lawyerscommittee.org

Mary M. McKenzie* (PA No. 47434)
Benjamin D. Geffen* (PA No. 310134)
PUBLIC INTEREST LAW CENTER
1500 JFK Blvd., Suite 802
Philadelphia PA 19102
Telephone: 215-627-7100
Fax: 215-627-3183
mmckenzie@pubintlaw.org
bgeffen@pubintlaw.org

† Admitted *pro hac vice*.
* *Pro hac vice* forthcoming.
‡ Admission Pending
++ Not admitted in DC; DC practice limited to
federal court only.

*Counsel for NAACP Pennsylvania State Conference,*
*Common Cause Pennsylvania, League of Women*
*Voters of Pennsylvania, Patricia M. DeMarco,*
*Danielle Graham Robinson, and Kathleen Wise*