**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) ) | *Electronically Filed* |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | No.: 2-20-CV-966 |
| KATHY BOOCKVAR; *et al.*, | ) ) ) | Judge J. Nicholas Ranjan |
| Defendants. | ) | |

**PLAINTIFFS' OMNIBUS**
**BRIEF IN OPPOSITION TO DEFENDANTS' RULE 12 MOTIONS**
**(ECF ##246; 261; 263; 272; 274; 278; 280; 283; 287; 288; 289; 293; 294; & 296)**

PORTER WRIGHT MORRIS & ARTHUR LLP

By:   */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy  A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice)
Justin Clark (DC #499621)
(admitted pro hac vice)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.    CASE STATEMENT ...................................................................................... 3

    A.    Administration Of Elections Under The Pennsylvania Election Code. ............................ 3

    B.    Absentee And Mail-In Voting Under The Pennsylvania Election Code. ........................... 4

    C.    The Pennsylvania Election Code's Poll Watching Provisions. ........................................ 7

    D.    Defendants' Improper Administration Of Pennsylvania's 2020 Primary Election. ............ 8

        1.    Secretary Boockvar Advises That County Election Boards Cannot Decline Absentee And Mail-In Ballot Applications Absent Aa "Bona Fide Objection," And Some, But Not All, County Election Boards Follow This Advice. .................. 8

        2.    Secretary Boockvar Encourages County Election Boards To Use Illegal Unmonitored Drop-Boxes And Other Ballot Collection Locations For Voted Absentee And Mail-In Ballots, And Approximately 20 Counties Follow This Guidance And Some Even Permit Third-Party Delivery Of Absentee And Mail-In Ballots. .................................................................................... 9

        3.    Secretary Boockvar Advises County Election Boards To Allow Those Who Voted Via Absentee And Mail-In Ballots To Vote Provisionally At The Polling Place, Resulting In The Casting Of Double Votes And Disparate Treatment In Contravention Of The Election Code's Clear Mandate. ......................................... 11

        4.    Defendants' Uneven Treatment Of Absentee And Mail-Ballots That Fail To Include A Secrecy Envelope Or Otherwise Comply With The Voting Mandates Of The Election Code And Act 77 ...................................................................... 12

    E.    Plaintiffs Challenge Defendants' Election Administration As An Unconstitutional Infringement Of Their Fundamental Rights. ................................................................. 14

III.    APPLICABLE LEGAL STANDARDS ........................................................ 16

IV.    ARGUMENT ................................................................................................ 16

    A.    Plaintiffs Have Standing To Pursue Their Claims. ...................................................... 16

        1.    Plaintiffs Have Constitutional Standing Under Article III. ..................................... 17

            a.    *Plaintiffs Have Alleged An Injury-In-Fact.* .................................................. 18

            b.    *Plaintiffs Have Alleged Defendants' Conduct Has Caused Their Threatened Injury.* ........................................................................... 23

            c.    *Plaintiffs Have Alleged That Their Threatened Injury Is Redressable by This Court.* ........................................................................................ 25

        2.    Plaintiffs Also Have Prudential Standing To Pursue Their Claims. ........................ 25

            a.    *The Individual Voter Plaintiffs.* ................................................................ 26

             b.    *Plaintiffs RNC And The Trump Campaign.* ................................................ 28

3.    All Plaintiffs Have Standing To Pursue The Poll Watching Claims In This Action. 31

B.    Plaintiffs' Claims Are Ripe And Not Moot. .................................................. 33

C.    Venue In The Western District Of Pennsylvania Is Proper. ............................ 38

D.    No Eleventh Amendment Immunity Bars Plaintiffs' Federal And State Constitutional Claims. .............................................................................................................. 39

E.    Plaintiffs Have Properly Stated Claims For Constitutional Violations Of Their Right To Vote And To Free, Fair, Transparent, And Verifiable Elections, And They Do Not Need To Allege Or Prove Voter Fraud To Invoke This Court's Jurisdiction Over Those Claims. .............................................................................................................. 44

1.    Voter Dilution Claims Are Valid. ....................................................... 44

2.    Plaintiffs Have Alleged Causation. ..................................................... 47

3.    Plaintiffs Do Not Need To Plead Or Prove Fraud. .............................. 47

4.    Plaintiffs' Poll Watcher Claims Are Not Deficient. ........................... 48

5.    The Secretary's Guidance to Ignore State Law, And Those County Election Boards Which Followed That Guidance, Infringe Plaintiffs' Constitutional Rights. ................................................................................................ 49

F.    All County Election Boards Are Indispensable Parties And Have Been Properly Named In This Lawsuit. .................................................................................... 51

G.    Abstention Is Not Warranted. ....................................................................... 54

1.    *Pullman* Abstention Is Not Warranted. .............................................. 55

a.    *State Law Issues Are Clear And Unmistakable.* .......................... 56

b.    *The Constitutional Claims Are Unlikely To Be Narrowed.* .......... 58

c.    *Additional Equitable Factors Call For A Rejection of Pullman Abstention...* 59

2.    *Burford* Abstention Is Inappropriate. ................................................. 61

3.    *Colorado River* Abstention Is Not Warranted. .................................. 62

4.    *Brillhart-Wilton* Abstention Is Inappropriate. ................................... 66

5.    *Younger* Abstention Is Not Appropriate. ............................................ 67

H.    Some Defendants Failed To Meet-And-Confer Prior To Filing. .................... 68

I.    Defendants' Motion To Strike Is Unsupported. ............................................. 68

V.    CONCLUSION ..................................................................................................... 69

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*ABC v. Blackwell*,
 479 F. Supp. 2d 719 (S.D. Ohio 2006) ...................................................................60

*Acosta v. Democratic City Comm.*,
 288 F. Supp. 3d 597 (E.D. Pa. Jan. 22, 2018)..................................................41, 42

*Adamietz v. Smith*,
 273 F.2d 385 (3d. Cir. 1960)...................................................................................51

*Alden v. Me.*,
 527 U.S. 706 (1999)................................................................................................43

*Anderson v. Celebrezze*,
 460 U.S. 780 (1983)................................................................................................49

*Anderson v. United States*,
 417 U.S. 211 (1974)..........................................................................................45, 65

*Arcia v. Fla. Sec'y of State*,
 772 F.3d 1335 (11th Cir. 2014) ..................................................................20, 36, 37

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................16

*Atl. Marine Constr. Co. v. United States Dist. Court*,
 571 U.S. 49 (2013)............................................................................................38, 39

*Babbitt v. UFW Nat'l Union*,
 442 U.S. 289 (1979)................................................................................................18

*Baggett v. Bullitt*,
 377 U.S. 360 (1964)................................................................................................58

*Baker v. Carr*,
 369 U.S. 186 (1962)................................................................................................45

*Balsam v. Sec'y of N.J.*,
 607 F. App'x 177 (3d Cir. 2015) ......................................................................41, 42

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................16

*Better Gov't Bureau v. McGraw*,
  904 F. Supp. 540 (S. D. W.Va. Oct. 16, 1995) ......................................................40

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) ...........................................................................47

*Brethren Mut. Ins. Co. v. Hoffman*,
  2008 U.S. Dist. LEXIS 109289 (M.D. Pa. Aug. 20, 2008) ...................................67

*Brillhart v. Excess Ins. Co.*,
  316 U.S. 491 (1942) .......................................................................................67

*Burdick v. Takushi*,
  504 U.S. 428 (1992) ...................................................................................49, 50

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943) ...................................................................................61, 62

*Bush v. Gore*,
  531 U.S. 98 (2000) ................................................................................ *passim*

*Cano v. Davis*,
  191 F. Supp. 2d 1140 (C.D. Cal. 2002) ...........................................................60

*In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*,
  843 A.2d 1223 (Pa. 2004) ..................................................................... *passim*

*Charfauros v. Bd. of Elections*,
  249 F.3d 941 (9th Cir. 2001) .........................................................................52

*Chez Sez III Corp. v. Union*,
  945 F.2d 628 (3d Cir. 1991).................................................................55, 56, 60

*Citizen Ctr. v. Gessler*,
  770 F.3d 900 (10th Cir. 2014) .......................................................................21

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)........................................................................................22

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)...................................................................18, 21, 23, 25

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)................................................................................62, 63

*Common Cause v. Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009)..........................................................................47

*Constitution Party v. Aichele,*
  757 F.3d 347 (3d Cir. 2014)................................................................................17

*Constitution Party v. Cortes,*
  712 F. Supp. 2d 387 (E.D. Pa. 2010) ............................................................30, 37

*Cook v. Gralike,*
  531 U.S. 510 (2001)............................................................................................52

*Davis v. FEC,*
  554 U.S. 724 (2008)............................................................................................17

*De La Fuente v. Cortes,*
  261 F. Supp. 3d 543 (M.D. Pa. 2017) ......................................................35, 36, 37

*Del. Health Care Inc. v. MCD Holding Co.,*
  893 F. Supp. 1279 (D. Del. 1995).......................................................................69

*Democratic Exec. Comm. v. Detzner,*
  347 F. Supp. 3d 1017 (N.D. Fl. 2018) ................................................................28

*Democratic Party of the United States v. Nat'l Conservative Political Action
  Comm.,*
  578 F. Supp. 797 (E.D. Pa. 1983), *aff'd in part and rev'd in part by Federal
  Election Comm'n v. National Conservative Political Action Comm.,* 470 U.S.
  480 (1985)...........................................................................................................29

*Dunn v. Blumstein,*
  405 U.S. 330 (1972)......................................................................................28, 52

*Eisai Co. v. Teva Pharms. USA, Inc.,*
  629 F. Supp. 2d 416 (D.N.J. 2009) .....................................................................69

*Erfer v. Commonwealth,*
  794 A.2d 325 (Pa. 2002), *abrogated on other grounds, League of Women
  Voters v. Commonwealth,* 178 A.2d 737 (Pa. 2018)......................................30, 31

*FOCUS v. Allegheny County Court of Common Pleas,*
  75 F.3d 834 (3d Cir. 1996)..................................................................................67

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009).................................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000).............................................................................................18

*Gill v. Scholz,*
  962 F.3d 360 (7th Cir. 2020) ...............................................................................49

*Goode v. Gloria*,
590 F. App'x 120 (3d Cir. 2014) ...................................................................23

*Goudy-Bachman v. U.S. HHS*,
764 F. Supp. 2d 684 (M.D. Pa. Jan. 24, 2011).........................................47

*Gov't Employees Ins. Co. v. Tri-County Neurology & Rehab. LLC*,
721 Fed. Appx. 118 (3d Cir. 2018)...............................................61, 62

*Gray v. Sanders*,
372 U.S. 368 (1963)...........................................................17, 24, 28, 52

*Green Party of Pennsylvania v. Aichele*,
103 F. Supp. 3d 681 (E.D. Pa. 2015) ................................................37, 38

*Grode v. Mutual Fire, Marine & Inland Ins. Co.*,
8 F.3d 953 (3d Cir. 1993).....................................................................54, 62

*Harper v. Virginia State Board of Elections*,
*383 U.S. 663 (1966)* ........................................................................44, 52, 65

*Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*,
126 F.3d 461 (3d Cir. 1997)...............................................................49

*Heindel v. Andino*,
359 F. Supp. 3d 341 (D.S.C. 2019)...................................................22

*Hughes v. Lipscher*,
906 F.2d 961 (3d Cir. 1990)...............................................................56

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*,
438 F.3d 298 (3d Cir. 2006)...............................................................63

*Kool, Mann, Coffee & Co. v. Coffey*,
300 F.3d 340 (3d Cir. 2002)...............................................................48

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d Cir. 1993)...................................................................16

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*,
440 U.S. 391 (1979)...........................................................................43

*Landes v. Tartaglione*,
2004 U.S. Dist. LEXIS 21694 (E.D. Pa. Oct. 26, 2004)........................26

*League of Women Voters v. Commonwealth*,
178 A.3d 737 (Pa. 2018) ...............................................................53, 54, 55

*Local 3 v. Ridge*,
  1997 U.S. Dist. LEXIS 8893 (E.D. Pa. June 19, 1997) ........................................39

*Marchioro v. Chaney*,
  442 U.S. 191 (1979)..............................................................................................31

*Marks v. Stinson*,
  1994 U.S. Dist. LEXIS 5273 (E.D. Pa. Apr. 26, 1994) .......................................56

*Merle v. U.S.*,
  351 F.3d 92 (3d Cir. 2003)..............................................................................34, 35

*Morse v. Republican Party*,
  517 U.S. 186 (1996)........................................................................................35, 36

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)......................................................................................54, 63, 66

*Myers v. American Dental Ass'n*,
  695 F.2d 716 (3d Cir. 1982)..................................................................................38

*N. Ins. Co. v. Chatham Cnty.*,
  547 U.S. 189 (2006)...............................................................................................43

*N.J.-Philadelphia Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of
  Higher Educ.*,
  654 F.2d 868 (3d Cir. 1981)..................................................................................59

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
  571 F.3d 299 (3d Cir. 2009).............................................................................62, 63

*NCAA v. Corbett*,
  25 F. Supp. 3d 557 (M.D. Pa. 2014) .....................................................................56

*Oregon v. Mitchell*,
  400 U.S. 112 (1970) (Douglas, J., concurring)...............................................44, 65

*Orloski v. Davis*,
  564 F. Supp. 526 (M.D. Pa. 1983) ........................................................................29

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
  38 F.3d 1380 (3d Cir. 1994)..................................................................................16

*Pa. Democratic Party v. Republican Party of Pa.*,
  2016 U.S. Dist. LEXIS 153944 (E.D. Pa. Nov. 7, 2016)......................................28

*Pa. Prison Soc'y v. Cortes*,
  508 F.3d 156 (3d Cir. 2007)..................................................................................22

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
 461 U.S. 190 (1983)....................................................................................32, 33

*Paher v. Cegavske,*
 2020 U.S. Dist. LEXIS 92665 (D. Nev. May 27, 2020)..............................22, 26, 50

*PG Publ. Co. v. Aichele,*
 902 F. Supp. 2d 724 (W.D. Pa. 2012)....................................................3, 37, 40, 42

*Pierce v. Allegheny County Bd. of Elections,*
 324 F. Supp. 2d 684 (W.D. Pa. 2003)........................................................ *passim*

*Powell v. McCormack,*
 395 U.S. 486 (1969).....................................................................................34

*Prichard v. United States,*
 181 F.2d 326 (6th Cir.), *aff'd due to absence of quorum,* 339 U.S. 974 (1950) ....................45

*Project Vote v. Kelly,*
 805 F. Supp. 2d 152 (W.D. Pa. 2011)...............................................................52

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,*
 344 U.S. 237 (1952).....................................................................................34

*Quackenbush v. Allstate Ins. Co.,*
 517 U.S. 706 (1996).....................................................................................54

*Railroad Commission of Texas v. Pullman Co.,*
 312 U.S. 496 (1941)........................................................................ *passim*

*Ray v. Atlantic Richfield Co.,*
 435 U.S. 151 (1978).....................................................................................39

*Reddy v. Foster,*
 845 F.3d 493 (1st Cir. 2017).........................................................................23

*Reifer v. Westport Ins. Corp.,*
 751 F.3d 129 (3d Cir. Apr. 29, 2014) ..........................................................66, 67

*Reilly v. Ceridian Corp.,*
 664 F.3d 38 (3d Cir. 2011)...........................................................................22

*Republican Party of Pa. v. Cortes,*
 218 F. Supp. 3d 398 (E.D. Pa. Nov. 3, 2016) ..................................................48

*Reynolds v. Sims,*
 377 U.S. 533 (1964)...........................................................................44, 45, 52, 65

*Riley v. Simmons*,
    45 F.3d 764 (3d Cir. 1995)....................................................................................61

*Roe v. Alabama*,
    43 F.3d 574 (11th Cir. 1995) ..............................................................................24

*Ryan v. Johnson*,
    115 F.3d 193 (3d Cir. 1997)................................................................................63

*Sandusky Cty. Democratic Party v. Blackwell*,
    387 F.3d 565 (6th Cir. 2004) .........................................................................20, 28

*SEPTA v. Pa. PUC*,
    210 F. Supp. 2d 689 (E.D. Pa. 2002) ..............................................................64, 67

*Shelby Advocates for Valid Elections v. Hargett*,
    947 F.3d 977 (6th Cir. 2020) .........................................................................19, 20

*Slaughter-House Cases*,
    83 U.S. 36 (1873)...........................................................................................44, 65

*Smiley v. Holm*,
    285 U.S. 355 (1932)...........................................................................................65

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) .............................................................................50

*Spencer v. Kemna*,
    523 U.S. 1 (1998)..............................................................................................35

*Starnes v. Court of Common Pleas of Butler Cnty. Pa.*, No. 17-1304,
    2018 U.S. Dist. LEXIS 20495 (W.D. Pa., Feb. 8, 2018) ......................................69

*State Auto Ins. Cos. v. Summy*,
    234 F.3d 131 (3d Cir. 2000).........................................................................66, 67

*Stein v. Cortes*,
    223 F. Supp. 3d 423 (E.D. Pa. 2016) ..................................................................27

*Stevenson v. State Board of Elections*,
    638 F. Supp. 547 (N.D. Ill. 1986) .......................................................................39

*Storer v. Brown*,
    415 U.S. 724 (1974)..........................................................................................35

*Summit Med. Assocs., P.C. v. Pryor*,
    180 F.3d 1326 (11th Cir. 1999) .........................................................................40

*Tex. Democratic Party v. Benkiser,*
    459 F.3d 582 (5th Cir. 2006) ................................................30

*Tex. Democratic Party v. Hughs,*
    2020 U.S. Dist. LEXIS 131768 (W.D. Tex. July 22, 2020) ....................................32

*Tiryak v. Jordan,*
    472 F. Supp. 822 (E.D. Pa. 1979) ................................................31

*Town of Chester v. Laroe Estates, Inc.,*
    137 S. Ct. 1645 (2017) ................................................17

*Trent v. Dial Medical,*
    33 F.3d 217 (3d Cir. 1994) ................................................63

*Trinsey v. Montgomery County Bd. of Elections,*
    1988 U.S. Dist. LEXIS 8704 (E.D. Pa. Aug. 4, 1988) ................................................43

*Twining v. New Jersey,*
    211 U.S. 78 (1908) ................................................44, 65

*U.S. Term Limits, Inc. v. Thornton,*
    514 U.S. 779 (1995) ................................................52

*United States v. Mosley,*
    238 U.S. 383 (1915) ................................................45

*Univ. of Md. v. Peat Marwick Main & Co.,*
    923 F.2d 265 (3d Cir. 1991) ................................................63

*Va. Office for Protection & Advocacy v. Stewart,*
    563 U.S. 247 (2011) ................................................40

*Valley Forge Christian College v. Americans United for Separation of Church &
    State,*
    454 U.S. 464 (1982) ................................................25, 26

*Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc.,*
    295 F.3d 870 (8th Cir. 2002) ................................................66

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.,*
    429 U.S. 252 (1977) ................................................17

*Welborn v. IRS,*
    218 F. Supp. 3d 64 (D.D.C. 2016) ................................................22

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ................................................66, 67

*Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands,*
 385 F.3d 801 (3d Cir. 2004)................................................................34

*Yang v. Tsui,*
 416 F.3d 199 (3d Cir. 2005)................................................................63

*Ex parte Yarbrough,*
 110 U.S. 651 (1884)..........................................................44, 45, 65

*Ex parte Young,*
 209 U.S. 123 (1908)..........................................................39, 40, 41

*Zablocki v. Redhail,*
 434 U.S. 374 (1978)................................................................61

*Zambelli Fireworks Mfg. Co. v. Wood,*
 592 F.3d 412 (3d Cir. 2010)................................................................51

**Statutes**

25 P.S. § 2602 ................................................................11

25 P.S. §2621 ................................................................4

25 P.S. §2641 ................................................................3, 51

25 P.S. §2642 ................................................................4, 51

25 P.S. §§2650 ................................................................31

25 P.S. §2687 ................................................................7, 8

25 P.S. §2729 ................................................................31, 57

25 P.S. §3050 ................................................................7, 11, 12

25 P.S. §3146 ................................................................ passim

25 P.S. §3150. ................................................................ passim

28 U.S.C. §1331 ................................................................15

28 U.S.C. §1343 ................................................................15

28 U.S.C. §1367 ................................................................15

28 U.S.C. §1391 ................................................................15, 38, 39

28 U.S.C. §1406................................................................39

28 U.S.C. §2201 .................................................................................................66

42 U.S.C. §1983 .................................................................................15, 42, 67

42 Pa. C.S. §3133 ...............................................................................................29

Pa. Const. art. I, §28 ..........................................................................................53

Pa. Const. art. IV, §1 .........................................................................................42

Pa. Const. art. VII, §1 ........................................................................................53

Pa. Const. art. IX, §4 .........................................................................................42

Pa. Const. art. IX, §14 .......................................................................................42

**Other Authorities**

FED.R.CIV.P. 8 ...................................................................................................16

FED.R.CIV.P. 19 .................................................................................................53

FED.R.CIV.P. 19 .................................................................................................53

L.R. 7.A ..............................................................................................................68

## I.    **<u>INTRODUCTION</u>**

Plaintiffs' Verified Amended Complaint seeks nothing more than to ensure that the upcoming General Election is conducted according to constitutional, uniform, lawful procedures.  Faced with that modest request, all but 23 of the originally named or subsequently intervened Defendants (collectively, "Moving Defendants") have mustered a veritable kitchen sink of flawed procedural, jurisdictional, and legal objections in a futile attempt to short-circuit this case.  To paraphrase Shakespeare's Hamlet, Moving Defendants "doth protest too much, methinks."  Most of the arguments made by Moving Defendants ignore factual assertions in the Verified Amended Complaint, focus on inapt legal comparisons at the expense of the relevant law, and outright misconstrue the Plaintiffs' claims.  When the pleaded facts are accepted as true, the correct law is applied, and the claims that actually are made are considered, each motion (to dismiss, for a more definite statement, and to strike) should be denied.

An accurate understanding of the claims actually asserted by Plaintiffs is critical in order to assess Moving Defendants' mischaracterizations.  Plaintiffs have brought claims against Defendants to enforce the law as it relates to ballot collection and counting.  The inconsistent, patchwork administration of the Primary Election foretells of a General Election similarly fraught with the collection of ballots through illegal means, the counting of ballots that do not meet the Election Code's requirements for a properly cast ballot, and a lackadaisical approach to enforcing the Election Code's other requirements.  The General Election is a mere three months away, and no new guidelines have been issued by the Secretary of the Commonwealth to remedy the ballot collection and ballot counting illegalities from the Primary Election.  And the Secretary's filings seeking to dismiss the Verified Amended Complaint reveal a view that the restrictions imposed by the General Assembly for ballot collection and proper ballot casting are mere suggestions that can be disregarded on a whim.  But the Pennsylvania Supreme Court has determined that the Election Code requirements for by-mail voting are mandatory, substantive provisions of Pennsylvania's election process that must be followed to

ensure ballot secrecy and to prevent fraud.  Plaintiffs seek equal and rigorous enforcement of such requirements, nothing more and nothing less.

In order to shield themselves from facing a court order requiring compliance with the law, Moving Defendants have thrown nearly every defense imaginable against Plaintiffs.  Yet, when actually analyzed, none of those defenses necessitate dismissal of the Verified Amended Complaint. Plaintiffs have standing—both Article III and prudential—to bring these claims.  Also, Plaintiffs' claims are neither unripe nor moot.  Venue is proper in this judicial district.  And, the Eleventh Amendment does not apply to bar the Plaintiffs' claims.

Moving Defendants' Rule 12(b) assertions fare no better.  Plaintiffs have stated valid vote dilution claims based upon the Defendants' inconsistent election administration, and causation has been sufficiently alleged.  And despite Moving Defendants' ardent belief to the contrary, none of Plaintiffs' claims require pleading or proving voter fraud.  Plaintiffs' claims about the unconstitutional restrictions on poll watchers is not foreclosed by dicta in a case from the Eastern District.  And the fact-intensive *Anderson/Burdick* test does not come out in favor of Moving Defendants; even if it applied at a motion to dismiss stage, the illegal conduct by Defendants would tip the scales in favor of Plaintiffs.

The indispensable nature of the County Election Boards defeats the motions to dismiss (or motions for a more definite statement) based upon a lack of allegations of conduct by a particular board.  To ensure a uniform application of the Election Code, which is necessary to protect Plaintiffs' constitutional rights, all of the County Election Boards must be before this Court.

Abstention, in any of its forms, is not warranted.  Moving Defendants ask this Court to abstain in favor of a later-filed state court matter that will not even be through with briefing on preliminary objections until August 27, 2020 (and discovery has not commenced).  With only three months left until the General Election, waiting is not an option.  Moreover, Plaintiffs are not parties to that state

court action, the claims are not identical, the state law at issue is not ambiguous, and no other justification exists that would justify this Court declining to fulfill its strict duty to exercise jurisdiction to protect federal constitutional rights.

Several of the Moving Defendants neglected to engage in this Court's mandatory meet-and-confer before filing their Rule 12 motions; thus, their motions should be denied. Similarly, this Court should deny the Motions to Strike that are devoid of the identification of any specific allegations that should be stricken (or any explanation of prejudice).

Accordingly, Plaintiffs request this Court deny the pending Rule 12 motions and move this case forward so that federal constitutional rights can be protected and the upcoming General Election can be conducted in accordance with the law, ensuring that every valid votes counts and that a free, fair, reliable, and transparent public election occurs in Pennsylvania on November 3, 2020.

## II.   CASE STATEMENT

### A.   Administration Of Elections Under The Pennsylvania Election Code.

In Pennsylvania, the Election Code[1] governs and regulates elections. *See* Verified Amended Complaint (ECF #234), ¶49. Under Election Code Section 301(a), 25 P.S. §2641(a), the Commonwealth's sixty-seven counties administer elections, and each county must have "a county board of elections" that "shall have jurisdiction over the conduct of primaries and elections in such county, in accordance with the provisions of [the Election Code]." ECF #234, ¶105. *See also PG Publ. Co. v. Aichele*, 902 F. Supp. 2d 724, 731 n.2 (W.D. Pa. 2012) ("Pennsylvania law requires each county to have a 'county board of elections' responsible for exercising 'jurisdiction over the conduct of primaries and elections in such county.'").

---

[1] Unless otherwise indicated, the capitalized terms in this Response have the meanings attributed to them in the Verified Amended Complaint (ECF #234).

The general powers of the County Election Boards are set forth in Election Code Section 302, 25 P.S. §2642.  ECF #234, ¶106.  Under Section 302(f), the County Election Boards are empowered to "make and issue such rules, regulations and instructions, *not inconsistent with law*, as they may deem necessary *for the guidance of voting machine custodians, election officers and electors*."  *Id.* (quoting 25 P.S. §2642(f)) (emphasis added).  However, the County Election Boards have no power to enact or adopt rules, policies, practices, and/or procedures that violate the Election Code's explicit directives, including those involving absentee and mail-in voting, on the pretext of pursuing a liberal construction.  *Id.* at ¶¶107-108.

Importantly, the Election Code gives Secretary Boockvar no authority to oversee the County Election Boards' election administration, except for limited authority to order a recount or recanvass.  *Id.* at ¶110; s*ee also* 25 P.S. §2621.  Consequently, under the Election Code, the County Election Boards, rather than Secretary Boockvar, are responsible to mail out, receive, count, and verify absentee and mail-in ballots.  *See* ECF #234, ¶110 (citing 25 P.S. §§3146.5, 3146.6(a) & (c), 3146.8(g)(3), 3150.15, 3150.16(a) & (c)).  Also, the County Election Boards issue all "certificates of appointment to watchers at primaries and elections."  *Id.* at ¶110 (citing 25 P.S. §2642(e)).  Additionally, the County Election Boards are responsible for "instruct[ing] election officers in their duties … to the end that primaries and elections may be honestly, efficiently, and *uniformly* conducted." *Id.* at ¶110 (citing 25 P.S. §2642(g)) (emphasis added).

**B.    Absentee And Mail-In Voting Under The Pennsylvania Election Code.**

Under the Election Code, in-person voting is the preferred and more secure method to cast one's ballot.  Consequently, prior to 2019, voting by mail was limited to only those electors who met the requirements for absentee voting under the Pennsylvania Constitution.  *See* ECF #234, ¶¶83-89.

On October 31, 2019, the Pennsylvania General Assembly enacted Act 77.  *Id.* at ¶90.  Act 77 made several changes to Pennsylvania elections, including the adoption of a specific, tightly

regulated plan for absentee and no excuse mail-in voting designed to ensure the ballot's secrecy and prevent fraud. *Id.* at ¶91.

For example, for both absentee and mail-in voting, Act 77 retains the requirement that "the [non-disabled] elector shall send [his or her absentee or mail-in ballot] by mail, postage prepaid, except where franked, or deliver it in person to [the] county board of elections," in order for the ballot to be properly cast under Act 77. *Id.* at ¶92 (citing 25 P.S. §§3146.6(a) & 3150.16(a)). Also, Act 77 retains the requirement that whether voting an absentee or mail-in ballot, an elector "shall, in secret, … fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot[,]'" "shall then [place the ballot envelope] in the second one, on which is printed the form of declaration of the elector, and the ***address of the elector's county board of election*** and the local election district of the elector[,]" and "shall then fill out, date and sign the declaration printed on such envelope." *Id.* at ¶93 (citing 25 P.S. §§3146.6(a) & 3150.16(a)) (emphasis added). Moreover, as it did prior to the enactment of Act 77, the Election Code bars the counting of an absentee or mail-in ballot that lacks an "Official Election Ballot" secrecy envelope, contains on that envelope "any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference," fails to have the outside envelope's declaration filled-out, dated, and signed, and/or is delivered by a person other than the non-disabled elector. *Id.* at ¶94. *See also* 25 P.S. §§3146.6(a), 3150.16(a) & 3146.8(g)(4)(i)-(iv); *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1231-34 (Pa. 2004) (declaring Section 3146.6(a)'s requirements as "mandatory," and that ballots of non-disabled voters cast in contravention of the requirements are "void").

In contrast to prior provisions of the Election Code, under Act 77, all absentee and mail-in ballots are no longer kept at the polling places on Election Day and are no longer inspected by the local

election boards or subject to challenge by such boards or poll watchers at the polling places.  *See* ECF #234, ¶96.  Instead, Act 77 mandates that all properly cast absentee and mail-in ballots are to remain with the County Election Boards until they are canvassed.  *Id.* (citing 25 P.S. §3146.8(a)).  Also, Act 77 requires the County Election Boards to conduct a pre-canvass of all absentee and mail-in ballots received before 7:00 a.m. on Election Day and does not permit poll watchers to attend this pre-canvass meeting.  *Id.* at ¶97 (citing 25 P.S. §3146.8(g)(2)).  Further, Act 77 mandates that the County Election Boards are to meet no earlier than the close of polls on Election Day and no later than the third day following the election to begin canvassing absentee and mail-in ballots, at which time poll watchers can be present to observe the opening and counting of the absentee and mail-in ballots.  *Id.* at ¶98 (citing 25 P.S. §3146.8(g)(2) & (b)).

Similar to prior provisions of the Election Code, Act 77 specifies the "address" of the County Election Boards as the location where voters must mail or personally deliver all cast absentee and mail-in ballots.  *Id.* at ¶99 (citing 25 P.S. §§3146.6(a) & 3150.16).  Accordingly, other locations, including without limitation mobile locations and polling places, are not authorized for the return or delivery of absentee or mail-in ballots under Act 77.  *Id.*

Act 77 prohibits an elector from casting both a mail-in ballot and in-person ballot.  Specifically, Act 77 provides "[a]ny elector who receives and votes a mail-in ballot under section 1301-D shall not be eligible to vote at a polling place on election day[,] … and district election officers shall not permit electors who voted a mail-in ballot to vote at the polling place."  *Id.* at ¶99 (citing 25 P.S. §3150.16(b)(1)).

All of these restrictions and requirements in the Election Code, as amended by Act 77, seek to reduce the possibility that illegally cast and/or fraudulent ballots will be counted.  *Id.* at ¶102.

**C.       The Pennsylvania Election Code's Poll Watching Provisions.**

Election Code Section 417, 25 P.S. §2687, creates the position of poll watcher and entrusts to each candidate for election at any election, and each political party and each political body which has nominated candidates for such elections, the power to appoint poll watchers to serve in each election district in the Commonwealth.  *See* ECF #234, ¶51 (citing 25 P.S. §2687(a)).  Under Election Code Section 417(b), poll watchers may observe the election process from the time the first polling place official appears in the morning to open the polling place until the time the polls are closed and the election returns are counted and posted at the polling place entrance.  *Id.* at ¶54 (citing 25 P.S. §2687(b)).  However, until the polls close, only one poll watcher representing each political party and its candidates at a general election can be present in the polling place outside the enclosed space from the time that the election officers meet to open the polls and until the vote counting is complete.  *Id.* Once the polls close and while votes are counted, all the poll watchers for candidates and political parties or bodies are permitted to be in the polling place outside the enclosed space.  *Id.* (citing 25 P.S. §2687(b)).

Under the Election Code, poll watchers are authorized to challenge the identity, continued residence in the election district, or registration status of any person who presents to vote at a polling place on Election Day.  *Id.* at ¶56 (citing 25 P.S. §3050(d)).  Also, prior to October 31, 2019, poll watchers were authorized to be present at the polling place on Election Day when absentee ballots, which were required to be kept at the polling places on Election Day, were examined by local election boards and to assert challenges to the mail-in ballots' validity.  *Id.* at ¶57.

When initially enacted, Election Code Section 417 restricted a poll watcher's geographical territory to a single appointed election district within the county in which the person was a qualified registered elector.  *Id.* at ¶165.  In 2004, Section 417 was amended to expand the poll watcher's

geographical territory from a single election district to all election districts in the county in which the watcher is a qualified registered elector. *Id.* at ¶166 (citing 25 P.S. §2687(b) (2004)).

In 2019, when Act 77 was enacted, no changes were made to Election Code Section 417 or the county residency requirement of poll watchers. *Id.* at ¶167. Consequently, the Election Code does not authorize a candidate or political party to appoint a poll watcher to serve in an election district in a county in which the watcher is not a qualified registered elector. *Id.* at ¶168 (citing 25 P.S. §2687(b)). Additionally, given its use and definition of the term "polling place," the Election Code does not permit poll watchers to be present at all locations where mail-in and absentee ballots are collected to ensure that no third-party delivery or other ballot-harvesting has occurred. *Id.* at ¶181. Nor does the Election Code permit poll watchers to be present during the pre-canvass meetings. *Id.* at ¶182.

### D.    Defendants' Improper Administration Of Pennsylvania's 2020 Primary Election.

On June 2, 2020, Pennsylvania held its Primary Election, which was the first election following the enactment of Act 77 and its no excuse mail-in voting alternative. *Id.* at ¶112. Prior to the Primary Election, Secretary Boockvar disseminated to all the County Election Boards three sets of "Guidelines." *Id.* at ¶¶116, 138, & 143. All three Guidelines purportedly "define both what is required by Act 77 and what is permissible under Act 77 or some other portion of the Election Code." *Id.* at ¶¶117, 139, & 144. All three Guidelines are available on the Department of State's website on its "Election Administration Tools" page. *Id.* at ¶¶116, 138, & 143.

### 1.    Secretary Boockvar Advises That County Election Boards Cannot Decline Absentee And Mail-In Ballot Applications Absent A "Bona Fide Objection," And Some, But Not All, County Election Boards Follow This Advice.

According to Secretary Boockvar's January 10, 2020 Guidelines, "[a] county board of elections **cannot decline** the voter's application for a mail-in or absentee ballot, unless there is a bona fide objection to the mail-in or absentee ballot application." *Id.* at ¶118. Yet, Act 77 states that a county

election board, "upon receipt of any application of a qualified elector under section 1301-D, shall determine the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained on the applicant's permanent registration card," and determine for itself whether it is "satisfied that the applicant is qualified to receive an official mail-in ballot," at which point "the application shall be marked 'approved,'" which decision "shall be final and binding, except that challenges may be made only on the grounds that the applicant [i]s not a qualified elector." *Id.* at ¶119 (citing 25 P.S. §3150.12b(a)(1)-(2)). *See also* 25 P.S. §3146.2b(a)–(c).

The January 10, 2020 Guidelines make no mention of the County Election Boards' duty to verify an applicant's qualifications or identification by comparison to the applicant's permanent registration card. *Id.* at ¶120.  Instead, the January 10, 2020 Guidelines suggest the County Election Boards must approve all submitted applications unless someone raises a "bona fide objection," without any further explanation as to what constitutes a "bona fide objection." *Id.*  Several counties followed the "guidance" provided in the January 10, 2020 Guidelines and approved all applications for absentee or mail-in ballots without performing the requisite verification of the applicant's qualifications or identification by comparison to the applicant's permanent registration card. *Id.* at ¶121.

> **2.**     **Secretary Boockvar Encourages County Election Boards To Use Illegal Unmonitored Drop-Boxes And Other Ballot Collection Locations For Voted Absentee And Mail-In Ballots, And Approximately 20 Counties Follow This Guidance And Some Even Permit Third-Party Delivery Of Absentee And Mail-In Ballots.**

Under the headings "Optional County Services" and "Collection of Mail-In and Absentee Ballots," the January 10, 2020 Guidelines state that "[a]s allowed under existing law, county election boards may provide for mail-in and absentee application processing and balloting at more than one [county elections office (CEO)] located within county borders," and advises that "[w]hen choosing a location for the CEO, counties should consider, at a minimum, … choos[ing] locations that serve

heavily populated urban/suburban areas, as well as rural areas, [including] near heavy traffic areas such as commercial corridors, large residential areas, major employers and public transportation routes." *Id.* at ¶122.  Nowhere in the January 10, 2020 Guidelines does Secretary Boockvar disclose what "existing law" permits the creation of additional county election offices, *id.*, and indeed, no such existing law exists.  *Id.* at ¶123.  Moreover, although the January 10, 2020 Guidelines note the importance of the County Election Boards to follow certain "best practices" concerning the use of drop boxes and other "ballot collection locations," the January 10, 2020 Guidelines instruct the County Election Boards to "contact the Department [of State] for [further] guidance" on these issues, which was disseminated to some but not all County Election Boards.  *Id.* at ¶¶124-25.

Approximately 20 County Election Boards followed the January 10, 2020 Guidelines and other "guidance" provided by Secretary Boockvar, and allowed absentee and mail-in ballots to be returned to other locations, such as shopping centers, parking lots, fairgrounds, parks, retirement homes, college campuses, fire halls, municipal government buildings, and elected officials' offices.  *Id.* at ¶126.  Additionally, the Philadelphia County Board of Elections partnered with a self-proclaimed non-partisan group to implement a mobile mail-in ballot drop-off initiative to collect voted absentee and mail-in ballots from non-disabled voters at various locations within Philadelphia County.  *Id.* at ¶127.

Moreover, the Delaware County Board of Elections announced the day before the June 2, 2020 Primary Election that it was permitting third-party delivery of absentee and mail-in ballots for non-disabled voters and that absentee and mail-in ballots could be returned to "ANY polling location on Election Day" via unmonitored drop boxes, where voters would "not be required to check in with the [poll] workers."  *Id.* at ¶128.  Further, the Delaware County Board of Elections allowed those who received and completed absentee or mail-in ballots but did not want to return them to the election board to appear at their respective polling location on Election Day and cast provisional ballots which would

"likely be included in the initial results." *Id.*  All of these actions by the Delaware County Election Board contravened the clear and unambiguous mandates of the Election Code and Act 77.  *Id.* (citing 25 P.S. §§3146.6(a) & (b)(1)-(3), 3150.16(a) & (b)(1)-(3), and 3050(a.4)).

Most of the locations that were used to collect mail-in or absentee ballots for the Primary Election involved the use of unmonitored and unsecured "drop-off boxes" or other similar means.  *Id.* at ¶129.  Moreover, the amount of notice and the fashion in which notice was given concerning the existence, use, and location of the drop boxes and the mobile voting sites varied among the 20 counties that implemented such measures, and many of the notices failed to comply with the Election Code's notice publication requirements.  *Id.* at ¶130.  Further, many of the locations used to collect mail-in or absentee ballots for the Primary Election, such as parking lots and elected officials' offices or buildings, do not constitute a "polling place" as defined in Election Code Section 102(q), 25 P.S. § 2602(q).  *Id.* at ¶¶131-32.  Thus, the use of illegal and inadequately noticed drop boxes or mobile drop-off facilities has created a gap in the ability of political parties and their candidates and voters to observe the delivery process and ensure that Pennsylvania's election laws are being followed.  *Id.* at ¶134.

### 3. Secretary Boockvar Advises County Election Boards To Allow Those Who Voted Via Absentee And Mail-In Ballots To Vote Provisionally At The Polling Place, Resulting In The Casting Of Double Votes And Disparate Treatment In Contravention Of The Election Code's Clear Mandate.

According to the January 30, 2020 Guidelines, "[a]s soon as a voter requests a civilian absentee ballot or mail-in ballot, they are <u>only</u> entitled to vote by provisional ballot if they show up at their polling place, and the voter is not shown on the district register as having voted an absentee or mail-in ballot," citing Election Code Section 1210, 25 P.S. §3050(a.4)(1).  *Id.* at ¶140 (emphasis original).  Also, the January 30, 2020 Guidelines state: "Act 77 of 2019 establishes provisional balloting as the <u>only</u> option for voters to cast their vote in the event their absentee or mail-in ballot is not returned to the county by 8:00 p.m. on election day."  *Id.* (emphasis original).

The Secretary's "guidance" concerning this aspect of Act 77 contradicts the law's clear and unambiguous provisions. *Id.* at ¶¶141, 142, 147, 148, & 151. Under Act 77, "[a]ny elector who receives and votes an absentee ballot pursuant to section 1301 shall not be eligible to vote at a polling place on election day," even provisionally. *See* 25 P.S. §§3146.6(b)(1) & 3150.16(b)(1). As Act 77 makes clear, only "[a]n elector who requests an absentee ballot and who is not shown on the district register as having voted the ballot may vote by provisional ballot under section 1210(a.4)(1)." *See* 25 P.S. §§3146.6(b)(2) & 3150.16(b)(2). [2]

Some, but not all, of the County Election Boards followed the "guidance" provided in the January 30, 2020 Guidelines, resulting in the arbitrary and disparate treatment of electors throughout the Commonwealth. *See* ECF #234, ¶¶149, 152. Also, the Philadelphia County Elections Board reported that double voting (*i.e.*, voting by mail and in-person by the same elector) occurred in the Primary Election, which would not have occurred but for the "guidance" provided in the January 30, 2020 Guidelines. *Id.* at ¶¶150-52.

### 4. Defendants' Uneven Treatment Of Absentee And Mail-Ballots That Fail To Include A Secrecy Envelope Or Otherwise Comply With The Voting Mandates Of The Election Code And Act 77.

Not discussed in the January 10, 2020, January 30, 2020, or the March 5, 2020 Guidelines is whether absentee and mail-in ballots that fail to include an inner secrecy envelope, that contain marks,

---

[2] The March 5, 2020 Guidelines state: "If a voter is issued an absentee or mail-in ballot for the upcoming election, they cannot vote a regular ballot." *See* ECF #234, ¶145. Under Section 11 of Act 2020-12 (S.B. 422), approved March 27, 2020, the General Assembly amended Election Code Section 1306(b) to provide that "an elector who requests but chooses not to vote his or her absentee or mail-in ballot may vote a regular ballot in-person at the polling place if the elector remits his or her unvoted absentee or mail-in ballot and the envelope containing the elector's declaration to the judge of elections to be spoiled and the elector signs the requisite statement declaring that he or she has not voted the absentee or mail-in ballot and has requested it to be spoiled." *See* 25 P.S. §§3146.6(b)(3) & 3150.16(b)(3)). This change to Section 1306(b) applies to the November 3, 2020 General Election per Section 17(2)(iv) of Act 2020-12 (S.B. 422). To the extent Secretary Boockvar does not retract or modify the March 5, 2020 Guidelines, this statement is an incorrect statement of the law.

symbols, or texts on that envelope, or that do not fully comply with the other mandates of the Election Code and Act 77 in the casting of such ballots are void or can be counted. *Id.* at ¶153. Apparently, after "receiv[ing] some questions from county officials in recent days" prior to the Primary Election, Secretary Boockvar issued on May 28, 2020 an email message of "High Importance" titled "Important DOS Email re: Absentee/Mail-In Ballot Canvass." *Id.* at ¶154 & Ex. 1. In the May 28, 2020 Directive, Secretary Boockvar advised the County Election Boards that "there is **no statutory requirement, nor is there any statutory authority,** for setting aside an absentee or mail-in ballot solely because the voter forgot to properly insert it into the official election ballot envelope," citing 25 P.S. §3146.8(g)(4)(ii), and suggested that "[t]o preserve the secrecy of such ballots, the board of elections in its discretion may develop a process by which the members of the pre-canvass or canvass boards insert these ballots into empty official election ballot envelopes or privacy sleeves until such time as they are ready to be tabulated." *Id.* at ¶155.

Many of the County Election Boards followed the May 28, 2020 Directive and counted in the 2020 Primary Election absentee and mail-in ballots that failed to comply with the inner secrecy envelope and other voting mandates promulgated in the Election Code and Act 77 for such ballots. *Id.* at ¶157. Moreover, some counties, such as Philadelphia County, viewed the May 28, 2020 Directive as an affirmation of their practice to count absentee and mail-in ballots that fail to fully comply with the Election Code and Act 77's voting mandates for such ballots. *Id.* at ¶158. Other counties viewed the situation differently and disqualified absentee and mail-in ballots that failed to comply with the Election Code and Act 77's mandates, causing an uneven treatment of absentee and mail-in voters through the Commonwealth. *Id.* at ¶¶157-58, 161.

- 13 -

**E.      Plaintiffs Challenge Defendants' Election Administration As An Unconstitutional Infringement Of Their Fundamental Rights.**

On June 29, 2020, Plaintiffs[3] commenced this action, claiming that Defendants' inconsistent enforcement of the Election Code has resulted and, if left unabated, will result in the arbitrary and disparate treatment of voters in the Commonwealth and a violation of their First and Fourteenth Amendment rights to vote and to free, fair, transparent, and verifiable elections under the United States Constitution. *Id.* at ¶¶1-267.  Specifically, Plaintiffs assert that the casting of votes in violation of the Election Code's mandatory provisions renders them void. *Id.* at ¶162.  Further, Plaintiffs contend that for statewide elections involving federal candidates, Defendants' allowance, by act or omission, of the collection and counting of in-person, provisional, and absentee and mail-in ballots in a manner and at locations that are contrary to the Election Code's mandatory provisions constitutes legislative action by the Executive Branch in violation of the Elections and Electors Clauses of the United States Constitution. *Id.* at ¶163.  Also, Plaintiffs claim that the lack of statewide standards governing the location of drop boxes and the subsequent use of a patchwork of ad-hoc rules that vary from county to county in a statewide election involving federal and state-wide candidates violates the Equal Protection and the Privileges and Immunities Clauses of the Fourteenth Amendment. *Id.* at ¶¶164 & 170-171. *See also id.* at ¶¶18-39.  Additionally, Plaintiffs claim that the Commonwealth has not articulated and cannot articulate a constitutionally recognized basis to restrict poll watchers to their resident counties

---

[3] Plaintiffs are: (1) the principal committee for the reelection campaign of President Donald J. Trump, (2) four members of the United States House of Representatives, representing the 13th, 14th, 15th, and 16th Congressional Districts of Pennsylvania and seeking reelection to another term in office; (3) a national political committee that leads the Republican Party of the United States; and (4) two qualified registered electors residing in Pennsylvania who would like to poll watch in counties outside their residential counties. *See* ECF #234, ¶¶8-15.  All of the Plaintiffs have vested interests in the upcoming November 3, 2020 General Election, as either federal candidates who will be on ballots cast in election districts that contain portions of multiple counties or are in all 67 counties, or as voters or political committees of such candidates. *Id.* at ¶¶8-15, 169-173, & 175-189.

and/or to preclude poll watchers from being present at either locations that are used to collect voted mail-in and absentee ballots on or prior to Election (to the extent such collections at locations beyond the County Election Boards' offices or through inadequately noticed and unmonitored ad hoc drop boxes are authorized by the Election Code and Act 77, which Plaintiffs assert they are not), or the pre-canvass meeting of such voted absentee and mail-in ballots. *Id.* at ¶¶186-189.  Finally, Plaintiffs assert that the January 10, 2020, January 30, 2020, and March 5, 2020 Guidelines, and the May 28, 2020 Directive remain in place and, absent judicial intervention, will result in the same unconstitutional deprivation of rights to occur in the November 3, 2020 General Election as occurred in the June 2, 2020 Primary Election without sufficient time for Plaintiffs to seek appropriate redress from the courts. *Id.* at ¶¶190-192.

Plaintiffs seek both declaratory and injunctive relief to prevent the same improprieties that occurred during the June 2, 2020 Primary Election from occurring in the November 3, 2020 General Election and other future federal and statewide elections. *Id.* at pp.71-73.  Plaintiffs invoke federal subject matter jurisdiction under 28 U.S.C. §§1331 and  1343 and 42 U.S.C. §1983, for their federal claims under the First and Fourteenth Amendments.  *Id.* at ¶¶6, 193-215, 223-232, 237-248, & 253-263.  And Plaintiffs assert supplemental jurisdiction under 28 U.S.C. §1367 for their state law claims under the Pennsylvania Constitution's Equal Protection and free and Equal Elections Clauses.  *Id.* at ¶6, 216-222, 233-236, 249-252, & 264-267.  Plaintiffs aver that venue exists under 28 U.S.C. §1391 because a substantial part of events giving rise to the claims occurred in the Western judicial district and because more than one-third of the County Election Boards reside within the Western district and all Defendants are Pennsylvania residents. *Id.* at ¶7.

### III.   APPLICABLE LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED.R.CIV.P. 8(a)(2).  Therefore, a complaint can be dismissed for failure to state a claim only if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The Third Circuit has adopted a two-prong test to be applied in deciding motions to dismiss for failure to state a claim.  First, a district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint.  *Fowler*, 578 F.3d at 210-11.  Second, the district court must consider whether the facts alleged in the complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief."  *Id.* at 211.

To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts.  *Id.*  Also, in applying this plausibility standard, the reviewing court must make a context-specific inquiry, drawing on its judicial experience and common sense.  *Id.*  And although the focus in assessing a motion to dismiss is on the allegations set forth in the pleadings, "matters of public record, orders [and] exhibits attached to the complaint" also may be considered.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

### IV.   ARGUMENT

#### A.   Plaintiffs Have Standing To Pursue Their Claims.

Many of the Moving Defendants argue Plaintiffs lack standing to pursue their claims in this action.  But Plaintiffs' complaint provides sufficient factual allegations that, when taken as true, confirm that Plaintiffs have standing.  Further, none of the Moving Defendants dispute that Plaintiffs

are either federal candidates who will be on the ballots cast in election districts that contain portions of multiple counties or involve all 67 Pennsylvania counties, or voters or political committees of such candidates.  ECF #234, ¶¶8-15, 169-73, 175-89.  Moreover, six of the Plaintiffs are also Pennsylvania qualified electors.  *Id.* at ¶¶9-12, 14-15.  And it is well recognized that the arbitrary and disparate enforcement of Pennsylvania's election laws, including permitting a patchwork of different rules from county to county in a statewide election involving federal and state candidates, implicates both federal and state equal protection concerns.  *See, e.g., Gray v. Sanders,* 372 U.S. 368, 379-81 (1963); *Pierce v. Allegheny County Bd. of Elections,* 324 F. Supp. 2d 684, 698-99 (W.D. Pa. 2003).  Accordingly, if Plaintiffs lack standing to challenge Defendants' illegal and unconstitutional conduct, it is unclear who would possess standing to challenge such conduct.  However, the Moving Defendants' standing argument is not well-taken for several reasons.

## 1.    Plaintiffs Have Constitutional Standing Under Article III.

"The standing inquiry [under Article III of the U.S. Constitution] ... focuse[s] on whether the party invoking jurisdiction ha[s] the requisite stake in the outcome when the suit [i]s filed." *Davis v. FEC,* 554 U.S. 724, 734 (2008).  "To establish that stake, a plaintiff must show three elements: injury-in-fact, causation, and redressability." *Constitution Party v. Aichele,* 757 F.3d 347, 360 (3d Cir. 2014). Consequently, "[a] plaintiff has standing in federal court if the party can allege an injury in fact caused by the defendant that can be redressed by the courts." *Pierce,* 324 F. Supp. 2d at 692-93.  In multiple-plaintiff cases like this, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester v. Laroe Estates, Inc.,* 137 S. Ct. 1645, 1651 (2017).  And if there is one plaintiff "who has demonstrated standing to assert these rights as his own," the court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 264 & fn.9 (1977), superseded by statute on other grounds.

a.      *Plaintiffs Have Alleged An Injury-In-Fact.*

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent[.]"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted).  The mere threat of an injury is sufficient to confer standing.  *Id.* (internal quotation marks and brackets omitted).  The injury-in-fact requirement does not require literal certainty that the anticipated injury will materialize.  Rather, it means only that the plaintiff "must demonstrate *a realistic danger* of sustaining a direct injury as a result" of the challenged action.  *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979) (emphasis added); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) ("in a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will *likely* occur or continue" (emphasis added)).

In analyzing whether Plaintiffs have satisfied the injury prong, this District's decision in *Pierce* is instructive.[4]  *Pierce* involved substantially similar claims of unconstitutional misadministration of the Election Code's absentee ballot law—in particular, the Allegheny County Board of Elections' policy of accepting third-party hand-delivery of absentee ballots in violation of the Election Code.  *Pierce*, 324 F. Supp. 2d at 692.  As in this case, the plaintiffs in *Pierce* alleged that the acceptance by

---

[4] Some Moving Defendants argue that *Pierce* is inapposite because it was filed after the absentee ballots had been cast but before they were opened.  This argument ignores that the *Pierce* court specifically identified an injury similar to the injury Plaintiffs suffer here.  Further, it is undisputed that part of the timing of when the *Pierce* lawsuit was filed was the county election board's implementation over a five-day period of three inconsistent policies concerning the delivery of absentee ballots, two of which the plaintiffs in *Pierce* asserted were in violation of 25 P.S. §3146.6(a) and the manner in which that law had been interpreted and applied in at least one other Pennsylvania county.  Here, there is no divergent implementation by Defendants of the policies that Plaintiffs in this case assert are in contravention of the Election Code and Act 77.  Instead, Defendants implemented those policies in January, March, and May 2020, and they remain in place for the November 3, 2020 General Election and all future elections.  Therefore, the pertinent fact is not when the absentee ballots are cast, but whether Defendants have implemented policies which are contrary to the Election Code which Plaintiffs have alleged have occurred here.  Therefore, *Pierce* is instructive in this case.

election officials of such illegal absentee ballots would dilute the plaintiffs' votes and thereby violate their constitutionally protected right to vote and to have their votes weighted equally with their fellow voters.  *Id*.  The *Pierce* court found the plaintiffs' allegations sufficient to confer Article III standing. In particular, the court held that "plaintiffs, who are voters, pled a sufficient injury by alleging that, if this court does not act, there will be no mechanism by which absentee ballots could be challenged for alleged violations of the election code and the United States Constitution."  *Id*.

The same reasoning applies here.  Similar to *Pierce*, if this Court does not act, there will be no mechanism by which absentee and mail-in ballots can be challenged for alleged violations of the Pennsylvania Election Code, including Act 77.  This infringes upon the voter's federal constitutional rights to have their votes cast and counted and not diluted by votes that are improper or otherwise fraudulent.  *See generally* ECF #234.  Therefore, like in *Pierce*, Plaintiffs have Article III standing.[5]

Moving Defendants ignore *Pierce* and instead cite cases that are readily distinguishable and only highlight the flaws in their argument.  In *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir. 2020), the plaintiffs sought injunctive relief to remedy various alleged election administration problems in Shelby County, Tennessee, which the plaintiffs alleged they feared would result in their votes being denied or burdened in future elections.  In holding that the plaintiffs lacked standing, the Sixth Circuit found that "[t]he crux of the problem is that nearly all of the plaintiffs' allegations of past harm stem from human error," and that "[f]ear that individual mistakes will recur, generally speaking, does not create a cognizable imminent risk of harm."  Id. at 981.

---

[5] Unlike in *Pierce*, Plaintiffs in this case include statewide candidates whose election will be impacted if illegal absentee and mail-in votes are permitted to be cast in those counties who, following Secretary Boockvar's guidance, have decided to not enforce the mandatory terms of the Election Code's absentee and mail-in voting provisions.

This case does not involve allegations of human error.  Plaintiffs allege that Defendants have deliberately adopted and enforced policies and procedures in contravention of the Election Code and the federal and state constitutions that pose a severe threat to the credibility and integrity of, and public confidence in, Pennsylvania's elections.  *See generally* ECF#234.  This case is more analogous to the Sixth Circuit's earlier decision in *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004), which the *Shelby* court distinguished in its opinion.  *Shelby*, 947 F.3d at 982-83.

In *Sandusky*, the plaintiffs sought injunctive relief in advance of the November 2004 election to reverse a directive from the Ohio Secretary of State that the plaintiffs alleged violated federal law by limiting a voter's right to cast a provisional ballot.  *Sandusky*, 387 F.3d at 570-71.  As the *Shelby* court noted in distinguishing the case, "[w]hile the plaintiff organizations [in *Sandusky*] 'could not identify specific voters' who would mistakenly be denied the chance to vote and thus could not allege with certainty that their members would be harmed," the Sixth Circuit held that the plaintiffs in *Sandusky* had standing because "the challenged policy—which violated a federal statute—made it 'inevitable' that the defendants would deny individuals their voting rights."  *Shelby*, 947 F.3d at 982-83 (quoting *Sandusky*, 387 F.3d at 574) (brackets omitted).  The same is true here, as the policies adopted and enforced by Defendants, unless enjoined, will inevitably result in the dilution of validly cast ballots by allowing, and indeed encouraging, illegal absentee and mail-in voting.  ECF#234, ¶212; *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (in allegation Florida was scrubbing its voter rolls of suspected non-citizens within 90 days of a federal election in violation of the National Voter Registration Act, the individual plaintiffs, naturalized U.S. citizens, had established Article III standing because "there was a ***realistic probability*** that they would be misidentified due to unintentional mistakes in the Secretary's data-matching process" (emphasis added)).

Nor does the Supreme Court's decision in *Clapper* help Moving Defendants' argument. *Clapper* was not an election case but rather a challenge to the Foreign Intelligence Surveillance Act (FISA) brought by a group of attorneys, human rights groups, and other plaintiffs who feared the Act would authorize the interception of their international communications with individuals who might be the target of surveillance. *Clapper*, 568 U.S. at 401. The *Clapper* Court held the plaintiffs lacked standing because their theory of harm "rest[ed] on a speculative chain of possibilities," none of which are present here. *Id.* at 410. Of particular concern to the Court was the plaintiff's assumption that the Foreign Intelligence Surveillance Court would authorize the surveillance of their communications, which the Court found problematic given the Court's "reluctan[ce] to endorse standing theories that require guesswork as to how independent decision makers will exercise their judgment." *Id.*

Here, unlike in *Clapper*, there is no independent adjudicatory body to prevent the inevitable vote dilution that will occur as a result of the unlawful policies instituted by Defendants. And there is nothing speculative about Plaintiffs' allegations as to how Defendants will implement the Pennsylvania Election Code. Defendants have already demonstrated how they will implement the Pennsylvania Election Code through the policies they adopted and enforced during the June 2, 2020 Primary Election. ECF #234, ¶2.

The other cases cited by Moving Defendants are also inapposite. The Tenth Circuit's decision in *Citizen Ctr. v. Gessler*, 770 F.3d 900, 911-12 (10th Cir. 2014), held that the plaintiff organization lacked standing to challenge the use of traceable ballots based on its failure to allege that election officials were likely to trace its members ballots. Here, Plaintiffs have alleged, not just that Defendants' policies are *likely* to result in vote dilution, but that Defendants' policies *will* inevitably result in such vote dilution. ECF #234, ¶2.

The District of South Carolina's decision in *Heindel v. Andino*, 359 F. Supp. 3d 341, 353-358, 366 (D.S.C. 2019), subsequently vacated, found that generalized and speculative fears that electronic voting machines would be hacked or malfunction were insufficient to confer Article III standing. Generalized and speculative fears about hackers, outside of the election context, were also at issue in the cases of *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011), and *Welborn v. IRS*, 218 F. Supp. 3d 64, 77 (D.D.C. 2016). Here, in contrast, there is nothing generalized or speculative about Plaintiffs' allegations that they will be injured by Defendants' policies of allowing illegal absentee and mail-in voting. Defendants adopted and enforced these illegal policies during June 2, 2020 primary election, and they will enforce the same illegal policies in November. ECF #234, ¶¶112-61.

The District of Nevada's recent decision in *Paher v. Cegavske*, 2020 U.S. Dist. LEXIS 92665, at *11-12 (D. Nev. May 27, 2020), did find that the plaintiffs lacked standing to challenge the state's adoption of mail-in voting because the plaintiff complained merely that absentee ballots were sent to Nevada voters without request, not that the state was accepting illegal (and therefore void) absentee ballots as in this case. The former, as the court found in *Paher*, would not directly lead to voter disenfranchisement through vote dilution. *Paher*, 2020 U.S. Dist. LEXIS 92665, at *11-12. The latter, as Plaintiffs allege here, will as every accepted illegal absentee ballot will necessarily dilute the vote of those casting valid ballots. ECF#234, ¶¶159, 162, 202.

The remainder of the cases cited by Defendants have nothing to do with elections and involve facts far afield from the case at hand. In *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 110 (1983), the U.S. Supreme Court held that a citizen did not have standing to seek an injunction barring the L.A.P.D. from using chokeholds because the citizen failed to establish a real and immediate threat that the police would use such a chokehold on him in the future. The Third Circuit's decision in *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 165 (3d Cir. 2007), involved a state constitutional amendment that made

it more difficult for a prisoner to obtain a sentence commutation, and the court found that the prisoner plaintiffs had failed to allege an injury-in-fact for standing purposes because they failed to allege that they planned to apply for commutation in the immediate future or that they would have been granted commutation under the more lenient rules.  The Third Circuit's decision in *Goode v. Gloria*, 590 F. App'x 120, 121-22 (3d Cir. 2014), held that a prisoner's abstract fears about the sufficiency of the prison's dental care products, mail-handling procedures, and chemical storage, without any allegations of imminent harm as a result thereof, were insufficient to confer Article III standing.  The First Circuit's decision in *Reddy v. Foster*, 845 F.3d 493, 496 (1st Cir. 2017), involved a challenge to a state statute allowing abortion facilities to demarcate buffer zones, in which the court held that the plaintiffs' alleged injury was too speculative because no abortion facility had done so and there was no evidence that any facility ever would.  To the extent any of these cases are useful as a comparison here, they show merely that a plaintiff may not base standing on purely speculative or hypothetical future injuries.  Here, as set forth above, Plaintiffs' allegations of injury do not depend on speculation or hypothesizing.  Plaintiffs' Amended Complaint is based on illegal policies that the Defendants have already implemented and, absent the Court's intervention, will continue to implement in the upcoming election.

> **b.  *Plaintiffs Have Alleged Defendants' Conduct Has Caused Their Threatened Injury.***

To satisfy the causation prong of the standing analysis, the alleged injury must be "fairly traceable" to the challenged action.  *Clapper*, 568 U.S. at 414-15.  Plaintiffs have satisfied this prong as well.  Again, this District's decision in *Pierce* provides a fitting analogy.  In *Pierce*, the court found "it is clear that plaintiffs' challenges [to election officials' acceptance of illegal absentee ballots] are traceable to defendant's implementation of three different policies that appear inconsistent with a strict interpretation of the election code and are also inconsistent with the policy in at least one other county." *Pierce*, 324 F. Supp. 2d at 692.  Likewise, here, Plaintiffs' Amended Complaint alleges that vote

dilution will occur as a direct result of the policies implemented by Defendants in contravention of the Election Code and Plaintiffs' constitutional rights. *See, e.g.*, ECF#234, ¶202. Plaintiffs also allege injury traceable to Defendants' implementation of a patchwork of different rules from county to county in a statewide election involving federal and state candidates which, as this District noted in *Pierce*, implicates federal equal protection concerns. *Id*. at ¶¶146-167 & 189-200; *Pierce*, 324 F. Supp. 2d at 698-99; *see also* Gray, 372 U.S. at 379-81 (a county unit system which weights some votes or areas heavier than others violates the Equal Protection Clause and its one person, one vote jurisprudence).

Moving Defendants argue that Plaintiffs cannot demonstrate causation because Plaintiffs' alleged injuries are dependent on the acts of third parties who would take advantage of Defendants' lax policies on absentee ballots to commit voter fraud and not on the conduct of Defendants themselves. Not so. Although Plaintiffs' Complaint does allege that Defendants' policies will lead to voter fraud, Plaintiffs allege that vote dilution will occur regardless of such fraud.

The casting of votes in violation of the Election Code's mandatory provisions renders them void regardless of whether fraud is involved. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d at 1231-34. And the counting of such improperly cast ballots, even where there is no fraud, necessarily dilutes the votes of those who have properly cast their ballots. *Id.*; *see Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995) (holding that to count absentee ballots that failed to comply with notarization/witness requirements under the Alabama Election Code "would dilute the votes of those voters who met the requirements of [the Election Code] as well as those voters who actually went to the polls on election day"). Such vote dilution will thus occur, and Plaintiffs will be injured thereby, any time that a County Elections Board accepts an absentee ballot improperly cast at an unmonitored drop-box or other illegal locations, delivered by a third-party for a non-disabled voter (the same practice at issue in *Pierce*), or not contained in the statutorily required secrecy envelope or

otherwise cast as mandated by the Election Code.  No fraud by a third party will need to occur for these injuries to be inflicted.  Defendants' own policies compel the counting of such illegal votes.  ECF #234, ¶¶122-161.  And Defendants' uneven treatment of absentee ballots from county to county also threatens Plaintiffs with constitutional injury.  *Pierce*, 324 F. Supp. 2d at 699 ("This kind of disparate treatment implicates the equal protection clause because uniform standards will not be used statewide to discern the legality of a vote in a statewide election.").  Accordingly, Plaintiffs have sufficiently alleged that their injuries are fairly traceable to the challenged actions by Defendants.

> ### c.      Plaintiffs Have Alleged That Their Threatened Injury Is Redressable By This Court.

The third prong of the test for Article III standing requires that the alleged injury be "redressable by a favorable ruling."  *Clapper*, 568 U.S. at 409 (internal quotation marks omitted).  Plaintiffs' Complaint easily satisfies this element as well.  The declaratory and injunctive relief requested by Plaintiffs would redress Plaintiffs' injuries by preventing Defendants from enforcing the policies under which they are deliberately and systematically counting illegal absentee ballots and thereby diluting properly cast votes and would implement uniform standards across all 67 counties for the collection and counting of absentee and mail-in ballots and for statewide poll watching.  Moving Defendants' arguments that the Court cannot redress Plaintiffs' injuries are based on the same flawed premise underlying their erroneous assertion that  Plaintiffs' claims are dependent on fraud being committed.

> ## 2.      Plaintiffs Also Have Prudential Standing To Pursue Their Claims.

Plaintiffs have "prudential standing" to pursue their claims.  The term "prudential standing" refers to a set of "principles that bear on the question of standing" beyond the bare constitutional requirements of Article III.  *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 474 (1982).  One such principle is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests

of third parties." *Id.* (internal quotation marks omitted). Another is that courts "refrain[ ] from adjudicating abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." *Id.* at 475 (internal quotation marks omitted). And third, courts have "required that the plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* (internal quotation marks omitted). None of these prudential considerations justify the dismissal of Plaintiffs' Complaint.

### a.   *The Individual Voter Plaintiffs.*

Plaintiffs Thompson, Kelly, Joyce, and Reschenthaler are not only candidates in the upcoming November election but also, along with Stringhill Patterson and Show, registered Pennsylvania voters whose own constitutional right to vote and to have their votes weighted equally with their fellow voters will be violated if Defendants' unlawful policies are not enjoined. ECF#234, ¶¶9-12, 14-15. It is well recognized that voters such as these Plaintiffs have standing to pursue litigation to ensure an election is conducted in accordance with the relevant laws and constitutional provisions. *See, e.g.*, *Pierce*, 324 F. Supp. 2d at 692-93 (voters have standing to pursue their constitutional claims because they meet all three requirements for federal standing).

Once again, the cases cited by Defendants are inapposite. In *Landes v. Tartaglione*, 2004 U.S. Dist. LEXIS 21694, *6-8 (E.D. Pa. Oct. 26, 2004), the court held that the plaintiff lacked standing—constitutional or prudential—to bring suit challenging the entire local, state, and federal scheme for absentee voting based on generalized concerns over transparency and fraud. The fact that the plaintiff based her standing on her status as a registered voter was not the fatal flaw in her claims. Rather, the defect in the plaintiff's standing was that her alleged injuries were "abstract and hypothetical" and she "d[id] not allege that her right to vote has been adversely affected by absentee voting." *Id.* at *7. Similarly, in *Paher*, 2020 U.S. Dist. LEXIS 92665, at *11-12, the court found that the plaintiffs lacked

standing to challenge Nevada's adoption of mail-in voting, not because the plaintiffs based their standing on their status as registered voters, but because the plaintiffs raised only "generalized grievances" concerning the state's plan to send mail-in ballots to voters without request and failed to more than speculatively allege a nexus between those grievances and any alleged vote dilution. And in *Stein v. Cortes*, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016), the court held the plaintiffs lacked standing to sue for a recount of the 2016 presidential election in Pennsylvania based on speculative fears of voting machine hacking because one of the plaintiffs (Green Party candidate Jill Stein) was not even a registered Pennsylvania voter and the other plaintiff failed to allege that his vote was affected.

Here, on the other hand, the individual voter Plaintiffs have alleged that their own right to vote will be infringed upon by Defendants' unlawful conduct. ECF#234, ¶¶9-12, 14-15. Plaintiffs' allegations are not generalized, abstract, or hypothetical but are based on specific policies implemented by Defendants that, if not enjoined, will unconstitutionally dilute the individual voter Plaintiffs' votes. The cases cited by Defendants are thus readily distinguishable.

Certain Moving Defendants also cite this District's decision in *Pierce* for the proposition that, for voters to have standing, they must be from the counties that are allegedly violating the Election Code. Yet, what these Moving Defendants ignore is that the upcoming November 3, 2020 election is a general election, with statewide and federal candidates on the ballot, and not a local election involving only candidates in that particular county. *Id.,* at ¶¶1, 8-12. Indeed, as the court noted in *Pierce*, when different standards are employed in different counties across the Commonwealth of Pennsylvania to determine whether a ballot has been properly cast and should be counted in a federal or statewide election, such "disparate treatment implicates the [federal] equal protection clause because uniform standards will not be used statewide to discern the legality of a vote in a statewide election." *Pierce,* 324 F. Supp. 2d at 699; *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) ("The right to vote is

protected in more than the initial allocation of the franchise.  Equal protection applies as well to the manner of its exercise.  Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."); *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction."); *Gray,* 372 U.S. at 380 ("The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of [the Supreme Court's] decisions.").

Voters in a statewide Pennsylvania election have federal court standing to sue any county election board which improperly administers the provisions of the Pennsylvania Election Code in a manner that causes improperly or illegally cast votes to dilute the votes of those who have properly cast their ballots.  The voters' residency is irrelevant to their federal court standing to challenge such counties' infringement of their fundamental rights under the United States Constitution.  Accordingly, the individual voter Plaintiffs have standing to pursue the claims in this action.

### b.       Plaintiffs RNC And The Trump Campaign.

It is beyond peradventure that political parties and committees have standing to ensure that elections are conducted in conformity with the law.  *See, e.g.*, *Sandusky County Democratic Party v. Blackwell,* 387 F.3d 565, 573-74 (6th Cir. 2004) ("Appellees are political parties and labor organizations.  They claim standing to assert their own rights, and also the rights of their individual members.  …  Under these principles, Appellees have standing to assert, at least, the rights of their members who will vote in the November 2004 election."); *Pa. Democratic Party v. Republican Party of Pa.*, 2016 U.S. Dist. LEXIS 153944, *8-9 (E.D. Pa. Nov. 7, 2016) ("I agree that Plaintiff has standing to proceed" in federal court because the lawsuit, which sought to enjoin poll watching activities by a presidential candidate and its political party, was "intended to protect the interests of both Democratic candidates running for office and Democratic voters"); *Democratic Exec. Comm. v. Detzner,* 347 F.

Supp. 3d 1017, 1025 (N.D. Fl. 2018) ("political parties 'have standing to assert, at least, the rights of its members who will vote in an upcoming election.'") (citation omitted); *Orloski v. Davis*, 564 F. Supp. 526, 530-31 (M.D. Pa. 1983) ("Pennsylvania Democratic State Committee, as an association representing the rights of its members, has standing to challenge" whether 42 Pa.C.S. §3133 violates the Fourteenth Amendment). As the Pennsylvania Middle District court in *Orloski* explained, because political parties "endorse[] and support[] candidates for statewide [] office in the Commonwealth," "represent all [their party] electors of the Commonwealth and [their endorsed] candidates for [office]," and sought to protect an interest that "is germane to [their] organizational purpose" and did not "require[] participation of individual members," political parties suffer an injury for which they have standing to sue in federal court. *Orloski*, 564 F. Supp. at 531; *see also Democratic Party of the United States v. Nat'l Conservative Political Action Comm.*, 578 F. Supp. 797, 810 (E.D. Pa. 1983) (holding the Democratic Party had standing to challenge presidential election campaign funding statute because "speech that reduces the likelihood of its nominee's victory injures the Democratic Party in more than an ideological way."), *aff'd in part and rev'd in part by Federal Election Comm'n v. National Conservative Political Action Comm.*, 470 U.S. 480 (1985).

Similar to the challenge in *Orloski*, where the election process itself was at issue, the Republican National Committee, as a national political committee that leads the Republican Party of the United States, has an interest in protecting both its organizational interests and those of its members, voters, and candidates in the November 3, 2020 General Election. ECF#234, ¶13. The RNC endorses and supports federal and statewide candidates for election in this Commonwealth, including President Donald J. Trump as the presumptive Republican nominee for the office of the President of the United States. *Id.* Also, the RNC organizes and operates the Republican National Convention through which its members nominate their candidates for President and Vice President of the United States. *Id.* The

relief sought by the RNC in this lawsuit seeks to redress the injury suffered by the RNC and its members, voters, and endorsed and nominated candidates as a result of Defendants' unconstitutional misadministration of the Election Code's provisions involving absentee and mail-in voting and poll watching. *Id.* at ¶¶18-204. Accordingly, the RNC has standing to bring this action.

As for the Trump Campaign, it is well recognized that "after the primary election, a candidate steps into the shoes of his party, and their interests are identical." *Tex. Democratic Party v. Benkiser,* 459 F.3d 582, 587-88 (5th Cir. 2006). Thus, much like the RNC, the Trump Campaign also has standing to bring this action.

In arguing to the contrary, certain Moving Defendants cite *Constitution Party v. Cortes,* 712 F. Supp. 2d 387 (E.D. Pa. 2010), which held that a group of minor political parties lacked standing to challenge the constitutionality of certain sections of the Pennsylvania Election Code that allowed taxing of litigation costs and attorneys' fees against non-major-party candidates defending challenges to their nomination papers. But the court there rejected the plaintiffs' standing not based on their status as political parties but because the alleged harm, a chilling of potential candidates' right to ballot access, was "conjectural and hypothetical," was not fairly traceable to the defendant government officials given that only private parties could file challenges to nomination papers, and was not redressable by the court because any decision would be merely advisory in nature. *Constitution Party,* 712 F. Supp. 2d at 396-98. In contrast, here, Plaintiffs' allegations of injury are concrete and imminent, are directly traceable to the challenged policies implemented by Defendants, and are easily redressed by the Plaintiffs' requested injunctive relief.

Certain Moving Defendants also argue that the RNC and the Trump Campaign lack standing based on the Pennsylvania Supreme Court's decision in *Erfer v. Commonwealth,* 794 A.2d 325, 330 (Pa. 2002), *abrogated on other grounds, League of Women Voters v. Commonwealth,* 178 A.2d 737

(Pa. 2018). However, *Erfer* was decided under Pennsylvania state law, not federal standing requirements. *Erfer*, 794 A.2d at 329. Plus, *Erfer*'s rationale was limited to "the law of standing in reapportionment matters." *Id.* at 330; *see also Applewhite v. Commonwealth*, 2014 Pa. Commw. Unpub. LEXIS 379, at *32 (Pa. Commw. Ct., Apr. 28, 2014). Thus, *Erfer* does not compel a conclusion that a national political committee or a candidate's committee lacks federal court standing to pursue constitutional violations involving the administration of a general election involving its federal and statewide candidates.

### 3.      All Plaintiffs Have Standing To Pursue The Poll Watching Claims In This Action.

All political parties and candidates have standing to pursue litigation involving poll watchers as the Election Code designates them with the authority to appoint poll watchers to represent them on Election Day, at sessions of the county election boards, and during any recount or re-canvass. *See* 25 P.S. §§2650(a), (c), 2687. Political parties and candidates have important interests at stake in elections, and poll watchers serve to protect those interests by preventing malfeasance, misconduct, and technical discrepancies that could alter the valid results of an election. *See Tiryak v. Jordan*, 472 F. Supp. 822, 823-24 (E.D. Pa. 1979) ("Although the [Commonwealth] is ultimately responsible for the conduct and organization of elections, the statutory scheme [promulgated by the Election Code] delegates aspects of that responsibility to the political parties. This delegation is a legislative recognition of 'the critical role played by political parties in the process of selecting and electing candidates for state and national office.'") (quoting *Marchioro v. Chaney*, 442 U.S. 191, 195 (1979)); *Tiryak*, 472 F. Supp. at 824 ("poll watcher[s] perform[] a dual function on Election Day. On the one hand, because [poll watchers] are designated and paid by [candidates, political parties, and/or political bodies], [their] job is to guard the interests of [their] candidates [or political parties or bodies]. On the other hand, because the exercise of [their] authority promotes a free and fair election, poll watcher[s] serve to guard the integrity of the

vote. Protecting the purity of the electoral process is a state responsibility and [poll watchers'] statutory role in providing that protection involves [them] in a public activity, regardless of [their] private political motives.").

Because all political parties and candidates have the right to appoint poll watchers in the November 3, 2020 General Election, they have federal court standing to pursue claims that unconstitutionally infringe upon that right. Plaintiff RNC also has direct organizational standing to challenge the Commonwealth's residency requirement for poll watchers because of the unjustifiable burdens the residency requirement will place on the RNC's efforts to recruit poll watchers. ECF#234, ¶180; *Tex. Democratic Party v. Hughs*, 2020 U.S. Dist. LEXIS 131768, *7-12 (W.D. Tex. July 22, 2020) (holding political committees had direct organizational standing to challenge "wet signature" rule for voter registration because it would impair their mission of electing Democrats to office and would require them to divert resources to counteract the burdens imposed by the rule).

Defendant Boockvar erroneously argues in her Motion to Dismiss that, unless and until Plaintiffs can show they have been unable to recruit poll watchers as a result of the residency requirement, Plaintiffs' poll-watcher claims are too speculative to support Article III standing. First, it is well established that "[o]ne does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending that is enough." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (internal quotation marks omitted). Plaintiffs have met that standard with regard to their challenge to the poll-watcher residency requirement. Plaintiffs' Complaint cites statistics from the Pennsylvania Department of State showing a significant gap between the number of voters registered as Democrats and the number of registered Republicans in some Pennsylvania counties that will unjustifiably burden both Republicans and Democrats alike in their ability to locate available, qualified registered electors to serve as poll watchers

under the current residency requirement.  ECF#234, ¶¶177-80.  Plaintiffs do not have the luxury of waiting until they are actually unable to locate such poll watchers, as, by then, it will be too late.

Second, Defendant Boockvar ignores Plaintiffs' claims based on the Commonwealth's arbitrary exclusion of poll watchers from being present at locations that are used to collect mail-in and absentee ballots prior to Election Day or during the pre-canvass meeting of such ballots.  *Id*. at ¶¶181-87.  There is nothing speculative about those claims.  To the extent Defendants are permitted to collect absentee ballots from un-monitored drop-boxes and other illegal locations, nothing in the Election Code permits poll watchers to be present at those locations (not surprising given that the Election Code does not authorize them).  *Id*. at ¶181.  And yet the need for poll watchers at those unsecured locations is even greater than at the County Election Boards' offices, to ensure that no third-party delivery or other ballot-harvesting has occurred.  *Id*.  Absent an injunction from this Court, Defendants will be permitted to arbitrarily exclude poll watchers from the locations where they are needed most, resulting in a violation of equal protection and of Plaintiffs' constitutional right to participate in free and fair public elections.  *Id*. at ¶¶186-89.  Plaintiffs are not required to wait for this harm to materialize before bringing suit, as, by that time, it will obviously be too late.  All Plaintiffs need to do to establish their standing is to allege that injury is certainly impending, and they have met the threshold with regard to their poll-watcher claims.

Thus, the Moving Defendants' challenges to Plaintiffs' standing should be denied.

### B.    Plaintiffs' Claims Are Ripe And Not Moot.

Defendant Boockvar argues in her Rule 12 Motions that Plaintiffs' claims are not ripe because Plaintiffs are merely speculating that Defendants will enforce the same unlawful policies for the upcoming General Election that they implemented and enforced for the June 2, 2020 Primary Election.  Defendant Luzerne County Board of Elections and several other County Election Boards make

essentially the same argument but characterize it as a mootness rather than a ripeness problem.  Either way, the argument is not well-taken.

Ripeness requires that a conflict "'have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'"  *Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)).  "A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Wyatt, 385 F.3d at 806.*  Mootness is based on the same principle but is stated in the inverse:  courts "lack jurisdiction when 'the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Merle v. U.S.*, 351 F.3d 92, 94 (3d Cir. 2003) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

Moving Defendants characterize Plaintiffs' anticipated injuries in the November 2020 General Election as hypothetical.  However, it was Defendants' policies that caused those same injuries to occur in the June 2020 Primary Election, and those policies remain in effect today, just three months from the General Election.  *See* ECF#234, ¶190 ("The current voting regime as employed by Defendants, including the January 10, 2020, January 30, 2020, and the March 5, 2020 Guidelines, and the May 28, 2020 Directive, remain in place ….").  It is not speculative to assume that these policies will remain unchanged for the November election.  Indeed, it would be speculative to assume that the policies *will* be modified, given the Moving Defendants' arguments that their prior actions were not in violation of the Election Code or Act 77.  Plaintiffs' claims are thus not purely hypothetical but are based on events that are likely to repeat themselves.

Likewise, the end of the June primary election does not render Plaintiffs' claims moot.  "Cases in which apparently moot claims are likely to arise again have long been gathered under the 'capable

- 34 -

of repetition yet evading review' exception to the mootness doctrine." *De La Fuente v. Cortes*, 261 F. Supp. 3d 543, 549 (M.D. Pa. 2017) (citing *Merle*, 351 F.3d at 94), *aff'd*, 2018 U.S. App. LEXIS 21904 (3d Cir. Aug. 7, 2018).  Under this exception, "a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Merle*, 351 F.3d at 95 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

As Moving Defendants fail to acknowledge, "the ['capable of repetition yet evading review'] exception readily applies to most election cases." *De La Fuente*, 261 F. Supp. 3d at 549; *see also Merle*, 351 F.3d at 94 ("This controversy, like most election cases, fits squarely within the 'capable of repetition yet evading review' exception to the mootness doctrine."); *Morse v. Republican Party*, 517 U.S. 186, 235 fn.48 (1996) ("Like other cases challenging electoral practices, therefore, this controversy is not moot because it is 'capable of repetition, yet evading review.'").  This exception, "in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks." *Storer v. Brown*, 415 U.S. 724, 737 fn.8 (1974).  "The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held." *Id*.

The case of *De La Fuente* is instructive here.  There, a presidential candidate who unsuccessfully sought the Democratic nomination and was then blocked from running as an independent candidate in the 2016 presidential election sued to challenge the Pennsylvania statute that blocked his bid to run as an independent, claiming the same law threatened his plans to run in the 2020 presidential election.  *De La Fuente*, 261 F. Supp. 3d at 547.  The defendant election officials, similar

to Moving Defendants here, argued that any claims arising out of the 2016 election were moot because the election was over and any claims related to the 2020 election were hypothetical and thus not ripe. *Id.* at 549. Later affirmed by the Third Circuit, the Middle District of Pennsylvania rejected that argument, finding that the plaintiff's claims were "not purely hypothetical but are grounded in factual occurrences that are susceptible to repetition." *Id.* Likewise, the court found that the plaintiff's claim fell within the "capable of repetition yet evading review" exception to the mootness doctrine because the plaintiff had expressed his intention to run in the 2020 election, "where he is likely to face the same obstacles and raise the same claims again." *Id.* In so holding, the court pointed out the catch-22 the plaintiff would find himself in if the defendants' arguments were accepted. "Plaintiff's grievances arise when Pennsylvania's election laws impede his campaign efforts, which is most likely to occur mere months before the election cycle ends," noted the court. *Id.* "Plaintiff could not fully litigate his claim in a matter of months and, therefore, will always bump against a jurisdictional bar." *Id.*

Moving Defendants' arguments should be rejected for the same reason. As in *De La Fuente*, Plaintiffs' claims credibly allege that history is likely to repeat itself given that the challenged policies implemented by Defendants and utilized during the June primary remain in place as the parties hurtle toward the November election. *See also Morse*, 517 U.S. at 235 fn.48 (action challenging delegate registration fee for Republican Party's nominating convention was not mooted by end of the 1994 convention because "the Party has not disavowed the practice of imposing a delegate filing fee for its nominating convention," making the dispute capable of repetition); *see also Arcia*, 772 F.3d at 1343 (action alleging Florida was scrubbing its voter rolls of suspected non-citizens within 90 days of a federal election in violation of the National Voter Registration Act was not mooted by the passage of the election because the Florida Secretary of State had "not offered to refrain from similar programs

within the 90-day window in the future" and "[t]hus, there is a reasonable expectation that the plaintiffs will be subject to the same action again").

Further, if Plaintiffs' claims are deemed moot or unripe, Plaintiffs would find themselves in the same catch-22 as the plaintiff in *De La Fuente*, being forced to wait until the eve of the election to sue when, at that time, it is too late to fully litigate Plaintiffs' claims and obtain relief.  *See Arcia*, 772 F.3d at 1343 (holding that actions taken within 90 days prior to an election "were in their duration too short to be fully litigated prior to their cessation or expiration").  Indeed, Moving Defendants' theory that Plaintiffs' claims are unripe unless and until Moving Defendants issue new guidance for the November election would place this Court's jurisdiction entirely under Defendants' control and would permit Defendants to insulate their illegal conduct from judicial scrutiny simply by withholding such new guidance until it is too late to be challenged or by failing to issue such new guidance altogether.

Once again, the cases cited by Moving Defendants are readily distinguishable.  In *Constitution Party*, 712 F. Supp. 2d at 400, the court found a lack of ripeness in the plaintiffs' challenge to provisions of the Pennsylvania Election Code allowing taxing of litigation costs and attorneys' fees against minor party candidates defending challenges to their nomination papers because there was "no present controversy, no pending challenge to a nomination paper, and the opinion would not provide specific relief to anyone."  None of those defects are present here.  Plaintiffs' Complaint challenges in-force policies implemented by Defendants that resulted in unconstitutional vote dilution in the June primary and, unless enjoined by this Court, will cause Plaintiffs the same injury in November.

Nor does the case of *Green Party of Pennsylvania v. Aichele*, 103 F. Supp. 3d 681 (E.D. Pa. 2015), support Moving Defendants' argument.  In *Aichele*, the court held that the Commonwealth's decision to alter its nomination paper forms for minor parties rendered moot the plaintiffs' claims concerning the requirements of those forms where the challenged requirements had been abandoned

in the altered forms.  *Green Party*, 103 F. Supp. 3d at 693-94.  Here, as Plaintiffs allege in their

Complaint, the unlawful policies instituted by Defendants have not been altered or abandoned.  Those

policies remain in effect today, and there is no reason to believe Defendants intend to alter or abandon

them for the November election.  ECF#234, ¶190.

Accordingly, Moving Defendants' ripeness and mootness challenges should be rejected.

**C.     Venue In The Western District Of Pennsylvania Is Proper.**

Venue is proper in this District, and the analysis is straightforward.  Venue in a judicial district

can be proper on any one of three bases.  28 U.S.C §1391(b)(1)–(3); *Atl. Marine Constr. Co. v. United*

*States Dist. Court*, 571 U.S. 49, 56 (2013) ("When venue is challenged, the court must determine

whether the case falls within one of the three categories set out in § 1391(b).").  Moreover, the Moving

Defendants bear the burden of establishing that venue under all three subparagraphs of Section 1391(b)

is improper.  *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982).

While analysis under each Section 1391(b) category would demonstrate that the Western

District of Pennsylvania serves as a proper venue to hear this action, the Court need not engage in any

analysis beyond  Section 1391(b)(1).  Section 1391(b)(1) provides a bright line:  "A civil action may

be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of

the State in which the district is located."  28 U.S.C. §1391(b)(1). Plaintiffs' brought this action against

each of Pennsylvania's sixty-seven (67) County Election Boards and Secretary Boockvar.  ECF #234,

¶¶16–17.  Twenty-five of the County Election Boards reside in the Western District of Pennsylvania,

and all other Defendants reside in Pennsylvania.  *Id.* at ¶¶7, 16–17.  Defendants have not submitted

any affidavits disputing those allegations, nor could they.

The Moving Defendants challenging venue assert that this District is improper under 28 U.S.C.

§1391(b)(2), entirely ignoring proper venue under Section 1391(b)(1).  With the first of the three

possible grounds for venue satisfied in this action, the Court's analysis does not need to proceed with the analysis required by Section 1391(b)(2).  *Atl. Marine Constr. Co.*, 571 U.S.at 56.

Because venue is proper in this District under Section 1391(b)(1), Section 1406(a)'s dismissal and transfer edicts have no application here.  28 U.S.C. §1406(b) ("Nothing in this chapter [28 USC §§ 1391 et seq.] shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and *sufficient* objection to the venue." (emphasis added)); *Atl. Marine Constr. Co.*, 571 U.S. at 55 ("Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is "'wrong'" or "'improper.'")  Thus, this Court should deny the Moving Defendants' Rule 12(b)(3) motions.

### D. No Eleventh Amendment Immunity Bars Plaintiffs' Federal And State Constitutional Claims.

Secretary Boockvar and several County Election Boards erroneously argue that the claims asserted against them are barred by sovereign immunity under the Eleventh Amendment.  Eleventh Amendment immunity does not apply to claims involving a violation of the United States Constitution, either directly or coextensively.  Additionally, Eleventh Amendment immunity does not categorically foreclose Plaintiffs' claims for the reason that they are not in fact brought "against the Commonwealth." Accordingly, the Moving Defendants' Eleventh Amendment Immunity arguments do not bar Plaintiffs' claims in this case.

There are two critical propositions of law framing the Eleventh Amendment immunity issues before the Court at this juncture.  First, a citizen's challenge to a state statute on the grounds that it is, either on its face or in its enforcement, in violation of the Constitution of the United States is not barred by the Eleventh Amendment.  *Philadelphia Fed'n, Am. Fed.'n Local 3 v. Ridge*, 1997 U.S. Dist. LEXIS 8893 (E.D. Pa. June 19, 1997); *Stevenson v. State Board of Elections*, 638 F. Supp. 547, 549 (N.D. Ill. 1986) (citing *Ray v. Atlantic Richfield Co.*, 435 U.S. 151 (1978)); *Ex parte Young*, 209 U.S. 123, 159-

160 (1908) (Eleventh Amendment does not bar suit in federal court against state official for the purpose of obtaining an injunction against his enforcement of a state law alleged to be unconstitutional).

Second, a state and its officers are not entitled to Eleventh Amendment protection where a plaintiff seeks only **prospective, injunctive relief to end ongoing violations of federal law**. *Better Gov't Bureau v. McGraw*, 904 F. Supp. 540, 547-48 (S. D. W.Va. Oct. 16, 1995). *See also PG Publ.*, 902 F. Supp. 2d at 745 ("when a federal court commands a state official to do nothing more than refrain from violating federal law, [the official] is not the State for sovereign-immunity purposes.") (citing *Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011)).

Plaintiffs have alleged that Defendants' practices relating to, among other things, acceptance of non-conforming mail-in ballots or unverified absentee ballots, collection of ballots outside of lawful locations, and allowance of ballot harvesting violate the U.S. Constitution. If these allegations are true, as the Court must presuppose for purposes of the Motions, the Eleventh Amendment is inapplicable.

Moreover, Plaintiffs' Amended Complaint belies Defendant's contention in support of dismissal that no on-going and continuous violation of federal law is alleged. ECF #234, ¶¶190-92. An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999). As the *Pryor* court explained:

> [T]he ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, *i.e.,* designed to prevent injury that will occur in the future, and cases where relief is retrospective. … Thus, where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied.

*Id.* at 1338. (Internal quotations omitted).

Plaintiffs' Amended Complaint raises precisely such a challenge to balloting dictates from Secretary Boockvar to the County Election Boards that Plaintiffs believe present an ongoing and

continuous violation of their constitutional rights. Yet, Plaintiffs' claims are even further removed from the operation of Eleventh Amendment immunity in the sense that Plaintiffs do not allege that any state law is unconstitutional, nor does Plaintiffs' Amended Complaint raise a cause of action under the Election Code. Instead, Plaintiffs' Amended Complaint contends that constitutional violations, including the First and Fourteenth Amendments to the United States Constitution and violations of Pennsylvania Equal Protection and the Free and Equal Elections Clauses of the Pennsylvania Constitution, have been triggered by Defendants' inconsistent and/or maladministration of Pennsylvania's Election Code, with the result that legitimately cast votes will be diluted by votes that are not properly cast and thus presumed by the General Assembly to be unreliable.

Case law in the Third Circuit does not interpret the Eleventh Amendment to foreclose all state constitutional claims that are coextensive with viable federal claims, as the Moving Defendant argues. Instead, Third Circuit courts will not hear state law claims tied into federal claims when state law provides the cause of action. This distinction is illustrated by the cases that the Moving Defendants cite (neither of which is binding precedent for this Court), in which the courts invoked Eleventh Amendment immunity to reject state claims *after* finding that no viable federal claims existed. *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183-84 (3d Cir. 2015) (finding that appellants' First Amendment and Fourteenth Amendment theories did not support any federal claim);[6] *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597 (E.D. Pa. Jan. 22, 2018) (same).

Specifically, the *Balsam* court held that *Ex parte Young* principles did not apply because the appellants did not properly allege any violation of the U.S. Constitution. *Balsam*, 607 Fed. Appx. at

---

[6] Under the Third Circuit's Operating Rule 5.7, the decision in *Balsam* is not precedential or otherwise binding beyond the parties to that case.

182-83 (holding that the U.S. Constitution does not provide any right to unqualified right to participation in primary elections). Once the *Balsam* appellants' federal constitutional claims were tossed,[7] their only remaining cause of action arose under state law. *Id.* at 183-84. Accordingly, even if appellants were correct that violation of the federal Constitution could be used to establish a violation of New Jersey Civil Rights Act, the actual remaining claim was for a violation of the New Jersey Civil Rights Act—a state law cause of action—and thus was barred by the Eleventh Amendment. *Id.*

*Acosta* does not require dismissal of any defendants here either. There, the Eastern District refused to dismiss a claim against the then-Secretary of the Commonwealth on Eleventh Amendment grounds because the suit was for prospective relief. *Acosta*, 288 F. Supp. 3d at 627-28. (Ultimately, the court concluded no First or Fourteenth Amendment claim was stated, but the Eleventh Amendment was not a bar to the suit.) Nor does *Acosta* require dismissal on Eleventh Amendment grounds as to the County Election Boards.

While it is true that the Eleventh Amendment bars claims against a state agency, the *County Election Boards* are not state agencies. *See, e.g.,* Pa. Const. art. IV, §1 ("The Executive Department of this Commonwealth shall consist of a Governor, Lieutenant Governor, Attorney General, Auditor General, State Treasurer, and Superintendent of Public Instruction and such other officers as the General Assembly may from time to time prescribe."); Pa. Const. art. IX, §4 (noting that "County government" is part of the "Local Government" in Pennsylvania); Pa. Const. art. IX, §14 (defining "Municipality" to mean "county, city, borough, incorporated town, township or any similar general purpose unit of government which shall hereafter be created by the General Assembly."). The sole

---

[7] Although the *Balsam* plaintiffs also alleged a violation of 42 U.S.C. §1983 against New Jersey's Secretary of State in her official capacity, the opinion does not discuss the fate of this federal claim. However, Eleventh Amendment immunity does bar private suits for money damages under Section 1983 against state officials in their official capacities. *PG Publ.*, 902 F. Supp. 2d at 745. Plaintiff are not seeking money damages under Section 1983 for their Section 1983 claims in this case.

case cited by Defendants for the contrary—*Trinsey v. Montgomery County Bd. of Elections*, 1988 U.S. Dist. LEXIS 8704 (E.D. Pa. Aug. 4, 1988)—is a two page order on an uncontested summary judgment motion that found the complaint failed to state a claim against the Board of Elections and dismissed the case on that ground.  *Id.* at \*2.  Thus, the remaining one paragraph dealing with the Eleventh Amendment is *dicta*.  Moreover, the court failed to engage in any analysis of the issue and simply concluded, without discussing the Constitutional provisions noted above, that the Board was a "branch of the Commonwealth" (different from "state agency") and entitled to invoke the amendment.

This Court should honor the distinction enshrined in the Pennsylvania Constitution and not follow the *Trinsey dicta*.  *See N. Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) ("Accordingly, this Court has repeatedly refused to extend sovereign immunity to counties."); *Alden v. Me.*, 527 U.S. 706, 756 (1999) ("The second important limit to the principle of sovereign immunity is that it bars suits against States but not lesser entities. The immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State."); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) ("[T]he Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'").

Plaintiffs' Amended Complaint in this case is not susceptible to dismissal on Eleventh Amendment grounds because it unequivocally seeks prospective injunctive relief on the basis of federal constitutional claims—under the First and Fourteenth Amendments—and properly alleges that actions by Secretary Boockvar and the County Election Boards violate the United States Constitution. Therefore, Eleventh Amendment immunity is inapplicable.

**E.     Plaintiffs Have Properly Stated Claims For Constitutional Violations Of Their Right To Vote And To Free, Fair, Transparent, And Verifiable Elections, And They Do Not Need To Allege Or Prove Voter Fraud To Invoke This Court's Jurisdiction Over Those Claims.**

Plaintiffs have properly pled significant constitutional and statutory violations and need not allege or prove voter fraud to succeed on their claims.  Free, fair, and transparent public elections are crucial to our constitutional democracy – a government of the people, by the people, and for the people.  The most fundamental principle defining credible elections in a democracy is that they must reflect the free expression of the people's will.  Accordingly, the rights to vote and to free, fair, and transparent elections are fundamental to our constitutional democracy and protected by the First and Fourteenth Amendments of the United States Constitution. *Harper v. Virginia State Board of Elections,* *383 U.S. 663, 665 (1966)*.  *See also* *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (The Fourteenth Amendment protects the "the right of all qualified citizens to vote, in state as well as in federal elections.").  Indeed, ever since *Slaughter-House Cases*, 83 U.S. 36 (1873), the United States Supreme Court has held that the Privileges and Immunities Clause of the Fourteenth Amendment protects certain rights of federal citizenship from state interference, including the right of citizens to directly elect members of Congress.  *See* *Twining v. New Jersey*, 211 U.S. 78, 97 (1908) (citing *Ex parte Yarbrough*, 110 U.S. 651, 663-64 (1884)).  *See also* *Oregon v. Mitchell*, 400 U.S. 112, 148-49 (1970) (Douglas, J., concurring) (collecting cases).

**1.     Voter Dilution Claims Are Valid.**

The United States Supreme Court has recognized that the fundamental right to vote "can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds,* 377 U.S. at 555.   "Every voter in a federal … election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted

by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974); *see also Baker v. Carr*, 369 U.S. 186, 208 (1962). "The deposit of forged ballots in the ballot boxes, no matter how small or great their number, dilutes the influence of honest votes in an election, and whether in greater or less degree is immaterial.  The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States." *Anderson*, 417 U.S. at 226 (quoting *Prichard v. United States*, 181 F.2d 326, 331 (6th Cir.), *aff'd due to absence of quorum*, 339 U.S. 974 (1950)).  Accordingly, practices that promote the casting of illegal or unreliable ballots or fraud in general, or fail to contain basic minimum guarantees against such conduct, can violate the Fourteenth Amendment by leading to the dilution of validly cast ballots.  *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

Although the "voter dilution" theory "has its origins in a long line of reapportionment cases in which the Supreme Court determined that the malapportionment of congressional and state legislative districts violates the equal protection clause of the Fourteenth Amendment, … the principle that vote dilution unconstitutionally violates equal protection extends to matters beyond malapportioned legislative districts." *Pierce*, 324 F. Supp. 2d at 695.  In other words, the right to vote extends to all phases of the voting process, from being permitted to place one's vote in the ballot box, *Ex parte Yarbrough*, 110 U.S. 651 (1884), to having that vote actually counted.  *United States v. Mosley*, 238 U.S. 383, 386 (1915).  Thus, the right to vote applies equally to the "initial allocation of the franchise" as well as "the manner of its exercise."  *Bush*, 531 U.S. at 104.  "[H]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's

vote over that of another." *Id.* at 104-05.  *See also id.* at 107 ("the idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government.").

As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote.  Anything less implicates constitutional problems under the equal protection clause of the Fourteenth Amendment."  *Pierce*, 324 F. Supp. 2d at 697.  Accordingly, when a plaintiff alleges the existence of a county-to-county patchwork of different rules or interpretations of the Election Code for a statewide election involving federal and state candidates, then a "justiciable claim" of federal constitutional violations is stated, such that the claim cannot be dismissed.  *Id.* at 699.

Here, for the same reasons that this Court found a justiciable claim existed in *Pierce*, this Court should reject the Moving Defendants' Rule 12(b)(6) Motions and hold that Plaintiffs have stated viable claims.  Like in *Pierce*, Plaintiffs have alleged the existence of a patchwork of county-to-county different rules that have resulted in arbitrary and disparate treatment of similarly situated voters depending on their county of residence.  Those disparate rules arose, in part, from Secretary Boockvar's "guidance" which suggested to the County Election Boards that they need not follow the express legislative mandates set forth in the Election Code and Act 77.  Some of the County Election Boards followed Secretary Boockvar's "guidance," while other have not, leading to the kind of result that this Court in *Pierce*  described as "constitutionally troubling."  *See also In re Canvass of Absentee Ballots,* 843 A.2d at 1234 (when County Election Boards, individually or collectively, exceed their limited rule-making powers, they "generate a far greater inequity: the uneven treatment of absentee votes throughout the Commonwealth.").

### 2.      **Plaintiffs Have Alleged Causation.**

In their Rule 12 Motions, Moving Defendants argue that Plaintiffs fail to state a claim because the Amended Complaint does not connect harm predicted to conduct alleged as unlawful and/or the Amended Complaint does not allege that the remedies sought will reduce the supposed voter fraud. Yet, the Moving Defendants overstate the linkages, for pleading purposes, that Plaintiffs must forge between the alleged harm or injury and the judicial relief sought in order to withstand a motion to dismiss under Rule 12(b)(6).   In the context of a motion to dismiss, the Third Circuit has held that the "injury-in-fact element is not Mount Everest." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014).  The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that a claimant allege some specific, identifiable trifle of injury. *Id.*  Stated otherwise, at the motion to dismiss stage, general factual allegations of injury typically suffice. *Goudy-Bachman v. U.S. HHS*, 764 F. Supp. 2d 684, 690 (M.D. Pa. Jan. 24, 2011) (citing *Common Cause v. Pennsylvania*, 558 F.3d 249 (3d Cir. 2009)).  From the face of the Amended Complaint, the cause of a voting administration system that violates the federal constitution is the direct result of Defendants' actions:  the Secretary's issuance of the directives that are contrary to the clear and express language of the Election Code and Act 77, and the implementation of those directives by some, but not all, of the County Election Boards.  Therefore, Plaintiffs have adequately stated causation.

### 3.      **Plaintiffs Do Not Need To Plead Or Prove Fraud.**

Further, several of the Moving Defendants argue that Plaintiffs have not sufficiently alleged voter fraud to support their claims.  Yet, voter fraud is not an element of Plaintiffs' constitutional claims. Indeed, in *Pierce*, this Court noted that there existed "no evidence that any person, party, or candidate engaged in any fraud or conspiracy to impede or interfere with the November 3, 2003 election in Allegheny County." *Pierce*, 324 F. Supp. 2d at 689.  Nevertheless, this Court denied the intervening parties' Rule 12 dismissal motion because the implementation of inconsistent policies and "different

statewide standards" between counties stated a "justiciable claim that defendant's policies violate the equal protection clause of the Fourteenth Amendment[.]"  *Id.* at 699.  Accordingly, Plaintiffs do not need to prove voter fraud to state viable federal and state constitutional claims.

### 4.      Plaintiffs' Poll Watcher Claims Are Not Deficient.

Finally, many of the Moving Defendants move to dismiss Plaintiffs' claims concerning poll watchers, arguing that similar claims were rejected by the Eastern District of Pennsylvania in *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 398 (E.D. Pa. Nov. 3, 2016).  However, this Court should not dismiss Plaintiffs' poll watcher allegations under the rubric of non-binding precedent.

Initially, as the Eastern District of Pennsylvania noted, the 2016 lawsuit was filed eighteen days before that year's General Election and the requested relief, if granted, "would alter Pennsylvania's laws just five days before the election."  *Republican Party of Pa.*, 218 F. Supp. 3d at 405.  Accordingly, "avoid[ing] last-minute intervention in a state's election process" served as the primary reason for why the court denied the state party's requested relief, because the court found that "[a]ny intervention … risks practical concerns including disruption, confusion or other unforeseen deleterious effects."  *Id.*  Thus, having found that the requested injunctive relief was untimely, any further ruling by the court in that case represents dicta.  *See, e.g., Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 355 (3d Cir. 2002)* (having concluded notice was inadequate, the court's "comments about the merits of the case [were] simply precatory and [were] not necessary to the actual holding of the case.  Accordingly, these statements are properly considered dicta, and not binding.").

Further, the proceedings before the Eastern District of Pennsylvania in 2016 concerned a preliminary injunction motion that was voluntarily dismissed without prejudice (ED PA ECF #28), and involved a different election law landscape than that presented in this case.  Prior to October 2019, poll watchers had the ability to challenge at the polling place absentee ballots that were improperly cast, including by those who did not constitute a qualified elector.  *See* ECF #234, ¶57.  However, under Act

77, a significant number of ballots are being cast outside the presence of poll watchers, which raises serious federal and state constitutional concerns. *Id.* at ¶¶96-97, 168, & 181-185. Because "[a] state must impose uniform statewide standards in each county to protect the legality of a citizen's vote," *Pierce*, 324 F. Supp. 2d at 697, the Commonwealth lacks a constitutionally recognized basis for imposing either a county residence or a "polling place" restriction that denies political parties and their candidates and voters the ability to monitor the collection and/or return of voted absentee and mail-in ballots. ECF #234, ¶¶174-175, 180, & 186-189. Accordingly, given the procedural history and new election law landscape, the sister court's decision, to the extent it does not constitute *dicta*, has no preclusive effects in this litigation which concerns different parties and different election administration issues. *See, e.g., Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency,* 126 F.3d 461, 465-66 (3d Cir. 1997) (district court erred in providing preclusive effect to prior denial of preliminary injunction by similar plaintiffs where the factual and legal aspects of plaintiffs' claims had changed).

### 5. The Secretary's Guidance To Ignore State Law, And Those County Election Boards Which Followed That Guidance, Infringe Plaintiffs' Constitutional Rights.

Defendants' argument that Plaintiffs' claims should be dismissed as a matter of law under the *Anderson/Burdick* framework is misplaced. The *Anderson/Burdick* fact-intensive balancing test weighs "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983)).

First, the *Anderson/Burdick* framework is a "fact-intensive" analysis not ripe for resolution at the Rule 12 phase. *See Gill v. Scholz*, 962 F.3d 360, 365 (7th Cir. 2020) (holding that "the district court neglected to perform the fact-intensive analysis required for the *Anderson-Burdick* balancing test" at

the summary judgment phase); *Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018) (reversing the district court's dismissal under Rule 12(b)(6), holding that "[a] fully developed evidentiary record will permit a court to evaluate" whether the restriction "is a constitutionally permissible means of combatting voter confusion, or whether there are more precise ways to accomplish this goal" that do not infringe the plaintiff's rights).

Indeed, the Defendants tacitly acknowledge the fact-intensive nature of this inquiry. *See* ECF #264, p. 19 ("There is no *evidence* that mail-in voting increases the incidence of voter fraud when compared to in-person voting." (emphasis added)). Secretary Boockvar principally relies upon a mail-in voting challenge in Nevada, *Paher*, 2020 U.S. Dist. LEXIS 76597, at *17-*19. But *Paher* was not resolved at the Rule 12 stage, or even at summary judgment, but following the consolidated hearing on the plaintiffs' preliminary injunction motion and on the merits. *See id.* at *10. As a matter of pleading, Plaintiffs have alleged sufficient facts that they have and will suffer constitutional harm.

Further, the *Anderson/Burdick* framework presumes the State is following validly-enacted election rules. But the thrust of Plaintiffs' Amended Complaint is that the opposite is the case: despite the clear and mandatory language of the Election Code, Secretary Boockvar issued guidance that directly conflicts with the Election Code, and several County Election Boards followed that guidance. Under those circumstances, there is no "interests put forward by the State as justifications for the burden imposed by its rule," *Burdick*, 504 U.S. at 434, because Secretary Boockvar's rules governing drop boxes and the counting of non-compliant absentee and mail-in ballots are at odds with pertinent Election Code provisions. Thus, even if the fact-intensive balancing test were appropriately applied at the Rule 12 motion stage, no weight should be ascribed to those Defendants who would fail to follow the non-discretionary provisions of the Election Code referenced in the Amended Complaint. By that measure, any harm would be sufficient under the *Anderson/Burdick* framework.

Accordingly, Plaintiffs state viable constitutional claims.  Therefore, this Court should deny Moving Defendants' Rule 12 motions to dismiss.

### F.     All County Election Boards Are Indispensable Parties And Have Been Properly Named In This Lawsuit.

Because this action alleges federal and state constitutional violations due to a patchwork of different rules and practices from county-to-county in a statewide election involving federal and state candidates, all County Election Boards are indispensable parties.  Thus, the Court should deny the motion of the Counties seeking to dismiss or require more definite statements based on the failure to include allegations as to them.

Rule 19 of the Federal Rules of Civil Procedure provides the test for determining whether a party is indispensable in a federal action.  *See* FED.R.CIV.P. 19.  A party is indispensable if they are needed to resolve the matter.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 421 (3d Cir. 2010) ("parties are indispensable if 'in the circumstances of the case [they] must be before the court.'") (citation omitted).  Stated differently, indispensable parties consist of those "'[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'" *Zambelli Fireworks*, 592 F.3d at 421 (citations omitted).

The County Election Boards are required to enforce the election laws at issue in this litigation. *See* 25 P.S. §§2641(a); 2642; 2642(e); 2642(g); 3146.5, 3146.6(a) & (c), 3146.8(g)(3), 3150.15, 3150.16(a) & (c).  Thus, any order or judgment entered regarding the administration of the upcoming general election would need to be directed to each County Board of Elections to have the necessary effect.  *See, e.g., Adamietz v. Smith*, 273 F.2d 385, 387 (3d. Cir. 1960) ("[T]he question of

indispensability of parties is dependent not on the nature of the decision attacked but on the ability and authority of the defendant before the court to effectuate the relief which the party seeks.").

The U.S. Constitution[8] requires that elections, at least those with statewide and national candidates/issues, be conducted pursuant to the same standards across the Commonwealth. *See Bush, 531 U.S. at 104-105)* ("Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."); *Harper v. Virginia State Board of Elections, 383 U.S. 663, 665 (1966); Reynolds v. Sims, 377 U.S. 533, 554 (1964).* Consequently, the Fourteenth Amendment requires states to "'avoid arbitrary and disparate treatment of the members of its electorate.'" *Charfauros v. Bd. of Elections, 249 F.3d 941, 951 (9th Cir. 2001)* (quoting *Bush, 531 U.S. at 105); see also Dunn v. Blumstein, 405 U.S. 330, 336 (1972)* ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction."); *Gray, 372 U.S. at 380* ("The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of [the Supreme Court's] decisions."). "[T]reating voters differently" thus "violate[s] the Equal Protection Clause" when the disparate treatment is the result of arbitrary, ad hoc processes. *Charfauros, 249 F.3d at 954.* Indeed, a "minimum requirement for non-arbitrary treatment of voters [is] necessary to secure the fundamental right [to vote]." *Bush, 531 U.S. at 105.* Hence, allowing a patchwork of different rules from county to county in a statewide election involving federal and state candidates implicates equal protection concerns. *Pierce, 324 F. Supp. 2d at 698-99.*

---

[8] In statewide elections involving federal candidates, "a State's regulatory authority springs directly from the United States Constitution." *Project Vote v. Kelly, 805 F. Supp. 2d 152, 174 (W.D. Pa. 2011)* (citing *Cook v. Gralike, 531 U.S. 510, 522-523 (2001); U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 805 (1995)).*

The Pennsylvania Constitution also bestows the right to vote upon qualified citizens and guarantees them equal protection in the enjoyment of that right. *See* Pa. Const. art. VII, §1 & art. I, §28. Further, Article I, Section 5 of the Pennsylvania Constitution, entitled "Elections" and commonly referred to as the "Free and Equal Elections Clause," provides that "[e]lections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const. art. I, §5. Thus, much like the United States Constitution, the Pennsylvania Constitution protects against a patchwork of different rules from county to county in a statewide election involving federal and state candidates in violation of the one person, one vote jurisprudence. *League of Women Voters v. Commonwealth*, 178 A.3d 737, 810-11 (Pa. 2018).

In light of the manner in which elections are administered in Pennsylvania, the only way to ensure constitutional protection for Plaintiffs is to include each County Board of Elections as a party to this litigation. The uniformity requirements means that if even one County Board of Elections (such as the Potter County Election Board) was not required to follow the same law as it relates to administration of the election, this Court could not grant complete relief. *See* FED.R.CIV.P. 19(a)(1)(A) (a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties."); *see also* FED.R.CIV.P. 19(a)(1)(B)(ii) (a party must be joined if "in the person's absence," another party may be "subject to a substantial risk of … otherwise inconsistent obligations").

Defendants attempt to circumvent this conclusion by referring to themselves as simple umpires in a baseball game and complaining that the contest of one baseball game would not need to involve umpires at other ball parks. But, the analogy falls down because this "baseball game" depends not on the outcome of the game at one ball park but on the combined scores of all games being played at each ball park in each county. So, if one set of umpires were to follow a different set of rules, the impact

would be felt beyond just that game.  All County Election Boards need to follow the same rules; all County Election Boards are necessary parties to this litigation.

### G.   **Abstention Is Not Warranted.**

Abstention, in any of its forms, is not warranted as this first-filed suit raises claims under federal law, seeks interpretation of straightforward statutory provisions, and would provide timely guidance on an important issue.  "[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citations omitted).  "[O]nly in 'exceptional circumstances' may federal courts decline to exercise jurisdiction." *Pierce v. Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684 (W.D. Pa. 2003) (quoting *Quackenbush*, 517 U.S. at 716).  "'The presence of federal-law issues must always be a major consideration weighing against surrender' of jurisdiction."  *Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 960 (3d Cir. 1993) (quoting *Moses H. Cone Hosp.*, 460 U.S. 1, 26 (1983)).

Defendants' arguments to the contrary are without merit.  In part, Defendants claim this Court should abstain because there exists pending litigation that touches on some of the same issues in state court.  But federal district courts have not shied away from dual-track litigation, particularly in the election law context.  As just a recent example, in June 2017, voters challenged Pennsylvania's 2011 Congressional redistricting plan under the Pennsylvania Constitution in state court.  *See League of Women Voters of Pa. v. Commonwealth*, 178 A.3d 737, 743 (Pa. 2018).  Thereafter, a separate group of voters challenged the same Congressional map under the U.S. Constitution in the Eastern District of Pennsylvania.  *See Agre* Compl. (ED PA ECF #1).  Although intervening respondents sought a stay or abstention under the *Pullman* and *Colorado River* doctrines, *see Agre* Motion to Intervene and Motion to Stay and/or Abstain, (ED PA ECF #45-2), pp. 24-36, the district court summarily rejected the request.  *See Agre* Order (ED PA ECF #47) ¶ 3.

As in *Agre* and *League of Women Voters*, critical issues that will affect a fast-approaching election are now pending in both state and federal court. Just as the federal court in *Agre* rejected a request for abstention under *Pullman*, *Colorado River*, and other doctrines, this Court should reject the Defendants' requests. Indeed, the request for abstention is even less compelling here, as the federal action was filed first, while the Democratic Intervenors filed a complaint asking for similar relief in state court nearly two weeks later. As set forth in greater detail below, Defendants' requests for abstention should be denied.

        **1.**        ***Pullman* Abstention Is Not Warranted.**

Abstention under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), is inappropriate because the requisite "special circumstances" are lacking and additional considerations should compel the Court to decline to exercise its discretion to abstain. The *Pullman* doctrine requires courts to engage in a two-step process. *First*, the Court must determine whether three "special circumstances" exist:

    (1)  Uncertain issues of state law underlying the federal constitutional claims brought in federal court;

    (2)  State law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims;

    (3)  A federal court's erroneous construction of state law would be disruptive of important state policies.

*Chez Sez III Corp. v. Union*, 945 F.2d 628, 631 (3d Cir. 1991). *Second*, only if all three of the "special circumstances" are found to be present, then the Court must "make a *discretionary* determination as to whether abstention is in fact appropriate under the circumstances of the particular case, based on the weight of these criteria and other relevant factors." *Id.* (emphasis added). Both steps of the *Pullman* analysis call for the Court to allow these claims to be fully litigated here.

### a.   State Law Issues Are Clear And Unmistakable.

Contrary to the Defendants' assertion, the relevant portions of the Election Code are not "uncertain."  Before a court may exercise its discretion to abstain under *Pullman*, it must first determine whether the language of the underlying state law is "clear and unmistakable."  *Hughes v. Lipscher*, 906 F.2d 961, 965 (3d Cir. 1990).  If the language is "clear and unmistakable," the first of the three "special circumstances" is lacking, and *Pullman* abstention cannot be applied.  *Chez Sez III*, 945 F.2d at 632. If an otherwise ambiguous statute has been authoritatively construed by the state courts, abstention would not be appropriate.  *Id.*  Courts may look to statutory definitions to determine whether the relevant language is "clear and unmistakable."  *NCAA v. Corbett*, 25 F. Supp. 3d 557, 568-69 (M.D. Pa. 2014).

*Pullman* abstention is inappropriate here because the provisions of the Election Code at issue are "clear and unmistakable," or have already been construed by the courts in prior actions.  For example, courts have previously prohibited ballot harvesting, as the practice violates the requirement that absentee ballots be returned by mail or "in person."  ECF #234, ¶¶77, 82–102; *see also Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d at 1234 ("we hold that Section 3146.6(a)'s 'in person' delivery requirement is mandatory, and that the absentee ballots of non-disable persons who had their ballots delivered in contravention of this mandatory provision are void"); *Marks v. Stinson*, 1994 U.S. Dist. LEXIS 5273, at *83 (E.D. Pa. Apr. 26, 1994).  Moreover, the very language which appears in the Election Code and Act 77 in terms of how to cast absentee and mail-in ballots, including the use of an inner secrecy envelope and the completion, dating, and signing of the declaration on the outside envelope, is identical to the language which the Supreme Court declared in 2004 to be clear, unambiguous, and unequivocally "mandatory" and "substantive provisions of the Election Code" which cannot be ignored or set aside based on a liberal construction in favor of the right to vote.  *See*

*Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d at 1231 ("The word 'shall' carries an imperative or mandatory meaning.").

Likewise, the absence of authority for the county election boards to use "drop-off boxes" to collect mail-in and absentee ballots is "clear and unmistakable."  Both before and after the passage of Act 77, the Election Code required that absentee and mail-in ballots must be mailed or personally delivered to "said county board of election."  25 P.S. §§3146.6(a), 3150.16(a), (c).  The Election Code provides that the "address of the elector's county board of election" must be printed on the outer envelope in which the elector must place the inner secrecy envelope, and then after the elector fills out, dates and signs his or her name to the declaration appearing on the outside envelope and seals, the elector "shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election."  25 P.S. §§3146.6(a), 3150.16(a), (c).  Hence, as the provisions of the Election Code make clear, the only place where the absentee or mail-in ballot can be mailed or delivered is to the "address of the elector's county board of election" that appears on the pre-printed outside envelope.  25 P.S. §§3146.6(a), 3150.16(a), (c). To hold otherwise would render the address language meaningless.[9]

Just as the Election Code is clear and unmistakable in its ban on ballot harvesting and the impropriety of the use of drop-boxes for electors to return absentee and mail-in ballots, the prohibition

---

[9] This clear and unmistakable language leaves no room for the Moving Defendants to argue that a person can return an absentee or mail-in ballot to a polling place.  Nothing in the Election Code authorizes the return of absentee or mail-in ballots to polling places.  Yet, the Delaware County Board of Elections did exactly that, flagrantly violating the Election Code by permitting absentee and mail-in ballots to be returned to "ANY polling location on Election Day."  ECF #234, p. 128.  Moreover, even if such drop-off boxes constituted "polling places" under the Election Code, various County Election Boards' installation of such drop-off boxes in vacant lots, offices of elected officials, and other places plainly violates the Election Code.  *See* 25 P.S. §2729.1 (prohibiting elections to be held in various locations).

of counting "naked ballots" is also clear and unmistakable.  Absentee and mail-in ballots must be enclosed in a secrecy envelope and must not contain any text, marks, or symbols which reveal the identity of the elector.  *See* 25 P.S. §3146.8(g)(4)(ii).  As alleged in the Complaint, the Secretary's Guidance directed the County Boards of Election to ignore this provision.[10]  The mandatory language of these provisions makes clear that the consequence of an elector's failure to comply with these requirements is the setting aside of that elector's ballot.  No interpretation by the state courts is necessary.

In short, *Pullman* abstention is not applicable; there are no unclear issues of state law.

### b.    The Constitutional Claims Are Unlikely To Be Narrowed.

The second, requisite "special circumstance" for *Pullman* to apply—i.e., that a state court interpretation might narrow or obviate the need for the adjudication of constitutional claims—is also lacking.  *Pullman* abstention is usually triggered where "the unsettled issue of state law principally concerns the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular matter would eliminate the constitutional issue and terminate the litigation."  *Baggett v. Bullitt*, 377 U.S. 360, 376-77 (1964).

Indeed, some of the issues have already been narrowed by past decisions of the Pennsylvania Supreme Court.  In *Pierce,* this Court held that the *Pullman* doctrine applied, in large part, because guidance was needed from the state courts whether the "in-person" requirement for the return of

---

[10] While certain Moving Defendants claim the Secretary's interpretation on the issue of secrecy envelopes is entitled to great deference, ECF #284, p.5, that is not the case here because the Secretary has not been delegated a discretionary decision.  Instead, this issue involves what the Pennsylvania Supreme Court already has determined to be mandatory substantive provisions of the Election Code.  *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d at 1231-34 (declaring Section 3146.6(a)'s requirements as "mandatory," and that ballots of non-disabled voters cast in contravention of the requirements are "void").

absentee ballots was mandatory or directory. *Pierce*, 324 F. Supp. at 703-04. The Pennsylvania Supreme Court then provided that guidance, holding that the "in-person" requirement and the other requirements in the language of Section 3146.6(a) were mandatory and substantive, such that an absentee ballot cast in violation of such provisions is "void. *Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d at 1231 ("The word 'shall' carries an imperative or mandatory meaning."); *id. at 1234* ("we hold that Section 3146.6(a)'s 'in person' delivery requirement is mandatory, and that the absentee ballots of non-disabled persons who had their ballots delivered in contravention of this mandatory provision are void.").

No further narrowing is possible or necessary here. As noted above, the applicable provisions of the Election Code (which are identical to the language interpreted by the Pennsylvania Supreme Court in 2003 and replicated in Act 77 for both absentee and mail-in voting) are clear and unmistakable, and the Pennsylvania Supreme Court has already provided guidance on related issues. And the claims raised in the Amended Complaint affect nearly every aspect of the voting process: from poll watchers' ability to observe in-person voting to how absentee and mail-in ballots can be returned and under what circumstances they should be counted. Because the constitutional issues cannot be narrowed or avoided, abstention under *Pullman* is inappropriate.

      **c.**     ***Additional Equitable Factors Call For A Rejection Of* Pullman *Abstention*.**

Even if all three of the "special circumstances" were present, the Court should not exercise its discretion to abstain from hearing this matter. For example, in *Pierce*, even though the Court found that the three "special circumstances" had been satisfied, the Court held that it was "still obliged to consider plaintiffs' request for preliminary relief." *Pierce*, 324 F. Supp. 2d at 704; *accord N.J.-Philadelphia Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Educ.*, 654 F.2d 868, 887 (3d Cir. 1981) (holding that when the *Pullman* abstention doctrine applies, "a motion for

preliminary injunctive relief . . . ought . . . to be considered without regard to the separate question of whether a *Pullman* stay of final hearing is appropriate"); *Chez Sez III Corp.*, 945 F.2d at 634 n.4 (noting that the district court needed to consider the appellants' request for preliminary relief even though the court decided to abstain under the *Pullman* doctrine).  The consideration of whether preliminary injunctive relief should be granted is governed by the traditional four-factor analysis.  *See Pierce*, 324 F. Supp. 2d at 704.

        The need for a decision is urgent.  The general election is just 3 months away.  Although the Democratic Intervenors filed a Petition for Declaratory and Injunctive Relief in the Commonwealth Court (the "State Court Action") 10 days after Plaintiffs filed the subject Complaint, the two cases stand in dramatically different procedural postures.  This Court has already scheduled an evidentiary hearing to take place on September 22 and 23, *see* ECF #124; no hearing has been scheduled in state court.  Instead, only briefing on preliminary objections has been scheduled, which will last through the end of August.  *See* Order, attached as Exhibit 1.  And while two of the Plaintiffs in this action have sought leave to intervene in the State Court Action, those motions have not yet been granted, instead they only have leave to file an amicus brief in support of preliminary objections to the Democratic Intervenors' Petition.  Thus, if this action is not permitted to proceed, there is a significant likelihood that the issues raised in the Amended Complaint will go unaddressed before the general election, or, if they do, that Plaintiffs will not have a seat at the table when these important matters are litigated.  *See ABC v. Blackwell*, 479 F. Supp. 2d 719, 731-732 (S.D. Ohio 2006) (abstention not warranted when state law is not challenged for facial vagueness and plaintiffs are entitled to a final decision before the upcoming mid-term election); *Cano v. Davis*, 191 F. Supp. 2d 1140, 1145 (C.D. Cal. 2002) (abstention should be denied where it "would foreclose any possibility that the fundamental voting rights violation that plaintiffs allege could be remedied prior to the next statewide election.").  Especially insofar as

abstention is discretionary, these circumstances strongly support the continued litigation of this action in this forum even if all of the requisite "special circumstances" for the *Pullman* doctrine apply.

### 2. *Burford* **Abstention Is Inappropriate.**

The Court should not abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because this case presents important federal questions of the constitutionality of the Election Code under the U.S. Constitution.  Under *Burford*, the Court must engage in a two-step analysis: (1) to determine whether "timely and adequate state-court review" is available; and (2) if it is, to decide whether "the case before it involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern."  *Pierce*, 324 F. Supp. 2d at 703-04 (quoting *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)).  This second prong requires consideration of: (a) whether the case "implicates a regulatory scheme that involves a matter of substantial public concern; (b) whether it is the sort of complex, technical regulatory scheme to which the *Burford* abstention doctrine usually is applied; and (c) whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy.  *Gov't Employees Ins. Co. v. Tri-County Neurology & Rehab. LLC*, 721 Fed. Appx. 118, 121-22 (3d Cir. 2018).  Neither *Burford*, nor any other abstention doctrine, requires abstention "merely because resolution of a federal question may result in overturning of a state policy."  *Zablocki v. Redhail*, 434 U.S. 374, 380 n.5 (1978).  Each step of the analysis indicates that *Burford* abstention is inappropriate.

Timely and adequate review of the Election Code is not available.  Although the State Court Action commenced by the Democratic Intervenors implicates several of the same issues raised in this action, it is not clear whether timely and adequate review of these issues will be completed before the general election.  In the State Court Action, briefing on preliminary objections is scheduled to last

through August 27.  Discovery has not commenced and no evidentiary hearing has been scheduled.  In contrast, discovery is already underway in this action, with both discovery deadlines and an evidentiary hearing scheduled to take place with sufficient time before the general election.  *See* ECF #124.  And although two of the Plaintiffs have sought leave to intervene in the state action, that motion remains pending.  In the meantime, Plaintiffs are permitted to file a brief in support of preliminary objections but only as an amicus party.  *See* attached Ex. 1.

With respect to the second prong, abstention is inappropriate here because no regulatory scheme is involved.  *See Gov't Employees Ins. Co.*, 721 Fed. Appx. at 121-22.  "*Burford* abstention is usually applied to state regulatory matters such as establishing rates for natural gas or transportation, discontinuing railroad passenger services, discontinuing intrastate air service, or applying state eminent domain procedures."  *Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993).  The Election Code is not a regulatory scheme, nor is it particularly complex; it is strictly a statutory scheme that has repeatedly been analyzed by both Pennsylvania and federal courts, and despite its clear language, the Secretary of State and some of the County Election Boards have failed or refused to follow it.  *Burford* abstention simply does not apply in this context.

### 3.     *Colorado River* Abstention Is Not Warranted.

This action does not fall within the "extremely limited circumstances" under which the Court may abstain under *Colorado River*.  The Supreme Court has noted that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Whether *Colorado River* abstention is appropriate is a two-party inquiry.  First, the Court must determine whether there is a "parallel state proceeding that raises 'substantially identical claims [and] nearly identical allegations and issues.'"  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,

571 F.3d 299, 307 (3d Cir. 2009) (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)).  Only if there exists a parallel state proceeding must the Court then consider several factors, none of which are determinative: (1) whether the state court assumed *in rem* jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.  *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 308; *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997).  "[O]nly the clearest of justifications will warrant dismissal."  *Colo. River*, 424 U.S. at 818-19.

There is no parallel state proceeding at this time.  "For judicial proceedings to be parallel, there must be identities of parties, claims, and time."  *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006).  Although "complete identity of the parties" is not required for abstention, *id.*, *Colorado River* generally requires that the same parties be involved, even if the defendants in one action are the plaintiffs in the other, *see Trent v. Dial Medical*, 33 F.3d 217, 223-24 (3d Cir. 1994) (citing *Colorado River* and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)).  Where a party in the federal action is absent from the state court action, the actions are not parallel.  *See Univ. of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 268-69 (3d Cir. 1991).

Here, the Plaintiffs are not parties in the State Court Action.  Although some of the Plaintiffs have sought leave to intervene in the State Court Action, that motion remains pending.  Plaintiffs' participation at this time is limited to filing an amicus brief with respect to preliminary objections.  *See* attached Ex. 1.  There cannot be substantial identity of the parties when all of the parties on one side of the "v." in this action are absent in the State Court Action, especially when the Defendants seek to use *Colorado River* abstention to put those parties out of court.  And while the relief sought by the Democratic Intervenors raises many of the issues addressed in Plaintiffs' Amended Complaint, the two

actions do not completely overlap.  For example, Plaintiffs' Amended Complaint seeks an injunction requiring county election boards to permit those electors who have applied but not voted their absentee and mail-in ballots to vote regular ballots upon having the electors' non-voted absentee and mail-in ballots spoiled at their polling place, while denying those electors who have voted their absentee and mail-in ballots from casting any ballot, regular or provisional.  ECF #234, p. 73, ¶K.  There is no parallel relief sought in the State Court Action.

Even if the State Court Action constitutes a "parallel state proceeding," the factors the Court must examine in the second prong of the *Colorado River* test strongly counsel against abstention.  *First*, the Commonwealth Court has not assumed *in rem* jurisdiction over any property.

*Second*, there is nothing particularly inconvenient about litigating in this Court.  The Defendants have not explained how the federal forum is inconvenient.  *See also SEPTA v. Pa. PUC, 210 F. Supp. 2d 689, 720 (E.D. Pa. 2002)* ("PUC does not explain how a federal forum is inconvenient, and the Court does not find any basis for that conclusion.")  During the COVID-19 pandemic, this concern is negated even further, as most depositions, arguments, and conferences can be conducted via telephone or video conference. .

*Third*, piecemeal litigation will not result from proceeding in federal court, as all of the relief sought in Democratic Intervenors' Petition for Review is at issue in Plaintiffs' Amended Complaint, even though Plaintiffs' Amended Complaint seeks some relief not at issue in Democratic Intervenors' Petition.

*Fourth*, jurisdiction was obtained first in this forum; Plaintiffs commenced this action a full 10 days before the Democratic Intervenors filed their Petition for Review.  Moreover, this action is substantially further along, as the parties have commenced discovery and the Court has scheduled an

evidentiary hearing, while in the State Court Action, briefing on preliminary objections will extend through August.

*Fifth*, although the Election Code is a creation of state law, the constitutionality of its application under the U.S. Constitution is a matter of federal law. The right of qualified citizens to vote in a state election involving federal candidates is recognized as a fundamental right under the Fourteenth Amendment of the United States Constitution. *See Harper v. Virginia State Board of Elections*, 383 U.S. 663, 665 (1966); *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). Indeed, ever since *Slaughter-House Cases*, 83 U.S. 36 (1873), the United States Supreme Court has held that the Privileges and Immunities Clause of the Fourteenth Amendment protects certain rights of federal citizenship from state interference, including the right of citizens to directly elect members of Congress. *See Twining v. New Jersey*, 211 U.S. 78, 97 (1908) (citing *Ex parte Yarbrough*, 110 U.S. 651, 663-64 (1884)); *Oregon v. Mitchell*, 400 U.S. 112, 148-49 (1970) (Douglas, J., concurring) (collecting cases); *Smiley v. Holm*, 285 U.S. 355, 365 (1932); *Anderson v. United States*, 417 U.S. 211, 227 (1974) ("Every voter in a federal … election, … has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes."); *Reynolds*, 377 U.S. at 555 ("the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise"); *id.* at 560 ("in statewide and in congressional elections, one person's vote must be counted equally with those of all other voters in a State"). Similarly, once "the state legislature vests the right to vote for President in its people, the right to vote ... is fundamental ...." *Bush*, 531 at 104, such that "[a] significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question," *id.* at 113 (Rehnquist, J., concurring).

*Finally*, the state court may not be able to fully protect the interests of the parties for two reasons: (1) Plaintiffs are not parties in the State Court Action and (2) with no hearing set in the State Court Action, the important issues raised in these actions may not be adjudicated before the general election if the Court abstains.  Thus, each of the considerations weigh heavily against abstention under *Colorado River*.

**4.        *Brillhart-Wilton* Abstention Is Inappropriate.**

Moving Defendants' argument that abstention is proper under the *Brillhart-Wilton* doctrine is not well-taken for the simple reason that the Court has federal question jurisdiction.  Jurisdiction over Plaintiffs' Amended Complaint is not premised solely on the Declaratory Judgment Act; in fact, Plaintiffs make no reference to 28 U.S.C. §2201 as the basis for the Court's jurisdiction.  The *Brillhart-Wilton* doctrine is thus inapplicable and does not afford this Court a basis to abstain.

The *Brillhart-Wilton* doctrine is borne out of the discretionary language of the Declaratory Judgment Act, which provides that federal courts "may declare the rights and other legal relations of any interested party."  28 U.S.C. §2201; *accord Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. Apr. 29, 2014).  The Supreme Court held that §2201 places "a remedial arrow in the district court's quiver" and confers a "unique and substantial discretion" on federal courts to determine whether to declare litigants' rights.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995).

But where federal question jurisdiction exists, *Brillhart-Wilton* abstention is inappropriate.  *See Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc.*, 295 F.3d 870, 873 (8th Cir. 2002); *see also State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) ("In declaratory judgment actions Congress has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having the state courts determine questions of state law."); *cf. Moses H. Cone Hosp.*, 460 U.S. at 26 (noting that "the presence of federal-law issues must always be a major consideration weighing against

- 66 -

surrender" of federal jurisdiction).  This merely reflects common sense: although principles of comity may permit the federal courts to defer to state courts on issues solely involving state law that are before the district court under diversity jurisdiction, that consideration is not present when unique federal interests are at stake.  It is not coincidental that diversity jurisdiction gave rise to both *Wilton* and *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).  The other cases cited by various Defendants in support of *Brillhart-Wilton* abstention came to the federal courts via diversity, not federal question, jurisdiction.  *See, e.g.*, *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. Apr. 29, 2014); *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000); *Brethren Mut. Ins. Co. v. Hoffman*, 2008 U.S. Dist. LEXIS 109289 (M.D. Pa. Aug. 20, 2008).

More to the point, Plaintiffs' claims are based not on the Declaratory Judgment Act.  Instead, they arise out of the U.S. and Pennsylvania Constitutions, as well as 42 U.S.C. §1983.  ECF #234.  The *Brillhart-Wilton* doctrine is not applicable and abstention would be inappropriate.

### 5.    *Younger* Abstention Is Not Appropriate.

The Democratic Intervenors erroneously assert, without any support, that this case should be dismissed under the *Younger* abstention doctrine.  ECF #291, p. 17.  The Democratic Intervenors joined and incorporated by reference the abstention arguments asserted by the other Defendants.  *Id.*  But none of the other Defendants have argued that abstention would be appropriate under *Younger*.  And for good reason: the Plaintiffs in this action are not parties to the State Court Action commenced by the Democratic Intervenors.  *See FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 843 (3d Cir. 1996) ("Three requirements must be met before *Younger* abstention is appropriate: (1) there must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere . . . ." (emphasis added)); *accord SEPTA v. Pa. PUC*, 210 F. Supp. 2d 689, 721 (E.D. Pa. 2002) (rejecting request for abstention under *Younger* because the

federal court plaintiff was not a party to the state court action).  Although some of the Plaintiffs have sought leave to intervene in the State Court Action, their application remains pending.  The absence of this required element, together with the Defendants' collective failure to set forth any legal support for why the *Younger* doctrine might apply, forecloses their right to seek relief under this doctrine.

### H.    Some Defendants Failed To Meet-And-Confer Prior To Filing.

Despite this Court's requirement that Defendants consult with Plaintiffs' counsel prior to filing a Rule 12 motion, and certify that with the motion, some of the Moving Defendants failed to conduct the required meet-and-confer.  This Court requires pre-motion consultation on all Rule 12 motions.  *See* Practices and Procedures of Judge Ranjan (rev. 1/6/20), Section II(c); *see also* ECF#241 (text-only entry) ("Counsel should ensure that they have conferred before filing any Motions to Dismiss"); ECF#186 (opposing Potter County Election Board's Rule 12 motion for failure to meet-and-confer); L.R. 7.A; ECF#124, ¶6 (referencing the Court's procedures/practices).  Yet, Defendants filing Rule 12 motions at ECF#246, ECF#272, ECF#288, ECF#289, ECF#293, and ECF#294 failed to meet-and-confer or include the required certification with their filings.[11]  Accordingly, consistent with this Court's published procedures and practices, this Court should deny these Motions.

### I.    Defendants' Motion To Strike Is Unsupported.

Moving Defendants have not satisfied the strictures of Rule 12(f) to allow a motion to strike because (1) they failed to identify even a single specific allegation that they deem "superfluous

---

[11] The Rule 12 Motion filed at ECF#246 contains a Rule 12 meet-and-confer certification. However, that meet-and-confer occurred on July 23, 2020, as part of their July 24, 2020 Rule 12 Motion which this Court summarily denied as moot after the Amended Complaint was filed.  No subsequent Rule 12 meet-and-confer was held with these defendants before their second Rule 12 Motion was filed.

and inappropriate"; (2) each allegation in the Complaint is related to the election controversy at issue; and (3) the allegations are not prejudicial or confusing.

As with a Rule 12(b)(6) motion, the moving party bears the burden of meeting the Rule 12(f) standard. *Eisai Co. v. Teva Pharms. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009). A motion to strike, which is disfavored, should be granted only when the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Starnes v. Court of Common Pleas of Butler Cnty. Pa.*, No. 17-1304, 2018 U.S. Dist. LEXIS 20495, *2 (W.D. Pa., Feb. 8, 2018) (citations and internal quotation marks omitted). But Moving Defendants don't identify any specific allegations as needing to be stricken; instead they foist that burden onto the Court, inviting it to "discern for itself" the allegations that "fit the definition of immaterial or impertinent." ECF#262, p.9.

Further, all of the allegations in the Verified Amended Complaint are relevant and inform the Court and the parties of the legal and factual nature of the claims. *See Del. Health Care Inc. v. MCD Holding Co.,* 893 F. Supp. 1279, 1292 (D. Del. 1995) ("When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike.") (citation omitted). Thus, especially in light of the failure of Moving Defendants to identify any prejudice, the motion to strike should be denied.

## V.     **CONCLUSION**

Moving Defendants' motions to dismiss, for a more definite statement, and to strike all are faulty for the myriad reasons outlined above. This case is about Plaintiffs' attempts to ensure that the upcoming General Election is conducted uniformly and in conformity with the Election Code. The Moving Defendants' vociferous objections to actually being required to comply with the Election Code

do nothing to undermine the factually-supported legal claims asserted in the Verified Amended
Complaint.  This Court should deny all such pending motions.

Date:  August 4, 2020                                    Respectfully submitted,

                                                         PORTER WRIGHT MORRIS & ARTHUR LLP

                                        By:   */s/ Ronald L. Hicks, Jr.*
                                              Ronald L. Hicks, Jr. (PA #49520)
                                              Jeremy  A. Mercer (PA #86480)
                                              Russell D. Giancola (PA #200058)
                                              Six PPG Place, Third Floor
                                              Pittsburgh, PA 15222
                                              (412) 235-4500 (Telephone)
                                              (412) 235-4510 (Fax)
                                              rhicks@porterwright.com
                                              jmercer@porterwright.com
                                              rgiancola@porterwright.com

                                              and

                                              Matthew E. Morgan (DC #989591)
                                              (admitted pro hac vice)
                                              Justin Clark (DC #499621)
                                              (admitted pro hac vice)
                                              Elections, LLC
                                              1000 Maine Ave., SW, 4th Floor
                                              Washington, DC 20224
                                              (202) 844-3812 (Telephone)
                                              matthew.morgan@electionlawllc.com
                                              justin.clark@electionlawllc.com

                                              *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing Omnibus Brief in Opposition to Defendants' Rule 12 Motions to be filed this 4th day of August, 2020, via ECF, which system will serve notice of same on all parties registered to receive same via the ECF system.  For any party who has yet to enter an appearance, the undersigned certifies that a copy of the foregoing filing will be served on that party via U.S. Mail and a copy sent to the County Solicitor, if known, via email or fax.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

By:   */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy  A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice)
Justin Clark (DC #499621)
(admitted pro hac vice)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*