# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 2:20-cv-00966-NR ) |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) Judge J. Nicholas Ranjan ) ) ) |
| Defendants. | ) ) |

**SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S
REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
Karen M. Romano
Keli M. Neary
Howard G. Hopkirk
Nicole Boland
Stephen Moniak
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2717

PENNSYLVANIA GOVERNOR'S
OFFICE OF GENERAL COUNSEL
Kenneth L. Joel
M. Abbegael Giunta
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 787-9348

PENNSYLVANIA DEPARTMENT OF STATE
OFFICE OF CHIEF COUNSEL
Timothy E. Gates
Kathleen M. Kotula
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

August 7, 2020

Pennsylvania has a long and proud history of conducting free and fair elections. To that end, Pennsylvania has consistent procedures to ensure that properly cast ballots are counted and voters are treated equally across the Commonwealth, even in the midst of the current pandemic. Ignoring that reality, Plaintiffs' Opposition continues to propagate speculative predictions of widespread voter fraud and vote dilution in an attempt to manufacture an injury-in-fact. But the Opposition fails to cure the substantial jurisdictional and other flaws in the Amended Complaint. In fact, Plaintiffs' concessions confirm this case should be dismissed or the Court should abstain.

**I. The Eleventh Amendment bars Plaintiffs from pursuing their claims in federal court.** Plaintiffs concede—on the opening page of the Opposition—that they filed this case in order to "enforce the law as it relates to ballot collection and counting" and to enjoin "the counting of ballots that do not meet the Election Code's requirements for a properly cast ballot." Pls.' Omnibus Br. in Opp'n to Defs.' Rule 12 Mots. ("Opp'n") (ECF No. 320) at 1. But Plaintiffs' efforts to impose their own interpretation of the Election Code onto Commonwealth election officials runs headlong into the problem that federal courts are barred from directing state officials to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117, 121 (1984). Plaintiffs are simply incorrect when they assert that "[c]ase law in the Third Circuit does not interpret the Eleventh Amendment to foreclose all state constitutional claims that are coextensive with viable federal claims," Opp'n at 41, and they offer no authority for the broad proposition that federal courts may entertain suits based on state law against non-consenting states so long as the claims are "coextensive" to federal claims. *Cf. Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) ("[T]he supplemental jurisdiction statute does not authorize district courts to exercise jurisdiction over claims against non-consenting States." (citation omitted)).

Moreover, Plaintiffs appear to concede in the very next sentence that their state constitutional claims—Counts III, V, VII, and VIX—must be dismissed: "courts will not hear state law claims . . . when state law provides the cause of action." Opp'n at 41. Those claims are all based on the Pennsylvania Constitution, and *Acosta v. Democratic City Committee*—to which Plaintiffs give the back of their hands—thus counsels their dismissal. *See* 288 F. Supp. 3d 597, 628 (E.D. Pa. 2018).[1] For the same reason, Counts VI and VIII—which are repackaged as federal constitutional violations, but are in reality based on nothing more than alleged violations of the Election Code—should be dismissed as well. That conclusion is even clearer given the relief Plaintiffs seek: an order compelling *state* officials to comply with *state-law* provisions. The Court should not permit this attempt to evade the Eleventh Amendment's structural protections, which would be rendered meaningless by Plaintiffs' gambit. *Cf. Pennhurst*, 465 U.S. at 116-17, 121.

**II. Plaintiffs lack Article III standing and their claims are not ripe.** Plaintiffs also fundamentally misunderstand Article III's requirement that there be a "certainly impending" injury-in-fact before a federal court may exercise jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013). That requirement turns not on the presence of a supposedly offending policy or law "in the air," but on the likelihood of the plaintiff suffering an injury-in-fact from its operation. Plaintiffs must do more than allege that the Election Code *might* be enforced contrary to Plaintiffs' preferred interpretation, or that the Secretary has allegedly distributed guidance that

---

[1] *Acosta* also confirms that Plaintiffs' attempts to distinguish other cases as dismissing state-law claims only when the federal-law claims were already "tossed," Opp'n at 41-42, is not a correct reading of those cases. In *Acosta*, the district court correctly evaluated its jurisdiction on a claim-by-claim basis, held that it lacked jurisdiction over the state-law claims, and dismissed those claims. 288 F. Supp. 3d at 625-28. While the federal-law claims in *Balsam v. Secretary of New Jersey* were also dismissed, the court explained that the state claims must be dismissed not because there were no remaining federal-law claims, but because "state officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity." 607 F. App'x at 183-84.

2

runs contrary to what Plaintiffs believe the Election Code requires. Rather, Plaintiffs must allege a non-speculative injury that will result from those policies and the enforcement (or non-enforcement) thereof. Exposure to an unlawful policy is not itself an injury-in-fact under Article III; that is the definition of a generalized grievance. *See FEC v. Akin*s, 524 U.S. 11, 23-24 (1998) (observing that a general "interest in seeing that the law is obeyed" is not an injury-in-fact, and collecting cases); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (similar). For that reason, Plaintiffs' new assertion that "none" of their claims "require pleading or proving voter fraud" because their injury is based on "illegal policies that the Defendants have already implemented and, absent the Court's intervention, will continue to implement in the upcoming election," cannot be correct. Opp'n at 2, 23. If simply alleging the existence of an offending policy or law creates an Article III injury, seminal cases interpreting Article III's requirements would have come out differently. *E.g.*, *Clapper*, 568 U.S. at 410; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

Plaintiffs are, therefore, left to argue as their claimed "injury-in-fact" that Pennsylvania's implementation of certain election policies will "inevitabl[y]" result in rampant voter fraud and vote dilution. Opp'n at 20. But this assertion is speculative at best and would require the Court to accept it is "certainly impending," *Clapper*, 568 U.S. at 409 (emphasis & citations omitted), that third parties will engage in criminal acts and election officials will intentionally discriminate among ballots and "encourag[e]" illegal voting, Opp'n at 20. To allow Plaintiffs to proceed under such attenuated hypotheticals would do nothing more than invite an advisory opinion on the meaning of the Election Code untethered from any concrete harm or facts.

Plaintiffs' opposition to dismissal of their poll-watcher claims on standing and ripeness grounds is particularly misguided. Opp'n at 31-33. Plaintiffs' sole defense of those claims is

3

premised on "statistics" that show "a significant gap between the number of voters registered as Democrats and . . . Republicans in some Pennsylvania counties." *Id*. at 32. From those "statistics" Plaintiffs ask the Court to leap to the conclusion that enforcement of the poll-watcher residency requirement will "unjustifiably burden" their ability "to locate available, qualified registered electors to serve as poll watchers." *Id.* at 32-33. Such theory is at odds with black-letter law, which requires plaintiffs to allege their injury with specificity. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 495-96 (2009). And Plaintiffs do not allege they will be unable to recruit poll watchers in any one county, only that it might be more difficult due to the "statistics." Here, of course, there is no general "right to appoint poll watchers in the November 3, 2020 General Election" outside the parameters of the Election Code. Opp'n at 32.[2] But even if Plaintiffs did have such a right, Article III requires that they explain how it has been infringed. Simply alleging a "statistic[al]" possibility that poll watchers may be hard to come by is not enough.

Finally, Plaintiffs offer no defense of their claims premised on the predicted failure of Defendants to notice "drop box locations" (Counts VI-VII). As the Secretary's motion made clear, the deadline to notice such locations is still weeks away and any challenge is fundamentally unripe.

**III.   The Court should abstain to allow the Commonwealth Court to interpret Commonwealth law.** The case for abstention is clear if this Court does not dismiss the Amended Complaint. Plaintiffs concede that ongoing state-court litigation "touches on" the issues in this case, Opp'n at 54, but claim that "there are no unclear issues of state law" and "the constitutional

---

[2] Plaintiffs make essentially no affirmative argument that the poll-watcher residency requirement is unconstitutional, arguing instead that the decision in *Republican Party of Pennsylvania. v. Cortés*, 218 F. Supp. 3d 398 (E.D. Pa. 2016), need not be followed. Opp'n at 48-49. Plaintiffs also flirt with a suggestion that there is a constitutional requirement that polls be watched, but ultimately stop short of making such an unprecedented (and meritless) claim. *E.g.*, Opp'n at 48-49 ("[A] significant number of ballots are being cast outside the presence of poll watchers, which raises serious federal and state constitutional concerns.").

4

issues cannot be narrowed or avoided," *id.* at 58-59. Plaintiffs misstate the clear reality: almost all of the same statutory provisions are central to the state-court proceeding, and far from those provisions being "clear and unmistakable," some of the disputed issues related to the collection and counting of ballots require an authoritative construction by the Commonwealth Court. That raises the possibility of dueling injunctions, which would be disruptive to the Commonwealth's ability to conduct the General Election consistent with the Election Code.[3] And Plaintiffs' concerns regarding the timeline of the two lawsuits and schedule for the Commonwealth Court proceeding are misplaced. *See NAACP Phila. Branch v. Ridge*, 2000 WL 1146619, at *7-8 (E.D. Pa. Aug. 14, 2000) (abstaining even when "the election is almost three months away").

**IV. None of Plaintiffs' allegations rises to the level of a federal constitutional violation.** Outside the *Anderson/Burdick* framework, federal courts do not intervene in state elections absent serious flaws affecting the fundamental fairness of the election.[4] Here, Plaintiffs predict—at most—"garden variety" irregularities, which simply do not give rise to a federal constitutional violation. *See Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) (observing that "[s]everal appellate courts, including our own, have held that an election is a denial of substantive due process if it is conducted in a manner that is fundamentally unfair," and collecting cases).

---

[3] That prospect is particularly ripe here, as defendants in the Commonwealth Court proceeding intend to file a petition under 42 Pa. Cons. Stat. § 726 (commonly referred to as a "King's Bench power") asking the Pennsylvania Supreme Court to invoke its "[e]xtraordinary jurisdiction" and resolve this "issue of immediate public importance." To the extent the Pennsylvania Supreme Court will interpret the relevant state statutes, there is even less impetus for this Court to do so. This Court will be bound by the Pennsylvania court's interpretation of the Election Code, even if that interpretation is at odds with Plaintiffs' preferred interpretation. *See Robinson v. New Jersey*, 806 F.2d 442, 448 (3d Cir. 1986).

[4] Plaintiffs seem to suggest that *Anderson/Burdick* is not applicable here, but do not identify the governing legal standard. Opp'n at 49-51.

| | |
|---|---|
| Dated: August 7, 2020 | Respectfully submitted, |
| PENNSYLVANIA OFFICE OF ATTORNEY GENERAL | PENNSYLVANIA DEPARTMENT OF STATE OFFICE OF CHIEF COUNSEL |

By:  */s/ Karen M. Romano*
      Karen M. Romano
      Keli M. Neary
      Howard G. Hopkirk
      Nicole Boland
      Stephen Moniak
      15th Floor, Strawberry Square
      Harrisburg, PA 17120
      (717) 787-2717 (telephone)
      (717) 772-4526 (facsimile)
      kromano@attorneygeneral.gov
      kneary@attorneygeneral.gov
      hhopkirk@attorneygeneral.gov
      nboland@attorneygeneral.gov
      smoniak@attorneygeneral.gov

By:  */s/ Timothy E. Gates*
      Timothy E. Gates
      Kathleen M. Kotula
      306 North Office Building
      Harrisburg, PA 17120
      (717) 783-0736 (telephone)
      (717) 214-9899 (facsimile)
      tgates@pa.gov
      kkotula@pa.gov

      */s/ Kenneth L. Joel*
      Kenneth L. Joel
      M. Abbegael Giunta
      Governor's Office of General Counsel
      333 Market Street, 17th Floor
      Harrisburg, PA 17101
      (717) 787-9348 (telephone)
      (717) 787-1788 (facsimile)
      kennjoel@pa.gov
      magiunta@pa.gov

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of Pennsylvania*

# **CERTIFICATE OF SERVICE**

I, Kenneth L. Joel, certify that on this 7th day of August 2020, that I served the foregoing SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF:

***All Counsel of Record***

*/s/ Kenneth L. Joel*

*Attorney for Secretary of the Commonwealth Kathy Boockvar*