# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) ) | Civil Action |
| Plaintiffs, | ) ) | |
| | ) | No.: 2-20-CV-966 |
| v. | ) ) | |
| KATHY BOOCKVAR in her capacity as Secretary of the Commonwealth of Pennsylvania; *et al.*, | ) ) ) ) | |
| Defendants. | ) | Judge J. Nicholas Ranjan |

**DEMOCRATIC INTERVENORS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

I. **INTRODUCTION**

Democratic Intervenors hereby submit this reply in support of their Motion to Dismiss Plaintiffs' Amended Complaint.

II. **ARGUMENT**

    **A. Pullman Abstention is Warranted.**

Plaintiffs argue *Pullman* abstention is inappropriate because: (1) the applicable Election Code provisions are unambiguous; (2) the Commonwealth Court's interpretation of the disputed Election Code provisions will not narrow the federal constitutional claims; and (3) abstaining and deferring to the Commonwealth Court may leave the issues unresolved until after the General Election. In the infamous words of Justice Kagan: "wrong, wrong, and wrong again." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 80 (2013) (Kagan, J., dissenting).

Contrary to Plaintiffs' attempted statutory sleight of hand, the interpretation of Sections 3146.6(a) and 3150(a) in Act 77 of 2019 is not so "clear and unmistakable." The parties here have posed markedly different interpretations of these provisions. Plaintiffs assert that the provisions were interpreted differently by counties in the Primary Election and certain Boards sought administrative interpretive guidance whether to count Naked Ballots. These indisputable facts belie Plaintiffs' argument that these sections are a model of unmistakable clarity.

Plaintiffs rely heavily on *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election* to support their argument that the sections at issue are clear and unambiguous. This case is easily distinguishable and inapposite to the *Pullman* analysis for three obvious reasons: 1) Section 3150.16(a) of the Election Code had yet to be enacted at the time the Pennsylvania Supreme Court decided *Absentee Ballot;* 2) the Supreme Court in *Absentee Ballots* never addressed whether the

Election Code required Boards to void Naked Ballots, and 3) the *Absentee Ballot* decision addressed a different, narrow question of law.[1]

Plaintiffs also argue that the phrase "said county board of election" in the Election Code prohibits Boards from using drop-off boxes to collect absentee or mail-in ballots and requires all ballots to be delivered only to the mailing address of each Board's central office. Putting aside that Sections 3146.6(a) and 3150.16(a) say no such thing, this narrow and creative interpretation, at the very least, shows that this phrase is subject to differing interpretations.

Plaintiffs next argue that the Commonwealth Court's interpretation of Act 77 will not narrow their federal constitutional claims. Not so. As set forth more fully in the Democratic Intervenors motion, each, if not all, of Plaintiff's remaining federal and state constitutional claims will evaporate once the Commonwealth Court renders a decision on these Act 77 issues.

Plaintiffs reliance on *Pierce v. Allegheny County Board of Elections* is not only misplaced, it undermines this contention. To start, *Absentee Ballot* and *Pierce* **involved the same factual case where the Western District abstained under *Pullman***. The Republican Party first sued in this Court to enjoin the third-person hand delivery of absentee ballots. *See* 324 F. Supp. 2d 684, 689. This Court abstained based on *Pullman* and the case moved to state court, culminating with the *Absentee Ballot* decision on unrelated grounds by the Supreme Court. 843 A.2d 1223 (Pa. 2004). This Court recognized that state courts should have the chance to interpret a section of the complex and integrated state Election Code. *Pierce*, 324 F. Supp. 2d at 704. The Pennsylvania state courts provided an interpretation that removed any federal constitutional arguments. Not only are the

---

[1] The issue in *Absentee Ballot* was whether Section 3146.6(a) permitted third-parties to hand-deliver the ballots of non-disabled absentee voters, and the Supreme Court answered that question in the negative by ruling that the phrase "in-person" was mandatory and thus prohibited the practice. *Absentee Ballots*, 843 A.2d 1223, 1232 (Pa. 2004). The language in Section 3146.6(a) regarding how absentee voters can cast their ballots and the language in Section 3150.16(a) regarding how mail-in voters can cast their ballots are the same. *Compare* 25 P.S. § 3146.6(a) with 3150(a)).

2

same factors present here but, unlike *Pierce*, there is already a pending state court matter which involves parallel issues and parties. This Court's precedent in *Pierce* supports abstention here.

Despite *Pierce*, Plaintiffs' contend that equitable considerations weigh in favor of the Court retaining federal jurisdiction. Their alleged equitable considerations are abject and unsupported speculation that deferring to the Commonwealth Court creates a "significant likelihood" that the dispositive state law issues may not resolved before the General Election. Plaintiffs' unsupported assertion that the state courts are not capable of understanding the election cycle ignores the jurisdictional framework of state law whereby the Commonwealth Court is granted specific oversight of election law matters. Every election cycle the Commonwealth Court handles an array of cases on an expedited basis measured by the election calendar. It is absurd to suggest that principles of abstention should be ignored on a baseless assertion that the court that handles election cases routinely would shirk its responsibility on this one occasion.

Accordingly, this Court must abstain based on *Pullman*, and other abstention doctrines raised by the Defendants and Intervenors, and defer the interpretation of the Election Code to the Commonwealth Court, as this Court did in *Pierce*.

### B. The Commonwealth's Poll Watcher Provisions are Constitutional and Counts IV and V Should be Dismissed.

Plaintiffs' Opposition makes no serious attempt to counter Democratic Intervenors' legal position that the poll watchers' provisions in the Election Code pass constitutional muster. Rather, Plaintiffs disingenuously pretend that the *Cortes'* Court's sound and well-articulated constitutional analysis applied in its in dismissal of plaintiff's challenge to the same provisions four years ago was dicta. *See* Plaintiffs' Brief in Opposition at 48-49. The Plaintiffs' reading of *Cortes* is patently and demonstrably wrong. While the *Cortes* Court stated that there "was no need for this judicial fire drill", the Court thoroughly addressed each element for issuance of an injunction including, whether plaintiffs' equal protection claims had a likelihood of success on the merits. *See*

3

*Republican Party of Penn. v. Cortes*, 218 F. Supp. 3d 396, 405-409 (E.D. Pa. 2016). Judge Pappert's reasoning proves that his equal protection analysis was central to the Court's decision:

> There is a rational basis for Section 2687(b)'s requirement that poll watchers be qualified electors in the county in which they work . . . Pennsylvania opted to design a county-by-county system of elections . . . To that end it ensured that participants in the election—voters and watchers alike—were qualified electors in the relevant county. The legislature's decision to allow county election officials to credential only poll watchers from their own county is rationally related to the state's interest in maintaining its county-run election system; each county election official is tasked with managing credentials for a discrete part of the state's population. . . [T]he legislature chose to "draw the lines" at the county level, something entirely rational in fashioning a scheme for a state as large as Pennsylvania . . . Section 2687(b) imposes no burden on Plaintiffs' fundamental rights, and there is a sufficient rational basis for its residency requirement.

*See id.* at 409 (internal citations omitted).[2]

### C. Plaintiffs Concede That Counts VII and IX Fail to State A Claim.

Plaintiffs essentially concede that Counts VIII and IX of the Amended Complaint fail to state a claim entitling them to relief. The Democratic Intervenors moved to dismiss Counts VIII and IX both counts because the claims were plead based on Spoliation Provisions that were not in effect during the June 2 Primary and that are not effective until the General Election. *See* Dem. Int. Mot. to Dismiss at 19; also *See* Act 12 of 2020 at § 17(2)(vii) (amendments or additions to Section 1306-D(b) have an effective date of November 2, 2020).

In their 70-page Opposition, Plaintiffs fail to offer one countering legal argument in support of these surprising new claims. Rather than affirmatively dropping the claims, as they should, Plaintiffs bizarrely spend a full page of their Statement of Case describing how the now-supplanted

---

[2] Even if, as Plaintiffs falsely contend, Judge Pappert based his ruling only on the close in time proximity to the election, those facts are not materially different than the facts presented here. The Republican Party, through common counsel, initiated the *Cortes* action in 2016 and then set it aside for four years. It now brings this 11th hour challenge, driven only by the transparent desire to delay and further cause chaos and confusion in the Commonwealth's administration of the 2020 General Election. *See Little v. Reclaim Idaho*, 591 U.S. ___ (2020) (Roberts, J. concurring) (Supreme Court stayed a district court's order altering rules for the 2020 election due to COVID because it was too close to the election for federal court intervention).

provisions in place during the Primary Election operated. *See* Plaintiffs' Brief in Opposition at 11-12.[3] Counts VIII and IX of Plaintiffs' Amended Complaint should, therefore, be dismissed.

### D. Provisional Voting Is Not Election Fraud.

Plaintiffs spend considerable space attacking provisional voting, both in this proceeding and in the public discussion, by making unsupportable allegations of potential fraud and vote rigging. These outrageous allegations serve no legitimate adjudicative purpose in this action. Supported by federal law, provisional voting is a tried and true electoral method, allowing electors to preserve their preference on election day so that their vote can be captured in the event the elector's vote is not otherwise counted, whether due to any form of confusion, mistake, or dispute.

Under Pennsylvania law, electors who have requested a mail-in ballot have the option of (1) returning the physical ballot by mail, (2) returning the physical ballot in person to the County Board of Elections through delivery to a facility (including a drop box) of the County Board of Elections, (3) taking the physical ballot to the polls and voting on the machine after following the spoliation process, or (4) voting provisionally. *See* 25 PS § 3050(a.4). It simply is not voter fraud if a voter submits a mail-in or absentee ballot and that voter goes to the polls to cast a provisional ballot in the event the mailed ballot is not received. Contrary to yet another one of Plaintiffs' conspiracy theories, both ballots are not counted–an elector's vote is only counted once. This practice is secure, required by Pennsylvania and federal law, and followed by all Boards. [4]

---

[3] In footnote two of their Opposition, Plaintiffs' makes the hypothetical and irrelevant contention that if the Secretary does not modify or retract the Department of State's Guidelines, as were in place during the Primary, before the General Election after the law changes, a statement in the outdated Guidelines referencing spoiled ballots, "is an incorrect statement of law."

[4] The Democratic Intervenors adopt and join arguments set forth in the reply briefs of other defendants in support of dismissal of Plaintiffs' Amended Complaint, including but not limited to, arguments for dismissal grounded in other abstention doctrines.

### III.     CONCLUSION

For the foregoing reasons, and those in Democratic Intervenors' Motion to Dismiss (Dkt. 287), this Court should dismiss Plaintiffs' Amended Complaint.

Respectfully submitted,

/s/ A. Michael Pratt
A. Michael Pratt
Kevin M. Greenberg
Adam R. Roseman
George J. Farrell
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
(t) 215.988.7800
(f) 215.988.7801
prattam@gtlaw.com
greenbergk@gtlaw.com
rosemana@gtlaw.com
farrellg@gtlaw.com

Clifford B. Levine
Alex Lacey
Dentons
625 Liberty Avenue 5th Floor
Pittsburgh, Pennsylvania 15222
(t) 412.297.4998
clifford.levine@dentons.com
alex.lacey@dentons.com

Lazar M. Palnick
1216 Heberton St.
Pittsburgh, PA 15206
(t) 412.661.3633
lazarpalnick@gmail.com

*Attorneys for Democratic Intervenors*

Dated: August 7, 2020

**CERTIFICATE OF SERVICE**

    I, A. Michael Pratt, hereby certify that on August 7th, 2020, I caused a true and correct copy of the foregoing Democratic Intervenors' Reply Brief in Support of Their Motion to Dismiss on counsel of record for Plaintiffs, Defendants and other intervenors listed on the docket via the Court's ECF system.

                                              */s/ A. Michael Pratt*
                                              A. Michael Pratt