**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:20-cv-00966-NR |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) ) ) ) ) | Judge J. Nicholas Ranjan |
| Defendants. | ) ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANT-INTERVENORS CITIZENS FOR PENNSYLVANIA'S
FUTURE AND SIERRA CLUB**

In their motion to dismiss (ECF 297), intervenors Citizens for Pennsylvania's Future and Sierra Club ("Intervenors") established that Plaintiffs' Amended Complaint fails to plead any claim based on purported voter fraud. Plaintiffs' response (ECF 320) altogether abandons the effort to tie their claims to supposed fraud. Plaintiffs now, instead, rest their claims on the novel theory that if Pennsylvania counts certain ballots in the 2020 election—ballots which do not yet exist and which will, Plaintiffs concede, accurately reflect registered Pennsylvania voters' valid electoral preferences—Plaintiffs will have been denied Equal Protection. In service of their new tack, Plaintiffs adopt the untenable position that every supposed misapplication of state election law and every intra-state difference in election procedures violates the Equal Protection Clause. This extreme view conflicts with both decades of precedent and the Constitution's commitment of the times, places, and manner of holding elections to the States. It also would, improperly, require federal courts to micro-manage state election officials across the country. The Amended Complaint should, accordingly, be dismissed.

## I.  PLAINTIFFS CONCEDE THIS LAWSUIT HAS NO TIE TO VOTER FRAUD, AND THUS THIS COURT SHOULD DISMISS COUNTS IV, V, VI, AND VII

Even after amendment, Plaintiffs' pleadings remain devoid of any allegations supporting a plausible inference that the election practices they criticize will result in, or increase, fraudulent voting or that the remedies it seeks will decrease fraud. This alone requires that all claims based on purported fraud be dismissed. *See* ECF 297 at 2-10. Recognizing this insufficiency, Plaintiffs now "allege that vote dilution will occur regardless of such fraud." ECF 320 at 24; *see also id.* at 2, 25, 44, 47-48. Plaintiffs thus anchor their claims to the alleged harm stemming from Pennsylvania accepting "improperly cast" ballots that accurately reflect registered voters' votes but suffer from an alleged defect such as being placed in a drop-box or bearing a disallowed mark on the outside envelope. *Id.*

While, as discussed *infra* Part II, Plaintiffs' fallback position is meritless, their concession that they fail to plead any connection between the outcome of this litigation and voting fraud is fatal to Counts IV, V, VI, and VII of the Amended Complaint. All of these claims are based on an alleged "failure to sufficiently safeguard against dilution of vote *by fraud or tampering*." Am. Compl. ¶¶ 223, 225, 229, 233, 237, 243, 245, 246, 249 (emphasis added). Because Plaintiffs have abandoned any argument for fraud or tampering, Counts IV, V, VI, and VII should be dismissed.

## II.  PLAINTIFFS FAIL TO ALLEGE AN EQUAL PROTECTION VIOLATION

Unable to connect any of the Amended Complaint's sixty-five references to voting "fraud" or "tampering" to their claims, Plaintiffs rely on two meritless Equal Protection theories: one that alleges a violation every time a ballot "that do[es] not fully comply with the ... mandates of the Election Code" is counted, and one that alleges a violation from an alleged lack of "uniform standards across all 67 counties for the collection and counting of absentee and mail-in ballots and for statewide poll watching." ECF 320 at 13, 25. Adopting either of these theories, even at the pleading stage, would inject a limitless intrusion of the federal judiciary into state administration of elections, which is why decades of precedent have soundly rejected each of them.

Plaintiffs' bald assertion that their own votes are "diluted" by every citizen's vote that does not meet the standards imposed by their interpretation of Pennsylvania law (*see* ECF 320 at 18-19, 44-47) fails to allege a violation of the Fourteenth Amendment. While Plaintiffs attempt to repurpose redistricting decisions into a personal, constitutional right to enforce state election law, what the Equal Protection Clause "prohibits [is] intentional 'vote dilution'—'invidiously minimizing or canceling out the voting potential of racial or ethnic minorities.'" *Abbot v. Perez*, 137 S. Ct. 2305, 2314 (2018) (quoting *Mobile v. Bolden*, 446 U.S. 55, 66-67 (1980) (plurality opinion)). Courts consistently reject attempts to expand this vote dilution theory, "h[o]ld[ing] that 'garden variety election irregularities' are not actionable under § 1983." *Acosta v. Dem. City*

*Comm.*, 288 F. Supp. 3d 597, 643 (E.D. Pa. 2018) (dismissing § 1983 claims despite alleged wrongful conduct by Election Board workers).[1] As the Fifth Circuit summarized, federal courts

> must … recognize a distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote. … If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss.

*Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980). Indeed, the consequences of adopting Plaintiffs' theory that "improperly cast" ballots inflict a constitutional injury are hard to overstate; by such logic, every voter could bring a § 1983 suit seeking to require every state official charged with any responsibility for elections to adopt that voter's interpretation of state election law.

Not surprisingly, the two cases Plaintiffs rely on offer them no support. *First*, Plaintiffs' retreat from any argument related to voter fraud forecloses their reliance on *Anderson v. United States*, 417 U.S. 211 (1974), which in relevant and quoted part referred only to dilution from "[t]he deposit of *forged* ballots." *Id.* at 226 (quoted at ECF 320 at 45) (emphasis added). *Anderson*'s recognition that the federal government *may* prosecute voter fraud in no way *mandates* that Pennsylvania adopt Plaintiffs' preferred voting procedures. Plaintiffs' extensive reliance (*see* ECF 320 at 17-19, 23-27, 45-49, 52, 54, 58-61) on *Pierce v. Allegheny County Board of Elections*, 324 F. Supp. 2d 684 (W.D. Pa. 2003), is equally misplaced. *Pierce* dismissed all claims by candidate-

---

[1] *See also, e.g.*, *Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) (reversing grant of summary judgment for plaintiff whose claim did not rise to the level of "purposeful state conduct directed at disenfranchising a class or group of citizens"); *Bennett v. Yoshina*, 140 F.3d 1218, 1226-27 (9th Cir. 1998) (requiring, *inter alia*, "significant disenfranchisement" for a constitutional claim, and expressly holding that "[m]ere fraud or mistake" will not suffice); *Haakenson v. Parkhouse*, 312 F. Supp. 929, 932 (E.D. Pa. 1970) (complaint that does not allege election procedures are "so porous that the number of unqualified electors whose votes will slip into the ballot box will amount to 'ballot stuffing,' and that such 'ballot stuffing' will harm any particular class of qualified voters … utterly fails to state a claim of a denial of Equal Protection").

3

plaintiffs on the pleadings, *see id.* at 694, and only granted a preliminary injunction against "commingling" identified, already-contested ballots so as to "provide an opportunity for [them] to be challenged *in the state courts*," *id.* at 691 (emphasis added). In sharp contrast to Plaintiffs' idle speculation in this case about ballots that have not been cast, the plaintiffs in *Pierce* alleged *actual* violations of the Election Code. And even then, the Court in *Pierce* expressly refused to direct that such votes not be counted, the relief Plaintiffs seek here. *Compare id.* at 706 (ruling that the challenged votes "should not be voided"), *with* Am. Compl. at 71-72 (requesting a permanent injunction against counting certain ballots). No part of the *Pierce* court's post-election preservation of a state-court challenge process supports Plaintiffs' extraordinary request that this Court dictate how every Defendant must run an election process that has not yet even occurred.[2]

Plaintiffs' alternative contention that the Commonwealth denies voters equal protection unless every county runs every election using identical methods is likewise baseless. Courts have repeatedly rejected the position that, unless a state mandates the exact same procedures in every county, "it creates 'unconstitutional vote-dilution' in counties that [adopt different procedures]. Nothing in the Constitution, the Supreme Court's controlling precedent, or [federal appellate] case law suggests that [federal courts] can micromanage a state's election process to this degree." *Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018); *see also, e.g.*, *Wexler v. Anderson*, 452 F.3d 1226, 1231 (11th Cir. 2006) (holding that "manual recount procedures, which vary by county according to voting system," did not violate equal protection). Although not styled as such, Plaintiffs' request that this Court "implement uniform standards across all 67 counties" (ECF 320 at 25) is a facial attack on 25 P.S. § 2642, by which Pennsylvania's legislature has authorized each county board

---

[2] Moreover, to the extent *Pierce* suggests a broad "vote dilution" theory, 324 F. Supp. 2d at 695-97, it rests solely on *Bush v. Gore*, 531 U.S. 98 (2000), which concerned arbitrary counting methods, not (as Plaintiffs allege) violation of state law as supposed vote dilution. *Id.* at 105-06.

of elections to select their polling places, choose between different forms of election equipment, and generally "make and issue such rules, regulations and instructions, not inconsistent with law, as they may deem necessary." Indeed, virtually every state has extensive variations in election methods in different locations. If Plaintiffs' argument were accepted, it could not be limited to the particular differences Plaintiffs disfavor. Election law across the country would need to be radically changed and conformed to ensure a "perfect"—and thereby equal—voting method.[3]

### III. PLAINTIFFS ABANDON THEIR ELECTION CLAUSE ARGUMENT AND FAIL TO ESTABLISH ANY VIOLATION OF STATE LAW

Plaintiffs offer no response to Intervenors' argument that Article I, Section 4 of the Constitution permits executive and administrative regulation and implementation of state voting procedures. ECF 297 at 13-17. Counts I and III of the Amended Complaint should, accordingly, be dismissed. Because Plaintiffs failed to raise any contrary argument, this Court has "sound discretion" to "refuse[] to consider an argument that, in effect, had been waived." *Dreibelbis v. Scholton*, 274 Fed. Appx. 183, 185 (3d Cir. 2008). As to Plaintiffs' claims of a violation of state law, Plaintiffs fail to confront Intervenors' argument that the conduct complained of falls well within the discretion granted by Commonwealth law. *See* ECF 297 at 13. Plaintiffs argue that the statutory requirements at issue are clear and mandatory (*see* ECF 320 at 56-58), but the principal case they rely upon held only that the statute was unequivocal in forbidding a third person from handling an absentee ballot (in part because it concerned prevention of voter fraud).[4]

---

[3] Contrary to Plaintiffs' suggestion (*see* ECF 320 at 27-28), *Bush v. Gore* does not support, much less compel, a constitutional ban on local control of elections, as that decision expressly clarified that "[t]he question before the Court [was] not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. at 109.

[4] *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1231-34 (Pa. 2004). There is no such clear prohibition of (nor any alleged voter-fraud concern regarding) using drop-boxes or the other conduct complained of, and thus no legal basis to treat them as outside of election officials' broad authority.

Dated: August 7, 2020

Respectfully submitted,

*/s/ Eliza Sweren-Becker*

Myrna Pérez
Eliza Sweren-Becker
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
myrna.perez@nyu.edu
eliza.sweren-becker@nyu.edu

Sascha N. Rand (*pro hac vice* forthcoming)
David Cooper (*pro hac vice* forthcoming)
Ellison Merkel (*pro hac vice* forthcoming)
Owen Roberts (*pro hac vice* forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: 212.849.7175
sascharand@quinnemanuel.com
davidcooper@quinnemanuel.com
ellisonmerkel@quinnemanuel.com
owenroberts@quinnemanuel.com

*Counsel for Proposed Defendant-Intervenors Citizens for Pennsylvania's Future and Sierra Club*

**CERTIFICATE OF SERVICE**

  I, Eliza Sweren-Becker, certify that I served the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANT-INTERVENORS CITIZENS FOR PENNSYLVANIA'S FUTURE AND SIERRA CLUB'S MOTION TO DISMISS was sent automatically by CM/ECF to the following counsel who are registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF:

*All counsel of record*

Dated: August 7, 2020              Respectfully submitted,

                       */s/ Eliza Sweren-Becker*

                       *Counsel for Proposed Defendant-Intervenors Citizens for Pennsylvania's Future and Sierra Club*