**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:20-CV-966 |
| KATHY BOOCKVAR; *et al.*, | Judge J. Nicholas Ranjan |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF INTERVENORS MICHAEL CROSSEY, DWAYNE THOMAS, IRVIN WEINREICH, BRENDA WEINREICH, AND THE PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

## I. INTRODUCTION

Plaintiffs' Amended Complaint (the "Complaint") is explicit that their alleged vote dilution injury is predicated on a purported risk of voter fraud, based on hypothetical scenarios untethered to any evidence or factual allegations that plausibly suggest such events are either likely or imminent. Am. Compl. ¶¶ 202-03, 212, 225, 245-46, Count IV-VII ("Dilution of Vote by Fraud or Tampering . . ."). Neither the Complaint nor Plaintiffs' Omnibus Brief in Opposition ("Opp.") attempts to reconcile their allegations of possible voter fraud with federal courts' repeated admonition that "speculation about entirely hypothetical injuries do not meet the injury-in-fact requirement for standing." *Goode v. Gioria*, 590 Fed. App'x. 120, 122 (3d Cir. 2014). While Plaintiffs argue that ballots cast through allegedly improper election procedures violate their constitutional rights, alleged violation of the law, by itself, is not an injury sufficient to satisfy Article III. Plaintiffs' claims simply advance "a right to have the Government act in accordance with the law," a generalized grievance which is not judicially cognizable. Finally, Plaintiffs fail to identify any constitutionally-protected right to engage out-of-county poll watchers; just as the Eastern District of Pennsylvania rejected a nearly identical claim, this Court should do the same.

## II. ARGUMENT

**A. Plaintiffs misinterpret and misapply the relevant case law and authority on standing.**

The constitutional limits on a federal court's jurisdiction do not permit Plaintiffs to litigate perceived violations of state laws absent an injury that is "distinct and palpable," and not "abstract or conjectural or hypothetical." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (quotations and citations omitted). Plaintiffs' Opposition merely reiterates the litany of alleged election irregularities that form the basis of their Complaint but fail to articulate a plausible injury-in-fact sufficient to confer Article III standing. First, Plaintiffs sidestep the "particularized" injury requirement altogether and mistakenly suggest that the Western District's ruling in *Pierce v. Allegheny Cty, Bd. of Elections*,

324 F. Supp. 2d 684, 693 (W.D. Pa. 2003), directs the outcome of this case. It does not. The court in *Pierce* found that the plaintiffs had standing "to request a remedy with regard to the 937 hand-delivered absentee ballots" that they alleged were delivered illegally, and to preserve their rights to pursue a remedy through the Commonwealth's challenge scheme. 324 F. Supp. 2d at 692-93, 707-08. While Plaintiffs claim here (without support) that there is no mechanism to challenge absentee and mail-in ballots for violations of Pennsylvania law, their Complaint does not actually ask the Court to set aside—or even preserve their ability to challenge—any ballots. Instead, they seek an advisory opinion on the appropriate interpretation and application of state law in future elections, which even the *Pierce* court recognized "should be resolved by state courts." *Id*. at 699.

The injury Plaintiffs assert here is "that vote dilution will occur as a direct result of the policies implemented by Defendants," a wholly speculative claim that fails to rise to the level of a concrete, particularized harm. *See* Opp. at 23-24. As multiple federal courts have recognized, fears of vote dilution due to election fraud "may be conceivably raised by any . . . voter" and thus are akin to a generalized grievance about the conduct of government. *See*, *e.g.*, *Paher v. Cegavske*, 320-CV-00243, MDDWGC, 2020 WL 2089813, at *5 (D. Nev. 2020) (citing *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015); *United States v. Florida*, No. 4:12-CV-285, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012) (denying motion to intervene premised on similar theory)). Furthermore, the factual distinctions that Plaintiffs cite to distinguish these rulings are unavailing. The Complaint's broad allegations of "increased potential for ballot fraud" are indistinguishable from the vote dilution theories asserted in *Paher*. *See*, *e.g.*, Am. Compl. ¶¶ 202-03. And while *Shelby Advocates* involved allegations of "human error," as Plaintiffs point out, the court found that the plaintiffs' reliance on uncertain occurrences—not

simply the fear of "human error"—failed to establish grounds for Article III standing. *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020).

Plaintiffs make no attempt to bridge the logical gap between fraudulent votes and any of the other electoral procedures which they have challenged, thus the cases on which they rely are inapposite. In *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004), for instance, the Court held the injury requirement was satisfied only because the plaintiffs had met their burden of showing it was "inevitable" that the challenged practices would injure at least some voters. Similarly, in *Arcia v. Detzner*, 772 F.3d 1335, 1341 (11th Cir. 2014), individual plaintiffs who were naturalized citizens demonstrated a realistic probability that "potential errors would occur when the Secretary attempted to confirm their immigration status . . . in the hurried 90-day window," repeating similar errors that directly injured those same plaintiffs in a prior election. But, as the Eleventh Circuit emphasized in *Arcia*, courts must "distinguish[] foreseeable injuries from those based on assumptions and conjecture." *Id*. Thus, even in the cases Plaintiffs cite, courts have required at the very least a reasonable likelihood of future injury; unsupported fears of vote dilution alone will not suffice.

Here, Plaintiffs' asserted injury is not concrete, particularized, or likely to occur; instead, they assume that *all* ballots submitted under allegedly improper county election procedures are unlawful and thus result in vote dilution. Opp. at 22. This argument is merely a gloss on what amounts to a generalized grievance over the conduct of government. Plaintiffs have alleged that they are injured simply because (they say) the challenged procedures do not comply with the Election Code, and not because such actions caused any particularized, concrete harm. In *Landes v. Tartaglione*, No. Civ. A. 04-3163, 2004 WL 2415074, at *3 (E.D. Pa. Oct. 28, 2004), the Eastern District of Pennsylvania rejected a similar challenge to the legality of an electoral procedure by a

voter who claimed that "the use of voting machines deprives her of her rights to vote, to have votes counted properly, to observe the voting process effectively and to have those rights fully enforced," finding that it "amounts to a generalized grievance shared in substantially equal measure by all or a large class of citizens and is not sufficient to confer standing." *Id.* (quotations omitted). In the same way that the allegations in *Landes* merely complained that the unlawful use of voting machines injured the plaintiff, the allegations in this case similarly fail to identify anything more than "generalized grievances" about allegedly unlawful conduct common to all voters. *See id.*; *see also Lance v. Coffman*, 549 U.S. 437, 442 (2007).

**B.     Plaintiffs fail to state a claim in challenging poll watcher residency restrictions.**

This Court should reject Plaintiffs' attempt to distinguish the near identical challenge that was rejected by the Eastern District of Pennsylvania in *Republican Party of Pennsylvania v. Cortés*. As the court in *Cortés* explained, poll watchers are "not the Election Code's only, or even best, means of" "guarding the integrity of the vote." *Republican Party of Pennsylvania v. Cortés*, 218 F. Supp. 3d 396, 404 (E.D. Pa. 2016). And while the court denied the requested preliminary injunction in part because of the unreasonable delay in bringing the motion, it proceeded to analyze and reject a constitutional challenge to 25 Pa. Stat. § 2687 nearly identical to the one Plaintiffs bring here. *Cortés*, 218 F. Supp. 3d at 414. In other words, "the Constitution is not an election fraud statute." *Minn. Voters All. v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (quoting *Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)).

Apart from their misplaced attempts to distinguish *Cortes*, Plaintiffs' assumption, unaccompanied by any authority, that restrictions on poll-watching violate their constitutional rights has been repeatedly rejected. Numerous courts have held that there is no constitutionally protected right to act as a poll watcher. *See, e.g., Dailey v. Hands,* No. CIV.A. 14-00423-KD-M 2015 WL 1293188, at *5 (S.D. Ala. Mar. 23, 2015) ("[P]oll watching is not a fundamental right

protected by the First Amendment."); *Turner v. Cooper*, 583 F. Supp. 1160, 1162 (N.D. Ill. 1983) ("Plaintiffs have cited no authority . . . , nor have we found any, that supports the proposition that [the plaintiff] had a first amendment right to act as a poll watcher."); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 364 (S.D.N.Y. 2007); *Harris v. Conradi*, 675 F.2d 1212, 1216 n.10 (11th Cir. 1982); *Baer v. Meyer*, 728 F.2d 471, 476 (10th Cir. 1984); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 364 (S.D.N.Y. 2007). Yet Plaintiffs' requested relief would require the Commonwealth to allow poll-watching without restriction, amplifying the risk of voter intimidation and crowded polling places.

As *Cortés* recognized, there is "a rational basis for Section 2687(b)'s requirement that poll watchers be qualified electors in the county in which they work": "The legislature's decision to allow county election officials to credential only poll watchers from their own county is rationally related to the state's interest in maintaining its county-run election system; each county election official is tasked with managing credentials for a discrete part of the state's population." 218 F. Supp. 3d at 409.

Plaintiffs provide no plausible facts to counter the judicially-recognized rational basis for Pennsylvania's poll watcher residency requirements. Nor do they explain how ballot drop boxes, or any of the other election procedures they challenge pose any additional risk of fraud that would be detected or deterred by out-of-county poll watchers. Thus, Plaintiffs have failed to state a claim for relief on Counts IV and V of the Complaint.

### III.   CONCLUSION

For the reasons set forth above and in Intervenors' opening brief, Plaintiffs' Amended Complaint should be dismissed with prejudice.

| | |
|---|---|
| Dated:  August 7, 2020 | By: */s/ Uzoma Nkwonta* |
| | Marc E. Elias |
| Justin T. Romano | Uzoma N. Nkwonta |
| PA ID No. 307879 | Courtney A. Elgart* |
| justin@arlawpitt.com | PERKINS COIE LLP |
| Marco S. Attisano | 700 Thirteenth Street, N.W., Suite 600 |
| PA ID No. 316736 | Washington, D.C. 20005-3960 |
| marco@arlawpitt.com | Telephone:  202.654.6200 |
| 429 Fourth Avenue, Suite 1705 | Facsimile:  202.654.6211 |
| Pittsburgh, PA 15219 | melias@perkinscoie.com |
| Phone: (412) 336-8622 | unkwonta@perkinscoie.com |
| Fax: (412) 336-8629 | |
| | Elise Edlin |
| Adam C. Bonin, PA Bar No. 80929 (*WD PA admission pending*) | Torryn Taylor Rodgers |
| The Law Office of Adam C. Bonin | PERKINS COIE LLP |
| 121 S. Broad St., Suite 400 | 505 Howard Street, Suite 1000 |
| Philadelphia, PA 19107 | San Francisco, CA 94105-3204 |
| Phone: (267) 242-5014 | Telephone: 415.344.7000 |
| Facsimile: (215) 827-5300 | Facsimile: 415.344.7050 |
| Email: adam@boninlaw.com | eedlin@perkinscoie.com |
| | trodgers@perkinscoie.com |
| | |
| | *Pro hac vice motion to be filed. |
| | |
| | ***Attorneys for Intervenors*** |

## CERTIFICATE OF SERVICE

I, Uzoma Nkwonta, hereby certify that on August 7th, 2020, I caused a true and correct copy of the foregoing Intervenors' Reply Brief in Support of their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to be served on all counsel of record listed on the docket via the Court's ECF system.

*/s/ Uzoma Nkwonta*