IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) | CIVIL ACTION |
| Plaintiffs, | ) | |
| v. | ) | No. 2-20-cv-966 |
| KATHY BOOCKVAR; *et al.*, | ) | |
| Defendants. | ) | |

**DEMOCRATIC INTERVENORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DIRECTED TO PLAINTIFFS**

1

I.  **INTRODUCTION**

Democratic Intervenors file this Motion requesting this Court to compel Plaintiffs to provide the most basic discovery information as required under the text and spirit of the Federal Rules of Civil Procedure. Plaintiffs should not be permitted to raise such spectacular fraud related claims, particular in this national climate, and refuse to provide discoverable information to substantiate those claims.

In both their Complaint and now Amended Complaint, Plaintiffs allege dire and pervasive constitutional harms arising from the administration and implementation of the Pennsylvania Election Code. Underlying these allegations are direct or very thinly veiled claims that virtually every aspect of the absentee and mail-in voting process in Pennsylvania–from ballot applications to vote tabulation–resulted in or may have resulted in wide spread voter fraud, ballot harvesting, double voting, and other nefarious conduct during the Primary Election and will inevitably result in a similar parade of horribles during the November 3, 2020 General Election. *See* Dkt. 232, Am. Compl., ¶ 1. According to Plaintiffs, Defendants' failure to enact transparency measures or safeguards against illegal or unreliable ballots "creates an obvious opportunity for ineligible voters to cast ballots, invites fraud, and undermines the public's confidence in the integrity of election," and that such wide spread devious conduct was on full display during the Primary Election. *Id.* at ¶ 64, Section IV. Plaintiffs contend, among other things, that voter fraud, ballot harvesting, and double voting will lead to vote dilution during the General Election and that vote dilution violates Plaintiffs' constitutional rights under the state and federal constitutions.

Putting Plaintiffs' motivation to stoke fears of fraud about absentee and mail-in voting aside, their allegations and implications that such fraudulent activities occurred during the Primary

Election, and may potentially occur during the General Election, are at the heart of the constitutional violations alleged by Plaintiffs in the Amended Complaint.

On July 24, 2020, Democratic Intervenors served Interrogatories and Document Requests on Plaintiffs seeking discovery directly related to the allegations in Plaintiffs' Complaint that absentee and mail-in ballot procedures and the Election Code's poll-watcher residency requirement lead to fraud or other misconduct during the Primary Election and how such fraud might occur again during the General Election. *See* **Ex. 1**, Plaintiffs' Answers to Democratic Intervenors' Interrogatories; **Ex. 2**, Plaintiffs' Responses to Democratic Intervenors' Document Requests. Democratic Intervenors' served the following Interrogatories[1]:

- **Interrogatory No. 1**: Identify and describe with specificity all facts concerning or relating to every instance of "ballot harvesting" during the Primary Election as alleged in Paragraphs 1 and 72-76 of your Complaint (now *Paragraphs 1, 73-77, and 212 of the Am. Compl.*)

- **Interrogatory No. 2**: Identify and describe with specificity all facts concerning or relating to every instance of "manipulating and destroying ballots" in the Primary Election as alleged in Paragraph 1 of your Complaint. (*Paragraph 1 of the Am. Compl.*).

- **Interrogatory No. 3**: Identify and describe with specificity all facts concerning or relating to every instance of "duplicitous votes" in the Primary Election as alleged in Paragraph 1 of your Complaint. (*Paragraph 1 of the Am. Compl.*).

- **Interrogatory No. 4**: Describe with specificity all facts showing that Defendants were unwilling to properly administer Act 77 during the Primary Election and opted to "promote unlimited use of unmonitored mail-in voting" as alleged in Paragraph 2 of your Complaint. (*Paragraph 2 of the Am. Compl.*).

- **Interrogatory No. 5**: Identify and describe with specificity every instance in which a Board used or utilized an "unmonitored and/or unsecured 'drop-off boxes' and/or similar means" to collect mail-in or absentee ballots during the as alleged in your complaint and in so doing, provide the location of every such allegedly unmonitored and/or unsecured drop-off box.

---

[1] Democratic Intervenors did not include references to Interrogatories related to the poll-watcher residency requirement. *See* Aug. 11, 2020 email from Chambers to counsel for Plaintiffs and intervenors.

- **Interrogatory No. 6**: Identify and describe with specificity all actions you have taken, including, but not limited to investigations, studies, audits, or drafting memoranda or research papers concerning or related to the allegation that "drop-off boxes" were "unsecure" or "unmonitored" and thus resulted in "ballot harvesting," "double voting," or "voter fraud" during the Primary Election and if you conducted such a study, investigation, audit or drafted a memoranda or research paper(s), please describe these documents and/or their conclusions.

- **Interrogatory No. 7**: Identify and describe with specificity all facts concerning or related to every instance of "double voting" in the Primary Election as alleged in Paragraphs 4, 70-71, and 111-112 of your Complaint (*Paragraphs 150-151 of the Am. Compl.*)

- **Interrogatory No. 8**: Identify and describe with specificity all facts concerning or related to every instance of voter fraud from mail-in or absentee ballots that occurred during the Primary Election.

- **Interrogatory No. 9**: Identify and describe with specificity all actions You have taken, including, but not limited to investigations, studies, audits, or drafting memoranda or research papers concerning or related to the prevalence or scope of voter fraud from mail-in or absentee ballots during the Primary Election and if you conducted such a study, investigation, audit or drafted a memoranda or research paper(s), describe these documents and/or their conclusions.

Democratic Intervenors' Document Requests largely mirror their Interrogatories and seek documents related to allegations regarding voter fraud during the Primary Election due to the implementation of the new statute governing voting by absentee and mail-in ballot. **Ex. 2**.

In response to each Document Request, Plaintiffs raised some or all of the following objections: (1) overbroad; (2) outside of the scope of the Court's Order; (3) contention interrogatory; (4) mischaracterizes the claims in the action; (5) the information was not in their possession; and (6) responsive documents are protected from attorney-client privilege. After asserting these objections, Plaintiffs either declined to produce any responsive documents (*See* **Ex. 2**, Request Nos. 5-8, 10) or merely referred generally to their document production. *See* **Ex. 2**, Request Nos. 1-4, 9. Plaintiffs' written responses to the Document Requests do not identify which documents they produced are responsive to which Document Request. *See* **Ex. 2**. Plaintiffs' document production was merely a document dump of publicly available guidance related to the

Primary Election, pleadings of other cases, news articles, and studies of voter fraud in elections around the country.

Plaintiffs' responses to Interrogatory No. 1-9 raised virtually the same objections as those raised in response to the Document Requests. After raising these objections, Plaintiffs stated in most instances that they would rely on "publicly available news reports and public records," and referred Democratic Intervenors to documents it produced pursuant to Fed. R. Civ. P. 33(d). **Ex. 1**, Interrogatory Nos. 1-9. None of Plaintiffs' answers to Interrogatories No. 1-9 specifically identify which documents they produced are responsive to which Interrogatory. *Id.*

On August 10, and again on August 12, counsel representing each Intervenor party participated in a telephonic meet and confer with Plaintiffs' counsel. The meet and confer sessions were unsuccessful in resolving the dispute regarding Plaintiffs' obligation to fully respond to fraud-related Document Requests and Interrogatories. The Plaintiffs' counsel's position is that Plaintiffs will provide no further responses to Democratic Intervenors' written discovery because, among other reasons, (1) the Court's guidance in its August 11, 2020 email communication to counsel for the Intervenors and Plaintiffs does not require them to do so; and (2) Plaintiffs have not yet decided whether it will introduce evidence of fraud at the hearing through an expert witness or otherwise.

## II.     ARGUMENT

### A.  Motion to Compel Standard.

"The Federal Rules of Civil Procedure provide liberal discovery rules which permit the requesting party to obtain even inadmissible material, so long as it is not privileged and 'is relevant to the claim or defense of any party,' and '[f]or good cause the court may order discovery of any matter relevant to the subject matter involved in the pending action.'" *Swain v. Encore Medical*

*Corp.*, No. 04-174J, 2005 WL 8176307, at *3 (W.D. Pa. Dec. 19, 2005) (Citation omitted) (alteration in original). "Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment." *In re Milo's Kitchen Dog Treats Consol. Cases*, 307 F.R.D. 177, 179 (W.D. Pa. 2015).

The party moving to compel discovery has the initial burden to prove the requested information is relevant. *Pelino v. Gilmore*, No. 18-1232, 2020 WL 1061667, at * 2 (W.D. Pa. March 5, 2020). After the moving party shows relevance, the opposing party "has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Pelino*, 2020 WL 1061667, at *2 (citing *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009)) (internal quotations omitted).

### B. The Documents and Information Democratic Intervenors Seek from Plaintiffs Are Relevant.

Democratic Intervenors' written discovery seeks relevant documents and information that arise directly from Plaintiffs' allegations. Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Towards this end, it is well-settled that relevance embraces a plaintiff's pleading and beyond it. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, No. MDL 1674, 2011 WL 4382942, at *6 (W.D. Pa. Sept. 20, 2011) (citing *Sanders*, 437 U.S. at

6

351) ("Discovery is not limited to the issues raised only in the pleadings, but rather is designed to define and clarify the issues.").

Documents and information related to Plaintiffs' allegations of voter fraud, ballot harvesting, and double voting during the Primary Election because of absentee and mail-in ballots procedures or allegedly unmonitored or unsecured ballot drop-boxes are not only discoverable under the Federal Rules of Civil Procedure, they are directly relevant to factual assertions made by Plaintiffs in their Amended Complaint. Yet, Plaintiffs produced virtually no documents or provided information responsive to these very narrow set of issues. *See* **Ex. 1**, Interrogatory Nos. 1-9; **Ex. 2**, Requests Nos. 1-4, 9. For example, Request No. 3 seeks documents relating to Plaintiffs' claim that the use of unsecure or unmonitored drop-off boxes by Boards of Election lead to voter fraud during the Primary Election. **Ex. 2**, Request No. 3. In response, Plaintiffs merely referred to "documents being produced" and "publicly available news reports and public records." *Id.* This response is wholly deficient and violates both the text and spirit of the federal discovery rules. If Plaintiffs have documents and information responsive to Democratic Intervenors' Document Requests and Interrogatories, they must produce the responsive documents and information and specifically identify the documents by Bates range or simply state they have no such documents responsive to a request. Thus, this Court should compel Plaintiffs to produce information and documents responsive to Interrogatory Nos. 1-9 and Requests 1-4 and 9 to Democratic Intervenors or state they have no documents or information responsive to each specific request.

### C. Plaintiffs Must Specifically Identify Responsive Documents If They Are Relying On Them to Respond to Interrogatories.

Discoverability aside, Plaintiffs' responses to Democratic Intervenors' Interrogatory Nos. 1-9 fail to comply with Fed. R. Civ. 33(d). "As the text of Rule 33(d) makes clear, when

7

responding to an interrogatory by referring to a business record, the responding party must 'specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.'" *Harry M. v. Pa. Dept. of Pub. Welfare*, 2011 U.S. Dist. LEXIS 1509, *3-4 (M.D. Pa. Jan. 7, 2011) (quoting Fed. R. Civ. P. 33(d)(1)). "This rule has been interpreted to require parties to guide the interrogating party to responsive documents by providing sufficient detail to enable the interrogating party to locate the documents." *Id.* (citing *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46, 48 (D.V.I. 1995)); *see also Kalp v. Life Ins. Co. of N. Am.*, 2009 U.S. Dist. LEXIS 7957 (W.D. Pa. Feb. 4, 2009) (requiring defendant to identify by Bates number responsive documents to discovery requests); Fed. R. Civ. P. 33 advisory committee's notes to 1980 amendment (noting that "directing the interrogating party to a mass of business records or by offering to make all of their records available . . . [is] an abuse of" Rule 33(d)); 7 *Moore's Federal Practice*, § 33.105[3] (Matthew Bender 3d ed.).

Here, Plaintiffs answered Interrogatory Nos. 1-9 by "refer[ing] to and incorporate[ing] the documents being produced" and citing Rule 33(d). *See* **Ex. 1**, Interrogatory Nos. 1-9. Plaintiffs' answers violate the text of Rule 33(d) because they failed to identify which documents they are relying on in responding to each Interrogatory. Accordingly, to the extent Plaintiffs are relying on documents to respond to Interrogatory Nos. 1-9, this Court must require Plaintiffs to specifically identify by Bates number/range which document(s) are responsive to which Interrogatory.

### III.   CONCLUSION

For the foregoing reason, Democratic Intervenors request that this Court grant their Motion to Compel and direct Plaintiffs to respond fully Democratic Intervenors' Interrogatory Nos. 1-9 and Document Requests Nos. 1-4 and 9 with specific information or documents requested and/or

specifically identify which document(s) produced are responsive to each Document Request and Interrogatory.

Respectfully submitted,

*/s/ A. Michael Pratt*
A. Michael Pratt
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
(t) 215.972.5916
(f) 215.988.7801
prattam@gtlaw.com

Kevin M. Greenberg
Adam R. Roseman
George Farrell
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
(t) 215.988.7818
(f) 215.988.7801
greenbergk@gtlaw.com

Clifford B. Levine
Alex Lacey
**DENTONS COHEN & GRIGSBY P.C.**
625 Liberty Avenue
Pittsburgh, PA  15222-3152
(t) 412.297.4998/4642
clifford.levine@dentons.com
alex.lacey@dentons.com

Lazar M. Palnick
1216 Heberton St.
Pittsburgh, PA 15206
(t) 412.661.3633
lazarpalnick@gmail.com

Dated: August 12, 2020

**CERTIFICATE OF SERVICE**

I, A. Michael Pratt, hereby certify that on August 12, 2020, I caused a true and correct copy of the foregoing Democratic Intervenors' Memorandum of Law in Support of their Motion to Compel Directed to Plaintiffs to be served on the following counsel of record for Plaintiffs, Defendants and other proposed Intervenors listed on the docket via the Court's ECF system.

/s/ A. Michael Pratt<br>
A. Michael Pratt