**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) ) *Electronically Filed* |
| Plaintiffs, | ) ) Civil Action ) |
| v. | ) No.: 2-20-CV-966 ) |
| KATHY BOOCKVAR; *et al.*, | ) ) |
| Defendants. | ) Judge J. Nicholas Ranjan ) |

**OMNIBUS RESPONSE IN OPPOSITION TO
INTERVENORS' MOTIONS TO COMPEL (ECF ## 366, 368)**

### I. INTRODUCTION

Intervenors' motions to compel should be denied because both the motions and the underlying discovery requests misconstrue what this case is about and amount to nothing more than an ill-conceived fishing expedition. In their Amended Complaint, Plaintiffs request, *inter alia*, declaratory and injunctive relief to protect their Constitutional rights by, among other things, ensuring that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner. *See, e.g.*, Am. Compl.(ECF#234), ¶¶ 5 & 192, 193-267; *see also id.* at pp. 71–73 (prayer for relief). The Intervenors' fixation on evidence of fraud is a distraction; the Commonwealth's failure to impose and implement uniform statewide standards "to protect the legality of a citizen's vote" is what "implicates constitutional problems under the equal protection clause of the Fourteenth Amendment" and is the focus of Plaintiffs' claims in this case. *Pierce v. Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684, 697 (W.D. Pa. 2003). Accordingly, the Court should deny the Intervenors' motions to compel.

II.   ARGUMENT

### A. Discovery Is Limited by Relevancy, i.e., Matters "of Consequence."

Plaintiffs' discovery requests relating to fraud exceed the relevancy bounds set by the Federal Rules of Civil Procedure. "Rule 26(b)(1) imposes 'two content-based limitations upon the scope of discovery: privilege and relevance.'" *Hay v. Somerset Area Sch. Dist.*, No. 3:16-cv-229, 2017 U.S. Dist. LEXIS 100637, at *3 (W.D. Pa. June 29, 2017) (quoting *Trask v. Olin Corp.*, 298 F.R.D. 244, 257 (W.D. Pa. 2014)).

"The party moving to compel discovery under Rule 37 bears the initial burden of proving relevance of the material requested." *N. Am. Communs. Inc. v. Herman*, No. 3:17-157, 2019 U.S. Dist. LEXIS 88690, at *5–6 (W.D. Pa. May 28, 2019) (citing *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)). "Evidence is 'relevant' if it has any tendency to make a fact more or less probable than it would be without the evidence' **and 'the fact is of consequence in determining the action.'**" *Williams v. Clark*, No. 1:17-cv-204, 2019 U.S. Dist. LEXIS 116071, 2019 WL 3068390, at *2 (W.D. Pa. July 12, 2019) (quoting *Allen v. Eckard*, 2019 U.S. Dist. LEXIS 37169, 2019 WL 1099001, at *2 (M.D. Pa. Mar. 3, 2019) (emphasis added)). "The relevance of each of the discovery requests at issue must be assessed in the context of [the party's] claims and the issues of the case." *Id.* at *3.

In *Love v. New Jersey Department of Corrections*, the plaintiff commenced a § 1983 action based upon an incident arising from his visit to a prison, and an alleged retaliatory transfer to another prison, and conditions of his confinement. 2018 U.S. Dist. LEXIS 13166, at *1–2 (D.N.J. Jan. 26, 2018). Although the plaintiff's complaints "tangentially allege[d] general disrepair and neglect of the prison facility, the allegations behind his complaint primarily center[ed] on the health hazards of mold, mildew, and fungus." *Id.* at *4. The court denied a motion to compel responses to requests

that strayed from issues relating to mold, mildew, and fungus and their potential causes in the prison. *Id.* at *4–7. In so ruling, the court noted that "[t]hough relevance at discovery is broader than at trial, courts discourage interrogatories that are little more than fishing expeditions, unlikely to lead to relevant information." *Id.* at *4.

### B. The Intervenors' Requests Seek Irrelevant Information and Documents.

#### 1. Plaintiffs' Claims Implicate Significant Constitutional Violations.

The Intervenors' premise their assertions of relevance upon a mischaracterization of Plaintiffs' claims in this action. Plaintiffs' Amended Complaint sets forth 9 counts, all involving Constitutional violations stemming from the Defendants' inconsistent election administration and/or a poll watching statute which unconstitutionally limits poll watchers to their county of residence or location of in-person voting. *See* Am. Compl., #234, Counts I-IX.

At issue in each of these claims—and what the discovery exchanged in this action has already demonstrated—is that the Secretary of the Commonwealth has issued guidances that directly contradict the Election Code, resulting in County Election Boards failing to adhere to the provisions of the Election Code in a uniform manner. Although these failures create the *opportunity* for fraud (which is why the General Assembly enacted the absentee and mail-in voting in the manner that it did), the actual commission of fraud is not an element of any claim or defense in this action.

The Intervenors, however, focus on the word "fraud" in Plaintiffs' Amended Complaint, without giving any credence to the context in which the allegations are made. First, Plaintiffs have alleged that non-uniform application creates an *opportunity* for fraud to occur. *See, e.g.*, Am. Compl. ECF #234, ¶ 1 ("Defendants' hazardous, hurried, and illegal implementation of unmonitored mail-in voting which provides fraudsters an easy *opportunity* to engage in ballot

harvesting, manipulate or destroy ballots, manufacture duplicitous votes, and sow chaos." (emphasis added)). As noted in Plaintiffs' discovery responses, it is the mere failure of the state to impose uniform statewide standards to protect the legality of a citizen's vote that gives rise to a constitutional violation. *See Pierce*, 324 F. Supp. 2d at 697.

In their motion to intervene, PennFuture and Sierra Club expressly stated they would not "expand the questions presented by the Complaint." ECF #138 at 20. But their discovery requests belie that promise. Instead, their discovery requests evince an intent to inflate mere statements regarding the *opportunity* for fraud into the focus of their defense against Plaintiffs' claims. In this expedited action regarding the Secretary of the Commonwealth's and some County Elections Boards' failure to adhere to the strict requirements of the Election Code, Intervenors' preoccupation with instances of fraud will do little more than sidetrack the Court and parties from the issues to be decided.

PennFuture and Sierra Club also seek to use a subpoena recently issued by Plaintiffs to support their tortured reading of Plaintiffs' claims. *See* ECF#369, p.5. Somehow, Intervenors interpret a subpoena to the Committee of Seventy as one seeking fraud-related documents or information when no such documents or information are identified. Instead, the subpoena to the Committee of Seventy is directed at the issue of drop-boxes and communications it had with certain identified individuals and entities regarding drop-boxes. *See* ECF#369-3, pp. 5-6 & 12-14 of 14. Unfortunately for Intervenors, simply saying a document seeks fraud-related documents or information (or that an Amended Complaint asserts fraud) does not make it so.

Intervenors' discovery requests aimed at supposed allegations of fraud, therefore, are not relevant to the claims or defenses and exceed the scope of permissible discovery under Rule 26.

**2. Intervenors' "Pretext" Argument Is Misplaced.**

Intervenors' suggestion that Plaintiffs' claims are pretext is a red herring. The Intervenors claim they also have a right to the sought-after discovery because they are entitled to show Plaintiffs' allegations are pretextual. *See* ECF#369, p.4 (citing *North Carolina State Conference of NAACP v. Cooper*, 430 F. Supp. 3d 15, 44 (M.D. N.C. 2019)). Defendants are wrong. The discussion of pretext in *North Carolina* is irrelevant to this case because the plaintiffs there were challenging a voting restriction as being unconstitutional, thus they had to establish a discriminatory purpose. *See North Carolina State Conference of NAACP*, 430 F. Supp. 3d at 27 n.7 ("As explained in this Opinion, a plaintiff challenging a voting restriction under either [the Fourteenth or Fifteenth] amendment must establish that the restriction was motivated, at least in part, by a discriminatory purpose."). Here, Plaintiffs are not challenging any voting restrictions as being unconstitutional. What they challenge as unconstitutional is the failure of the Secretary and the 67 Counties to follow the Election Code uniformly across the Commonwealth, which violates Plaintiffs' equal protection rights.[1]

Nor are either of the other two cases cited by the Intervenors helpful. The *Riggs* case from New Jersey is inapposite because it is a tax case dealing with a motion in limine under Rule of Evidence 403, and the "motive" evidence there was necessary to put into context a factual request

---

[1] The court in *North Carolina* also noted that one of the failings of the statute before it was that the legislature had evidence of alleged cases of mail-in absentee voter fraud but did not attempt to address same in the statute. *See North Carolina State Conference of NAACP*, 430 F. Supp. 3d at 34. In contrast here, the Pennsylvania Supreme Court has already recognized that the restrictions Plaintiffs are seeking to enforce uniformly across the Commonwealth are geared toward reducing voter fraud. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1234 (Pa. 2004). Moreover, the Pennsylvania General Assembly used the very language that the Supreme Court interpreted in 2003 when enacting no-excuse mail-in voting under Act 77. *Compare* 25 P.S. § 3146.6(a) *with* 25 P.S. §§ 3146.6(a) and 3050.16(a). Accordingly, the Pennsylvania General Assembly can be presumed to have enacted the same language for the same purposes. *See* 1 Pa.C.S. § 1922(4).

the plaintiff made of an Exchange Agent. *See Riggs v. Deutsche Banc Alex. Brown Inc.*, 2005 U.S. Dist. LEXIS 53480, at *2-4 (D. N.J. Sept. 6, 2005). There is no similar situation present here. The *Arconic Inc.* case also is inapposite because the discovery at issue there related to a counterclaim for wrongful initiation of suit. *See Arconic Inc. v. Novelis Inc.*, 2018 U.S. Dist. LEXIS 176303, at *6 (W.D. Pa. Oct. 15, 2018) (Conti, J.) (adopting recommendation at citation referenced by Defendants); *see also Arconic Inc.*, ECF# 55 (Answer, Affirmative Defenses, and Counterclaim), ¶306 ("Arconic has acted in bad faith and engaged in subterfuge and evasion in breach of the implied covenant of good faith and fair dealing, *including by wrongfully filing this lawsuit*, purporting to terminate the License, filing the '384 application and the Derivation Proceeding, and attempting to interfere with Novelis's business with Ford, Chemetall, and other third parties.") (emphasis added). No such counterclaim has been asserted here.

### 3. The Court Has Already Outlined the Scope of Relevant Discovery.

Intervenors' request for this information already was presented to the Court and the Court declined to require Plaintiffs to produce the information. In the summary by PennFuture and Sierra Club, setting aside the erroneous description of the actual claims being asserted by Plaintiffs, they noted their requests sought production of fraud-related information. *See, e.g.*, Exhibit 1 (08/11/2020 12:05 p.m. email) ("Plaintiffs did not support their allegations that Defendants' use of Drop Boxes 'provides fraudsters an easy opportunity to engage in ballot harvesting, manipulate or destroy ballots, manufacture duplicitous votes, and sow chaos,' (Amended Complaint ¶1) with any specific facts or credible allegations. Intervenors are entitled to explore the factual bases for these allegations and the credibility of the alleged harm Plaintiffs seek to remedy through this litigation. Intervenors' discovery requests are not controversial, seeking documents relevant to the harms Plaintiffs allege, including the basis for their claims of voter fraud, … During the August 10 meet and confer Plaintiffs also asserted that their claims do not, in fact, concern voter fraud and solely

relate to the non-uniform procedures counties may adopt in the upcoming general election. But that is not the case they have pled, which is rife with allegations of fraud … .");  *see also* Exhibit 1 (08/11/2020 11:46 a.m. email) (in the summary by the NAACP Pennsylvania State Conference Intervenors in which the Democratic Intervenors joined, they were seeking information to show "that the Commonwealth has failed to safeguard against improper voting."). Yet after reviewing the summaries from all parties to the dispute, while the Court did direct Plaintiffs to produce certain information about poll-watching, it did not require Plaintiffs to produce any documents or information on fraud. *See* Exhibit 1 (08/11/2020 4:17, 4:18 & 4:19 p.m. emails). Therefore, Plaintiffs view this issue as having been determined.

### C. **Plaintiffs Have Fairly Answered the Intervenors' Requests.**

Notwithstanding the irrelevancy of Intervenors' discovery requests, Plaintiffs have provided meaningful answers. In Plaintiffs' responses, Plaintiffs state that "to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the Court, Plaintiffs will rely on, among other things, publicly available news reports and public records." *See* Doc. ##367-1, 367-2; Doc. #369-2. Plaintiffs also referred Plaintiffs to the "documents being produced" and further responded that "Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds." *Id.*

### D. **Intervenors' Requests Are Inappropriate Contention Interrogatories.**

Intervenors' contention interrogatories are also objectionable "Contention interrogatories ask a party: to state what it contends; to state whether it makes a specified contention; to state all the facts upon which it bases a contention; to take a position, and explain or defend that position, with respect to how the law applies to fact; or to state the legal or theoretical basis for a contention."

*United States v. Educ. Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104176, at *64 (W.D. Pa. May 14, 2013). Such interrogatories in the early stages of litigation are disfavored, especially when the complaint is not facially infirm and the defendants have control over much of the evidence of their misconduct. *Id.* at *66, *71–73; *see also* Fed. R. Civ. P. 33(a)(2); *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992) ("The interests of judicial economy and efficiency for the litigants dictate that 'contention interrogatories are more appropriate after a substantial amount of discovery has been conducted.'").

Just as the Court prohibited the use of requests for admission, *see* ECF #124 § III(B)(9), it should discourage the use of contention interrogatories during this abbreviated discovery period. The requests serve similar purposes. Requests for admission are designed "first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. P. 36, notes re 1970 amendment. Similarly, the proponent of contention interrogatories "must demonstrate that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *Educ. Mgmt.*, 2013 U.S. Dist. LEXIS 104176, at *65–66. With roughly a month to conduct all discovery in this action, Intervenors' use of contention interrogatories diverts the Court's and parties resources and attention from the substantive discovery that must be done.

### E. **Plaintiffs Should Be Awarded Attorneys' Fees.**

Plaintiffs are seeking an award of $5,000 should this Court deny the motions, as they believe it should. As the required support, counsel for Plaintiffs aver they incurred the following time related to this discovery dispute, excluding time discussing same with their clients:

- Time preparing for and participating in the initial meet-and-confer (but reduced by ½ to account for discussion of issues on topics other than the fraud issue):
    - Attorney Mercer – 1.0 hrs. x $455 = $455
    - Attorney Giancola – 0.5 hrs. x $345 = $173

- Time reviewing email correspondence with Mr. Vahlsing by Intervenors regarding discovery dispute, preparing and submitting Plaintiffs' summaries, reviewing Intervenors' summaries, and reviewing Court's resolution of dispute:
    - Attorney Mercer – 1.4 hrs. x $455 = $637

- Time preparing for and participating in second meet-and-confer (but reducing by ¼ to account for brief discussion of the Plaintiffs' production of training information):
    - Attorney Mercer – 0.6 hrs. x $455 = $273
    - Attorney Giancola – 0.6 hrs. x $345 = $207

- Time spent reviewing motions to compel and briefs in support and preparing omnibus brief in opposition to same:
    - Attorney Hicks – 1.0 hrs. x $440 = $440
    - Attorney Mercer – 6.6 hrs. x $455 = $3,003
    - Attorney Giancola – 8.4 hrs. x $345 = $2898

- Total cost associated with this discovery dispute: $8,086.

Pursuant to the Amended Scheduling Order, Doc. 334 § II(2), and Federal Rule of Civil Procedure 37, the Plaintiffs hereby request an award of attorneys' fees of $5,000.[2]

---

[2] The Democratic Intervenors do not include anything in their motion, brief, or form order regarding fees. *See generally* ECF#366; ECF #367. And while Citizens for Pennsylvania's Future and the Sierra Club include a request for $5,000 in attorneys' fees in their form Order (ECF #370), there is no mention of attorneys' fees or justification for same in their motion or brief. *See generally* ECF#368; ECF#369. But this Court requires that support be provided for attorneys' fees. *See* Judge Ranjan's Practices and Procedures (rev. 1/6/20), §II(e) ("In the event discovery motions are subsequently filed, counsel for each side should, pursuant to Rule 37, provide support for their reasonable expenses (including attorneys' fees), as expenses will be awarded to the prevailing party when permitted under Rule 37."). Thus, even if the Court were to grant one of the motions, in whole or part, it should not award any attorneys' fees.

## III.     CONCLUSION

For the reasons set forth above, the motions to compel filed by the Democratic Intervenors, Doc. 366, and PennFuture and Sierra Club, Doc. 368, should be denied.  Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs should be awarded attorneys' fees in the amount of $5,000.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

Date:  August 12, 2020        By:    */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy  A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(pro hac vice motion pending – ECF #27)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Response to be filed this 11th day of August, 2020, via ECF, which system will serve notice of same on all parties registered to receive same via the ECF system. For any party who has yet to enter an appearance, the undersigned certifies that a copy of the foregoing filing will be served on that party via First Class Mail and a copy sent to the County Solicitor, if known, via email or fax.

                                      Respectfully submitted,

                                      PORTER WRIGHT MORRIS & ARTHUR LLP

By: */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(pro hac vice motion pending – ECF #27)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*