# EXHIBIT A

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

### No. _____ MM 2020

**PENNSYLVANIA DEMOCRATIC PARTY, NILOFER NINA AHMAD, DANILO BURGOS, AUSTIN DAVIS, DWIGHT EVANS, ISABELLA FITZGERALD, EDWARD GAINEY, MANUEL M. GUZMAN, JR., JORDAN A. HARRIS, ARTHUR HAYWOOD, MALCOLM KENYATTA, PATTY H. KIM, STEPHEN KINSEY, PETER SCHWEYER, SHARIF STREET, and ANTHONY H. WILLIAMS**

**Petitioners**

**v.**

**KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, and ALL 67 COUNTY BOARDS OF ELECTIONS**
**(See back of cover for List of County Respondents)**

**Respondents**

---

## SECRETARY BOOCKVAR'S APPLICATION FOR THE COURT TO EXERCISE EXTRAORDINARY JURISDICTION OVER THE COMMONWEALTH COURT CASE DOCKETED AT 407 MD 2020

---

JOSH SHAPIRO
*Attorney General*

BY:    J. BART DELONE
*Chief Deputy Attorney General*
*Chief, Appellate Litigation Section*

Office of Attorney General          HOWARD G. HOPKIRK
15th Floor, Strawberry Square       SEAN A. KIRKPATRICK
Harrisburg, PA 17120                *Senior Deputy Attorneys General*
Phone: (717) 712-3818
FAX:   (717) 772-4526               MICHAEL J. SCARINCI
                                    DANIEL B. MULLEN
DATE: August 16, 2020               *Deputy Attorneys General*

ADAMS COUNTY BOARD OF ELECTIONS; ALLEGHENY COUNTY BOARD OF ELECTIONS; ARMSTRONG COUNTY BOARD OF ELECTIONS; BEAVER COUNTY BOARD OF ELECTIONS; BEDFORD COUNTY BOARD OF ELECTIONS; BERKS COUNTY BOARD OF ELECTIONS; BLAIR COUNTY BOARD OF ELECTIONS; BRADFORD COUNTY BOARD OF ELECTIONS; BUCKS COUNTY BOARD OF ELECTIONS; BUTLER COUNTY BOARD OF ELECTIONS; CAMBRIA COUNTY BOARD OF ELECTIONS; CAMERON COUNTY BOARD OF ELECTIONS; CARBON COUNTY BOARD OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER COUNTY BOARD OF ELECTIONS; CLARION COUNTY BOARD OF ELECTIONS; CLEARFIELD COUNTY BOARD OF ELECTIONS; CLINTON COUNTY BOARD OF ELECTIONS; COLUMBIA COUNTY BOARD OF ELECTIONS; CRAWFORD COUNTY BOARD OF ELECTIONS; CUMBERLAND COUNTY BOARD OF ELECTIONS; DAUPHIN COUNTY BOARD OF ELECTIONS; DELAWARE COUNTY BOARD OF ELECTIONS; ELK COUNTY BOARD OF ELECTIONS; ERIE COUNTY BOARD OF ELECTIONS; FAYETTE COUNTY BOARD OF ELECTIONS; FOREST COUNTY BOARD OF ELECTIONS; FRANKLIN COUNTY BOARD OF ELECTIONS; FULTON COUNTY BOARD OF ELECTIONS; GREENE COUNTY BOARD OF ELECTIONS; HUNTINGDON COUNTY BOARD OF ELECTIONS; INDIANA COUNTY BOARD OF ELECTIONS; JEFFERSON COUNTY BOARD OF ELECTIONS; JUNIATA COUNTY BOARD OF ELECTIONS; LACKAWANNA COUNTY BOARD OF ELECTIONS; LANCASTER COUNTY BOARD OF ELECTIONS; LAWRENCE COUNTY BOARD OF ELECTIONS; LEBANON COUNTY BOARD OF ELECTIONS; LEHIGH COUNTY BOARD OF ELECTIONS; LUZERNE COUNTY BOARD OF ELECTIONS; LYCOMING COUNTY BOARD OF ELECTIONS; MCKEAN COUNTY BOARD OF ELECTIONS; MERCER COUNTY BOARD OF ELECTIONS; MIFFLIN COUNTY BOARD OF ELECTIONS; MONROE COUNTY BOARD OF ELECTIONS; MONTGOMERY COUNTY BOARD OF ELECTIONS; MONTOUR COUNTY BOARD OF ELECTIONS; NORTHAMPTON COUNTY BOARD OF ELECTIONS; NORTHUMBERLAND COUNTY BOARD OF ELECTIONS; PERRY COUNTY BOARD OF ELECTIONS; PHILADELPHIA COUNTY BOARD OF ELECTIONS; PIKE COUNTY BOARD OF ELECTIONS; POTTER COUNTY BOARD OF ELECTIONS; SCHUYLKILL COUNTY BOARD OF ELECTIONS; SNYDER COUNTY BOARD OF ELECTIONS; SOMERSET COUNTY BOARD OF ELECTIONS; SULLIVAN COUNTY BOARD OF ELECTIONS; SUSQUEHANNA COUNTY BOARD OF ELECTIONS; TIOGA COUNTY BOARD OF ELECTIONS; UNION COUNTY BOARD OF ELECTIONS; VENANGO COUNTY BOARD OF ELECTIONS; WARREN COUNTY BOARD OF ELECTIONS; WASHINGTON COUNTY BOARD OF ELECTIONS; WAYNE COUNTY BOARD OF ELECTIONS; WESTMORELAND COUNTY BOARD OF ELECTIONS; WYOMING COUNTY BOARD OF ELECTIONS; and YORK COUNTY BOARD OF ELECTIONS,

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

STATEMENT OF JURISDICTION...................................................................4

STATEMENT OF QUESTIONS INVOLVED.....................................................5

STATEMENT OF THE CASE............................................................................6

A.  Mail-in Voting under the Election Code ........................................6

B.  Letter from the United States Postal Service Warning of Delays .................9

C.  The Longstanding Poll Watchers Residency Requirement ............................9

D.  *Michael Crossey, et al. v. Kathy Boockvar*, 108 MM 2020 (Pa.) ................10

E.  *Trump for President, Inc. v. Kathy Boockvar*, 2:20-cv-966 (W.D. Pa.)........11

F.  *Pennsylvania Democratic Party v. Kathy Boockvar*, 407 MD 2020 (Pa. Cmwlth. Ct.)................................................................................12

BASIS FOR EXTRAORDINARY JURISDICTION.............................................15

ARGUMENTS FOR DECLARATORY RELIEF .................................................21

A.  The County Boards may designate locations other than their physical addresses for the delivery of mail-in ballots.................................................23

B.  Given the mail delivery delays expected by the United States Postal Service, the Court should order the counting of all ballots postmarked by Election Day and received by November 6, 2020. ....................................27

C.  The Democratic Party provides no statutory or constitutional basis for requiring County Boards to contact voters whose ballots contain "minor errors" and afford them an opportunity to cure.................................29

D.  The Counting of "Naked Ballots" Is Permitted by the Election Code and Furthers the Right to Vote Under Article I, Section 5 (Free and Equal Elections Clause) of the Pennsylvania Constitution and the First and Fourteenth Amendments of the United States Constitution. ..................31

E.      The Election Code's requirement that poll watchers be qualified
        electors from the county in which they serve does not burden the
        voting rights of political parties. ...................................................................36

CONCLUSION ......................................................................................................40

Exhibit A - July 29, 2020 Letter from U.S. Postal Service

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983) ...................................................................................... 37, 38

*Appeal of John Pierce, et al.,*
  843 A.2d 1223 (Pa. 2004) ....................................................................................36

*Appeal of Weiskerger,*
  290 A.2d 108 (Pa. 1972) .....................................................................................35

*Bayview Loan Serv., LLC v. Lindsay,*
  185 A.3d 307 (Pa. 2018) .....................................................................................22

*Bd. of Revisions of Taxes v. City of Phila.,*
  4 A.3d 610 (Pa. 2004) .........................................................................................16

*Bellotti v. Baird,*
  428 U.S. 132 (1976) ............................................................................................18

*Burdick v. Takushi,*
  504 U.S. 428 (1992) ............................................................................................38

*Coalition for Good Governance v. Raffensperger,*
  2020 WL 2509092 (N.D. Ga., May 14, 2020) ....................................................30

*Colorado River Water Conserv. Dist. v. U.S.,*
  424 U.S. 800 (1976) ............................................................................................17

*Commonwealth v. Morris,*
  771 A.2d 721 (Pa. 2001) .....................................................................................16

*Cotz v. Mastroeni,*
  476 F.Supp.2d 332 (S.D.N.Y. 2007) ...................................................................39

*Dailey v. Hands,*
  No. 14–00423, 2015 WL 1293188 (S.D. Ala. Mar. 23, 2015) ...........................39

*Dep't of Envt'l Prot. v. Cumberland Coal Res.,*
  102 A.3d 962 (Pa. 2014) .....................................................................................22

*DiPietrae v. City of Phila.*,
    666 A.2d 1132 (Pa. Cmwlth. 1995) ...................................................................25

*Fla. Democratic Party v. Scott*,
    215 F. Supp. 3d 1250 (N.D. Fla. 2016)...............................................................28

*Georgia Coalition for the Peoples' Agenda, Inc. v. Deal*,
    214 F. Supp. 3d 1344 (S.D. Ga. 2016).................................................................28

*Harper v. Virginia State Board of Elections*,
    383 U.S. 663 (1966)............................................................................................34

*Holland v. Marcy*,
    883 A.2d 449 (Pa. 2005) ....................................................................................26

*In re General Election-1985*,
    531 A.2d 836 (Pa. Commw. Ct. 1987) ...............................................................28

*Johnson v. Fankell*,
    520 U.S. 911 (1997)............................................................................................17

*League of Women Voters v. Commonwealth*,
    178 A.3d 737 (Pa. 2018) ................................................................ 16, 17, 31, 34

*NAACP Phila. Branch v. Ridge*,
    No. Civ. A. 00-2855, 2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ...................19

*Office of Admin. v. Pa. Labor Relations Bd.*,
    916 A.2d 541 (Pa. 2007) ....................................................................................21

*Pa. Democratic Party v. Boockvar*,
    407 MD 2020 (Pa. Cmlwth. Ct.)....................................................................2, 19

*Petition of Cioppa*,
    626 A.2d 146 (Pa. 1993) ............................................................................. 22, 27

*Planned Parenthood of Cent. N.J. v. Farmer*,
    220 F.3d 127 (3d Cir. 2000)................................................................................18

*R.R. Comm'n of Tex. v. Pullman Co.*,
    312 U.S. 496 (1941)............................................................................................17

*Ramich v. WCAB (Schatz Electric, Inc.)*,
  770 A.2d 318 (2001) ....................................................................22

*Republican Party of Pennsylvania v. Cortés*,
  218 F.Supp.3d 396 (E.D. Pa. 2016) ............................................39

*Scungio Borst & Assocs. v. 410 Shurs Lane Developers*,
  146 A.3d 232 (Pa. 2016) .............................................................24

*Shambach v. Bickhart*,
  845 A.2d 793 (Pa. 2004) ............................................... 22, 26, 35

*Storer v. Brown*,
  415 U.S. 724, S.Ct. 1274 L.Ed.2d 714 (1974)............................37

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997)............................................................. 37, 38

*Trump for President, Inc. v. Kathy Boockvar*,
  2:20-cv-966 (W.D. Pa.)..................................... 2, 17, 18, 19

*Turner v. Cooper*,
  583 F.Supp. 1160 (N.D. Ill. 2011) ..............................................39

*Wardius v. Oregon*,
  412 U.S. 470 (1973)....................................................................17

*Winston v. Moore*,
  244 Pa. 447 (Pa. 1914) ....................................................... 30, 31

## Constitutional Provisions

Pennsylvania Constitution, Article I, § 5 ........................................ 11, 27

Pennsylvania Constitution, Article I, § 28 ............................................11

Pennsylvania Constitution, Article VII, § 1 ..........................................11

United States Constitution, Amendment I .............................................11

United States Constitution, Amendment XIV .......................................11

**Statutes**

1 Pa.C.S. § 1903 ................................................................................22

1 Pa.C.S. § 1921 ................................................................... 21, 22, 26

25 P.S. § 2587(b) ..............................................................................38

25 P.S. § 2602 ..................................................................................24

25 P.S. § 2645 ..................................................................................25

25 P.S. § 2687 ...................................................................... 9, 10, 38

25 P.S. § 3063 ..................................................................................34

25 P.S. § 3146.6 ...............................................................................27

25 P.S. § 3146.8 .................................................................... 7, 8, 33

25 P.S. § 3150.11 ...............................................................................6

25 P.S. § 3150.12a .........................................................................6, 15

25 P.S. § 3150.12b ............................................................................33

25 P.S. § 3150.14 ...............................................................................6

25 P.S. § 3150.16 .................................................................. 6, 8, 24, 32

25 P.S. § 3150.16 ...............................................................................27

25 P.S. § 3151 ..................................................................................25

42 Pa.C.S § 726 ............................................................................4, 16

42 Pa.C.S. § 7533 .............................................................................21

42 Pa.C.S. § 7541 .............................................................................21

52 U.S.C. § 20301 ............................................................................27

73 P.S. § 502 ....................................................................................29

**Rules**

Fed. R. Civ. P. 6 ........................................................................................29

Pa.R.A.P. 121 ...........................................................................................29

Pa.R.A.P. 3309 ...........................................................................................4

## INTRODUCTION

On November 3, 2020, the Commonwealth will conduct a general election for federal and state offices. The election, involving millions of voters, requires months of preparation and the coordinated efforts of Commonwealth and municipal officials, employees, and thousands of volunteers. Complicating matters even further, the Commonwealth will hold these elections during the COVID-19 pandemic.

Fortuitously, last year Act 77 of 2019 was enacted, permitting no excuse mail-in voting for qualified electors. *See* 25 P.S. §§ 3150.11-3150.17. This law extends the opportunity to vote by mail to all qualified electors, thus reducing the need for voters to congregate in large numbers at polling places.[1]

In late June, the Republican National Committee, among others, filed an action in the U.S. District Court for the Western District of Pennsylvania against Secretary of the Commonwealth Kathy Boockvar and all 67 county election boards alleging that procedures for collection and counting mail-in ballots at the 2020

---

[1] *See e.g.* "Governor Wolf Signs Historic Election Reform Bill Including New Mail-in Voting," Governor Wolf Website, http://tiny.cc/z9gmsz (10/31/19) (press release by Governor Wolf exclaiming that Act 77 will make "voting more convenient and secure . . ."); "Act 77 Makes Historic Changes to PA Election Code," VotesPa.com, https://www.votespa.com/About-Elections/Pages/Voting-Reforms.aspx (last visited 8/4/20) (explaining that "Act 77 allows more convenient and secure voting").

Primary Election deviated from the Election Code, and, as a result, violated the Pennsylvania and United States Constitutions. The federal action is premised on the construction of Act 77 and the Election Code. The Republican National Committee requested, among other things, an injunction under 42 U.S.C. § 1983 prohibiting the return of mail-in ballots to locations other than the election board office, prohibiting the use of drop boxes and mobile collection sites to collect mail-in ballots, prohibiting the counting of mail-in ballots not returned in an "Official Election Ballot" envelope, and declaring that the poll watchers' residency requirement violates the United States and Pennsylvania Constitutions. *Trump for President, Inc. v. Kathy Boockvar*, 2:20-cv-966 (W.D. Pa.), Docket No. 234, Am. Compl., at 70-73.

In mid-July, the Pennsylvania Democratic Party, among others, filed an action in Commonwealth Court against Secretary Boockvar and all 67 county election boards requesting, among other things, a declaratory judgment that the Election Code permits the return of mail-in ballots to locations other than the election board offices and mandates the counting of otherwise valid ballots not returned in an "Official Election Ballot" envelope, and a declaratory judgment that the poll watchers' residency requirement does not violate the United States and Pennsylvania Constitutions. *Pa. Democratic Party v. Boockvar*, 407 MD 2020 (Pa. Cmlwth. Ct.), Pet. for Rev., at 48-54. The Republican National Committee has sought to intervene

in the Commonwealth Court action, and the Democratic Party has intervened in the federal action.

The Secretary of the Commonwealth and the 67 county election boards are being challenged from opposite ends by these two competing theories as to how the Election Code should be interpreted. The longer these challenges remain unresolved and the closer we move towards election day, the more disruptive the litigation will be to the orderly implementation of the Election Code on election day.

Beginning in mid-September, mail-in ballots will begin to be mailed to voters, with collection of those ballots following immediately thereafter. Although the Commonwealth Court is attempting to expedite the briefing schedule, there is simply insufficient time to litigate these novel constitutional and statutory issues of statewide importance twice. Only this Court can determine the schedule necessary for it to render a timely decision as to the requirements of the Election Code with the least disruption to the election process.

These issues are unquestionably of immediate public importance.  Both voters and election officials need clarity on these critical election issues as soon as possible. Secretary Boockvar respectfully requests that this Court exercise its extraordinary jurisdiction and assume plenary jurisdiction over the Commonwealth Court action and resolve these election questions as expeditiously as possible.

## STATEMENT OF JURISDICTION

For the reasons discussed below, the Court has jurisdiction to take this case through its Extraordinary Jurisdiction. *See* 42 Pa.C.S. § 726; Pa.R.A.P. 3309.

## STATEMENT OF QUESTIONS INVOLVED

I.      Given the immediate and significant public importance of the state law statutory interpretation issues raised by this case and in federal actions, and the proximity of the election, should the Court assume immediate jurisdiction over this action pursuant to its Extraordinary Jurisdiction?

Suggested answer: Yes.

II.     Does Act 77 of 2019 permit county election boards to designate drop-off locations other than their official office address for receipt of mail-in ballots?

Suggested answer: Yes.

III.    Given the United States Postal Service's warning that it cannot guarantee timely delivery of mail-in ballots by the current deadline, should county election boards count all returned ballots postmarked by 8:00 p.m. on Election Day as valid if received by November 6, 2020?

Suggested answer: Yes.

IV.     Whether the Democratic Party has demonstrated that the Commonwealth is required to establish a policy calling for county election boards to contact mail-in voters whose ballots contain minor errors?

Suggested answer: No.

V.      May mail-in ballots delivered to the county election boards without the inner envelope (i.e. "naked ballots") be counted?

Suggested answer: Yes.

VI.     Does the Election Code's requirement that poll watchers be qualified electors from the county in which they serve burden the voting rights of political parties?

Suggested answer: No.

## STATEMENT OF THE CASE

A.   Mail-in Voting under the Election Code

On October 31, 2019, Governor Wolf signed Act 77 of 2019 (Act 77) into law, amending the Election Code to permit, for the first time, no excuse mail-in voting for all qualified electors. 25 P.S. § 3150.11. Voters have until October 27, 2020, to request a ballot in this year's General Election. 25 P.S. § 3150.12a(a). Currently, Act 77 sets the deadline for returning ballots to the county bord of elections office no later than 8:00 p.m. on Election Day. 25 P.S. § 3150.16.

Upon approval of their application to vote by mail, an elector receives a ballot, an envelope marked "Official Election Ballot" (hereafter the "internal envelope"), and a second larger envelope containing "the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector" (hereafter the "external envelope"). 25 P.S. § 3150.16; 25 P.S. § 3150.14. To vote by mail, electors mark the ballot with pencil or black or blue ink, enclose the ballot in the internal envelope, and then place that envelope in the larger external envelope for mailing. 25 P.S. § 3150.16(a). "The elector shall then fill out, date and sign the declaration printed on [the exterior] envelope." *Id*. Unlike some other ballot defects that render the ballot "void," *see*, *e.g*., 25 P.S. § 3146.8(g)(4)(ii), the Election Code does not invalidate ballots that are inadvertently not mailed in the internal envelope.

6

The ballot may be mailed or delivered "in person to the county board of election." *Id.* The Election Code does not prohibit the use of drop-boxes. In fact, the Election Code contemplates that a county election board may operate out of multiple locations, 25 P.S. § 2645(b), and that ballot boxes may be "received" at places other than the county board of elections office, "as ha[ve] been designated by the board." 25 P.S. § 3151. During the 2020 primary election, some counties collected mail-in ballots using secure drop-off collection boxes and mobile collection points, while others required all mail-in ballots to be sent to a central office. Pet. for Rev., ¶¶ 84-86.

When the county boards of elections meet to pre-canvass[2] or canvass the mail-in ballots, ballots returned by electors who died prior to the opening of the polls on election day are required to be rejected. 25 P.S. § 3146.8(d). The boards then examine the declaration on the exterior envelope and compare that information to the lists of names registered to vote by mail. 25 P.S. § 3146.8(g)(3). If the elector's

---

[2]     Pre-canvassing is the "inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots. The term does not include the recording or publishing of the votes reflected on the ballots." 25 P.S. § 2602(q.1). Pre-canvassing the mail-in ballots occurs before polls close on election day. "The county board of elections shall meet no earlier than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the meeting." 25 P.S. § 3146.8(g)(1.1). This ability to "pre-canvass" ballots was added to the Election Code through Act 12 of 2020, Act of Mar. 27, 2020, P.L. 41, No. 12.

right to vote is thus verified and the elector's voter declaration is sufficient, a mail-in ballot may be challenged only on the grounds that the voter is not qualified. 25 P.S. § 3146.8(g)(4); 25 P.S. § 3150.12b(a)(2). The county board opens the envelope of every unchallenged mail-in elector in such manner as not to destroy the declaration and checks the internal envelope for "any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference[.]" 25 P.S. § 3146.8(g)(4). An authorized representative of each candidate in an election and a representative from each political party are permitted to observe while the mail-in ballots are canvassed. 25 P.S. § 3146.8(g)(2).

The Election Code directs that any interior envelopes containing such marks are set aside and declared void. 25 P.S. § 3146.8(g)(4)(ii). Unmarked envelopes are then opened, and the ballots are removed and counted. 25 P.S. § 3146.8(g)(4)(iii). "[A]ll mail-in ballots which have not been challenged under [25 P.S. § 3150.12b(a)(2)] and that have been verified under [25 P.S. § 3146.8(g)(3)] shall be counted and included with the returns of the applicable election district. . . ." 25 P.S. § 3146.8(g)(4). "Following the close of the polls, the county board shall record and publish the votes reflected on the ballots." 25 P.S. § 3146.8(g)(4)(iv).

Any elector who votes through a mail-in ballot is obviously not eligible to vote again at a polling place on election day. 25 P.S. § 3150.16(b). And mail-in ballots for which "proof of identification has not been received or could not be

verified" will only be counted if "proof of identification is received and verified prior to the sixth calendar day following the election[.]" 25 P.S. § 3146.8(h)(2).

B.     Letter from the United States Postal Service Warning of Delays

On July 29, 2020, Thomas J. Marshall, General Counsel for the United States Postal Service, mailed a letter to Secretary Boockvar stating that, based on the Postal Service's expected delivery times for mail service at the time of the General Election, "there is a significant risk" that certain voters who timely request an absentee or mail-in ballot "will not have sufficient time to complete and mail the completed ballot[s] back to election officials in time for it to arrive by [Pennsylvania's] return deadline." USPS Letter, attached as Exhibit A.

The Postal Service's letter advises that, to ensure timely delivery of mail-in ballots, voters should mail their completed ballots "no later than Tuesday, October 27." *Id.* at 2. As noted above, however, voters have until October 27, 2020, to *request* a mail-in ballot. 25 P.S. §§ 3146.2a(a), 3150.12a(a). As a result, the Postal Service advises that "there is a significant risk that . . . ballots may be requested in a manner that is consistent with [Pennsylvania's] election rules and returned promptly, and yet not be returned in time to be counted." USPS Letter at 2.

C.     The Longstanding Poll Watchers Residency Requirement

The Election Code permits candidates and political parties to appoint "poll watchers" to monitor the integrity of the voting process. 25 P.S. § 2687. "Each

9

watcher so appointed must be a qualified registered elector of the county in which the election district for which the watcher was appointed is located." 25 P.S. § 2687(b). This requirement has remained unchanged since 1937. *See* Act of Jun. 3, 1937, P.L. 1333, No. 320, art. IV, § 417(b). The United States District Court for the Eastern District of Pennsylvania rejected a constitutional challenge to the residency requirement four years ago. *See Republican Party of Pennsylvania v. Cortes*, 218 F. Supp. 3d 396, 409 (E.D. Pa. 2016).

D.     *Michael Crossey, et al. v. Kathy Boockvar*, 108 MM 2020 (Pa.)

In April 2020, three Pennsylvania voters and the Pennsylvania Alliance for Retired Americans filed a civil action against the Secretary and the Director of the Bureau of Election Services and Notaries in Commonwealth Court. In their amended petition for declaratory and injunctive relief, these petitioners requested, among other things, an order extending the received-by deadline for mail-in ballots so that ballots mailed by election day, but received a few days later, will be counted. On June 17, 2020, the Commonwealth Court, lacking jurisdiction, transferred the case to this Court.

The Secretary originally filed preliminary objections arguing, *inter alia*, that petitioners' allegations of mail-delay were speculative and unripe. On August 13, 2020, based on the United States Postal Service's letter, the Secretary withdrew those two objections and requested from this Court an order that ballots mailed by

10

voters on or before 8:00 p.m. on election day be counted if they are otherwise valid and received by the county boards of election on or before the third day following the election—*i.e.* November 6, 2020. The Secretary further requested an order that ballots received within this period that lack a postmark or other proof of mailing, or for which the postmark or other proof of mailing is illegible, should enjoy a presumption that they were mailed by 8:00 p.m. on election day. This matter remains pending before this Court.

E.    *Trump for President, Inc. v. Kathy Boockvar*, 2:20-cv-966 (W.D. Pa.)

In late June 2020, the Trump Campaign, the Republican National Committee, several Republican candidates, and several voters (collectively the Republican National Committee) filed a civil action in the United States District Court for the Western District of Pennsylvania against Secretary Boockvar and all 67 county boards of election (collectively the County Boards), raising challenges to the mail-in ballot process and residency requirement for poll watchers. In their Amended Complaint, the Republican National Committee raised nine counts under the First and Fourteenth Amendments to the United States Constitution, and Article I, §§ 5, 28 and Article VII, § 1 of the Pennsylvania Constitution. As relevant, the Republican National Committee seek an order: (1) prohibiting the use of drop-off boxes and mobile collection sites by county election boards; (2) prohibiting the counting of ballots that lack the internal envelope; (3) declaring the poll watcher residency

11

requirement unconstitutional. An evidentiary hearing is scheduled for September 22-23, 2020.

F.   *Pennsylvania Democratic Party v. Kathy Boockvar*, 407 MD 2020 (Pa. Cmwlth. Ct.)

On July 10, 2020, the Pennsylvania Democratic Party and several Democratic candidates (collectively the Democratic Party) filed a petition for review in the Commonwealth Court against the Secretary and the County Boards raising their own challenges to the mail-in ballot process, and also seeking a declaration upholding the residency requirement for poll watchers.

In Count I of their complaint, the Democratic Party seeks a declaration that County Boards are not limited to collecting mail-in ballots at a single central location, but rather the Election Code permits use of secure ballot drop-off boxes. Pet. for Rev., at 46.

In Count II, the Democratic Party seeks an injunction "ordering Respondents to lift the deadline in the Election Code across the state to allow any ballot postmarked by 8:00 p.m. on Election night to be counted if it is received by the Boards by the deadline for ballots to be received by the [Uniformed and Overseas Citizens Absentee Voting Act] Deadline, at 5 pm on Tuesday, November 10." Pet. for Rev. at 50, ¶ 178. As stated above, this ballot deadline issue is already before this Court in *Crossey v. Kathy Boockvar*, 108 MM 2020 (Pa.), where the Secretary has asked this Court for an order permitting the counting of otherwise valid ballots

12

mailed by voters on or before 8:00 p.m. on election day and received by the county boards of election on or before November 6, 2020.

In Count III, the Democratic Party seeks an injunction forcing the County Boards to contact electors whose mail-in ballots contain facial defects and provide them with an opportunity to cure the defect before November 10. Pet. for Rev. at 51-52.

In Count IV, the Democratic Party seeks declaratory relief and an injunction ordering County Boards to "clothe and count naked ballots"—i.e. place ballots returned without the internal envelope into a proper envelope and count them. Pet. for Rev. at 53-54, ¶¶ 195-196.

Finally, in Count V, the Democratic Party seeks a declaration that the Election Code's poll watcher residency requirement does not violate the United States or Pennsylvania Constitutions. Pet. for Rev. at 55.

The Secretary has filed an Answer to the Petition for Declaratory and Injunctive Relief in the Commonwealth Court. Some other respondents, however, filed preliminary objections. The current scheduling order requires briefing on preliminary objections to be completed by August 27, but no oral argument date is set. The outcome of the preliminary objections will determine the scope of the litigation and will need to be resolved before any necessary discovery can begin or applications for summary relief filed. It is impossible that the Commonwealth Court

action will be concluded in enough time to allow for an appeal to this Court and application of this Court's decision in advance of the November 3 election. The exercise of extraordinary jurisdiction by this Court is the only means available to resolve these disputes without disrupting the election.

If all of the issues are not decided entirely on preliminary objections, the Commonwealth Court must then schedule discovery, hear dispositive motions, and hold a hearing—all of which must occur during a global pandemic—before rendering any final ruling on these numerous important issues.[3] Given the interplay between this and the federal action, and the current briefing schedule for just the responsive pleadings, the Commonwealth Court will not be able to resolve these issues in sufficient time to allow this Court to meaningfully review the Commonwealth Court's determination and render its own decision without completely disrupting the election process.

---

[3]    It is these uncertainties—whether discovery, dispositive motions, and a hearing were even necessary—that formed the basis for Secretary Boockvar's position that the Democratic Party's Application for an Expedited Discovery Schedule and Evidentiary Hearing filed in the Commonwealth Court was premature.  Indeed, in her answer the Secretary "endorse[d] a prompt resolution of legal disputes impacting the upcoming general election." Boockvar Ans. to App., at 1, 3.

## BASIS FOR EXTRAORDINARY JURISDICTION

This case presents constitutional questions of immediate and significant importance that directly affect the voting rights of millions of Pennsylvanians in a general election less than three months away. The exigencies of the moment require that this Court exercise its plenary jurisdiction as soon as possible. The general election is less than 80 days away and the County Boards will begin mailing out, and then receiving, mail-in ballots on September 14th—50 days before election day. *See* 25 P.S. § 3150.12a.

Several issues are in play.  One issue—extending the ballot receipt deadline—is already before this Court in *Crossey v. Kathy Boockvar*, 108 MM 2020 (Pa.), wherein the Secretary's view is that, given the United States Postal Service's expected delays, the ballot receipt deadline should be extended. The Democratic Party, however, thinks that extension should be greater. And the Republican National Committee thinks the deadline should not be extended at all. As to the issue of secured ballot drop-boxes, the Republican National Committee argues that the *use* of secured ballot drop-off boxes is unconstitutional, while the Democratic Party argues that the *failure to use* such boxes is unconstitutional. And the two major parties diverge on another issue as well, specifically whether naked ballots cannot be counted or must be counted. Further, they take diametric positions as to whether the poll watcher residency requirement is constitutional.

15

Because of this uncertainty, mail-in voters may hold off requesting and/or returning their ballots until the last minute, or decide against mail-in voting all together. And county election officials, uncertain about the constitutionality of a specific procedure, may not know how to train their staff or advise their staff and other election workers. These competing lawsuits create the very problems that the two major political parties bemoan. Multiple competing lawsuits seeking contrary directives only sow confusion during these last few months before election day.

This Court should immediately take up this case and, with *Crossey*, decide these critically important election issues. This Court may assume, at its discretion, plenary jurisdiction over a matter of immediate public importance that is pending before another court of the Commonwealth. *See* 42 Pa.C.S § 726. *See e.g., League of Women Voters v. Commonwealth*, 178 A.3d 737, 766–67 (Pa. 2018) (taking extraordinary jurisdiction over redistricting case). This Court in exercising its discretion regarding extraordinary jurisdiction considers the immediacy of the issue raised, *Bd. of Revisions of Taxes v. City of Phila.*, 4 A.3d 610, 620 (Pa. 2004); that is, whether there is some intervening need to expedite the proceeding and truncate the normal judicial process. *Commonwealth v. Morris*, 771 A.2d 721, 731 (Pa. 2001). If factual questions exist, this Court may, while still retaining jurisdiction, remand the matter to the Commonwealth Court to "conduct all necessary and appropriate discovery, pre-trial and trial proceedings so as to create an evidentiary

record on which Petitioners' claims may be decided." *League of Women Voters*, 178 A.3d at 766–67.

This Court's expeditious resolution of this case would also eliminate the risk of an erroneous construction of the Election Code in *Trump for President, Inc. v. Kathy Boockvar*, 2:20-cv-966 (W.D. Pa.), which, as noted *supra*, overlaps substantially with the Commonwealth Court case. Indeed, Secretary Boockvar has already filed a motion with the District Court in the federal action urging that court to abstain pursuant to *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). *See Trump for President, Inc. v. Kathy Boockvar*, District Ct. Docket Nos. 179-80. For the same reasons the District Court should abstain from construing Act 77 in the first instance, it is incumbent upon this Court to resolve these important state law questions as soon as possible.

Under our system of federalism, this Court is the ultimate expositor of Pennsylvania law, and no "federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *Johnson v. Fankell*, 520 U.S. 911, 916 (1997); *see also Wardius v. Oregon*, 412 U.S. 470, 477 (1973) ("It is, of course, true that the Oregon courts are the final arbiters of the State's own law"). *Pullman* abstention embodies these principles and applies where a federal constitutional issue might be mooted by a state court determination of state law. *Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800, 814 (1976).

Stated differently, *Pullman* abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'" *Bellotti v. Baird*, 428 U.S. 132, 147 (1976) (citation omitted).

The purpose of abstaining is two-fold: (1) to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) to avoid "needless friction with state policies." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (quoting *Pullman*). These interests are plainly implicated here.

Act 77 was passed in 2019 and has yet to be interpreted by this Court. In *Trump for President, Inc. v. Kathy Boockvar*, the Republican National Committee's entire theory of constitutional harm is premised upon how state officials will enforce the Election Code. Specifically, both this case and *Trump for President, Inc. v. Kathy Boockvar* present the following state law questions:

- Whether the Election Code permits county boards to establish ballot drop boxes or other collection locations for mail-in ballots;

- Whether the Election Code allows county boards to count "naked ballots" received in the outer mailing envelope but lacking the inner privacy envelope; and

- Whether the requirement in the Election Code that poll watchers serve only in counties in which they reside and are registered as electors violates the United States or Pennsylvania Constitutions given the

18

passage of Act 77.

*Compare Trump for President, Inc. v. Kathy Boockvar*, Docket No. 234, Amended Complaint, at ¶ 5, *with Pa. Democratic Party v. Boockvar*, Pet. for Rev., ¶¶ 165, 198, 207.

This Court has the final word on these novel state law questions, and a prompt determination of that final word is necessary to avoid the disruption that an erroneous District Court decision in *Trump for President, Inc. v. Kathy Boockvar* would have on the Commonwealth's prerogative – as expressed through Act 77 – in maximizing the franchise. *See, e.g.*, *NAACP Phila. Branch v. Ridge*, No. CIV. A. 00-2855, 2000 WL 1146619, at *5–6, *8 (E.D. Pa. Aug. 14, 2000) (abstaining from constitutional challenge to the Pennsylvania Voter Registration Act because it had "never been interpreted by the Pennsylvania courts" and "an erroneous construction of state law by the federal court would disrupt important state policies").

The Commonwealth Court's attempt to expedite the litigation schedule below is commendable and appreciated. But it is faced with an impossible task given the interplay between the state and federal actions, the compressed timeframe, and the absolute necessity for this Court to render the ultimate decision.

Despite the Commonwealth Court's best efforts, a final ruling on all of these issues simply cannot be issued quickly enough to give this Court sufficient time to receive and review briefing, and then conclusively resolve these issues before

Election Day. And even if somehow that were possible, the Commonwealth and 67 counties cannot significantly alter the election process days before the election without tremendous disruptions—increasing, rather than obviating, the potential harm to voters and the potential risk of confusion in administering the election.  Due to the public importance of the issues presented and the need for immediate resolution, Secretary Boockvar respectfully requests that this Court do the following:

(1) Assume Extraordinary jurisdiction over this matter;

(2) Resolve the legal issues concerning whether:

(a) county boards may establish drop-off locations for mail-in ballots;

(b) the deadline for mail-in ballots may be extended;

(c) county boards are required to contact voters whose ballots contain minor errors;

(d) naked ballots must be counted; and

(e) the longstanding poll watchers residency requirement is constitutional.

## ARGUMENTS FOR DECLARATORY RELIEF

The purpose of the Declaratory Judgments Act (DJA) "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and [it] is to be liberally construed and administered." 42 Pa.C.S. § 7541. Under the DJA, "any person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction ... arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533. The Secretary, County Election Boards, and voters need clarity on the pending issues in this case.

The two major political parties present diametrically opposing interpretations of Act 77, as well as constitutional challenges based on those interpretations. In addressing those challenges, we begin with basic principles of statutory interpretation.

The polestar of statutory construction is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a)). "The best indication of legislative intent is the language used in the statute." *Office of Admin. v. Pa. Labor Relations Bd.*, 916 A.2d 541, 547-48 (Pa. 2007). In examining the language of the statute, "[w]ords and phrases" must be construed "according to their common and approved usage," unless they "have acquired a peculiar and appropriate meaning," in which case they must "be construed according to such peculiar and appropriate

21

meaning." 1 Pa.C.S. § 1903; *see Bayview Loan Serv., LLC v. Lindsay*, 185 A.3d 307, 313 (Pa. 2018). If "the words of a statute are clear and unambiguous," the inquiry ends. *Dep't of Envt'l Prot. v. Cumberland Coal Res.*, 102 A.3d 962, 975 (Pa. 2014); *see also* 1 Pa.C.S. § 1921(b).

If, however, after employing these principles, there are at least two reasonable interpretations of the statutory term, then the term is ambiguous, and the Court will turn to the tools of statutory construction. *See Ramich v. WCAB (Schatz Electric, Inc.)*, 770 A.2d 318, 322 (2001) ("Only when the language of the statute is ambiguous does statutory construction become necessary"). This Court will consider, among other things, the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; legislative history; and administrative interpretations of the statute. *See* 1 Pa.C.S. § 1921(c). Finally, all things being equal, the law will be construed liberally in favor of the right to vote. *See Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004); *Petition of Cioppa*, 626 A.2d 146, 148 (Pa. 1993) (the "longstanding and overriding policy in this Commonwealth is to protect the elective franchise").

A.   **The County Boards may designate locations other than their physical addresses for the delivery of mail-in ballots.**

In Count I, the Democratic Party maintains that mail-in ballots may be returned to locations designated by county election boards other than the County Boards' central offices. Pet. for Rev. ¶¶ 84-86, 166 (identifying mail-in ballot drop-off locations designated by the boards of elections for Delaware, Montgomery, and Philadelphia counties in addition to their office locations). The Republican National Committee in the federal action maintains that only the County Boards' central offices are authorized delivery locations for receipt of mail-in ballots, and that it was unconstitutional for some County Boards to authorize additional drop-off locations. Am. Compl. ¶¶ 99, 211-12.

In Delaware County, mail-in electors were permitted to return their sealed ballots to any polling location throughout the county, which "locations were under observation by poll workers." Pet. for Rev. ¶ 84. In Montgomery County, the board of elections designated various county township buildings, firehouses, and parks as locations where mail-in electors could return their sealed ballots. *Id.* ¶ 85. The Montgomery County Board of Elections had County Security and video surveillance on site. *Id*. And in Philadelphia County, its Board of Elections partnered with a non-partisan organization, the Committee of Seventy, to execute its mail-in collection initiative, and designated drop-off locations at City Hall, schools, community centers, and other temporary stations throughout the City of Philadelphia. *Id.* at ¶ 86.

23

Only staff from the Board of Elections were permitted to receive ballots from mail-in electors. *Id.*

In short, during the primary election some county boards designated different locations, besides their central offices, as drop-off sites. The question of whether these various actions were authorized is a matter of statutory interpretation. As such, this Court's inquiry must begin with the language of the statute. *Scungio Borst & Assocs. v. 410 Shurs Lane Developers*, 146 A.3d 232, 238 (Pa. 2016).

Under Section 1306-D(a) of Act 77, 25 P.S. § 3150.16(a), once a mail-in elector has completed his ballot, he may mail it or deliver it in person to his county board of elections. If he chooses the former, the mail-in elector need only place it in a pre-printed mailing envelope containing the address of his county board of elections. 25 P.S. § 3150.16(a). If he chooses the latter, the mail-in elector must "deliver [the mail-in ballot] in person to *said county board of election*." 25 P.S. § 3150.16(a).

The General Assembly defined "county board" or "board" as meaning "the county board of elections of any county[.]" 25 P.S. § 2602 (definitions). The "county board of elections" is a government body with jurisdiction throughout its designated geographical boundaries. Thus, as used in Section 3150.16(a), "county board of election" refers to the municipal body, not a physical office or address. Its authority is not limited to a specific building or official office address. To the contrary, the

Election Code expressly contemplates that county boards of election will operate out of multiple locations. 25 P.S. § 2645(b) (requiring county commissioners to "provide[] such branch offices for the [county election] board in cities other than the county seat, as may be necessary"). There is simply nothing in either Section 2602 or 3150.16(a) which prohibits the County Boards from designating other locations besides their central offices for delivery of mail-in ballots. *See DiPietrae v. City of Phila.*, 666 A.2d 1132, 1134 (Pa. Cmwlth. 1995) (noting that Election Code does not expressly prohibit third-party agent delivery of absentee application).

Further, the Election Code contemplates that "ballot boxes and returns" may be received "in the office of the county elections board, or received in such other places as has been designated by the board." 25 P.S. § 3151. Accordingly, county boards of elections have authority under the Election Code to collect mail-in ballots at designated locations within each county. To deny this authority would contravene the plain language in the Election Code and otherwise inhibit the abilities of county election boards to respond to voting issues caused by the COVID-19 pandemic.

The Election Code is not ambiguous on this point. However, even if the Court were to find the statute ambiguous, it is reasonable to read the statute as authorizing county election boards to implement ballot drop-off sites. In resolving any ambiguity in a statute, this Court must ascertain the General Assembly's intent by "look[ing] to the general purposes of the statute, legislative history, and other sources." *Holland*

*v. Marcy*, 883 A.2d 449, 455 (Pa. 2005). Specifically, the Court may consider, among other things, the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; and the consequences of a particular interpretation. 1 Pa.C.S § 1921(c).

The occasion for Act 77, the mischief to be remedied, and the object to be attained were to increase the electorate's participation in the electoral process by making it easier and more convenient to vote; hence, all voters now have the option to mail-in their ballot.[4] By designating other locations besides the County Boards' central offices for drop-off of mail-in ballots, voting is made easier and more convenient, which is, again, consistent with the General Assembly's intent. Although consideration of this criteria alone is dispositive of any supposed ambiguity in 25 P.S. § 3150.16(a), even if both interpretations were equally reasonable, the law must be construed liberally in favor of the right to vote. *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d at 1231; *see Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004); *Petition of Cioppa*, 626 A.2d 146, 148 (Pa. 1993) (the "longstanding and overriding policy in this Commonwealth is to protect the elective franchise").

---

[4]     If there was any doubt, the statements of the prime sponsor of Act 77, two days before it was passed, confirm that the General Assembly wanted to "make it easier for people to vote" and encourage "more people [to] participate."  Pa. State Journal, 2019 Reg. Sess. No. 46, at 1000 (statement of Senator Boscola).

**B.      Given the mail delivery delays expected by the United States Postal Service, the Court should order the counting of all ballots postmarked by Election Day and received by November 6, 2020.**

In Count II, the Democratic Party seeks a mandatory permanent injunction extending the deadline for receipt of mail-in and absentee ballots. Under 25 P.S. § 3146.6(c) and 25 P.S. §3150.16(c), absentee and mail-in ballots must be received by 8:00 p.m. on Election Day in order to be counted. The Democratic Party would have the receipt date extended so long as the envelopes containing the ballots are post-marked by 8:00 p.m. of Election Day and received by the Boards by the deadline for ballots to be received under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 *et. seq.*, that is, one week after Election Day or November 10.  Pet. for Rev. ¶ 178.

Given the United States Postal Service's July 29, 2020 letter, a short extension of the deadline is necessary. The right to vote, after all, is enshrined in the Pennsylvania Constitution, which requires that all "elections conducted in this Commonwealth must be 'free and equal.'" *League of Women Voters v. Commonwealth*, 178 A.3d 737, 804 (Pa. 2018) (quoting Pa. Const. art. I, § 5). This clause, which "has no federal counterpart," mandates that "all aspects of the electoral process, to the greatest degree possible, be kept open and unrestricted to the voters of our Commonwealth, and, also, conducted in a manner which guarantees, to the greatest degree possible, a voter's right to equal participation in the electoral process

for the selection of his or her representatives in government." *Id*. at 802, 804. Consistent with this Constitutional guarantee, this Court should order that ballots mailed by voters on or before 8:00 p.m. on Election Day be counted if they are otherwise valid and received by the county boards of election on or before the third day following the election.

Such relief is narrowly tailored to address the injury at issue—namely, the threat of mail-delivery delays during an ongoing pandemic—and firmly anchored in judicial precedent. *See, e.g., In re General Election-1985*, 531 A.2d 836, 838–39 (Pa. Commw. Ct. 1987) (affirming two-week suspension of election in precinct affected by severe flooding and reasoning that adhering to the prescribed schedule under the prevailing circumstances, "where members of the electorate could be deprived of their opportunity to participate because of circumstances beyond their control, such as a natural disaster, would be inconsistent with the purpose of the election laws"); *accord Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1259 (N.D. Fla. 2016) (issuing injunction extending voter registration deadline due to effect of a hurricane); *Georgia Coalition for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344, 1345 (S.D. Ga. 2016) (same).

The Democratic Party seeks a longer extension, until November 10, 2020, but such a longer extension is not warranted. *First*, the standard three-day mailing period has long been recognized by our laws and procedural rules. *See e.g.,* Pa.R.A.P.

28

121(e) (three days are added to deadlines if service is by United States mail or commercial carrier); Fed. R. Civ. P. 6(d) (same); 73 P.S. § 502 (under the Contractor and Subcontractor Payment Act, "[m]ail, properly addressed, shall be deemed delivered three days from the day it was sent"). *Second*, a three-day extension of the deadline is feasible to administer while not disrupting other aspects of election administration. Receiving all ballots by the Friday after the election will not significantly delay the reporting of Pennsylvania's election results.

Accordingly, this Court should order that ballots mailed by voters by 8:00 p.m. on Election Day be counted if they are otherwise valid and received by the county boards of election by November 6, 2020. Ballots received within this period that lack a postmark or other proof of mailing, or for which the postmark or other proof of mailing is illegible, should enjoy a presumption that they were mailed by Election Day.

**C.**   **The Democratic Party provides no statutory or constitutional basis for requiring County Boards to contact voters whose ballots contain "minor errors" and afford them an opportunity to cure.**

In Count III, the Democratic Party asserts its entitlement to another mandatory permanent injunction, one that would require the County Boards to contact voters who made "minor errors" on their ballots "and provide each of them the opportunity to cure the facial defect" until a week after Election Day. Pet. for Rev. ¶ 187. The Democratic Party does not contest that every voter must comply with statutory

requirements in order for their vote to count. They maintain, rather, that the County Boards must contact voters who do not comply with the statutory requirements and afford those voters an opportunity to cure defects. Specifically, the Democratic Party seeks a declaratory judgment "requiring that when a Board has knowledge of an incomplete ballot and has the elector's contact information, the Board should notify the qualified elector using the most expeditious means feasible and provide the individual a chance to cure the facial defect until" a week after Election Day. Pet. for Rev. ¶ 118.

Further, the Democratic Party presents no explanation as to how the County Boards would go about notifying voters or how they would, in turn, correct those errors. Such logistical policy decisions are more properly addressed by the legislature, not the courts. *See Winston v. Moore*, 244 Pa. 447, 454, 91 A. 520, (Pa. 1914) (mistaken views as to the policy of the law, as in how elections should be regulated, "do not furnish grounds for declaring an election law invalid unless there is a plain violation of some constitutional requirement"); *see also Coalition for Good Governance v. Raffensperger*, 2020 WL 2509092, *4 (N.D. Ga., May 14, 2020) (rejecting plaintiffs' request for the court "to micromanage the State's election process").

More fundamentally, the Democratic Party offers no statutory or constitutional provision that imposes any such obligation on the County Boards to

contact voters when faced with a defect in their ballots. Instead, they cite only to the Free and Equal Elections Clause. But that Clause, however, cannot create statutory language the General Assembly chose not to provide. *See Winston v. Moore*, 244 Pa. 447, 454 (Pa. 1914) (noting that power to regulate elections belongs to the legislature and such laws should not be stricken unless they are in plain violation of fundamental law). So long as a voter follows the voting procedures, he or she "will have an equally effective power to select the representative of his or her choice." *League of Women Voters*, 178 A.3d at 809; *see Winston*, 244 Pa. at 457 (standards regulating the nominations and elections for judges and elective offices did not violate Free and Equal Elections Clause). Thus, while it may be good policy to provide a notice and opportunity to cure, the Democratic Party has not shown a violation of the Free and Equal Elections Clause and, in the absence of a clear legal right to relief, are not entitled to a mandatory injunction.

**D.     The Counting of "Naked Ballots" Is Permitted by the Election Code and Furthers the Right to Vote Under Article I, Section 5 (Free and Equal Elections Clause) of the Pennsylvania Constitution and the First and Fourteenth Amendments of the United States Constitution.**

In Count IV, the issue presented is whether failure to place a mail-in ballot in the internal envelope renders the ballot void. Because the internal envelope

procedure is merely directory, and this Court's longstanding precedents establish that ballots should not be disqualified based on failure to follow directory provisions, naked ballots should be counted.

Section 1306-D of Act 77 sets forth the procedure for mail-in voting. It provides, in pertinent part, that:

> *the mail-in elector shall*, in secret, proceed to mark the ballot . . . and then fold the ballot, *enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one*, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector.

25 P.S. § 3150.16(a) (emphasis added). Act 77 further details the procedure by which mail-in ballots are canvassed and directs that such ballots shall be set aside and not counted when they are cast by electors who died before election day, 25 P.S. § 3146.8(d), or by electors whose right to vote has not been verified or who are the subject of a challenge by a candidate or party representative, 25 P.S. § 3146.8(g)(4).

In addition, the Election Code provides that if the "Official Election Ballot" envelope has any "text, mark or symbol  which reveals the identity of the elector . . . . [the ballot] shall be set aside and declared void," 25 P.S. § 3146.8(g)(4)(ii).  All other mail-in ballots are counted.  Section 3146.8(g)(4) states that "[a]ll mail-in ballots which have not been challenged under [25 P.S. § 3150.12b(a)(2)] and that have been verified under [25 P.S. § 3146.8(g)(3)] shall be counted and included with

the returns . . . ." Nowhere does the Election Code provide that naked ballots or mail-in ballots without interior envelopes should not be counted.[5]

The mail-in ballot is verified by election officials comparing the voter's declaration with the official voting list. If the voter's right to vote and the voter declaration are deemed sufficient, a party or candidate may challenge a mail-in ballot only on the grounds that the voter is not qualified. *See* 25 P.S. § 3146.8(g)(4); 25 P.S. § 3150.12b(a)(2). Again, there is no provision in the Election Code which allows for the challenge of a ballot because an inner secrecy envelope was not used resulting in a "naked ballot." Rather, all mail-in ballots which have not been challenged pursuant to 25 P.S. § 3150b(a)(2) and have been verified pursuant to 25 P.S. § 3146.8(g)(3) shall be counted.

Well-established constitutional principles underlying the right to vote support a liberal interpretation of the Election Code so as to not disenfranchise Pennsylvania citizens. *See, e.g. Harper v. Virginia State Board of Elections*, 383 U.S. 663 (1966);

---

[5] A provisional ballot will be deemed void if the elector does not use the interior envelope. 25 P.S. § 3050(a)(5)(ii)(C). However, there is no such mandate for mail-in ballots. Moreover, the Election Code is explicit when regular ballots must be deemed "void." *See* 25 P.S. § 3063 ("What ballots shall be counted; manner of counting; defective ballots"); *see also* 25 P.S. § 3055(d); 25 P.S. § 3062(c). In other words, there is a clear pattern of the General Assembly directing when a particular defect renders a ballot "void." The Election Code's silence with respect to "naked ballots" must be construed in light of this pattern, and therefore naked ballots should not be considered "void."

*League of Women Voters,* 178 A.3d at 804. These principles are more enshrined in the Pennsylvania Constitution than in its federal counterpart. As this Court explained in *League of Women Voters*:

> all elections conducted in this Commonwealth must be "free and equal." In accordance with the plain and expansive sweep of the words "free and equal," we view them as indicative of the framers' intent that all aspects of the electoral process, to the greatest degree possible, be kept open and unrestricted to the voters of our Commonwealth, and, also, conducted in a manner which guarantees, to the greatest degree possible, a voter's right to equal participation in the electoral process for the selection of his or her representatives in government.

*Id.* at 804.

In *Appeal of Weiskerger*, 290 A.2d 108 (Pa. 1972), this Court held that the use of blue or black ink on absentee ballots as required by 25 P.S. § 3063 was not mandatory and ballots filled out with green or red ink should be counted. This Court concluded as follows: "In construing election laws while we must strictly enforce all provisions to prevent fraud o[ur] overriding concern at all times must be to be flexible in order to favor the right to vote. Our goal must be to enfranchise and not to disenfranchise." *Appeal of Weiskerger*, 290 A.2d 108, 109 (Pa. 1972) (citing *James Appeal*, 105 A.2d 64 (Pa.1954)).

The pivotal factor in the Court's decision in *Appeal of Weiskerger* was that allowing the ballots to be counted would not result in ballots being identifiable or otherwise permit fraud. *Appeal of Weiskerger*, 290 A.2d at 421. Similarly, in this

case, the counting of "naked ballots" does not otherwise permit fraud. The ballot is still sealed in an envelope which is either mailed or hand delivered by the elector. The sealed ballot is still certified by the elector. With the possible exception of the post office, third parties are not involved in the process. Moreover, counting these votes furthers the government's interest in protecting the right to vote.

Similarly, in *Shambach v. Bickhart*, 845 A.3d 793 (Pa. 2004), this Court held that write-in votes should be counted even though the candidate's name was already on the ballot. The Court noted "that although [the Election Code] does not specifically authorize a voter to cast a write-in vote for a candidate whose name is already printed on the ballot, it also does not declare that such a write-in vote must be voided and may not be counted." *Id.* at 800. The Court concluded that under the circumstances there was no evidence that the electors had acted fraudulently in casting their votes and counting their votes furthered the goal of protecting the right to vote. *Id.* at 803.

The present case is distinguishable from this Court's decision in *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election. Appeal of John Pierce, et al.*, 843 A.2d 1223 (Pa. 2004) ("*Appeal of John Pierce*"). There, this Court held that the Election Code's "in person" delivery requirement was mandatory and that absentee ballots delivered by third parties on behalf of voters should not be counted. In doing

so, however, this Court recognized that the statutory provision in *Weiskserger Appeal* was materially different. The Court concluded as follows:

> Unlike *Weiskerger Appeal*, there is an obvious and salutary purpose—grounded in hard experience—behind the limitation upon the delivery of absentee ballots. The provision at issue limits the number of third persons who unnecessarily come in contact with the ballot and thus provides some safeguard that the ballot was filled out by the actual voter, and not by a perpetrator of fraud, and that once the ballot has been marked by the actual voter in secret, no other person has the opportunity to tamper with it, or even to destroy it.

*Appeal of John Pierce*, 843 A.2d 1232.

In the present case, the Court should follow the sound reasoning in *Weiskberger Appeal* and *Shambach,* and find that "naked ballots" are properly counted under the Election Code. The failure to include the interior envelope does not compromise the ballot and does not evidence fraud or in any way undermine the voting process. For these reasons, no voter should be disenfranchised for failing to place their ballot in the interior envelope before delivering it

**E.  The Election Code's requirement that poll watchers be qualified electors from the county in which they serve does not burden the voting rights of political parties.**

In Count V, the issue presented concerns the residency requirement for poll watchers. To address that issue, a broader perspective is necessary.

The United States Supreme Court has recognized the important interest of states in regulating elections. As it stated in *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983):

> We have recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974) .

*Id.* Pennsylvania's Election Code provides comprehensive regulations for voting and elections in the Commonwealth. Pennsylvania's "regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions" on elections. *Id.; see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder.").

Because of the essential function that regulations play in the election process, strict scrutiny, the standard which normally applies to claims implicating the First Amendment, is not applied to laws which regulate voting, unless the regulatory interests are discriminatory and/or overly burdensome. *Timmons,* 520 U.S. at 358; *Anderson*, 460 U.S. at 788; *Burdick v. Takushi*, 504 U.S. 428 (1992). The question of constitutionality of election provisions requires weighing the "character and magnitude of the burden the State's rule imposes on [constitutional] rights against the interests the State contends justify that burden and consider the extent to which

the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (internal quotes omitted). Where no severe burden exists, reasonable nondiscriminatory election restrictions are permissible so long as the state can articulate "important regulatory interests." *Id*. (internal quotations omitted).

The Election Code provides that each candidate may appoint two poll watchers for each election district in which he or she is on the ballot. 25 P.S. § 2687(a). Likewise, it provides that each political party may appoint three poll watchers for each election district. *Id.* The Election Code further provides that a poll watcher must be a qualified registered elector from the county in which the prospective poll watcher wishes to serve. 25 P.S. § 2587(b).

Although this Court has not previously addressed the question raised here, the District Court for the Eastern District of Pennsylvania previously rejected a constitutional challenge to the poll watcher residency requirement. In doing so, the District Court found:

> There is a rational basis for Section 2687(b)'s requirement that poll watchers be qualified electors in the county in which they work. . . . In short, Pennsylvania opted to design a county-by-county system of elections; in doing so it ensured as much coherency in this patchwork system as possible. To that end it ensured that participants in the election—voters and watchers alike—were qualified electors in the relevant county. The legislature's decision to allow county election officials to credential only poll watchers from their own county is rationally related to the state's interest in maintaining its county-run election system.

*Republican Party of Pennsylvania v. Cortés*, 218 F. Supp. 3d 396, 409 (E.D. Pa. 2016) (citations omitted).

Being a poll watcher does not directly implicate the right to vote or burden rights under the First Amendment. *See id.* at 413-14 (citing *Cotz v. Mastroeni*, 476 F.Supp.2d 332, 364 (S.D.N.Y. 2007); *Dailey v. Hands*, No. 14–00423, 2015 WL 1293188, at *5 (S.D. Ala. Mar. 23, 2015); *Turner v. Cooper*, 583 F.Supp. 1160, 1162 (N.D. Ill. 2011). Poll Watchers are election observers performing limited duties on behalf of the state. They are not permitted to engage in private, political advocacy while on duty at a polling place and would not have an independent right to be present at the polling place except for their position.

The county residency requirement to be a poll watcher does not constitute a substantial burden on political parties or voters because it does not directly affect the ability of individuals to vote or engage in other activities protected by the First Amendment, and the Free and Equal Election Clause. Accordingly, Section 2687 does not violate either the Federal or Pennsylvania Constitutions.

## CONCLUSION

This Court should immediately take jurisdiction of this matter. This Court should then issue an order declaring that ballots mailed by voters by 8:00 p.m. on Election Day be counted if they are otherwise valid and received by the county boards of election by November 6, 2020. This Court should further declare that: (1) county boards may establish drop-off locations for mail-in ballots; (2) Petitions have failed to establish a legal right to an injunction requiring county boards to contact voters whose ballots contain minor errors; (3) "naked ballots" must be counted; and (4) the poll watcher residency requirement is constitutional.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   */s/ J. Bart DeLone*
      J. BART DeLONE
      *Chief Deputy Attorney General*
      Chief, Appellate Litigation Section
      Pa. Bar # 42540

      HOWARD G. HOPKIRK
      SEAN A. KIRKPATRICK
      *Senior Deputy Attorneys General*

Office of Attorney General            MICHAEL J. SCARINCI
15th Floor, Strawberry Square         DANIEL B. MULLEN
Harrisburg, PA 17120                  *Deputy Attorneys General*
Phone: (717) 712-3818
FAX:  (717) 772-4526
DATE: August 16, 2020

## CERTIFICATE OF COUNSEL

I hereby certify that this brief contains 9,263 words within the meaning of Pa. R. App. Proc. 2135. In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

I further certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

*/s/ J. Bart DeLone*
_____

J. BART DeLONE
Chief Deputy Attorney General
Chief, Appellate Litigation Section

# EXHIBIT A

THOMAS J. MARSHALL
GENERAL COUNSEL
AND EXECUTIVE VICE PRESIDENT


**UNITED STATES**
**POSTAL SERVICE**

July 29, 2020

Honorable Kathy Boockvar
Secretary of the Commonwealth of Pennsylvania
302 North Capitol Building
Harrisburg, PA 17120-0001

Dear Secretary Boockvar:

Re:  Deadlines for Mailing Ballots

With the 2020 General Election rapidly approaching, this letter follows up on my letter dated May 29, 2020, which I sent to election officials throughout the country.  That letter highlighted some key aspects of the Postal Service's delivery processes.  The purpose of this letter is to focus specifically on the deadlines for requesting and casting ballots by mail.  In particular, we wanted to note that, under our reading of Pennsylvania's election laws, certain deadlines for requesting and casting mail-in ballots are incongruous with the Postal Service's delivery standards.  This mismatch creates a risk that ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them.

As I stated in my May 29 letter, the two main classes of mail that are used for ballots are First-Class Mail and USPS Marketing Mail, the latter of which includes the Nonprofit postage rate.  Voters must use First-Class Mail (or an expedited level of service) to mail their ballots and ballot requests, while state or local election officials may generally use either First-Class Mail or Marketing Mail to mail blank ballots to voters.  While the specific transit times for either class of mail cannot be guaranteed, and depend on factors such as a given mailpiece's place of origin and destination, most domestic First-Class Mail is delivered 2-5 days after it is received by the Postal Service, and most domestic Marketing Mail is delivered 3-10 days after it is received.

To account for these delivery standards and to allow for contingencies (e.g., weather issues or unforeseen events), the Postal Service strongly recommends adhering to the following timeframe when using the mail to transmit ballots to domestic voters:

- **Ballot requests:**  Where voters will both receive and send a ballot by mail, voters should submit their ballot request early enough so that it is received by their election officials at least 15 days before Election Day at a minimum, and preferably long before that time.

- **Mailing blank ballots to voters:**  In responding to a ballot request, election officials should consider that the ballot needs to be in the hands of the voter so that he or she has adequate time to complete it and put it back in the mail stream so that it can be processed and delivered by the applicable deadline.  Accordingly, the Postal Service recommends that election officials use First-Class Mail to transmit blank ballots and allow 1 week for delivery to voters.  Using Marketing Mail will result in slower delivery times and will increase the risk that voters will not receive their ballots in time to return them by mail.

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1100
PHONE: 202-268-5555
FAX: 202-268-6981
THOMAS.J.MARSHALL@USPS.GOV
www.usps.com

- **Mailing completed ballots to election officials:** To allow enough time for ballots to be returned to election officials, domestic voters should generally mail their completed ballots at least one week before the state's due date. So, if state law requires ballots to be returned by Election Day, voters should mail their ballots no later than Tuesday, October 27.

Under our reading of your state's election laws, as in effect on July 27, 2020, certain state-law requirements and deadlines appear to be incompatible with the Postal Service's delivery standards and the recommended timeframe noted above. As a result, to the extent that the mail is used to transmit ballots to and from voters, there is a significant risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned promptly, and yet not be returned in time to be counted.

Specifically, it appears that a completed ballot must be received by Election Day to be counted. If that understanding is correct, we accordingly recommend, as noted above, that voters who choose to mail their ballots do so no later than Tuesday, October 27. However, it further appears that state law generally permits voters to request a ballot as late as 7 days before the November general election. If a voter submits a request at or near that deadline, and the ballot is transmitted to the voter by mail, there is a significant risk that the voter will not have sufficient time to complete and mail the completed ballot back to election officials in time for it to arrive by the state's return deadline. That risk is exacerbated by the fact that the law does not appear to require election officials to transmit a ballot until 48 hours after receiving a ballot application.

To be clear, the Postal Service is not purporting to definitively interpret the requirements of your state's election laws, and also is not recommending that such laws be changed to accommodate the Postal Service's delivery standards. By the same token, however, the Postal Service cannot adjust its delivery standards to accommodate the requirements of state election law. For this reason, the Postal Service asks that election officials keep the Postal Service's delivery standards and recommendations in mind when making decisions as to the appropriate means used to send a piece of Election Mail to voters, and when informing voters how to successfully participate in an election where they choose to use the mail. It is particularly important that voters be made aware of the transit times for mail (including mail-in ballots) so that they can make informed decisions about whether and when to (1) request a mail-in ballot, and (2) mail a completed ballot back to election officials.

We remain committed to sustaining the mail as a secure, efficient, and effective means to allow citizens to participate in the electoral process when election officials determine to utilize the mail as a part of their election system. Ensuring that you have an understanding of our operational capabilities and recommended timelines, and can educate voters accordingly, is important to achieving a successful election season. Please reach out to your assigned election mail coordinator to discuss the logistics of your mailings and the services that are available as well as any questions you may have. A list of election mail coordinators may be found on our website at: https://about.usps.com/election-mail/politicalelection-mail-coordinators.pdf.

We hope the information contained in this letter is helpful, and please let me know if you have any questions or concerns.

Sincerely,

Thomas J. Marshall

# CERTIFICATE OF SERVICE

I, J. Bart DeLone, Chief Deputy Attorney General, do hereby certify that I have served the foregoing application, via the following:

The following parties have been served electronically via PACFile:

**GREENBERG TRAURIG**
Kevin Michael Greenberg
George Jeffrey Farrell
Anthony Michael Pratt
Three Logan Square
Philadelphia, PA 19103
*Counsel for Petitioners*

**DENTONS COHEN & GRIGSBY, PC**
Clifford B. Levine
Michael Alex Lacey
625 Liberty Ave
Pittsburgh, PA 15222-3152
*Counsel for Petitioners*

**HANGLEY, ARONCHICK, SEGAL, PUDLIN & SCHILLER**
Mark Alan Aronchick
Michele D. Hangley
John Brent Hill
Robert Andrew Wiygul
1 Logan Sq Fl 27
Philadelphia, PA 19103-6995
*Counsel for Respondents*
Bucks County Board of Elections,
Chester County Board of Elections,
Montgomery County Board of
Elections, and Philadelphia County
Board of Elections

**BABST CALLAND CLEMENTS & ZOMNIR, PC**
Elizabeth A. Dupuis
Steven B. Silverman
330 Innovation Blvd Ste 302
State College, PA 16803

Sean Robert Keegan
Krista Ann M. Staley
603 Stanwix St Fl 6
Pittsburgh, PA 15222
*Counsel for Respondents*
Armstrong County Board of Elections,
Bedford County Board of Elections,
Blair County Board of Elections,
Centre County Board of Elections,
Columbia County Board of Elections,
Dauphin County Board of Elections,
Fayette County Board of Elections,
Huntingdon County Board of Elections,
Indiana County Board of Elections,

43

Lackawanna County Board of Elections,
Lawrence County Board of Elections,
Lebanon County Board of Elections,
Mercer County Board of Elections,
Montour County Board of Elections,
Northumberland County Board of
Elections, Venango County Board of
Elections, York County Board of
Elections

**JOYCE, CARMODY, & MORAN, P.C.**
Regina Maria Blewitt
Lawrence John Moran, Jr.
9 N Main St Ste 4
Pittston, PA 18640
*Counsel for Respondent*
Luzerne County Board of Elections

**NORTHAMPTON COUNTY SOLICITOR's OFFICE**
Timothy Patrick Brennan
Richard Eugene Santee
Brian J. Taylor
669 Washington Street
Easton, PA 18042
*Counsel for Respondent*
Northampton County Board of Elections

**BUTLER COUNTY SOLICITOR'S OFFICE**
White, H. William, III
124 West Diamond Street
PO Box 1208
Butler, PA 16003-1208
*Counsel for Respondent*
Butler County Board of Elections

**LEHIGH COUNTY DEPARTMENT OF LAW**
Thomas M. Caffrey
PO Box A
Coplay, PA 18037-0200
*Counsel for Respondent*
Lehigh County Board of Elections

**COPLOFF, RYAN, WELCH & HOUSER**
Larry E. Coploff
136 E Water St Frnt
P.O. Box 389
Lock Haven, PA 17745-0389
*Counsel for Respondent*
Clinton County Board of Elections

**BMZ LAW PC**
Snook, Stephen S.
20 S Wayne St
Lewistown, PA 17044-2145
*Counsel for Respondent*
Mifflin County Board of Elections

44

**ZWICK AND ZWICKLLP**
Gregory Dale Sobol
Carl John Zwick
275 Main St
Brookville, PA 15825
*Counsel for Respondent*
Jefferson County Board of Elections

**LAVERY LAW**
Stephen Bradley Edwards
Frank J. Lavery, Jr.
Andrew W. Norfleet
225 Market St., Ste 304
Harrisburg, PA 17108
*Counsel for Respondent*
Franklin County Board of Elections

**CAFARDI FERGUSON WYRICK**
Christopher P. Gabriel
2605 Nicholson Rd., Ste 2201
Sewickley, PA 15143
*Counsel for Respondent*
Clarion County Board of Elections

**NEWMAN WILLIAMS, P.C.**
Gerard Joseph Geiger
712 Monroe St
P.O. Box 511
Stroudsburg, PA 18360
*Counsel for Respondents*
Carbon County Board of Elections
Monroe County Board of Elections
Pike County Board of Elections
Snyder County Board of Elections
Wayne County Board of Elections

**GINN & VICKERY PC**
Raymond Edward, Ginn Jr.
Tioga County Solicitor
Po Box 34
Wellsboro, PA 16901-0034
*Counsel for Respondent*
Tioga County Board of Elections

Robert Eugene Grimm
PO Box 430
Smithfield, PA 15478-0430
*Counsel for Respondent*
Greene County Board of Elections

**SWARTZ CAMPBELL LLC**
Robert J. Grimm
Ryan Michael Joyce
436 7th St., 7th 8th Fls
Pittsburgh, PA 15219-2710
*Counsel for Respondent*
Washington County Board of Elections

**BALLARD SPAHR LLP**
Terence Martin Grugan
Edward David Rogers
Elizabeth Victoria Wingfield
1735 Market St., Fl 51
Philadelphia, PA 19103-7599
*Counsel for Respondent*
Delaware County Board of Elections

45

**REGOLI LAW OFFICE**
David Allen Regoli
333 Freeport St., Ste 201
New Kensington, PA 15068
*Counsel for Respondent*
Westmoreland County Board of
Elections

**DEASY MAHONEY &**
**VALENTINI LTD**
Christine D. Steere
103 Chesley Dr Ste 101
Media, PA 19063
*Counsel for Respondent*
Berks County Board of Elections

**ALLEGHENY COUNTY LAW**
**DEPARTMENT**
George M. Janocsko
Allan Joseph Opsitnick
Andrew Francis Szefi
564 Forbes Ave Ste 1301
Pittsburgh, PA 15219-2910
*Counsel for Respondent*
Allegheny County Board of
Elections

Sean Alexander Mott
Molly Ruth Mudd
Adams County Courthouse
117 Baltimore St 2nd Floor
Gettysburg, PA 17325-2367
*Counsel for Respondent*
Adams County Board of Elections

**LANCASTER COUNTY**
**SOLICITOR'S OFFICE**
Christina Lee Hausner
County Of Lancaster
150 N Queen St SE 714
Lancaster, PA 17603
*Counsel for Respondent*
Lancaster County Board of Elections

**TALARICO & ASSOCIATES**
Thomas S. Talarico
230 W 6TH St., Ste 202
Erie, PA 16507-1077
*Counsel for Respondent*
Erie County Board of Elections

Nathan W. Karn
401 Allegheny St
P.O. Box 415
Hollidaysburg, PA 16648-2011
*Counsel for Respondent*
Blair County Board of Elections

**PORTER WRIGHT MORRIS &**
**ARTHUR, LLP**
Kathleen A. Gallagher
6 PPG Pl Third Floor
Pittsburgh, PA 15222
*Counsel for Possible Interventors*
Donald J. Trump for President, Inc.
Republican Party of Pennsylvania
Republican National Committee

46

**COMMONWEALTH COURT OF PENNSYLVANIA**
Pennsylvania Judicial Center
601 Commonwealth Ave.
Suite 2100
P.O. Box 69185
Harrisburg, PA 17106
CommCourtFiling@pacourts.us

The following parties have been served via U.S. Mail:

**GLEASON BARBIN & MARKOVITZ, LLP**
William Gleason Barbin
Cambria County Commissioners
200 South Center
Ebensburg, PA 15931
*Counsel for Respondent*
Cambria County Board of Elections

**ROSENN, JENKINS, & GREENWALD, LLP**
Robert Lawrence Gawlas
Robert D. Schaub
15 S Franklin St
Wilkes-Barre, PA 18711
*Counsel for Respondent*
Susquehanna County Board of Elections

**GLASSMIRE & SHAFFER LAW OFFICE, P.C.**
Thomas R. Shaffer
5 E Third St
Coudersport, PA 16915-1631
*Counsel for Respondent*
Potter County Board of Elections

**MCNERNEY, PAGE, VANDERLIN & HALL**
Allen P. Page, IV
433 Market St.
Williamsport, PA 17701
*Counsel for Respondent*
Union County Board of Elections

**BEAVER COUNTY BOARD OF ELECTIONS**
Bureau of Elections
Beaver County Courthouse
810 Third Street
Beaver, PA 15009

**BRADFORD COUNTY BOARD OF ELECTIONS**
Bradford County Courthouse Annex
6 Court Street, Suite 2
Towanda, PA 18848

**CAMERON COUNTY BOARD OF ELECTIONS**
Cameron County Courthouse
20 E. 5th St.
Emporium, PA  15834

**CLEARFIELD COUNTY BOARD OF ELECTIONS**
212 East Locust St.
Clearfield, PA 16830

**CRAWFORD COUNTY BOARD OF ELECTIONS**
Courthouse
903 Diamond Park
Meadville PA 16335

**CUMBERLAND COUNTY BOARD OF ELECTIONS**
1601 Ritner Hwy, Suite 201
Carlisle, PA 17013

**ELK COUNTY BOARD OF ELECTIONS**
Elk County Courthouse
250 Main Street
P.O. Box 448
Ridgway, PA 15853

**FOREST COUNTY BOARD OF ELECTIONS**
526 Elm Street, Box 3
Tionesta, PA 16353

**FULTON COUNTY BOARD OF ELECTIONS**
116 West Market Street, Suite 205
McConnellsburg, PA 17233

**JUNIATA COUNTY BOARD OF ELECTIONS**
P.O. Box 68,
Mifflintown, PA 17059

**LYCOMING COUNTY BOARD OF ELECTIONS**
48 West Third Street,
Williamsport, PA 17701

**MCKEAN COUNTY BOARD OF ELECTIONS**
500 W Main St
Smethport, PA 16749

**PERRY COUNTY BOARD OF ELECTIONS**
P.O. Box# 37
New Bloomfield, PA  17068

**SCHUYLKILL COUNTY BOARD OF ELECTIONS**
420 North Centre Street
Pottsville, PA 17901

48

**SOMERSET COUNTY BOARD OF ELECTIONS**
300 North Center Avenue
Suite 340
Somerset, PA 15501

**SULLIVAN COUNTY BOARD OF ELECTIONS**
245 Muncy Street
P.O. Box 157
Laporte, PA 18626

**WARREN COUNTY BOARD OF ELECTIONS**
204 4th Avenue,
Warren, PA 16365

**WYOMING COUNTY BOARD OF ELECTIONS**
1 Courthouse Square
Tunkhannock, PA 18657


*/s/ J. Bart DeLone*
_____

J. BART DeLONE
Chief Deputy Attorney General


DATE: August 16, 2020