**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) ) | *Electronically Filed* |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | No.: 2-20-CV-966 |
| KATHY BOOCKVAR; *et al.*, | ) ) ) | Judge J. Nicholas Ranjan |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO MODIFY STAY ORDER (ECF # 410)
AND MOTION FOR LIMITED PRELIMINARY INJUNCTIVE RELIEF**

Recognizing that this is the only currently pending case in Pennsylvania in which they are all parties, and in light of the imminent onset of voting in Pennsylvania and recent significant developments involving both guidance from Defendant Kathy Boockvar, Secretary of the Commonwealth, and actions pending in the Commonwealth's courts, Plaintiffs ask this Court to modify the stay entered by this Court on August 23, 2020, by:

(a)     Granting Plaintiffs limited, preliminary injunctive relief ordering Defendants to segregate and maintain intact all cast absentee and mail-in ballots that (i) are returned or collected through drop-boxes, (ii) lack an inner secrecy envelope or contain marks, text, or symbols thereon, or (iii) constitute non-disabled voters' absentee and mail-in ballots that have been delivered in-person by someone other than the non-disabled voters;

(b)     Granting Plaintiffs limited, preliminary injunctive relief ordering Defendants to refrain from pre-canvassing or canvassing all cast absentee and mail-in ballots that (i) are returned or collected through drop-boxes, (ii) lack an inner secrecy envelope or contain marks, text, or symbols thereon, or (iii) constitute non-disabled voters' absentee and mail-in ballots that have been delivered in-person by someone other than the non-disabled voters until further order of this Court;

(c)     Granting Plaintiffs limited, preliminary injunctive relief ordering Defendants to retain and make available for periodic review all digital images and video to the extent any video security surveillance system or internal camera is available and used to monitor drop-boxes or other sites and locations, including a county election office, used for the return and collection of cast absentee and mail-in ballots; and

(d)     Modifying the stay entered on August 23, 2020, to permit it to be lifted on September 14, 2020, rather than October 5, 2020, with respect to all settled state-law issues [1]

Without this relief, Defendants could begin irreversibly commingling potentially illegally cast ballots with other ballots from mid-to-late September 2020.  Therefore, to prevent irreparable, constitutional harm to them and their fundamental rights, including without limitation their right to free, fair, and honest elections, and to preserve the ability to obtain an accurate count of the validly cast ballots in the November 3, 3030 General Election if this Court or any other court determines that any such ballots have been illegally cast, Plaintiffs ask this Court to modify the stay in its August 23, 2020 Order (ECF # 410) to provide for limited, preliminary injunctive relief and to modify the stay lifting date from October 5, 2020 to September 14, 2020.

## I.      CASE STATEMENT.

### A.      Plaintiffs And Their Claims.

1.      Plaintiffs[2] commenced this action on June 29, 2020.  *See* Verified Complaint (ECF # 4).

2.      In their complaint, which was amended on July 27, 2020, Plaintiffs allege various federal and state constitutional violations stemming from Pennsylvania's recent implementation

---

[1] In their Motion for a Speedy Declaratory Judgment Hearing and Expedited Discovery (ECF #6), Plaintiffs reserved the right to seek appropriate injunctive relief at such time as the November 3, 2020, General Election approached and irreparable harm existed.  *See* Motion (ECF #6), ¶ 9, n. 3. As this Motion to Modify and/or Lift the Stay Order explains, that time has now arisen given the two sets of official guidance that were issued to the County Election Boards and provided to Plaintiffs via a supplemental discovery production on Friday, August 21, 2020, the pending delivering or mailing of ballots upon the General Election ballot's certification and availability, and the announced plans by some counties to install by October 1, 2020, drop-boxes for the return and collection of absentee and mail-in ballots.  *See infra.*, pp. 4-18.

[2] Plaintiffs are the principal committee for the reelection campaign of President Donald J. Trump, the Republican National Committee, four members of the United States House of Representatives, representing the 13th, 14th, 15th, and 16th Congressional Districts of Pennsylvania and seeking reelection to another term in office, and two qualified registered electors residing in Pennsylvania who would like to poll watch in counties outside their residential counties.  *See* Verified Amended Complaint (ECF # 234), ¶¶ 8-15.

of its "no-excuse" mail-in voting scheme and three sets of formal guidance by Secretary Boockvar and the Pennsylvania Department of State, which implementation and guidance Plaintiffs assert led, and will continue to lead, to vote dilution (*i.e.,* the casting of unlawful ballots which, when counted, dilute the votes of lawfully cast ballots). *Id.* at ¶¶ 103-164, 193-205, 237-248, & 253-263. Further, Plaintiffs allege that the inconsistent implementation of the Election Code and Secretary Boockvar's guidance across Pennsylvania's 67 counties violate Plaintiffs' federal and state equal protection and other constitutional rights. *Id.* at ¶¶ 206-222 & 237-267. Additionally, Plaintiffs allege that due to several county election boards' intended use of drop-boxes in the upcoming November 3, 2020, General Election for the return and collection of absentee and mail-in ballots – which represented close to 40% of the cast ballots in the 2020 Primary Election – the Election Code's restrictions on poll watcher residency and restrictions limiting poll watchers to watch only where in-person voting occurs are unconstitutional. *Id.* at ¶¶ 165-189 & 223-236.

3.      In their complaint, Plaintiffs seek both declaratory and injunctive relief from the policies adopted by Secretary Boockvar and implemented by the Defendant County Election Boards which are contrary to the Pennsylvania Election Code and violate their federal and state constitutional rights. *Id.* at pp. 71-73.

**B.      Some Defendants' Rule 12 Motions And This Court's August 23, 2020 Order.**

4.      Defendants are Secretary Boockvar and all 67 of Pennsylvania's county election boards. *See* Verified Amended Complaint (ECF # 234), ¶¶ 16-17.

5.      Secretary Boockvar accepted service of the summons and complaint on July 9, 2020. *See* Acceptances of Service (ECF ## 30 & 33). After Plaintiffs incurred substantial expense and time, the remaining defendants were served between July 6, 2020, and July 17, 2020. *See* Returns of Service (ECF ## 119, 133, 140, 141, 164, 178, 223, 236, & 243).

- 3 -

6.      After this Court granted intervention to several non-parties, the Intervenors, Secretary Boockvar, and approximately 44 of the 67 County Election Boards moved to dismiss Plaintiffs' claims.  See ECF ##246; 260; 261; 263; 272; 274; 278; 280; 282; 283; 287; 288; 289; 294; 296; 298; & 321.  As part of their motions, the Moving Defendants argued that this Court should abstain from rendering a decision on the merits under the doctrine set forth in *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).  *Id.*

7.      On August 23, 2020, this Court entered an Order granting the Moving Defendants' Rule 12 Motions but only to the extent that it would abstain from rendering a final decision under *Pullman*.  *See* 08/23/2020 Order (ECF #410), p. 1.

8.      Further, as part of its August 23, 2020 Order, this Court stayed this case "without prejudice" to any party moving to lift the stay as follows:

> … The Court's entry of a stay is without prejudice to any party moving to lift the stay after either: (i) resolution of the unsettled state-law issues identified in the Court's Opinion by the Pennsylvania Commonwealth Court or the Pennsylvania Supreme Court; or (ii) a prolonged delay by the state courts in resolving the unsettled state-law issues (*i.e.*, if no decision has been entered by the state courts by October 5, 2020).   Under the latter scenario, any motion to lift the stay shall be limited to the claims that are not based on unsettled issues of state law. That is, the movant could only ask to proceed on the following claims from the Amended Complaint [ECF 234]: (i) Plaintiffs' third-party ballot-delivery claims that are set forth as parts of Counts I, II and III; (ii) Plaintiffs' facial challenge to Pennsylvania's poll-watching residency restriction set forth in Counts IV and V; and (iii) Plaintiffs' claims for improper provisional voting as set forth in Counts VIII and IX.

*See* 08/23/2020 Order (ECF #410), p. 2.

**C.      The Pennsylvania Department Of State's August 19, 2020 Guidance And Other Pertinent Facts Disclosed Through Discovery.**

9.      Prior to the entry of this Court's August 23, 2020 Order, the parties were engaged in fact discovery which was scheduled to be completed by August 26, 2020, followed by expert

discovery to be completed by September 9, 2020.  *See* Scheduling Order (ECF # 124), "III. Discovery Deadlines," pp. 3-6; Amended Scheduling Order (ECF # 334), "II. Discovery Scope and Deadlines," pp. 1-2.

10.     As part of their written discovery responses served in this case after the amended complaint was filed, Secretary Boockvar and the County Election Boards have confirmed that they cannot answer questions about how many counted absentee and mail-in ballots were either delivered via drop-boxes or other collection methods or lacked an inner secrecy envelope or contained marks, text, or symbols on such envelope during the June 2, 2020 Primary Election, because the Secretary did not track that information as part of her Act 35 Report and the County Election Boards did not segregate such ballots but instead commingled and counted them during the pre-canvass and canvass[3] with all the other ballots that were cast during the June 2, 2020 Primary Election.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh. "C-1"), pp. 95:22 - 96:10; 97:15-25; 209:18 – 210:6; 08/19/2020 Dep. Tr. of J. Marks (App. Exh. "A-1"), pp. 229:19 – 230:1; 233:10-15; 241:2-22; 245:17 – 247:6.

11.     Other pertinent facts disclosed during discovery indicate that Defendants plan to utilize drop boxes and to clothe, process, and count ballots lacking an inner secrecy envelope notwithstanding the requirements of Pennsylvania's election laws and the pendency of this and other lawsuits concerning the legality of those practices.

---

[3] As defined by the Election Code, following the enactment of Act 77, the term "pre-canvass" refers to "the inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots[,] … [but] … does not include the recording or publishing of the votes reflected on the ballots."  25 P.S. § 2602(q.1).  In contrast, the term "canvass" means "the gathering of ballots after the final pre-canvass meeting and the counting, computing and tallying of the votes reflected on the ballots."  *Id.* at § 2602(a.1).

12.     Taken together, these facts suggest that Defendants intend to proceed with the irreversible commingling of potentially illegally cast ballots with validly cast ballots during the upcoming General Election unless enjoined from doing so by this Court.

13.     During the August 19, 2020 deposition of Jonathan Marks, the Deputy Secretary for Elections and Commissions at the Pennsylvania Department of State,[4] Plaintiffs learned that Secretary Boockvar was reviewing certain "guidance" to the County Election Boards that had been drafted for the upcoming November 3, 2020 General Election.  However, the Deputy Secretary testified that the "guidance" was not finalized as of the time of his deposition.  *See* 08/19/2020 Dep. Tr. of J. Marks (App. Exh. "A-1"), pp. 188:22 - 189:11.

14.     Two days later, approximately twenty minutes before her deposition was scheduled to start, Secretary Boockvar produced two written pieces of guidance, both dated August 19, 2020, as a supplement to her discovery responses.  *See* Aug. 21, 2020 Email Message from K. Bokhan; Pa. Dept. of State, "Pennsylvania Absentee and Mail-In Ballot Return Guidance," ver. 1 (Aug. 19, 2020) [bate-stamped as "PADOS000750.000001-8" and available at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS_BallotReturn_Guidance_1.0.pdf]; Pa. Dept. of State, "Pennsylvania Guidance for Missing Official Ballot Envelopes ('Naked Ballots')," ver. 1 (Aug. 19, 2020) [bate-stamped as "PADOS000751.000001-2" and available at. https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS_NakedBallot_Guidance_1.0.pdf] (all attached collectively as App. Exh. "B-1" through "B-3").

15.     The two documents produced on August 21, 2020 set forth the Pennsylvania Department of State's official guidance on how a county election board can use drop-boxes for the

---

[4] According to Secretary Boockvar, Deputy Secretary Jonathan Marks is "the person in charge of the elections in Pennsylvania under [her] watch."  *See* 08/21/2020 Dep. Tr. of K. Boockvar (attached to the Appendix in Support of this Motion as Exhibit ("App. Exh.") "C-1"), pp. 52:22–53:6.

return and collection of absentee and mail-in ballots, and what a county election board should do if it receives an absentee or mail-in ballot that lacks an inner secrecy envelope. *See* App. Exh. B-2 & B-3. In essence, Secretary Boockvar and the Pennsylvania Department of State encourage the County Election Boards to use drop-boxes for the return and collection of absentee and mail-ballots and to clothe, process, and count all absentee and mail-in ballots that lack inner secrecy envelopes. *Id.*

16.     The Naked Ballots Guidance represents a material change in the position taken by the Pennsylvania Department of State in the May 28, 2020, and the June 1, 2020, email messages in which Secretary Boockvar and the Department of State portrayed the preliminary decision to count such ballots as being based upon an inference that a voter "forgot" or "inadvertently fail[ed] to insert" his or her ballot into the secrecy envelope. *See* Verified Amended Complaint (ECF # 234), ¶¶ 154-155, & Exh. 1. Now, under the August 19, 2020 guidance, the Secretary and the Department of State discard any requirement of evidence of voter intent and take "the … position that naked ballots should be counted pursuant to the Pennsylvania Election Code, furthering the Right to Vote under the Pennsylvania and United States Constitutions[,]" regardless of the reason for that deficiency. Secretary Boockvar further opines that "[t]he failure to include the inner envelope ('Secrecy Envelope') does not undermine the integrity of the voting process[,]"and that "no voter should be disenfranchised for failing to place their ballot in the official election ballot envelope before returning it to the county board of election." *See* 08/19/2020 Pennsylvania Guidance for Missing Official Election Ballot Envelopes ("Naked Ballots") (App. Exh. "B-3"), p. 2. *See also* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 131:23 – 136:21.

17.     Secretary Boockvar issued the Naked Ballots Guidance even though she concedes that when a ballot without an inner secrecy envelope is placed inside an outer envelope with an elector's completed declaration, that ballot – and its related vote –  can then be tied to an envelope

which has a text, mark, or symbol on it that identifies the elector.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 118:4 – 119:17.  Further, Secretary Boockvar admits that neither she nor, to her knowledge, anyone from the Pennsylvania Department of State or Governor Wolfe's administration had any discussions with the General Assembly about eliminating the inner secrecy envelope requirement as part of an elector's mandatory requirements for casting an absentee or mail-in ballot.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 108:8-25 – 110:17 & 115:5-11.  Further, in a June 30, 2020 email message that was produced for the first time on August 10, 2020, Secretary Boockvar stated that she doubts "highly unfortunately" that the General Assembly "would have the appetite to eliminate the secrecy envelopes" from Pennsylvania's absentee and mail-in voting scheme.  *See* 06/30/2020 Email Messages b/n K. Boockvar and N. Custodio (bate-stamped as PADOS000384.000001-2 and attached as App. Exh. "D").  Finally, both Secretary Boockvar and Deputy Secretary Marks acknowledged in their depositions taken last week that the language under Act 77 which sets forth the General Assembly's requirements for what an elector must do to cast an absentee or mail-in ballot is the exact same language that was in place for absentee voting before the passage of Act 77.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 103:16 – 115:4; K. Boockvar Dep. Exhs. 6 (App. Exh. C-2), 7 (App. Exh. C-3), & 8 (App. Exh. C-4); 08/19/2020 Dep. Tr. of J. Marks (App. Exh. "A-1"), pp. 45:19 - 51:1 & 74:7 – 80:16; J. Marks Dep. Exhs. 5 (App. Exh. A-2), 6 (App. Exh. A-3), 10 (App. Exh. A-4), 11 (App. Exh. A-5), 12 (App. Exh. A-6), & 13 (App. Exh. A-7).  *See also* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 148:21-150:16; K. Boockvar Dep. Exh. 13 (App. Exh. C-5) (in discussing her summary sent on November 25, 2019, Secretary Boockvar concedes that nothing in Act 77 changed the procedures for how a voter must cast their absentee or mail-in ballot in order for it to be counted, and that the first time the Department of State had ever taken the position that an

absentee or mail-in ballot without an inner secrecy envelope could be counted was in the May 28, 2020, email message and the August 19, 2020, Naked Ballots Guidance).

18.     At her deposition, Secretary Boockvar acknowledged that before issuing the Naked Ballots Guidance, she had "never read" and "still had not read" the Pennsylvania Supreme Court's 2004 decision of *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223 (Pa. 2004). *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 87:8 – 88:19.  In that case, the Pennsylvania Supreme Court declared that "clear mandates of the Election Code" cannot be ignored under the guise of liberally construing the right to vote.  *Canvass of Absentee Ballots*, 843 A.2d at 1231.  Moreover, in Election Code Section 3146.6(a) (which language is unchanged by Act 77), "[t]he word 'shall' carries an imperative or mandatory meaning." *Id.*  Further, "[u]nder the Statutory Construction Act, if the plain language of the statute is unambiguous, [a court] should not seek to avoid the clear command based upon a consideration of perceived intent or purpose." *Id.*  Accordingly, the Supreme Court held that (a) "the substantive provision of the Election Code" cannot be ignored, especially when they "are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed – particularly where … they are designed to reduce fraud[,]" and (b) that ballots cast "in contravention of [a] mandatory provision are void." *Id.* at 1234.

19.     Also, Secretary Boockvar has acknowledged that not all County Election Boards have agreed with her "guidance" that absentee and mail-in ballots which lack an inner secrecy envelope should be counted and not set aside as void.  In fact, in the 2020 Primary Election, Lawrence County reported to the Pennsylvania Department of State that it did not count over 440 of the approximately 8,000 cast absentee and mail-in ballots that were returned without inner

secrey envelopes.[5]   According to Secretary Boockvar, she disagreed with that decision.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 141:18 – 142:6.

20.    Concerning the Pennsylvania Department of State's August 19, 2020 guidance involving drop-boxes, Secretary Boockvar has admitted that although counties are encouraged to submit their proposed plans to the Pennsylvania Department of State on or before the 45th day before an election, there is no requirement or repercussion if a county does not make any such submission.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh. "C-1"), pp. 199:10 – 200:10; 201:6-203:18; 211:18 – 212:9.  Instead, it remains entirely up to each of the 67 counties to decide the time, manner, and place for their use, if any, of such drop-boxes.  *Id.*

21.    Moreover, although the August 19, 2020 guidance involving drop-boxes suggests that signs and video surveillance on unmonitored drop-boxes should be used to prevent third-party delivery of non-disabled voters absentee and mail-in ballots,[6] *see* 08/19/2020 Pennsylvania

---

[5] The Act 35 Report issued by the Pennsylvania Department of State states that Lawrence County had "0" absentee and mail-in ballots marked as challenged and/or not counted in the 2020 Primary Election.  *See* K. Boockvar Dep. Exh. 18 (App. Exh. C-7), pp. 16-18 & 24-26.  However, in Lawrence County's data submission that the Department of State utilized to create the Act 35 Report, Lawrence County reported the 440 absentee and mail-in ballots that it did not count because they lacked inner secrecy envelopes and noted that the Pennsylvania State Democratic party had withdrawn its objection to that decision.  *See* 08/19/2020 Dep. Tr. of J. Marks (App. Exh. A-1), pp. 246:13 – 249:6; J. Marks Dep. Exh. 37 (App. Exh. A-17), p. 19.

[6] In her deposition, Secretary Boockvar repeatedly acknowledged that the Election Code prohibits third-party delivery of absentee and mail-in ballots voted by non-disabled electors and declares all such ballots as being void, and that nothing in Act 77 changed that.  *See, e.g.,* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh. "C-1"), pp. 88:20 – 91:22 & 150:17 – 151:10.  As she testified: "It is long-time, well-established law in Pennsylvania" that such delivery is not permitted.  *Id.* at pp. 88:20 – 89:15.  Moreover, when Act 77 was passed, the General Assembly expressly discussed that an absentee or mail-in ballot that was not "returned in a way required by the legislation … would not be counted" and that the "purpose of this legislation is make sure that the practice we have heard of ballot harvesting is illegal and cannot be done in Pennsylvania."  *See* 10/29/2020 Common. of Pa. Legis. Jour., No. 64, p. 1739 (cmts. of Rep. Everett) (attached as App. Exh. "H").  Nevertheless, both Secretary Boockvar and Deputy Secretary Marks acknowledged in their depositions that several counties have continued to allow third-party delivery of non-disabled voters' ballots.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh "C-1"), pp. 91:23 – 99:6; 08/19/2020 Dep. Tr. of

Absentee and Mail-In Ballot Return Guidance (App. Exh. "B-2"), p. 5, § 2.3 & p. 6 § 2.5, Secretary Boockvar and Deputy Secretary Marks both have acknowledged in their depositions that such measures do not prevent the occurrence of illegal ballot harvesting.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh. "C-1"), at p. 213:2-25; 08/19/2020 Dep. Tr. of J. Marks (App. Exh. "A-1"), pp. 151:12-14; 154:5-11; 162:17 – 165:16.  Furthermore, in his deposition, Deputy Secretary Marks acknowledged that pictures obtained by Plaintiffs from newspapers and social media posts confirm several instances of non-disabled voters placing more than one ballot into the drop-boxes that were used by some counties during the 2020 Primary Election.  *See* 08/19/2020 Dep. Tr. of J. Marks (App. Exh. "A-1"), pp. 162:17 – 165:16; J. Marks Dep. Exhs. 24 (App. Exh. A-8), 25 (App. Exh. A-9), & 26 (App. Exh. A-10).  Moreover, Secretary Boockvar re-posted one of those pictures on her Twitter page within the last week in an attempt to promote Pennsylvania's absentee and mail-in voting scheme.  *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh. "C-1"), p. 217:18 – 218:6; *see also* Secretary Boockvar's Tweet (App. Exh. "E") and a larger version of the picture she tweeted that Plaintiffs produced during discovery as P002078 (App. Exh. "F").  Further, video surveillance from Elk County[7] shows several instances where voters returned more than one ballot at a time to drop-boxes.  *See* screenshots from the Elk County produced video (marked collectively as App. Exh. "G").

22.     Further, in neither piece of guidance dated August 19, 2020, and produced just over 48 hours before this Court's August 23, 2020 Order was entered does Secretary Boockvar or the Pennsylvania Department of State make any mention of procedures that the County Election

---

J. Marks (App. Exh. "A-1"), pp. 55:9 – 72:9; J. Marks Dep. Exhs. 7 (App. Exh. A-14), 8 (App. Exh. A-15), & 9 (App. Exh. A-16).

[7] Several counties which used video surveillance or cameras on their drop-boxes during the 2020 Primary Election reported in discovery that they did not retain or keep copies of the digital images or video from such unmanned monitoring.

Boards must follow to avoid the commingling and counting of absentee and mail-in ballots that are mailed or delivered in-person to their main office as opposed to returned or collected through drop-boxes.  Nor have Secretary Boockvar and the County Election Boards adopted any procedures to prevent the commingling and counting of non-disabled voters' absentee and mail-in ballots that are delivered in-person by someone other than the electors.  Finally, neither Secretary Boockvar nor the County Election Boards have adopted any procedures which avoid the commingling and counting of absentee and mail-in ballots that lack an inner secrecy envelope or contain marks, text, or symbols thereon.  Indeed, both sets of the Department of State's August 19, 2020 guidance are completely devoid of any such procedures.

> **D.    Without Judicial Intervention, Illegally Cast Ballots Will Be Irretrievably Commingled With Validly Cast Ballots.**

21.    Under the Election Code, counties are required to begin delivering absentee and mail-in ballots to approved non-military and overseas applicants "as soon as a ballot is certified and the ballots are available" but "not later than the second Tuesday prior to the primary or election." *See* 25 P.S. §§ 3146.5(b)(1) & 3150.15.  Counties must process absentee and mail-in ballot applications at least fifty days before an election, see 25 P.S. §§ 3146.2a & 3150.12a, which means that ballots could be mailed to voters as soon as September 14, 2020, if not earlier.  In fact, if a county board of elections "determines that it would be appropriate to its operational needs," it may process absentee ballot applications and mail ballots before September 14.  *Id.*  As a result, the window for action to protect Plaintiffs' constitutional rights is closing fast.

22.    Moreover, at least one county (Delaware County) has announced plans to install by October 1, 2020, fifty (50) drop-boxes for the return and collection of absentee and mail-in ballots within their county.  *See* 01/17/20 Email message from K. Lehman (bate-stamped as PADOS000609.000001-5 and attached as App. Exh. "I").

23.     Because Defendants do not have any procedures in place to segregate the absentee and mail-in ballots which Plaintiffs contend will be illegally cast during the November 3, 2020 General Election, those ballots will become irretrievably commingled with absentee and mail-in ballots that have been properly cast.

24.     Unless Defendants isolate and refrain from pre-canvassing and canvassing the potentially illegally cast absentee and mail-in ballots, it will be impossible for any court or other trier of fact to identify which of the ballots were illegally cast or to otherwise provide any relief to Plaintiffs if they are successful with their challenge concerning the validity of such ballots that were cast or counted under such constitutionally questionable procedures.

## II.     LEGAL STANDARD.

25.     "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

26.     "It is well-established that district courts are to engage in a balancing test to determine whether there is an overall need for a preliminary injunction." *Pierce v. Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684, 704 (W.D. Pa. 2003) (citation omitted).

## III.     ARGUMENT.

### A.     Modification Of The August 23, 2020 Stay Is Warranted.

27.     As this Court explained in its Opinion in support of its August 23, 2020 Order, this Court "made [no] factual findings based on the review of any evidence," but instead accepted as true the allegations in Plaintiffs' July 27, 2020 amended complaint in deciding to abstain under the *Pullman* doctrine. *See* 08/23/2020 Opinion (ECF #409), p. 4, n. 2.

28.     As this Court further noted, Plaintiffs' complaint was premised upon certain guidance that Secretary Boockvar had promulgated to the County Election Boards in the months

leading up to the 2020 Primary Election, including on January 10 and 30, 2020, March 5, 2020, and May 28, 2020.  *See* 08/23/2020 Opinion (ECF #409), pp. 5-8.

29.     In her July 31, 2020 supporting memorandum to her Rule 12 Motion, Secretary Boockvar explained that "the Commonwealth has not finalized or publicized its General Election policies" and "certain of the procedures for the upcoming General Election [we]re not yet finalized."  *See* Secretary Boockvar's Memorandum of Law in Support of Motion to Dismiss Amended Complaint (ECF # 264), pp. 9-10 & 15.

30.     On August 10, 2020, Secretary Boockvar repeated this assertion in her response to Plaintiffs' written discovery requests, stating that either "[f]urther guidance is forthcoming that may address, modify or supersede prior guidance" or "additional guidance is forthcoming that may address, modify or supersede prior guidance in advance of the November 3, 2020 election."  *See* Secretary Boockvar's Objections and Responses to Plaintiffs' Interrogatories and Request for Production of Documents (attached as App. Exh. "J"), Answer to Interrogatory ## 1-15.

31.     The additional "guidance" published by the Pennsylvania Department of State was not formally submitted to Plaintiffs until August 21, 2020, when, twenty minutes before the start of her deposition, Secretary Boockvar supplemented her August 10, 2020, responses to Plaintiffs' written discovery requests with the production of the two sets of guidance dated August 19, 2020. *See* App. Exhs. B-1 - B-3.

32.     Although Plaintiffs were working on a motion to amend their pleadings and to seek appropriate injunctive relief from the Court based on the two sets of August 19, 2020, guidance, this Court entered its August 23, 2020 Order, staying the proceedings without prejudice to any party to request that the Court lift the stay if the Pennsylvania state courts resolved the issues of state law or there were a "prolonged delay by the state courts," which the Court defined as

occurring if there were not a state court decision on the unsettled issues of state law by October 5, 2020.  *See* 08/23/2020 Order (ECF # 410), p. 2.

33.     Because the two sets of August 19, 2020 guidance define the policies Secretary Boockvar and the Pennsylvania Department of State have put in place for the November 3, 2020, General Election regarding the return and collection of absentee and mail-in ballots to drop-boxes and the counting of ballots which lack an inner secrecy envelope, because Plaintiffs' contend that this guidance is contrary to the General Assembly's dictates as pronounced in the Pennsylvania Election Code, and because those ballots may be irretrievably commingled with validly cast ballots absent an injunction from this Court, modification of this Court's August 23, 2020 Order is warranted to grant limited preliminary injunctive relief to protect Plaintiffs' fundamental rights and other interests.  *Pierce*, 324 F. Supp. 2d at 704 ("Notwithstanding a decision to abstain on the merits, this court is still obliged to consider plaintiffs' request for preliminary relief").

34.     Because ballot designs may be certified and available as early as September 14, 2020 and ballots may start being delivered at any point thereafter, Plaintiffs further believe that waiting until the Court's initial October 5, 2020, date to entertain lifting the stay will result in substantial prejudice to Plaintiffs and their claims.

35.     Accordingly, it is appropriate for this Court to grant the limited preliminary injunctive relief sought by Plaintiffs in this Motion and to modify the stay entered by this Court on August 23, 2020 to change the "prolonged delay" date from October 5, 2020 to September 14, 2020.

### B.     Limited Preliminary Injunctive Relief Is Proper.

36.     The *Pullman* doctrine "requires retention of jurisdiction … for the obvious purpose of preserving the plaintiffs' choice of forum for the vindication of federal rights clearly infringed by the state construction ultimately adopted."  *See*

*Bible Presbyterian Church v. New Jersey State Board of Higher Education,* 654 F.2d 868, 885 (3d Cir. 1981).

37.    Although this Court has determined that *Pullman* abstention is warranted, and Plaintiffs are not challenging that determination by this Motion, this Court still has a "continuing duty to consider plaintiffs' request for preliminary relief." *Pierce*, 324 F. Supp. 2d at 704.

38.    Plaintiffs are entitled to limited preliminary injunctive relief because a balancing of the four preliminary injunction factors weighs in Plaintiffs' favor.

**1.    *Plaintiffs Have A Reasonable Probability That Their Claims Will Succeed On The Merits.***

39.    To find that one seeking preliminary injunctive relief is likely to prevail on the merits, "it is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a *reasonable probability* that it will prevail on the merits." *Pierce*, 324 F. Supp. 2d at 705 (quoting *Oburn v. Shapp,* 521 F.2d 142, 148 (3d Cir. 1975)) (emphasis added).

40.    To succeed with their claims, Plaintiffs must prove that: "(1) the government acted; (2) in a manner that burdens their fundamental right to vote; and (3) the action was not narrowly tailored to serve a compelling governmental interest." *Pierce*, 324 F. Supp. 2d at 705 (citing *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)).

41.    Although this Court has chosen to refrain from interpreting what it has characterized as "unsettled state-law issues," Plaintiffs have a reasonable probability of succeeding on the merits of their constitutional claims because even without a state court decision in their favor, Plaintiffs have demonstrated that the Defendants lack uniformity in their handling of

illegally cast ballots.[8]  Moreover, even if a state court were to determine that drop-boxes were proper, the fact that not all counties employ them raises a constitutional concern.  As this Court noted in its August 23, 2020 Opinion, Plaintiffs' interpretations of the pertinent Election Code provisions are reasonable.  Moreover, several County Election Boards have stipulated to follow Plaintiffs' interpretations if they are accepted by the courts, whereas others believe Secretary Boockvar's interpretations are correct.  Accordingly, like this Court found in *Pierce*, Plaintiffs have a likelihood of succeeding on the merits sufficient to warrant limited preliminary injunctive relief. *See Pierce*, 324 F. Supp. 2d at 705-6.

## 2.    *Absent Injunctive Relief, Plaintiffs Will Suffer Irreparable Harm.*

42.    "Irreparable harm means that the moving party will be injured in such a way that adequate compensatory or other corrective relief will not be available at a later date in the ordinary course of litigation." *Pierce*, 324 F. Supp. 2d at 706 (quoting *Oburn*, 521 F.2d at 151).

43.    Under the Election Code, absent a challenge, all absentee and mail-in ballots are commingled, and once that occurs, there is no way to discern which, or how many, of those ballots were cast in the manner being challenged by Plaintiffs. *Pierce*, 324 F. Supp. 2d at 706.

44.    Because the comingling and canvassing of ballots will preclude County Election Boards from later segregating absentee and mail-in ballots by their means of delivery (*i.e.*, U.S. mail, elector in-person delivery to county election office, elector in-person delivery to drop-box,

---

[8] For example, despite the Pennsylvania Supreme Court's 2004 pronouncement that non-disabled voters' absentee ballots delivered by third-persons are void and cannot be counted, several counties have continued to permit third-party delivery and have counted such ballots. *See* 08/19/2020 Dep. Tr. of J. Marks (App. Exh. "A-1"), pp. 55:9 – 72:9; J. Marks Dep. Exhs. 7 (App. Exh. A-14), 8 (App. Exh. A-15), & 9 (App. Exh. A-16).  Further, despite the Secretary's pronouncement on May 28, 2020, concerning the counting of absentee and mail-in ballots that lack inner secrecy envelopes, Lawrence County still properly rejected over 440 such ballots.  J. Marks Dep. Exh. 37 (App. Exh. A-17); K. Boockvar Dep. Exh. 12 (C-6).

and third-party delivery to county election office or drop-box) or by whether they include an inner secrecy envelope with or without marks, text, or symbols on that envelope, the commingling or processing of absentee ballots prior to the resolution of this case would inflict irreparable harm on Plaintiffs. *Pierce*, 324 F. Supp. 2d at 707.

> **3.** ***As The Ballots Are Merely Being Segregated For Future Challenge, No Harm To Others Exists. Moreover, The Public Interest Of A Fair And Free Election Is Being Preserved.***

45. When the relief being sought would simply separate ballots out as part of a potential challenge, there exists no harm to others. *Pierce*, 324 F. Supp. 2d at 707.

46. Further, this injunction would protect the public interest because, as this Court noted years ago, "the idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative." *Pierce*, 324 F. Supp. 2d at 707 (quoting *Moore v. Ogilvie,* 394 U.S. 814, 819 (1969)).

47. Accordingly, Plaintiffs ask this Court to

> (a) Grant Plaintiffs limited, preliminary injunctive relief ordering Defendants to segregate and maintain intact all cast absentee and mail-in ballots that (i) are returned or collected through drop-boxes, (ii) lack an inner secrecy envelope or contain marks, text, or symbols thereon, or (iii) constitute non-disabled voters' absentee and mail-in ballots that have been delivered in-person by someone other than the non-disabled voters;

> (b) Grant Plaintiffs limited, preliminary injunctive relief ordering Defendants to refrain from pre-canvassing or canvassing all cast absentee and mail-in ballots that (i) are returned or collected through drop-boxes, (ii) lack an inner secrecy envelope or contain marks, text, or symbols thereon, or (iii) constitute non-disabled voters' absentee and mail-in ballots that have been delivered in-person by someone other than the non-disabled voters until further order of this Court;

> (c) Granting Plaintiffs limited, preliminary injunctive relief ordering Defendants to retain and make available for periodic review all digital images or video to the extent any video security surveillance system or internal camera is available and used to monitor drop-boxes or other sites and locations, including a county election office, used for the return and collection of cast absentee and mail-in ballots; and

(d)     Modify the stay entered on August 23, 2020, to permit it to be lifted on September 14, 2020, rather than October 5, 2020, with respect to all settled state-law issues.

48.     These measures would strike a fair balance between the constitutional issues raised in this case and the need for the public to ensure free, fair, and transparent elections.

## V.     CONCLUSION.

While they understand the Court's decision to abstain and do not seek to challenge that decision in this Motion, Plaintiffs do believe that the evidence obtained through discovery supports modification of this Court's August 23, 2020 Order to provide both limited, preliminary injunctive relief and a modification of the October 5, 2020 date.  A proposed Order is attached.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

Date:  August 28, 2020          By:   */s/ Ronald L. Hicks, Jr.*
                                      Ronald L. Hicks, Jr. (PA #49520)
                                      Jeremy  A. Mercer (PA #86480)
                                      Russell D. Giancola (PA #200058)
                                      Carolyn B. McGee (PA #208815)
                                      Six PPG Place, Third Floor
                                      Pittsburgh, PA 15222
                                      (412) 235-4500 (Telephone)
                                      (412) 235-4510 (Fax)
                                      rhicks@porterwright.com
                                      jmercer@porterwright.com
                                      rgiancola@porterwright.com
                                      cmcgee@porterwright.com

                                      Matthew E. Morgan (DC #989591)
                                      (admitted pro hac vice – ECF #10)
                                      Justin Clark (DC #499621)
                                      (admitted pro hac vice – ECF #31)
                                      Elections, LLC
                                      1000 Maine Ave., SW, 4th Floor
                                      Washington, DC 20224
                                      (202) 844-3812 (Telephone)
                                      matthew.morgan@electionlawllc.com
                                      justin.clark@electionlawllc.com

                                      *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing Motion to be filed on August 28, 2020, via ECF, which system will serve notice of same on all parties registered to receive same via the ECF system.  For any party who has yet to enter an appearance, the undersigned certifies that a copy of the foregoing filing will be served on that party via First Class Mail and a copy sent to the County Solicitor, if known, via email or fax.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

By:   */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy  A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Carolyn B. McGee (PA #208815)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com
cmcgee@porterwright.com

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(admitted pro hac vice – ECF #31)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*