**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:20-cv-00966-NR |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) ) ) ) ) | Judge J. Nicholas Ranjan |
| Defendants. | ) ) ) | |

**SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S
OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY STAY ORDER AND FOR
LIMITED PRELIMINARY INJUNCTIVE RELIEF**

KIRKLAND & ELLIS LLP
Daniel T. Donovan
Michael A. Glick
Susan M. Davies
Kristen L. Bokhan
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000 (telephone)
(202) 389-5200 (facsimile)

Madelyn A. Morris
Sara S. Tatum (*pro hac vice* pending)
601 Lexington Avenue
New York, NY 10022
(212) 446-4800 (telephone)
(212) 446-4900 (facsimile)

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
Karen M. Romano
Keli M. Neary
Howard G. Hopkirk
Nicole Boland
Stephen Moniak
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-2717 (telephone)
(717) 772-4526 (facsimile)

MYERS BRIER & KELLY LLP
Daniel T. Brier
Donna A. Walsh
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100 (telephone)
(570) 342-6147 (facsimile)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

PROCEDURAL BACKGROUND ...................................................................................... 2

ARGUMENT ..................................................................................................................... 4

I.      THE PENNSYLVANIA SUPREME COURT'S ORDER MOOTS PLAINTIFFS'
        MOTION .............................................................................................................. 4

II.     PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER. ........................................ 5

III.    PLAINTIFFS' CLAIMS REMAIN NON-JUSTICIABLE BY THIS COURT. ................ 8

IV.     PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION. ............. 12

        A.      Plaintiffs Are Not likely To Be Successful on the Merits. ................................... 12

                1.      Plaintiffs Do Not Have a Reasonable Probability of Demonstrating
                        There Will Be Federal Constitutional Violations. ..................................... 13

                2.      The Secretary's Guidance is Consistent with the Election Code and
                        Does Not Violate Commonwealth Law. .................................................... 16

        B.      Plaintiffs Will Not Suffer Irreparable Harm Absent the Requested Relief. ......... 19

        C.      It Is Not Inequitable to Deny Plaintiffs' Requested Relief. .................................. 20

CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*,
    669 F.3d 359 (3d Cir. 2012)......................................................................................12

*Bennett v. Yoshina*,
    140 F.3d 1218 (9th Cir. 1998) ..................................................................................14

*Bush v. Gore*,
    531 U.S. 98 (2000)....................................................................................................15

*Citizen's Bank, N.A. v. Baker*,
    2020 WL 1248657 (W.D. Pa. Mar. 16, 2020) ............................................................6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)....................................................................................................9

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)....................................................................................................9

*Fuente v. Cortes*,
    207 F. Supp. 3d 441 (M.D. Pa. 2016) ........................................................................6

*Hennings v. Grafton*,
    523 F.2d 861 (7th Cir. 1975) ..............................................................................13, 14

*Holland v. Rosen*,
    895 F.3d 272 (3d Cir. 2018)................................................................................12, 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)....................................................................................................9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................................................9

*PennEnvironment v. PPG Indus., Inc.*,
    2019 WL 4860940 (W.D. Pa. Oct. 2, 2019) ...........................................................6, 7

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)................................................................................................10, 11

*PG Publ'g Co. v. Aichele*,
    705 F.3d 91 (3d Cir. 2013)........................................................................................16

*Pierce v. Allegheny Cty. Bd. of Elections*,
   324 F. Supp. 2d 684 (W.D. Pa. 2003) ..................................................................6, 15

*Samuel v. V.I. Joint Bd. of Elections*,
   2013 WL 842946 (D.V.I. Mar. 7, 2013) ....................................................................14

*Shambach v. Bickhart*,
   845 A.2d 793 (Pa. 2004) ............................................................................................18

*Snowden v. Hughes*,
   321 U.S. 1 (1944) .................................................................................................13, 15

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ...................................................................................................10

**Statutes**

25 Pa. Cons. Stat. § 2602 ...............................................................................12, 18, 19

25 Pa. Cons. Stat. § 2641 .........................................................................................18

25 Pa. Cons. Stat. § 2645 .........................................................................................18

25 Pa. Cons. Stat. § 2726 .........................................................................................16

25 Pa. Cons. Stat. § 3055 .........................................................................................17

25 Pa. Cons. Stat. § 3062 .........................................................................................17

25 Pa. Cons. Stat. § 3063 .........................................................................................17

25 Pa. Cons. Stat. § 3146.2a .......................................................................................7

25 Pa. Cons. Stat. § 3146.6 ..................................................................................17, 18

25 Pa. Cons. Stat. § 3146.8 ..................................................................................12, 19

25 Pa. Cons. Stat. § 3150.12a .....................................................................................7

25 Pa. Cons. Stat. § 3150.16 ................................................................................17, 18

25 Pa. Cons. Stat. § 3511 .........................................................................................18

42 Pa. Cons. Stat. § 726 .............................................................................................3

**Other Authorities**

Richard H. Fallon, Jr. et al., *Hart and Wechsler's the Federal Courts and the
   Federal System* (6th ed. 2015) ..................................................................................10

U.S. Const. amend. XI ...................................................................................................2, 8, 10, 11

## INTRODUCTION

Plaintiffs' motion to modify the existing stay order and for broad preliminary injunctive relief is a thinly-veiled—and meritless—request for reconsideration of this Court's well-reasoned opinion abstaining from this dispute. Just 10 days ago, this Court issued a detailed order explaining why the critical interests of comity and federalism demanded that this federal Court allow the Commonwealth's own courts to first resolve important state-law issues of first impression. Since that time, Plaintiffs failed to exhaust (or even explore) the avenues recommended by the Court to pursue their relief in state court. Instead, through the present motion, Plaintiffs return to this Court seeking relief that would require the Court to do precisely what it has already declined to do: issue an advisory opinion regarding unsettled aspects of state law that are best resolved by Pennsylvania state courts in the first instance. The Court should again decline Plaintiffs' invitation.

Crucially for purposes of this motion, just yesterday, the Supreme Court of Pennsylvania granted Secretary of the Commonwealth Kathy Boockvar's application and exercised its extraordinary jurisdiction over the parallel Commonwealth Court case raising substantially identical election law issues as this case. The court further set an expedited briefing schedule with supplemental briefs due early next week. Thus, even if Plaintiffs' present motion were appropriate when it was filed—and it was not—intervening events have made clear that this Court should defer to the Supreme Court's forthcoming interpretation of state Election Code issues. Put simply, the Pennsylvania Supreme Court's exercise of its extraordinary jurisdiction along with its invitation for expedited supplemental briefing confirms the correctness of the Court's abstention order, provides comfort that the Pennsylvania Supreme Court will resolve the disputed issues of state law, and defeats Plaintiffs' renewed request for intrusive federal injunctive relief.

But Plaintiffs' motion suffers from yet additional flaws. First, the same justiciability and constitutional limits on this Court's jurisdiction and power set forth by the Secretary and several

1

other Defendants and Intervenors as part of the original motion to dismiss briefing—including lack of standing, lack of ripeness, and Eleventh Amendment issues—prevent this Court from granting Plaintiffs' requested relief.  Although the Court expressly declined to resolve those issues in its abstention order, it would have to do so in order to grant Plaintiffs' newly requested relief.

Moreover, although the Court need not—and should not—reach the merits of Plaintiffs' motion, Plaintiffs are simply not entitled to the injunctive relief they seek: their barebones allegations do not demonstrate a reasonable probability that they will prevail on the merits of their claims; they fail to establish that they will be irreparably harmed at this stage by election-related activities that remain several weeks, if not months, away; and the balance of harms and public interest favor the Secretary and other Defendants, not Plaintiffs.

The Court should deny Plaintiffs' requested relief and leave undisturbed its prior order abstaining from this dispute.

## PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint on June 29.  *See* ECF No. 4.  Plaintiffs did not seek preliminary injunctive relief at that time, but later moved for expedited discovery and a declaratory judgment hearing, which this Court partially granted, scheduling a speedy hearing and allowing for certain limited discovery.  ECF No. 123.

The Secretary and other Defendants and Intervenors promptly moved to dismiss the original complaint.  *See, e.g.*, ECF Nos. 184-85.  Rather than oppose, Plaintiffs filed an amended complaint ("Am. Compl.," ECF No. 234), but again did not seek preliminary injunctive relief.  The Secretary and others again promptly moved to dismiss, raising a host of jurisdictional issues, highlighting substantial Eleventh Amendment problems with Plaintiffs' claims, and requesting abstention in favor of ongoing Commonwealth Court proceedings addressing similar issues, among other arguments.  *See, e.g.*, ECF Nos. 263-64.

While the motions to dismiss were pending, the Secretary took two critical actions:

*First*, in recognition of the unsettled nature of certain state-law questions at issue in this dispute and a parallel proceeding in Commonwealth Court—*Pennsylvania Democratic Party v. Boockvar*, No. 407 MD 2020—on August 16, the Secretary asked the Supreme Court of Pennsylvania to invoke its "[e]xtraordinary [j]urisdiction" pursuant to 42 Pa. Cons. Stat. § 726 and resolve this "issue[] . . . of immediate public importance."  ECF No. 388-1 at 3-4.  The Secretary notified this Court of her application the next day.  ECF No. 388.

*Second*, in accordance with her statutory and fiduciary responsibilities to plan for the upcoming General Election (and as previously disclosed was her intent in motion-to-dismiss briefing and discovery), on August 19, the Secretary issued two sets of guidance—one outlining procedures for county boards of elections to collect absentee and mail-in ballots (including at secure ballot return receptacles, commonly referred to as "drop-boxes") and one regarding the treatment of ballots lacking inner secrecy envelopes (*i.e.*, "naked" ballots).  *See* Exs. 1-2.  The Secretary disseminated both sets of guidance to all county boards of elections and on its website, *see* Ex. 3, and, although Plaintiffs already had access to it, formally produced the guidance to Plaintiffs with Bates numbers on the morning of August 21.

On August 23, the Court issued its 37-page opinion abstaining from this case pending state-court adjudication of the state Election Code issues at the heart of this dispute.  ECF No. 409 ("Op.").  Among other things, the Court observed that "[h]ow the state courts interpret the unsettled state-law questions will dramatically alter the nature and scope of the federal-constitutional claims" asserted in this case and found that charging forward "would risk issuing a decision that is at odds with the state court's interpretation of the [E]lection [C]ode or is an advisory opinion." *Id.* at 14.  In doing so, the Court identified three alternate routes for Plaintiffs to pursue speedier

relief or contest the Court's abstention ruling, including, (1) seeking to expedite the pending state-court litigation involving many of the same parties and issues, (2) filing a new case in state court asserting the same state-law claims, or (3) appealing the abstention order to the Third Circuit. *See id.* at 31-33.  After failing to pursue any of these avenues in the week following the Court's decision, Plaintiffs filed the present motion on August 28 ("Mot.," ECF No. 414).

Yesterday, September 1, the Supreme Court of Pennsylvania issued an Order exercising jurisdiction over the pending state-court proceeding and inviting additional briefing to be filed early next week.  *See* ECF No. 418 (notifying this Court of Order and providing copy of same).

## ARGUMENT

## I.    THE PENNSYLVANIA SUPREME COURT'S ORDER MOOTS PLAINTIFFS' MOTION.

The Supreme Court of Pennsylvania's Order exercising its extraordinary jurisdiction over the parallel Commonwealth Court case moots Plaintiffs' motion and should be the beginning and end of the matter.  As presented in their motion, Plaintiffs' theory of constitutional harm is that certain Pennsylvania counties will count "illegally cast" ballots, thereby diluting "lawfully cast" votes, and that counties will resolve ambiguities in the Election Code differently, thereby treating ballots unequally.  Mot. at 2-3.  And although the Secretary recently issued guidance precisely to cure any confusion and ensure uniformity across the Commonwealth, *see* Exs. 1-2, Plaintiffs contend (without support) that certain counties will ignore that clear guidance, causing confusion and inconsistency in the upcoming General Election.  Mot. at 2-3.

The Pennsylvania Supreme Court's exercise of its extraordinary jurisdiction moots any such concern (however unfounded).  That court—the highest court in Pennsylvania—exercised jurisdiction to authoritatively construe the Election Code as it relates to Plaintiffs' concerns, resolving whether certain ballots will be "illegally cast" and providing binding and uniform

interpretations.  Plaintiffs offer no suggestion (nor could they) that counties will ignore the Supreme Court's forthcoming decision, therefore creating the sort of inconsistencies that underlie the concerns set forth in their motion.

Moreover, the Supreme Court has committed to acting quickly: its order accepting the case requested that any supplemental briefs or affidavits be filed by 5:00 p.m. next Tuesday.  ECF No. 418-3 at 3.  Accordingly, there is simply no need for this federal Court's involvement at this time and the Court should deny the motion as moot.

## II.    PLAINTIFFS' MOTION IS PROCEDURALLY IMPROPER.

Plaintiffs' motion also fails because it is nothing more than an improper motion for reconsideration of the Court's abstention order, which is particularly unwarranted now.  In a thoughtful opinion spanning 37 pages, the Court determined to abstain and await state-court guidance on the disputed Election Code issues.  *E.g.*, Op. at 2-4.  In doing so, the Court provided clear guidance to Plaintiffs for how to proceed if they disagreed with this Court, *id*. at 32 & n.8, or if they wanted a more expedient answer from Commonwealth courts, *id*. at 31-32.  Plaintiffs, however, charted a premature course back to this Court, and the Court should reject their latest procedural maneuver.

While claiming to "understand the Court's decision to abstain," and insisting they "do not seek to challenge that decision in this Motion," Mot. at 19, Plaintiffs' motion necessarily "challenge[s]" the Court's abstention holding and is another attempt to make this Court, and not the state courts, the first to lend its interpretation of Pennsylvania law.  Indeed, to issue a preliminary injunction, the Court would have to decide whether Plaintiffs are likely to succeed on the merits of their claims.  While Plaintiffs have not stated viable constitutional claims under any interpretation of the Election Code, *see infra* Part IV.A, this would nonetheless require this Court

to issue an advisory interpretation of the very same Election Code provisions now under review by the Pennsylvania Supreme Court.

That Plaintiffs are now seeking preliminary injunctive relief does not change things.  As this Court recognized, "Plaintiffs intentionally opted to forgo seeking any preliminary provisional relief" originally, Op. at 33, and that "deliberate choice on how to proceed obviate[d] the Court's need to take any immediate action," *id.* at 33-34.  Plaintiffs cannot change course now that the Court has abstained.  While some courts have granted injunctive relief *contemporaneously* with a decision to abstain on *Pullman* grounds, *see Pierce v. Allegheny Cty. Board of Elections*, 324 F. Supp. 2d 684, 704 (W.D. Pa. 2003); *Fuente v. Cortes*, 207 F. Supp. 3d 441, 453 (M.D. Pa. 2016), Plaintiffs cite no precedent that allows them to seek a preliminary injunction *after* the Court has abstained and stayed a case, as here.  *See* Op. at 33 ("True, if Plaintiffs had filed a motion for a preliminary injunction, the Court would have likely been required to rule on it before abstaining.").

Plaintiffs' motion is therefore better viewed as an artfully pleaded motion for reconsideration of the Court's abstention decision.  As an initial matter, while clear doctrines exist allowing parties to move to modify preliminary injunctions, no such doctrine exists for requests to modify abstention orders.  *See Citizen's Bank, N.A. v. Baker*, 2020 WL 1248657, at *2 (W.D. Pa. Mar. 16, 2020).  In any event, Plaintiffs have not identified any basis for reconsideration, and such motions should be sparingly granted anyway.  *See PennEnvironment v. PPG Indus., Inc.*, 2019 WL 4860940, at *1 (W.D. Pa. Oct. 2, 2019) ("[W]hile '[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, . . . as a rule courts should be loath[] to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'" (second & third set of brackets and ellipsis in original) (citations omitted)).  To justify reconsideration, Plaintiffs must demonstrate

either: "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* at *2. Plaintiffs do not allege any change in controlling law or need to correct a clear legal or factual error, instead relying on supposed "new evidence" to explain the need to modify the Court's order. *See* Mot. at 2 n.1, 5. Plaintiffs cite, for instance, the fact that "ballot designs may be certified and available as early as September 14, 2020 and ballots may start being delivered at any point thereafter." *Id.* at 15. Plaintiffs claim to have chosen September 14 because that is when counties must begin processing absentee and mail-in *applications*, *id.* at 12; *see also* 25 Pa. Cons. Stat. §§ 3146.2a, 3150.12a, but notably, that provision of the Election Code has not changed since Plaintiffs initiated this case, and it has no relevance for when ballots will be *collected*. Nor did the Secretary's issuance of certain guidance on August 19 (four days *before* the Court's abstention order) change anything. In fact, as explained below, the guidance serves to ensure uniformity and conformance with the Election Code statewide; it is by no means grounds for reconsideration. Put simply, Plaintiffs have not demonstrated a change of circumstances that would justify modifying the Court's order. And, if anything, the Pennsylvania Supreme Court's decision to exercise jurisdiction confirms that this Court correctly abstained.[1]

---

[1] The Court should also reject Plaintiffs' gambit in light of their failure to exhaust—or even seriously engage in—any of the alternate avenues suggested by the Court for obtaining clarity regarding the disputed issues of state statutory construction. To be sure, the Pennsylvania Supreme Court has now exercised its jurisdiction over the state-court proceedings over Plaintiffs' objection. But prior to that Order, Plaintiffs made no effort to (a) appeal this Court's abstention order to the Third Circuit, which would have had the power to certify Plaintiffs' questions of state law to the Pennsylvania Supreme Court, *see* Op. at 32, (ii) initiate a state court proceeding seeking a definitive interpretation of the relevant state Election Code provisions, *see* Op. at 32, (iii) attempt to expedite any of the existing state court proceedings, *see* Op. at 31, or (iv) even notify any of the relevant Commonwealth courts of the abstention order. To the contrary, prior to this Court's abstention order, Plaintiffs opposed the Secretary's application for the Supreme Court to exercise its extraordinary jurisdiction (ECF No. 418-1), and they took no action following the abstention order to withdraw that opposition before the application was granted over their opposition.

**III.    PLAINTIFFS' CLAIMS REMAIN NON-JUSTICIABLE BY THIS COURT.**

The Court should also deny the motion because Plaintiffs' underlying claims remain non-justiciable and the Court lacks authority to grant Plaintiffs relief premised on alleged violations of state law.  The Secretary and other Defendants/Intervenors previously explained why Plaintiffs' claims are not justiciable, including because Plaintiffs have not alleged a legally cognizable injury; certain of their claims are unripe; and the Eleventh Amendment bars state-law claims against unconsenting states in federal court.  *See generally, e.g.*, ECF Nos. 263-64, 336.  In its abstention order, the Court expressly declined to address those critical limitations.  Op. at 12 n.3 ("Because the Court is abstaining based on *Pullman*, it need not address these other issues."); *see also* Order (ECF No. 410) at 1-2 ("Because the Court is abstaining under *Pullman*, it has not reached a determination on any other arguments raised in Defendants' and Intervenors' motions, and therefore holds the remaining aspects of those motions in abeyance.").  Plaintiffs' latest motion, however, runs headlong into those very limits on federal judicial power, including whether the Court has the authority to fashion the requested preliminary injunctive relief.  For the same reasons set forth in the prior briefing, the Court does not.

**Plaintiffs fail to assert cognizable injury and therefore lack standing.**  Although Plaintiffs' theory of injury has evolved through this litigation, Plaintiffs have failed at any stage to articulate a viable theory of Article III injury.  At this point in the litigation, it is clear that Plaintiffs are simply unhappy with the Secretary's interpretation of the Election Code and seek to transform that disagreement into a federal constitutional violation and compel compliance with their own interpretation of the Code.  Plaintiffs claim, among other things, that: (1) the implementation of mail-in voting (including through formal guidance issued by the Secretary) "will . . . lead[] to vote dilution"; and (2) "inconsistent implementation of the Election Code and Secretary Boockvar's

guidance . . . [will] violate Plaintiffs' federal and state equal protection and other constitutional rights." Mot. at 3. None of these theories articulates cognizable, non-speculative harm.

Plaintiffs' vote-dilution theory (*i.e.*, that "illegally cast" votes will dilute legally cast votes) is the very definition of a generalized grievance. Individual litigants simply do not have a legally cognizable interest in the proper enforcement of the laws. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (explaining the Court's "reluctance" to entertain suits "claiming only harm to [the plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992)); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (holding that litigants lack standing when allegations mean only that they "suffer[] in some indefinite way in common with people generally" (citation omitted)). Plaintiffs' failure to articulate a particularized injury deprives them of standing and this Court of jurisdiction.

Even if the Court thought Plaintiffs had alleged something more than a generalized grievance, Plaintiffs' claimed injuries continue to be speculative at best, and do not satisfy the requirements of Article III that the claimed injury be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013). Indeed, Plaintiffs' vote-dilution theory depends on election officials violating state law and counting illegally cast ballots, even after the Pennsylvania Supreme Court interprets the Election Code. And Plaintiffs' equal-treatment claim is even worse off today than it was when Plaintiffs opposed the Secretary's motion to dismiss the amended complaint: the Secretary has since issued statewide guidance clarifying and unifying procedures for absentee and mail-in ballot drop-boxes and treatment of "naked" ballots, *see* Exs. 1-2, and the Pennsylvania Supreme Court has effectively agreed to determine whether that guidance is

consistent with the Election Code (*see* ECF No. 418-3).  There is therefore no legitimate, non-speculative risk of unequal treatment across counties.

**Certain of Plaintiffs' claims remain unripe.**  Although seemingly not at the core of their motion, part of Plaintiffs' requested relief seeks to move up the date by which the Court's stay shall be lifted as to "all settled state-law issues," Mot. at 2, 19, which the Secretary interprets to include Plaintiffs' challenge to the Commonwealth's requirement that poll watchers reside in the county in which they will watch polls.  This claim, which is based on nothing more than an unsupported assertion that Plaintiffs will be unable to locate sufficient poll watchers, remains premature, and Plaintiffs continue to lack standing to bring it.  *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-99 (2009) (rejecting "probabili[stic]" standing over dissent).  Rather than cure this pleading deficiency, Plaintiffs instead seek modification of this Court's stay order without justification, paradoxically attempting to *accelerate* the adjudication of their unripe poll-watcher challenge.  But the proper course should be to dismiss Plaintiffs' unripe claims outright, not to grant extraordinary preliminary relief to press this issue sooner.

**Plaintiffs' claims are barred by the Eleventh Amendment.**  Plaintiffs' claims are also barred by the Eleventh Amendment, which prohibits this Court from providing injunctive or declaratory relief based on "a claim that state officials violated state law in carrying out their official responsibilities." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *see* Richard H. Fallon, Jr. et al., *Hart and Wechsler's the Federal Courts and the Federal System* 935-37 (6th ed. 2015) (discussing *Pennhurst*'s holding).  Thus, at the very outset, because Counts III, V, VII, and VIX in the Amended Complaint are based purely on state law, they plainly must be dismissed.  *See* ECF No. 264 at 11.[2]

---

[2] Plaintiffs previously suggested their state-law claims could somehow survive because they assert

But even for those claims to which Plaintiffs affix a federal constitutional label (Counts I, II, IV, VI, and VIII), the Court should look past that misnomer and recognize that Plaintiffs' entire lawsuit is simply an attempt to force Commonwealth officials to abide by Plaintiffs' own interpretation of the Election Code, masquerading as a federal constitutional violation.  This case therefore continues to present the precise circumstance the Eleventh Amendment exists to guard against: Commonwealth officials have been hauled into federal court against their will to litigate (under the guise of a federal constitutional violation) whether they are complying with Plaintiffs' preferred interpretation of the state law.  *See Pennhurst*, 465 U.S. at 116-17.  This is particularly clear in light of the Secretary's recently issued guidance designed to ensure equal treatment of drop-boxes and "naked" ballots across the Commonwealth as well as the Pennsylvania Supreme Court's decision to exercise jurisdiction over the legal issues contained therein.  Those material developments further obviate Plaintiffs' remaining theories of constitutional harm, confirming this entire dispute is based on state law, not the federal constitution.

Indeed, the absurdity of Plaintiffs' position at this stage is underscored by the fact that the Court could not order certain of the relief Plaintiffs seek without directing state officials to violate the Election Code.  Specifically, Plaintiffs ask this Court to order state officials to "segregate and maintain intact all cast absentee and mail-in ballots that . . . lack an inner secrecy envelope or contain marks, text, or symbols thereon," and to "refrain from pre-canvassing or canvassing all cast absentee and mail-in ballots that . . . lack an inner secrecy envelope or contain marks, text, or symbols thereon."  Mot. at 1, 18.  But identifying which ballots "lack an inner secrecy

_____

related federal law claims, advancing a sort of supplemental jurisdiction theory of jurisdiction.  *See* ECF No. 320 at 41-42.  But that is not the law.  *Pennhurst* could not have been clearer: "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."  465 U.S. at 121 (footnote omitted).

envelope" (*i.e.*, which ballots are "naked") requires opening the outer envelopes of those ballots, which is not permitted until the Election Code-mandated pre-canvass begins no earlier than 7:00 a.m. on Election Day (here, November 3, 2020). *See* 25 Pa. Cons. Stat. §§ 2602(q.1), 3146.8(g)(1.1). To comply with such an order, election officials would be compelled to open the outer envelopes to identify "naked" ballots, in clear violation of the Election Code. This extraordinary aspect of Plaintiffs' request confirms they are urging this Court to improperly wade into and re-write the statutory scheme that controls canvassing of mail-in ballots.

## IV.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION.

For all the reasons set forth above, the Court need not even approach the merits of Plaintiffs' motion—but even if it did, Plaintiffs have not met their burden of establishing they are entitled to preliminary injunctive relief. In fact, Plaintiffs fail on each aspect of the test for such relief: they are not likely to be successful on the merits of their claims, they will not suffer irreparable harm absent an injunction, and the balance of the equities do not favor intrusive injunctive relief issued by a federal court based on a tentative construction of state law. *See, e.g.*, *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).

### A.    Plaintiffs Are Not likely To Be Successful on the Merits.

Plaintiffs do not remotely meet their burden of demonstrating a "reasonable probability" that they will succeed on the merits of their claims. Mot. at 19. The Third Circuit has made clear that this is no small hurdle, requiring movants to show a "*significantly* better than negligible" chance of prevailing on the merits of its claims in order to obtain the "extraordinary remedy" of a preliminary injunction. *Holland v. Rosen*, 895 F.3d 272, 285-86 (3d Cir. 2018) (emphasis added) (citations omitted). Notwithstanding this substantial burden (which Plaintiffs alone bear), they seemingly take it for granted, devoting a mere three paragraphs to explaining their so-called likelihood of success. *See* Mot. ¶¶ 39-41. Plaintiffs do not even identify which claims (state or

federal) they believe they are likely to succeed on and under what theories, let alone why they believe they are likely to succeed. But whether cast as federal constitutional or state Election Code violations, Plaintiffs' claims are uniformly likely to fail.

### 1. Plaintiffs Do Not Have a Reasonable Probability of Demonstrating There Will Be Federal Constitutional Violations.

Plaintiffs are unable to establish that they are likely to be successful on the merits of their federal constitutional claims, whether based on a theory of vote dilution or alleged violations of equal protection. With regard to alleged vote dilution, as pleaded in Plaintiffs' motion, Plaintiffs' claim of vote dilution depends entirely on their assertion that some "illegally cast" votes might be counted, thereby diluting validly cast votes. A necessary premise of that argument, however, is that "naked" ballots or ballots returned via drop-boxes are "illegally cast" under the Election Code, which is highly doubtful (and again would require this Court to intrude on the Pennsylvania Supreme Court's authority to construe the Election Code), *see infra* Part IV.A.2. And, contrary to Plaintiffs' theory of constitutional harm, an incorrect implementation of the Election Code by state officials is *not* a federal constitutional violation. *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) ("Mere violation of a state statute by an election official, for example," will not "give rise to a constitutional claim and an action under section 1983." (citing *Snowden v. Hughes*, 321 U.S. 1, 11 (1944))). If it were, any litigant could force state election officials to litigate the meaning of state election codes in federal court, at any time. That is not the law. Instead, recognizing the limited role of federal courts in policing state election procedures, courts have recognized "[i]nfringements of voting rights" only upon exceptional circumstances such as "dilution of votes by reason of malapportioned voting districts or weighted voting systems; purposeful or systematic discrimination against voters of a certain class, geographic area, or political affiliation; election frauds; and other wilful conduct which undermines the organic processes by which candidates are

elected." *Id.* (citations omitted).  Nothing of the sort is at issue here, and the federal constitution does not concern itself with such "garden variety" election code issues.  *Samuel v. V.I. Joint Bd. of Elections*, 2013 WL 842946, at *7 (D.V.I. Mar. 7, 2013) (collecting cases); *see also Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) ("In general, garden variety election irregularities do not violate the Due Process Clause, even if they control the outcome of the vote or election.").

Plaintiffs' speculative equal protection theory fares no better.  Here, Plaintiffs' argument boils down to a prediction (i) that counties will treat "naked" ballots differently, (2) that some counties may not employ ballot drop-boxes while others will, and (3) that some counties will accept in-person delivery of ballots by someone other than non-disabled voters, in contradiction to the guidance provided by the Secretary and, eventually, the construction of the law to be provided by the Pennsylvania Supreme Court.  But an equal protection violation is not likely:

*First*, with respect to "naked" ballots, Plaintiffs cite to practices employed by some counties during the June 2020 primary election of counting such ballots, while others set those ballots aside.  *See* Am. Compl. ¶ 157-58; Mot. at 9-10.  But as Plaintiffs themselves recognize, the Secretary recently issued guidance to every county explaining how "naked" ballots should be handled (they should uniformly be counted as valid votes).  *See* Ex. 2.  And the Pennsylvania Supreme Court is soon expected to provide a binding interpretation.  Plaintiffs only rejoinder is to hypothesize that some counties will not follow the law uniformly and some votes may be unequally treated across the Commonwealth.  To the extent that Plaintiffs have standing to assert that purely speculative theory (they do not, *see supra* Part III), the federal constitution does not turn every mistaken instance of unequal treatment into an equal protection violation.  "The unlawful administration by state officers of a state [election] statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless

there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden*, 321 U.S. at 8.  Absent willful misconduct and an election lacking "fundamental fairness," *see Bush v. Gore*, 531 U.S. 98, 109 (2000) (per curiam), there is no federal constitutional violation.

The same goes for Plaintiffs' specious predictions that some counties will accept ballots delivered in-person by someone other than the voter or an authorized agent to the extent that practice is permitted by the Code: the Secretary has already made clear that counties must not do so.  For instance, as part of the General Assembly-mandated report she issued on August 1, 2020 regarding the June 2020 Primary Election, the Secretary acknowledged the acceptance of certain such ballots during the primary election, noting that although a single county (Lycoming) "reported that it allowed approximately 20 ballots to be delivered by the voters' spouses," the county had already "taken steps to ensure that its staff does not accept this type of delivery in the future." *See* Ex. 4 at 38-39.  This is consistent with the Secretary's August 19 guidance regarding return of absentee and mail-in ballots, which makes clear in the opening sentence that "[u]nder Pennsylvania law, in addition to using the mail, voters may return *their own* voted absentee or mail-in ballot in-person." Ex. 1 at 2 (emphasis added).  Once again, Plaintiffs' equal protection theory is premised on a prediction that counties will ignore the law and treat ballots differently.

The present situation stands in stark contrast to the challenge in *Pierce*, which was brought just days before the election (an October 31 challenge to a November 4 election) and at a time when it was clear that one county (Allegheny) was going to deploy ballot-counting procedures that differed from another (Philadelphia).  *See* 324 F. Supp. 2d at 688-89, 698.  Here, Election Day remains two months away and the Secretary's recent guidance—to say nothing of the forthcoming ruling expected from the Pennsylvania Supreme Court—alleviates the sort of concerns regarding lack of uniformity apparent in *Pierce* (which did not concern an issue for which there was a

controlling Supreme Court decision).  To that end, Plaintiffs' reliance on practices deployed in certain counties during the June primary is misplaced, as the primary obviously pre-dated the recent formal Secretarial guidance and forthcoming Pennsylvania Supreme Court decision.

*Second*, with respect to ballot drop-boxes, Plaintiffs' motion raises a concern found nowhere in their Amended Complaint.  In the motion, Plaintiffs state that, "even if a state court were to determine that drop-boxes were proper, the fact that not all counties employ them raises a constitutional concern."  Mot. ¶ 41.  But Plaintiffs offer no such allegation in the Amended Complaint, instead limiting their allegations to the contention that use of drop-boxes is illegal— full-stop—without any assertion that the use of drop-boxes by some counties (but not others) violated equal protection or other rights.  And even if Plaintiffs had alleged in their Amended Complaint that the use of drop-boxes by some counties rose to the level of a federal constitutional violation, such claim would fail.  Pennsylvania has long vested discretion in county boards of elections to tailor and establish election procedures for each jurisdiction (including the number and location of polling places), *see, e.g.*, 25 Pa. Cons. Stat. § 2726, and it is long-settled that such local distinctions do not create federal constitutional concerns.  *Cf. PG Publ'g Co. v. Aichele*, 705 F.3d 91, 114-16 (3d Cir. 2013).  Plaintiffs have not explained why variation as to the use of drop-boxes would constitute a federal constitutional violation, nor have they put forward any judicially manageable standards governing what degree of similarity must exist across counties.  Thus, Plaintiffs are not likely to succeed on the merits of their equal treatment claims.

### 2. The Secretary's Guidance is Consistent with the Election Code and Does Not Violate Commonwealth Law.

Plaintiffs also do not establish a reasonable probability of success on their allegations that Defendants' future actions will violate the Election Code.  Even if the Court were to un-abstain and issue a tentative construction of the Pennsylvania Election Code in the context of Plaintiffs'

motion for preliminary injunctive relief—and it should not, particularly in light of the Pennsylvania Supreme Court's recent order—the Secretary's existing guidance is entirely consistent with the Election Code on the issue of both "naked" ballots and drop-boxes.  While the Secretary does not exhaustively delve into these issues of state law statutory interpretation at this stage, the Secretary's guidance related to both "naked" ballots and drop-boxes is uniform and statutorily sound, such that there is no need for this Court to change course even in the absence of a decision of the Pennsylvania Supreme Court.

**"Naked" ballots are not void.**  The Secretary has issued guidance directing that naked ballots uniformly be counted and not voided.  While the Election Code states that absentee and mail-in voters "shall" enclose their ballots in secrecy envelopes, *see* 25 Pa. Cons. Stat. §§ 3146.6(a), 3150.16(a), the Code provides no authority to void naked ballots.  The lack of authority to void naked ballots stands in contrast to other provisions that explicitly direct when a certain defect will render a ballot void.  *See, e.g.*, *id.* § 3063 ("What ballots shall be counted; manner of counting; defective ballots"); *see also id.* § 3055(d) (directing that ballots that do not comply with a certain numbering requirement "shall be void and shall not be counted"); *id.* § 3062(c) (directing that ballots that do not comply with the ban on stickers or labels "shall be void and may not be counted").[3]  Put simply, the General Assembly has not been shy in identifying disqualifying ballot deficiencies, and the Election Code's silence with respect to voiding "naked"

---

[3] Section 3063 of the Election Code is especially relevant because the following language was added to it in Act 77:  "In districts in which paper ballots or ballot cards are electronically tabulated, stickers or labels may not be used to mark ballots.  A vote cast by means of a sticker or label affixed to a ballot or ballot card *shall be void and may not be counted*."  *Id.* (emphasis added).  The October 2019 General Assembly therefore specifically knew how to ensure that certain deficient ballots are not counted.  The very same lawmakers who enacted the mail-in voting laws chose to include a directive to void ballots containing a sticker or label, but did not direct that naked absentee or mail-in ballots "shall be void and may not be counted."

mail-in ballots must thus be read against this pattern of legislative clarity.  Coupling that pattern with the well-settled presumption against disenfranchisement, *see Shambach v. Bickhart*, 845 A.2d 793, 798-99 (Pa. 2004) (collecting cases), it becomes clear that Plaintiffs' claim that counting naked ballots is "illegal" is not likely to carry the day in Commonwealth courts.

**The Election Code permits ballot drop-boxes.**  The use of ballot drop-boxes for the return of absentee or mail-in ballots is entirely consistent with the Election Code, which requires merely that such ballots be "deliver[ed]" "in person" to the county board of elections.  25 Pa. Cons. Stat. §§ 3146.6(a), 3150.16(a) (requiring that absentee and mail-in ballot envelopes not sent through the mail "shall . . . be securely sealed and the elector shall . . . deliver it in person to said county board of election").  Crucially, a county board of elections is a body, not a place.  *Id.* § 2641; *see also id.* § 2602 ("The words 'county board' or 'board' shall mean the county board of elections of any county herein provided for.").  Thus, ballots must be delivered to that body—wherever such body authorizes it—not a specific place or office.  In fact, the Election Code refrains from demanding that ballots be returned to a specific office or address; whereas the Code uses the phrase "received in the office of the county board" in several places, it does not use that phrasing when referring to where the "deliver[y]" of absentee or mail-in ballots "in person" must occur, instead referring only to "deliver[y]" to the "county board of election," not the "office" of said board.  *Id.* §§ 3146.6(a), 3150.16(a).[4]  The Code also authorizes counties to establish additional board of elections locations "as may be necessary."  *See id.* § 2645(b).  The use of mail-in drop-boxes does not conflict with the Election Code, as the Commonwealth courts will likely conclude.

---

[4] Again, the General Assembly knew how to specify that delivery must be to "the address" of the office of the county board of elections, as contrasted with the county board of elections (*i.e.*, the body).  Specifically, a military-overseas ballot is counted only if it is returned to "*the address* that the appropriate county election board has specified."  *Id.* § 3511(a) (emphasis added).

**B.       Plaintiffs Will Not Suffer Irreparable Harm Absent the Requested Relief.**

Plaintiffs cannot carry their burden of establishing that they will suffer irreparable harm if this Court fails to intervene at this time, particularly in light of the Pennsylvania Supreme Court's exercise of jurisdiction over the relevant state-law issues and invitation for expedited supplemental briefing.  ECF No. 418-3.  Plaintiffs' basis for requesting injunctive relief is that "the window for action to protect Plaintiffs' constitutional rights is closing fast" because "at least one county" has "announced plans to install" ballot drop-boxes by October 1, and ballots may be comingled and canvassed thereafter.  *Id*.  But the exhibit Plaintiffs cite (a 7-month old email chain) for their supposed announcement that a single county (Delaware County) is going to introduce drop-boxes by October 1 does not support that claim.  *See* Mot. ¶ 22 (citing App. Ex. I (ECF No. 415-33)).  For example, Plaintiffs request an injunction prohibiting the pre-canvassing and canvassing of certain ballots.  *See* Mot. at 1, 18 (Req. (b)).  But pursuant to the Election Code, pre-canvassing cannot begin until the morning of November 3, 2020—more than two months away—making it obvious that Plaintiffs will not suffer irreparable harm if that relief is not ordered prior to the October 5 date set forth in the existing abstention order.  *See* 25 Pa. Cons. Stat. §§ 2602(q.1), 3146.8(g)(1.1).  And once again, it is likely the Pennsylvania Supreme Court will issue a decision interpreting the relevant Election Code provisions before ballot collection and canvassing begin.

But perhaps most glaring, Plaintiffs' sudden claim of irreparable injury rings hollow in light of Plaintiffs' failure to pursue the state-court avenues this Court advised in its abstention order, *see* Op. at 31-32.  Plaintiffs did not initiate a state-court proceeding seeking definitive interpretation of the relevant state Election Code provisions, nor did they take action to attempt to expedite action in any of the existing state-court proceedings.  To the contrary, Plaintiffs left in place their filed opposition to the Secretary's petition for extraordinary jurisdiction before the Pennsylvania Supreme Court.  If Plaintiffs truly feared irreparable harm, they would have

advocated swift resolution in Commonwealth courts, not opposed it.  Plaintiffs' own foot-dragging belies the need for urgency now.

### C.      It Is Not Inequitable to Deny Plaintiffs' Requested Relief.

Finally, the equities do not justify the intrusive relief Plaintiffs seek.  As this Court recognized, "Plaintiffs intentionally opted to forgo seeking any preliminary provisional relief" at the outset of this case and before this Court opted to abstain.  Op. at 33.  Furthermore, when given the opportunity (indeed, the direction) to pursue resolution of the relevant state-law questions in state court, Plaintiffs sat on their hands, instead returning to federal court.  The Pennsylvania Supreme Court has now agreed to hear this case, and the public interest would be disserved by allowing Plaintiffs' blatant forum shopping and having this Court enter the fray at this stage.  *See Holland*, 895 F.3d at 285-86 (3d Cir. 2018).  Finally, a grant of the relief at this juncture would risk substantial voter confusion and uncertainty as to whether their votes will be counted (or counted in a timely manner) as well as imposing unnecessary administrative burdens on county boards of elections as they busily prepare for the upcoming General Election.  The public interest is best served by this Court staying the course and denying Plaintiffs' requested relief.

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion and leave the Court's abstention order in place.

Dated:  September 2, 2020

KIRKLAND & ELLIS LLP

By:    */s/ Daniel T. Donovan*
      Daniel T. Donovan
      Michael A. Glick
      Susan M. Davies
      Kristen L. Bokhan
      1301 Pennsylvania Avenue, N.W.
      Washington, DC 20004
      (202) 389-5000 (telephone)
      (202) 389-5200 (facsimile)
      daniel.donovan@kirkland.com
      michael.glick@kirkland.com
      susan.davies@kirkland.com
      kristen.l.bokhan@kirkland.com

      Madelyn A. Morris
      Sara S. Tatum (*pro hac vice* pending)
      601 Lexington Avenue
      New York, NY 10022
      (212) 446-4800 (telephone)
      (212) 446-4900 (facsimile)
      madelyn.morris@kirkland.com
      sara.tatum@kirkland.com

Respectfully submitted,

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL

By:    */s/ Karen M. Romano*
      Karen M. Romano
      Keli M. Neary
      Howard G. Hopkirk
      Nicole Boland
      Stephen Moniak
      15th Floor, Strawberry Square
      Harrisburg, PA 17120
      (717) 787-2717 (telephone)
      (717) 772-4526 (facsimile)
      kromano@attorneygeneral.gov
      kneary@attorneygeneral.gov
      hhopkirk@attorneygeneral.gov
      nboland@attorneygeneral.gov
      smoniak@attorneygeneral.gov

MYERS BRIER & KELLY LLP

By:    *Daniel T. Brier*
      Daniel T. Brier
      Donna A. Walsh
      425 Spruce Street, Suite 200
      Scranton, PA 18503
      (570) 342-6100 (telephone)
      (570) 342-6147 (facsimile)
      dbrier@mbklaw.com
      dwalsh@mbklaw.com

*Counsel for Kathy Boockvar
Secretary of the Commonwealth of
Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Daniel T. Donovan*
Daniel T. Donovan

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of*
*Pennsylvania*