IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | Civil Action |
| Plaintiffs, | |
| v. | No.: 2:20-CV-966 |
| KATHY BOOCKVAR; *et al.*, | |
| Defendants. | Judge J. Nicholas Ranjan |

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY STAY ORDER AND MOTION FOR LIMITED PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

|      |                                                                                                                                                 | Page |
|------|-------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION ...........................................................................................................1                       |      |
| II.  | PLAINTIFFS' MOTION SEEKS RECONSIDERATION OF THE COURT'S PRIOR RULING..........................................................................................3 |      |
| III. | PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF DURING A STAY IS PROCEDURALLY INAPPROPRIATE AND PREMATURE .........................................7 |      |
| IV.  | A HEARING IS REQUIRED BEFORE PLAINTIFFS' REQUESTED PRELIMINARY RELIEF CAN BE GRANTED ................................................................9 |      |
| V.   | PLAINTIFFS FAILED TO IDENTIFY, AND DO NOT SATISFY, THE ESPECIALLY HIGH BAR FOR A MANDATORY INJUNCTION..............................12 |      |
| VI.  | CONCLUSION................................................................................................................13                    |      |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bradley v. Pittsburgh Board of Education*,
  910 F.2d 1172 (3d Cir. 1990)......................................................................................8, 10

*Drysdale v. Woerth*,
  153 F. Supp. 2d 678 (E.D. Pa. 2001))...............................................................................3

*Group SEB USA, Inc. v. Euro-Pro Operating LLC*,
  C.A. No. 14-137, 2014 WL 2002126 (W.D. Pa. May 15, 2014), *aff'd*, 774 F.3d 192
  (3d Cir. 2014)...................................................................................................................11

*Harsco Corp. v. Zlotnicki*,
  779 F.2d 906 (3d Cir. 1985).............................................................................................2

*Hope v. Doll*,
  --- F.3d ----, 2020 WL 5001785 (3d Cir. Aug. 25, 2020)...............................................12

*Hutchinson v. Overmyer*,
  C.A. No. 19-0003E, 2020 WL 347502 (W.D. Pa. Jan. 21, 2020)...................................11

*Kos Pharmaceuticals Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)........................................................................................8, 10

*Max's Seafood Cafe v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999).............................................................................................2

*New Jersey-Philadelphia Presbytery of Bible Presbyterian Church v. New Jersey State
  Board of Higher Education*,
  654 F.2d 868 (3d Cir. 1981).............................................................................................6

*Pierce v. Allegheny County Board of Elections*,
  324 F. Supp. 2d 684 (W.D. Pa. 2003)....................................................................6, 7, 8, 9

*Professional Plan Examiners of New Jersey, Inc. v. Lefante*,
  750 F.2d 282 (3d Cir. 1984).............................................................................................8

*Punnett v. Carter*,
  621 F.2d 578 (3d Cir. 1980)...........................................................................................11

*Snyder v. United States*,
  No. 07-cr-450, 2013 WL 1730537 (M.D. Pa. Apr. 22, 2013).....................................2, 3

*Soto v. Sleet*,
  458 F. App'x 89 (3d Cir. 2012).........................................................................................2

*United States v. Price*,
  688 F.2d 204 (3d Cir. 1982) ................................................................................................12

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................................................11

**Docketed Cases**

*Pennsylvania Democratic Party et al. v. Boockvar et al.*, No. 133 MM 2020 (Pa.) ...................1, 6

**Federal Statutes**

PUBLIC INTEREST LAW ...............................................................................................................13

**State Statutes**

25 P.S. § 3146.8 ...............................................................................................................................3

**Regulations**

Order, Dkt. 410 ................................................................................................................................5

Scheduling Order, Dkt. 123 .............................................................................................................5

**Other Authorities**

Jane C. Timm, *A White Person and a Black Person Vote by Mail in the Same
  State. Whose Ballot is More Likely to Be Rejected*, NBC NEWS (Aug. 9, 2020),
  https://www.nbcnews.com/politics/2020-election/white-person-black-person-
  vote-mail-same-state-whose-ballot-n1234126 ...................................................................10

The NAACP Pennsylvania State Conference, Common Cause Pennsylvania, the League of Women Voters of Pennsylvania, Patricia M. DeMarco, Danielle Graham Robinson, and Kathleen Wise (together, "Voter Intervenors") oppose Plaintiffs' motion to modify stay order and motion for limited preliminary injunction ("Mot.") (Dkt. 414).

I.     **INTRODUCTION**

Plaintiffs' request for allegedly "limited" relief—which would require extensive, affirmative steps by the 67 county election boards—is, in reality, an improper motion for reconsideration of the Court's decision to defer to the proceedings now pending before the Supreme Court of Pennsylvania.[1] Plaintiffs do not identify any new facts or change in law to justify reconsideration, nor do they even acknowledge the legal standard Plaintiffs must satisfy to obtain their requested relief.  That is because they do not and cannot meet that standard.  Indeed, the *only* thing that has changed since this Court's decision to apply *Pullman* abstention a week and a half ago is how quickly the issues will be decided by the state courts of Pennsylvania.  The Pennsylvania Supreme Court has accepted emergency jurisdiction over Pennsylvania election code issues and has required parties (including Plaintiffs in this case) to submit legal papers and affidavits in support of their positions by September 8.  *See Pennsylvania Democratic Party et al., v. Boockvar et al.*, No. 133 MM 2020 (Pa. Sept. 1, 2020). Thus, the interpretation of the Pennsylvania election code is swiftly advancing in the jurisdiction that should address those issues.

---

[1]     *See* Notice of Ruling Before Pennsylvania Supreme Court, Dkt. 418.

Plaintiffs have no new facts to present that justify the relief they seek in this case. Much of their motion relies on information available *before* the Court's decision to abstain. Instead, Plaintiffs simply rehash the Amended Complaint's allegations about drop boxes and secrecy envelopes. Those allegations, and Plaintiffs' reliance on updated County voting procedures and guidance from Secretary Boockvar, do not justify reconsideration of the Court's Order, and, if anything, confirm the wisdom of the Court's decision to apply *Pullman* abstention. It is still true that "most of Plaintiffs' federal claims turn on interpretations of the Pennsylvania election code" and that, "for nearly all these claims, the correct interpretation of the statutory text is unclear." Opinion, Dkt. 409, at 3. It is also still true that Plaintiffs have not produced any evidence of voter fraud related to mail-in voting or drop-boxes. As it has not presented anything new that would justify reconsideration of the Court's order to stay, Plaintiffs' motion should be rejected.

Even if the Court considers Plaintiffs' motion beyond its apparent procedural defects, Plaintiffs' motion fails for at least three additional reasons. *First*, Plaintiffs' belated request for preliminary relief—made for the first time more than two months after filing this case—is improper because the Court has not yet addressed the numerous grounds for dismissal raised that the Court would have to consider before granting it. *Second*, the motion for preliminary relief rests on disputed factual claims that would require a hearing to resolve, but Plaintiffs did not request such a hearing or provide any justification for why one is unnecessary. *Finally*, Plaintiffs failed to identify, and do not satisfy, the especially high bar for a preliminary injunction seeking to alter the status quo. Their demands go well beyond merely maintaining the status quo, and the relief they seek would likely cause injury to the public by depressing the use of mail-in ballots. Plaintiffs have a particularly heavy burden to justify the necessity of their requests. They have not met it.

The Court should therefore deny Plaintiffs' motion.

## II.  PLAINTIFFS' MOTION SEEKS RECONSIDERATION OF THE COURT'S PRIOR RULING

Plaintiffs' motion seeks reconsideration of the Court's order applying *Pullman* abstention. As with any motion for reconsideration, the relief Plaintiffs seek is a modification of the Court's order based on purportedly "new" information. Plaintiffs, however, do not present anything new that would justify reconsideration.

"A motion for reconsideration is a device of limited utility," which serves "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *Snyder v. United States*, No. 07-cr-450, 2013 WL 1730537, at *1 (M.D. Pa. Apr. 22, 2013). A party seeking reconsideration must therefore demonstrate at least one of the following: (1) "an intervening change in the controlling law," (2) "the availability of new evidence," or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Soto v. Sleet,* 458 F. App'x 89, 90 (3d Cir. 2012) (citing *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided." *Snyder*, 2013 WL 1730537, at *1 (citing *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001)).

*First*, Plaintiffs argue that facts disclosed during discovery warrant modification of the Court's order. Mot. ¶¶ 10-12. For example, Plaintiffs suggest that their motion is justified in light of evidence that "Defendants plan to utilize drop boxes and to clothe, process, and count ballots lacking an inner secrecy envelope *notwithstanding the requirements of Pennsylvania's election laws*." *Id.* ¶ 11 (emphasis added). But these are not new assertions—Plaintiffs' Amended Complaint is replete with allegations regarding the use of drop-boxes and secrecy

3

envelopes that Plaintiffs claim will be contrary to state election laws.  *See, e.g.*, Dkt. 234 ¶¶ 122-34, 153-61.  And, of course, the significance of these allegedly "new" facts still depends upon the interpretation of those state election laws.  As this Court correctly observed, "a state court could simply decide whether Defendants' conduct violates the election code and, if it does, enjoin it on that basis.  Conversely, a state-court finding that Secretary Boockvar's guidance was lawful could defeat, or at least play a critical role in the Court's analysis of, Plaintiffs' constitutional claims that are based on that guidance." Dkt. 409 at 3-4.  Nothing presented in Plaintiffs' motion changes that analysis.

Plaintiffs also argue that modification of the Court's order is warranted because discovery revealed that Secretary Boockvar and the County Election Boards did not segregate absentee and mail-in ballots that were either delivered via drop-boxes or lacked an inner secrecy envelope or contained marks, text, or symbols on such envelope during the June 2, 2020 Primary Election. Mot. ¶ 12.  As an initial matter, Plaintiffs' complaint is irrelevant because such segregation is not required by Pennsylvania law.  Further, if Plaintiffs truly believed such segregation is required, Plaintiffs could have and should have made these allegations in their original or amended complaint.  They did not.  Instead, Plaintiffs chose ***not*** to seek any such relief, on a preliminary injunctive basis or otherwise.  *See* Opinion, Dkt. 409 at 33 ("Plaintiffs intentionally opted to forgo seeking any preliminary provisional relief ….").  At best, Plaintiffs' requested relief requires interpretation of state election law that only further *supports* the Court's order on abstention.

*Second*, Plaintiffs argue that additional guidance issued by Secretary Boockvar on August 19, 2020 warrants modification of the Court's order. Mot. ¶¶ 13-22.[2] Plaintiffs' argument lacks merit. The Secretary's guidance is publicly available, was discussed with Plaintiffs on August 20, 2020, and was produced to Plaintiffs on August 21, 2020, *id.* ¶ 14, all in advance of the Court's order granting Defendants' motions and staying the case. If the guidance altered the resolution of the pending motions, Plaintiffs could have notified the court. They did not do so. Regardless, the Secretary's guidance confirms the Court's application of *Pullman* abstention. The guidance encourages County Election Boards to (1) use drop-boxes and (2) count absentee and mail-in ballots that lack inner secrecy envelopes. *See* App'x to Mot. (Dkt. 415) Ex. B-2 & B-3. Plaintiffs discuss this guidance in length, noting that not all County Election Boards agree with the Secretary's interpretation of election law, Mot. ¶ 19, that County Election Boards are not required to follow the Secretary's guidance as to drop-boxes, Mot. ¶ 20, and that the guidance does not change their views on the security of drop-boxes, Mot. ¶ 21. Plaintiffs fail to explain, however, how the guidance changes any relevant facts or law. That is because it does not. The guidance simply encourages the same practices that the Plaintiffs challenged in their Amended Complaint. *See, e.g.*, Dkt. 234 ¶¶ 122-34, 153-61. Like Plaintiffs' other allegedly new information, the Secretary's guidance does not justify reconsideration or modification of the Court's order, but instead provides further support for *Pullman* abstention.

*Third*, Plaintiffs provide no justification for their request that the Court reconsider the date on which it will consider motions to lift the stay. Plaintiffs observe that September 14, 2020

---

[2] Plaintiffs' motion repeats paragraph numbers 21 and 22. This citation refers to those paragraphs on pages 10-12.

5

is the date when County Election Boards may begin mailing ballots to voters, Mot. ¶ 21,[3] but this is not new information. That date comes from Plaintiffs' reading of the Election Code itself, *see id.*, and so was available to them before filing their initial complaint over two months ago.[4] Plaintiffs also note that Delaware County intends to install drop-boxes by October 1, *see* Mot. ¶ 22,[5] but Plaintiffs do not explain why their proposed alternative date of September 14 is appropriate as a result. Nor do Plaintiffs explain why Delaware County's *installing* drop boxes four days before this Court will consider motions to lift the stay changes their allegations regarding drop-box use, including by Delaware County. *See* Am. Compl., Dkt. 234 ¶ 128 (alleging use of drop-boxes by Delaware County during the June Primary Election).

Nor do Plaintiffs explain the connection between September 14 and "all settled state-law issues." *See* Mot. at 2. This Court identified those issues as (i) Plaintiffs' third-party ballot-delivery claims that are set forth as parts of Counts I, II and III; (ii) Plaintiffs' facial challenge to Pennsylvania's poll-watching residency restriction set forth in Counts IV and V; and (iii) Plaintiffs' claims for improper provisional voting as set forth in Counts VIII and IX. *See* Order, Dkt. 410 at 2. But there is no connection between these claims and either the mailing of ballots to voters or the installation of drop-boxes, and therefore no reason that these claims in particular must be resolved prior to October 5, 2020.

---

[3]  This citation refers to the paragraph 21 entirely on page 12.

[4]  September 14 is also a week before this Court had scheduled an evidentiary hearing in this case, but Plaintiffs never sought to move the hearing date earlier. *See* Scheduling Order, Dkt. 123 (scheduling an evidentiary hearing for September 22 and 23, 2020).

[5]  This citation refers to the paragraph 22 entirely on page 12.

*Finally*, Plaintiffs' claimed urgency rings hollow given their own actions—or lack thereof—in related state court cases. Despite their professed interest in resolving these questions quickly, Plaintiffs did not notify the Commonwealth Court of this Court's order staying this case and continued to oppose Secretary Boockvar's Application for Extraordinary Jurisdiction. *See Pennsylvania Democratic Party et al. v. Boockvar et al.*, No. 133 MM 2020 (Pa.). Indeed, the only truly noteworthy development since the Court's order staying the case is that the Supreme Court of Pennsylvania granted the Secretary's Application for Extraordinary Jurisdiction, with supplemental briefing due by September 8, 2020. *See Pennsylvania Democratic Party et al., v. Boockvar et al.*, No. 133 MM 2020 (Pa. Sept. 1, 2020). This Order *strengthens* the case for *Pullman* abstention, as the Supreme Court of Pennsylvania—the highest judicial authority on Pennsylvania election law—is set to address the unresolved issues of state law on an expedited basis. As this Court recognized, the outcome in the Supreme Court of Pennsylvania will drastically impact any ongoing litigation here. *See* Dkt. 409 at 3.

### III. PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF DURING A STAY IS PROCEDURALLY INAPPROPRIATE AND PREMATURE

Despite their extensive reliance on *Pierce v. Allegheny County Board of Elections*, Plaintiffs fail to acknowledge that preliminary relief is inappropriate because the Court has not determined "whether the case is to be dismissed outright." 324 F. Supp. 2d 684, 704 (W.D. Pa. 2003) (citing *New Jersey-Philadelphia Presbytery of Bible Presbyterian Church v. N.J. State Bd. of Higher Educ.*, 654 F.2d 868, 887 (3d Cir. 1981)). In determining that a stay is appropriate under *Pullman*, the Court did not address the numerous other grounds for Rule 12 dismissal raised by the Defendants and Intervenors. Dkt. 409 at 12 n.3.

Those grounds for dismissal include failure to state a claim, standing, ripeness, mootness, venue, sovereign immunity, multiple other grounds for abstention, and indefiniteness. *Id.* For

example, Voter Intervenors argued that Plaintiffs' fraud-based claims should be dismissed for failure to plead fraud with sufficient particularity. Dkt. 288-1 at 14; Dkt. 345 at 1-2. In their subsequent discovery responses, Plaintiffs have claimed that their fraud allegations are irrelevant to their claims and admitted that they have no evidence of mail-in voter fraud occurring during the June primary; this provides further support for the view that those fraud-based claims (at the very least, Counts IV, V, VI, and VII) should be dismissed. *See* Pls.' Objections & Answers to Sec'y Boockvar's Interrogs., at 2, 4 (Aug. 10, 2020) (objecting to discovery on "instance[s] of actual or suspected voter fraud" as being outside the scope of discovery, stating that "to the degree that evidence of voter fraud or any other election-related fraud or illegality is relevant … Plaintiffs will rely on … publicly available news reports"); Pls.' Suppl. Objs. and Resps. to Democratic Intervenors' Document Req., Req. No. 1 (Aug. 14, 2020) (stating that Plaintiffs do make any "allegations that 'ballot harvesting' 'manipulating and destroying ballots,' double voting, and/or voter fraud from mail-in and absentee ballots *actually occurred* during the Primary Election.") (emphasis added). Similarly, Voter Intervenors' argument for *Colorado River* abstention (Dkt. 288-1 at 11-13; Dkt. 345 at 2-5) is strengthened by the fact that the Supreme Court of Pennsylvania has taken up the issues presented in this case under its extraordinary jurisdiction. *See* Notice of Ruling Before Pennsylvania Supreme Court, Dkt. 418. All of these grounds for dismissal must be addressed before the Court can determine whether preliminary relief should be entertained. *See Pierce*, 324 F. Supp. 2d at 704 (citing *New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey Bd. of Higher Educ.*, 654 F.2d 868, 887 (3d Cir. 1981)).

Plaintiffs attempt to frame their case as being identical to *Pierce*, but the procedural postures of the cases are markedly different. In *Pierce*, because the plaintiffs filed a temporary

restraining order simultaneously with their complaint, the requested preliminary injunctive relief was already before the court when it decided that *Pullman* abstention applied, so it was able to address all of the grounds for dismissal at once. *See* 324 F. Supp. 2d at 689. The court granted the temporary restraining order at an emergency hearing that same day and continued the temporary restraining order as a preliminary injunction four days later after hearing argument and evidence. *Id.* Only ***after*** the preliminary injunction was in place did the court address the grounds for dismissal and whether abstention was appropriate. *Id.*

Here, despite Plaintiffs' insistence about the urgency of these proceedings, they failed to move for injunctive relief for five days after this Court's order granting abstention and staying the proceeding and for twelve days after the Secretary's Application for Extraordinary Jurisdiction to the Supreme Court of Pennsylvania had been filed. Had Plaintiffs filed a request for injunctive relief with their complaint, the Court could have addressed all of grounds for dismissal, *Pullman* abstention, and Plaintiffs' request for preliminary relief. *Id.* Plaintiffs' requested preliminary injunction comes prematurely and should not be entertained unless and until this court determines "whether the case is to be dismissed outright." *Pierce*, 324 F. Supp. 2d at 704.

### IV.   A HEARING IS REQUIRED BEFORE PLAINTIFFS' REQUESTED PRELIMINARY RELIEF CAN BE GRANTED

"As a general principle, the entry or continuation of an injunction requires a hearing." *Prof'l Plan Exam'rs of N.J., Inc. v. Lefante*, 750 F.2d 282, 288 (3d Cir. 1984); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 719 n.16 (3d Cir. 2004) ("[W]here the motion turns on a disputed factual issue, an evidentiary hearing is ordinarily required.").

Plaintiffs' motion for preliminary relief does not request a hearing. Rather, Plaintiffs state their belief that "the evidence obtained through discovery supports modification of this

Court's August 23, 2020 Order to provide … limited, preliminary injunctive relief." Mot. at 19. Plaintiffs' requested relief that Defendants segregate ballots cast through drop-boxes, lacking secrecy envelopes, or delivered by third parties for non-disabled voters, however, requests entirely different relief from that requested by their Amended Complaint. *Id.* at 1. As such, Plaintiffs' new requests create factual issues that must be heard by this Court before a preliminary injunction can be issued.[6]

Plaintiffs' conclusory reliance on *Pierce* for the assertion that "[w]hen the relief being sought would simply separate ballots out as part of a potential challenge, there exists no harm to others" (Mot. ¶ 45) is misguided, for three separate reasons. First, when the injunction to separate ballots was issued in *Pierce* those ballots had already been cast, thus (unlike here) a voter would not fear whether a challenge to their ballot before casting their vote. *See Pierce*, 324 F. Supp. 2d at 689 (ordering injunction on October 31, 2003 where ballots "had to be returned to the Board of Elections by 5:00 p.m." the same day). Second, the election in *Pierce* neither occurred under Act 77's expansion of mail-in voting nor during a public health crisis, both of which greatly expand the use and importance of mail-in voting. *Id.* Finally, the preliminary injunction in *Pierce* was issued after two days of hearing evidence.

---

[6] An evidentiary hearing is not a prerequisite to a preliminary injunction under Third Circuit law. The Third Circuit recognizes three factors that militate against an evidentiary hearing. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175–76 (3d Cir. 1990) (hearing not required (1) where the "movant is proceeding on a legal theory which cannot be sustained," (2) where "the facts are undisputed and the relevant factual issues are resolved," and (3) where "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm."). None of those factors are present here with respect to the relief requested by Plaintiffs' preliminary injunction. While there are no sustainable legal theories or facts supporting Plaintiffs' Amended Complaint, the facts implicated by the preliminary injunction are different and need to be resolved.

*Pierce* involved the segregation of under 1000 ballots in **one** county, all of which had been cast before the injunction issued. Plaintiffs now wish to expand that relief **statewide**, without **any** factual development, in an election where millions of votes will be cast by mail, in part to reduce exposure to a virus that has already killed over 180,000 Americans. Voters' awareness that potentially hundreds of thousands of ballots delivered via drop-box will be segregated would depress the use of mail-in ballots by voters who are either wary of using the Postal Service—already suffering from delays—or who fear voting in person due to COVID-19. Such relief is also more likely to affect Black voters, including members of Voter Intervenor organization NAACP-PA, as studies indicate that Black voters are less likely to believe their votes will be counted if delivered by mail.[7] No facts have been developed around the effects Plaintiffs' requested relief would have, including the effect on voting by Black voters and voters with elevated COVID-19 risk. Accordingly, because Plaintiffs' requested relief demands extensive factual development in its own right before a preliminary injunction can be considered, a hearing is necessary.[8]  *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178–79 (3d Cir.

---

[7]   *See* Jane C. Timm, *A White Person and a Black Person Vote by Mail in the Same State. Whose Ballot is More Likely to Be Rejected*, NBC NEWS (Aug. 9, 2020), https://www.nbcnews.com/politics/2020-election/white-person-black-person-vote-mail-same-state-whose-ballot-n1234126.

[8]   Plaintiffs' relief also would create significant burdens on Defendants and Pennsylvania voters. Defendants would be required to implement procedures to carry out the segregation of potentially tens of thousands of ballots. Meanwhile, voters would be discouraged from using drop-boxes creating confusion around what voting methods are safe and reliable. These burdens are directly relevant to the factors for issuing a preliminary injunction (specifically the balance of equities and public interest), and no facts exist for how significant these burdens would be.

1990) ("[W]e have vacated the order entered on a motion for preliminary injunction when the district court has failed to make adequate findings." (collecting cases)).

## V.  PLAINTIFFS FAILED TO IDENTIFY, AND DO NOT SATISFY, THE ESPECIALLY HIGH BAR FOR A MANDATORY INJUNCTION[9]

"[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo." *Kos. Pharms.*, 369 F.3 at 708. A party requesting a preliminary injunction aimed "not merely at preserving the status quo but at providing mandatory relief" bears a "particularly heavy" burden, *Group SEB USA, Inc. v. Euro-Pro Operating LLC*, C.A. No. 14-137, 2014 WL 2002126, at *4 (W.D. Pa. May 15, 2014) (alteration adopted) (quoting *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)), *aff'd*, 774 F.3d 192 (3d Cir. 2014). Therefore, "[m]andatory injunctions should be used sparingly," and only when the movant can show that the "right to relief is indisputably clear." *Hutchinson v. Overmyer*, C.A. No. 19-0003E, 2020 WL 347502, at *3 (W.D. Pa. Jan. 21, 2020) (quoting *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982)); *Hope v. Doll*, --- F.3d ----, 2020 WL 5001785, at * 3 (3d Cir. Aug. 25, 2020) (citing *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)) (cleaned up).

The relief Plaintiffs seek—including ordering Defendants to "segregate and maintain intact" certain ballots (Mot. 1-2)—goes beyond merely maintaining the status quo. Currently,

---

[9] Nor have Plaintiffs satisfied the general preliminary injunction standard requiring a showing of (1) likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) that the balance of equities weighs in its favor, and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). For the sake of efficiency, the Voter Intervenors do not address those factors here, but instead join in other Defendants' motions as applicable. *See* Order, Dkt. 416. However, insofar as Plaintiffs recently conceded in their discovery responses that they have no evidence voter fraud actually occurred during the June Primary Election; their claims cannot have a likelihood of success on the merits. *See* Pls.' Suppl. Objs. and Resps. to Democratic Intervenors' Document Req., Req. No. 1, *supra*, at 8.

counties are not mandated to segregate these ballots, and did not do so for the June Election. *See* Mot. ¶ 12. Thus, Plaintiffs' right to relief is *not* indisputably clear. *Hope*, 2020 WL 5001785, at * 3. Indeed, Plaintiffs demands would place a significant burden on counties by impairing their ability to adequately prepare for the election. Those burdens and the exigent circumstances surrounding their implementation are likely to create "uncertainty and confusion on the part of [the counties] faced with [the] injunctive orders," in violation of Federal Rule of Civil Procedure 65. *Hope*, 2020 WL 5001785, at *5. Despite their extraordinary requests, Plaintiffs do not acknowledge—let alone attempt to satisfy—the particularly "heavy burden" to show that a mandatory injunction is necessary. *Id.* at 3.

## VI. CONCLUSION

For the foregoing reasons, Voter Intervenors respectfully request that the Court deny Plaintiffs' motion to modify stay and motion for preliminary injunction.

Dated: September 2, 2020

Witold J. Walczak (PA No. 62976)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel.: (412) 681-7736
vwalczak@aclupa.org

Adriel I. Cepeda Derieux[†]
Sophia Lin Lakin[†]
Dale Ho[†]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500

Respectfully submitted,

*/s/ Lori A. Martin*
Lori A. Martin (PA No. 55786)
Christopher R. Noyes[†]
Eleanor Davis[†]
Jared Grubow[†]
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Lori.Martin@wilmerhale.com
Christopher.Noyes@wilmerhale.com
Eleanor.Davis@wilmerhale.com
Jared.Grubow@wilmerhale.com

Jason H. Liss[†]

13

acepedaderieux@aclu.org
slakin@aclu.org
dho@aclu.org

Sarah Brannon[†++]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Tel: (202) 210-7287
sbrannon@aclu.org

Ezra Rosenberg*
John Powers*
Voting Rights Project
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Tel: (202) 662-8300
erosenberg@lawyerscommittee.org
jpowers@lawyerscommittee.org

Mary M. McKenzie[†] (PA No. 47434)
Benjamin D. Geffen[†] (PA No. 310134)
PUBLIC INTEREST LAW CENTER
1500 JFK Blvd., Suite 802
Philadelphia PA 19102
Telephone: 215-627-7100
Fax: 215-627-3183
mmckenzie@pubintlaw.org
bgeffen@pubintlaw.org

WILMER CUTLER PICKERING HALE
 AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6699
Jason.Liss@wilmerhale.com

Samantha K. Picans[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
(720) 598-3477
Sam.Picans@wilmerhale.com

David P. Yin[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6677
David.Yin@wilmerhale.com

*Counsel for NAACP Pennsylvania State Conference, Common Cause Pennsylvania, League of Women Voters of Pennsylvania, Patricia M. DeMarco, Danielle Graham Robinson, and Kathleen Wise*

[†] Admitted *pro hac vice*.
\* *Pro hac vice* forthcoming.
[++] Not admitted in DC; DC practice limited to federal court only.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing Response in Opposition to Plaintiffs' Motion to Modify Stay Order and Motion for Preliminary Injunction were filed electronically and served on all counsel of record via the ECF system of the U.S. District Court for the Western District of Pennsylvania.

Dated: September 2, 2020

                                                                              */s/ Lori A. Martin*

                                                                              Lori A. Martin