**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 2:20-CV-966 |
| KATHY BOOCKVAR; *et al.*, | Judge J. Nicholas Ranjan |
| Defendants. | |

**The Alliance Intervenors' Brief in Opposition to Plaintiffs' Motion to Modify Stay Order and Motion for Limited Preliminary Injunctive Relief (ECF No. 414)**

Plaintiffs have asked this Court for a preliminary injunction requiring ballots that were properly cast under the election laws as they currently stand to be segregated indefinitely, for untimely discovery, and for reconsideration of the abstention order. Pls.' Mot. to Modify Stay Order & Mot. for Limited Prelim. Inj. Relief ("Plaintiffs' Motion"), ECF No. 414. In other words, despite the Court's well-reasoned decision to abstain and to stay proceedings to give the state court an opportunity to resolve unsettled questions of state law, Plaintiffs have asked this Court for permission to engage in extensive litigation activity. Intervenor-Defendants the Pennsylvania Alliance for Retired Americans, Michael Crossey, Dwayne Thomas, Irvin Weinreich, and Brenda Weinreich (the "Alliance" and "individual voter intervenors" respectively, the "Alliance Intervenors" collectively) oppose the request.

While the Alliance Intervenors join and adopt, and do not repeat here, the objections and arguments lodged by Defendants and other Intervenor-Defendants in their responses to Plaintiffs' Motion, they separately submit this short brief (1) to re-raise their outstanding objections to Plaintiffs' standing to pursue this action as well as their failure to state a claim, arguments raised

- 1 -

in a motion to dismiss left undecided when the Court chose to abstain, and (2) to specifically address the ways in which the relief that Plaintiffs request would impose significant and concrete burdens on countless Pennsylvania voters including the individual voter intervenors and the Alliance's members. The objections raised by the Alliance Intervenors, as well as Defendants and other Intervenor-Defendants, in motions to dismiss present threshold issues that must be decided before the Court may grant any relief to Plaintiffs, including the interim relief that they now seek, as well as their requests that the Court allow them to engage in discovery.

Plaintiffs have not even attempted to allege (nor could they possibly prove) that Defendants' implementation and interpretation of Pennsylvania election law causes Plaintiffs any cognizable injury. The evidence they have marshaled does not demonstrate widespread voter fraud, or a threat to electoral integrity in Pennsylvania, or *any* risk that would justify the extraordinary remedy of a preliminary injunction. Instead, all Plaintiffs present is a generalized interest in having their interpretation of state law enforced. By striking contrast, if Plaintiffs' requested relief is *granted*, it *will result* in serious disruption of Defendants' preparation for the coming November election, and *will impose* serious and severe burdens on thousands of lawful voters including the individual voter intervenors and the Alliance's members, up to and including disenfranchisement. Thus, even if Plaintiffs were likely to succeed on their claims (which they are not), the equitable considerations alone independently counsel against the requested relief. Plaintiffs' Motion should be denied.

## BACKGROUND

Plaintiffs' amended complaint challenges a panoply of different policies adopted by various counties in the June Primary and two election laws, all of which Plaintiffs claim violate Pennsylvania's election laws. *See generally* Amended Complaint ("Am. Compl."), ECF No. 232. Plaintiffs' Motion, however, implicates only three of the challenged laws or policies: (1) the

alleged policy of some counties to count absentee and mail-in ballots without a secrecy envelope or with secrecy envelopes that have text, marks, or symbols; (2) the alleged policy of some counties to provide ballot dropboxes for voters to submit absentee and mail-in ballots ; and (3) the alleged policy of some counties to count absentee and mail-in ballots that were delivered by third parties. Am. Compl. ¶¶ 200-03, 210-12, 220.

The Alliance Intervenors were granted party status as Intervenor Defendants on August 3. Order, ECF No. 209. They consist of individual Pennsylvania voters and the Pennsylvania Alliance for Retired Americans, an organization which serves and represents over 335,000 members in the Commonwealth. The Alliance's membership is composed primarily of retirees, the vast majority of whom are over the age of 65, placing them at heightened risk of serious illness due to COVID-19. Thus, for the individual voters and the Alliance's members, voting in the upcoming election—in the middle of a global pandemic—will require access to safe and reliable means of submitting their ballots. All of the individual voter intervenors and many of the Alliance's members intend to vote by mail in the November 3, 2020 general election. Plaintiffs' claims for relief threaten to make that process less safe, less reliable, and more likely to result in widespread voter disenfranchisement.

On July 24, the Alliance Intervenors filed a motion to intervene along with a proposed motion to dismiss. Motion to Intervene, ECF No. 200; Proposed Motion to Dismiss, ECF No. 200-1. After Plaintiffs filed their amended complaint on July 27, Amended Complaint, ECF No. 232, the Alliance Intervenors asked this Court for permission to file a proposed motion to dismiss the amended complaint, Motion for Leave, ECF No. 293; Proposed Motion to Dismiss, ECF No. 293-1, and that motion was granted, Order, ECF No. 305. Then, on August 3, this Court granted the motion to intervene, Order, ECF No. 309, and shortly thereafter the Alliance Intervenors filed a

reply in support of their motion to dismiss the amended complaint, Reply in Support of Motion to Dismiss, ECF No. 347. Other Defendants and Intervenor Defendants filed their own motions to dismiss the Amended Complaint, *see* ECF Nos. 246, 260, 261, 263, 272, 274, 278, 280, 282, 283, 287, 288, 289, 294, 296, 298, 321, which this Court held in abeyance in its August 23rd order staying the case while the state court has an opportunity to resolve unsettled state law issues. Order, ECF No. 410. Those motions are still pending should the Court reopen litigation activity.

In their present motion, Plaintiffs ask the Court to enter an injunction requiring Defendants to segregate all ballots (1) that are submitted to county election officials through a ballot dropbox, (2) that lack an inner secrecy envelope or have markings on that envelope, or (3) that were delivered by third parties. *See* ECF No. 414 at 1, 18. Plaintiffs also ask the Court to reconsider its abstention order to the extent it stays the case past September 14, and to reopen discovery to allow it to access surveillance materials. *See id.* at 1-2, 18-19.

## QUESTIONS PRESENTED

Plaintiffs' Motion requires the Court to decide (1) whether the Eleventh Amendment's proscription against ordering state officials to enforce state law prohibits this Court from exercising jurisdiction, (2) whether Plaintiffs' interest in having state law enforced is sufficient to establish Article III standing, (3) whether Plaintiffs are reasonably probable to succeed on the merits of their claims, and (4) whether the equities favor issuing an injunction.

## ARGUMENT

Having stayed the case under *Pullman* abstention, the Court has not yet ruled on the objections raised in the Alliance Intervenors' motion to dismiss or the seventeen other pending motions to dismiss. ECF No. 410. In those motions, the Alliance Intervenors as well as Defendants and other Intervenors raise challenges to Plaintiffs' standing, to this Court's jurisdiction, and to the legal validity of Plaintiffs' claims. *E.g.*, ECF Nos. 293-1, 347. These challenges must be

addressed because they speak to this Court's authority to enter the requested relief, and to the substantive standard for issuance of a preliminary injunction. *See Geokinetics USA, Inc. v. Municipality of Monroeville*, No. CV 17-1314, 2017 WL 11485730, at *1 (W.D. Pa. Nov. 9, 2017) ("Concerns about subject-matter jurisdiction must be resolved as a threshold matter."); *Graham v. Main*, No. CIV.A. 10-5027 SRC, 2011 WL 2412998, at *27 (D.N.J. June 9, 2011) (denying preliminary injunction because claims flunked rule 12(b)(6)). For the reasons discussed in those motions, Plaintiffs are not entitled to pursue this action at all, nor are they entitled to even the limited injunction that they now seek.

In order to obtain any form of a preliminary injunction, Plaintiffs bear the burden of demonstrating that (1) there is a reasonable probability that they will succeed on the merits of their claims, (2) they will suffer irreparable injury in the absence of relief, (3) the relief requested "will not result in even greater harm to the other party," and (4) granting "preliminary relief will be in the public interest." *ECRI v. McGraw-Hill, Inc.*, 809 F.3d 223, 226 (3d Cir. 1987). "A plaintiff must establish that *all four factors* favor preliminary relief." *Graham*, 2011 WL 2412998, at *26 (citing *Opticians Ass'n of Am. v. Indepdent Opticians of Am.*, 920 F.3d 187 (3d Cir. 1990) (emphasis added)). For the reasons set forth in Defendants' and other Intervenor-Defendants' response briefs, Plaintiffs fall far short of making this showing. Notably, the claims upon which Plaintiffs now seek relief are all claims that would require this Court to order state officials to comply with state law. But the Eleventh Amendment prohibits the Court from entering such relief. In addition, because Plaintiffs lack standing to raise those claims and those claims rest on an invalid legal theory, they are not likely to succeed on the merits. Finally, consideration of the equities *alone* weighs heavily against granting their Motion.

**I.     For reasons previously raised in the motions to dismiss, the Court lacks jurisdiction to enter the requested relief.**

In their pending motion to dismiss, the Alliance Intervenors raise two objections to this Court's jurisdiction, one under the Eleventh Amendment and one under Article III. *See* ECF No. 293-1, 347. Those objections are ever more pertinent as the case proceeds, and they bar the Court from issuing the requested injunction.

*First*, the Eleventh Amendment bars this Court from ordering state officials to comply with state law under *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984), ECF No. 293-1 at 15-18. With Counts I, II, and III—the only counts at issue in Plaintiffs' present Motion—they request that the Court do just that. *See* Am. Compl. ¶ 205 (Count I: "Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are *enjoined and compelled to enforce the mandates of the Election Code*." (emphasis added)); Am. Compl. C ¶ 215 (Count II: same); Am. Compl. ¶ 222 (Count III: same).

*Pennhurst* bars this Court from granting relief both on claims that are raised directly under state law, as with Count III, *and* on claims that are styled as federal causes of action but are mere vehicles for state law claims, as is the case with Counts I and II. ECF No. 293-1 at 16-17 (collecting cases). *Pennhurst* also prevents Courts from issuing injunctions directing county officials, acting as arms of the state, to comply with state law. Bucks County Motion to Dismiss, ECF No. 284 at 14-15. As such, under *Pennhurst*, the Eleventh Amendment bars this Court's exercise of jurisdiction and issuance of any injunctive relief premised on the notion that state and county election officials are acting in violation of state law.

*Second*, and independent of the Eleventh Amendment issue, in order for this Court to enter injunctive relief, Plaintiffs must establish that they have standing. At the preliminary injunction stage, Plaintiffs must do more than allege it, and they cannot succeed by showing a "mere

possibility" that they will ultimately establish standing. *Doe v. Nat'l Bd. of Medical Examiners*, 199 F.3d 146, 152-53 (3d Cir. 1999). Instead, Plaintiffs must prove that they are reasonably probable to succeed in establishing standing. *Id.* ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of litigation." (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))).

For the reasons raised in the Alliance Intervenors' motion to dismiss, Plaintiffs have not pled facts that support a conclusion that they have standing, ECF No. 293-1 at 22-25; ECF No. 347 at 2-5, let alone taken to the work of proving it. Their interest in enforcing state law is merely a generalized grievance shared by all Pennsylvanians, and their interest in preventing purported voter fraud is nothing more. ECF No. 293-1 at 23-25; ECF No. 347 at 4-5. Plaintiffs' self-styled vote dilution by fraud injury is also too speculative to serve as an injury-in-fact sufficient to support Article III standing. ECF No. 293-1 at 18-21, 22-23; ECF No. 347 at 4-5. Because an injury must be concrete and particularized, Plaintiffs do not have standing to seek any relief from this Court.

Critically, Plaintiffs do not purport to represent the interests of voters who need access to ballot dropboxes to vote, or who are at risk of having their ballots rejected in a county that is refusing to count ballots that are cast without a secrecy envelope or that are delivered by a third party. Even if they did, Plaintiffs would still lack standing because the relief they have requested—which would build up not take down barriers to voting—would worsen those voters' positions. *See Townley v. Miller*, 722 F.3d 1128, 1134 (9th Cir. 2013) (collecting cases). And because the Court is required to resolve threshold questions that go to its jurisdiction before entering an injunction, *Geokinetics USA, Inc.*, 2017 WL 11485730, at \*1, Plaintiffs inability to establish standing precludes even their request for interim relief.

**II.     As set forth in the motions to dismiss, Plaintiffs cannot succeed on the merits of their claims because their claims for relief are not based on a cognizable legal theory.**

As discussed by Alliance Intervenors and others in their motions to dismiss, Plaintiffs' theory of relief—that the challenged laws will increase fraud thereby resulting in vote dilution—is not cognizable under the First and Fourteenth Amendments, whether pled as a right to vote claim or as an equal protection claim. ECF No. 293-1 at 18-21; *see also* ECF No. 297 at 16-18. Plaintiffs do not cite any authority that applies the theory of vote dilution as a weapon to make it more difficult for other citizens to vote. And Plaintiffs have failed to allege or adduce proof that the challenged laws in any way burden their own ability to vote, foreclosing a claim under *Anderson-Burdick*, the framework that applies to right to vote claims.[1] Because Plaintiffs' claims are insufficient to survive even a motion to dismiss, there is no reasonable probability that they will succeed on the merits. *Graham*, 2011 WL 2412998, at *27.

**III.    The requested relief does not prevent irreparable harm and is not in the public's interest.**

For the reasons set forth in the responses from Defendants and other Intervenor-Defendants, which the Alliance Intervenors join in and incorporate by reference, Plaintiffs have not established a right to an injunction on any grounds. Intervenor Defendants write separately to emphasize that—even on their own—the significant equitable considerations at play weigh strongly against the requested preliminary injunction. *See Graham*, 2011 WL 2412998, at *26 (citing *Opticians Ass'n of Am.*, 920 F.3d at 192) ("A plaintiff must establish that *all four factors* favor preliminary relief." (emphasis added)). The requested remedy is not in the public interest

---

[1] *Short v. Brown*, 893 F.3d 671, 676-77 (9th Cir. 2018) (applying *Anderson-Burdick* to vote dilution challenge to vote by mail law and rejecting challenge because plaintiffs failed to show that practices in other counties burdened their ability to vote); *see also Ohio State Conference of NAACP v. Husted*, 768 F.3d 524, 538 (6th Cir. 2014), *vacated as moot*, 2014 WL 10384647 (Oct. 1, 2014) (applying *Anderson-Burdick* to equal protection challenge to Secretary of State directive).

because it would result in a substantial injury to voters and to the electoral process. And segregating ballots will do nothing to remedy any credibly alleged (much less supported by evidence) claim of cognizable harm to Plaintiffs.

Plaintiffs' requested relief—segregating certain ballots—may seem innocuous enough. But its only result (if not its only purpose) is to sow distrust in the electorate. For example, Plaintiffs' proposed relief, if granted, would at the same time allow counties to offer ballot dropboxes, while also signaling that votes cast through those dropboxes may not be counted. In essence, two election policies that conflict with each other will be in place at the same time. This will sow confusion and could dissuade voters from returning ballots early and conveniently to ballot dropboxes, pushing them towards voting in-person or not at all. For the intervenor voter plaintiffs and the members of the Alliance, this will force them to make untenable choices between risking their health (and potentially their lives, given their high-risk status for the worst possible outcomes of COVID-19) in order to ensure that their ballots do not get stuck in the legal limbo that appears to be Plaintiffs' primary goal, or forfeit their right to vote at all. Such a result is not countenanced by Plaintiffs' limited interest in having these ballots segregated. After all, "an injunction is an equitable remedy," and, as such, it must be deployed to achieve equitable ends. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982).

In short, an order to segregate and abstain from processing ballots will cause harm to the Alliance Intervenors, to the Alliance's other members, and to other Pennsylvania voters while not preventing any irreparable harm to Plaintiffs. Accordingly, the equitable factors do not favor issuance of the injunction.

| | |
|---|---|
| Dated: September 2, 2020 | By: */s/ Uzoma Nkwonta* |
| | Marc E. Elias |
| Justin T. Romano | Uzoma N. Nkwonta |
| PA ID No. 307879 | Courtney A. Elgart |
| justin@arlawpitt.com | PERKINS COIE LLP |
| Marco S. Attisano | 700 Thirteenth Street, N.W., Suite 600 |
| PA ID No. 316736 | Washington, D.C. 20005-3960 |
| marco@arlawpitt.com | Telephone: 202.654.6200 |
| 429 Fourth Avenue, Suite 1705 | Facsimile: 202.654.6211 |
| Pittsburgh, PA 15219 | melias@perkinscoie.com |
| Phone: (412) 336-8622 | unkwonta@perkinscoie.com |
| Fax: (412) 336-8629 | celgart@perkinscoie.com |
| | |
| Adam C. Bonin, PA Bar No. 80929 (*WD PA admission pending*) | Elise Edlin |
| The Law Office of Adam C. Bonin | Torryn Taylor Rodgers |
| 121 S. Broad St., Suite 400 | PERKINS COIE LLP |
| Philadelphia, PA 19107 | 505 Howard Street, Suite 1000 |
| Phone: (267) 242-5014 | San Francisco, CA 94105-3204 |
| Facsimile: (215) 827-5300 | Telephone: 415.344.7000 |
| Email: adam@boninlaw.com | Facsimile: 415.344.7050 |
| | eedlin@perkinscoie.com |
| | trodgers@perkinscoie.com |
| | |
| | *Attorneys for the Alliance Intervenors* |

## **CERTIFICATE OF SERVICE**

I, Uzoma Nkwonta, hereby certify that on September 2nd, 2020, I caused a true and correct copy of this pleading to be served on counsel of record for Plaintiffs, Defendants, and Defendant Intervenors listed on the docket via the Court's ECF system.

*/s/ Uzoma Nkwonta*
