## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) ) | Civil Action |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No.: 2-20-CV-966 |
| KATHY BOOCKVAR; *et al.*, | ) ) ) | |
| Defendants. | ) ) | Judge J. Nicholas Ranjan |

### REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY STAY ORDER AND MOTION FOR LIMITED PRELIMINARY INJUNCTIVE RELIEF (ECF #414)

PORTER WRIGHT MORRIS & ARTHUR LLP

By:   */s/ Ronald L. Hicks, Jr.*
         Ronald L. Hicks, Jr. (PA #49520)
         Jeremy  A. Mercer (PA #86480)
         Russell D. Giancola (PA #200058)
         Carolyn B. McGee (PA #208815)
         Six PPG Place, Third Floor
         Pittsburgh, PA 15222
         (412) 235-4500 (Telephone)
         (412) 235-4510 (Fax)
         rhicks@porterwright.com
         jmercer@porterwright.com
         rgiancola@porterwright.com
         cmgee@porterwright.com

         and

         Matthew E. Morgan (DC #989591)
         (admitted pro hac vice – ECF #10)
         Justin Clark (DC #499621)
         (admitted pro hac vice – ECF #31)
         Elections, LLC
         1000 Maine Ave., SW, 4th Floor
         Washington, DC 20224
         (202) 844-3812 (Telephone)
         matthew.morgan@electionlawllc.com
         justin.clark@electionlawllc.com

         *Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

REPLY ARGUMENT ........................................................................................................... 2

    I.    THE PENNSYLVANIA SUPREME COURT'S EXERCISE OF JURISDICTION
        OVER A CASE IN WHICH PLAINTIFFS HAVE BEEN DENIED
        INTERVENTION DOES NOT MOOT PLAINTIFFS' MOTION. ............................. 2

    II.   PLAINTIFFS' MOTION IS PROCEDURALLY PROPER AND NOT
        OTHERWISE BARRED. ............................................................................................ 4

    III.  PLAINTIFFS HAVE STATED VIABLE FEDERAL CLAIMS WHICH THEY
        HAVE STANDING TO PURSUE. .............................................................................. 7

    IV.  THE REQUESTED PRELIMINARY INJUNCTION IS APPROPRIATE TO
        ADDRESS THE IRREPARABLE INJURY PLAINTIFFS WILL SUFFER
        BASED ON THEIR REASONABLE PROBABLITY OF DEMONSTRATING
        FEDERAL CONSTITUTIONAL VIOLATIONS. ...................................................... 11

CONCLUSION ..................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983) ...............................................................................................8

*Beno v. Murray Am. River Towing, Inc.*, No. 16-1128,
  2017 WL 3301445, 2017 U.S. Dist. LEXIS 122233 (W.D. Pa., Aug. 3, 2017) ......................4

*Bush v. Gore*,
  531 U.S. 98 (2000) .................................................................................................11

*Canvass of Absentee Ballots of April 28, 1964, Primary Election*,
  34 Pa. D. & C. 2d 419 (Pa. Ct. Com. Pl. Phila. 1964) ...........................................13

*Cagey v. Commonwealth,*
  179 A.3d 458 (Pa. 2018) ..........................................................................................6

*Commonwealth v. Thompson,*
  985 A.2d 928 (Pa. 2009) ..........................................................................................6

*Crossey v. Boockvar*,
  266 M.D. 2020 (Pa. Commw. Ct. 2020) ..................................................................3

*Crossey v. Boockvar*, No. 108 MM 2020,
  2020 Pa. LEXIS 4519 (Pa., Aug. 21, 2020) ...........................................................6

*Friends of Devito v. Wolf*,
  227 A.3d 872 (Pa. 2020) ..........................................................................................3

*Georgevich v. Strauss*,
  772 F.2d 1078 (3d Cir. 1985*), cert. denied,* 475 U.S. 1028 (1986) ..........................5

*Griffin v. Burns*,
  570 F.2d 1065 (1st Cir. 1978) .................................................................................10

*Hamilton v. Johnson*,
  141 A. 846 (Pa. 1928) ...........................................................................................10

*Harman v. Forssenius*,
  380 U.S. 528 (1965) .................................................................................................8

*Illinois State Board of Elections v. Socialist Workers Party*,
  440 U.S. 173 (1979) .................................................................................................8

*In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*,
  843 A.2d 1223 (Pa. 2004) ...................................................................................9, 11

*Mark v. Stinson*.
    19 F.3d 873 (3d Cir. 1994)................................................................................9

*Marks v. Stinson*, No. 93-6157,
    1994 WL 146113, 1994 U.S. Dist. LEXIS 5273 (E.D. Pa., Apr. 26, 1994) .......................7, 9

*New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v.*
    *New Jersey State Board of Higher Education*,
    654 F.2d 868 (3d Cir. 1981)................................................................................5

*Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020,
    2020 Pa . LEXIS 4685 (Pa., Sept. 3, 2020) ................................................................6

*Perles v. Hoffman*,
    213 A.2d 781 (Pa. 1965) ................................................................................10

*Perzel v. Cortes*,
    870 A.2d 759 (Pa. 2005) ................................................................................10

*Pierce v. Allegheny Cnty. Bd. of Elections*,
    324 F. Supp. 2d 684 (W.D. Pa. 2003)................................................................2, 8, 12, 14

*Qazizadeh v. Pinnacle Health Sys.*,
    214 F. Supp. 3d 292 (M.D. Pa. 2016) ................................................................4

*Roe v. Alabama*,
    43 F.3d 574 (11th Cir. 1995) ................................................................2, 12

*Shroyer v. Thomas*,
    81 A.2d 435 (Pa. 1951) ................................................................................10

*United States v. Jerry*,
    487 F.2d 600 (3d Cir. 1973)................................................................................4

*Williams v. Curtiss-Wright Corp.*,
    681 F.2d 161 (3d Cir. 1982)................................................................................7

**Statutes**

25 P.S. § 2621 ................................................................................10, 11

25 P.S. § 2642 ................................................................................10

25 P.S. § 3146.6 ................................................................................13

25 P.S. § 3146.8 ................................................................................13, 15

25 P.S. § 3150.16 ................................................................................13

42 U.S.C. § 1983..................................................................................................9, 14

210 Pa. Code § 63.3 ..................................................................................................3

Pa. Const. Art. 7, § 4 ..............................................................................................13

**Other Authorities**

"Absentee Ballots Delivered by Third Parties," <u>Case Studies in Emergency</u>
   <u>Election Litigation</u> (Fed. Jud. Ctr., 10/31/2012)........................................8

Fed. R. Civ. P. 65 .....................................................................................................7

Pa. R.A.P. 3309.........................................................................................................3

20 West's Pennsylvania Practice, Appellate Practice, § 3309:1...............................3

## INTRODUCTION

Plaintiffs have made a reasonable and straight-forward request: modify this Court's August 23, 2020 Order to: (a) ensure prompt segregation of any absentee and mail-in ballots cast using drop boxes or in a manner that may later be determined to have been cast in violation of the Pennsylvania Election Code; (b) preserve all such ballots and other relevant evidence for future Election Code challenges; and (c) move up the stay lifting date for all claims involving settled issues of state law from October 5, 2020 to September 14, 2020.  In response, Secretary Boockvar, two county election boards, and all the Intervenor Parties[1] have opposed Plaintiffs' Motion for a variety of reasons.  However, none of them dispute that absent the requested limited injunction, ballots which may be fraudulent or improperly cast will be commingled with those that have been properly cast.  And none of the Responding Defendants offer any procedure the County Election Boards intend to follow to ensure that potentially illegally cast ballots will not be commingled and counted with unquestionably legally cast ballots.  Instead, the Responding Defendants take the extreme position that all ballots cast, including those returned via drop-boxes, through third-party delivery for non-disabled voters, and/or in violation of the Election Code's inner secrecy envelope mandate, should be irreversibly commingled, processed, and counted per the Secretary's guidance before questions surrounding the legality and legitimacy of those ballots can be resolved.  The Responding Defendants argue this represents the "status quo."  However, the status quo is what the Election Code provides in terms of what voters must do to legally cast and have their absentee and mail-in ballots counted, and not the re-write being pushed by Secretary Boockvar with the backing of the Intervenor Parties and some of the Defendant County Election Boards.

---

[1] Although all responses were to be filed by 5:00 p.m. on September 2, 2020 (ECF #416), the Crossey Intervenors did not file their response (ECF # 431) until 4½ hours after the deadline.  Thus, this Court should reject any arguments made by the Crossey Intervenors that were not set forth in the other Responding Defendants' timely responses.

Faced with similar circumstances, this Court and other federal courts, while abstaining from deciding the underlying state election law issues, have granted preliminary injunctive relief similar to that sought by Plaintiffs here.  *See*, *e.g.*, *Pierce v. Allegheny Cnty. Bd. of Elections*, 324 F. Supp. 2d 684, 704-9 (W.D. Pa. 2003) (abstaining but granting a limited preliminary injunction to preserve voters' right to challenge absentee ballots delivered by third-persons for non-disabled voters in alleged contravention of the Pennsylvania Election Code); *Roe v. Alabama,* 43 F.3d 574, 582 (11th Cir. 1995) (same for absentee ballots cast without two witnesses and notarization required under Alabama election law).  In these circumstance, irreparable harm exists because without an injunction, the potentially illegally cast ballots will become commingled and unable to be challenged, and the limited injunction "strikes a fair balance among the constitutional issues, an important unsettled issue of state law in this case, and the need of the public to ensure fair elections."  *Pierce*, 324 F. Supp. 2d at 707 & 709.  Plaintiffs merely ask this Court to do the same and modify its August 23, 2020 Order to provide this limited relief.

## REPLY ARGUMENT

I.  **THE PENNSYLVANIA SUPREME COURT'S EXERCISE OF JURISDICTION OVER A CASE IN WHICH PLAINTIFFS HAVE BEEN DENIED INTERVENTION DOES NOT MOOT PLAINTIFFS' MOTION.**

Many of the filed Responses argue that this Court should not entertain Plaintiffs' Motion until the Pennsylvania Supreme Court renders its decision on the unsettled state-law issues.  In essence, the Responding Defendants argue that the Pennsylvania Supreme Court's recent exercise of jurisdiction over the Commonwealth Court case brought by the Pennsylvania Democratic Party Intervenors and its scheduling of responsive briefs indicates an imminent decision is forthcoming and renders Plaintiffs' Motion premature or moot.  This argument is unavailing for several reasons.

First, nothing in the Pennsylvania Supreme Court's September 1, 2020 Order indicates that a decision is imminent.  Instead, the September 1, 2020 Order merely exercises jurisdiction over

the pending Commonwealth Court lawsuit and sets a supplemental briefing deadline.  *See* 09/01/2020 Per Curiam Order (ECF # 418-3), p. 3.

Second, once an application for King's Bench relief is granted, the result is the equivalent of taking an appeal as of right.  Pa. R.A.P. 3309(d).  Hence, like any other appeal, the Supreme Court is under no timetable for resolving an application for extraordinary relief.  *See* 210 Pa. Code § 63.3, Internal Operating Procedures, "Decisional Procedures: Argued and Submitted Cases."

Third, none of the parties before the Pennsylvania Supreme Court[2] have sought expedited consideration.  *See* Secretary Boockvar's 08/16/2020 Application (ECF # 388-1); *see, e.g., Friends of Devito v. Wolf*, 227 A.3d 872, 882-83 (Pa. 2020) (expedited consideration occurred because an "emergency application" was filed, and expedited consideration was sought and granted).

Fourth, because it assumed jurisdiction before any fact-finding occurred or other order was entered, the Pennsylvania Supreme Court retains the power to designate a master to report back to it with proposed factual findings and legal conclusions or transfer the case to another court for disposition.  *See* 20 West's Pennsylvania Practice, Appellate Practice, § 3309:1.  Indeed, the Supreme Court recently exercised that power in *Crossey v. Boockvar*, 266 M.D. 2020 (Pa. Commw. Ct. 2020).[3]  If that were to occur in the other action currently before the Pennsylvania Supreme Court, it would further delay any final decision.

Fifth, Responding Defendants' argument is premised on their view that the Pennsylvania Supreme Court will agree with the Secretary's guidance.  But, what happens if the Supreme Court

---

[2] As Plaintiffs explain in the next section, the Pennsylvania Supreme Court denied intervention to Trump Campaign and the RNC on September 3, 2020.  *See infra.*, pp. 5-6.

[3] In *Crossey,* the Honorable Mary Hannah Leavitt, President Judge, issued on September 4, 2020, "Recommended Findings of Fact and Conclusions of Law," rejecting the Crossey Intervenors' voter disenfranchisement claims and the requests made by them and Secretary Boockvar to judicially re-write the Election Code's Act 77 provisions.  *See* Supplemental Appendix of Materials in Support of Plaintiff's Motion, Exh. K.

disagrees or opts not to render any decision?  If that occurs, there will be no way to remove any illegally cast ballots for a subsequent challenge, which is why Plaintiffs' Motion has been made.

Accordingly, the Pennsylvania Supreme Court's exercise of jurisdiction on September 1, 2020 does not render Plaintiffs' Motion moot.

## II.   PLAINTIFFS' MOTION IS PROCEDURALLY PROPER AND NOT BARRED.

Responding Defendants raise several meritless procedural objections to Plaintiffs' Motion.

First, Plaintiff's Motion seeking preliminary injunctive relief is not a reconsideration motion.  Before reconsideration can be sought, a court must first render a decision, whether interlocutory or final, on the particular issue.  *See, e.g., Qazizadeh v. Pinnacle Health Sys., 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016).*  Here, this Court made no decision on Plaintiffs' injunction request as part of its August 23, 2020 Order.  Rather, as this Court succinctly stated, no preliminary injunction motion was before it at the time it rendered its abstention decision.  *See* 08/23/2020 Op. (ECF #409), pp. 33-34.  Consequently, Plaintiff's Motion is not a motion for reconsideration.

Second, even if Plaintiff's Motion does seek reconsideration, the governing standard is not the one cited by Responding Defendants.  Instead, "so long as [a] district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."  *United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973). See also Beno v. Murray Am. River Towing, Inc., No. 16-1128, 2017 WL 3301445, 2017 U.S. Dist. LEXIS 122233, at *9 (W.D. Pa., Aug. 3, 2017)* ("Reconsideration of interlocutory orders, however, 'may be had even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the need to correct a clear error of law or fact or to prevent manifest injustice.'") (citations omitted).  Therefore, to the extent Plaintiff's Motion seeks reconsideration of an aspect of the

August 23, 2020 interlocutory order, then this Court may grant it to prevent irreparable harm and manifest injustice wrought by the commingling of ballots.

Third, abstention under *Pullman* does not leave this Court without jurisdiction to grant Plaintiffs' Motion.  Rather, the *Pullman* doctrine "requires retention of jurisdiction … for the obvious purpose of preserving the plaintiffs' choice of forum for the vindication of federal rights clearly infringed by the state construction ultimately adopted."  *New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education,* 654 F.2d 868, 887 (3d Cir. 1981).  Thus, because jurisdiction is retained under *Pullman*, this Court clearly has authority to rule on a preliminary injunction motion made either before or after the decision to abstain.  Responding Defendants have not cited any authority which holds differently.

Fourth, the Third Circuit Court of Appeals has rejected any exhaustion of state remedies requirement under *Pullman*.  *See Georgevich v. Strauss,* 772 F.2d 1078, 1087, 1091 n. 15 (3d Cir. 1985*), cert. denied,* 475 U.S. 1028 (1986) ("It should be noted that by requiring abstention we are not reintroducing an exhaustion requirement by another name. Exhaustion of state remedies is a mandatory, jurisdictional requirement that requires plaintiffs to attempt to vindicate their claim in state court before seeking federal jurisdiction over that same claim. *Pullman* abstention is not jurisdictional, but discretionary, and involves postponing adjudication of a federal claim pending resolution of a possibly determinative state law issue. We do not require plaintiffs to exhaust their equal protection claim; rather we ask that an unclear issue of state law be resolved by the state courts so as to avoid the necessity of addressing the equal protection question.").

Fifth, even if Plaintiffs were required to exhaust state court remedies to vindicate their constitutional claims, they have done so.  Following this Court's August 23, 2020 Order, the Trump Campaign and RNC sought to intervene in the state court proceedings brought by the Pennsylvania Democratic Party Intervenors and Secretary Boockvar before the Pennsylvania state

courts and were denied intervention on September 3, 2020.[4]  *See Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 Pa . LEXIS 4685, at *1 (Pa., Sept. 3, 2020) (per curiam).[5] Similarly, the Pennsylvania Supreme Court denied the RNC's intervention request in the state court litigation brought by the Crossey Intervenors via a per curiam order that drew a sharp dissent from that Court's Chief Justice.  *See Crossey v. Boockvar*, No. 108 MM 2020, 2020 Pa. LEXIS 4519, at *1-*3 (Pa., Aug. 21, 2020) (per curiam; Saylor, Ch. J., concurring & dissenting).  Chief Justice Saylor, after noting the Crossey Intervenors' status as a "major Democratic political group" and the reported funding of their state court lawsuit by "Priorities USA, the main super PAC supporting … presidential nominee Joe Biden," explained that he saw the denial order as favoring "the associational interests of one side being represented to the exclusion of the other."  *Id.* at *2-*3.  Therefore, before the Pennsylvania state courts, Plaintiffs have effectively been denied their day in court and cannot preserve their constitutional claims absent action by this Court.[6]

Sixth, as Plaintiffs explained in their Motion, there is no time to restart this litigation in state court.  Ballots will be delivered to Pennsylvania voters in mere days.  As the docket in this case confirms, it took Plaintiffs over three weeks through the use of private process servers to effectuate service of this action upon Secretary Boockvar and all 67 County Election Boards, and

---

[4] The Responding Defendants criticize the Trump Campaign and RNC for opposing Secretary Boockvar's King's Bench application.  Yet, that opposition was filed before this Court issued its August 23, 2020 Order and was premised upon the fact that the application was procedurally and substantively improper.  *See* Republican Committee Respondents' Answer to Secretary Boockvar's Application (ECF #418-1).  Moreover, as the Secretary had notified the Pennsylvania Supreme Court of this Court's August 23, 2020 decision, the Trump Campaign and RNC, who have not been permitted to intervene, were not obligated to also notify that court of what was already a matter of record.

[5] "[P]er curiam orders have no stare decisis effect."  *Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009).  *See also Cagey v. Commonwealth,* 179 A.3d 458, 467 (Pa. 2018) (same).

[6] The same holds true if Plaintiffs took an expedited appeal to the Third Circuit and sought certification of any unsettled state-law questions.  Plaintiffs still remain without a court to obtain the injunctive relief they seek in their Motion.

the same amount of time and expense would be necessary to effectuate service of any state court action.  *See* Plaintiffs' Motion (ECF #414), ¶¶ 1 & 5.  By then, Defendants will have started to deliver absentee and mail-in ballots, and some will have begun to collect such ballots in manners not permitted by the Election Code (*i.e.*, through drop-boxes and/or third-party delivery of non-disabled voters' ballots).  Thus, for Plaintiffs to commence a new state court action would be futile.

Seventh, a hearing is not a prerequisite for ruling on a preliminary injunction.  *See* Fed. R. Civ. P. 65(a).  Instead, "a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue."  *Williams v. Curtiss-Wright Corp., 681 F.2d 161, 163 (3d Cir. 1982)* (per curiam).  Here, the Responding Defendants offer no evidence to dispute that absent an injunction, potentially illegally cast absentee and mail-in ballots will be irretrievably commingled and counted with legally cast ballots, resulting in classic vote dilution.[7]  Thus, without a hearing, this Court may grant the limited, preliminary injunctive relief Plaintiffs seek.

Accordingly, Plaintiffs' Motion is procedurally proper and not otherwise barred.

## III.   PLAINTIFFS HAVE STATED VIABLE FEDERAL CLAIMS WHICH THEY HAVE STANDING TO PURSUE.

As they have explained in their opposition to the various Rule 12 motions, Plaintiffs have Article III standing to pursue their voter dilution and other federal constitutional claims and those claims are ripe, justiciable, and not barred by the Eleventh Amendment.  *See* Plaintiffs' Omnibus Brief in Opposition to Defendants' Rule 12 Motion (ECF #320), pp. 16-51.  *See also Marks v. Stinson*, No. 93-6157, 1994 WL 146113, 1994 U.S. Dist. LEXIS 5273, at *77-*78 (E.D. Pa., Apr. 26, 1994) (ruling that a candidate, voters, and a political party had standing under 42 U.S.C. §

---

[7] Contrary to the assertions made by some of the Responding Defendants, Plaintiffs have not abandoned their vote dilution claims via their August 28, 2020 Motion.

1983 to pursue equal protection and other federal constitutional claims related to illegal delivery of absentee ballots) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983) (candidate); *Harman v. Forssenius*, 380 U.S. 528 (1965) (voter); *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979) (political party)).

Moreover, as the issues of standing and justiciability are being raised in opposition to Plaintiffs' preliminary injunction request, this Court's analysis in *Pierce* is directly on point:

> Here, plaintiffs, who are voters, pled a sufficient injury by alleging that, if this court does not act, there will be no mechanism by which absentee ballots could be challenged for alleged violations of the election code and the United States Constitution. The causation and redressability prongs are also met in this case. Based upon the evidence presented, it is clear that plaintiffs' challenges are traceable to defendant's implementation of three different policies that appear inconsistent with a strict interpretation of the election code and are also inconsistent with the policy in at least one other county. With regard to the redressability prong, the relief that plaintiffs request in part - setting aside the hand-delivered absentee ballots so that they are not commingled with the other ballots - would alleviate plaintiffs' alleged injury and provide an opportunity to challenge the ballots. Therefore, plaintiffs have standing to request a remedy with regard to the 937 hand-delivered absentee ballots that the Board of Elections accepted under three inconsistent policies.

*Pierce*, 324 F. Supp. 2d at 692-93.[8]

The same holds true for Plaintiffs here. As their Motion makes clear, Plaintiffs seek a limited, preliminary injunction for the segregation of absentee and mail-in ballots that will be handled, delivered, and/or otherwise cast in a manner contrary to a strict interpretation of the Election Code and Act 77 and for the preservation of other relevant evidence. Plaintiffs are not seeking to enjoin any of Secretary Boockvar's guidance, including the two dated August 19, 2020, and they are not seeking to enjoin any County Election Board who chooses to follow that guidance.

---

[8] *See also* "Absentee Ballots Delivered by Third Parties," Case Studies in Emergency Election Litigation (Fed. Jud. Ctr., 10/31/2012), available at https://www.fjc.gov/sites/default/files/2017/EE-PAW-2-03-cv-1677-Pierce.pdf (last accessed September 4, 2020).

Plaintiffs are only asking for relief that will alleviate their alleged constitutional injury and provide them with an opportunity to challenge those ballots which have been cast in a manner inconsistent with the Election Code.  Thus, Plaintiffs have standing to seek such limited injunctive relief.

The Responding Defendants argue that Plaintiffs' claims are nothing more than "garden variety" election irregularities that cannot serve as a basis for federal constitutional violations that fall outside the parameters of the Eleventh Amendment.  However, the County Election Boards' allowance of the casting of absentee and mail-in ballots in ways contrary to the General Assembly's dictates as codified in the Election Code is not a technical offense or garden variety irregularity.  Instead, it deprives voters of their constitutional right to vote in a free and fair election and results in the uneven treatment of voters throughout the Commonwealth.  *See Marks*, 1994 U.S. Dist. LEXIS 5273, at *88-*90; *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1234 (Pa. 2004).  As the First Circuit noted years ago:

> The right to vote remains, at bottom, a federally protected right.  If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order.  Such a situation must go well beyond the ordinary dispute over the counting and marking of ballots; and the question of the availability of a fully adequate state corrective process is germane.  But there is precedent for federal relief where broad-gauged unfairness permeates an election, even if derived from apparently neutral action.

*Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978), *quoted with approval in Mark v. Stinson*. 19 F.3d 873, 888 (3d Cir. 1994).

Accordingly, a viable federal claim exists under 42 U.S.C. § 1983 when "the fairness of the official terms and procedures under which the election [i]s conducted" is lacking or "an officially-sponsored election procedure which, in its basic aspect, [i]s flawed," such that "due process is implicated [because] the entire election process - including as part thereof the state's administrative and judicial corrective process - fails on its face to afford fundamental fairness."

*Griffin*, 570 F.2d at 1078.  Such is clearly the case here.  Despite acting primarily in a ministerial capacity under the Election Code, with no power or authority to intrude upon the province of the General Assembly,[9] Secretary Boockvar and many of the County Election Boards have abandoned their duty to follow and uphold the mandatory, non-discretionary language of the Election Code, as amended by Act 77, and have promulgated guidance and/or implemented procedures and practices that contradict the Code's clear and unambiguous provisions.  *See infra.*, pp. 12-14. Insofar as she has no discretion on such matters—and thus should be afforded no deference in her "guidance" of the perfectly clear statutory requirements—the Secretary has further abandoned her duties by joining in the relief sought by the Intervenor Parties before the Pennsylvania state courts in cases where the Plaintiffs have not been permitted to participate as parties.  Thus, the Plaintiffs' claims in this case involve more than "garden variety" election irregularities, and constitute viable federal claims upon which they have a reasonable probability of success.

Also, the Responding Defendants argue that the Secretary's August 19, 2020 guidance and any future decision from the Pennsylvania Supreme Court renders any non-uniformity claim obsolete.  However, the Secretary's August 19, 2020 guidance represents an extension of the guidance she issued before the 2020 Primary Election, and not all County Election Boards followed that guidance, both as to the drop-boxes and absentee and mail-in ballots that lacked secrecy envelopes.[10]  Also, in 2004, the Pennsylvania Supreme Court declared that the Election Code prohibits third-party delivery of absentee ballots cast by non-disabled voters and that ballots cast in such manner are void; yet, sixteen years later, several County Election Boards still authorize

---

[9] *See* 25 P.S. §§ 2621 & 2642; *Perzel v. Cortes*, 870 A.2d 759, 764 (Pa. 2005); *Hamilton v. Johnson*, 141 A. 846, 847 (Pa. 1928); *Shroyer v. Thomas*, 81 A.2d 435, 437 (Pa. 1951); *Perles v. Hoffman*, 213 A.2d 781, 786 (Pa. 1965) (Cohen, J., concurring).

[10] Secretary Boockvar claims that Plaintiffs have not alleged a constitutional claim based on the fact that not all counties employed drop-boxes in the 2020 Primary Election.  *See* ECF #424, p. 16.  That is not true.  *See* Amended Complaint (ECF #234), ¶ 211.

such delivery and count such illegally cast ballots.  As such, the mere issuance of guidance does not, in and of itself, cure the lack of uniformity that exists in the Commonwealth on these issues.

As the Pennsylvania Supreme Court declared in 2004, the County Election Boards do not have the power or discretion to disregard the Election Code's mandates on how to cast by-mail ballots, and when they do ignore such mandates in a state-wide election, it creates an equal protection problems.  *Canvass of Absentee Ballots*, 843 A.2d at 1234 & n. 14.  The same holds true for Secretary Boockvar who, unlike a county election board, has no rule-making authority over the conduct of elections.  *See* 25 P.S. § 2621.  Therefore, the fact that she has issued guidance which are contrary to the Election Code's clear and unambiguous mandates on how to cast absentee and mail-in ballots,[11] and has sought the Pennsylvania Supreme Court's stamp of approval on such guidance, does not negate Plaintiffs' federal constitutional claims but, quite to the contrary, enhances them, particularly as they relate to Plaintiffs' claims for violations of Due Process and the Elections and Electors Clauses.  *See also Bush v. Gore,* 531 U.S. 98, 112-13 (2000) (Rehnquist, J., concurring) ("[a] significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question," including when such departure is carried out by the state judiciary).

## IV.   THE REQUESTED PRELIMINARY INJUNCTION IS APPROPRIATE TO ADDRESS THE IRREPARABLE INJURY PLAINTIFFS WILL SUFFER BASED ON THEIR REASONABLE PROBABLITY OF DEMONSTRATING FEDERAL CONSTITUTIONAL VIOLATIONS.

All Responding Defendants argue in various fashions that Plaintiffs fail to meet the standards for preliminary injunctive relief, including the existence of irreparable harm, the likelihood of success on the merits, and the weighing of the interests.  But, none of the Responding

---

[11] *See infra.*, pp. 12-14.  *See also* Republican Committee Respondents' Answer to Secretary Boockvar's Application (ECF #418-1), pp. 13-31.

Defendants refute that absent the requested injunction, ballots which later may be determined to be improperly cast under the provisions of the Election Code will be commingled with those that have been properly cast either in person on Election Day or via absentee and mail-in ballots that have been mailed or delivered in-person to the office of the county election boards. Moreover, not one of the Responding Defendants offer any procedure they intend to follow to ensure that illegally cast ballots will not be commingled and counted with legally cast ballots. Instead, they simply take the position that all ballots cast, including those returned via drop-boxes, through third-party delivery for non-disabled voters, and/or in violation of the Election Code's inner secrecy envelope mandate, are properly cast ballots per the Secretary's guidance and, thus, should not be segregated for a court to later determine otherwise.

Yet, the Responding Defendants' position assumes that the Secretary's guidance complies with the Election Code, which is not the case. *See infra*., pp. 12-14. More importantly, the Responding Defendants' position does not negate the conclusion that irreparable injury exists. As this Court noted in *Pierce*, Pennsylvania law "indicates that once the ballots are commingled in such a way that they are unidentifiable, courts are limited in the types of relief that they can fashion." *Pierce*, 324 F. Supp. 2d at 706. Thus, irreparable injury exists because there exists no mechanism, short of a brand new election, for illegally cast ballots to be removed from the election results once they are commingled and canvassed with other legally cast ballots. *Id*. *See also Roe, 43 F.3d at 582* (same for absentee ballots cast without two witnesses and notarization as required under Alabama election law).

As for Plaintiffs' likelihood of success on the merits, the Secretary's guidance on ballots which lack a secrecy envelope is premised on her argument that absent a provision in the Election Code stating that such ballots cannot be counted, then they should be counted. Yet, the Election Code also does not state that absentee or mail-in ballots which are missing a declaration envelope,

contain more than one ballot in the declaration envelope, and/or lack a signed declaration cannot be counted, and the courts have uniformly held that such ballots are void and properly not counted in view of the "clear unequivocal statutory language of the act: 25 P.S. § 3146.6(a)[.]"  *Canvass of Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa. D. & C. 2d 419, 423 & 425 (Pa. Ct. Com. Pl. Phila. 1964) ("[a] voter, by failing to observe the statutory requirements, has disenfranchised himself," and such disenfranchisement includes when the voter fails to sign the outer envelope declaration).  And, there is no functional difference between an absentee or mail-in ballot that, without a secrecy envelope, has been placed in a declaration envelope that has text, marks, or symbols which identify the elector, and an absentee or mail-in ballot that has been placed inside of a secrecy envelope that contains such marks and is void under 25 P.S. § 3146.8(g)(4)(ii). In both cases, the secrecy of the ballot is lost in contravention of the Pennsylvania Constitution. Pa. Const. Art. 7, § 4.  Thus, the Secretary's guidance on this issue is contrary to a strict construction of the Election Code's clear and unambiguous by-mail voting laws.

Similarly, the premise underlying the Secretary's guidance on the use of drop-boxes is her belief that the Election Code does not require the delivery of absentee or mail-in ballots to a particular office or place, but rather to the County Election Boards as a "body."  Yet, despite all her linguistic analysis, the Secretary ignores that the Election Code mandates that "a completed [absentee and mail-in] ballot must be received in the *office of the county board of elections* no later than eight o'clock P.M. on the day of the primary or election." *See* 25 P.S. §§ 3146.6(c), 3150.16(c) (emphasis added).  Moreover, the Election Code requires that the declaration envelope for absentee and mail-in ballots must have printed upon it "the address of the elector's county board of election," so that "the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to *said* county board of election."  25 P.S. §§  3146.6(a) and 3150.16(a) (emphasis added).  Hence, contrary to the premise of her argument, the Election Code

- 13 -

does demand that absentee and mail-in ballots be mailed or delivered to the specific address of the county election board office that appears on the declaration envelope.

Further, Secretary Boockvar has admitted that the terms "drop-boxes" or "other collection locations" are nowhere to be found in the Election Code or Act 77, and her Deputy Secretary for Elections and Commissions has admitted that drop-boxes and offices are **not** the same or equivalents. *See* 08/21/2020 Dep. Tr. of K. Boockvar (App. Exh. "C-1", ECF # 415-21), pp. 111:19 -112:11; 113:18-114:2, 8-12; 08/19/2020 Dep. Tr. of J. Marks (App. Exh. "A-1", ECF # 415-1), pp. 128:3-10.  More importantly, neither the Secretary nor any of the County Election Boards have implemented any procedures to prevent third-party delivery or other ballot harvesting of non-disabled voters' by-mail ballots through such drop-boxes which, undisputedly occurred when they were employed in the 2020 Primary Election.  Hence, when the Election Code's by-mail voting provisions are strictly construed, the Secretary's expansive guidance lacks merit and is contrary to the Code's clear and unambiguous provisions.[12]

Because the Secretary's guidance and the County Election Boards' implementation of Pennsylvania's absentee and mail-in voting runs afoul of the Election Code's clear and unambiguous language, Plaintiffs have viable federal constitutional claims under 42 U.S.C. § 1983. *See supra.,* pp. 9-11.  Moreover, contrary to the Responding Defendants' contentions, those claims exist regardless of whether actual voter fraud occurs, for as this Court held years ago, voter fraud is not an element of such claims.  *Pierce,* 324 F. Supp. 2d at 689, 699 & 709.  However, even if voter fraud is an element, Plaintiffs have proffered through discovery more than sufficient evidence

---

[12] On September 1, 2020, the Pennsylvania House of Representatives passed legislation (HB 2626) which rejects the use of drop-boxes for the return and collection of absentee and mail-in ballots. *See* https://www.legis.state.pa.us/cfdocs/billinfo/billinfo.cfm?sYear=2019&sInd=0&body=H&type=B&bn=2626 (last accessed September 4, 2020).

to satisfy this element.[13]  Moreover, a news article titled "Confessions of a voter fraud: I was a master at fixing mail-in ballots," and published by the New York Post on August 29, 2020, confirms that "[a] top Democratic operative says voter fraud, especially with mail-in ballots, is not myth … because he has been doing it, on a grand scale, for decades[,]" including in Pennsylvania. *See* https://nypost.com/2020/08/29/political-insider-explains-voter-fraud-with-mail-in-ballots/ (last accessed on September 4, 2020).

Finally, the Responding Defendants argue that the segregation of ballots and preservation of the video surveillance and digital photographs will be burdensome and deprive voters of what they perceive to be a permissible means of casting absentee and mail-in ballots.  Yet, any administrative burden upon the County Election Boards pales in comparison to the burden placed upon Plaintiffs' fundamental rights to vote and to a free, fair, and transparent election through the commingling and counting of illegally cast ballots.  Moreover, this burden is no different than that which exists under the Election Code's challenge procedure which mandates the segregation and non-counting of any challenged ballot.  *See* 25 P.S. § 3146.8(g)(5) & (7).  Further, it is not for the Responding Defendants to decide how one should cast their absentee or mail-in ballot for it to be counted.  Instead, that decision rests solely with the General Assembly.  Thus, it is incumbent upon all voters to comply with the Election Code as written by the General Assembly, and not as the Responding Defendants seek to re-write it.

## **CONCLUSION**

Accordingly, Plaintiffs ask this Court to modify its August 23, 2020 Order to provide the requested preliminary injunctive relief and the modification of the October 5, 2020 date.

---

[13] Some Responding Defendants quote selected passages from Plaintiffs' Rule 30(b)(6) deposition testimony to support their narrative that Plaintiffs have purportedly conceded they cannot prove voter fraud.  However, Plaintiffs never made any such concession, as evidenced by a full reading of the transcript and Plaintiffs' written discovery attached to their Supplemental Appendix.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

Date:  September 6, 2020          By:  */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy  A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Carolyn B. McGee (PA #208815)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com
cmcgee@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(admitted pro hac vice – ECF #31)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Brief to be filed on September 6, 2020, via ECF, which system will serve notice of same on all parties registered to receive same via the ECF system. For any party who has yet to enter an appearance, the undersigned certifies that a copy of the foregoing filing will be served on that party via First Class Mail and a copy sent to the County Solicitor, if known, via email or fax.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

By: */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Carolyn B. McGee (PA #208815)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com
cmcgee@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(admitted pro hac vice – ECF #31)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*

13720549v5