# EXHIBIT N

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.*, | ) ) | |
| | ) | Civil Action |
| Plaintiffs, | ) | |
| | ) | No.: 2-20-CV-966 |
| v. | ) | |
| | ) | |
| KATHY BOOCKVAR; *et al.*, | ) | |
| | ) | Judge J. Nicholas Ranjan |
| Defendants. | ) | |

**PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND
RESPONSES TO DEMOCRATIC INTERVENORS' INTERROGATORIES**

Pursuant to the Court's email of August 11, 2020, at 4:19 p.m., and the Court's August 13, 2020 Order (ECF #374), Plaintiffs hereby provide the following Supplemental Answers to interrogatories 1-12 of Democratic Intervenors.  Plaintiffs incorporate by reference the General Objections/Statements set forth in their prior Responses.

**INTERROGATORIES**

**INTERROGATORY 1**: Identify and describe with specificity all facts concerning or relating to every instance of "ballot harvesting" during the Primary Election as alleged in Paragraphs 1 and 72-76 of your complaint.

**ANSWER**:    Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court.  In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope.  Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Election Boards as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election."  ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but instead about Plaintiffs' contentions of the opportunities that fraudsters may have based on Defendants' inconsistent administration of the Primary Election. Further, this Interrogatory appears to be duplicative of the reports that are to be provided by the County Election Boards, in that those reports are to include "a review of any action taken by the Department of State, county board of elections or registration commission in response to an incident under paragraph (23), including determinations made on the incident, legal actions filed and referrals to law enforcement." 71 P.S. § 279.6(b)(24). Therefore, this Interrogatory is improper.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory. Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct. *See United States v. Educ. Mgmt. LLC, 2013 U.S. Dist. LEXIS 104176, at \*66, \*71-73 (W.D. Pa. May 14, 2013).*

Also, Plaintiffs object to this Interrogatory on the grounds that it mischaracterizes the claims in this action. Plaintiffs' Amended Complaint is asking the Court to issue relief in the form of, among other things, a declaratory and injunctive judgment that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner. As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote. Anything less implicates constitutional problems under the equal protection clause of the Fourteenth Amendment." *Pierce v. Allegheny County Bd. of Elections,* 324 F. Supp. 2d 684, 697 (W.D. Pa. 2003). Plaintiffs' claim is based upon the inconsistent enforcement of the Election Code requirements across the Commonwealth, which is a violation of Plaintiffs' constitutional rights. Similarly, Plaintiffs' claim also is based upon the failure of the Secretary and all of the County Election Boards to follow the requirements under the Election Code for properly administering Pennsylvania's absentee and mail-in voting scheme, which also violates their constitutional rights. The Pennsylvania General Assembly established the requirements that must be followed for ballots to be cast legally, requirements the Pennsylvania Supreme Court has recognized are designed to reduce fraud. Neither the Secretary of the Commonwealth nor the County Election Boards have the ability to ignore, modify, restrict, or expand upon those requirements. Even if the Secretary or a County Election Board were to view those legislatively-enacted requirements as mere "technicalities," they still have an obligation to enforce those requirements. As the Pennsylvania Supreme Court recently noted, "so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed … ." *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004); *see also id.* at 1231-32 (noting that "shall" in the Election Code, including its use in Section 3146.6(a) concerning absentee voting, is mandatory). The same language that was interpreted in 2003 by the Pennsylvania Supreme Court was used and adopted by the General Assembly in Act 77.

Finally, Plaintiffs object on the grounds that much of the information needed to respond to this Interrogatory is in the possession/custody/control of propounding defendant or others.

Subject to the foregoing objections and without waiving them, Plaintiffs state that to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the

Court, Plaintiffs will rely on, among other things, publicly available news reports and public records.  Plaintiffs refer to and incorporate the documents being produced.  *See* FED.R.CIV.P. 33(D).  Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds.

Moreover, discovery is in its nascent stages.  Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**:      Voter fraud poses a legitimate and grave threat to free and fair elections.  Indeed, as discussed more fully below and in Plaintiffs' complaint, numerous instances of voter fraud throughout the country, including in Pennsylvania, have been well documented and publicly reported.  *See, e.g.*, P000120-509 (identifying myriad voter fraud cases across the country, including in Pennsylvania).  Pennsylvania's hurried and reckless adoption of numerous illegal and unequally applied policies regarding elections has only exacerbated the risk of voter fraud, and Plaintiffs will do everything in their power to protect the vote and ensure free and fair elections for all Americans.

*Even though Plaintiffs do not need to demonstrate any evidence of fraud to prove their case-in-chief*, the following is a list of significant voter fraud instances in Pennsylvania that are known to Plaintiffs at this time:

- Former Democrat U.S. Congressman Michael "Ozzie" Myers of Philadelphia, Pennsylvania, was recently charged by Federal officials with committing election fraud, including conspiring to violate voting rights by fraudulently stuffing the ballot boxes for specific Democrat candidates in the 2014, 2015, and 2016 Pennsylvania primary elections, bribery of an election official, falsification of records, voting more than once in federal elections, and obstruction of justice.  *See* https://www.justice.gov/usao-edpa/pr/us-attorney-william-m-mcswain-announces-election-fraud-charges-against-former-us.
- A former Democrat Judge of Elections was recently convicted for his role in accepting bribes to cast fraudulent ballots and certifying false voting results during the 2014, 2015, and 2016 primary elections in Philadelphia.  *See* https://www.justice.gov/opa/pr/former-philadelphia-judge-elections-convicted-conspiring-violate-civil-rights-and-bribery.
- Philadelphia officials admitted that the new mail-in voting regime led to at least forty people voting twice in the 2020 primary election.  *See* https://www.inquirer.com/politics/election/pa-primary-election-mail-ballots-double-voting-20200616.html.
- Philadelphia Commissioners working with the Committee of 70 illegally harvested mail-in ballots for the 2020 primary election.  *See* https://philadelphia.cbslocal.com/2020/05/28/philadelphia-committee-of-70-collecting-primary-mail-in-ballots-at-10-sites/.
- The Pennsylvania Attorney General's Office charged four Philadelphia polling place officials in 2017 for casting fraudulent ballots and certifying false results during a special election.  *See* https://www.attorneygeneral.gov/taking-action/press-releases/attorney-general-josh-shapiro-announces-criminal-charges-for-interference-in-special-election-in-197th-legislative-district/.

- Pennsylvania authorities investigated a Democrat group for voter fraud and a Pennsylvania county eventually threw out thousands of invalid voter registrations submitted by the group. *See* https://www.inquirer.com/philly/news/politics/20161104_Meehan_claims_criminal_conspiracy_in_Delco_voter_registration_probe.html, https://apnews.com/33ec371a38cc48de815a044033067ff6.

- In 2015, the Pennsylvania Secretary of State admitted that more than 700 Pennsylvania voters likely cast two ballots in recent elections. *See* https://archive.triblive.com/news/pennsylvania/731-pennsylvania-voters-may-have-cast-2-ballots-or-voted-elsewhere-secretary-of-state-says/.

- Pennsylvania officials admitted that at least 11,000 illegal immigrants were registered to vote in the state. *See* https://www.washingtontimes.com/news/2019/jan/30/pennsylvania-11000-non-citizens-registered-vote/.

- In 2008, a Democrat Committeeman in Tunkhannock, Monroe County, PA, who was also the machine inspector at his polling location, was photographed changing votes on the machines while voters were in the booth and was later indicted for election fraud.

- In 2014, Richard Allen Toney, the former police chief of Harmar Township in Allegheny County pleaded guilty to illegally soliciting absentee ballots to benefit his wife and her running mate in the 2009 Democratic primary for town council. *See* https://www.post-gazette.com/local/north/2014/09/26/Ex-Harmar-police-chief-pleads-guilty-to-ballot-tampering-Toney/stories/201409260172.

- In 2015, Eugene Gallagher pled guilty to unlawfully persuading residents and non-residents of Taylor in *Lackawanna County* to register for absentee ballots and cast them for him during his councilman candidacy in the November 2013 election. *See* https://www.thetimes-tribune.com/news/gallagher-resigns-from-taylor-council-pleads-guilty-to-three-charges/article_e3d45edb-fe99-525c-b3f9-a0fc2d86c92f.html.

- In 1999, former Representative Austin J. Murphy was indicted by a Fayette County grand jury and then convicted of absentee ballot fraud for forging absentee ballots for residents of a nursing home and adding his wife as a write-in candidate for township election judge. *See* http://old.post-gazette.com/regionstate/19990622murphy6.asp.

- In 1993, the Honorable Clarence C. Newcomer of the United States District Court for the Eastern District of Pennsylvania enjoined the Philadelphia County Board of Elections from counting over a thousand voted absentee ballots that had been delivered by Democratic committee members and several campaign workers of William Stinson who was the Democratic candidate for the 2nd senatorial district for the Pennsylvania Senate, finding that approximately six hundred (600) of the illegally delivered ballots involved unregistered voters who could not have voted in person at the polls. *See Marks v. Stinson,* C.A. No. 93-6157, 1994 WL 1461135, 1994 U.S. Dist. LEXIS 5273, at *44-*45, *77-*92, & *96-*99 (E.D. Pa. April 26, 1994).

- *See also Commonwealth v. Bailey*, 775 A.2d 881, 886 (Pa. Commw. Ct. 2001) (upholding defendant's conviction for absentee ballot violations, holding that a county district attorney has jurisdiction to prosecute such claims even in the absence of an investigation and referral by the Bucks County elections board); *In re Center Township Democratic Party Supervisor Primary Election*, 4 Pa . D. & C.4th 555, 557-563 (Pa. Ct. Com. Pl. Beaver 1989) (court ordered a run-off election after evidence proved that fifteen absentee ballots were applied for and cast by non-existent individuals whose applications and ballots were handled by a political ally of the purported winner).

Discovery in this matter is in its nascent stages and much of the information needed to respond to this Interrogatory is in the possession, custody, and control of persons other than Plaintiffs. Many of the Defendants have not yet responded to the discovery requests at all and many of those that have responded have provided deficient/insufficient responses. Plaintiffs will be engaging in necessary meet-and-confers with the appropriate Defendants.

Moreover, this Interrogatory is an inappropriate contention interrogatory as it seeks "all facts" about a particular topic. Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their alleged misconduct. *See United States v. Educ. Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Additionally, this Interrogatory misstates the allegations of the original Complaint and the Amended Complaint. Neither the original Complaint nor the Amended Complaint contains an allegation in Paragraph 1 that ballot harvesting occurred in the Primary Election. But both do allege that "Defendants' hazardous, hurried, and illegal implementation of unmonitored mail-in voting ... provides fraudsters *an easy opportunity to engage in* ballot harvesting … ." ECF#234, ¶ 1; ECF#4, ¶ 1. Some examples of how those opportunities have been created are noted below. Nor do either the original Complaint (at paragraphs 72-76) or the Amended Complaint (at paragraphs 73-77) allege that ballot harvesting occurred in the Primary Election. But, again, both define ballot harvesting, note it is "incredibly difficult to detect," and provide a past example of ballot harvesting in Philadelphia that directly impacted the results of an election.

Relatedly, despite Defendant Intervenors' protestations to the contrary, the claims asserted by Plaintiffs do not hinge on evidence of ballot harvesting. The Pennsylvania Supreme Court has determined that ballot harvesting is illegal and requirements have been included in the Election Code to deter same. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004). Thus, any ballot cast in violation of those requirements is a ballot that is illegal, fraudulent, unreliable, or invalid. And should any County Board of Election or any District Election Board within a County permit ballot harvesting to occur, and then count those ballots, Plaintiffs' constitutional rights are violated.

The procedures employed by numerous counties during the Primary Election and that will be employed in the General Election contradict the Election Code and invite ballot harvesting. For example, the use of unmonitored drop-boxes to collect ballots invites ballot harvesting by allowing prospective ballot harvesters to drop off large numbers of ballots at an unmonitored location. And several Counties have responded to discovery by noting that they employed drop boxes but did not employ video surveillance on the drop-box, did not keep video surveillance of the drop-box, and did not have a person at the drop-box to guard against ballot harvesting. Moreover, most of those counties that used drop-boxes did not separately tally the number of ballots that were received by way of the drop-boxes.

While still reviewing the materials produced by Defendants in this matter (and, as noted above, not all Defendants have produced responses and Plaintiffs have not had the opportunity to engage in a meet-and-confer with all Defendants who either have not produced responses or have produced insufficient responses), Plaintiffs identify the following as evidence that ballot harvesting occurred or was attempted during the Primary Election:

- At least 36 ballots were returned by means not authorized by the Election Code, *e.g.,* by a ballot harvester or someone other than the voter. *See* P893-935 (Pennsylvania 2020 Primary Election Act 35 of 2020 Report [also produced by Defendant Boockvar and available publicly]). The fact that defendants did not maintain a record of how many ballots were returned via unmonitored drop-boxes or mobile collection sites (also options not authorized by the Election Code) means that number likely is orders of magnitude low. But even 36 votes can make a difference in an election. *See, e.g.,* https://www.juneauempire.com/news/lebon-tops-dodge-by-one-vote-after-house-race-recount/ (1 vote difference); https://wcfcourier.com/news/local/govt-and-politics/recount-shows-house-district-race-goes-to-bergan/article_c5ae48cc-191c-5180-86c5-0df846ebcf07.html (9 vote difference); https://www.seattletimes.com/nation-world/incumbent-republican-retains-state-senate-seat-after-recount/ (11 vote difference); https://ballotpedia.org/Susan_Peikes_Gantman (28 vote difference for Superior Court); *cf.* https://web.archive.org/web/20110605230609/http://www.sos.state.nm.us/Main/Elections/2000/00General/rsult000.htm (366 vote difference in presidential race).

- Philadelphia Commissioners working with the Committee of 70 illegally harvested mail-in ballots for the 2020 primary election. *See* https://philadelphia.cbslocal.com/2020/05/28/philadelphia-committee-of-70-collecting-primary-mail-in-ballots-at-10-sites/.

- Plaintiffs previously produced a document bearing a photograph of a person depositing two ballots into a drop-box. *See* P1078-1081.

- Delaware County allowed third-party delivery of absentee and mail-in ballots as alleged in Paragraph 128 of the Amended Complaint. *See* P000510-11.

- *See also* sources/instances cited in Amended Complaint.

Furthermore, the fact that ballot harvesting from June 2020 has or has not been publicized in the mere two months since the Primary Election does not mean it has not occurred. It is not uncommon for election fraud to go undiscovered or undisclosed for years after it has occurred. *See, e.g.,* P000001-11 (Demuro pleaded guilty in May 2020 on charges related to election fraud in Philadelphia that occurred in 2014-2016); *see also* P1502-1518 (July 2020 indictment of Michael "Ozzie" Myers for election fraud in Philadelphia that occurred in 2014-2016); P000120-509 (identifying myriad voter fraud cases across the country, including in Pennsylvania).

Plaintiffs also refer Propounding Defendants to the following documents being produced with this Supplemental Answer: P1460-1468; P1469-1470; P1471-1472; P1473-1474; P1475-1476; P1477-1481; P1482-1488; P1489-1493; P1494-1501; P1502-1518; P1545. Plaintiffs reserve the right to supplement this response further if necessary. Moreover, Plaintiffs reserve the right to rely upon any publicly available information on this topic at a hearing or trial, should any such information be located between now and then. Plaintiffs also retain the ability to introduce evidence regarding ballot harvesting in the form of expert reports if necessary as this matter proceeds.

**INTERROGATORY 2**: Identify and describe with specificity all facts concerning or relating to every instance of "manipulating and destroying ballots" in the Primary Election as alleged in Paragraph 1 of your Complaint.

**ANSWER**:     Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court.  In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope.  Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Election Boards as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election."  ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but instead about Plaintiffs' contentions of the opportunities that fraudsters may have based on Defendants' inconsistent administration of the Primary Election.   Further, this Interrogatory appears to be duplicative of the reports that are to be provided by the County Election Boards, in that those reports are to include "a review of any action taken by the Department of State, county board of elections or registration commission in response to an incident under paragraph (23), including determinations made on the incident, legal actions filed and referrals to law enforcement." 71 P.S. § 279.6(b)(24).  Therefore, this Interrogatory is improper.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory. Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct.  *See United States v. Educ. Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Also, Plaintiffs object to this Interrogatory on the grounds that it mischaracterizes the claims in this action.  Plaintiffs' Amended Complaint is asking the Court to issue relief in the form of, among other things, a declaratory and injunctive judgment that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner. As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote.  Anything less implicates constitutional problems under the equal protection clause of the Fourteenth Amendment."   *Pierce v. Allegheny County Bd. of Elections,* 324 F. Supp.2d 684, 697 (W.D. Pa. 2003).  Plaintiffs' claim is based upon the inconsistent enforcement of the Election Code requirements across the Commonwealth, which is a violation of Plaintiffs' constitutional rights.  Similarly, Plaintiffs' claim is also based upon the failure of the Secretary and all of the County Election Boards to follow the requirements under the Election Code for properly administering Pennsylvania's absentee and mail-in voting scheme, which also violates their constitutional rights.   The Pennsylvania General Assembly established the requirements that must be followed for ballots to be cast legally, requirements the Pennsylvania Supreme Court has recognized are designed to reduce fraud.   Neither the Secretary of the

Commonwealth nor the County Election Boards have the ability to ignore, modify, restrict, or expand upon those requirements.  Even if the Secretary or a County Election Board were to view those legislatively-enacted requirements as mere "technicalities," they still have an obligation to enforce those requirements.  As the Pennsylvania Supreme Court recently noted, "so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed … ."  *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004); *see also id.* at 1231-32 (noting that "shall" in the Election Code, including its use in Section 3146.6(a) concerning absentee voting, is mandatory).  The same language that was interpreted in 2003 by the Pennsylvania Supreme Court was used and adopted by the General Assembly in Act 77.

Finally, Plaintiffs object on the grounds that much of the information needed to respond to this Interrogatory is in the possession/custody/control of propounding defendant or others.

Subject to the foregoing objections and without waiving them, Plaintiffs state that to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the Court, Plaintiffs will rely on, among other things, publicly available news reports and public records.  Plaintiffs refer to and incorporate the documents being produced.  *See* FED.R.CIV.P. 33(D).  Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds.

Moreover, discovery is in its nascent stages.  Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**:   Plaintiffs refer to and incorporate by reference their Supplemental Answer to Interrogatory No. 1.

Also, discovery in this matter is in its nascent stages and much of the information needed to respond to this Interrogatory is in the possession, custody, and control of persons other than Plaintiffs.  Many of the Defendants have not yet responded to the discovery requests at all and many of those that have responded have provided deficient/insufficient responses.  Plaintiffs will be engaging in necessary meet-and-confers with the appropriate Defendants.

Moreover, this Interrogatory is an inappropriate contention interrogatory as it seeks "all facts" about a particular topic.  Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their alleged misconduct.  *See United States v. Educ. Mgmt. LLC,* 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Additionally, this Interrogatory misstates the allegations of the original Complaint and the Amended Complaint.  Neither the original Complaint nor the Amended Complaint contains an allegation in Paragraph 1 that anyone engaged in "manipulating and destroying ballots" during the Primary Election.  But both do allege that "Defendants' hazardous, hurried, and illegal implementation of unmonitored mail-in voting ... provides fraudsters *an easy opportunity to* … manipulate or destroy ballots … ." ECF#234, ¶ 1; ECF#4, ¶ 1.

Furthermore, despite Defendant Intervenors' protestations to the contrary, the claims asserted by Plaintiffs do not hinge on evidence of manipulated or destroyed ballots in the 2020 Primary

Election.  The Pennsylvania Supreme Court has determined that the requirements in the Election Code for the proper casting of ballots are mandatory, even if some may call them "technicalities," because they are there to protect the secrecy and sanctity of balloting and to reduce fraud.  *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election, 843 A.2d 1223, 1234 (Pa. 2004)*. Thus, any ballot cast in violation of those requirements is a ballot that is illegal, fraudulent, unreliable, or invalid.  And should any County Board of Election or any District Election Board within a County permit someone to manipulate or destroy ballots, and then count those manipulated ballots and not count the destroyed ballots, Plaintiffs' constitutional rights are violated.

The procedures employed by numerous counties during the Primary Election and that will be employed in the General Election contradict the Election Code and invite ballot manipulation or destruction to occur.  For example, the use of unmonitored drop-boxes to collect ballots invites ballot manipulation by way of, among other things, ballot box stuffing.  Several Counties have responded to discovery by noting that they employed drop boxes but did not employ video surveillance on the drop-box, did not keep video surveillance of the drop-box, and did not have a person at the drop-box to guard against ballot manipulation.  Moreover, most of those counties that used drop-boxes did not separately tally the number of ballots that were received by way of the drop-boxes.

Additionally, the use of unmonitored ballot-drop boxes opens the door to ballot manipulation and destruction in numerous ways, including the intentional or inadvertent loss or destruction of ballots.

While still reviewing the materials produced by Defendants in this matter (and, as noted above, not all Defendants have produced responses and Plaintiffs have not had the opportunity to engage in a meet-and-confer with all Defendants who either have not produced responses or have produced insufficient responses), Plaintiffs identify the following as evidence that ballot manipulation occurred or was attempted during the Primary Election:

- Nearly 9,000 incorrect ballots were sent out by just three Counties for the primary election. *See* P893-935 (Pennsylvania 2020 Primary Election Act 35 of 2020 Report [also produced by Defendant Boockvar and available publicly]).

- At least 61 electors in Lycoming County received 8 ballots each.  *See* P2004-2006.

- At least 28 electors in Philadelphia County voted twice.  *See* P2009-2010

- At least one elector in Delaware County received mail-in ballot but voted on the machine at the polls.  And at least on other elector in Delaware County received two mail-in ballots. *See* P2007-2008

- At least 36 ballots were returned by means not authorized by the Election Code.  *See* P893-935.  These could have been attempts at ballot stuffing.  And even 36 votes can make a difference in an election.  *See, e.g.,* https://www.juneauempire.com/news/lebon-tops-dodge-by-one-vote-after-house-race-recount/    (1    vote    difference); https://wcfcourier.com/news/local/govt-and-politics/recount-shows-house-district-race-

goes-to-bergan/article_c5ae48cc-191c-5180-86c5-0df846ebcf07.html (9 vote difference);
https://www.seattletimes.com/nation-world/incumbent-republican-retains-state-senate-
seat-after-recount/ (11 vote difference); https://ballotpedia.org/Susan_Peikes_Gantman
(28 vote difference for Superior Court);
*cf.*https://web.archive.org/web/20110605230609/http://www.sos.state.nm.us/Main/Electi
ons/2000/00General/rsult000.htm (366 vote difference in presidential race).

- Plaintiffs previously produced a document bearing a photograph of a person depositing two ballots into a drop-box.  *See* P1078-1081.

- On June 4, 2020, workers canvassing ballots (e.g., opening the ballots and preparing to scan them) in Philadelphia were told to take a break and leave the room for an undetermined amount of time.  When they returned, they were told to follow a completely different protocol for canvassing.  Then, they were told by the Commissioners the next day that the integrity of the voting system and the mail-in ballots may have been compromised.  *See* P2001

- *See* https://www.youtube.com/watch?v=CbVbGmOgzP4 and first public comment where a poll watcher reported the destruction of a ballot, before the Philadelphia Commissioners cut her off in the middle of her comments.

- *See also* sources/instances cited in Amended Complaint.

Examples of ballot manipulation or destruction can be found just by looking across the river to New Jersey.  *See*  https://www.dailysignal.com/2020/07/23/new-jerseys-all-mail-vote-debacle-is-a-warning-for-november/.  Further, an example from Philadelphia in 2016 shows how ballots can be manipulated by people voting in advance of the polls opening.

Furthermore, the fact that evidence or examples of ballot manipulation or destruction from June 2020 has/have not been publicized in the mere two months since the Primary Election does not mean it has not occurred.  It is not uncommon for election fraud to go undiscovered or undisclosed for years after it has occurred.  *See, e.g.,* P000001-11 (Demuro pleaded guilty in May 2020 on charges related to election fraud in Philadelphia that occurred in 2014-2016); *see also* P1502-1518 (July 2020 indictment of Michael "Ozzie" Myers for election fraud in Philadelphia that occurred in 2014-2016); P000120-509 (identifying myriad voter fraud cases across the country, including in Pennsylvania).

Plaintiffs also refer Propounding Defendants to the following documents being produced with this Supplemental Answer:  P1460-1468; P1469-1470; P1471-1472; P1473-1474; P1475-1476; P1477-1481; P1482-1488; P1489-1493; P1494-1501; P1502-1518; P 1545; P1632-1633; P1634; P1635-1636; P1638.  Plaintiffs reserve the right to supplement this response further if necessary.  Moreover, Plaintiffs reserve the right to rely upon any publicly available information on this topic at a hearing or trial, should any such information be located between now and then.  Plaintiffs also retain the ability to introduce evidence regarding ballot manipulation or destruction in the form of expert reports if necessary as this matter proceeds.

**INTERROGATORY 3**: Identify and describe with specificity all facts concerning or relating to every instance of "duplicitous votes" in the Primary Election as alleged in Paragraph 1 of your Complaint.

**ANSWER**:    Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court.  In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope.  Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Boards of Election as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election." ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but about one result of the failure of the Secretary of the Commonwealth and County Boards of Election to enforce the procedures in the Election Code for valid voting to occur.  Also, this Interrogatory appears to be duplicative of the reports that are to be provided by the County Boards of Election, in that those reports are to include reports of actual or suspected incidents of certain types of voter fraud.  *See, e.g.,* 71 P.S. § 279.6(b)(9),(10),(19),(20),(23),(24).   Therefore, this Interrogatory is improper.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory.  Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct.  *See United States v. Educ. Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013)

Additionally, Plaintiffs object to this Interrogatory on the ground of relevance.  Plaintiffs' Amended Complaint is asking the Court to issue relief in the form of, among other things, a declaratory and injunctive judgment that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner.  As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote.  Anything less implicates constitutional problems under the equal protection clause of the Fourteenth Amendment." *Pierce v. Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684, 697 (W.D. Pa. 2003).  Plaintiffs' claim is based upon the inconsistent enforcement of the Election Code requirements across the Commonwealth, which is a violation of Plaintiffs' constitutional rights.  Similarly, Plaintiffs' claim also is based upon the failure of the Secretary and all of the County Election Boards to follow the requirements under the Election Code for properly administering Pennsylvania's absentee and mail-in voting scheme, which also violates their constitutional rights.  The Pennsylvania General Assembly established the requirements that must be followed for ballots to be cast legally, requirements the Pennsylvania Supreme Court has recognized are designed to reduce fraud.  Neither the Secretary of the Commonwealth nor the County Election Boards have the ability to ignore, modify, restrict, or expand upon those

requirements. Even if the Secretary or a County Election Board were to view those legislatively-enacted requirements as mere "technicalities," they still have an obligation to enforce those requirements. As the Pennsylvania Supreme Court recently noted, "so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed … ." *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004); *see also id.* at 1231-32 (noting that "shall" in the Election Code, including its use in Section 3146.6(a) concerning absentee voting, is mandatory). The same language that was interpreted in 2003 by the Pennsylvania Supreme Court was used and adopted by the General Assembly in Act 77.

Finally, Plaintiffs object on the grounds that much of the information needed to respond to this Interrogatory is in the possession/custody/control of propounding defendant or others.

Subject to the foregoing objections and without waiving them, Plaintiffs state that to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the Court, Plaintiffs will rely on, among other things, publicly available news reports and public records. Plaintiffs refer to and incorporate the documents being produced. *See* Fed.R.Civ.P. 33(D). Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds.

Moreover, discovery is in its nascent stages. Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**:    Plaintiffs refer to and incorporate by reference their Supplemental Answer to Interrogatory No. 1.

Also, discovery in this matter is in its nascent stages and much of the information needed to respond to this Interrogatory is in the possession, custody, and control of persons other than Plaintiffs. Many of the Defendants have not yet responded to the discovery requests at all and many of those that have responded have provided deficient/insufficient responses. Plaintiffs will be engaging in necessary meet-and-confers with the appropriate Defendants.

Moreover, this Interrogatory is an inappropriate contention interrogatory as it seeks "all facts" about a particular topic. Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their alleged misconduct. *See United States v. Educ. Mgmt. LLC,* 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Additionally, this Interrogatory misstates the allegations of the original Complaint and the Amended Complaint. Neither the original Complaint nor the Amended Complaint contains an allegation in Paragraph 1 that anyone engaged in "duplicitous vot[ing]" during the Primary Election. But both do allege that "Defendants' hazardous, hurried, and illegal implementation of unmonitored mail-in voting ... provides fraudsters *an easy opportunity to* … manufacture duplicitous votes … ." ECF#234, ¶ 1; ECF#4, ¶ 1.

Furthermore, despite Defendant Intervenors' protestations to the contrary, the claims asserted by Plaintiffs do not hinge on evidence of duplicitous votes. The Pennsylvania Supreme Court has determined that the requirements in the Election Code for the proper casting of ballots are

mandatory, even if some may call them "technicalities," because they are there to protect the secrecy and sanctity of balloting and to reduce fraud. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004). Thus, any ballot cast in violation of those requirements is a ballot that is illegal, fraudulent, unreliable, or invalid. And should any County Board of Election or any District Election Board within a County permit someone to vote illegally, and then count those duplicitous votes, Plaintiffs' constitutional rights are violated.

The poll watcher residence requirement and the procedures employed by numerous counties during the Primary Election and that will be employed in the General Election contradict the Election Code and invite duplicitous voting.

For example, the poll watcher residency requirement invites duplicitous voting by preventing plaintiffs from sending poll watchers to verify that voters who have returned a ballot by mail after the distribution of the poll book but before election day are properly marked on the state's supplemental list of voters who have already returned a ballot.

The procedures employed by numerous counties during the Primary Election and that will be employed in the General Election contradict the Election Code and invite duplicitous voting. For example, the use of unmonitored drop-boxes to collect ballots invites ballot harvesting by allowing prospective ballot harvesters to drop off large numbers of ballots at an unmonitored location. For the same reason, it also invites ballot manipulation in the form of ballot box stuffing. And several Counties have responded to discovery by noting that they employed drop boxes but did not employ video surveillance on the drop-box, did not keep video surveillance of the drop-box, and did not have a person at the drop-box to guard against ballot harvesting. Moreover, most of those counties that used drop-boxes did not separately tally the number of ballots that were received by way of the drop-boxes.

Additionally, the use of unmonitored ballot-drop boxes opens the door to ballot destruction in numerous ways, including the intentional or inadvertent loss or destruction of ballots.

While still reviewing the materials produced by Defendants in this matter (and, as noted above, not all Defendants have produced responses and Plaintiffs have not had the opportunity to engage in a meet-and-confer with all Defendants who either have not produced responses or have produced insufficient responses), Plaintiffs identify the following as evidence of duplicitous voting that occurred or was attempted during the Primary Election:

- Nearly 9,000 incorrect ballots were sent out by just three Counties for the primary election. *See* P893-935 (Pennsylvania 2020 Primary Election Act 35 of 2020 Report [also produced by Defendant Boockvar and available publicly]).

- At least 61 electors in Lycoming County received 8 ballots each. *See* P2004-2006

- At least 28 electors in Philadelphia County voted twice. *See* P2009-2010

- Allegheny County produced documentation where an elector notified the County of receiving two ballots.

- At least one elector in Delaware County received mail-in ballot but voted on the machine at the polls. And at least on other elector in Delaware County received two mail-in ballots. *See* P2007-2008

- At least 36 ballots were returned by means not authorized by the Election Code, *e.g.,* by a ballot harvester or someone other than the voter. *See* P893-935 (Pennsylvania 2020 Primary Election Act 35 of 2020 Report [also produced by Defendant Boockvar and available publicly]). The fact that defendants did not maintain a record of how many ballots were returned via unmonitored drop-boxes or mobile collection sites (also options not authorized by the Election Code) means that number likely is orders of magnitude low. These also could have been attempts at ballot stuffing. And even 36 votes can make a difference in an election. *See, e.g.,* https://www.juneauempire.com/news/lebon-tops-dodge-by-one-vote-after-house-race-recount/ (1 vote difference); https://wcfcourier.com/news/local/govt-and-politics/recount-shows-house-district-race-goes-to-bergan/article_c5ae48cc-191c-5180-86c5-0df846ebcf07.html (9 vote difference); https://www.seattletimes.com/nation-world/incumbent-republican-retains-state-senate-seat-after-recount/ (11 vote difference); https://ballotpedia.org/Susan_Peikes_Gantman (28 vote difference for Superior Court); *cf.*https://web.archive.org/web/20110605230609/http://www.sos.state.nm.us/Main/Elections/2000/00General/rsult000.htm (366 vote difference in presidential race).

- Plaintiffs previously produced a document bearing a photograph of a person depositing two ballots into a drop-box. *See* P1078-1081.

- On June 4, 2020, workers canvassing ballots (e.g., opening the ballots and preparing to scan them) in Philadelphia were told to take a break and leave the room for an undetermined amount of time. When they returned, they were told to follow a completely different protocol for canvassing. Then, they were told by the Commissioners the next day that the integrity of the voting system and the mail-in ballots may have been compromised. *See* P2001.

- Delaware County allowed third-party delivery of absentee and mail-in ballots as alleged in Paragraph 128 of the Amended Complaint. *See* P000510-11.

- *See* https://www.youtube.com/watch?v=doNl98vOURQ (Philadelphia Board of Elections voted to count ballots received after election day but which did not bear a legible postmark, which is a violation of the law; also the Board addressed at least two missing poll books).

- Violations of the law by the Philadelphia Board of Elections in counting mail-in ballots that do conform to the Election Code requirements. *See* https://www.youtube.com/watch?v=ww888sfhNt8 (beginning around 15:20, the Philadelphia Board of Elections voted to count a mail-in ballot which had a blank declaration, which was an example of at least 20 such mail-in ballots; voter did not sign the declaration and only signed a last name; Delaware County, Lehigh County (received in a drop-box), and Chester County received Philadelphia ballots and forwarded them to Philadelphia – Philadelphia counted the ballots from Delaware and Lehigh Counties).

- Allegheny County produced a copy of a mail-in ballot where the elector did not complete the Verification but the Interrogatory response does not indicate whether the ballot was counted.  *See* Exhibit G of Allegheny County production.

- There is a discrepancy between the number of mail-in and absentee ballots reported by Centre County in response to interrogatories (19,137) and those reported in the Pennsylvania 2020 Primary Election Act 35 of 2020 Report (19,112).

- *See*  https://www.facebook.com/POVPhilly/posts/610577426482030 (comment by a poll watcher during the primary in Philadelphia and the changing rules employed by the County).

- *See also* sources/instances cited in Amended Complaint.

Further, an example from Philadelphia in 2016 shows duplicitous voting, *e.g.*, voting in advance of the polls opening.  *See also* P1475-1476 (In 2018, "an election worker has pleaded guilty in connection with voter fraud committed during a 2017 special election for a state House seat in Philadelphia. The guilty plea marks the fourth of four election workers who either pleaded guilty or acknowledged responsibility for their roles in an election fraud case … . …  The charges against the four election workers detailed harassment and intimidation against voters who wanted to vote for candidates of their choice – but not the candidate being pushed by the city's Democratic Party machine."); *see also* https://www.flgov.com/wp-content/uploads/orders/2011/11-215-johnson.pdf (regarding elected official removed from office and charged criminally for voter fraud related to absentee balloting).

Furthermore, the fact that evidence or examples of duplicitous voting from June 2020 has/have not been publicized in the mere two months since the Primary Election does not mean it has not occurred. It is not uncommon for election fraud to go undiscovered or undisclosed for years after it has occurred. *See, e.g.,* P000001-11 (Demuro pleaded guilty in May 2020 on charges related to election fraud in Philadelphia that occurred in 2014-2016); *see also* P1502-1518 (July 2020 indictment of Michael "Ozzie" Myers for election fraud in Philadelphia that occurred in 2014-2016); P000120-509 (identifying myriad voter fraud cases across the country, including in Pennsylvania).

Plaintiffs also refer Propounding Defendants to the following documents being produced with this Supplemental Answer:  P1460-1468; P1469-1470; P1471-1472; P1473-1474; P1475-1476; P1477-1481; P1482-1488; P1489-1493; P1494-1501; P1502-1518; P1545; P1632-1633; P1634; P1635-1636; P1638.

Plaintiffs reserve the right to supplement this response further if necessary.  Moreover, Plaintiffs reserve the right to rely upon any publicly available information on this topic at a hearing or trial, should any such information be located between now and then.  Plaintiffs also retain the ability to introduce evidence regarding duplicitous voting in the form of expert reports if necessary as this matter proceeds.

**INTERROGATORY 4**: Describe with specificity all facts showing that Defendants were unwilling to properly administer Act 77 during the Primary Election and opted to "promote unlimited use of unmonitored mail-in voting" as alleged in Paragraph 2 of your Complaint.

**ANSWER**: Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court.  In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope.  Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Boards of Election as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election."  ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but about Plaintiffs' contentions concerning absentee and mail-in balloting during the 2020 Primary Election.  Also, this Interrogatory appears to be duplicative of the reports that are to be provided by the County Boards of Election, in that those reports are to include reports of actual or suspected incidents of certain types of voter fraud.  *See, e.g.,* 71 P.S. § 279.6(b)(9),(10),(19),(20),(23),(24).  Therefore, this Interrogatory is improper.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory.  Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct.  *See United States v. Educ. Mgmt. LLC, 2013 U.S. Dist. LEXIS 104176, at \*66, \*71-73 (W.D. Pa. May 14, 2013).*

Finally, Plaintiffs object on the grounds that much of the information needed to respond to this Interrogatory in the possession/custody/control of propounding defendant or others.

Subject to the foregoing objections and without waiving them, Plaintiffs refer to and incorporate by reference Paragraphs 103 through 164 of Plaintiffs' Verified Amended Complaint.  Plaintiffs also refer Propounding Defendants to the documents being produced for additional information.  *See* FED.R.CIV.P. 33(d).

By way of further answer, discovery is in its nascent stages.  Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**:    Plaintiffs refer to and incorporate by reference their Supplemental Answers to Interrogatory Nos. 1 through 3.  Plaintiffs also refer Propounding Defendants to the following documents previously produced:  P545-546; P591-92; P1001-02; P 556-574; P706-715; P718; P719-720; P722-735; P736-739; P746-777; P1003-14; P1015; P1016-18; P1019-1032; P1043-1074; P740; P1033-1036; P1038-1042; P1460-1468; P1469-1470; P1471-1472; P1473-1474; P1475-1476; P1477-1481; P1482-1488; P1489-1493; P1494-1501; P1502-1518; P1545; P1632-1633; P1634; P1635-1636; P1638; P2001; P2004-2006; P2007-2008; 2009-2010.

**INTERROGATORY 5**: Identify and describe with specificity every instance in which a Board used or utilized an "unmonitored and/or unsecured 'drop-off boxes' and/or similar means" to collect mail-in or absentee ballots during the as alleged in your complaint and in so doing, provide the location of every such allegedly unmonitored and/or unsecured drop-off box.

**ANSWER:** Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court. In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope. Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Boards of Election as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election." ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but about Plaintiffs' contentions concerning absentee and mail-in balloting during the 2020 Primary Election. Also, this Interrogatory appears to be duplicative of the reports that are to be provided by the County Boards of Election, in that those reports are to include reports of actual or suspected incidents of certain types of voter fraud. *See, e.g.,* 71 P.S. § 279.6(b)(9),(10),(19),(20),(23),(24). Therefore, this Interrogatory is improper.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory. Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct. *See United States v. Educ. Mgmt. LLC, 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).*

Finally, Plaintiffs object on the grounds that much of the information needed to respond to this Interrogatory in the possession/custody/control of propounding defendant or others.

Subject to the foregoing objections and without waiving them, Plaintiffs refer to and incorporate by reference Paragraphs 103 through 164 of Plaintiffs' Verified Amended Complaint. Plaintiffs also refer Propounding Defendants to the documents being produced for additional information. *See* FED.R.CIV.P. 33(d).

Moreover, discovery is in its nascent stages. Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**: Plaintiffs incorporate their Supplemental Answer to Interrogatory No. 1. Plaintiffs also refer Propounding Defendants to the following documents previously produced: P545-546; P591-92; P1001-02; P 556-574; P706-715; P718; P719-720;

P722-735; P736-739; P746-777; P1003-14; P1015; P1016-18; P1019-1032; P1043-1074; P740; P1033-1036; P1038-1042; P1460-P1468; P1469-1470; P1471-1472; P1473-1474.

**INTERROGATORY 6**: Identify and describe with specificity all actions you have taken, including, but not limited to investigations, studies, audits, or drafting memoranda or research papers concerning or related to the allegation that "drop-off boxes" were "unsecure" or "unmonitored" and thus resulted in "ballot harvesting," "double voting," or "voter fraud" during the Primary Election and if you conducted such a study, investigation, audit or drafted a memoranda or research paper(s), please describe these documents and/or their conclusions.

**ANSWER:** Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court. In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope. Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Boards of Election as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election." ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but about Plaintiffs' "investigations, studies, audits, or drafting memoranda or research papers concerning or related to" drop-boxes or other collection locations. Plaintiffs read the scope of discovery as relating to the official implementation of the two noted procedures by the Secretary and/or the Counties. It is only the Counties who implement the mail-in procedures for the elections. Thus, the use of the conjunctive "and" can only mean that the poll-watching procedures referenced also are the official procedures implemented by the County. Moreover, it is the Secretary and the Counties who will bear the burden of demonstrating the procedures they implement and enforce are constitutional. Therefore, this Interrogatory is improper.

Further, Plaintiffs object to this Interrogatory on the grounds it seeks information protected by the attorney-client privilege, the work product doctrine, or by Federal Rule of Civil Procedure 26(b)(3).

Additionally, Plaintiffs object to this Interrogatory on the ground of relevance. Plaintiffs' Amended Complaint is asking the Court to issue relief in the form of, among other things, a declaratory and injunctive judgment that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner. As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote. Anything less implicates constitutional problems under the equal

protection clause of the Fourteenth Amendment." *Pierce v. Allegheny County Bd. of Elections,* 324 F. Supp. 2d 684, 697 (W.D. Pa. 2003). Plaintiffs' claim is based upon the inconsistent enforcement of the Election Code requirements across the Commonwealth, which is a violation of Plaintiffs' constitutional rights. Similarly, Plaintiffs' claim also is based upon the failure of the Secretary and all of the County Election Boards to follow the requirements under the Election Code for properly administering Pennsylvania's absentee and mail-in voting scheme, which also violates their constitutional rights. The Pennsylvania General Assembly established the requirements that must be followed for ballots to be cast legally, requirements the Pennsylvania Supreme Court has recognized are designed to reduce fraud. Neither the Secretary of the Commonwealth nor the County Election Boards have the ability to ignore, modify, restrict, or expand upon those requirements. Even if the Secretary or a County Election Board were to view those legislatively-enacted requirements as mere "technicalities," they still have an obligation to enforce those requirements. As the Pennsylvania Supreme Court recently noted, "so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed … ." *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004); *see also id.* at 1231-32 (noting that "shall" in the Election Code, including its use in Section 3146.6(a) concerning absentee voting, is mandatory). The same language that was interpreted in 2003 by the Pennsylvania Supreme Court was used and adopted by the General Assembly in Act 77.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory. Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct. *See United States v. Educ. Mgmt. LLC,* 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Subject to the foregoing objections and without waiving them, Plaintiffs state that to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the Court, Plaintiffs will rely on, among other things, publicly available news reports and public records. Plaintiffs refer to and incorporate the documents being produced. *See* FED.R.CIV.P. 33(D). Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds.

Moreover, discovery is in its nascent stages. Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**: Plaintiffs refer to and incorporate by reference their Supplemental Answer to Interrogatory No. 1.

Plaintiffs object to this Interrogatory on the ground that it misstates the allegations of the original Complaint and the Amended Complaint. Neither the original Complaint nor the Amended Complaint contains an allegation that the unauthorized drop-boxes used during the Primary Election actually resulted in ballot harvesting, double-voting, or voter fraud. Instead, the Complaint and the Amended Complaint both allege that "Defendants' hazardous, hurried, and illegal implementation of unmonitored mail-in voting ... provides fraudsters *an easy opportunity to engage in* ballot harvesting, manipulate or destroy ballots, manufacture duplicitous votes, and sow chaos." ECF#234, ¶ 1; ECF#4, ¶ 1. Some examples of how those opportunities have been created are noted in the Supplemental Answers to Interrogatories 1-3, which Supplemental

Answers are incorporated herein in full by reference.

Relatedly, despite Defendant Intervenors' protestations to the contrary, the claims asserted by Plaintiffs do not hinge on evidence of ballot harvesting, the manipulation nor destruction of ballots, the manufacturing of duplicitous votes, or chaos being sown. The Pennsylvania Supreme Court has determined that requirements have been included in the Election Code to preserve the secrecy and sanctity of the ballot and to deter fraud in the election process. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004). Thus, any ballot cast in violation of those requirements is a ballot that is illegal, fraudulent, unreliable, or invalid. And should any County Board of Election or any District Election Board within a County count any ballot cast in violation of the statutory requirements, Plaintiffs' constitutional rights are violated.

Subject to the above objections, after extensive research and investigation Plaintiffs have provided extensive evidence of voter fraud and the dangers of the use of unmonitored drop boxes in response to these interrogatories. This evidence includes those studies and reports identified and cited in the Amended Complaint, those referenced in the Supplemental Answers to Interrogatories 1-3, and those produced previously. Plaintiffs reserve the right to supplement this response further if necessary. Moreover, Plaintiffs reserve the right to rely upon any publicly available information on the identified topics at a hearing or trial, should any such information be located between now and then. Plaintiffs also retain the ability to introduce evidence regarding the identified topics in the form of expert reports if necessary as this matter proceeds.

**INTERROGATORY 7**: Identify and describe with specificity all facts concerning or related to every instance of "double voting" in the Primary Election as alleged in Paragraphs 4, 70-71, and 111-112 of your Complaint.

**ANSWER:** Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court. In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope. Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Boards of Election as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election." ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but about one result of the failure of the Secretary of the Commonwealth and County Boards of Election to enforce the procedures in the Election Code for valid voting to occur. Also, this Interrogatory appears to be duplicative of the reports that are to be provided by the County Boards of Election, in that those reports are to include reports of actual or suspected incidents of certain types of voter

fraud.  *See, e.g.,* 71 P.S. § 279.6(b)(9),(10),(19),(20),(23),(24).  Therefore, this Interrogatory is improper.

Additionally, Plaintiffs object to this Interrogatory on the ground of relevance.  Plaintiffs' Amended Complaint is asking the Court to issue relief in the form of, among other things, a declaratory and injunctive judgment that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner.  As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote.  Anything less implicates constitutional problems under the equal protection clause of the Fourteenth Amendment." *Pierce v. Allegheny County Bd. of Elections,* 324 F. Supp. 2d 684, 697 (W.D. Pa. 2003).  Plaintiffs' claim is based upon the inconsistent enforcement of the Election Code requirements across the Commonwealth, which is a violation of Plaintiffs' constitutional rights.  Similarly, Plaintiffs' claim also is based upon the failure of the Secretary and all of the County Election Boards to follow the requirements under the Election Code for properly administering Pennsylvania's absentee and mail-in voting scheme, which also violates their constitutional rights.  The Pennsylvania General Assembly established the requirements that must be followed for ballots to be cast legally, requirements the Pennsylvania Supreme Court has recognized are designed to reduce fraud.  Neither the Secretary of the Commonwealth nor the County Election Boards have the ability to ignore, modify, restrict, or expand upon those requirements.  Even if the Secretary or a County Election Board were to view those legislatively-enacted requirements as mere "technicalities," they still have an obligation to enforce those requirements.  As the Pennsylvania Supreme Court recently noted, "so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed … ." *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004); *see also id.* at 1231-32 (noting that "shall" in the Election Code, including its use in Section 3146.6(a) concerning absentee voting, is mandatory).  The same language that was interpreted in 2003 by the Pennsylvania Supreme Court was used and adopted by the General Assembly in Act 77.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory.  Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct.  *See United States v. Educ. Mgmt. LLC,* 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Finally, Plaintiffs object on the grounds that much of the information needed to respond to this Interrogatory is in the possession/custody/control of propounding defendant or others.

Subject to the foregoing objections and without waiving them, Plaintiffs state that to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the Court, Plaintiffs will rely on, among other things, publicly available news reports and public records.  Plaintiffs refer to and incorporate the documents being produced.  *See* FED.R.CIV.P. 33(D).  Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds.

Moreover, discovery is in its nascent stages.  Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**:     Plaintiffs refer to and incorporate by reference their Supplemental Answer to Interrogatory No. 1.

Plaintiffs object to this Interrogatory on the ground that it misstates the allegations of the Complaint.  The Complaint does not an allegation in Paragraph 4, 70, or 71 of "double-voting" in the Primary Election (nor does the Amended complaint contain such allegation in the corresponding paragraphs).  Furthermore, the allegations of double-voting in Paragraph 111 is limited to Philadelphia.  Thus, this response is limited specifically to information about double-voting in Philadelphia.

Paragraph 111 of the Complaint (and the corresponding paragraph in the Amended Complaint (i.e., ¶ 150)) include a citation to the source for the allegation of double-voting.  Plaintiffs also incorporate by reference their complete Supplemental Answer to Interrogatories 2 & 3, including the reference to at least 28 electors in Philadelphia County voting twice.  Further, to the extent the photograph in the Philadelphia Inquirer article is of an unmonitored drop-box in Philadelphia, it is additional evidence of either double voting or improper third-party delivery.  *See* P1078-1081.

Additionally, discovery in this matter is in its nascent stages and much of the information needed to respond to this Interrogatory is in the possession, custody, and control of persons other than Plaintiffs, including in the possession, custody, and control of the Philadelphia Board of Elections.  Yet the Philadelphia Board of Elections has not completed its production in this case yet and its counsel has not responded to two emails from Plaintiffs' counsel seeking production of any video surveillance of any of the drop-boxes or mobile collection locations it employed during the Primary Election.  Plaintiffs will be engaging in necessary meet-and-confer in the near future.

Moreover, this Interrogatory is an inappropriate contention interrogatory as it seeks "all facts" about a particular topic.  Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their alleged misconduct.  *See United States v. Educ. Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).


**INTERROGATORY 8**: Identify and describe with specificity all facts concerning or related to

every instance of voter fraud from mail-in or absentee ballots that occurred during the Primary

Election.

**ANSWER:**     Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court.  In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope.  Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Boards of Election as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the

implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election."   ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but about one result of the failure of the Secretary of the Commonwealth and County Boards of Election to enforce the procedures in the Election Code for valid voting to occur.  Also, this Interrogatory appears to be duplicative of the reports that are to be provided by the County Boards of Election, in that those reports are to include reports of actual or suspected incidents of certain types of voter fraud.  *See, e.g.,* 71 P.S. § 279.6(b)(9),(10),(19),(20),(23),(24).  Therefore, this Interrogatory is improper.

Additionally, Plaintiffs object to this Interrogatory on the ground of relevance.  Plaintiffs' Amended Complaint is asking the Court to issue relief in the form of, among other things, a declaratory and injunctive judgment that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner.  As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote.  Anything less implicates constitutional problems under the equal protection clause of the Fourteenth Amendment."  *Pierce v. Allegheny County Bd. of Elections,* 324 F. Supp. 2d 684, 697 (W.D. Pa. 2003).  Plaintiffs' claim is based upon the inconsistent enforcement of the Election Code requirements across the Commonwealth, which is a violation of Plaintiffs' constitutional rights.  Similarly, Plaintiffs' claim also is based upon the failure of the Secretary and all of the County Election Boards to follow the requirements under the Election Code for properly administering Pennsylvania's absentee and mail-in voting scheme, which also violates their constitutional rights.  The Pennsylvania General Assembly established the requirements that must be followed for ballots to be cast legally, requirements the Pennsylvania Supreme Court has recognized are designed to reduce fraud.  Neither the Secretary of the Commonwealth nor the County Election Boards have the ability to ignore, modify, restrict, or expand upon those requirements.  Even if the Secretary or a County Election Board were to view those legislatively-enacted requirements as mere "technicalities," they still have an obligation to enforce those requirements.  As the Pennsylvania Supreme Court recently noted, "so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed … ."  *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004); *see also id.* at 1231-32 (noting that "shall" in the Election Code, including its use in Section 3146.6(a) concerning absentee voting, is mandatory).  The same language that was interpreted in 2003 by the Pennsylvania Supreme Court was used and adopted by the General Assembly in Act 77.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory.  Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct.  *See United States v. Educ. Mgmt. LLC,* 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Finally, Plaintiffs object on the grounds that much of the information needed to respond to this Interrogatory is in the possession/custody/control of propounding defendant or others.

Subject to the foregoing objections and without waiving them, Plaintiffs state that to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the Court, Plaintiffs will rely on, among other things, publicly available news reports and public records. Plaintiffs refer to and incorporate the documents being produced. *See* FED.R.CIV.P. 33(D). Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds.

Moreover, discovery is in its nascent stages. Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**:    Plaintiffs incorporate their Supplemental Answers to Interrogatory Nos. 1 through 3. Plaintiffs also refer Propounding Defendants to the following documents previously produced:  P545-546; P 556-574; P591-92; P706-715; P718; P719-720; P722-735; P736-739; P746-777; P1001-02; P1003-14; P1015; P1016-18; P1019-1032; P1043-1074; P740; P1033-1036; P1038-1042; P1460-1468; P1469-1470; P1471-1472; P1473-1474; P1475-1476; P1477-1481; P1482-1488; P1489-1493; P1494-1501; P1502-1518; P1545; P1632-1633; P1634; P1635-1636; P1638.


**INTERROGATORY 9**: Identify and describe with specificity all actions You have taken,

including, but not limited to investigations, studies, audits, or drafting memoranda or research

papers concerning or related to the prevalence or scope of voter fraud from mail-in or absentee

ballots during the Primary Election and if you conducted such a study, investigation, audit or

drafted a memoranda or research paper(s), describe these documents and/or their conclusions.

**ANSWER**: Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court. In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope. Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Boards of Election as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election." ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but about Plaintiffs' "investigations, studies, audits, or drafting memoranda or research papers concerning or related to" drop-boxes or other collection locations. Plaintiffs read the scope of discovery as relating to the official implementation of the two noted procedures by the Secretary and/or the Counties. It is only the Counties who implement the mail-in procedures for the elections. Thus, the use of the conjunctive "and" can only mean that the poll-watching procedures referenced also

are the official procedures implemented by the County.  Moreover, it is the Secretary and the Counties who will bear the burden of demonstrating the procedures they implement and enforce are constitutional.  Therefore, this Interrogatory is improper.

Additionally, Plaintiffs object to this Interrogatory on the ground of relevance.  Plaintiffs' Amended Complaint is asking the Court to issue relief in the form of, among other things, a declaratory and injunctive judgment that the Secretary of the Commonwealth and all of the County Election Boards follow the provisions of the Election Code in a uniform manner.  As this Court noted years ago: "A state must impose uniform statewide standards in each county in order to protect the legality of a citizen's vote.  Anything less implicates constitutional problems under the equal protection clause of the Fourteenth Amendment." *Pierce v. Allegheny County Bd. of Elections,* 324 F. Supp. 2d 684, 697 (W.D. Pa. 2003).  Plaintiffs' claim is based upon the inconsistent enforcement of the Election Code requirements across the Commonwealth, which is a violation of Plaintiffs' constitutional rights.  Similarly, Plaintiffs' claim also is based upon the failure of the Secretary and all of the County Election Boards to follow the requirements under the Election Code for properly administering Pennsylvania's absentee and mail-in voting scheme, which also violates their constitutional rights.  The Pennsylvania General Assembly established the requirements that must be followed for ballots to be cast legally, requirements the Pennsylvania Supreme Court has recognized are designed to reduce fraud.  Neither the Secretary of the Commonwealth nor the County Election Boards have the ability to ignore, modify, restrict, or expand upon those requirements.  Even if the Secretary or a County Election Board were to view those legislatively-enacted requirements as mere "technicalities," they still have an obligation to enforce those requirements.  As the Pennsylvania Supreme Court recently noted, "so-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed … ." *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004); *see also id.* at 1231-32 (noting that "shall" in the Election Code, including its use in Section 3146.6(a) concerning absentee voting, is mandatory).  The same language that was interpreted in 2003 by the Pennsylvania Supreme Court was used and adopted by the General Assembly in Act 77.

Further, Plaintiffs object to this Interrogatory on the ground that it is a contention interrogatory.  Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct. *See United States v. Educ. Mgmt. LLC,* 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Further, Plaintiffs object to this Interrogatory on the grounds it seeks information protected by the attorney-client privilege, the work product doctrine, or by Federal Rule of Civil Procedure 26(b)(3).

Subject to the foregoing objections and without waiving them, Plaintiffs state that to the degree that evidence of voter fraud or any other election-related fraud is relevant to any questions before the Court, Plaintiffs will rely on, among other things, publicly available news reports and public records.  Plaintiffs refer to and incorporate the documents being produced. *See* FED.R.CIV.P. 33(D).  Plaintiffs also retain the ability to introduce evidence regarding election-related fraud in the form of expert reports if necessary as this matter proceeds.

Moreover, discovery is in its nascent stages. Accordingly, Plaintiffs reserve the right to amend and/or supplement this response if necessary and/or to the extent the information requested is relevant and authorized by the Court.

**SUPPLEMENTAL ANSWER**:   Plaintiffs refer to and incorporate by reference their Supplemental Answer to Interrogatory No. 1.

Plaintiffs object to this Interrogatory on the ground that it misstates the allegations of the original Complaint and the Amended Complaint. Neither the original Complaint nor the Amended Complaint contains an allegation that voter fraud actually occurred from mail-in or absentee ballots during the Primary Election. Instead, the Complaint and the Amended Complaint both allege that "Defendants' hazardous, hurried, and illegal implementation of unmonitored mail-in voting ... provides fraudsters *an easy opportunity to engage in* ballot harvesting, manipulate or destroy ballots, manufacture duplicitous votes, and sow chaos." ECF#234, ¶ 1; ECF#4, ¶ 1. Some examples of how those opportunities have been created are noted in the Supplemental Answers to Interrogatories 1-3, which Supplemental Answers are incorporated herein in full by reference.

Relatedly, despite Defendant Intervenors' protestations to the contrary, the claims asserted by Plaintiffs do not hinge on evidence of voter fraud from mail-in or absentee ballots during the Primary Election. The Pennsylvania Supreme Court has determined that requirements have been included in the Election Code to preserve the secrecy and sanctity of the ballot and to deter fraud in the election process. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1234 (Pa. 2004). Thus, any ballot cast in violation of those requirements is a ballot that is illegal, fraudulent, unreliable, or invalid. And should any County Board of Election or any District Election Board within a County count any ballot cast in violation of the statutory requirements, Plaintiffs' constitutional rights are violated.

Plaintiffs reserve the right to supplement this response further if necessary. Moreover, Plaintiffs reserve the right to rely upon any publicly available information on the identified topics at a hearing or trial, should any such information be located between now and then. Plaintiffs also retain the ability to introduce evidence regarding the identified topics in the form of expert reports if necessary as this matter proceeds.

**INTERROGATORY 10**: Identify and describe with specificity all facts concerning or related to

all instances where voters, candidates, and political committees were "unjustifiably burdened in

their attempts to locate available, qualified registered electors who can serve as poll watchers" as

alleged in Paragraph 132 of your Complaint.

**ANSWER**:   Plaintiffs object to this Interrogatory on the ground that it seeks information on topics outside the limited scope of the expedited discovery ordered by the Court. In response to objections by myriad defendants to the timing and scope of discovery, the Court entered an Order on July 17, 2020, (ECF #124) that allowed discovery on an expedited basis but only on a limited scope. Any discovery beyond the scope of the reports to the Secretary of the Commonwealth by the County Election Boards as contemplated by 71 P.S. § 279.6(c) "must (i) not be duplicative of

materials received in connection with the report, and (ii) be narrowly tailored to the implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election." ECF #124, p.4, ¶II.B.10.

This Interrogatory goes beyond the scope of the approved discovery in that it seeks information not about the "implementation of the mail-in and poll-watching procedures in the 2020 primary election, and the procedures for the 2020 general election," ECF #124, p.4, ¶II.B.10, but instead Plaintiffs' investigation of Pennsylvania's poll watching statute.   Plaintiffs read the scope of discovery as relating to the official implementation of the two noted procedures by the Secretary and/or the Counties.   It is only the Counties who implement the mail-in procedures for the elections.   Thus, the use of the conjunctive "and" can only mean that the poll-watching procedures referenced also are the official procedures implemented by the County.   Moreover, it is the Secretary and the Counties who will bear the burden of demonstrating the procedures they implement and enforce are constitutional.   Therefore, this Interrogatory is improper.

Further, Plaintiffs object to this Interrogatory/Document Request on the ground that it is a contention interrogatory.   Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct.   *See United States v. Educ. Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Further, Plaintiffs object to this Interrogatory on the grounds it seeks information protected by the attorney-client privilege, the work product doctrine, or by Federal Rule of Civil Procedure 26(b)(3).

In light of above objections, on which Plaintiffs stand, no substantive response will be provided.

**SUPPLEMENTAL ANSWER**:      Plaintiffs include individuals who wish to poll watch across county lines but cannot do so because of Pennsylvania's burdensome election laws.   In addition, because of the unequal distribution of drop boxes and polling locations across the Commonwealth, Plaintiffs are burdened by their inability to calculate and deploy sufficient numbers of poll watchers to cover the ubiquitous and unequal distribution of drop boxes and polling places. Finally, if the Governor or any election officials change drop box or polling locations, Plaintiff candidates will be unable to shift and deploy adequate numbers of poll watchers.

Moreover, this Interrogatory is an inappropriate contention interrogatory as it seeks "all facts" about a particular topic.   Contention interrogatories this early in a litigation are disfavored, especially when the complaint is not facially infirm and the Defendants have control over much of the evidence of their misconduct.   *See United States v. Educ. Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104176, at *66, *71-73 (W.D. Pa. May 14, 2013).

Subject to and without waiving these objections, the Commonwealth's arbitrary rule against voters serving as poll watchers in counties other than their county of residence burdens candidates, political parties, and political bodies, including the Plaintiffs.   All Congressional electoral districts contain portions of multiple counties, and President Trump will appear on every ballot that will be cast in the November 3, 2020 General Election in all 67 counties of the Commonwealth.   However, the Election Code restricts poll watchers' presence to just polling places on Election Day and not any other locations that are used to cast and collect mail-in and absentee ballots for the 2020 Primary Election to ensure no third-party delivery or other ballot-harvesting occurred.   25 P.S. §§

2687(b) & 2602(q).  Also, under Section 1308 of the Election Code, the political parties and candidates are permitted to have "representatives" observe the pre-canvass and canvass of the absentee and mail-in ballots, and there is nothing in the Election Code which requires that those "representatives" be citizens of the Commonwealth, let alone residents of the county where they are observing.  25 P.S. §3146.8(g)(1.1) & (2).  Yet, Section 1308 authorizes "watchers" "to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded," provided such watchers are from their county of residence.  25 P.S. §3146.8(b).  Accordingly, all candidate and political party Plaintiffs have an interest in having their poll watchers monitor the polls and all locations where ballots are cast and counted in multiple counties, and both individual voter Plaintiffs have an interest in serving as poll watchers to monitor the polls and all locations where ballots are cast and counted in multiple counties, to ensure the integrity of the vote on behalf of themselves and the other federal and state electoral candidates and to protect the integrity of the vote on behalf of its registered electors who are voting for federal and statewide Republican candidates.

Subject to and without waiving the above objections, and consistent with the guidance issued by the Court which required the production of documents relating to recruitment, training, and assignment of poll watchers, as well as Plaintiffs' attempts to locate available electors to serve as poll watchers, please see the documents produced herewith at P1432-1459; P1519-1544; P1546-1658; P2042-2061.

Plaintiffs reserve the right to supplement this response further if necessary.  Moreover, Plaintiffs reserve the right to rely upon any publicly available information on this topic at a hearing or trial, should any such information be located between now and then.  Plaintiffs also retain the ability to introduce evidence regarding ballot harvesting in the form of expert reports if necessary as this matter proceeds.

**INTERROGATORY 11**: Identify and describe with specificity all facts concerning or related to the efforts you, any Republican candidate, or any state or local Republican Party entity made to recruit persons to serve as poll watchers in any county where there are more registered Democrats than Republicans.

**ANSWER**:  Plaintiffs refer to and incorporate by reference their response to Interrogatory No. 10.

**SUPPLEMENTAL ANSWER**:     Plaintiffs refer to and incorporate by reference their response to Interrogatory No. 10.

**INTERROGATORY 12**: Identify all individuals who sought to serve as poll watchers in Pennsylvania for any Plaintiff or any state or local Republican Party organization at a location

outside their county of residence during the Primary Election, and identify the location at which

each such individual sought to serve as a poll watcher.

**ANSWER**:  Plaintiffs refer to and incorporate by reference their response to Interrogatory No. 10.

**SUPPLEMENTAL ANSWER**:        Plaintiffs refer to and incorporate by reference their response
to Interrogatory No. 10.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

Date:  August 14, 2020                    By:  */s/ Ronald L. Hicks, Jr.*
                                                Ronald L. Hicks, Jr. (PA #49520)
                                                Jeremy  A. Mercer (PA #86480)
                                                Russell D. Giancola (PA #200058)
                                                Six PPG Place, Third Floor
                                                Pittsburgh, PA 15222
                                                (412) 235-4500 (Telephone)
                                                (412) 235-4510 (Fax)
                                                rhicks@porterwright.com
                                                jmercer@porterwright.com
                                                rgiancola@porterwright.com

                                                and

                                                Matthew E. Morgan (DC #989591)
                                                (admitted pro hac vice – ECF #10)
                                                Justin Clark (DC #499621)
                                                (admitted pro hac vice – ECF #31)
                                                Elections, LLC
                                                1000 Maine Ave., SW, 4th Floor
                                                Washington, DC 20224
                                                (202) 844-3812 (Telephone)
                                                matthew.morgan@electionlawllc.com
                                                justin.clark@electionlawllc.com

                                                *Counsel for Plaintiffs*

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have reviewed the

foregoing written answers and that the factual allegations are true and correct.

Date: August 14, 2020                                  _/s/ James Fitzpatrick_____
                                                       James Fitzpatrick, PA EDO Director
                                                       Donald J. Trump for President, Inc.

13634525v4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 14, 2020, a true and correct copy of the foregoing **PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEMOCRATIC INTERVENORS' INTERROGATORIES TO PLAINTIFFS** has been served upon all parties and/or counsel of record via email or U.S. Mail.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

By:   */s/ Ronald L. Hicks, Jr.*
Ronald L. Hicks, Jr. (PA #49520)
Jeremy A. Mercer (PA #86480)
Russell D. Giancola (PA #200058)
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
jmercer@porterwright.com
rgiancola@porterwright.com

and

Matthew E. Morgan (DC #989591)
(admitted pro hac vice – ECF #10)
Justin Clark (DC #499621)
(admitted pro hac vice – ECF #31)
Elections, LLC
1000 Maine Ave., SW, 4th Floor
Washington, DC 20224
(202) 844-3812 (Telephone)
matthew.morgan@electionlawllc.com
justin.clark@electionlawllc.com

*Counsel for Plaintiffs*