

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

———————————

No. 2:20-cv-966

———————————

DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*,

Plaintiffs

v.

KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*,

Defendants

———————————

## OPINION

———————————

**J. Nicholas Ranjan, United States District Judge**

On August 23, 2020, this Court abstained from ruling on the merits of Plaintiffs' claims and stayed this case. Since then, the Pennsylvania Supreme Court has accepted a similar case for review, and appears poised to rule on unsettled state-law questions that are critical to Plaintiffs' claims here—specifically, the validity of mail-in ballot "drop boxes" and the permissibility of counting mail-in ballots that suffer from certain procedural defects.

But before the Pennsylvania Supreme Court decided to tackle these issues, Plaintiffs filed a motion for "limited preliminary injunctive relief," primarily asking this Court to order that all ballots delivered to drop boxes be segregated, so that they won't be commingled with other

ballots. Plaintiffs fear that without such an injunction, they won't be able to challenge the ballots delivered to drop boxes in the event that the Pennsylvania Supreme Court doesn't act in time.

Some of Plaintiffs' concerns are valid. For example, if the Pennsylvania Supreme Court doesn't timely decide whether drop boxes are authorized by the election code, votes could be cast through those locations and, if the ballots are not otherwise traceable, it might then be too late to un-ring the bell in the event that the Supreme Court later finds that drop boxes are not allowed. That said, while these concerns are valid, they're also premature. The Pennsylvania Supreme Court appears to be on track to decide this, and other questions of importance to the voters and candidates in this Commonwealth, in short order. And that court still has sufficient time to reach these issues before any ballots are cast, collected, or canvassed.

In sum, because the harm Plaintiffs fear has not yet materialized in any actualized or imminent way, the Court will deny Plaintiffs' motion for injunctive relief, but will do so without prejudice to Plaintiffs' (or any other party's) right to seek injunctive relief if a more imminent and irreparable harm materializes.

## **BACKGROUND**

### I.     **The Court's August 23, 2020, opinion.**

In its prior opinion, the Court found that most of Plaintiffs' federal-constitutional claims turn on unsettled questions of state law under the recently enacted Act 77. Thus, to allow the state courts to offer a potentially case-dispositive construction of the unsettled state-law questions, the Court abstained under the *Pullman* doctrine. *See, e.g.*, *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) ("[A]bstention under Pullman is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." (cleaned up)).

The Court acknowledged in its opinion that, while most of Plaintiffs' claims were subject to *Pullman* abstention, a few were not. [ECF 409, pp. 34-37]. But in exercising its inherent authority, the Court found it better to stay the entire case rather than proceed on a small subset of claims, only to have to do most of the proceedings over again once the state courts interpreted the relevant election code provisions. [*Id.*]. The Court did, however, give the parties the option to move to lift the stay on October 5, 2020, concerning this subset of claims if the state courts had not yet resolved the state-law issues arising from the unsettled election-code provisions. [ECF 410].

## II.     The Pennsylvania Supreme Court's exercise of extraordinary jurisdiction.

On September 1, 2020, the Pennsylvania Supreme Court granted Secretary Boockvar's "Application for the Court to Exercise Extraordinary Jurisdiction over the Commonwealth Court Case Docketed at 407 MD 2020." [ECF 418; ECF 418-3]. The Pennsylvania Supreme Court ordered all supplemental briefing to be filed by today, September 8, 2020. [ECF 418-3]. The issues before the Pennsylvania Supreme Court include whether "Act 77 . . . permit[s] county election boards to designate drop-off locations other than their official office address for receipt of mail-in ballots" and whether "mail-in ballots delivered to the county election boards without the inner envelope (*i.e.*, 'naked ballots') [may] be counted." [ECF 388-1, p. 5; ECF 418-3].

## III.    Plaintiffs' motion to modify the stay and for limited preliminary injunctive relief.

On August 28, 2020, Plaintiffs moved to modify this Court's abstention order, and to request "limited preliminary injunctive relief." [ECF 414, p. 1]. This is the first time Plaintiffs have moved for a preliminary injunction in this case, though they had reserved their right to do so and their amended complaint seeks injunctive relief. *See* [ECF 409, p. 33] (discussing Plaintiffs' request for preliminary-injunctive relief and decision to forgo filing a motion for preliminary injunction).

- 3 -

In their motion, Plaintiffs request that the Court grant four types of preliminary-injunctive relief: (1) order Defendants to "segregate and maintain intact all cast absentee and mail-in ballots that" are returned in drop boxes; lack an inner secrecy envelope or contain marks, text, or symbols thereon; or are a non-disabled voter's ballot that was delivered by a third party; (2) enjoin Defendants "from pre-canvassing or canvassing" the same;[1] (3) order Defendants to "retain and make available for periodic review all digital images and video" (to the extent they exist) that are captured by a camera "used to monitor drop-boxes or other sites and locations . . . used for the return and collection of cast absentee and mail-in ballots;" and (4) modify the stay so that it is lifted on September 14, 2020, rather than October 5, 2020. [ECF 414, pp. 1-2; ECF 414-1].

In seeking a preliminary injunction, Plaintiffs emphasize that Pennsylvania's Secretary of the Commonwealth, Kathy Boockvar, recently issued new guidance particularly for the November 3, 2020, general election. *See, e.g.*, [ECF 414, ¶¶ 14-16, 33]. Specifically, Secretary Boockvar issued two new sets of guidance on August 19, 2020—four days before the Court's abstention opinion, but after all briefing on the then-pending motions had been completed.

One set of guidance relates to the collection of absentee and mail-in ballots, including the use and implementation of ballot return sites like drop boxes. [ECF 415-19]. Specifically, the guidance states that "[c]ounty boards of elections may establish multiple ballot return locations where voters may return their own voted ballot," which may include establishing a "secure ballot return receptacle." [*Id.* at § 1.1]. The guidance also instructs that any "secure ballot return receptacle"—*i.e.*, drop boxes—should comply with certain design requirements, and the

---

[1] Related to this, Plaintiffs also request that the Court order Defendants to resolve the ballot challenges pursuant to 25 P.S. §§ 3146.8(f) and (g)(5), and that Defendants produce "a list of all electors, by precinct, whose ballots have been segregated and are being challenged under this [Proposed] Order." [ECF 414-1, ¶¶ 2-3].

county boards of elections must ensure the drop boxes comply with enumerated security features, including anti-tampering features, locks, video monitoring, and removal when the site is closed or the drop box cannot be monitored. [*Id.* at §§ 2.2-2.5].

Additionally, this guidance directs the counties to implement certain, specific procedures for collecting ballots from drop boxes and transporting them to the county election office. [*Id.* at §§ 3.1-3.3]. That is, in relevant part, that all ballots retrieved from drop boxes (or other ballot collection sites) should be placed into a "secure ballot transfer container," and "[t]he designated election officials should note on *Ballot Return Site Collection Forms* the site and unique identification number of the ballot return site and the date and time of retrieval." [*Id.* at § 3.1]. The guidance further specifies that this collection form should be "maintained in a manner prescribed by the board of elections to ensure that the form is traceable to its respective secure ballot container." [*Id.* at § 3.2].

The second set of new guidance relates to the counting of "naked" ballots, and instructs that "naked" ballots should be counted notwithstanding the lack of a "secrecy" envelope. [ECF 415-20]. It also instructs counties to develop a consistent process for counting such "naked" ballots. [*Id.* at p. 2]. In providing this guidance, the Secretary notes that "[t]he failure to include the inner ['secrecy'] envelope . . . does not undermine the integrity of the voting process" and thus, "no voter should be disenfranchised for failing to place their ballot in the official election ballot envelope." [*Id.*].

Plaintiffs argue that Defendants' inconsistent use of drop boxes and counting of "naked" ballots are unconstitutional, and that Secretary Boockvar's new guidance does not remedy the constitutional defects. *E.g.*, [ECF 414, ¶¶ 19-20, 41]. Further, Plaintiffs point out that the Secretary's new guidance is inconsistent with Defendants' prior positions, in that the guidance now says all "naked" ballots should be counted regardless of the elector's reason for not placing the ballot in the secrecy envelope. *E.g.*, [*id.* at ¶ 16]. Plaintiffs say that this guidance violates the election code and is likely to be implemented in a non-uniform and potentially

unconstitutional manner (*i.e.*, by some counties but not others). *E.g.*, [*id.* at ¶¶ 18, 20].

Plaintiffs argue that, without an injunction, this unlawful guidance will irreparably harm them. That's because, according to Plaintiffs, nothing in the Secretary's new guidance instructs counties to segregate ballots that were received at drop boxes or that are "naked." [*Id.* at ¶ 23]. Thus, Plaintiffs suggest that unless this Court orders Defendants to not commingle the challenged ballots with other "proper" ballots, Plaintiffs will not be able to obtain the relief they seek even if they win their legal challenges. *E.g.*, [*id.* at ¶¶ 33, 43-44]. They argue that, once the ballots are commingled, it will be impossible to "un-commingle" them. As such, preventing this commingling will, according to Plaintiffs, protect the public interest. *E.g.*, [*id.* at ¶¶ 45-46].

Defendants and Intervenors have a different take. They argue that Plaintiffs' motion, despite its label, is really a motion for reconsideration of this Court's abstention order. And they contend that Plaintiffs cannot meet the heavy burden of justifying such reconsideration. Defendants and Intervenors also argue that the Court cannot award Plaintiffs a preliminary injunction as Plaintiffs' claims are not justiciable because Plaintiffs lack standing, their claims aren't ripe, and their claims are barred by the Eleventh Amendment of the U.S. Constitution. Defendants and Intervenors further argue that the Pennsylvania Supreme Court's exercise of extraordinary jurisdiction renders any preliminary injunction unnecessary and improper because the Supreme Court will quickly decide certain state-law questions, mooting Plaintiffs' alleged need for injunctive relief.

Additionally, Defendants and Intervenors argue that granting a preliminary injunction would be inconsistent with this Court's abstention order because to award a preliminary injunction, the Court would need to assess the merits of Plaintiffs' claims, something the Court declined to do in its abstention opinion. And finally, they argue that Plaintiffs do not meet their burden to show a preliminary injunction is warranted.

Briefing is complete. No party has requested an evidentiary hearing, and the Court, based on the nature of the motion, finds that one is not required. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990) ("The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction."). Thus, the motion is ready for disposition.

## **LEGAL STANDARD**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Because a preliminary injunction is an "extraordinary remedy," the plaintiff must make "a clear showing that the plaintiff is entitled to such relief." *Id.* at 22, 24; *see also Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018) ("A preliminary injunction is an extraordinary remedy which should be granted only in limited circumstances. We do not issue that relief unless the movant, by a clear showing, carries the burden of persuasion." (cleaned up) (citations omitted)).

The first two factors that a plaintiff must show—"(1) a reasonable likelihood of success on the merits . . . [and] (2) irreparable harm"—are "prerequisites" to obtain a preliminary injunction. *Holland*, 895 F.3d at 286. Each of these two factors is also a prerequisite to the other. *See, e.g.*, *id.* (opining that because the plaintiff did not sufficiently "demonstrate that [he] can win on the merits . . . we do not delve deeply into the second factor" (cleaned up)); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure by the moving party to satisfy these prerequisites: that is, a failure to show a likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction.").

Thus, if a plaintiff fails to show that it is likely to suffer irreparable harm, the Court may deny the preliminary injunction, and need not address the remaining factors. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) ("[W]e have repeated that a

district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two."); *see, e.g., In re Arthur Treacher's Franchisee Litig.*, 689 F.2d at 1143; *Doe v. U. of Sciences*, No. 19-358, 2020 WL 5211028, at *4, n.7 (E.D. Pa. Sept. 1, 2020) ("Because the Court finds [Plaintiff] failed to establish irreparable harm, it need not address the parties' arguments with respect to the possibility of harm to others from granting the injunction, or the public interest in granting injunctive relief.").

## DISCUSSION & ANALYSIS

### I.     The Court will consider Plaintiffs' motion.

As an initial matter, the parties dispute whether the Court can entertain Plaintiffs' motion at all, given that it was filed after this Court stayed the case based on *Pullman* abstention. The Third Circuit has said that district judges have the authority to consider (and even that they *must* consider) a preliminary-injunction motion at the same time they are deciding whether to abstain based on *Pullman. See, e.g., Chez Sez III Corp. v. Township of Union*, 945 F. 2d 628, 634 n.4 (3d Cir. 1991); *New Jersey-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Board of Higher Education*, 654 F.2d 868, 886 (3d Cir. 1981).[2]  But

---

[2] The two cases that stand for this proposition create a puzzling tension.   On one hand, district courts are instructed by *Pullman* not to delve into the merits of any unsettled state-law issues to avoid offering "a forecast rather than a determination" that would cause "needless friction with state policies." *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941); *see also id.* ("The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.").

On the other hand, to decide a preliminary-injunction motion, the district court must do that very thing—determine reasonable probability of success on the merits, essentially deciding, or at least predicting, the

there is no authority specifically mandating or authorizing a district court to consider a preliminary-injunction motion filed *after* it stays the entire case under *Pullman*.  *See Fuente v. Cortes*, 207 F. Supp. 3d 441, 453 (M.D. Pa. 2016) ("[T]hough courts in the past have entertained parties' requests for emergency relief contemporaneously with a decision to abstain on the merits of the case, this scenario is distinguishable from such instances[.]" (cleaned up)).

It strikes the Court as inconsistent with the core principles of *Pullman* for a plaintiff to be able to seemingly circumvent a *Pullman*-based stay by, at any later point in time, coming back to federal court, claiming an emergency has arisen, and asking the federal court to basically reconsider and take immediate jurisdiction over the case. "Indeed, abstention could not serve its proper function if the parties could, by their own decisions, force us to confront an otherwise avoidable constitutional question." *Nicholson v. Scoppetta*, 344 F.3d 154, 168 (2d Cir. 2003). In that scenario, the Court would be inviting, not avoiding, the "needless friction" that abstention is designed to

---

state-law issues in the process.  This seems at odds with *Pullman*'s concern for avoiding advisory opinions that might later be voided by a state-court decision under state law.  *See id.*; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) ("When federal courts interpret state statutes in a way that raises federal constitutional questions, a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless." (cleaned up)).

In *New Jersey-Philadelphia*, the Third Circuit seemed to recognize this tension, but found that it was of little consequence under the specific circumstances of that case.  654 F.2d at 885-86.  That's because, in the Third Circuit's view, "the district court [did] not construe[] the state statute or regulations at all," and regardless, a preliminary injunction is just that—preliminary—and the state courts could always decide the state-law questions and issue narrowing constructions before entry of a final permanent injunction.  *Id.*

prevent. *See Moore v. Tangipahoa Parish School Bd.*, 507 F. App'x 389, 396 (5th Cir. 2013) ("This [preliminary-injunction motion] presents the very conflict that Pullman abstention seeks to avoid—*i.e.*, needless friction between a federal pronouncement and state policies—as it involves a federal court enjoining a state's legislatively-determined funding decisions prior to allowing the state to consider whether such decisions comport with its own constitution.").[3]

That said, this Court is bound by Third Circuit precedent, and the Third Circuit appears to have ordered district courts to consider and decide preliminary-injunction motions even while abstaining under *Pullman*. The Court could draw a distinction between this case on the one hand (preliminary-injunction motion filed after the *Pullman* stay), and *New Jersey-Philadelphia* and *Chez Sez* on the other (preliminary-injunction motion filed contemporaneously with the complaint and before *Pullman* stay). But that distinction doesn't seem to necessarily flow from the reasoning of the Third Circuit's decisions. Thus,

---

[3] In other Circuits, courts have specifically abstained from deciding motions for a preliminary injunction based on *Pullman. See, e.g., Caldera v. City of Boulder*, 341 F. Supp. 3d 1241, 1243 (D. Colo. 2018) (abstaining from deciding "preliminary injunction (# 4) against enforcement of [an] Ordinance"), *aff'd Caldera v. City of Boulder*, 955 F.3d 1175 (10th Cir. 2020); *Moore*, 507 F. App'x at 396 (holding that district court erred in granting preliminary injunction "in light of the *Pullman* abstention doctrine."); *Jayaraj v. Scappini*, 66 F.3d 36, 38 (2d Cir. 1995) (holding that the district court "erred in granting the preliminary injunction" because "abstention under [*Pullman*] is warranted."); *Chun v. State of N.Y.*, 807 F. Supp. 288, 289 (S.D.N.Y. 1992) (abstaining from deciding "preliminary injunction to enjoin the State of New York from prosecuting [plaintiff] for violating New York's anti-gambling laws.").

based on this binding precedent, the Court finds that it is obligated to consider Plaintiffs' motion.

However, as will be discussed, the Court also finds that Plaintiffs' motion must, at this stage, be denied due to the absence of any irreparable harm. Because that issue is dispositive, this Court need not delve into a merits-based determination that could cause tension with the principles of *Pullman*.[4]

## II.     Plaintiffs cannot establish irreparable harm.

At least at the current stage of proceedings and on the record presently before this Court, Plaintiffs have not established that they are entitled to the "extraordinary remedy" of a preliminary injunction. *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020). That is chiefly because Plaintiffs have not

---

[4] In discussing this issue, Plaintiffs rely heavily on *Pierce v. Allegheny County Bd. of Elections*, 324 F. Supp. 2d 684 (W.D. Pa. 2013) (Conti, J.). *See* [ECF 414, ¶¶ 33, 37-47]. In *Pierce*, the court abstained under *Pullman*, but granted a limited injunction, ordering the segregation of 937 ballots. 324 F. Supp. 2d at 707-09. A review of *Pierce* demonstrates the difficult position in which the Third Circuit's decisions placed the district court, and how those decisions limited the court's merits review. There, the district court recognized that "the likelihood of plaintiffs' success, while a close question, appear[ed] to turn on an issue, which [was] more appropriate for the Pennsylvania courts to determine[.]" *Id.* at 705. But, in light of its abstention decision, the district court found it "inappropriate, based upon the doctrines of comity and federalism, to speculate as to how the Pennsylvania courts would interpret" the relevant state-law issue. *Id.* The district court eventually reached its merits decision on the injunction by qualifying it and finding that it turned on "how the state court interpret[ed] the provision of the election code at issue," without engaging in such an interpretation. *Id.*

shown that they will suffer "irreparable harm" if the Court denies the injunction.[5]

A party seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). An injury is "irreparable" only if it "cannot be redressed by a legal or an equitable remedy following a trial." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (citation omitted). Further, "[t]he preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Id.* (emphasis in original). As well, preliminary relief that is "mandatory," rather than prohibitive, and "will alter the status quo" must "meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008); *see also Christie-Spencer Corp. v. Hausman Realty Co.*, 118 F. Supp. 2d 408, 418 (S.D.N.Y. 2000) ("Such relief is granted sparingly, because mandatory injunctions are more burdensome than prohibitory injunctions, and disturb the status quo prior to final adjudication."). In such circumstances, Plaintiffs' right to relief must be

---

[5] Defendants and Intervenors raise a number of other procedural and substantive challenges to Plaintiffs' motion. Because Plaintiffs' failure to establish irreparable harm is dispositive to the present motion, the Court need not address these other arguments. *See, e.g.*, *Exec. Home Care Franchising LLC v. Marshall Health Corp.*, 642 F. App'x 181, 183 (3d Cir. 2016) ("We conclude that the District Court properly disposed of Executive Care's motion for a preliminary injunction on the basis of the 'irreparable harm' requirement."); *B.P.C. v. Temple Univ.*, No. 13-7595, 2014 WL 4632462, at *5 (E.D. Pa. Sept. 16, 2014) ("Because of the failure to establish irreparable harm, the other factors (likelihood of success, balance of harms and public interest) need not be addressed." (citing *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994))).

"indisputably clear." *Hope v. Warden York County Prison*, — F.3d —, 2020 WL 5001785, at *3 (3d Cir. Aug. 25, 2020).

Plaintiffs argue that they will suffer irreparable harm without an injunction because Defendants may commingle all absentee and mail-in ballots after they are cast and collected. Once that happens, Plaintiffs say, there will be "no way to discern which, or how many, of those ballots were cast in the manner being challenged by Plaintiffs." [ECF 414, p. 17, ¶ 43]. To avoid this harm, they ask that the Court order Defendants to (1) segregate, account for, and "deem challenged" all ballots within the categories Plaintiffs wish to contest (*e.g.*, all absentee and mail-in ballots returned to "drop boxes"); and (2) retain, and allow Plaintiffs to "periodically review," video surveillance footage used to monitor "drop boxes" or other absentee and mail-in ballot return sites. [ECF 414-1, ¶¶ 1-3].

After careful consideration, the Court does not believe either category of preliminary relief is warranted at this time.

## A.   Plaintiffs' request for ballot segregation.

First, Plaintiffs ask the Court to preliminarily enjoin Defendants from "commingling and counting (either during a pre-canvass or canvass) cast absentee and mail-in ballots" that are either: (1) "returned or collected through drop boxes"; (2) "lack an inner secrecy envelope or contain marks, texts, or symbols thereon"; or (3) "have been delivered in-person by someone other than the non-disabled voters." [ECF 414-1, p. 2]. Plaintiffs further ask that this Court "deem" all such ballots to be "challenged" under the election code and direct Defendants to "segregat[e] and set aside [the challenged ballots] in a secure location at the offices of each of the Defendant County Elections Boards." [*Id.*]

In practice, this means that all the challenged ballots would be excluded from counting in the ordinary course and subjected to a hearing procedure used for adjudicating challenges to absentee ballots or ballot applications under 25 P.S. § 3146.8(f) and (g)(5). Presumably, Plaintiffs intend to ask that these ballots be

disqualified, after the votes are cast, if they prevail on their claims challenging the use of drop boxes (either in state court or in this Court).

For several reasons, Plaintiffs have not shown that they will suffer irreparable harm if the Court declines to order this relief.

### 1. Plaintiffs can obtain relief by operation of the Pennsylvania Supreme Court's decision.

Initially, Plaintiffs have not shown that the harm they fear is "likely," or that an injunction is the "only" way to prevent it, because the Pennsylvania Supreme Court is poised to resolve Plaintiffs' claims on state-law grounds in short order, before such harm occurs. *See Winter*, 555 U.S. at 22; *Campbell Soup Co.*, 977 F.2d at 91.

Per that court's recent order exercising extraordinary jurisdiction over the parallel state-court litigation, the question of whether the election code permits counties to use "drop boxes" is now teed up for decision, as is the question of whether ballots submitted without an "inner secrecy envelope" (or with "marks" on that envelope) may be counted. [ECF 388-1, p. 5; ECF 418-3]. Those issues will be fully briefed by today, September 8, 2020, and presumably decided promptly after that. [ECF 418-3]. While Plaintiffs argue that there is no guarantee the Pennsylvania Supreme Court will quickly and conclusively decide these issues [ECF 437, pp. 2-3], this Court trusts that it will, considering the importance and urgency of the parties' disputes. Once the Pennsylvania Supreme Court has weighed in, its decision will likely moot Plaintiffs' federal claims here by either (1) invalidating the use of drop boxes and counting of "naked ballots" on state-law grounds; or (2) determining that the Secretary's guidance on those points is lawful.[6] That's why this Court abstained under *Pullman* in the first place.

---

[6] As it pertains to these claims, Plaintiffs do not assert a facial constitutional challenge to the election code or to the constitutionality of drop-boxes and mail-in voting generally. Instead, as this Court explained in its prior

As for the timing of the commingling Plaintiffs seek to preempt, the earliest possible harm referenced by Plaintiffs' motion is that one county (Delaware County) plans to install drop boxes to collect mailed ballots on October 1, 2020. [ECF 414, p. 12, ¶ 22]. Assuming that is true,[7] it would mean that ballots could be cast, collected, and *then* possibly mixed-in with others at some point after that—nearly a month or more from now.

Even then, however, Plaintiffs have not shown that Defendants intend to commingle ballots cast in drop boxes in an untraceable way.  In fact, the Secretary's new guidance instructs that ballots collected from drop boxes (and other ballot collection sites) shall be placed in a "secure ballot transfer container," and that county officials shall then "note on *Ballot Return Site Collection Forms* the site and unique identification number of the ballot return site and the date and time of retrieval." [ECF 415-19, § 3.1].  What's more, the guidance specifies that these collection forms should be maintained by the counties "to ensure that the form is traceable to its respective secure ballot container." [*Id.* at § 3.2].  This suggests that cast ballots will be traceable back to the site where they were deposited.  Plaintiffs have not shown that any Defendant plans to disregard this guidance, let alone do so at a time that would result in commingling of ballots before the Pennsylvania Supreme Court weighs in.

---

opinion, Plaintiffs' federal claims depend on the Secretary having issued unlawful guidance that will be implemented inconsistently across the counties. [ECF 409, pp. 2, 26, n.6].  Thus, if the Secretary's guidance is declared either lawful or unlawful by the Pennsylvania Supreme Court, and the correct interpretation of the election code is then implemented uniformly across the counties, nothing remains of Plaintiffs' related federal claims in this case.

[7] The Secretary's new guidance suggests that all ballot return sites should be accessible "not less than 30 days before the day of the election, and on the day of the election." [ECF 415-19, § 2.1].  This suggests that Plaintiffs are correct to believe that at least some drop boxes will be made accessible starting October 1, 2020.

For these reasons, Plaintiffs have not carried their burden to show that votes will "likely" be cast in drop boxes—let alone collected and irreversibly commingled with other ballots—before the Pennsylvania Supreme Court decides the correct interpretation of the election code.  To the contrary, all signs suggest that the Supreme Court understands the urgency and will issue a decision before ballot collection is substantially underway, hopefully in the next several weeks.  So long as that happens, Plaintiffs will not suffer irreparable harm.  *See ARRM v. Piper,* 319 F. Supp. 3d 1156, 1163 (D. Minn. 2018) ("When an adequate remedy exists under state law, injunctive relief is not appropriate.") (citations omitted); *cf. Little v. Tube City Renaissance,* No. 19-172, 2020 WL 436616, at *2 (W.D. Pa. Jan. 28, 2020) (Horan, J.) ("In addition, Mr. Little has not demonstrated that he could not have received adequate protections through the state appellate process . . . Mr. Little abandoned an adequate state law remedy to challenge the constitutionality of the Conservatorship Act.  Accordingly, injunctive relief is not available[.]").

As for Plaintiffs' challenge to the Secretary's guidance on the counting of ballots submitted without an inner secrecy envelope (or with "marks" on that envelope), the harm Plaintiffs argue they will suffer without injunctive relief is even more attenuated.

Under the election code, the outer envelopes of mail-in and absentee ballots cannot be opened until after 7:00 a.m. on election day, November 3, 2020.  *See* 25 P.S. §§ 2602(q.1); 3146.8(g)(1.1).  Until that happens, election officials have no way of knowing if a ballot lacks an *inner* secrecy envelope or contains "marks, texts, or symbols thereon," nor are they able to "commingle" such ballots with others.  The Secretary's briefing confirms that this is her understanding of the election code, [ECF 424, pp. 11-12], and Plaintiffs make no contrary showing.

Assuming that there is a decision on whether such ballots may be counted before election day, Plaintiffs have not established that they are "likely" to suffer any harm.  So-called "naked ballots" can simply be counted, or not, consistent with any decision by the Pennsylvania Supreme Court (or this Court) that issues before election day.

- 16 -

To be clear, the Court's analysis here is predicated on the Pennsylvania Supreme Court deciding these issues in a timely and expeditious manner, and the fact that sufficient time remains before Plaintiffs' commingling concerns materialize. Plaintiffs' concern that the Pennsylvania Supreme Court may not timely act are well-taken, and thus there could be a point in the run-up to the election where Plaintiffs' assertions of irreparable harm become likely and imminent enough to warrant some type of injunctive relief—provided, of course, that the other elements required to obtain preliminary injunctive relief are satisfied.

>           **2.    State law and the Secretary's guidance protect Plaintiffs from harm due to third-party ballot delivery.**

For a different reason, Plaintiffs have also failed to show that they will suffer irreparable harm if the Court does not order Defendants to segregate all absentee and mail-in ballots that are cast for non-disabled voters but "delivered in-person by someone other than the non-disabled voters" themselves. [ECF 414-1, ¶ 2].

This request stems from Plaintiffs' claim that a few counties accepted delivery of such ballots by third parties (such as voters' spouses) during the recent primary election. But everyone now agrees that the election code forbids third-party ballot delivery, and Secretary Boockvar has issued updated guidance clarifying that counties should only permit voters to return "***their own*** voted absentee and mail-in ballots." [ECF 424-1, § 1.1] (emphasis added).

Given this, it appears that state law will afford Plaintiffs full protection from the "harm" of counties accepting in-person delivery of mail-in or absentee ballots by individuals other than the voter. Plaintiffs have not presented evidence that any Pennsylvania county is "likely" to disobey the unambiguous election code or the Secretary's clarifying guidance forbidding third-party delivery. And without such evidence, the mere possibility that individual county officials might disobey unambiguous state election code requirements does not

rise to the level of federal constitutional concern.[8]   *See Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1062 (7th Cir. 2020) (explaining that even "a deliberate violation of state election laws by state election officials does not transgress against the Constitution") (cleaned up); *Lecky v. Virginia State Bd. of Elections*, 285 F. Supp. 3d 908, 919 (E.D. Va. 2018) ("[E]ven assuming the Fredericksburg officials' failure to provide provisional ballots amounted to a violation of state law, it would not rise to the level of an equal protection violation.").

In sum, absent any arguably unlawful guidance from the Secretary or demonstrated intent by other Defendants to disobey the election code, Plaintiffs cannot satisfy the high bar for preliminary-injunctive relief.

## B.   Plaintiffs' request for video surveillance footage.

In addition to requesting the segregation of ballots they intend to challenge, Plaintiffs ask that the Court order Defendants to "make available for periodic review upon request by Plaintiffs" any video surveillance footage "used to monitor any drop-boxes and/or other sites or locations, including a county election office, for the return and collection of absentee and mail-ballots." [ECF 414-1, ¶ 2].

Plaintiffs, however, have not shown that an injunction is "the *only* way of protecting [them] from harm" in this instance. *Campbell Soup Co.*, 977 F.2d at 91 (emphasis in original). The Secretary's latest guidance already suggests that video surveillance footage related to drop box and other ballot-collection sites "should be

---

[8] If, despite the unambiguous statute and guidance from the Secretary, instances of non-compliance arise in specific counties, Plaintiffs would of course still be able to seek emergency relief in state court, where claims for election-law violations are typically adjudicated. *See, e.g. Shipley*, 947 F.3d at 1062 ("[T]hat is a state law claim for a violation of state law, not a federal claim for a violation of constitutional rights . . . Plaintiffs may have other avenues available to raise their complaints, but federal court is not one of them.").

retained by the county election office through 60 days following the deadline to certify the election." [ECF 424-1, § 2.5].   And if this guidance on its own lacks teeth, Defendants' evidence preservation obligations in this (and any other) litigation do not.   To be clear, at least in this case, Defendants are under an ongoing duty to preserve all such evidence in their possession, custody, and control until the conclusion of this litigation.   *See Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 110 (E.D. Pa. 2010) ("It is well-settled that a party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." (cleaned up)); *see also Archer v. York City Sch. Dist.*, 227 F. Supp. 3d 361, 380 (M.D. Pa. 2016).

The Court has seen no evidence that any Defendant has spoliated, or plans to spoliate, relevant video footage in the imminent future.[9]   Thus, Plaintiffs have not shown that harm is "likely" or that injunctive relief is necessary to force Defendants to "retain" such footage.[10]

---

[9] Plaintiffs suggest that some Defendants did not retain video surveillance footage taken during the primary election.   [ECF 414, p. 11 n.7].   But this litigation was not pending or anticipated at that time (indeed, Plaintiffs' claims here are based in large part on events that allegedly occurred *during* the primary election), and so Defendants did not then have any obligation to suspend retention policies that might result in the loss of such evidence.

[10] Even if limited injunctive relief directing Defendants to "retain" existing surveillance footage were appropriate, Plaintiffs' further request that Defendants be compelled to authorize "periodic review" of such footage by campaigns does not appear warranted in light of the significant burdens associated with mandating that Defendants oversee ongoing, statewide video surveillance by private parties in the lead up to the election.   Additionally, any need for review of such footage is likely to be eliminated or diminished by the Pennsylvania Supreme Court's impending decision resolving the legality of drop boxes. While video footage could, in theory, provide some "color" evidence to support Plaintiffs' allegations with respect to the perils of using drop boxes, that really is ancillary to the

### III.    The Court will not move up the date on which it will consider motions to lift the stay.

The Court previously ordered that either party could lift the stay as to "the claims that are not based on unsettled issues of state law" starting October 5, 2020, due to "a prolonged delay by the state courts[.]" [ECF 410, p. 2]. Plaintiffs ask the Court to modify that order and allow the stay to be "lifted on September 14, 2020, rather than October 5, 2020, with respect to all settled state-law claims." [ECF 414, p. 2]. Plaintiffs argue that maintaining the October 5 date will "result in substantial prejudice to Plaintiffs and their claims." [*Id.* at ¶ 34]. The Court disagrees.

The most urgent apparent basis for Plaintiffs' request is that September 14, 2020, is the date when county election boards may begin mailing ballots to voters. [*Id.* at p. 12, ¶ 21]. But Plaintiffs do not explain, and the Court cannot discern, the connection between September 14 and the claims that the Court said it would consider deciding after October 5—those not based on unsettled or ambiguous issues of state law. Those claims include: (1) Plaintiffs' third-party ballot-delivery claims that are set forth in parts of Counts I, II, and III; (2) Plaintiffs' facial challenge to Pennsylvania's poll-watching residency restriction set forth in Counts IV and V; and (3) Plaintiffs' claims related to improper provisional voting as set forth in Counts VIII and IX. [ECF 410, p. 2].

The connection between these claims and either the mailing of ballots to voters or the installation of drop boxes is tenuous, at best.[11]

---

legal question of whether drop boxes are authorized by the election code.

[11] The one exception is, perhaps, the third-party ballot delivery claim. But as discussed above, that no longer seems to be a "live" issue after the Secretary's latest guidance. The rest of these claims relate to issues that just need to be decided soon enough to allow proper implementation by election day—*e.g.*, whether out-of-county residents may serve as poll-watchers and what the

As the Court outlined above, the state-law issues at the heart of Plaintiffs' central claims are on track to be resolved in an expeditious manner in state court, and this Court can resolve any constitutional issues that have not been mooted or that have otherwise been refined shortly thereafter. It remains likely that the Pennsylvania Supreme Court will act this month, before the current October 5, 2020, deadline arrives. Thus, the Court sees no reason to modify its prior order at this time.

## CONCLUSION

For the reasons discussed, the Court will deny Plaintiffs' motion to modify the Court's stay order and for limited preliminary-injunctive relief. A corresponding order consistent with this Opinion will follow.

DATED this 8th day of September, 2020.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

correct procedure is for handling voters who show up to vote in-person on election day after requesting an absentee or mail-in ballot beforehand.