

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

No. 2:20-cv-966

_____

DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*,

                                            Plaintiffs

v.

KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*,

                                            Defendants.

_____

## MEMORANDUM ORDER

_____

### J. Nicholas Ranjan, United States District Judge

After the Pennsylvania Supreme Court issued its recent decision in *Pennsylvania Democratic Party v. Boockvar*, — A.3d —, 2020 WL 5554644 (Pa. Sept. 17, 2020), this Court lifted the stay it had imposed pursuant to the *Pullman* abstention doctrine and ordered the parties to identify the remaining viable claims and defenses in the case. [ECF 447]. In their notice, Plaintiffs take the position that nearly all their claims remain viable, with a few discrete exceptions. [ECF 448]. Plaintiffs have also sought leave to amend their complaint to add new allegations and a new claim relating to Secretary Boockvar's recent signature-verification guidance. [ECF 451]. Defendants and Intervenors, for their part, suggest that Plaintiffs' claims have been substantially narrowed, if

- 1 -

not outright mooted, and remind the Court that their arguments for dismissal still remain outstanding.

From review of the notices, it appears that Plaintiffs intend to press forward on the following claims:

(1) Whether Defendants violate the Constitution by using "unmanned" drop-boxes that, according to Plaintiffs, enable unlawful third-party ballot delivery.

(2) Whether Defendants violate the Constitution through the uneven use of "unmanned" drop boxes that allegedly enable unlawful third-party ballot delivery.

(3) Whether Defendants violate the Election Code and the Constitution by failing to provide sufficient notice of, or select appropriate sites for, drop-box locations—requirements that apply to "polling places" under the Election Code.

(4) Whether Defendants violate the Election Code and the Constitution by allowing and counting non-disabled voters' ballots delivered in-person by purported ballot harvesters or other third-parties.

(5) Whether Defendants violate the Constitution through uneven allowance and counting of non-disabled voters' ballots delivered in-person by purported ballot harvesters or other third-parties.

(6) Whether Defendants violate the Constitution by allowing and counting "naked ballots," ballots that contain marks and identifying information, and ballots that lack a completed voter declaration.

(7) Whether Defendants violate the Constitution through uneven allowance and counting of "naked ballots," ballots that contain marks and identifying information, and ballots that lack a completed voter declaration.

(8) Whether Defendants violate the Election Code and the Constitution by not "verifying" in-person absentee and mail-in ballot applications unless there is a "*bona fide* objection" to the voter's qualifications (*i.e.*, does Secretary Boockvar's January 2020 guidance regarding objections to such applications violate the Constitution).

(9) Whether Defendants violate the Constitution through uneven approval and verification of in-person absentee and mail-in ballot applications.

(10)    Whether, as applied to the facts of this case, Pennsylvania's county residency requirement for poll watchers violates the Constitution.

(11)    Whether Secretary Boockvar's guidance as to provisional, in-person voting by voters who have already obtained mail-in ballots violates the Constitution.

(12)    Whether Secretary Boockvar's September 11, 2020, guidance regarding signature comparison violates the Constitution by treating in-person voting differently than mail-in voting.

Based on these asserted claims, the notices filed by all parties, Defendants' pending motions to dismiss, and Plaintiffs' pending motion for leave to amend their complaint, the Court finds as follows:

**Plaintiffs' Motion for Leave to Amend.**   As noted, Plaintiffs have filed a motion for leave to file a second amended complaint.  The Federal Rules require the Court to grant leave to amend "freely when justice so requires." *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." (citation omitted)); Fed. R. Civ. P. 15(a).   Of course, "freely" does not mean "unlimited."  And Defendants' concerns about the prejudice that could result from essentially "starting over" at this late date are well-taken.   But at the same time, the proposed complaint mostly just adds additional facts and attempts to refine the existing claims.  The only new legal theory advanced in the

- 3 -

proposed second amended complaint concerns a claim regarding signature comparison during the canvassing of mail-in ballots.

Given that this is a narrow amendment, the Court believes that undue prejudice to Defendants can be avoided, and the case promptly resolved, by adoption of the disposition plan described in this order. As such, the Court will **GRANT** Plaintiffs' motion for leave to file their second amended complaint. Plaintiffs must do so today, **September 23, 2020.** All Defendants and Intervenors shall answer the complaint by **September 28, 2020**, irrespective of whether they intend to move to dismiss under Rule 12(b) in accordance with the schedule set by this order. In light of the forthcoming amended complaint, Defendants' pending motions to dismiss are hereby **DENIED** as moot.

**Remaining Discovery.** Given the discovery conducted to-date, Plaintiffs' request for an expedited hearing, and the need to resolve this case in a manner that will minimize prejudice to Defendants, ensure the proportionality of discovery, and provide the parties with certainty as far ahead of the general election as possible, the Court hereby **ORDERS** that the parties complete all remaining fact discovery by **September 29, 2020** and imposes the following limits on that discovery:

(1) Initial disclosures and supplements to initial disclosures must be served.

(2) No additional written discovery shall be served by any party. All responses to pending discovery requests must be submitted by the fact-discovery deadline.

(3) No re-deposition of any witness shall be permitted, including regarding Plaintiffs' new signature-comparison claim. This includes Plaintiffs' request for a supplemental deposition of Secretary Boockvar, which is denied.

(4) By the close of fact discovery and without the need for any formal discovery request, the parties shall produce any operative written signature-

comparison guidance and policies; any written procedures or instructions regarding signature comparison; and any documents that the parties intend to rely on pertaining to this claim or defenses to this claim.

(5) The parties may conduct additional fact-witness depositions of witnesses who have not yet been deposed.     However, the time limits for depositions previously ordered by the Court (*i.e.*, 30 hours for each side) remain in place, and the clock for those depositions will not be re-set. That means, for example, that if Plaintiffs have already used 25 hours of deposition time during the prior discovery period, they would only have 5 hours to conduct any remaining depositions in this case.  The party taking the deposition must "keep the clock," and recesses do not count against the time.

(6) No expert discovery shall be permitted at this stage, except that the parties must exchange expert reports that they intend to rely on as part of their summary-judgment submissions; this must be accomplished by **September 30, 2020.**

**Abstention Regarding Drop-Box Notice and Other "Polling Place" Requirement Claims.** The Court will continue to abstain under *Pullman* as to Plaintiffs' claim pertaining to the notice of drop box locations and, more generally, whether the "polling place" requirements under the Election Code apply to drop-box locations.  As discussed in the Court's prior opinion, this claim involves unsettled issues of state law.  *See Trump for President, Inc. v. Boockvar*, — F.3d —, 2020 WL 4920952, at *12 (W.D. Pa. Aug. 23, 2020) (Ranjan, J.) ("[T]here are two plausible, competing interpretations of the state statute[.]" (citation omitted)).

The fact that the Pennsylvania Supreme Court did not address this issue in its recent decision is immaterial to the abstention analysis.  The propriety of *Pullman* abstention does not depend on the existence of parallel state-court proceedings. *See Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006) ("First, the existence of an ongoing state

proceeding is not inherent in the nature of abstention. *Burford*, *Pullman*, and *Thibodaux* abstention, as well as other forms of abstention, apply without regard to the existence of an ongoing proceeding." (citations omitted)).

Furthermore, Plaintiffs had several avenues to pursue a prompt interpretation of state law after this Court abstained, such as by filing their own state-court lawsuit or appealing this Court's decision and asking the Third Circuit to certify the question to the Pennsylvania Supreme Court. *See Trump for President, Inc.*, 2020 WL 4920952, at *18 ("But Plaintiffs have at least three options to obtain substantial relief through speedy resolution of the unsettled state-law questions."). That they chose not to do either of these things does not mean this Court now must, or even should, deny the state courts the opportunity to resolve this unsettled state-law issue first. As a result, the Court's basis for abstaining as to this claim remains unchanged.

**Dismissal of "Naked Ballot" and Third-Party Delivery Claims.** The Court finds that no Article III "case or controversy" remains with respect to the claims on which the Pennsylvania Supreme Court effectively ruled in Plaintiffs' favor on state-law grounds (*e.g.*, illegality of third-party ballot delivery; excluding "naked ballots" submitted without inner-secrecy envelopes). There is no allegation that the Secretary or any other county plans to defy the Supreme Court now that it has conclusively interpreted Pennsylvania law. And even if there was such an allegation, it wouldn't change the analysis because the Supreme Court's decision means that state law now affords Plaintiffs a total, unambiguous remedy (*i.e.*, enforcement through state-court proceedings).

Whether couched in terms of ripeness, mootness, a lack of Article III injury-in-fact, or some other doctrine, "where intervening events remove the possibility of harm," the Court "must not address the now-speculative controversy." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994) (cleaned up). All that's left of these claims is the purely hypothetical possibility that state officials might violate undisputed state law. That's not enough to justify declaratory or injunctive relief. *See, e.g., Battou v. Sec'y United States*

*Dep't of State*, 811 F. App'x 729, 733 (3d Cir. 2020) (plaintiffs "must show that the chance that the future event will occur is substantial and immediate enough to justify declaratory relief." (cleaned up)); *Tait v. City Of Phila.*, 410 F. App'x 506, 509 (3d Cir. 2011) ("When a government body promises not to enforce a restriction against a plaintiff, or at all, there is no longer 'a substantial threat of real harm' because 'intervening events have removed the possibility of harm.'" (cleaned up)).[1]

In other words, because there is no reason to believe Defendants plan to violate what they themselves now agree the law requires, Plaintiffs' claims are premature and speculative. And now that state law has been settled in the direction of prohibiting the conduct Plaintiffs fear, it even seems unlikely that federal claims related to "naked ballots" or third-party "ballot harvesting" will ever materialize. The Court will therefore **DISMISS** these claims as falling outside of its Article III power to adjudicate. *See Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) ("[T]he requirement that an action involve a live case or controversy extends through all phases of litigation, including appellate review." (citations omitted)); *id.* at 534 (dismissing *sua sponte* a case as moot where case concerned "dispute[s] that might arise in connection with future Independence Day activities," and even though "[b]oth parties urge[d] this court to reach the merits.").[2]

---

[1] Indeed, an "injunction" against unlawful conduct already exists—it is "the law" itself, which of course may be enforced in state court.

[2] The Court's decision to dismiss these claims is bolstered by bedrock principles of constitutional avoidance, which counsel against a speedy hearing on these constitutional claims. Indeed, the "long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (citations omitted); *see also Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question, although properly presented by

**Procedure for Resolving Remaining Claims.**
Upon review of the parties' notices and Plaintiffs' remaining claims, it appears to the Court that the case is amenable to decision, at least in large part, on cross-motions for summary judgment. From the notices that were filed, many of Defendants' and Intervenors' merits and procedural arguments would benefit from a more fulsome evidentiary record—and thus would be more amenable for resolution on summary judgment. Likewise, Plaintiffs' request for declaratory relief appears to be amenable to resolution on summary judgment because, in the end, the claims focus largely on questions of law applied to what appear to be relatively undisputed facts as to what guidance applies and what election procedures are being implemented. Indeed, Plaintiffs have requested that the Court resolve the case through a Rule 57 hearing, which suggests that any factual issues here are relatively undisputed. *See* Fed. R. Civ P. 57, Advisory Committee Notes (1937) (noting that a declaratory judgment action under Rule 57 "often involves only an issue of law on undisputed or relatively undisputed facts").

Based on this, and to ensure a speedy, comprehensive, and final disposition of the remaining claims in this case, the Court directs the parties to file cross-motions for summary judgment presenting all arguments for dismissal or judgment under Fed. R. Civ. P. 56.[3] (These briefs will also serve to function as pre-hearing

---

the record, if there is also present some other ground upon which the case may be disposed of[.]").

There is no need for the Court to ponder whether hypothetical conduct by Defendants might violate Pennsylvania law and the Constitution when state law provides a now-unquestioned basis to enjoin county election officials from, for example, counting ballots not enclosed within inner-secrecy envelopes on election day.

[3] The Court would prefer that all Defendants and Intervenors raise their arguments for dismissal through these cross-motion for summary judgment, as opposed to motions to dismiss under Rule 12. That said, to the extent that any Defendant or Intervenor believes that a Rule 12

briefs in the event that a Rule 57 hearing remains necessary on some or all of Plaintiffs' claims, and thus the Court will not require the filing of any separate pre-hearing briefs). The Court will also tentatively schedule a Rule 57 hearing, which will go forward if certain of Plaintiffs' claims cannot be resolved at summary judgment. The following schedule and procedures shall apply:

(1) The Court hereby directs the parties to file cross-motions in accordance with the following schedule:[4]

    a. Plaintiffs shall file a motion and supporting brief on **October 1, 2020**. The motion must include a proposed order, which specifically identifies the declarations that Plaintiffs seek.

    b. Defendants and Intervenors shall file motions for summary judgment/responses to Plaintiffs' motion by **October 3, 2020**.[5]

    c. Plaintiffs shall file a response to Defendants' and Intervenors' motions/reply in support of their own motion by **October 4, 2020**.

    d. Defendants and Intervenors shall file a reply in support of their motions by **October 5, 2020.**

(2) There is no page limit applicable to the parties' cross-motions and briefs.

---

motion is necessary or more appropriate, it should raise its Rule 12 arguments in these briefs.

[4] This briefing schedule is patterned after the four-brief briefing schedule for cross-appeals under Federal Rule of Appellate Procedure 28.1.

[5] Unless specified, all Defendants and Intervenors will be deemed to join in the briefs of all other Defendants and Intervenors—there is no need for any Defendant to file a separate "Joinder" or "Motion for Joinder."

(3) Insofar as the parties' move for summary judgment, the Court hereby excuses the requirements of Local Rule 56(a). Specifically, the parties need not file separate "concise statements" of material fact or responsive concise statements. Instead, the parties should include a "facts" section in their briefs setting forth a narrative of the facts that the filing party contends are undisputed and material, including any facts which for purposes of the summary judgment motions only are assumed to be true. The parties should cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting each statement of fact in the brief.

(4) The parties shall each separately prepare an appendix containing any portions of the record that the parties wish to direct to the Court's attention in their briefing. Any appendix that is filed must begin with a table of contents identifying the corresponding exhibit number for each document. When filing these appendices on ECF, the parties must file the table of contents as the "main document" and each document within the appendix must be filed as a separate "exhibit."

(5) If necessary after the Court decides the parties' cross-motions, an evidentiary hearing under Rule 57 will be held on **October 13 and 14, 2020**, commencing at **9:30 a.m.** each day.

Along with this order, the Court will issue an amended scheduling order with all applicable deadlines, including additional hearing procedures and deadlines related to motions *in limine*, *Daubert* motions, exhibits, and witness declarations.

DATED this 23rd day of September, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge

- 10 -