# EXHIBIT 8

## IN THE SUPREME COURT OF PENNSYLVANIA

| | |
|---|---|
| DISABLE RIGHTS PENNSYLVANIA, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, <br><br> Respondents. | : <br> : <br> : <br> : <br> : No. 83 MM 2020 <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**DECLARATION OF JONATHAN MARKS IN SUPPORT OF RESPONDENTS' RESPONSE IN OPPOSITION TO APPLICATION FOR SPECIAL RELIEF IN THE NATURE OF A PRELIMINARY INJUNCTION**

I, Jonathan Marks, declare under the penalty of perjury pursuant to 18 Pa.C.S. § 4902 that:

I am the Deputy Secretary for Elections and Commissions for the Department of State (the "Department") of the Commonwealth of Pennsylvania. I make this declaration in support of Respondents' Response in Opposition to Petitioners' Application for Special Relief in the Nature of a Preliminary Injunction.

**Act 77's Amendments to the Pennsylvania Election Code**

1. On October 31, 2019, Governor Wolf signed Act 77 of 2019 into law.

**EXHIBIT**
Marks 08/19/20 EX43

This Act made significant changes to Pennsylvania's Election Code.

2.     Among other reforms, Act 77 provided that electors who were not eligible for absentee ballots would be permitted to vote with mail-in ballots. Before Act 77 was passed, voters who did not qualify for absentee ballots were required to vote in person at their polling places on election day.

3.     Act 77 did not change the deadline for applying for non-emergency absentee ballots; this deadline is still 5:00 p.m. on the Tuesday before the election. The same deadline now applies for mail-in ballot applications.

4.     Act 77 extended the deadline for receipt of voted ballots, however, from 5:00 p.m. on the Friday before the election to 8:00 p.m. on the day of the election.

5.     Act 77 also included provisions to ensure that counties will begin sending absentee and mail-in ballots to eligible voters as soon as the ballot is certified and official ballots are available.

6.     As a result of Act 77, the Department and Pennsylvania's county boards of elections (the "counties") anticipated that counties would have to deal with a large increase in the number of ballots they would receive by mail.  Even before the current COVID-19 emergency, the Department and the counties were preparing for this increase.

**The Ongoing Efforts to Mitigate the Impact of the COVID-19 Emergency on the Primary Election**

7. As the Court is undoubtedly aware, the COVID-19 pandemic is causing real and constantly evolving challenges to every aspect of Pennsylvania personal, commercial, and civic life, and presents special challenges to those administering the primary election.

8. In March 2020, as the severity of the crisis became clear, the Department, together with the counties and the General Assembly, began taking steps to mitigate these challenges.

9. The General Assembly took a critical step toward mitigation on March 27, 2020, when it passed Act 12 of 2020, which postponed the primary election from April 28 to June 2, 2020.

10. Act 12 also included provisions to give counties flexibility in recruiting poll workers and relocating polling places, for the primary election, and allowed counties to begin pre-canvassing absentee and mail-in ballots at 7:00 a.m. on election day.

11. The Department and the counties are using the five extra weeks Act 12 provided to minimize the effect of the COVID-19 pandemic on mail-in, absentee, and in-person voting.

12. First, the Department has taken steps aimed at smoothing the process of in-person voting on election day.

3

13. The Department is assisting counties with planning for reductions in numbers of poll workers and available polling places, and advising counties about how they can set up their polling places to facilitate social distancing.

14. The Department has provided counties with $13 million in sub-grants—which the Commonwealth received from the federal government—for the counties to use towards additional staff, purchasing equipment, and otherwise ensuring the primary is administered as seamlessly as possible.

15. The Department has also procured 6,000 safety kits to provide to counties, which include masks, gloves, and other supplies for safely administering in-person voting.

16. Second, in order to alleviate crowding at polling places, the Department, the counties, and third parties are making efforts to encourage as many Pennsylvania voters as possible to vote by mail-in or absentee ballot.

17. The Department and counties have put many mechanisms in place to allow voters to request absentee or mail-in ballots. Most registered voters may sign up online on the Department's website, and any registered voter may get an application by downloading and printing one; requesting one in person at the voter's county election office; or calling, emailing, or writing to the Department or the voter's county election office. In counties where election offices have reopened to the public, voters can also request ballots in person, fill them out, and

submit them in one visit.

18. Many third parties, including nonprofits, government officials, and political candidates, are also delivering applications to potential voters.

19. The Department has created and posted on its website a toolkit that third parties can use to educate their constituents. The Ready to Vote toolkit includes templates for posters, flyers, palm cards, and other educational materials.

20. The Department and the Governor's office have devoted significant resources to educating members of the public about the availability of absentee and mail-in ballot options. For example,

- Governor Wolf has encouraged voters to apply for ballots during his frequent COVID-19 updates;

- The Department has mailed postcards to all households with registered primary voters (voters registered to either major political party), informing voters about the changed primary date and the availability of absentee and mail-in voting options;

- The Department has provided email updates to registered voters;

- The Department is also conveying this information to voters using bilingual statewide TV, radio, and streaming online broadcasts; and

- Other Pennsylvania departments have emailed updates from the Department to their own email lists.

21. In these communications, the Department has emphasized the need to apply for and return absentee and mail-in ballots promptly and has communicated the deadlines for requesting ballots and returning them.

5

22. Many county boards of elections have also made significant efforts to educate the public about these options for voting and encourage voters to promptly apply for ballots. For example, as Petitioners note in their Application, Allegheny County sent pre-stamped mail-in ballot applications to all registered voters at the end of April; Luzerne County has also mailed applications to voters. Other counties have communicated with their registered voters through social media and mail.

23. Elected officials, political parties, candidates, and public interest groups, including Common Cause and the League of Women Voters, have joined the effort, alerting their constituents and contacts to the new mail-in voting option and the application process.

**The Current Status of the Ballot Application Process**

24. It appears that the efforts to encourage the public to apply for mail-in and absentee ballots have, so far, been successful.

25. The Commonwealth has 7,477,057 registered primary voters. Only a certain percentage of these, however, can be expected to vote in any particular primary election.

26. Primary turnout is typically lowest in elections with no contested major party presidential race and no high-profile statewide races.

27. The June 2, 2020 primary will be such an election; neither presidential

primary is contested, and the statewide races have not captured a great deal of the public's attention.

28. Statewide turnout in the last several primary elections in which federal offices were on the ballot was as follows:

- 2018: 1,563,373
- 2016 (contested races for both major party presidential nominations): 3,416,283
- 2014: 1,370,815
- 2012 (contested race for one major party presidential nomination): 1,608,341
- 2010: 1,885,648

29. As of Sunday, May 10, 2020, the counties have received more than one million applications for absentee and mail-in ballots – 1,209,289, to be exact.

30. The counties have approved 1,041,078, or approximately 86%, of the applications.

31. The counties have mailed 894,811 ballots, or approximately 86% of the applications approved so far, to voters.

32. The counties have received 139,901 voted ballots, which accounts for approximately 13% of applications approved so far. Because several counties, including Philadelphia, began mailing out their ballots very recently, I expect this number to increase rapidly.

33. The Department receives real-time updates of ballot application

7

statistics, and, if the Court would find it useful, can provide updated figures as the primary election approaches.

34. Because this is the first election in which the Commonwealth offers the option of mail-in voting, and because the effect on turnout of the COVID-19 pandemic is uncertain, it is difficult to predict exactly how many voters will seek mail-in or absentee ballots. It is unlikely, however, that this number will exceed 2 million. Therefore, it is reasonable to assume that more than 60% of the mail-in and absentee ballots that will be requested for the primary election have already been requested.

35. Based on the Department's experience to date, I do not currently expect an overwhelming surge of last-minute applications.

36. While managing the application process during the COVID-19 crisis has certainly presented challenges for individual counties, so far, the counties appear to be rising to the challenge.

37. Over recent weeks, the counties have been adding extra personnel to help process applications and other election tasks more quickly. Many counties have also procured additional print and mailing services to streamline preparation and delivery of balloting materials.

38. There is, of course, significant variation among counties. As of May 10, 2020, some counties had mailed ballots in response to more than 99% of their

approved applications.

39. Of the counties identified in Petitioner's Application, as of May 10,

- Allegheny County had received 168,983 applications, rejected 13,203 of them, approved 151,981, and mailed out 132,602 ballots;

- Lawrence County had received 6,740 applications, rejected 412 of them, approved 6,252, and mailed out 6,243 ballots;

- Lehigh County had received 33,534 applications, rejected 2,206 of them, approved 25,191, and mailed out 23,082 ballots;

- Mercer County had received 8,033 applications, rejected 486 of them, approved 5,892, and mailed out 5,194 ballots; and

- Philadelphia County had received 109,602 applications, rejected 1,766 of them, approved 99,662 of them, and mailed out 46,902 ballots.

40. The Department is paying close attention to each county's efforts, and will reach out to any county that appears to be falling behind to offer assistance and advice.

41. Based on the counties' progress, and assuming there are no dramatic surges in infections, weather events, or other unexpected events, I expect that the counties will be able to timely process any current backlogs and handle additional applications that arrive.

**The United States Post Office**

42. Petitioners speculate that the United States Post Office ("USPS") is experiencing delays in processing of first-class mail that will extend mail times

beyond the typical one to three business days.

43. As part of preparations for the June 2 primary election, the Department has been in close contact with representatives of the USPS for several months.

44. The Department and the counties have worked with the USPS to ensure that the envelopes used for mailing blank and returned ballots are formatted to work with the USPS's automated equipment, thereby ensuring that ballots reach their destinations as quickly as possible.

45. Envelopes containing ballots are clearly marked as such and are segregated from other mail using "green tags," which allows the USPS to prioritize them as official election mail and expedite them to the extent possible.

46. The USPS has not informed the Department that it expects any unusual delays in first class mail delivery times in Pennsylvania before the primary election.

**<u>The Relief Petitioners Request</u>**

47. From a purely policy perspective, I agree with Petitioners that extending the deadline for receipt of ballots may be good policy under the circumstances, and, as with any extension, would increase the number of votes that are timely returned. This might well increase voters' confidence in the midst of a crisis.

48. I also agree that in the event of significant backlogs in application processing, a breakdown in the postal service, or other developments, an extension of the ballot receipt deadline might be necessary to avoid an undue burden on the right to vote.

49. Based on the information available at this time, the Department does not predict significant impediments to voters' ability to timely return mail-in ballots.

50. Given the unpredictable nature of the pandemic, of course, this situation could change, and the relief Petitioners seek could become more appropriate. If problems develop, however, it is more likely than not that they will not affect the entire Commonwealth, or that they will not require a full seven-day extension.

51. Granting a full seven-day, statewide extension at this point could have the undesired consequence of encouraging counties to turn their attention away from ballot application processing, or encouraging voters to delay requesting or mailing their ballots.

52. If significant problems develop shortly before or on the day of the election, a court could consider an extension of the ballot receipt deadline that is tailored to those problems.

53. Pennsylvania statute requires counties to retain all absentee and mail-

in ballots they receive – even those received after the deadline – for a period of two years. Therefore, late-received ballots will not be discarded before a court has the opportunity to consider whether the deadline should be extended.

54. If the Court extends the deadline for receipt of ballots, it will cause complications and delays in counties' canvassing processes.

55. First, for ballots received after election day, counties will have to put in place a new procedure for examining postmarks and, potentially, allowing for challenges regarding envelopes with illegible or absent postmarks.

56. Second, during the canvassing process, counties examine each provisional ballot envelope to determine whether the elector was eligible to vote. If the county determines that the elector who submitted the provisional ballot was duly registered to cast a primary vote in that district and that the elector did not also submit an absentee or mail-in ballot, the provisional ballot will be counted. If the county determines that the elector submitted an absentee or mail-in ballot, the provisional ballot will not be counted.

57. Thus, a county cannot count a voter's provisional ballot until it has confirmed that the voter did not also return an absentee or mail-in ballot. Therefore, counties will not be able to process provisional ballots until after the last day for receipt of absentee ballots.

58. Accordingly, a seven-day extension of the ballot receipt deadline

could delay counting of all ballots until eight days or more after the election.

59. This delay, in turn, would interfere with the following deadlines, which the Court should consider extending if it extends the ballot return date: The deadline by which proof of identification for absentee and mail-in ballots must be received and verified under 25 P.S. § 3146.8(h); the deadline for counties to submit unofficial election returns to the Secretary of the Commonwealth under 25 P.S. § 3154(f); the deadline for a defeated candidate to request that a recount and recanvass not be made under 25 P.S. § 3154(h); and the deadline for the Secretary of the Commonwealth to order a recount or recanvass under 25 P.S. § 3154(g)(2).

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 11, 2020.

_____
Jonathan Marks