# EXHIBIT 12

**NETWORK DEPOSITION SERVICES**
**Transcript of Kathy Boockvar 30 (b) (6)**

1

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 3                     CIVIL DIVISION
 4                        - - -
 5   DONALD J. TRUMP FOR           )
     PRESIDENT, INC., et al.,      )
 6                                 )
              Plaintiffs,          ) Civil Action
 7                                 )
                vs.                ) No. 2:20-cv-00966-NR
 8                                 )
     KATHY BOOCKVAR, in her        )
 9   capacity as Secretary of the  )
     Commonwealth of Pennsylvania, )
10   et al.,                       )
                                   )
11            Defendants.          )
12                        - - -
13           TUESDAY, SEPTEMBER 29, 2020
14                        - - -
15      The videoconference 30(b)(6) deposition of KATHY
     BOOCKVAR, called as a witness by the Plaintiffs,
16   pursuant to notice and the Federal Rules of Civil
     Procedure pertaining to the taking of depositions,
17   taken before me, the undersigned, Rebecca L. Schnur,
     Notary Public in and for the Commonwealth of
18   Pennsylvania, commencing at 1:07 p.m., the day and date
     above set forth.
19                        - - -
20
21
22
23            NETWORK DEPOSITION SERVICES
                   1101 GULF TOWER
24                 707 GRANT STREET
             PITTSBURGH, PENNSYLVANIA 15219
25                        - - -
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Kathy Boockvar 30 (b) (6)**

45

```
 1    from being deposited, and a sign shall be posted
 2    indicating that polling is closed for the election."
 3            MS. McGEE:  Brandon, you can take down that
 4        exhibit.  Thank you.
 5            If you'd pull up P5, please.  And we'll mark
 6        this as Exhibit 5.
 7            (Whereupon, Deposition Exhibit 5 was marked
 8        for identification.)
 9    BY MS. McGEE:
10        Q.   And Secretary, this is the September 11, 2020
11    guidance.  If you need a moment to scroll through it --
12    I see it's already in the chat.
13        A.   I'm pulling it up right now.  Thank you.
14             So I can close 4 altogether?
15        Q.   Yes.
16        A.   Okay.
17        Q.   This guidance was issued September 11, 2020,
18    and it's concerning examination of absentee and mail-in
19    ballot return envelopes.  Correct?
20        A.   Correct.
21        Q.   And you are familiar with this exhibit, what
22    we've marked Exhibit 5.  Correct?
23        A.   Yes.
24        Q.   In Section 2 on page 2 --
25            MS. McGEE:  Brandon, if you could go
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Kathy Boockvar 30 (b) (6)**

54

```
 1        A.    Correct.
 2        Q.    Prior to this guidance, was there a lack of
 3   uniformity among the counties with regard to this issue
 4   of signature verification on the declaration envelope?
 5        A.    So the -- because of Act 77 and Act 12, the
 6   Pennsylvania Election Code completely changed as to how
 7   absentee and mail-in ballots were counted, so it's a
 8   whole new set of circumstances.
 9              So I don't know that I could answer the
10   question because, obviously, the June -- the June 2
11   primary was the first time that those provisions even
12   existed, because prior to this, it was all -- all the
13   ballots -- the absentee ballots were being counted in
14   the polling places.  So this -- you know, this was the
15   first time that we really have been -- this has been an
16   issue, at all, because it hasn't been --
17              So I guess, your question, I think, was I
18   aware of -- was your question whether I was aware of
19   inconsistencies?
20        Q.    Yes.
21        A.    Was that your question?
22        Q.    Yes.
23        A.    It was -- because this was raised by this
24   litigation and other litigation, it became a question
25   that we needed to answer.  And so we -- we looked at
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Kathy Boockvar 30 (b) (6)**

55

```
 1   the code and the new provisions under Act 12 and Act 77
 2   and the historical, you know, circumstances and, you
 3   know, felt strongly that this is what the statute
 4   provided and wanted to make sure to prevent
 5   inconsistencies in the counties going forward.
 6        Q.   Were there any inconsistencies with this
 7   issue during the primary election in June?
 8        A.   Not that I'm aware of.
 9        Q.   Was there anything in Act 12 or Act 77 that
10   altered or amended the signature verification
11   requirement for declaration envelopes?
12        A.   There was no signature verification
13   requirement.  So it's just -- it changed the way -- it
14   changed the way absentee and mail-in ballots are
15   processed altogether.  So we just wanted clarity on it.
16        Q.   So is it your testimony that prior to Act 77,
17   the Election Code did not have a signature verification
18   requirement?
19        A.   So -- no.  It's just -- okay.  So the way
20   absentee and mail-in ballots are set up is completely
21   different than, for example, how in-person voting is
22   set up.  So the provisions that are in place to confirm
23   identification of a person are completely different.
24   It's a different process.
25             So for example, when you vote in person,
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Kathy Boockvar 30 (b) (6)**

56

1  there's -- you don't have to show ID.  It was ruled
2  unconstitutional that every voter shows ID.  You only
3  have to show ID the first time you vote in a particular
4  polling place, a precinct, so they have the signature
5  verification, because there's nothing else -- there's
6  no other verification that you have to do in order to
7  be able to vote in person.
8         For absentee and mail-in ballots, there's a
9  lot of verification and identification that happens
10 before you even get a ballot.  So you have to, in
11 effect, show ID.  You have to give your PennDOT
12 identification number and you're checked against the
13 PennDOT database, or you have to give your social
14 security last four and you're checked against the
15 social security database.  They check you against the
16 voter record, and they're checking you if you have --
17 if you don't have either of those numbers and you have
18 to use some other form of voter ID, then they're
19 checking your ID in that manner, so --
20     Q.   And that's all for the application process.
21 Correct?
22     A.   That's all for the application process that
23 then continues to be part of the process for verifying
24 that a ballot that's cast is -- is -- is -- that that
25 voter was eligible, which is the point of it.  Right?

**NETWORK DEPOSITION SERVICES**
**Transcript of Kathy Boockvar 30 (b) (6)**

89

```
 1        second.
 2             MS. McGEE:  Okay.  I'm going to -- I'm going
 3        to jump forward.  We can take this exhibit down.
 4             MR. DONOVAN:  Okay.
 5             THE VIDEOGRAPHER:  Off the record.  The time
 6        is 2:58 p.m.
 7             (Pause in the proceedings.)
 8             THE VIDEOGRAPHER:  We are on the record.  The
 9        time is 2:59 p.m.
10             MS. McGEE:  Okay.  Brandon, if you could,
11        pull up what I have in the folder as P12.  And I
12        think we're on Exhibit 11.
13             (Whereupon, Deposition Exhibit 11 was marked
14        for identification.)
15   BY MS. McGEE:
16        Q.   Secretary, this is a guidance dated
17   September 28, 2020, concerning "Civilian Absentee and
18   Mail-in Ballot Procedures."
19             Are you familiar with this guidance that was
20   issued yesterday?
21        A.   Yes.
22        Q.   If you go to page 3 -- no.  I'm sorry -- yes,
23   page 3, Section 2.2, at the bottom of the second
24   paragraph there --
25        A.   I'm sorry.  Did you say page 2 or page 3?
```

```
 1   BY MS. McGEE:
 2       Q.   The first sentence says, "The Election Code
 3   does not permit county election officials to reject
 4   applications or voted ballots based solely on signature
 5   analysis."  Correct?
 6       A.   Correct.
 7       Q.   Is there a specific section of the Election
 8   Code that's being referenced here?
 9       A.   Well, there's no section of the Election Code
10   as it relates to absentee or mail-in ballots that
11   permits county election officials to reject
12   applications or ballots based solely on signature
13   analysis.
14       Q.   So isn't this guidance instructing counties
15   they do not have to reject absentee or mail-in ballot
16   applications based solely on signature?
17       A.   So applications --
18            MR. DONOVAN:  Object to the form.
19            Go ahead.
20            THE WITNESS:  Sorry.
21            MR. DONOVAN:  No.  Go ahead.
22            Objection to form.
23            But you can answer.
24       A.   So you're asking specifically about what the
25   process is for applications for the counties?
```

```
 1        Q.   Well, this mentions they do not have to
 2   reject applications solely on signature analysis.
 3   Correct?
 4        A.   Correct.  So I mean, there's different forms
 5   of signature.  I mean, if you apply online -- you know,
 6   again, I want to be clear that none of this is
 7   suggesting that eligibility checking can be skipped.
 8   Right?
 9             So the person's PennDOT ID is checked,
10   their -- or their social security number is checked,
11   their voter -- their voter record is checked to make
12   sure that they're eligible.  So all those steps are --
13   must be done.
14             But if the question is about a voter's
15   signature who's changed -- you know, like if there's
16   slight variations in the change of the signature,
17   that's what we're saying; that kind of signature
18   analysis is not a basis to reject an application.
19        Q.   Why was this instruction issued by your
20   office -- this guidance, this particular sentence?
21        A.   For clarity and consistency across the
22   counties.
23        Q.   Was there something that occurred that was
24   reported to you, that made something unclear or
25   inconsistent?
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Kathy Boockvar 30 (b) (6)**

106

```
 1        A.   Well, you've sued us and -- or I should say,
 2   your client sued us, and it raised this issue, as you
 3   may recall, and asked permission to file an amended
 4   complaint.  So yes.
 5        Q.   And wasn't that after you'd already issued
 6   the September 11 guidance, in which you said that
 7   absentee or mail-in ballots did not have to be rejected
 8   solely based on signature analysis?
 9        A.   Well, now I can't remember the exact time of
10   things, but I've also been asked questions by
11   legislators, by counties, asking for clarity on the
12   rules of this.  And again, as we talked about earlier,
13   this is a new process because this just got -- this
14   process just got started in Act 77 and Act 12.
15             So when we find out that there are questions
16   about how counties should do things, we try to clarify
17   that.  And that's what we were doing here.
18        Q.   What provision of the -- I should ask this a
19   different way.  Was the Election Code reviewed before
20   this -- specifically with regard to this guidance
21   before it was issued?
22             MR. DONOVAN:  Yes or no.  It's a yes or no,
23        Secretary.
24        A.   Yes.
25        Q.   Has any county reached out to the Department
```