# EXHIBIT 18

**NETWORK DEPOSITION SERVICES**
**Transcript of Veronica Degraffenreid**

1

```
 1              UNITED STATES DISTRICT COURT

 2         FOR THE WESTERN DISTRICT OF PENNSYLVANIA

 3                     CIVIL DIVISION

 4                         - - -

 5   DONALD J. TRUMP FOR            )
     PRESIDENT, INC., et al.,       )
 6                                  )
              Plaintiffs,           ) Civil Action
 7                                  )
                vs.                 ) No. 2:20-cv-00966-NR
 8                                  )
     KATHY BOOCKVAR, in her         )
 9   capacity as Secretary of the   )
     Commonwealth of Pennsylvania,  )
10   et al.,                        )
                                    )
11            Defendants.           )

12                         - - -

13              TUESDAY, SEPTEMBER 29, 2020

14                         - - -

15        The videoconference deposition of VERONICA
     DEGRAFFENREID, called as a witness by the Plaintiffs,
16   pursuant to notice and the Federal Rules of Civil
     Procedure pertaining to the taking of depositions,
17   taken before me, the undersigned, Rebecca L. Schnur,
     Notary Public in and for the Commonwealth of
18   Pennsylvania, commencing at 3:44 p.m., the day and date
     above set forth.
19                         - - -

20

21

22

23            NETWORK DEPOSITION SERVICES
                   1101 GULF TOWER
24                 707 GRANT STREET
             PITTSBURGH, PENNSYLVANIA 15219
25                         - - -
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Veronica Degraffenreid**

8

1   Are you aware that she testified in this case on
2   August 21, 2020?
3        A.   Not specifically, no.
4        Q.   Have you read the transcript from that
5   deposition?
6        A.   No, I have not.
7        Q.   Have you listened or watched the video or
8   audio from that deposition?
9        A.   No.
10       Q.   Did you talk with Secretary Boockvar about
11  her deposition?
12       A.   No.
13       Q.   Did you talk with her today about the
14  deposition that was taken of her this afternoon?
15       A.   No.
16       Q.   Ms. Degraffenreid, you currently serve as the
17  special advisor on election modernization.  Correct?
18       A.   Yes.
19       Q.   When did you start in that position?
20       A.   My start date with this agency was
21  February 10 of this year.
22       Q.   And as the special advisor on election
23  modernization, you report to Secretary Boockvar.
24  Correct?
25       A.   Correct.

```
 1   persons I was in communication with in December of
 2   2019.  I was made aware of a position -- or the need
 3   for a position, and that person was able to connect me
 4   with Secretary Boockvar.
 5       Q.   When you left your position with the
 6   North Carolina State Board of Elections, did
 7   North Carolina offer no-excuse absentee voting?
 8            MR. GLICK:  Object to form.
 9            You can answer.
10       A.   At the time that I left and during my time
11   there, North Carolina did offer no-excuse absentee
12   voting.
13       Q.   And as part of North Carolina's no-excuse
14   absentee voting, are voters required to sign their name
15   to a declaration when they cast their absentee ballot?
16            MR. GLICK:  Object to form.  She's not going
17       to sit here and testify about what North Carolina
18       law requires or doesn't require.
19            MS. McGEE:  I didn't ask her about what the
20       law requires.  I asked her about what their voting
21       processes entail.  And she's already testified
22       that she relies on that experience and, in fact,
23       had no knowledge about Pennsylvania's election
24       system until she came here, so her experience in
25       North Carolina, including how North Carolina
```

```
 1         conducts its elections, is relevant, and I'm going
 2         to ask those questions.
 3              MR. GLICK:  Can you read -- can you read back
 4         the question, Madam Court Reporter, because I
 5         believe the question was, does North Carolina
 6         require, which, to me, is a legal -- legal
 7         question that calls for a legal conclusion.
 8              (Record read by the Reporter.)
 9              MR. GLICK:  I'm going to again object that
10         the question calls for a legal conclusion
11         regarding what another state's election law
12         requires.
13              If you know, Veronica, you can answer.
14    A.    Sure.  So there is an application on the back
15  of North Carolina's -- or when I was there, on the back
16  of their ballot return envelope, and that envelope does
17  have a statement that a voter should sign when they are
18  returning their ballot.
19    Q.    And in that process of -- this envelope that
20  you're talking about, Ms. Degraffenreid, do they also
21  have to sign their ballot in the presence of a witness
22  who has to also sign that declaration, confirming that
23  the voter is the person that's voting that ballot?
24              MR. GLICK:  Object.  Same objection.
25              I'll leave you a little -- I'll give you a
```

**NETWORK DEPOSITION SERVICES**
Transcript of Veronica Degraffenreid

15

```
 1        little leeway here, but we're not spending the
 2        afternoon debating what North Carolina voting law
 3        requires.
 4             MS. McGEE:  I don't think there's debate.
 5        I'm entitled to ask her these questions.  And you
 6        can lodge your objections unless you instruct her
 7        not to answer, and I don't believe there's a basis
 8        for you to do so.
 9             MR. GLICK:  Well, we're far afield from the
10        case here, about what North Carolina requires
11        versus what Pennsylvania requires.
12             So if you want to cite in your summary
13        judgment briefing or other papers what you believe
14        North Carolina requires, you're welcome to do
15        that, and you don't need this witness to tell you
16        what another state's law requires.
17             So again, I'll give you some leeway to --
18        right here on this particular topic, but we're not
19        going to spend the afternoon doing this.
20   BY MS. McGEE:
21        Q.   Do you need me to repeat the question,
22   Ms. Degraffenreid?
23        A.   Yes, ma'am.
24        Q.   When a voter completes that envelope that you
25   were just discussing to submit their absentee ballot, a
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Veronica Degraffenreid**

16

```
 1   witness also has to be present to sign that declaration
 2   as well.  Correct?
 3              MR. GLICK:  Objection.  Calls for legal
 4       conclusion.  Irrelevant.
 5       A.   Are you asking me about what was in place
 6   when I was in North Carolina or current process?
 7       Q.   When you were -- when you were in
 8   North Carolina.
 9              MR. GLICK:  Same objections.
10       A.   Okay.  Immediately prior to my coming to
11   Pennsylvania, the application that was on the envelope
12   in North Carolina, the ballot return envelope, had a
13   place for two witnesses to sign, who were attesting to
14   the fact that they witnessed the voter mark their
15   ballot and do all of these other things that are
16   required to perfect the process of absentee voting in
17   that state.
18       Q.   As part of North Carolina's voting process,
19   they keep track of who drops off absentee ballots.
20   Correct?
21              MR. GLICK:  Same objection.  Object to form
22       as well.
23              Go ahead.
24       A.   Okay.  I'm sorry.  So let me make sure I
25   understand.  You're asking if -- I'm sorry.  Repeat the
```

```
 1   question again.
 2       Q.   Do the North Carolina county election boards
 3   keep track of who drops off each absentee ballot?
 4           MR. GLICK:  Object to form.  Relevance.
 5       A.   It is my recollection that the state board of
 6   elections provided a form for counties -- county boards
 7   of elections to document who returned an absentee
 8   ballot if the ballot was being returned in person.
 9       Q.   And as part of North Carolina's no-excuse
10   absentee voting regime, unmanned or unstaffed drop
11   boxes that are available 24/7 are not authorized or
12   used.  Correct?
13           MR. GLICK:  Objection to form.  Calls for
14       legal conclusion.
15       A.   And again, I want to make sure that I
16   understand.  You're asking -- because this is based on
17   what is happening -- I mean, what my experience was in
18   North Carolina during that time, during the time that I
19   was there?
20       Q.   Yes.  That's correct.  Yes.
21       A.   Right.  And when you refer to "drop boxes,"
22   you're -- like can you tell me what that -- what you --
23   I want to make sure that I'm going to answer your
24   question.
25       Q.   Sure.  And I appreciate that.  So when I say
```

```
 1   "drop box," I mean a receptacle that is separate and
 2   apart from an election office.  You know, in our case,
 3   sometimes they'd look like U.S. Mail boxes or other
 4   kinds of boxes that are posted outside offices or
 5   inside office lobbies, where voters can lodge their
 6   voted ballots through a slit, and then it's collected
 7   at a certain point in time.  So instead of handing
 8   their ballot to a person, they're dropping it into a
 9   receptacle.
10        A.   Okay.  All right.  So I can say that during
11   the time period that I was there, the use of a ballot
12   receptacle or a drop box that is outside of the board
13   of elections office was not a practice that was -- to
14   my knowledge, that was being used in North Carolina
15   when -- while I was there.
16        Q.   And last question on this topic:  As part of
17   North Carolina's no-excuse absentee voting regime,
18   political parties and candidates are able to watch and
19   monitor that process and report any concerns to
20   election officials.  Correct?
21             MR. GLICK:  Objection.  Calls for a legal
22        conclusion as to the voting laws of a state not at
23        issue in this proceeding.
24             If you know, you can answer.
25        A.   I don't understand the question as it was
```

**NETWORK DEPOSITION SERVICES**
**Transcript of Veronica Degraffenreid**

35

```
 1   BY MS. McGEE:
 2       Q.   Ms. Degraffenreid, were you the principal
 3   author of this guidance?
 4            MR. GLICK:  Object to form.
 5            You can answer.
 6       A.   I was -- I certainly initiated the drafting
 7   of this document along with others, but I did very much
 8   so help draft this document.
 9       Q.   Who else was involved in the drafting of this
10   guidance?
11       A.   There were other subject matter experts
12   within the department that also participated in
13   drafting and looking at and reviewing the document.
14       Q.   What did you rely on to begin the draft of
15   this guidance?
16       A.   So this guidance would have -- would reflect
17   the research that I did, as well as others in the
18   department, as well as looking at, you know, I guess
19   Pennsylvania law, Pennsylvania code -- I'm not a lawyer
20   by any means -- but just, you know, various sources.
21            Also, by the time -- because this was August
22   of 2000- -- I mean, of this year, I would have, at that
23   point, had the opportunity, at that time, to look at
24   other guidance documents that may have been shared with
25   the counties.
```

```
 1         Q.   Does this guidance prohibit or instruct
 2   against the use of unmanned or unstaffed drop boxes?
 3              MR. GLICK:  Objection.  The document speaks
 4         for itself.  Calls for legal conclusion.
 5              But you can answer if you know.
 6         A.   I may need the question repeated.  You're
 7   asking, does it -- yeah, could you repeat the question.
 8   I'm sorry.
 9         Q.   Does this guidance instruct the counties that
10   unmanned or unstaffed drop boxes are prohibited?
11              MR. GLICK:  Same -- same objection.  Document
12         speaks for itself.
13         A.   So give me a minute.  I'll need to --
14         Q.   Of course.  Yeah.  Take your time.
15         A.   Sure.
16              MR. GLICK:  Also calls for a legal
17         conclusion.
18         A.   I don't believe this document specifically
19   references manned or unmanned drop boxes.
20         Q.   Does it reference drop boxes that are being
21   made available on a 24/7 basis?
22              MR. GLICK:  Objection.  The document speaks
23         for itself.
24         A.   Do -- I am unable, at this point, to find
25   that 24-hour reference.
```