IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al*., | Civil Action |
| Plaintiffs, | |
| v. | No.: 2:20-CV-966 |
| KATHY BOOCKVAR; *et al*., | |
| Defendants. | Judge J. Nicholas Ranjan |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE CROSS-MOTION FOR SUMMARY JUDGMENT BY INTERVENORS NAACP PENNSYLVANIA STATE CONFERENCE, COMMON CAUSE PENNSYLVANIA, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, PATRICIA DEMARCO, <u>DANIELLE GRAHAM ROBINSON, AND KATHLEEN WISE</u>**

**TABLE OF CONTENTS**

I. Defendants' Implementation of Drop Boxes Does Not dilute Votes Or Violate the Constitution..................................................................................................................1

    A. There Is No Genuine Issue of Material Fact Regarding Drop Box Security............1

    B. Garden Variety Improprieties in Individual Ballot Delivery Do Not Give Rise to a Constitutional Violation.............................................................................................4

    C. The "Uneven" Use of Drop Boxes Is Not an Equal Protection Violation...............5

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Aldinger v. Spectrum Control, Inc.*,
    207 F. App'x 177 (3d Cir. 2006) ...................................................................................8

*Betts v. New Castle Youth Development Center*,
    621 F.3d 249 (3d Cir. 2010) ...........................................................................................2

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ................................................................................................4, 5

*Burson v. Freeman*,
    504 U.S. 191 (1992) ......................................................................................................5

*Clingman v. Beaver*,
    544 U.S. 581 (2005) ......................................................................................................4

*Crawford v. Marion County Election Board*,
    553 U.S. 181 (2008) ......................................................................................................4

*Crossey v. Boockvar*,
    2020 WL 5554582 (Pa. Sept. 17, 2020) ........................................................................4

*Griffin v. Roupas*,
    385 F.3d 1128 (7th Cir. 2004) .......................................................................................6

*Harper v. Board of Elections*,
    383 U.S. 663 (1966) ......................................................................................................4

*In re Canvass of Absentee Ballots of Nov. 3, 2004 General Election*,
    843 A.2d 1223 (Pa. 2004) .............................................................................................4

*Moore v. Ogilvie*,
    394 U.S. 814 (1969) ......................................................................................................7

*Paher v. Cegavske*,
    2020 WL 2089813, (D. Nev. Apr. 30, 2020) ............................................................2, 5

*Pennsylvania Democratic Party v. Boockvar*,
    2020 WL 5554644 (Pa. Sept. 17, 2020) ........................................................................5

*Republican Party of Pennsylvania v. Cortés*,
    218 F. Supp. 3d 396 (E.D. Pa. 2016) .............................................................................6

*Smith v. City of Allentown*,
    589 F.3d 684 (3d Cir. 2009) ..........................................................................................3

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ..................................................................................................7

*Trump for President, Inc. v. Boockvar*,
    2020 WL 4920952 (W.D. Pa. Aug. 23, 2020) ........................................................................6

## STATUTES, RULES, AND REGULATIONS

25 P.S. § 3146.6(a)..........................................................................................................................4

## OTHER AUTHORITIES

Report of the Comm'n on Federal Election Reform, Building Confidence in U.S.
    Elections (Sept. 2005), *available at*
    https://www.legislationline.org/download/id/1472/file/3b50795b2d0374cb
    ef5c29766256.pdf ....................................................................................................................4

Voter-Intervenors NAACP Pennsylvania State Conference, League of Women Voters of Pennsylvania, Common Cause of Pennsylvania, Patricia DeMarco, Kathleen Wise, and Danielle Graham Robinson respectfully request that the Court enter summary judgment in favor of Defendants on all of Plaintiffs' claims for the reasons given in their opening brief (Dkt. 548 ("Voter-Intervenors' Br.")), the briefs submitted by other Intervenors (Dkts. 558, 561), and set forth below.

## ARGUMENT

### I.

### DEFENDANTS' IMPLEMENTATION OF DROP BOXES DOES NOT DILUTE VOTES OR VIOLATE THE CONSTITUTION

Plaintiffs' Opposition to Voter-Intervenors' Motion for Summary Judgment confirms that there are no genuine issues of material fact and that judgment should be entered on behalf of Defendants. Plaintiffs have offered no evidence that the use of election drop boxes results in the casting of ballots by ineligible voters. They similarly offer no evidence that the potential for delivery by third parties without authorization of law is a greater concern than when the voter uses an election drop box rather than an "unmanned" post office box. There is simply no evidence of any widespread illegal behavior, let alone that any alleged conduct injured Plaintiffs or favored one set of voters over another. As such, Plaintiffs have no evidence to support their claim that the use of a drop box results in dilution of any voter's right to vote. Summary judgment should be entered in favor of Defendants.

A.  **There Is No Genuine Issue of Material Fact Regarding Drop Box Security**

As in their moving papers, Plaintiffs maintain that the use of unmanned ballot drop boxes might result in the casting of fraudulent ballots. *See* Dkt. 551 ("Plaintiffs' Resp.") at 22, 64, 68. But Plaintiffs have no evidence to support this speculative claim. They have no evidence that

ballots deposited in drop boxes are cast on behalf of people unauthorized to vote. They have no evidence of significant incidents of tampering with drop boxes nationally. Ex. 7 to Voter-Intervenors' Cross Motion for Summary Judgment, dated October 3, 2020 (Gronke Rpt.) ¶¶ 8, 37; Ex. 6 to Voter-Intervenors' Cross Motion for Summary Judgment, dated October 3, 2020 (McReynolds Rpt.) ¶ 45. They have no evidence of voter fraud in Pennsylvania, which has robust procedures for ensuring voter eligibility and ballot validity regardless of how the completed ballot is submitted. *See* Voter-Intervenors' Br. at 22-24; McReynolds Rpt. ¶ 46. The "evidence" Plaintiffs offer does not create a genuine issue of material fact as to whether significant fraud exists—it does not. They point again, as they did in their moving papers, to four unauthenticated photographs of people at drop boxes they surmise voted improperly. *See* Plaintiffs' Br. Ex. 37 (Riddlemoser Rpt.), Ex. D; Plaintiffs' Resp. at 22. Beyond that so-called proof, the narrative concludes. Plaintiffs do not identify the names of any voters, the number of improper absentee ballots deposited, or even whether the mail-in voters were disabled. Wishful thinking is not evidence sufficient to sustain serious claims of voter fraud as a matter of law.

Plaintiffs' fears of *potential* impropriety ignore the safeguards Pennsylvania has in place to ensure the security of mail-in voting. *See* McReynolds Rpt. ¶¶ 46, 48; Ex 27 to Voter-Intervenors' Cross Motion for Summary Judgment, dated October 3, 2020 (Minnite Rpt.) ¶¶ 27-29; *Paher v. Cegavske*, 2020 WL 2089813, at *7 (D. Nev. Apr. 30, 2020) ("Plaintiffs' overarching theory that having widespread mail-in votes makes the Nevada election more susceptible to voter fraud seems unlikely where the [mail-in voting] Plan essentially maintains the material safeguards to preserve election integrity."). Far from supporting a finding of rampant voter fraud, Plaintiffs' record is at best speculation regarding the interpretation of ambiguous photographs. Such speculation does not overcome a motion for summary judgment.

*See, e.g.*, *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment.").

Plaintiffs' claim that election drop boxes are not secure is also speculative. Plaintiffs' Resp. at 60, 70-73. Pointedly absent from their papers is a single example of drop box tampering in Pennsylvania or any other state in the country. Plaintiffs' Resp. at 72. Instead, Plaintiffs manufacture fears about the likelihood of such events by resorting to fanciful hypotheticals—a police car can be destroyed; a Confederate monument can be pulled down. On the issue of drop boxes, however, Plaintiffs offer no evidence regarding ballot theft or destruction.

Plaintiffs' hubris is remarkable. Plaintiffs seek to invalidate the use of a lawful form of ballot delivery—the use of a special election drop box—that has been approved by the Pennsylvania legislature and the Pennsylvania Supreme Court. To reject the will of the Pennsylvania people, Plaintiffs bear the burden of demonstrating that there will be widespread fraud leading to vote dilution. They have failed to present evidence to meet that burden. The reason that there is insufficient evidence of widespread fraud in the use of election drop boxes is clear: election drop boxes are as secure—if not more secure—than United States Postal Service ("USPS") mail boxes. *See* McReynolds Rpt. ¶ 33 (ballot drop boxes "ha[ve] enhanced security options built into the design" compared to USPS blue mailboxes); *see also id.* ¶¶ 41 (indicating that drop boxes are emptied more frequently than USPS boxes and managed directly by elections officials), *id.* ¶¶ 44, 47 ("A drop box provided by a county board of elections is secure, and has additional safeguards that are not available through a United States Postal Service mailbox."); *id.* ¶ 50 ("[d]rop-boxes are designed to reduce ballot tampering"); *id.* ¶¶ 53, 57. Plaintiffs cannot present evidence to rebut these dispositive facts.

### B. Occasional Improprieties in Individual Ballot Delivery Do Not Give Rise to a Constitutional Violation

Third party delivery of otherwise legitimate ballots is not fraud. *In re Canvass of Absentee Ballots of Nov. 3, 2004 Gen. Election*, 843 A.2d 1223, 1232 (Pa. 2004) (statute provides "some safeguard that the ballot was filled out by the actual voter, and *not* by a perpetrator of fraud"). Federal guidance is consistent with this approach. As discussed in the "Carter-Baker" Report of the Commission on Federal Election Reform, Building Confidence in U.S. Elections at 46 (Sept. 2005), states should prohibit organizations, candidates and political party activists from handling absentee ballots.[1] Pennsylvania has done this. *See* Memorandum Order, Dkt. 459, at 6; *Crossey v. Boockvar*, 2020 WL 5554582, at *2 (Pa. Sept. 17, 2020); *In re Canvass of Absentee Ballots of Nov. 3, 2004 Gen. Election*, 843 A.2d 1223 (interpreting 25 P.S. § 3146.6(a)); Ex. 42 (Boockvar Dep.) 88:20-89:15; Ex. 43 (Marks Dep.) 62:10-15; 269:23-270:7. The right to vote is not burdened by the nonexistent or rare occurrence of improper third-party ballot delivery. Plaintiffs cite no case law indicating that the possibility of illegal voting delivery—remote as it is—burdens any individual elector's ability to exercise his own franchise. Rather, Plaintiffs cite cases in which the *state* imposed obstacles to voter access. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) (voter identification); *Burdick v. Takushi*, 504 U.S. 428 (1992) (*prohibiting* write-in voting); *Harper v. Board of Elections*, 383 U.S. 663 (1966) (poll tax). Here, Pennsylvania has not imposed any burden on the right to vote. To the contrary, the challenged conduct is the hypothetical threat that individual voters—not the state—may engage in voting improprieties. *See Burdick*, 504 U.S. at 432; *Clingman v. Beaver*, 544 U.S. 581, 586–87 (2005) ("[S]trict scrutiny is appropriate only if the burden is severe."); *see*

---

[1] *Available at* https://www.legislationline.org/download/id/1472/file/3b50795b2d0374cbef5c29766256.pdf.

*also Paher*, 2020 WL 2089813, at *7 (rejecting vote dilution claim because "Plaintiffs [could not] demonstrate a burden upon their voting rights, only an imposition upon their preference for in-person voting—as opposed to mail-in voting, where ballots are mailed to voters").

The fallacy of Plaintiffs' argument is that there is a burden on the right to vote. To the contrary—drop boxes *amplify* access to voting. And voters in counties without drop boxes are unburdened as they may cast their ballots via the USPS mail and by other methods of hand delivery to the County Board of Elections. Any supposed burden created by drop boxes is supported by the "important regulatory interest[]" of providing voters with additional options to vote outside of the traditional polling place. *Burdick*, 504 U.S. at 433–34; *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644, at *9 (Pa. Sept. 17, 2020). This is especially so in an unprecedented pandemic. *See* Voter-Intervenors' Br. at 9-12 (describing compelling state interest for mail-in ballots in a pandemic); *Burson v. Freeman*, 504 U.S. 191, 198-99 (1992) (finding that "protecting the right of its citizens to vote freely for the candidates of their choice" and "protect[ing] the right to vote in an election conducted with integrity and reliability" are compelling state interests). Drop boxes further Pennsylvania's interest in expanding voter access because they are a secure and reliable method of increasing voter participation (Voter-Intervenors Br. at 5-9) and will mitigate the effects of the COVID-19 pandemic (*Id.* at 9-12). The Commonwealth's implementation of drop-boxes is narrowly tailored to meet those compelling interests.

### C. The "Uneven" Use of Drop Boxes Is Not an Equal Protection Violation

As detailed in the Voter-Intervenors' moving papers, the Secretary's Guidance allowing drop boxes (unmanned or otherwise) does not create any burdens on voting rights and is in accord with a free and fair election. Voter-Intervenors Br. at 28-30. In Pennsylvania, "the General Assembly [has] enacted a county-based scheme to manage elections within the state, and

consistent with that scheme the legislature endeavored to allow county election officials to oversee a manageable portion of the state in all aspects of the process." *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 409 (E.D. Pa. 2016).  The Voter-Intervenors' moving papers further detail that Plaintiffs' failure to identify a group whose voting power is diluted by supposed state discriminatory action is a fatal defect in Plaintiffs' equal protection claim. Voter-Intervenors Br. at 31.  In response, Plaintiffs contend that differences in drop box use between counties constitute "systematic discrimination against voters based on their county of residence alone." Plaintiffs' Resp. at 65.  This contention lacks merit.

Variations by counties on the use of drop boxes are not sufficient to demonstrate a violation of equal protection.  States have "considerable discretion to conduct elections as they see fit." *Trump for President, Inc. v. Boockvar*, 2020 WL 4920952, at *16 (W.D. Pa. Aug. 23, 2020).  County boards of elections similarly enjoy "broad authority to regulate the conduct of elections." *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004).  As previously explained, Plaintiffs' unfounded insertion of vote dilution into this matter does not mean the counties' discretion to accommodate the needs of their voters should be second guessed.  Voter-Intervenors' Br. at 32-34.  Pennsylvania's 67 counties vary widely in both area and population density, as well as the density of polling locations.  *Id.* at 8-9.  Plaintiffs' arguments presume that the uneven distribution of drop-boxes will undermine a uniformity that does not exist and is not required.  *See Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 409 (E.D. Pa. 2016) ("[T]he General Assembly [has] enacted a county-based scheme to manage elections within the state, and consistent with that scheme the legislature endeavored to allow county election officials to oversee a manageable portion of the state in all aspects of the process.").  There is no evidence on this motion (as is required to show an equal protection violation) that voters in

counties without ballot drop boxes are disadvantaged in Pennsylvania because there is no dispute that all of those voters have access to USPS mailboxes and in-person voting.

Despite Plaintiffs' suggestion to the contrary, there is no constitutional violation where counties exercise a measure of discretion about the details of election administration, so long as the right to vote itself is not at stake. Pennsylvania's statutory scheme, which through county administration makes drop boxes available in some areas but not in others, "is designed to make voting more available to some groups who cannot easily get to the polls, [but] does not itself deny the plaintiffs 'the exercise of the franchise.'" *Texas Democratic Party v. Abbott*, 961 F.3d 389, 403–04 (5th Cir. 2020). Moreover, Plaintiffs' record does not demonstrate that the decision of some Pennsylvania counties to permit the use of drop boxes voting impacts any elector's right to vote.

Plaintiffs cite no contrary authority. *See* Plaintiffs' Resp. at 65-66. In *Hennings*, the Seventh Circuit declined to find a constitutional violation. 523 F.2d at 864 (case involving voting device malfunction which declined to record votes, the record "does not show conduct which is discriminatory by reason of its effect or inherent nature."). *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969) is similarly inapposite. *Moore* held that an Illinois law requiring 200 signatures from each of 50 counties violated the Equal Protection Clause, as it "discriminate[d] against the residents of the populous counties of the State in favor of rural sections." *Id*. The record in this case does not support Plaintiffs' alleged concern that voters of any particular county have been disadvantaged with respect to the right to vote. Some counties have provided an additional means for exercising the franchise, but the right to vote remains open to all eligible voters.

Plaintiffs' due process claim should also be summarily dismissed. They failed to plead a due process violation in their Second Amended Complaint (or any prior complaint), and they did

not identify a claim based on a due process violation in their Notice of Remaining Claims. Voter-Intervenors' Br. at 43-44. Those unpled due process claims are waived and should be dismissed as procedurally defective. *See Aldinger v. Spectrum Control, Inc.*, 207 F. App'x 177, 179, 180-181 n.1 (3d Cir. 2006) (affirming district court's dismissal of unpled claim raised for the first time during summary judgment). They are also substantively defective, for the reasons set forth in the Voter-Intervenors' moving papers. *See* Voter-Intervenors' Br. at 43-44; *Coffelt v. Fawkes*, 765 F.3d 197, 201 & n.5 (3d Cir. 2014). Plaintiffs' do not address these deficiencies in any respect in their opposition because they have no response.

## CONCLUSION

For the reasons stated above, in their opening brief, and in the motions filed by the other Defendants, the Voter-Intervenors respectfully request that this Court enter an order granting their Motion for Summary Judgment on all counts of the Second Amended Complaint.

Dated: October 5, 2020

Respectfully submitted,

*/s/ Lori A. Martin*

Witold J. Walczak (PA No. 62976)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel.: (412) 681-7736
vwalczak@aclupa.org

Adriel I. Cepeda Derieux[†]
Sophia Lin Lakin[†]
Dale Ho[†]
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org
slakin@aclu.org

Lori A. Martin[‡] (PA No. 55786)
Christopher R. Noyes[†]
Eleanor Davis[†]
Jared Grubow[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Lori.Martin@wilmerhale.com
Christopher.Noyes@wilmerhale.com
Eleanor.Davis@wilmerhale.com
Jared.Grubow@wilmerhale.com

Jason H. Liss[†]
WILMER CUTLER PICKERING HALE
 AND DORR LLP

- 8 -

dho@aclu.org

Sarah Brannon[†,++]
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Tel: (202) 210-7287
sbrannon@aclu.org

Ezra Rosenberg*
John Powers*
Voting Rights Project
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Tel: (202) 662-8300
erosenberg@lawyerscommittee.org
jpowers@lawyerscommittee.org

Mary M. McKenzie[†] (PA No. 47434)
Benjamin D. Geffen[†] (PA No. 310134)
PUBLIC INTEREST LAW CENTER
1500 JFK Blvd., Suite 802
Philadelphia PA 19102
Telephone: 215-627-7100
Fax: 215-627-3183
mmckenzie@pubintlaw.org
bgeffen@pubintlaw.org

60 State Street
Boston, MA 02109
(617) 526-6699
Jason.Liss@wilmerhale.com

Samantha K. Picans[†]
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, CO 80202
(720) 598-3477
Sam.Picans@wilmerhale.com

David P. Yin[†]
WILMER CUTLER PICKERING HALE
  AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6677
David.Yin@wilmerhale.com

*Counsel for NAACP Pennsylvania State Conference, Common Cause Pennsylvania, League of Women Voters of Pennsylvania, Patricia M. DeMarco, Danielle Graham Robinson, and Kathleen Wise*

[†] Admitted *pro hac vice*.
* *Pro hac vice* forthcoming.
‡ Admission Pending
++ Not admitted in DC; DC practice limited to federal court only.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing Reply Memorandum was filed electronically and served on all counsel of record via the ECF system of the U.S. District Court for the Western District of Pennsylvania.

Dated: October 5, 2020

                                                                     */s/ Lori A. Martin*
                                                                     Lori A. Martin