# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | : | |
| | : | |
| | : | NO. 2:20-cv-00966-NR |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| KATHY BOOCKVAR, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPLY BRIEF IN FURTHER SUPPORT OF
## THE CROSS-MOTION FOR SUMMARY JUDGMENT OF THE BUCKS, CHESTER,
## MONTGOMERY, AND PHILADELPHIA COUNTY BOARDS OF ELECTIONS

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF SOVEREIGN
       IMMUNITY................................................................................................ 2

III.   PLAINTIFFS MISCONSTRUE THE ELECTION CODE................................. 6

       A.    Contrary to Plaintiffs' Selective Paraphrasing, the Election Code Does *Not*
             Direct Officials to Compare the Declaration Envelopes Enclosing Absentee
             and Mail-in Ballots With Another Version of the Voter's Signature .................... 7

       B.    Plaintiffs' Assertion That Drop Boxes and Satellite or Mobile Collection
             Centers Are "Polling Places" Is Wrong—and Directly Contrary to the
             Assertions in Their Pleadings ................................................................ 9

       C.    The Election Code Does Not Impose a Notice and Opportunity-to-Cure
             Requirement for Absentee or Mail-in Ballots Set Aside on the Basis of an
             Insufficient Declaration ...................................................................... 10

IV.    PLAINTIFFS MISSTATE THE STANDARD GOVERNING THEIR
       CONSTITUTIONAL CLAIMS.................................................................... 12

V.     CONCLUSION........................................................................................ 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acosta v. Democratic City Comm.*,
288 F. Supp. 3d 597 (E.D. Pa. 2018) .................................................................1, 13

*Benn v. First Judicial Dist. of Pa.*,
426 F.3d 233 (3d Cir. 2005)..............................................................................5, 6

*Burdick v. Takushi*,
504 U.S. 428 (1992).............................................................................................12

*Citizens for John W. Moore Party v. Bd. of Election Com'rs*,
781 F.2d 581 (7th Cir. 1986) ...............................................................................4

*Consumer Party v. Tucker*,
364 F. Supp. 594 (E.D. Pa. 1973) .......................................................................3

*Dunn v. Blumstein*,
405 U.S. 330 (1972)............................................................................................12

*Fitchik v. N.J. Transit Rail Operations, Inc.*,
873 F.2d 655 (3d Cir. 1989).................................................................................5

*Gamza v. Aguirre*,
619 F.2d 449 (5th Cir. 1980) ...............................................................................1

*Georgia State Conference of National Ass'n for Advancement of Colored People
   v. DeKalb County Board of Registration & Elections*,
No. 20-CV-00879, 2020 WL 5239127 (N.D. Ga. Sept. 2, 2020) .........................3, 4

*Gilhool v. Chairman and Comm'rs, Phila. Cnty. Bd. of Elections*,
306 F. Supp. 1202 (E.D. Pa. 1969),
*aff'd*, 397 U.S. 147 (1970) ...................................................................................3

*Gray v. Sanders*,
372 U.S. 368 (1963)............................................................................................12

*Griffin v. Burns*,
570 F.2d 1065 (1st Cir. 1978)............................................................................14

*Harper v. Va. State Bd. of Elections*,
383 U.S. 663 (1966)............................................................................................12

*Hunter v. Hamilton Cty. Bd. of Elections*,
850 F. Supp. 2d 795 (S.D. Ohio 2012) ...............................................................6

*Lemons v. Bradbury*,
   538 F.3d 1098 (9th Cir. 2011) ..........................................................................15

*Minnesota Voters All. v. Ritchie*,
   720 F.3d 1029 (8th Cir. 2013) ......................................................................4, 14

*In re Nov. 3, 2020 Gen. Election*,
   No. 149 MM 2020 (Pa. filed Oct. 4, 2020)........................................................6

*Sandusky Cnty. Democratic Party v. Blackwell*,
   387 F.3d 565 (6th Cir. 2004) ...........................................................................12

*Stein v. Cortés*,
   223 F. Supp. 3d 423 (E.D. Pa. 2016) ..............................................................14

*Trinsey v. Commonwealth*,
   No. 87-6975, 1988 WL 33967 (E.D. Pa. Mar. 31, 1988) ........................................3

*Trinsey v. Montgomery Cnty. Bd. of Elections*,
   No. 87-6975, 1988 WL 82877 (E.D. Pa. Aug. 4, 1988) ....................................3, 16

*United States v. Hays*,
   515 U.S. 737 (1995)..........................................................................................12

**Statutes**

25 Pa. Stat. § 2602(z.5) .........................................................................................11

25 Pa. Stat. § 2641 ...................................................................................................4

25 Pa. Stat. § 2642(k)-(m).........................................................................................6

25 Pa. Stat. § 2645(a)(4), (c)....................................................................................5

25 Pa. Stat. § 3035.12 ...............................................................................................5

25 Pa. Stat. § 3146.2b .....................................................................................7, 10, 11

25 Pa. Stat. § 3146.8(g)(3) ..................................................................................7, 8

25 Pa. Stat. § 3146.8(h).............................................................................................11

25 Pa. Stat. § 3146.12b(a) ....................................................................................8, 9

25 Pa. Stat. § 3150.12b(c)...................................................................................10, 11

**Other Authorities**

Pa. Const. art. VII ................................................................................................5

U.S. Const. amend. XI .................................................................................. *passim*

U.S. Const. art. I, § 4, cl. 1...........................................................................3, 5, 13, 14

## I.      INTRODUCTION

As shown in Defendants' earlier round of summary judgment briefing,[1] Plaintiffs' claims are fatally flawed for a number of independent reasons: they fail to confer standing and thus are non-justiciable; they are barred by Eleventh Amendment immunity; they are subject to abstention; they fail to state a claim for which relief can be granted; and the evidence adduced by Plaintiffs fails, as a matter of law, to carry their burden of proof. Plaintiffs' Response (ECF 552) does not refute any of these grounds for dismissal. The falsity of most of Plaintiffs' arguments was laid bare in Defendants' earlier briefing, which need not be repeated. In this reply brief, Moving Defendants correct a few discrete errors in Plaintiffs' Response.

The first set of errors relates to threshold questions of federal jurisdiction. First, Plaintiffs' arguments as to sovereign immunity miss the mark; as other courts have held, county boards of elections do, in fact, act as arms of the state in administering federal and statewide elections, and are therefore immune from federal lawsuits under the Eleventh Amendment. Second, putting aside the immunity bar, Plaintiffs misapprehend the legal standard governing their claims. Because the Constitution commits responsibility for regulating and administering federal elections to the states, the high bar a plaintiff must clear to obtain federal-court intervention in state election regulation—which requires "willful conduct that undermine[s] the organic processes by which candidates [are] elected," *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 644 (E.D. Pa. 2018) (citation and internal quotation marks omitted), not merely allegations of "episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote," *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)—applies to federal

---

[1] As noted earlier, and as permitted by the Court, the Bucks, Chester, Montgomery and Philadelphia County Boards of Elections incorporate by reference the summary judgment briefs and arguments of other Defendants.

as well as local elections. Further, there is no support for Plaintiffs' contention that their constitutional claims invoke "strict scrutiny." As the case law makes clear, the challenged laws and practices need satisfy only the rational-basis test.

The second set of issues relates to Plaintiffs' continuing misreading of certain provisions in the Pennsylvania Election Code. Contrary to Plaintiffs' assertions: the Code does *not* direct election officials to compare the signatures on absentee and mail-in ballot declarations to signatures in other records; board of elections offices are *not* "polling places" as that term is used in the Code; and the Code does *not* require notice and an opportunity to cure for absentee and mail-in ballots that are set aside because of declarations that are not deemed "sufficient." Indeed, Plaintiffs' Response only underscores that much of Plaintiffs' remaining case turns on the interpretation of complex state law regarding the administration of elections. It also makes clear that abstention is not only appropriate but crucial. Plaintiffs are deliberately asking this Court to misconstrue the Election Code on the eve of an election—even where the same statutory interpretation questions are currently pending before the Pennsylvania judiciary. As this Court previously recognized, an erroneous decision by this Court would be severely disruptive and threaten important state interests. Accordingly, even if this Court *could* adjudicate the Election Code issues (due to the bar of Eleventh Amendment immunity, among other reasons, it cannot), it should not do so.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY

As previously shown, the county Boards of Elections—who, as Plaintiffs concede, are "the effective administrators of *Pennsylvania's* election laws," (ECF 552, at 52-53 (emphasis added))—function as "arms of the state" entitled to sovereign immunity. (ECF 543, at 5-6.) Plaintiffs' counterarguments are wrong for four reasons.

First, Plaintiffs ignore the thrust of their remaining claims: that the boards of elections will allegedly violate the Constitution by administering an election, a power expressly delegated to the states by the United States Constitution. (*See* ECF 409 at 28 (citing U.S. Const. art. I, § 4, cl. 1).) In other words, the *central premise* of Plaintiffs' claims is that the county boards of elections are *exercising a uniquely state function*.

Second, case law analyzing sovereign immunity of local boards of elections supports the county Boards' position. Plaintiffs do not meaningfully distinguish *Trinsey v. Montgomery Cnty. Bd. of Elections*, No. 87-6975, 1988 WL 82877 (E.D. Pa. Aug. 4, 1988), which held that the Montgomery County Board of Elections is "a branch of the Commonwealth of Pennsylvania" and is thus immune from suit under the Eleventh Amendment. *Id.* at *1. Although Plaintiffs criticize the breadth of the analysis in *Trinsey*, they ignore that the court incorporated by reference its previous Memorandum and Order on the same topic, *see id.*, which more fully analyzed the Eleventh Amendment issue. *See generally Trinsey v. Commonwealth*, No. 87-6975, 1988 WL 33967 (E.D. Pa. Mar. 31, 1988). *Trinsey* also was not the first time that the Eastern District of Pennsylvania determined that the administration of elections is a state function. In *Consumer Party v. Tucker*, 364 F. Supp. 594 (E.D. Pa. 1973), the court concluded as a matter of law that "City Commissioners, in their administration of the relevant portion of the Election Code, . . . are performing a state function[.] [They] are for such purposes state officers, and have no source of lawful authority other than the state statute . . . ." *Id.* at 602 (citing *Gilhool v. Chairman and Comm'rs, Phila. Cnty. Bd. of Elections*, 306 F. Supp. 1202 (E.D. Pa. 1969), *aff'd*, 397 U.S. 147 (1970)).[2]

---

[2] Plaintiffs' reliance on *Georgia State Conference of National Ass'n for Advancement of Colored People v. DeKalb County Board of Registration & Elections*, No. 20-CV-00879, 2020 WL 5239127 (N.D. Ga. Sept. 2, 2020), is misplaced. There, the court dealt with the question of

Third, Plaintiffs conflate county *Boards of Elections* with counties' separate *municipal governments*. Although Plaintiffs repeatedly assert that "County Election Boards are political subdivisions" (ECF 552, at 48), the provisions of the Pennsylvania Constitution on which Plaintiffs rely all discuss county municipal governments. No one disputes that municipal governments are not immune from suit. But the Boards of Elections are separate and distinct entities created by statute. *See* 25 P.S. § 2641. As Judge Easterbrook observed while explaining why the Chicago Board of Elections was entitled to sovereign immunity (even though "counties and other units of local government are not the state"), a board of elections is immune because it: "is part of a statewide, hierarchial organization of which the State Board is the apex"; "is constituted under state rather than municipal law"; "enforces state statutes"; and "administer[s] state law under guidance from the State Board." *See Citizens for John W. Moore Party v. Bd. of Election Com'rs*, 781 F.2d 581, 584 (7th Cir. 1986) (Easterbrook, J., dissenting from decision to certify question). All are true here as well.

Fourth and finally, Plaintiffs misrepresent several facts about the Boards of Elections. Although the county Boards of Elections have "jurisdiction over the conduct of primaries and elections in such county," (ECF 552, at 49 (quoting § 2641(a))), the Boards are responsible for administering *all* Commonwealth elections—including for statewide office. Additionally, although county commissioners generally appropriate the county Boards of Elections' operating budget, that tells only part of the story. For example, the Department of State is responsible for reimbursing costs for some special elections and costs associated with various types of absentee

---

whether boards of election are arms of the state *only* for the purposes of the "particular function" of "determination of voter eligibility." *Id.* at *5-7. This case is not focused on the county Boards of Elections' determination of voter eligibility at all and is thus unaffected by the limited holding in *Dekalb County*.

ballots. 25 P.S. § 2645(a)(4), (c). Moreover, the county Boards of Elections can apply to the Department of State for funding to replace the county Boards' voting apparatuses, *i.e.*, voting machines. 25 P.S. § 3035.12.

In any event, this Court cannot "ascribe primacy" to the Boards of Elections' finances in determining whether they are arms of the state; funding is one of several factors "simply to be considered as an indicator of the relationship between the State and the entity at issue." *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005). "That they are locally funded," or here, *partially* locally funded, "may be problematic for a variety of reasons, but it does not transform them into local entities for Eleventh Amendment purposes." *Id.* Instead, as in *Benn*, other factors, *i.e.*, the "status of the entity under state law" and the "degree of autonomy the entity has," *id.* at 239 (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)), both weigh in favor of determining the Boards of Election are part of the State.

Applying these factors, the court in *Benn* decided that Pennsylvania's Judicial Districts are instrumentalities of the state immune from suit under the Eleventh Amendment (notwithstanding their local funding). *Id.* at 239-41. The court emphasized that "[t]he Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component. From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest[.]" *Id.* at 241. The same is true here. The United States Constitution delegates the power to administer elections to the states. U.S. Const. art. I, § 4, cl. 1. The Pennsylvania Constitution, in turn, does not distinguish between the Department of State or the county Boards of Election in discussing uniform election administration statewide. *See generally* Pa. Const. art. VII. Both the county Boards and the Department of State, as a matter of Pennsylvania law, have overlapping, coadjuvant

responsibilities to carry out the Commonwealth's unique election administration function. *See* 25 P.S. §§ 2642(k)-(m) (Boards of Elections); 2621(c)-(f) (Secretary of State). Thus, Pennsylvania's statutory scheme creates a "unified" electoral administration regime consisting of the county Boards of Election on one hand and the Department of State on the other. *Benn*, 426 F.3d at 241; *see also Hunter v. Hamilton Cty. Bd. of Elections*, 850 F. Supp. 2d 795, 801 (S.D. Ohio 2012) (holding County Board of Elections was arm of state because it was "created by statute" and "vested with broad powers to manage the conduct of elections on behalf of the State and does so under the guidance of the Secretary of State").[3]

Plaintiffs' claims against the county Boards of Election are barred by the Eleventh Amendment.

## III.   PLAINTIFFS MISCONSTRUE THE ELECTION CODE

Plaintiffs' signature-matching and poll-watcher claims turn on their interpretation of the Election Code. Those interpretations are incorrect. Plaintiffs' continued efforts to lead this Court into error regarding fundamental matters of election administration—disruption of which could have calamitous consequences for the election that is less than a month away—only underscore the appropriateness of abstention. Indeed, given that sovereign immunity *precludes* this Court from adjudicating the Election Code issues, and thus precludes this Court from potentially avoiding the constitutional issues Plaintiffs raise (*see supra* Section II; ECF 543, at 28 n.10), the case for abstention is overwhelming.[4]

---

[3] Plaintiffs are correct that in Ohio, county boards of elections' membership is appointed by the Secretary of State. *Hunter*, 850 F. Supp. 2d at 801. But that was only one of the factors discussed by the court, with all others mirroring the relationship between the Secretary of State and county Boards of Election in Pennsylvania. *Hunter* is therefore not distinguishable on that basis alone.

[4] The case for abstention is only stronger now that the Secretary has filed an action seeking the Pennsylvania Supreme Court's review of the signature-matching issue. *See In re Nov. 3, 2020 Gen. Election*, No. 149 MM 2020 (Pa. filed Oct. 4, 2020).

**A.**   **Contrary to Plaintiffs' Selective Paraphrasing, the Election Code Does *Not* Direct Officials to Compare the Declaration Envelopes Enclosing Absentee and Mail-in Ballots With Another Version of the Voter's Signature**

In their argument that the Election Code has a signature comparison requirement that is "clear and unmistakable" (ECF 552, at 31), Plaintiffs use partial quotations and incorrect paraphrases to change the Code's meaning. An examination of the language of the Code—the *actual* language, not the language that Plaintiffs ask the Court to write into the statute—shows that Plaintiffs' interpretation is meritless.

Plaintiffs' argument hangs entirely on 25 Pa. Stat. § 3146.8(g)(3), which directs county boards canvassing absentee and mail-in ballots to compare information on the ballot envelope to a document. (ECF 552, at 31-32.) Plaintiffs repeat, over and over again, that this document is the voter's complete registration record. According to Plaintiffs,

- "The provisions … provide that the county boards '*shall compare* the information' on the declaration envelopes *with the voter's registration file*…" (ECF 552, at 31-32 (quoting 25 Pa. Stat. § 3146.8(g)(3) (second emphasis added)).

- ("[Defendants] blatantly ignore the clear terms written into the statutes … that signatures shall *be compared to the corresponding voter registration records* ….") (ECF 552 at 32) (emphasis added).

- "[A]s the provisions of the Election Code make clear, county boards of elections are required to compare signatures on applications and voted absentee and mail-in ballots against *voter registration records*…" (*Id.*) (emphasis added).

- "The language [of § 3146.8(g)(3)] is similar" to the requirement that when county boards review ballot applications, they compare "the information set forth in the application with the information contained *on the applicant's permanent registration card*." (ECF 552 at 32) (citing 25 Pa. Stat. § 3146.2b(c)) (emphasis added).

However, Section 3146.8(g)(3) does not say that county boards should compare the ballot envelope to a "registration file," "voter registration record," or "permanent registration card." It says that they are to "compare the information" on the envelope to "that contained in the

*'Registered Absentee and Mail-in Voters File,' the absentee voters' list and/or the 'Military Veterans and Emergency Civilians Absentee Voters File,' whichever is applicable.*" 25 Pa. Stat. § 3146.8(g)(3) (emphasis added). If "the information contained in the *'Registered Absentee and Mail-in Voters File,' the absentee voters' list and/or the 'Military Veterans and Emergency Civilians Absentee Voters File'* verifies his right to vote," the ballot may be canvassed. *Id.* (emphasis added).

The Election Code sets forth the contents of these three types of documents; these contents do not include a signature. Section 3146.2c(b) of the Election Code defines the "Military, Veterans and Emergency Civilians Absentee Voters File" as "a master list … setting forth the name and residence, and at primaries, the party enrollment," of certain absentee voters. Section 3146.2(c) provides that absentee voters' lists contain "the names and post office addresses of all voting residents [of a district] to whom official absentee or mail-in ballots shall have been issued." The "Registered Absentee Voters File" is mentioned only once in the Code, in Section 3146.2(h), which provides that it should contain a ballot application number. These files and/or lists are posted in public places, and available upon written request to candidates and parties, so the public has an opportunity to confirm that incoming absentee and mail-in ballot envelopes match the master list of names and addresses. These lists are not a "voter registration file," as Plaintiffs insist, and they provide no signatures for comparison. *See* 25 Pa. Stat. § 3146.2c(b).

The reasoning for this approach is sound. The Election Code requires county boards to verify the elector's proof of identification and examine his voter registration record upon submission of the elector's application to vote by mail. 25 P.S. § 3146.12b(a). It is at this stage of the process that boards can confirm or reject an elector's purported identity. Individuals

seeking to challenge that decision are given an opportunity to do so. *See* 25 P.S.

§ 3146.12b(a)(3). If the application is accepted, the county board adds the elector's name and

address to the "Absentee Voters File" and/or list, which is reviewed when the voted ballot

envelope arrives. To require a complete and duplicative second review of the elector's

identification is not only contrary to the Election Code; it simply would not make sense. The

Court should reject Plaintiffs' attempt to rewrite the Code.

> **B.**     **Plaintiffs' Assertion That Drop Boxes and Satellite or Mobile Collection Centers Are "Polling Places" Is Wrong—and Directly Contrary to the Assertions in Their Pleadings**

Plaintiffs also misconstrue the Election Code when they assert that "drop-boxes,"

"mobile collection centers," and satellite board of elections offices are "polling places" within

the meaning of the Election Code—and thus that Plaintiffs are statutorily entitled to staff poll

watchers at those locations. (*See* ECF 552, at 35-36.) Even more fundamentally, however, it is

not appropriate for this Court to adjudicate this statutory-interpretation claim. Such a claim was

*not* listed among the claims Plaintiffs believed remained in this case. (*See* ECF 448, at 9-10; ECF

459, at 2-3 (identifying claims on which "Plaintiffs intend to press forward").) Indeed, in their

pleadings, Plaintiffs took *exactly the opposite position on the proper interpretation of the*

*Election Code*. (*See, e.g.*, Second Amended Complaint ¶ 3 (ECF 461) (alleging that "poll

watchers [are precluded] from being present in all locations where votes are being cast because

(a) the locations where mail-in or absentee ballots are returned do not constitute a 'polling place'

within the meaning … of the Pennsylvania Election Code"); *id.* ¶ 194 ("as currently written,

Election Code Section 417 does not permit a candidate or political party or any other body to

appoint a poll watcher to serve … at a polling place that is not operating *on Election Day*"

(emphasis added)); *id.* ¶ 256 (acknowledging that the Election Code "fail[s] to allow

Pennsylvania voters to … monitor the drop off of absentee and mail-in ballots").

Moreover, to the extent Plaintiffs *did* ask this Court to adjudicate the relationship between drop boxes and satellite collection locations, on the one hand, and polling places, on the other hand, this Court expressly abstained from doing so in deference to state-court adjudication. (ECF 459, at 5 ("The Court will continue to abstain under *Pullman* as to Plaintiffs' claim pertaining to the notice of drop box locations and, more generally, whether the 'polling place' requirements under the Election Code apply to drop-box locations.").) Finally, as Moving Defendants have already noted, Plaintiffs are already litigating, in state court, the question whether satellite election offices are "polling places" within the meaning of the Election Code. (*See* ECF 544, Appendix, Ex. 1.)[5]

In sum, this Court should abstain from adjudicating Plaintiffs' belated claim that drop boxes and satellite election offices constitute "polling places" under the Election Code.

### C.    The Election Code Does Not Impose a Notice and Opportunity-to-Cure Requirement for Absentee or Mail-in Ballots Set Aside on the Basis of an Insufficient Declaration

Plaintiffs continue to assert that "[t]he Election Code provides both notice and opportunity to cure provisions for both absentee and mail-in ballots applications [sic] *and voted absentee and mail-in ballots that a county board of election determines lacks a genuine signature*." (ECF 552, at 60 (emphasis added).) As Moving Defendants previously demonstrated, that is plainly incorrect. (*See* ECF 543, at 29-30.)

The Code does provide for notice and opportunity to cure in the event that an absentee or mail-in ballot *application*—which is due no later than seven days prior to election day—is "not approved." 25 Pa. Stat. §§ 3146.2b(d), 3150.12b(c). These provisions specifically note that "[f]or those applicants whose proof of identification was not provided with the application or could not

---

[5] As this recently filed action by Plaintiffs shows, Plaintiffs could have presented their signature-matching claims to the Pennsylvania judiciary as well.

be verified by the board, the board shall send notice to the elector with the [absentee or mail-in] ballot requiring the elector to provide proof of identification with the [] ballot or the ballot will not be counted." *Id.* §§ 3146.2b(d), 3150.12b(c). As previously discussed (*see* ECF 543, at 25), the "proof of identification" for absentee and mail-in ballots is *not* a signature; it is a driver's license number, the last four digits of the voter's Social Security number, or an approved photo ID. 25 Pa. Stat. § 2602(z.5).

Plaintiffs point out that § 3146(h) provides that "[f]or absentee ballots or mail-in ballots for which proof of identification has not been received or could not be verified," the ballots will still be counted "[i]f the proof of identification is received and verified prior to the sixth calendar day following the election." 25 Pa. Stat. § 3146.8(h). (*See* ECF 552, at 60.) But that provision, read together with the provisions discussed above, merely means that voters will receive notice, *at the time their application is processed and their blank ballot is sent to them*, that they still need to provide adequate "proof of identification," and voters will then have until six days after the election to cure that deficiency. These sections in no way support Plaintiffs' conclusion that voters who return an absentee or mail-in ballot that is deemed insufficient *because of some deficiency in the way the voter completed the ballot envelope declaration* are required to receive notice and an opportunity to cure that deficiency. Any such deficiencies could obviously not be detected until the county board of elections received the ballot, which will necessarily be at a later point than when the board sends the blank ballot to the voter (which is the stage at which notice of deficient "proof of identification" must be sent). As Defendants have explained, the Election Code does *not* require notice and an opportunity to cure for deficiencies in the declaration itself. (ECF 543, at 29-30.)

11

IV.     **PLAINTIFFS MISSTATE THE STANDARD GOVERNING THEIR CONSTITUTIONAL CLAIMS**

Plaintiffs continue to insist, wrongly, that they can state a federal constitutional claim for "vote dilution" by alleging that Pennsylvania's law and/or election administration practices have not "minimize[d] the possibility of election fraud" by third parties. (ECF 509, at 2.) According to Plaintiffs, "[f]ollowing *Baker* [*v. Carr*, 369 U.S. 186 (1962)], the Supreme Court has consistently upheld the standing of voters to challenge the constitutionality of election processes which cause dilution or debasement of their votes without first providing that their particular votes have been actually miscounted, diluted, or debased." (ECF 552, at 13.) But, crucially, all of the cases Plaintiffs cite involved state laws that *directly and immediately* weighted the votes of plaintiffs less heavily than others—as through racial gerrymandering or through defining legislative districts so that they contain grossly unequal numbers of voters—or otherwise directly burdened the plaintiffs' right to vote. (*Id.* at 13-14.) *See Baker*, 369 U.S. 186 (challenging apportionment scheme that resulted in vast disparities between the number of voters in each legislative district); *United States v. Hays*, 515 U.S. 737 (1995) (challenging racially gerrymandered districts); *Gray v. Sanders*, 372 U.S. 368 (1963) (challenging county unit system which, in counting votes, weighted rural votes more heavily than urban votes and weighted some small rural counties heavier than other larger rural counties); *Burdick v. Takushi*, 504 U.S. 428 (1992) (challenging ban on write-in candidates); *Dunn v. Blumstein*, 405 U.S. 330 (1972) (challenging durational residence requirement); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663 (1966) (challenging poll tax); *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (challenging directive allowing a voter to be denied a provisional ballot in alleged violation of federal statutory law). Plaintiffs cite no precedent supporting the proposition that a plaintiff can state a federal constitutional claim simply by alleging the *possibility* that a third party could

successfully cast a vote that should not be counted. The absence of authority is not surprising: Plaintiffs' position is not the law.

As Defendants have pointed out, the applicable standard for federal-court intervention in election administration is far more demanding: "'[G]arden variety election irregularities'"— including "human error resulting in miscounting of votes[,] … allegedly inadequate state response to illegal cross-over voting, … mistakenly allowing non-party members to vote in a congressional primary, and arbitrary rejection of ten ballots"—"are not actionable under § 1983." *Acosta*, 288 F. Supp. 3d at 643-44 (citations omitted) (collecting cases). Instead, "§ 1983 is implicated when willful conduct 'undermines the organic process by which candidates are elected,' or where the government or its officials engage in intentional actions." *Id.* at 644 (citations omitted) (collecting cases).

In their Response, Plaintiffs seem to dispute these principles,[6] suggesting they are applicable only to local elections and not to "statewide and nationwide" ones. (ECF 552, at 62.) Plaintiffs are wrong. As this Court has explained, "under the Constitution, the critical responsibility of administering elections is reserved for the states. U.S. Cons. art. I, § 4, cl. 1. In discharging this duty, the powers of state government are at their apex. States have considerable discretion to conduct elections as they see fit, and federal courts intervene only when the decisions of state officials threaten to infringe the fundamental right to vote or deny citizens the

---

[6] We say "seem" because elsewhere in Plaintiffs' Response, they expressly agree that "[t]he Bucks, Chester, Montgomery, and Philadelphia Counties are right to point out that 'garden variety election irregularities are not actionable under § 1983.[']" (ECF 552, at 65.) The proposition Plaintiffs endorse is indistinguishable from the jurisprudence Plaintiffs incorrectly suggest is limited to local elections. *Compare* cases cited and discussed in *Acosta*, 288 F. Supp. 3d at 643-44, *with* case law cited by Plaintiffs at ECF 552, at 62.

equal protection of law."[7] (ECF 409, at 28-29.) Accordingly, the extremely high bar to federal-court intervention in election matters is, in fact, applicable to statewide and nationwide elections. *See, e.g.*, *Minnesota Voters All. v. Ritchie*, 720 F.3d 1029, 1031-32 (8th Cir. 2013) (applying this line of cases, including *Pettengill v. Putnam County R-1 School District*, 472 F.2d 121 (8th Cir. 1973), and dismissing, as insufficient to state a federal claim under § 1983, a claim alleging that election officials violated plaintiff voters' constitutional rights "by Officials' failure to verify [election day registrants'] voting eligibility before allowing [them] to vote, after which time any improperly cast votes cannot be 'clawed back' or otherwise rescinded"; these claims alleged vote dilution in, and sought relief regarding, statewide and national elections, among others); *Stein v. Cortés*, 223 F. Supp. 3d 423, 438 (E.D. Pa. 2016) (to state a constitutional claim for a due process violation in context of presidential election, "the election process itself [must] reach the point of patent and fundamental unfairness" (quoting *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978))). Tellingly, Plaintiffs cite no authority holding that a different standard applies to statewide and nationwide elections.

Plaintiffs are also wrong in asserting that strict scrutiny applies to their challenges to the use of drop boxes, the Election Code's restrictions on poll watchers, and different verification process for in-person versus mail-in voting. (*See* ECF 552, at 54.) As Defendants previously showed, strict scrutiny applies only to regulations that severely burden the right to vote. But none of Plaintiffs' claims challenge a regulation on the grounds that it makes it more difficult to vote. Plaintiffs are not, for example, challenging a signature-matching requirement on the grounds that

---

[7] The Elections Clause provides that the states' authority to regulate elections is subject to Congress's ability to "at any time by Law make or alter such Regulations." U.S. Const. art I., § 4, cl. 1. Accordingly, Congress could enact a statute prohibiting states from using "unstaffed" drop boxes or proscribing county-residency restrictions on poll watchers. But Congress has not done so.

signature-matching is unreliable and will lead to the disenfranchisement of electors qualified to vote. Instead, Plaintiffs contend that Pennsylvania and its election officials are—through using drop boxes, imposing certain limitations on poll watchers, or not rejecting ballots based solely on a signature-matching analysis—not doing enough to "minimize" the possibility that *third parties* will cast votes that should not be counted. Because Plaintiffs' claims do not allege *any* burden of the ability of eligible voters to cast a vote, let alone a severe burden, their due process and equal protection claims are subject only to rational-basis scrutiny. (*See, e.g.*, ECF 543, at 17 & n.6, 19-22, 30-31.)[8]

## V.    CONCLUSION

Moving Defendants respectfully requested that the Court deny Plaintiffs' Motion for Summary Judgment, grant the Moving Defendants' Cross-Motion for Summary Judgment, and enter final judgment in favor of the Moving Defendants on all claims asserted in the Second Amended Complaint.

---

[8] For their strict scrutiny argument, Plaintiffs rely principally on *Lemons v. Bradbury*, 538 F.3d 1098 (9th Cir. 2011). (*See* ECF 552, at 54.) But *Lemons* is plainly inapposite. That case involved a challenge, by signatories to a referendum, to the Oregon Secretary of State's decision to refuse to place the matter on the ballot, *i.e.*, a decision by a state official that directly *precluded* the plaintiffs' ability to vote. In any event, the Court of Appeals upheld the Secretary of States' decision and *rejected* the voters' attempt to invoke strict scrutiny. *Id.* at 1103-04, 1107.

In addition, Plaintiffs' strict scrutiny theory would be completely unworkable in practice. According to Plaintiffs' position, any voting system would be unconstitutional if there is another conceivable system that would be marginally less likely to allow a third party to cast an invalid vote, unless the state could show a "compelling interest" for not adopting that other system. Under Plaintiffs' proffered standard, federal courts would be ceaselessly adjudicating disputes over whether state election procedures were "sufficiently secure." Moreover, since Plaintiffs apparently give no weight to the deterrence effect of criminal sanctions for fraud and other misconduct, it is likely that, under their standard, voters' marking of the ballot itself would need to be monitored, and the voter could vote only after passing a DNA test to verify his or her identity.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: October 5, 2020

By:     /s/ Mark A. Aronchick
        Mark A. Aronchick (I.D. No. 20261)
        Michele D. Hangley (I.D. No. 82779)
        Robert A. Wiygul (I.D. No. 310760)
        Christina C. Matthias (I.D. No. 326864)
        John B. Hill (I.D. No. 328340)
        One Logan Square, 27th Floor
        Philadelphia, PA 19103
        Telephone: (215) 496-7050
        Email: maronchick@hangley.com

*Counsel for Bucks, Chester, Montgomery, and
Philadelphia County Boards of Elections*