# EXHIBIT A

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CIVIL

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., | : | SEPTEMBER TERM, 2020 |
|  | : |  |
|  | : | NO. 02035 |
| Plaintiff, | : |  |
|  | : | ELECTION MATTER |
| v. | : |  |
|  | : | Control No. 20100256 |
| PHILADELPHIA COUNTY BOARD OF ELECTIONS; COMMISSIONER LISA M. DEELEY IN HER OFFICIAL CAPACITY; COMMISSIONER AL SCHMIDT IN HIS OFFICIAL CAPACITY; COMMISSIONER OMAR SABIR IN HIS OFFICIAL CAPACITY | : : : : : : : |  |
|  | : |  |
| Defendants. | : |  |

DOCKETED

OCT 0 9 2020

N. ERICKSON
DAY FORWARD

## ORDER

**AND NOW**, this 9th day of October, 2020, upon consideration of plaintiff's emergency

Election Petition, the response thereto, and all other matters of record, after hearing oral

argument from counsel on October 6, 2020, and in accord with the Opinion issued

simultaneously herewith, it is **ORDERED** that said Petition is **DENIED**.

BY THE COURT:

**GLAZER, J.**

Donald J. Trump For Pre-ORDOP

20090203500020

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., | : : : | SEPTEMBER TERM, 2020 |
| | : | NO. 02035 |
| Plaintiff, | : : | ELECTION MATTER |
| v. | : : | Control No. 20100256 |
| PHILADELPHIA COUNTY BOARD OF ELECTIONS; COMMISSIONER LISA M. DEELEY IN HER OFFICIAL CAPACITY; COMMISSIONER AL SCHMIDT IN HIS OFFICIAL CAPACITY; COMMISSIONER OMAR SABIR IN HIS OFFICIAL CAPACITY | : : : : : : : | |
| Defendants. | : | |

## OPINION

On October 3, 2020, plaintiff, Donald J. Trump for President, Inc. (hereinafter, the "Campaign"), filed an emergency Petition in this Election Matter requesting that the court order defendants, the Philadelphia County Board of Elections, Commissioner Lisa M. Deeley, Commissioner Al Schmidt, and Commissioner Omar Sabir (collectively, the "Board of Elections") to "permit representatives of the Campaign to enter and remain in the satellite election offices to serve as a [sic] watchers pursuant to 25 Pa. Stat. Ann. §§ 2650 and 2687"[1] of the Election Code of the Commonwealth of Pennsylvania.[2]

---

[1] Plaintiff's Proposed Order, ¶ 3.

[2] 25 Pa. Stat. § 2600 *et seq*. "The laws relating to general, municipal, special and primary elections, the nomination of candidates, primary and election expenses and election contests [were first] codified, revised and consolidated" into the Election Code in 1937. *Id.* at § 2600.

The Election Code has since been amended regularly, including recently by "Act 77 of 2019 which, *inter alia*, created for the first time in Pennsylvania the opportunity for all qualified electors to vote by mail, without requiring the electors to demonstrate their absence from the voting district on

The Board of Elections opened seven such satellite offices to great fanfare on September 29, 2020, and more may be opened at later dates prior to Election Day, which this year is November 3, 2020.[3] At these satellite offices, Board of Elections' employees register voters, receive voters' applications for mail-in ballots, provide mail-in ballots to voters, provide a private space for voters to fill in their mail-in ballots, and accept sealed mail-in ballots from voters, who may be residents of any ward or district in the County of Philadelphia, for later pre-canvassing and canvassing on Election Day.[4] The Campaign desires to appoint "watchers" to sit in these satellite offices to observe the employees and voters as they go about these activities in advance of Election Day.

"State law, not the Federal Constitution, grants individuals the ability to serve as poll watchers and parties and candidates the authority to select those individuals. . . . Because the Pennsylvania Election Code, not the United States Constitution, grants parties the ability to

---

Election Day." Pennsylvania Democratic Party v. Boockvar, 2020 WL 5554644, at *1, __ A3d __ (Pa. Sept. 17, 2020) (referencing 25 Pa. Stat. §§ 3150.11-3150.17).

[3] See 25 Pa. Stat. § 2751 ("The general election shall be held biennially on the Tuesday next following the first Monday of November in each even-numbered year. Electors of President and Vice-President of the United States, United States Senators, Representatives in Congress, the Governor, the Lieutenant Governor, the Secretary of Internal Affairs, the Auditor General, the State Treasurer and Senators and Representatives in the General Assembly shall be elected at the general election.")

[4] "The word 'pre-canvass' shall mean the inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots. The term does not include the recording or publishing of the votes reflected on the ballots." Id. at § 2602(q.1). "The county board of elections shall meet no earlier than seven o'clock A.M. on election day to pre-canvass all ballots received prior to the meeting." Id. at § 3146.8(g)(1.1).
"The word 'canvass' shall mean the gathering of ballots after the final pre-canvass meeting and the counting, computing and tallying of the votes reflected on the ballots." Id. at § 2602(a.1). "The county board of elections shall meet no earlier than the close of polls on the day of the election and no later than the third day following the election to begin canvassing absentee ballots and mail-in ballots not included in the pre-canvass meeting. The meeting under this paragraph shall continue until all absentee ballots and mail-in ballots received prior to the close of the polls have been canvassed." Id. at § 3146.8(g)(2).

appoint poll watchers, the state is free to regulate their use and its decision to do so does not implicate or impair any protected associational rights."[5]

Under the Pennsylvania Election Code, candidates, political parties, and political bodies, such as the Campaign here, are entitled to appoint watchers for each election district in an election.[6]  The Election Code imposes one requirement for each watcher appointed by the Campaign, namely that s/he "must be a qualified registered elector of the county in which the election district for which the watcher was appointed is located."[7]  If that requirement is met, then the county Board of Elections shall issue the watcher a certificate, "stating his name and the name of the candidate, party or political body he represents."[8]  "Watchers may be required to show their certificates when requested to do so."[9]

---

[5] Republican Party of Pennsylvania v. Cortes, 218 F. Supp. 3d 396, 414 (E.D. Pa. 2016).

[6] See 25 Pa. Stat. § 2687(a).  Watchers earn no more than $120.00 per day from a political body or other person, while "serv[ing] without expense to the county." Id. at § 2687(a), (c).

[7] Id. at § 2687(b).  "[Q]ualified elector" shall mean any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Commonwealth, or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." Id. at § 2602.
The Election Code sometimes employs the term "elector" and sometimes uses the term "voter." For simplicity's sake, the court will use the term "voter" throughout this Opinion except where quoting directly from the Election Code.

[8] Id. at § 2687(b).

[9] Id.  In this case, persons purporting to be watchers for the Campaign attempted to gain access to the Board of Elections' satellite offices when the offices first opened for business on September 29, 2020, but they were rebuffed.  See Plaintiff's Petition, ¶¶ 33-35. However, the Campaign had not yet submitted an application to, nor received watchers' certificates from, the Board of Elections.  See Plaintiff's Supplemental Memorandum of Law, Ex. H. Clearly, those individuals were not certified watchers at the time they attempted to gain access to the satellite offices.
For purposes of the remainder of this Opinion, the court will assume that the Campaign will be able to obtain certificates for at least some of the watchers for whom it submitted an application, i.e., that some of them will meet the statutory requirement to be a watcher, and the Board of Elections will perform its ministerial duty to provide each qualified person with a watcher's certificate in a timely fashion.  See 25 Pa. Stat. §2642(e) ("The county boards of elections, within their respective counties, shall exercise, in the manner provided by this act, all powers granted to them by this act, and shall perform all the duties

3

The Election Code expressly grants such watchers the following substantive statutory rights:

1. To "be present in the polling place . . . from the time that the election officers meet prior to the opening of the polls under section 1208[10] until the time that the counting of votes is complete and the district register and voting check list is locked and sealed;"[11]

2. When "allowed in the polling place . . . [to] be permitted to keep a list of voters and [to] be entitled to challenge any person making application to vote and to require proof of his qualifications,"[12]

_____

imposed upon them by this act, which shall include the following: . . .To issue certificates of appointment to watchers at primaries and elections.")

[10] 25 Pa. Stat. § 3048.

[11] *Id.* at § 2687(b). *See also id.* at § 3060(a) ("Until the polls are closed, no person shall be allowed in the polling place outside of the enclosed space at any primary or election, **except the watchers**, voters not exceeding ten at any one time who are awaiting their turn to vote, and peace officers, when necessary for the preservation of the peace.") (emphasis supplied).

[12] *Id.* at § 2687(b). The Election Code provides with respect to mail-in ballots that: " Not less than five days preceding the election, the chief clerk shall prepare a list for each election district showing the names and post office addresses of all voting residents thereof to whom official absentee or mail-in ballots shall have been issued. . . . He shall post the original of each such list in a conspicuous place in the office of the county election board and see that it is kept so posted until the close of the polls on election day. He shall cause the duplicate of each such list to be delivered to the judge of election in the election district in the same manner and at the same time as are provided in this act for the delivery of other election supplies, and it shall be the duty of such judge of election to post such duplicate list in a conspicuous place within the polling place of his district and see that it is kept so posted throughout the time that the polls are open. Upon written request, he shall furnish a copy of such list to any candidate or party county chairman." *Id.* at § 3146.2c(c). This provision enables the Campaign or its poll watchers, as well as the Judge of Election and other officials, to ascertain if any person who appears at a polling place on Election Day previously received a mail-in ballot, which would give the watchers, and others, grounds to challenge that person's right to vote at the polling place.

3. If certain conditions are met at the polling place, "to inspect the voting check list and either of the two numbered lists of voters maintained by the county board;"[13]

4. "[T]o represent [a] political body . . . at any public session or sessions of the county board of elections, and at any computation and canvassing of returns of any primary or election and recount of ballots or recanvass of voting machines;"[14]

5. "[A]t any recount of ballots or recanvass of voting machines, . . . to examine the ballots, or the voting machine and to raise any objections regarding the same, which shall be decided by the county board, subject to appeal;"[15]

6. To "be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded."[16]

The very detailed Election Code contains no provision that expressly grants the Campaign and its representatives a right to serve as watchers at "satellite offices" of the Board of Elections, so the Campaign must shoehorn its argument into one of the six above enumerated rights of watchers.[17]

---

[13] 25 Pa. Stat. § 2687(b).

[14] *Id.* at § 2650(a).

[15] *Id.* at § 2650(c).

[16] *Id.* at § 3146.8(b).

[17] "Pennsylvania also does not permit poll watchers to monitor 'pre-canvass meetings,' although a 'representative' for each candidate and political party is permitted to attend" such pre-canvass meetings. Trump for President, Inc. v. Boockvar, No. 2:20-CV-966, 2020 WL 4920952, at *4 (W.D. Pa. Aug. 23, 2020) (citing the Campaign's Complaint in that action). *See* 25 Pa. Stat. § 3146.8(g)(1.1) ("One authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots and mail-in ballots are pre-canvassed. No person observing, attending or participating in a pre-canvass meeting may disclose the results of any portion of any pre-canvass meeting prior to the close of the polls.")

The only activities occurring at the satellite offices are voter registration, application for mail-in ballots by individual voters, provision of mail-in ballots to individual voters, private completion of mail-in ballots by individual voters, and delivery by individual voters of their own mail-in ballots.  No canvassing, re-canvassing, opening, counting, recounting, computation, or recording of ballots, votes, or voting machines is occurring at the satellite offices.  Therefore, the rights bestowed upon watchers in Paragraphs 5 and 6 above, as well as the latter part of Paragraph 4, are not presently implicated here.[18]  The only questions that the Campaign can and does reasonably raise here are whether the satellite offices qualify as "polling places" under Paragraphs 1, 2, and 3 above, or as "sessions of the county board of elections" under Paragraph 4 above.

In order to determine if satellite offices constitute "polling places" at which a watcher has a right to be present, one must scrutinize the Election Code's rather obtuse language for clues.  Under the Election Code's definitions section, "[t]he words "polling place" shall mean the room provided in each election district for voting at a primary or election."[19]  In the City of Philadelphia, "each ward . . . shall constitute a separate election district, unless divided into two or more election districts or formed into one election district, as hereinafter provided."[20]  Since the Board of Elections' satellite offices serve the entire County and not just one election district or ward, they do not appear to be polling places as contemplated by the Election Code.

---

[18] If any of these acts do subsequently take place at the satellite offices, then watchers would be entitled to be present to the extent provided in the Election Code.

[19] 25 Pa. Stat. § 2602(q).

[20] *Id*. at § 2701.

6

Not only do the satellite offices fail to conform to the Election Code's geographic limits for polling places, satellite offices also fail to conform to the temporal limits for polling places, which encompass only a single Election Day: "At all primaries and elections the polls shall be opened at 7 A.M., Eastern Standard Time, and shall remain open continuously until 8 P.M., Eastern Standard Time, at which time they shall be closed."[21]

The portion of the Election Code that recognizes the right of watchers to be present in polling places similarly recognizes that polling places only exist on one Election Day.  It gives watchers the right to watch

> from the time that the election officers meet prior to the opening of the polls under section 1208 until the time that the counting of votes is complete and the district register and voting check list is locked and sealed. . . . After the close of the polls and while the ballots are being counted or voting machine canvassed, all the watchers shall be permitted to be in the polling place outside the enclosed space.  . . .Watchers allowed in the polling place under the provisions of this act, shall be permitted to keep a list of voters and shall be entitled to challenge any person making application to vote and to require proof of his qualifications, as provided by this act.  During those intervals when voters are not present in the polling place either voting or waiting to vote, the judge of elections shall permit watchers, upon request, to inspect the voting check list and either of the two numbered lists of voters maintained by the county board: Provided, That the watcher shall not mark upon or alter these official election records. The judge of elections shall supervise or delegate the inspection of any requested documents.[22]

The referenced section, "1208," likewise recognizes the ephemeral existence of polling places:

> The judges, inspectors, clerks of election and machine inspectors, together with the overseers, if any, shall meet in the respective places appointed for holding the election in each election district at least thirty minutes before the hour for opening the polls **on the day of each primary and election**.  They shall thereupon, in the presence of each other, take and subscribe in duplicate to the oaths required by this act. . . .  If any judge of election shall not appear **at the polling place** by seven (7) o'clock A.M. **on the day of any primary or election**, the majority

---

[21] 25 Pa. Stat. § 3045.

[22] *Id.* at § 2687(b).  This section lists several things that watchers may do, but they may not do them until they are allowed into a polling place on Election Day.

7

inspector shall appoint a judge of election, who is qualified under the provisions
of this act. . . .[23]

Further support for the finding that a satellite office is not a polling place can be found in

the provisions of the recently enacted Act 77 relating to mail-in ballots.  For instance, a polling

place is expressly not a place where mail-in ballots can be delivered by voters for the purposes of

voting:

> [A] voter who applies for a mail-in ballot under section 1301-D[24] shall not be
> eligible to vote at a polling place on election day unless the elector brings the
> elector's mail-in ballot to the elector's polling place, remits the ballot and the
> envelope containing the declaration of the elector to the judge of elections to be
> spoiled and signs a statement subject to the penalties under 18 Pa.C.S. § 4904
> (relating to unsworn falsification to authorities) to the same effect.[25]

> Any elector who receives and votes a mail-in ballot under section 1301-D shall
> not be eligible to vote at a polling place on election day. The district register at
> each polling place shall clearly identify electors who have received and voted
> mail-in ballots as ineligible to vote at the polling place, and district election
> officers shall not permit electors who voted a mail-in ballot to vote at the polling
> place.[26]

Given their scope, timing, and purpose, the satellite offices do not constitute polling

places where watchers have a right to be present under the Election Code.  The question then is

whether they are "public sessions" of the Board of Elections at which watchers may be present as

also provided in the Election Code:

> Any party or political body or body of citizens which now is, or hereafter may be,
> entitled to have watchers at any registration,[27] primary or election, shall also be

---

[23] 25 Pa. Stat. § 3048(a), (b) (emphasis supplied).

[24] *Id*. at § 3150.11.

[25] *Id*. at § 3150.12(f).

[26] *Id*. at § 3150.16(b)(1).

[27] Although the Election Code makes reference, rather misleadingly, to watchers at voter
"registration," the section of the Election Code conferring the right of watchers to be present at voter
registration places was repealed in 1995. *See* 25 Pa. Stat. Ch. 4A (Voter Registration Act [Repealed]).

entitled to appoint watchers who are qualified electors of the county or attorneys to represent such party or political body or body of citizens at any public session or sessions of the county board of elections, and at any computation and canvassing of returns of any primary or election and recount of ballots or recanvass of voting machines under the provisions of this act.  Such watchers or attorneys may exercise the same rights as watchers at registration and polling places, but the number who may be present at any one time may be limited by the county board to not more than three for each party, political body or body of citizens.[28]

The Election Code contemplates very limited "public sessions" of the Board of Elections at which watchers are entitled to appear to represent their appointing authority, in this case the Campaign.  The only other references to such public sessions in the Election Code are as follows:

Each county board of elections may make regulations, not inconsistent with this act or the laws of this Commonwealth, to govern its **public sessions**, and may issue subpoenas, summon witnesses, compel production of books, papers, records and other evidence, and fix the time and place for **hearing any matters relating to the administration and conduct of primaries and elections in the county under the provisions of this act.**  All subpoenas issued by the county board shall be in substantially the same form and shall have the same force and effect as subpoenas issued by the court of common pleas of such county, and, upon application, the board shall be entitled to the benefit of the process of such court if necessary to enforce any subpoena issued by them.  Each member of the county board shall have the power to administer oaths and affirmations.  Each person testifying before any county board shall be first duly sworn or affirmed.

Any person filing any petition with a county board or opposing the same shall have the privilege of having subpoenas issued by the board to compel the attendance of witnesses, upon condition that all witnesses so subpoenaed shall be paid witness fees, in the manner herein provided.

Witnesses subpoenaed by the county board shall each also be entitled to daily witness fees at the rate aforesaid, to be paid by the board: Provided, however, That election officers, clerks, machine inspectors, overseers and **watchers**, when subpoenaed by the county board to appear before the board, sitting for the

---

The Campaign is not attempting to appoint watchers for registration places, since that is no longer permitted under the Election Code.

[28] 25 Pa. Stat. § 2650(a).

computation and canvassing of votes cast at an election, shall not be entitled to
witness fees.[29]

The county board of elections shall arrange for the computation and canvassing of
the returns of votes cast at each primary and election at its office or at some other
convenient public place at the county seat with adequate accommodations for the
watchers and attorneys authorized by this act to be present, who shall be permitted
to keep or check their own computation of the votes cast in the several election
districts as the returns from the same are read, as hereinafter directed. The county
board shall give at least one week's previous notice by newspaper publication, as
provided by section 106[30] of this act, of the time and place when and where the
board will commence and hold its **sessions for the computation and canvassing
of the returns**, and keep copies of such advertisement posted in its office during
said period.[31]

"The Election Code makes the County Board of Election more than a mere ministerial body. It

clothes [the Board of Elections] with quasi-judicial functions" in certain instances where it hears

disputed election matters and computes and canvasses returns.[32]  However, the Board of

Elections' employees' functions at the satellite offices are not quasi-judicial; they are ministerial

only.  Since the Board of Elections is not holding hearings nor canvassing returns at the satellite

offices, the Board of Elections is not holding public sessions at those offices.

        Since the satellite offices are not "polling places," nor do they constitute "public

sessions" of the Board of Elections, the question is, what are they in the language of the Election

Code?  The answer lies in the activities that occur at such sites.  At the satellite offices, Board of

Elections' employees engage in the following ministerial acts: they register voters; they process

voters' applications for mail-in ballots; they provide mail-in ballots to voters for the voters to

_____

[29] 25 Pa. Stat. § 2644(a)-(c) (emphasis supplied).

[30] *Id.* at § 2606.

[31] *Id.* at § 3153(a) (emphasis supplied).

[32] Appeal of McCracken, 370 Pa. 562, 565, 88 A.2d 787, 788 (1952).

complete in private; and they receive completed, sealed, mail-in ballots from voters. All of these are activities that the Election Code contemplates taking place in an "office" of the Election Board:

> Applications may be submitted **to register to vote** or change party enrollment or name or address on a current registration record in person before the commission or a commissioner, a registrar or a clerk **at the office of the commission or at a place designated by the commission**.[33]

> Notwithstanding any other provisions of this act and notwithstanding the inclusion of a mailing address on an absentee or **mail-in ballot application**, a voter who presents the voter's own application for an absentee or mail-in ballot **within the office of the county board of elections** during regular business hours may request to receive the voter's absentee or **mail-in ballot** while the voter is at **the office**. This request may be made orally or in writing. Upon presentation of the application and the making of the request and upon approval under sections 1302.2 and 1302.2-D,[34] the county board of elections shall promptly present the voter with the voter's absentee or mail-in ballot. If a voter presents the **voter's application within the county board of elections' office** in accordance with this section, a county board of elections may not deny the voter's request to have the **ballot presented to the voter while the voter is at the office** unless there is a bona fide objection to the absentee or mail-in ballot application.[35]

> **Applications for mail-in ballots** shall be **received in the office of the county board of elections** not earlier than 50 days before the primary or election, except that if a county board of elections determines that it would be appropriate to the county board of elections' operational needs, any applications for mail-in ballots received more than 50 days before the primary or election may be processed before that time. Applications for mail-in ballots shall be processed if received not later than five o'clock P.M. of the first Tuesday prior to the day of any primary or election.[36]

> At any time after receiving an official **mail-in ballot**, but on or before eight o'clock P.M. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and **securely seal** the same in the envelope on which is printed, stamped

---

[33] 25 Pa. Cons. Stat. § 1322 (Voter Registration Act) (emphasis supplied).

[34] 25 Pa. Stat. § 3150.12(b).

[35] *Id.* at § 3146.5(2)(b) (emphasis supplied).

[36] *Id.* at § 3150.12a(a) (emphasis supplied).

or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be **securely sealed** and the elector shall send same by mail, postage prepaid, except where franked, or **deliver it in person to said county board of election.**[37]

The "**completed mail-in ballot** must be **received in the office of the county board of elections** no later than eight o'clock P.M. on the day of the primary or election."[38]

It is clear from a reading of the above sections that the satellite offices where these activities, and only these activities, occur are true "offices of the Board of Elections" and are not polling places, nor public sessions of the Board of Elections, at which watchers have a right to be present under the Election Code.

The Legislators who drafted the recently enacted Act 77, and the even more recent 2020 Amendments to the Election Code, which together encompass most of the mail-in ballot provisions cited above, were clearly aware of the existence of watchers, and even made express provision for them with respect to mail-in ballots: "Watchers shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded."[39] However, neither those Legislators, nor any preceding drafters of the Election Code's provisions chose to give watchers the right to be present in the offices of the Board of Elections while the Board's employees are performing ministerial activities with respect to mail-in ballots prior to Election Day.[40] For this court to read into the

---

[37] 25 Pa. Stat. § 3150.16(a) (emphasis supplied).

[38] *Id.* at § 3150.16(c) (emphasis supplied).

[39] *Id.* at § 3146.8(b).

[40] In a related federal court action, the Campaign apparently admitted that "as it pertains to mail-in ballots, poll watchers are unable to monitor the drop off or mail in of ballots before Election Day."

Election Code the right of watchers to be present in Board of Elections' offices, which the Legislature did not expressly provide, would be the worst sort of judicial activism. This court will not engage in such improper conduct, which would be a clear usurpation of the legislative function.[41]

The Campaign has been invited by the Board of Elections to tour the satellite offices, but has not yet accepted that invitation. The court suggests that the Campaign do so. Furthermore, individuals who are residents of, or qualified voters registered in, Philadelphia County, and who are also associated with the Campaign, may enter the satellite offices to register to vote, apply for their own mail-in ballot, receive it, fill it out in private, and/or drop it off. However, they may not linger in the satellite offices indefinitely[42] as "watchers" under the Election Code.

---

Trump for President, Inc. v. Boockvar, 2020 WL 4920952, at *4 (W.D. Pa. Aug. 23, 2020) (citing plaintiff's own Complaint in that action).

[41] As our Supreme Court has previously held in a case involving similarly important matters of public interest, "[d]eciding the case as presented involves no "cover-up;" rather, the decision reflects fidelity to the command of the oaths [judges] take to support and defend the Constitution, and to exercise judicial restraint. The [Campaign's] approach, in contrast, is the opposite of strict construction and the height of judicial activism." In re Interbranch Comm'n on Juvenile Justice, 605 Pa. 224, 245, 988 A.2d 1269, 1282 (2010). "The public and political debate, of course, may encompass all voices, responsible and irresponsible, learned and reckless, and citizens in that debate are entitled to voice their opinions giving scant or no attention to salutary restrictions existing in the law, where foundational commands and precedent must hold sway. Our task is different from that of the litigant, the politician, or the editorialist, and it is inevitably less understood and often less popular. Our sworn task is to apply the law; and in so doing we cannot ignore, rewrite or torture settled language and propositions, and then apply that construct retroactively without affording the parties an opportunity to be heard, in order to reach a perceived favored conclusion, no matter how extreme the circumstance that brings a dispute to our attention." Id., 605 Pa. at 246, 988 A2d at 1283.

[42] Lingering indefinitely in indoor offices where many members of the public come and go is not recommended for health reasons in light of the COVID-19 pandemic that is ongoing at this time.

13

## CONCLUSION

For all the foregoing reasons, the Campaign's Petition for a court order directing the Board of Elections to permit representatives of the Campaign to enter and remain in the satellite election offices as watchers under the Elections Code is denied.

BY THE COURT:

GLAZER, J.

14